# United States of America

## DEPARTMENT OF THE ARMY

Washington, DC — PLACE
20 May 2021 — DATE

I HEREBY CERTIFY that the attached constitute true and accurate copies of files pertaining to Derrick T. Daniels, a former member of the United States Army. Copies of records from the Army Review Boards Agency (ARBA) and Army Board for Correction of Military Records (ABCMR) located in Arlington, Virginia; a copy of the Army Military Human Resource Record (AMHRR) is maintained by the U.S. Army Human Resources Command, Fort Knox, Kentucky. The original personnel records and copies of other records are in the official temporary custody of the Military Personnel Litigation Branch, Litigation Division, Office of the Judge Advocate General of the Army.

DOYLE.JOHN.GALLO.1257986906
Digitally signed by DOYLE.JOHN.GALLO.1257986906
Date: 2021.05.19 23:07:02 -04'00'

JOHN G. DOYLE
Lieutenant Colonel, U.S. Army
Chief, Military Personnel Litigation Branch

I HEREBY CERTIFY that Lieutenant Colonel John G. Doyle, who signed the foregoing certificate, is the Chief, Military Personnel Litigation Branch, Litigation Division, Office of the Judge Advocate General of the Army, and that full faith and credit should be given to his certification.

IN TESTIMONY WHEREOF I, Kathleen S. Miller, The Administrative Assistant to the Secretary of the Army, have hereunto caused the seal of the Department of the Army to be affixed this 20th day of May, 2021

By EMANUEL.JACQUELINE.LUCIA.1026566106
Digitally signed by EMANUEL.JACQUELINE.LUCIA.1026566106
Date: 2021.05.21 04:02:31 -04'00'

*Administrative Assistant.*

**JACQUELINE L. EMANUEL**
**Colonel, U.S. Army**
**Chief, Litigation Division**

# *ADMINISTRATIVE RECORD INDEX*
# *DERRICK T. DANIELS*

| TAB | DOCUMENT | DATE | PAGE |
|---|---|---|---|
| 1. | Decision letter from Army Board for Correction of Military Records (ABCMR) to Derrick T. Daniels, Reference: Request for reconsideration of ABCMR Docket Numbers AR20140008998 and AR20150012081 [AR20190003089] | November 30, 2020 | 000001 |
| 2. | Memorandum from ABCMR to Army Review Board Agency (ARBA), Case Management Division, Reference: Decision in case AR20190003089 | November 30, 2020 | 0002 |
| 3. | ABCMR Record of Proceedings and Board Vote [AR20190003089] | November 20, 2020 | 000003-000046 |
| 4. | Letter from James Phillips, counsel for Derrick T. Daniels to ABCMR and ARBA, Case Management Division, Response to Addendum to Advisory Opinion with supporting documents | August 30, 2020 | 000047-000072 |
| 5. | Memorandum from ARBA, Case Management Division to Mr. Derrick T. Daniels, Subject: Advisory Opinion from the ARBA, Medical Advisor, AR20190003089 | June 23, 2020 | 000073-000081 |
| | a. Medical Advisory Opinion | 19 June 2020 | 000074-000081 |
| 6. | Memorandum from ARBA, Medical Advisor to ARBA, Case Management Division, Subject: Advisory Opinion, Derrick T. Daniels [AR20190003089] | June 19, 2020 | 000082-000089 |
| 7. | Letter from James Phillips, counsel for Derrick T. Daniels to ABCMR and ARBA, Case Management Division, Response to Advisory Opinion with supporting documents | May 26, 2020 | 000090-000106 |
| 8. | Letter from Derrick T. Daniels to ARBA, Case Management Division, Addendum to Response to Advisory Opinion with supporting documents | April 30, 2019 | 000107-000129 |
| 9. | Memorandum from ARBA, Medical Advisor to ARBA, Case Management Division, Subject: Addendum to Advisory Opinion for Daniels, Derrick, T., AR20190003089 | April 10, 2019 | 000130-000132 |
| 10. | E-Mail Messages between Derrick T. Daniels and ARBA, | July 19 & 23, 2019 | 000133-000134 |

# *ADMINISTRATIVE RECORD INDEX*
# *DERRICK T. DANIELS*

| | | | |
|---|---|---|---|
| | Subject: Request for extension of time to file application On Court Remand [AR20190003089] | | |
| 11. | Order, United States Court of Federal Claims, Derrick T. Daniels v. United States Case # 18-805C, Remanding the case to the ABCMR for reconsideration based upon the existing record and any further evidence that Mr. Daniels may submit during the remand in accordance with any procedures that the ABCMR may establish for that purpose | February 1, 2019 | 000135-000165 |
| 12. | DD Form 149, Application for Correction of Military Records under the Provisions of Title 10, U.S. Code, Section 1551 [AR20190003697] | February 1, 2019 | 000166-000184 |
| 13. | Decision letter from ABCMR to Mr. Derrick T. Daniels, Reference: Request for reconsideration of ABCMR Docket Numbers AR20140008998 | December 7, 2016 | 000185 |
| 14. | Memorandum from ABCMR to ARBA, Case Management Division, Reference: Decision in case AR20150012081 | December 7, 2016 | 000186 |
| 15. | ABCMR Record of Proceedings – Board Determination/Recommendation [AR20150012081] | December 6, 2016 | 000187 |
| 16. | ABCMR Record of Proceedings [AR20150012081] | December 6, 2016 | 000188-000205 |
| 17. | Letter from ARBA, Case Management Division to Mr. Derrick T. Daniels, Reference: We received an advisory opinion from the Army Review Boards Agency. Your application has been placed on hold for 30 days to allow you the opportunity to submit comments on the advisory opinion [AR20190003089] | October 12, 2016 | 000206-000207 |
| 18. | Letter from Robert E. Poydasheff, attorney for Derrick T. Daniels to ABCMR, Reference: AR20140008998 | July 28, 2015 | 000208 |
| 19. | DD Form 149, Application for Correction of Military Records under the Provisions of Title 10, U.S. Code, Section 1551 [AR20150012081] with supporting documents | July 13, 2016 | 000209-000358 |

# *ADMINISTRATIVE RECORD INDEX*
# *DERRICK T. DANIELS*

| | | | |
|---|---|---|---|
| 20. | Letter from Derrick T. Daniels to ARBA, Reference: Requesting Reconsideration of AR2014008998 | July 13, 2016 | 000359-000360 |
| 21. | Letter from Derrick T. Daniels to ARBA, Reference: Requesting Reconsideration of AR2014008998 | June 29, 2015 | 000361-000362 |
| 22. | Decision letter from ABCMR to Mr. Derrick T. Daniels, Reference: Request your application to the ABCMR, Docket Numbers AR20140008998 | April 9, 2015 | 000363 |
| 23. | Memorandum from ABCMR to ARBA, Case Management Division, Reference: Decision in case AR20140008998 | April 9, 2015 | 000364 |
| 24. | ABCMR Record of Proceedings [AR20140008998] | April 7, 2015 | 000365-000372 |
| 25. | Letter from Derrick T. Daniels to ARBA, Reference: Mr. Daniels letter as an addendum to the original 20 May 2014 review submission | July 30, 2014 | 000373-000374 |
| 26. | Letter from Derrick T. Daniels to ARBA for the President of the ABCMR, Reference: Request for reinstatement on Active Duty due to a misdiagnosis of Severe Depression, with attachments | May 20, 2014 | 000375-000920 |
| 27. | DD Form 149, Application for Correction of Military Records under the Provisions of Title 10, U.S. Code, Section 1551, with supporting documents | April 28, 2014 | 000921-000922 |
| 28. | Letter from ARBA to Mr. Robert E. Poydasheff, attorney for Derrick T. Daniels, Reference: Response to your letter dated January 23, 2014 to Secretary of the Army John M. McHugh concerning the military record of Mr. Derrick T. Daniels | March 31, 2014 | 000923 |
| 29. | Letter from Mr. Robert E. Poydasheff, attorney for Derrick T. Daniels to Secretary of the Army, Reference: The military record of Derrick T. Daniels | January 23, 2014 | 000924 |
| 30. | Letter from Derrick Daniels to Honorable John M. McHugh, Secretary of the Army, Reference: Request | September 20, 2013 | 000925-000958 |

# *ADMINISTRATIVE RECORD INDEX*
# *DERRICK T. DANIELS*

| | | | |
|---|---|---|---|
| | reinstatement on Active Duty due to a misdiagnosis of Severe Depression with supporting documents | | |
| 31. | Memorandum from Office of the Assistant Secretary Manpower and Reserve Affairs to Commanding General, HRC, Subject: Officer Elimination Case, Derrick T. Daniels (CPT, AR, RA) | October 31, 2012 | 000959-000964 |
| | a. Army Board of Review of Eliminations Transcript of Hearing | October 23, 2012 | 000960-000964 |
| 32. | Memorandum from HRC for the Deputy Assistant Secretary of the Army (Review Boards), Subject: Officer Elimination Case – Board of Inquiry Proceedings, CPT Daniels, Derrick T., AR, RA | August 1, 2012 | 000965 |
| 33. | Officer Records Brief (ORB) | July 19, 2012 | 000966 |
| 34. | Memorandum from Headquarters, 3rd Infantry Division and Fort Stewart, for Commander, HRC, Subject: Show Case Elimination – CPT Derrick T. Daniels, 188t Infantry Brigade, Fort Stewart with attachment. | June 12, 2012 | 000967-000971 |
| | a. DD Form 1574, Report of Proceedings by Investigating Officer/Board of Officers | 21 February 2012 | 000968-000971 |
| 35. | Board of Inquiry Documents | April 18, 2012 | 000972-001743 |
| 36. | Letter from ARBA to CPT Derrick T. Daniels, Reference: DASEB has rendered a decision on your request concerning unfavorable information in your Official Military Personnel File (OMPF) [AR20100026510] | February 1, 2011 | 001744 |
| 37. | Memorandum from ARBA for Commander, HRC, Reference: Resolution of Unfavorable Information for CPT Derrick T. Daniels, AR20100026510 | February 1, 2011 | 001745 |
| 38. | Department of the Army Suitability Evaluation Board (DASEB) Record of Proceedings [AR20100026510] | January 13, 2011 | 001746-001751 |
| 39. | DASEB, Final Vote Sheet [AR20100026510] | January 13, 2011 | 001752 |
| 40. | Letter from Derrick T. Daniels to President of DASEB, | September 28, 2010 | 001753-001756 |

*ADMINISTRATIVE RECORD INDEX*
*DERRICK T. DANIELS*

| | | | |
|---|---|---|---|
| | Reference: Challenges to overcome the General Officer Memorandum of Reprimand | | |
| 41. | Letter for Support from COL Bennie Williams to President of DASEB | September 28, 2010 | 001757-001758 |
| 42. | Army Military Human Resource Record (AMHRR) | | 001759-002698 |



**DEPARTMENT OF THE ARMY**
**ARMY BOARD FOR CORRECTION OF MILITARY RECORDS**
**251 18TH STREET SOUTH, SUITE 385**
**ARLINGTON, VA 22202-3531**

November 30, 2020

AR20190003089, Daniels, Derrick T

Mr. Derrick T Daniels
**Redacted PII**

Dear Mr. Daniels:

Pursuant to your request for reconsideration of ABCMR Docket Numbers AR20140008998 and AR20150012081, which were considered and denied by the Board on April 7, 2015 and December 6, 2016 respectively, the Army Board for Correction of Military Records (ABCMR) reconsidered your case on November 20, 2020. I regret to inform you that the Board denied your request for relief. A copy of the Board's Record of Proceedings which explains the Board's reasons for denying your request is enclosed.

The decision in your case is final and final action has been directed in this matter under the provisions of Section 1552 of Title 10, United States Code and Army Regulation 15-185.

Sincerely,

X

Dennis Dingle
Director
Signed by: DINGLE.DENNIS.WILLIAM.**Redacted PII**

Enclosure

Printed on Recycled Paper



**DEPARTMENT OF THE ARMY**
**ARMY BOARD FOR CORRECTION OF MILITARY RECORDS**
**251 18TH STREET SOUTH, SUITE 385**
**ARLINGTON, VA 22202-3531**

SAMR-RBA 30 November 2020

MEMORANDUM FOR Army Review Boards Agency, Case Management Division, 251 18th Street South, Suite 385, Arlington, VA 22202-3531

SUBJECT: Army Board for Correction of Military Records Record of Proceedings for Daniels, Derrick T, SSN **Redacted PII**, AR20190003089

The application submitted by the individual concerned has been denied by the Army Board for Correction of Military Records.

BY ORDER OF THE SECRETARY OF THE ARMY:

Encl

X

Dennis Dingle
Director
Signed by: DINGLE.DENNIS.WILLIAM.**Redacted PII**

CF:
( ) OMPF

ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

RECORD OF PROCEEDINGS

IN THE CASE OF: Daniels, Derrick T.

BOARD DATE: 20 November 2020

DOCKET NUMBER: AR20190003089

APPLICANT REQUESTS: reconsideration of his prior denied requests in conjunction with new requests as follows:

- consideration of his mental health conditions before a Medical Evaluation Board (MEB) and Physical Evaluation Board (PEB) for placement on the Temporary Disability Retired List (TDRL) or Permanent Disability Retired List (PDRL)
- if not placed on the TDRL or PDRL, reinstatement on active duty
- if reinstated on active duty, removal from his records of a General Officer Memorandum of Reprimand (GOMOR) and two referred DA Forms 67-9 (Officer Evaluation Report (OER)) and retroactive consideration for promotion on the Fiscal Year 2008 Major Promotion Board

APPLICANT'S SUPPORTING DOCUMENTS CONSIDERED BY THE BOARD:

- Complaint filed in U.S. Court of Federal Claims
- U.S. Court of Federal Claims order
- Army Board for Correction of Military Records (ABCMR) Record of Proceedings (ROP) in Docket Number AR20150012081
- multiple Marks Psychiatry & Forensic Services letters and progress notes
- Red River Hospital Discharge Summary
- DD Form 149 (Application for Correction of Military Record)
- self-authored statement
- multiple pages of Standard Form 600 (Chronological Record of Medical Care)
- Lawton Police Department Offense Report
- statement of T____ B____
- Board of Inquiry testimony of Dr. A____ P____
- applicant's Board of Inquiry testimony

FACTS:

1. On 1 February 2019, the U.S. Court of Federal Claims agreed to the applicant's motion for a voluntary remand of his claims to the ABCMR and subsequently ordered the case remanded to the ABCMR for reconsideration based on the following:

a. This is a military pay case that was preceded by an adverse decision by the ABCMR. It is appropriate for the applicant to have one final opportunity to provide the ABCMR with the mental health records he contends were not previously considered. It is appropriate for the ABCMR to have an opportunity to review his claims based upon any additional mental health records not previously considered. The ABCMR could potentially provide the applicant with all the relief he seeks, which would moot his court action and obviate the need for any further litigation in Federal Court.

b. In his claim before Federal Court, the applicant states he was involuntarily discharged in 2012 with an honorable characterization of service. Since his discharge, he has sought reinstatement on active duty due to a misdiagnosis of post-traumatic stress disorder (PTSD) and depression, both of which he was treated for while on active duty. His initial treatment was sought from the Army's behavioral health system prior to conducting transgressions deemed unbecoming of a military officer. His treatment plan was developed by a Texas State mental health hospital and implemented by himself and this hospital determined his transgressions were service-connected.

c. Despite being directed by an Army psychiatrist to get treatment from the Texas State institution, the medical records from that institution were never incorporated into his Army mental health records. For whatever reason, the ABCMR did not take these records or other evidence the applicant presented into consideration. He submitted vital documentation, including the medical records from the Texas State institution that was not initially acknowledged or mentioned in the Board's evaluation process. This information is critical in understanding the totality of the applicant's circumstances, particularly that his transgressions were service-connected. The applicant argues that he would still be on active duty if he had been properly diagnosed and treated when he initially sought help. He is seeking monetary relief from the U.S. Government in the amount of $922,176.00.

2. Incorporated herein by reference are military records which were summarized in the previous consideration of the applicant's case by the ABCMR in Docket Numbers AR20140008998 on 7 April 2015 and AR20150012081 on 6 December 2016.

3. The applicant states:

a. He is requesting relief based on symptoms of service-connected major depression he had prior to his involuntary separation. He enclosed a court order directing a voluntary remand of his case to the ABCMR on the condition that the Board considers his mental health records not previously reviewed. The Board previously denied his request twice without primarily acknowledging two essential diagnoses from the Red River Mental Hospital and from Dr. A____ M____, both of which occurred prior to his involuntary separation.

b. He understands his case is very convoluted; therefor, he further requests the Board consider directing an MEB followed by a PEB. With adequate resources, all of his medical records, OERs, live testimonies from psychiatrists and his rebuttal statements a live MEB/PEB can do the following:

- validate the Army's current position
- recommend his placement on the TDRL due to unfitness for duty
- recommend his placement on the PDRL due to unfitness for duty
- recommend reinstatement on active duty in his prior branch
- recommend reinstatement on active duty in another branch due to any physical limitations
- if reinstated on active duty, he requests removal of his referred OERs and the from his OMPF and the GOMOR either removed or moved to his restricted file
- if reinstated on active duty he also requests consideration for promotion for the Fiscal Year 2008 Major Promotion Board, from which he was removed

c. He was initially assessed by Fort Sill's Behavioral Health Clinic in August 2008 and determined to have suicidal tendencies from possible depression/anxiety prior to his transgressions. Medical officials did not understand the severity of his major depression, but his symptoms are documented. He attached a copy of the medical record documenting this medical appointment.

d. He attached a copy of a November 2008 Lawton Fort Sill Police Report. Leadership utilized a misrepresentation of the facts in the Lawton Fort Sill Police Report as well as false testimony supplied by Ms. T____ B____, the woman with whom he had an affair. His leadership validated her statement with the Fort Sill Police Report, stating he admitted to several affairs. Ms. T____ B____ stated he had several affairs, including impregnating the wife of a deployed Soldier and impregnating her with twins. Leadership validated her statement with the Fort Sill Police Report stating he admitted to several affairs. Officer P____ interviewed his wife at the time and himself. In the process of developing the report, he mistakenly created a false narrative based on both interviews. He was also recorded during his interview in which he admitted to having an affair with Ms. T____ B____. A police report is not an official documentation of testimony. Ms. B____ did not provide any other proof outside of a signed affidavit to his command and she later recanted her statement with another affidavit in 2010. Her wrongful allegation and the acknowledgment of his recorded testimony to Officer P____ were proven during a Board of Inquiry Hearing in April 2012.

e. During the Army Regulation 15-6 (Procedures for Administrative Investigations and Boards of Officers) investigation, he was ordered to separate from his wife. He was isolated and felt alone. The effect of the GOMOR caused his depression to worsen to the point he attempted suicide. His command inadvertently interfered in him receiving

proper assistance form the Fort Sill Mental Health Clinic by informing he admitted to having several affairs. This is documented in his mental health records.

f. While at Red River Mental Health Hospital, they focused on the affair and domestic violence as symptoms of his depression from his deployments. He was able to identify his anger, his making through covert depression, need for adrenaline, lack of self-worth, self-blaming, and survivor's remorse. Unfortunately, his continuity of treatment was never maintained by Fort Sill's Mental Health Clinic. The records from Red River should have been placed in his military mental health records and Fort Sill still deferred his treatment.

g. The Fort Stewart Commanding General granted him a Board of Inquiry in April 2012 based on a diagnosis of severe PTSD due to an elimination board. However, the Chief of the MEB Behavioral Health, Dr. A____ P____ testified that the PTSD diagnosis was erroneously placed in his file by an unqualified official. She did however testify she saw symptoms of depression in his file. She also testified she was unable to validate the cause because she never personally evaluated him. The symptoms from Red River Mental Health Hospital were never placed in his military health records plus no one had ever explained his symptoms to him at that point.

h. During the Board of Inquiry cross examination in April 2012, he was asked why he had the affair and he responded that it wasn't anything his wife didn't do, but it was what he was trying to give himself. In August 2012, he sought an independent evaluation from Dr. A____ M____ who came to the same conclusion as Red River Mental Health Hospital prior to his separation.

i. He is currently the business management coordinator for a behavioral health crisis center similar to the Red River Mental Health Hospital. The primary reason he desired to work at a crisis unit was to minimize the lack of continuity of care he experienced. A day doesn't go by without him reflecting on his circumstances, but his obligation to his patients is therapeutic. This position allows him to see the challenges in a socialistic mental health care system. It is common for technicians to chart on the wrong patient, administer wrong medications, omit vital documentation from medical files, etc. And often, their patients come back because mental health treatment is not an exact science. It is sometimes trial and error because people are different.

j. During his last request for relief, the Board identified several instances where he displayed a calm demeanor during engagements. As a former commander, he learned to mask his depression because he had to lead Soldiers into combat. This is known as covert depression. The Board also stated its psychiatrist didn't find anywhere in his military records where it was documented his affair and domestic violence were symptoms of his depression. But this was precisely the reason he submitted the medical records from Red River Mental Health Hospital and the diagnosis from Dr.

A____ M____. In both instances, his time was dedicated to their care and observations and both took the time to understand all aspects of is circumstances.

k. Officers are held to the highest standards. Officers also take responsibility for their actions. He has always taken responsibility and if he was afforded the opportunity at the beginning of his treatment, then he would still be on active duty. The affair and domestic violence were both symptoms of his severe depression. People suffering from severe depression do not all exhibit the same symptoms.

l. He could not control the actions of Ms. T___ B____ or his command. He does not place fault or judgment. His command followed protocol to the best of their abilities. But what he did control is understanding what was affecting him and developed a treatment plan through Red River which allowed him to serve honorably for 4 more years. If he were to be eliminated, it should have taken place at the time of the accused violations. Operation Iraqi Freedom rotation 2007-2008 had the highest suicide rate and Fort Sill was amongst the locations with the highest suicides during that time. If the Board of Inquiry discovered he did not have multiple affairs and did not impregnate multiple women, then why was he suicidal? He is afraid the severity of the GOMOR overshadowed his depression and solidified Army official into not taking his request for relief seriously. A live MEB will allow qualified officials to determine his disposition at critical times of his deployments and other specific periods in his military career. A determination should be made by evaluating his medical records and medical officials who have personally evaluated him. Thank you for your attention to this matter.

4. The applicant initially enlisted in the Regular Army on 9 July 1990 and was honorably discharged on 7 September 1994 after 4 years, 1 month, and 29 days of net active service in order to enter the Officer Training Program.

5. He was appointed a Reserve Commissioned Officer of the Army effective 12 December 1998 and ordered to active duty, entering on 19 March 1999, in order to fulfill his obligated volunteer service of 4 years.

6. The applicant deployed to Iraq during the following periods:

- from 7 February 2004 through 6 February 2005
- from 20 August 2006 through 20 November 2007

7. The applicant provided a Standard Form 600, dated 18 August 2008, which shows:

a. He was accompanied by his wife as a walk-in patient to the Mental Health Clinic at Reynolds Army Community Hospital (RACH) on the date of the form. He and his wife reported he increased his alcohol consumption since his return from his Iraq deployments. He also reported depressive symptoms, irritability, uncomfortableness in

crowds, lack of motivation, impatience, fatigue, problems relaxing, and erectile dysfunction. He stated he wanted to get help several months ago but never followed through and his wife told him on the day of the visit that she would go to his commander and tell him about her husband's problems if he did not go to the mental health clinic.

b. He appeared in no acute distress and denied suicidal/homicidal ideations (SI/HI), or psychotic symptoms. His wife related he mentioned wanting to kill himself and that when he drinks he would say things like "Where's the gun – I'll blow my brains out right now." Risk issues appears minimal to moderate at the time. The notes indicate a case would be started with Dr. D____ to rule out (R/O) depressive disorder, not otherwise specified (NOS) and alcohol abuse. The applicant may benefit from medications and he was amendable to taking them, but was not amenable to group therapy and would prefer one on one therapy for post-deployment related issues. He and his wife indicated an interest in marital counseling and might need referral so Social Work Services. They were advised to schedule follow up as needed.

c. The assessment and plan (A/P) lists alcohol abuse and one individual psychiatric therapy approximately 45-50 minutes in duration. The applicant was released without limitations for follow-up as needed. The applicant agreed to go to the Army Substance Abuse Program (ASAP) and set up an appointment for intake.

8. A Lawton Police Department Offense Report, dated 21 November 2008, which is partially illegible shows:

a. A police officer was dispatched for a domestic abuse call that happened on 17 November 2008 when the applicant assaulted his wife at their residence. The applicant's wife said they were arguing when the applicant began pushing her and grabbed a police type thick plastic baton and hit her over the head, whereby she went to the ground and almost became unconscious, then the applicant began dragging her across the ground. The applicant's wife subsequently sought medical treatment at the RACH and assistance from the Fort Sill Advocacy office. The applicant stated he and his wife were having problems and his wife was a good woman, but he needed some time apart from her.

b. Neither the applicant's nor his wife's interview statements to the police are available for review. The applicant was placed on a military protective order, restraining him from visiting his wife. He was advised of his rights, among them to remain silent and be represented by a lawyer, which he initially waived on 21 November 2008, then later asserted on 11 December 2008.

9. A DA Form 1574 (Report of Proceedings by Investigating Officer/Board of Officers) shows an investigation pursuant to Army Regulation 15-6 convened on 26 November 2008.

10. A 428th Field Artillery Brigade memorandum for record, dated 15 December 2008, reports on the findings and recommendations of the AR 15-6 Investigating Officer.

a. It was substantiated that the applicant violated Article 128 of the Uniform Code of Military Justice (UCMJ) by committing assault against his wife by intentionally striking his wife in anger, which he admitted to. Photographic evidence of his wife's visit to the emergency room was provided as well as a sworn statement by his wife. The physical fight between the two was instigated after a verbal confrontation regarding the applicant's inappropriate sexual relationships with other women.

b. It was substantiated that the applicant violated Article 134 of the UCMJ by his wife's claim and his own admission to wrongfully having sexually active relationships with other women while he was married to his wife.

c. It was substantiated that the applicant violated Article 133 of the UCMJ in conducting himself in a manner unbecoming an office3r and a gentleman. It was clear he acted in a dishonorable manner and compromised his character as an officer and a gentleman.

d. Other findings that affected the conclusions were that the applicant had a history of mental health problems and had been seeking help. His wife stated she asked her husband to seek help in July 2008, which he did, and was referred to the ASAP program. The applicant declined to comment further about his involvement with the Mental Health Clinic. The applicant's wife also no longer felt her husband was a threat and the civilian protective order previously put in place was removed.

e. The recommendations were as follows:

- the applicant should receive a GOMOR
- he should be immediately removed from his duties involving officer instruction and reassigned to a positon of lesser influence
- he should continue to seek professional help through the Mental Health Clinic, Family Advocacy and the Chapel, including anger management and marriage counseling
- the no contact order between the applicant and his wife should be lifted, as the civilian protective order was removed and his wife no longer felt threatened

11. The applicant's records contain a DA Form 2823 (Sworn Statement), by a Ms. T____ B____, dated 7 January 2009, which details her sexual relationship with the applicant, to include her pregnancy by him in November 2008 of which the applicant was made aware.

12. The applicant provided a second statement by Ms. T____ B_____, undated, but titled "Statement for [the applicant's] GOMOR January 2009," which states she was never impregnated by the applicant and she only said that to get back at him when she thought he was seeing another woman. When he refused to continue to see her, she lied to both the applicant's wife and his commander, including regarding impregnating the wife of a deployed Soldier, in order to get him in trouble and to keep their relationship going. When it came close to her due date and he asked her about the pregnancy, she told the applicant she had a miscarriage.

13. A GOMOR, signed by the Commanding General, U.S. Army Field Artillery Center and Fort Sill, dated 29 January 2009, shows:

a. The applicant was reprimanded for domestic assault and battery for beating, choking, and threatening his wife, for ongoing multiple adulterous affairs with women including one married to a deployed Soldier, and for conduct unbecoming an officer and gentleman.

b. On 16 November 2008, he had a sexual encounter with a woman other than his wife which sparked a fight with his wife when she confronted him about it. He attacked her by hitting her with his hands then with a plastic baton on her face and head to the brink of unconsciousness, leaving her with bruises still visible 5 days later. When she fell, he dragged her across the floor, choked her, and scratched her on her neck. He verbally threatened her to the point that she feared for her life.

c. The applicant told his wife he met the other woman through an online website and admitted to the investigating police he engaged in affairs with several other women. His wife spoke to one of the other women who revealed his other affairs, to include impregnating the wife of a deployed Soldier. He also admitted to being the father of twins with one of the women. His behavior was repugnant and indicated a lack of judgment in his professional and personal life. He failed to lead by example.

d. This reprimand was imposed as an administrative measure and not as punishment under Article 15 of the UCMJ. He was to acknowledge the GORMOR and return it with any statements in rebuttal within 15 calendar days. A decision on imposing and filing the reprimand would be withheld until that time.

14. A Standard Form 600, dated 14 February 2009, shows:

a. The applicant was seen at the RACH emergency room after he was brought in for attempting to hang himself in his garage. He became more depressed over the past 2 weeks, subsequent to receiving a GOMOR and being placed on Zoloft. His hope for the future started to decline after the GOMOR, being perceived by others as a

substandard Soldier, being forced out of the military, and the no contact order following a domestic dispute which kept him from talking to his wife.

b. On 12 February 2009, he bought a rope from Walmart and went to the garage of his wife's house, tying the rope around a steel beam. He got up on a table preparing to jump, but in the final moments of contemplating hanging himself, he worried he might go to hell and decided against it, instead calling his parents then eventually texting his wife that he had been at the house preparing to hang himself. His wife called his unit and the unit contacted the applicant, bringing him to the emergency room.

c. He was deemed to be at high risk to harm himself in the imminent future, as his military career was likely coming to an end and depression and alcohol consumption make his likelihood of acting quite high. Toward that end, the applicant agreed to go to Red River psychiatric hospital versus receiving an emergency order of detention to the local hospital, which his provider stated he would do if needed to ensure the applicant's safety. Red River Hospital accepted the applicant and the applicant was to follow up with his military provider upon discharge from the hospital.

15. A Red River Hospital Discharge Summary, shows:

a. The applicant was admitted to the hospital's adult inpatient program on 14 February 2009 after trying to hang himself and given an admission diagnoses of major depressive disorder, recurrent, and severe addiction.

b. He was increasingly depressed since November 2008 after being charged with adultery and separated from his wife. He had a 14-year Army career and knew nothing else. He felt depression, depressed mood, irritability, poor concentration, poor sleep, isolation, helplessness, and thoughts of suicide. His memory is intact; his mood depressed; his affect dysphoric (general unease or dissatisfaction). His thought process was well organized and he recognized the need for treatment.

c. His treatment plan included individual and group therapy and medication management. He worked on mood improvement skills and ways to decrease anxiety and improve his mood. He worked on building strength and motivation within himself and worked on relaxation techniques and communication skills. Treatment went well and he was improving his communication and healthy ways to cope with is emotions and self-empowerment. Overall he was doing well and tolerated medications without any side effect. His mood and affect improved.

d. The applicant's discharge diagnosis was major depressive disorder, recurrent and severe. He was discharged on 24 February 2009 with prescriptions for daily Zoloft and Ambien at bedtime for sleep. He was discharged in stable condition with no SI/HI.

His discharge plan was to follow up with the Fort Sill Community Mental Health immediately upon arrival at base.

16. On 5 March 2009, the applicant submitted a lengthy GOMOR rebuttal, stating in pertinent part:

a. He accepts full responsibility for his actions over the past several months. He did not live up to the Army's expectations of his own expectations. He did assault his wife and have an affair with T____ B____ for several months. He deeply regrets the decisions he made but the current picture depicted by the investigation is truly not who he is and the actual events during the assault did not occur as detailed during the investigation.

b. On 17 February 2008, he did admit to his wife he was having an affair with T____ B____, based on her suspicions and confrontation of him. During the course of his argument with his wife, she slapped him and he pushed her several times to get her out of his way. She was blocking the exit to the room and he just wanted to get away from the situation. AS he continued to push her, she caught his thumb in her mouth and bit it. He pled with her to let him go and she did, but followed him into the next room screaming at him and showing him emails of his conversation with T____ B___. He just wanted to be left alone and said he was sorry and told her not to approach him, but she did anyhow. He was ashamed, hurt, and dismayed about the situation and everything else going on in his life after the deployment. When she approached he picked up a baton from a Halloween costume that was on the floor and stuck his wife once on the side of the head. The force and type of object was not enough to knock her to the ground nor did she ever go unconsciousness. She went to her knees crying saying "Why don't you just kill me?" He did not tell her to go get the gun and he would shoot her in the f***ing head. He told her if she wants to die she knows where the gun is. He tore up the emails and after throwing them away, his wife kicked him between the legs while she was on the floor. He then knelt down and grabbed her around the neck, squeezing and telling her to stop it. It wasn't worth both of them getting hurt. He then helped her to her feet and they talked for a couple of hours about the affair and their future plans.

c. He joined the Army at 17 years old and truly came to love the Army's structure and camaraderie. He was sexually assaulted by his male cousin when he was 13 years old and also grew up an only child in isolated rural South Georgia with a strict father who didn't allow him to participate in extra-curricular activities. Despite his inferiority complex, he got a green-to-gold scholarship and truly believed in the Army's philosophy of building people up and giving them a sense of pride and belongingness. Unfortunately, some of his immediate supervisors didn't seem to fully support this goals and he really wanted to change that as a company commander.

d. He details over multiple pages a great deal of his accomplishments, hard work, and frustrations throughout his Army career to include while in command. He states that after command he became extremely depressed. He worked so hard in trying to maintain a standard but he didn't accomplish it the way he had envisioned. He felt cheated and was held responsible for everything his companies did or failed to do but wasn't given any latitude to make any decisions on training based on his assessment. Everything was dictated and he didn't have time to work on his mentorship program.

e. He became frustrated about where he was in his life and numb to everything around him. He began to hate people, especially some of his egotistical peers who bragged about their deployment experiences and he started to not trust his leaders. Whatever tough crisis, he did what had to be done. He started drinking heavily after the deployment and would have inappropriate conversations with women online because he enjoyed it. He resented the constant arguments in his marriage and began to resent the Army standard and felt it was a hoax.

f. He and his wife always had problems, but he never hit her in anger or had an actual affair until after his second deployment. He wanted to give his wife everything but had nothing left after command. Trying to deal with is personal guilt, helping his wife deal with her depression, stress of continuing her education, and their financial difficulties became too much for him to bear. He would constantly drink, yell and break items in the house, so his wife had to get him to self-admit into the ASAP at the Mental Health Clinic in August.

g. He recently learned that post-deployment anger is a form of male depression and he has taken steps to control it. It was never his intention to strike his wife in anger or cheat. He still loves her and this country and hopefully would like to have the opportunity to command again and take care of some unfinished business. He still possesses the moral character to make the tough right choices and he undoubtedly has the knowledge and desire.

17. On 26 March 2009, after due consideration of all matters submitted by the applicant as well as the recommendations of his chain of command, all of whom recommended filing the GOMOR in his Official Military Personnel File (OMPF), it was directed that the GOMOR be filed in the applicant's OMPF. The GOMOR is filed in the performance folder of his OMPF

18. The applicant's DA Form 67-9, covering the period 15 May 2008 through 31 March 2009, as a senior instructor/writer is a referred report. It shows the following:

- "No" was annotated under Army Values for Honor and Loyalty
- his Rater marked "Unsatisfactory Performance, Do Not Promote" stating his duty performance was not affected by his extreme amount of personal stress, but

unfortunately his personal conduct did not match his duty performance as an instructor

- he received a GOMOR during this rating period for not living up to the Army's high personal moral standards; though his work performance has been superb, it has been overshadowed by his personal misconduct
- his personal misconduct and disregard for the Army Values severely limited any further potential for promotion within the Army; do not promoted to major
- his Intermediate Rater and Senior Rater both indicate do not promote to Major and his Senior Rater rated him "Below Center of Mass Retain"

19. His records contain numerous Standard Forms 600 dated between 27 March 2009 and 1 May 2009, which are provided in full to the Board for review and show:

- multiple visits to the Psychiatry Clinic at RACH for medication refill of Zoloft and Ambien and individual/group therapy
- among his listed problems were dysthymic disorder (depressive neurosis), alcohol abuse in remission, adjustment disorder with depressed mood, anxiety disorder not otherwise specified, anger/depression, alienation
- his mental status exams were all normal
- he was evaluated as being low risk for dangerousness or impulsivity post hospitalization
- he was always released from his appointments without limitations

20. On 21 May 2009, the applicant wrote a memorandum to his Battalion Commander wherein provided comments related to his referred OER. He states:

a. During the investigation, he was asked to be "left on the platform" as an instructor and he was. Despite the daily struggle with uncertainty about his military career, marriage and his financial stability, it never let it affect the way he mentored and taught our future leaders.

b. His passion in seeing other succeed never died. You had enough faith in him to let him continue to instruct and he did not fail in that regard. So many student personally approached him to thank him for being able to instill a purpose because of his experiences and knowledge.

c. His OER does not reference his attempts to seek medical treatment before the personal misconduct or any diagnosis by his physician during this rating period.

21. The applicant's OER covering the period 15 May 2008 through 31 March 2009, was signed by the rating officials and the applicant and is filed in the performance folder of his OMPF.

22. The applicant's DA Form 67-9, covering the period 1 April 2009 through 30 September 2009, as a senior instructor/writer is a referred report. It shows the following:

- "Yes" was annotated for all Army Values
- "No" was annotated for meeting Army height and weight standards
- his Rater annotated "Satisfactory Performance, Promote" stating his execution of taskings was flawless and he will continue to excel if groomed
- he performs physical fitness training twice per day which has resulted in constant improvement toward meeting Army height and weight standards, which he predicts he will meet within 6 months
- he had the potential for promotion to major
- his Intermediate Rater indicated improved performance and he definitely has the potential to work at the field grade level
- his Senior Rater rated him as "Fully Qualified" "Center of Mass" remarking his performance the past 5 months showed his desire and determination to stay in the Army and be competitive for promotion to major and if he continues to improve should be strongly considered for promotion to major

23. On 5 November 2009, the applicant submitted a rebuttal to this OER, stating:

a. He acknowledged and accepted responsibility for his failure to maintain his weight standards as a Soldier in the Army. He comes from an obese family, but during his 15 years in the Army it has been a manageable challenge. He has always been taped, but able to meet the body fat standards. For the past year he battled several things which contributed to his weight gain.

b. He and his wife were separated and he lacked the self-discipline to cook healthy meals, which was normally her responsibility. He was hospitalized for mental evaluation and during those 10 days at the Red River Mental Clinic he didn't workout, which contributed to his lack of motivation. He hated working out with his peers after his return to his unit because he felt they were judgmental. The increased use of alcohol from depression since his return from his second deployment also contributed to his weight gain.

c. He has found new meaning to his life and self-worth over the past 6 months and has made progress. His repaired his relationship with his wife, graduated from the ASAP program, works on the weekend as a provider to the mental and physically challenged as a way to help with his finances and personal progress, and has made constant progress to get his weight under control.

24. The applicant's OER covering the period 1 April 2009 through 30 September 2009, was signed by the rating officials and the applicant and is filed in the performance folder of his OMPF.

25. The applicant deployed to Iraq for a third time from 27 December 2009 through 16 December 2010.

26. The applicant was notified by U.S. Army Human Resources Command memorandum, dated 25 May 2010, that he had been identified to show cause for retention on active duty because of misconduct, moral, or professional dereliction.

27. On 28 September 2010, the applicant wrote a lengthy letter to the Department of Army Suitability Evaluation Board (DASEB) stating, in pertinent part:

a. His purpose is to explain in full detail how he overcame his challenges after the filing of the GOMOR. It was his desire that the DASEB determine the GOMOR served its purpose and it is in the best interest of the Army to transfer it from his performance folder to restricted folder in his OMPF.

b. He took full responsibility for his actions and understands the ramification of his dastardly behavior. The worst of all is that he emotionally scarred and humiliated his wife. His promotion was suspended prior to his 1 December 2008 pin on date and he embarrassed his entire family, especially his parents who planned on attending his promotion ceremony. There is not a day that goes by that he is not bothered by the lack of judgment and the continuous horrible lies that destroyed his personal integrity.

c. He blamed his superiors for not appreciating his sacrifice during his deployment and was very unhappy in his personal life. He became an alcoholic and gained a lot of weight. He was 2 inches from walking off their old dining room table to hang himself during the investigation. He was at the lowest point in his life and felt no one wanted to hear his story or cared to understand his feelings.

d. It was his religious faith that kept him from hanging himself. He was command-directed for a psychological evaluation and spent 10 days in the Red River Mental Institution, which allowed him time to focus on some deep inner problems plaguing him for years. After the GOMOR filing, he did not regress or blame his command for anything. He would have done the same if he were in their shoes. He is just thankful they saw enough in him to not pursue a court-martial and they allowed him to continue teaching and impacting the lives of young officers.

e. He humbly asks to continue the momentum of improvement he has made since the filing. He has displayed a strong character and is reliable and committed. He is now within the Army weight standards and is in the best shape ever over the last 15

years. He possesses the skills the Army needs and as a commander he always gave Soldiers the opportunity for a second chance. He has always been a survivor and even if every Soldier that served under him may not have like him, they would all say he was fair. He is pleading for the same opportunity and he will not waste it if granted.

28. A DASEB Record of Proceedings, dated 13 January 2011, shows after careful consideration it was determined the available evidence did not provide substantial evidence that the GOMOR has served its intended purpose and that its transfer would be in the best interest of the Army. Therefore, the DASEB determined the overall merits of the applicant's case did not warrant the relief requested.

29. On 18 April 2012, a Board of Inquiry convened. Among the evidence and testimony considered by Board of Inquiry were the testimony of the applicant and the testimony of Dr. A____ P____, copies which were both provided by the applicant for the Board's review.

a. In Dr. A____ P____'s testimony she stated she was a retired colonel whose position was Chief, MEB, Behavioral Health. She has evaluated and treated Soldiers needing to be cleared for deployment and been involved in doing fitness for duty determinations, MEBs and chapter evaluations. She reviewed the applicant's medical records and made the assessment that he did not describe associative episodes or flashbacks, whereby she might consider he was not responsible for what was going on, thus she would describe his act of violence more of a personality style than PTSD.

b. Among the statements in the applicant's testimony, he states there were things written in the GOMOR that were unsubstantiated. He made thousands of mistakes, but he also believes he want on a journey to prove he can still serve and learn from those mistakes. If the Board decides to retain him, he has a plan for his career to continue and stay in operations and welcomes the opportunity to do anything for Soldiers' resiliency.

c. Given the preponderance of the evidence, the Board of Inquiry concluded the applicant did in fact commit adultery and he did in fact have an incident of domestic violence in which he assaulted his wife. Therefore, the Board of Inquiry found there was sufficient evidence he did commit acts of personal misconduct and that there is sufficient evidence to prove his actions can be considered conduct unbecoming a commissioned officer.

d. The Board of Inquiry recommended the applicant be involuntarily separated and receive an honorable discharge.

30. The applicant provided handwritten notes from Dr. T____ M____ Marks Psychiatry & Forensic Services, dated 30 April 2012 and 17 May 2012 which show:

a. Her diagnoses were history of major depression in remission, history of alcohol abuse, not current, and possible dysthymia.

b. While in the Army the applicant witnessed senseless deaths followed by multiple moves and was bothered that a supervisor wouldn't take the time for him. He felt misunderstood and as if he were just a number in the Army. He didn't feel appreciated and received no mentorship.

c. His current state was general discontentment with work-related issues. It was not clear if he had PTSD in the past – not a current issue. The plan states no treatment needed; return as needed.

31. On 23 October 2012, the Army Board of Review for Eliminations convened a board, the complete transcript of which is included for the current Board, to review the action of the Board of Inquiry which recommended the applicant's elimination.

a. Based on a thorough review of all evidence, the Army Board of Review for Eliminations recommended the applicant's elimination from the U.S. Army based on misconduct and moral or professional dereliction, with an honorable characterization of service.

b. On 31 October 2012, the Deputy Assistant Secretary of the Army (Review Boards) approved the Army Board of Review for Eliminations' recommendations to eliminate the applicant based on misconduct ant moral or professional dereliction, with an honorable characterization of service.

32. The applicant's DD Form 214 (Certificate of Release or Discharge from Active Duty) shows he was honorably discharged on 16 November 2012, after 13 years, 7 months, and 28 days of net active service this period, under the provisions of Army Regulation 600-8-24 (Officer Transfers and Discharges) due to unacceptable conduct.

33. The applicant's available service and medical records from this period do not show:

- he was issued a permanent physical profile rating
- he suffered from a medical condition, physical or mental, that affected his ability to perform the duties required by his MOS and/or grade or rendered him unfit for military service
- he was diagnosed with a medical condition that warranted his entry into the Army Physical Disability Evaluation System (PDES)
- he was diagnosed with a condition that failed retention standards and/or was unfitting
- none of his OERs, to include those subsequent to his referred OERs, dated

30 September 2010, 30 September 2011, and 9 March 2012, indicate medical impairment prevented reasonable performance of the duties required of the applicant's office, grade, rank, or rating

34. An undated VA Rating Decision shows he was granted a service-connected disability for the following conditions effective 17 November 2012:

- hypertension with cardiomegaly, 30 percent
- anxiety disorder NOS and major depressive disorder, 30 percent
- right elbow strain, 10 percent
- degenerative arthritis, left knee, 10 percent
- degenerative arthritis, right knee, 10 percent
- dermatitis and pseudofolliculitis barbae, 10 percent
- degenerative arthritis, left shoulder, ring finger tendon injury status post avulsion fracture, left hand, proximal interphalangeal fracture, middle finger right hand, healed fifth metacarpal fracture, left hand, left ankle, calcaneal spur, and burn scar right arm, all rated 0 percent

35. A Psychiatry Outpatient Note, dated 8 January 2013, shows:

- he was seen in follow-up treatment for PTSD at the Tuskegee VA Medical Center
- this brief psychotherapy session included reevaluation and management of medication
- current status was he did have some PTSD from his 3 combat tours in Iraq; no presently suicidal or on medication
- the PTSD symptoms he experiences are scarcely unusual for someone exposed to combat and did not make him unstable in any way and are more of a mild occasional discomfort
- he was fully competent from a security clearance point of view

36. The applicant applied to the ABCMR in April 2014, requesting his discharge be voided, reinstatement on active duty, promotion to the rank of major retroactive to 1 December 2008 change in functional area, removal of the GOMOR, OERs, and DASEB proceedings from his OMPF. After careful consideration of all the evidence, the Board voted on 7 April 2015 to deny the applicant’s requested relief determining the evidence presented did not demonstrate the existence of a probable error or injustice.

37. In June 2015, the applicant again applied to the ABCMR, requesting reconsideration of his prior request, stating the Board previously failed to consider his diagnosis of PTSD.

38. In the adjudication of that 2015 application, and advisory opinion was provided by the Army Review Boards Agency (ARBA) clinical psychologist on 11 October 2016, which states:

a. Military medical records indicated a behavioral health treatment history for alcohol abuse, an adjustment disorder with anxiety and depressed mood, PTSD, and depression. The applicant engaged in several behavioral health services to include Psychology and Social Work individual and group treatments, medication management through Psychiatry, outpatient and inpatient services, Family Advocacy, ASAP, and off-post counseling. It appears he was evaluated thoroughly, actively engaged in treatment, and endorsed symptoms appropriate to the given diagnoses for each treatment session.

b. A VA letter dated 4 February 2015 indicated that a service connection for anxiety disorder NOS with major depressive disorder was granted and the applicant was assigned a disability rating of 30 percent effective 17 November 2012. A medical note dated 8 January 2013 indicated the applicant had an Axis I diagnosis of PTSD from a VA psychiatrist. The provider included an opine that the applicant endorsed scarcely unusual PTSD symptoms for someone exposed to combat and determined the symptoms had not made him unstable in any way and that they were more a matter of mild occasional discomfort.

c. The ARBA clinical psychologist was asked to determine if the condition of PTSD was duly considered during the applicant’s military separation process. This opinion is based on the information provided by the Board and records available in the DOD electronic medical record (AHLTA). Based on thorough review of available medical records, there is no evidence that the diagnosis of depression or PTSD was misdiagnosed or that either condition mitigated his misconduct as the nature of these conditions are not reasonably related to the misconduct of domestic violence and engaging in adultery. This observation does not negate the applicant’s deployment history or in-service and post-service diagnoses of depression and post-traumatic stress; however, the presence of anxiety, depression, or PTSD during the time period of which he engaged in multiple infractions of misconduct, does not explain or directly mitigate his actions leading to an early separation from the Army. The medical evidence that is available makes no indication that the applicant was misdiagnosed, that he was not responsible for his decisions and actions, or that he was considered psychologically unfit for duty; therefore, there is no basis for his contention that his transgressions would never have happened if he was treated for severe depression in the beginning. *A copy of the complete medical advisory was provided to the Board for their review and consideration.*

39. On 12 October 2016 the applicant was provided a copy of the advisory opinion and given an opportunity to submit comments, but did not respond.

40. On 6 December 2016, after careful consideration of all evidence, the Board again voted to deny the requested relief, determining the evidence presented did not demonstrate the existence of a probable error or injustice.

41. In conjunction with the applicant's current request before the Board, submitted in February 2019, another advisory opinion was provided by the ARBA clinical psychologist on 10 April 2019, which states:

a. A review of military records indicated the applicant's early separation from service was subsequent to a military investigation, dated 15 December 2008, which found he assaulted his spouse, committed adultery, admitted to committing adultery, and committed offenses that amounted to conduct unbecoming of an officer and a gentleman. On 29 January 2009, the applicant received a GOMOR for the domestic assault and battery which entailed beating, choking, and threatening his wife; having ongoing multiple adulterous affairs with women; and for conduct unbecoming of an officer and a gentleman.

b. Since his involuntary discharge in 2012, the applicant has sought reinstatement on active duty due to a misdiagnosis of PTSD and depression. At the time of separation, he had 13 years and 8 months' time in service during that period of service. He contends that if he was diagnosed and properly treated when he initially sought help, he would still be on active duty. He specifically contends that a misdiagnosis of severe depression, should have been diagnosed as PTSD.

c. A review of military medical records indicated a behavioral health treatment history for alcohol abuse, an adjustment disorder with anxiety and depressed mood, depression, and PTSD. The applicant self- referred to ASAP and behavioral health treatment in June 2008 for drinking problems and at the recommendation of his wife. ASAP note dated 18 August 2008 indicated he reported symptoms of depression and increased alcohol use following his second deployment. Behavioral health note dated 2 April 2009 indicated he was first diagnosed with PTSD in response to combat symptoms and disciplinary issues. He endorsed adjustment difficulties following his return from Iraq to include symptoms of depression, low motivation, interpersonal conflict, and marital problems. Post-service, a medical record dated 8 January 2013 indicated the examining psychiatrist stated, in part, his PTSD symptoms had not made the applicant unstable in any way and were more a matter of mild occasional discomfort.

d. An oversight and not included in the prior medical advisory dated 11 October 2016, was a review of discharge summary from Red River Mental Hospital, a Texas state mental health facility. This medical record indicated Mr. Daniels was diagnosed with major depressive disorder, recurrent, severe. It noted the applicant was inpatient

hospitalized on 14 February 2009 following a suicide attempt in his wife's garage in which he tried to hang myself. He endorsed excessive drinking, depression since November 2008, irritability, poor concentration, poor sleep, isolation, helplessness, marital problems to include adultery and separation from his wife, and thoughts of suicide in which he purchased a rope and began the process to hang himself, but feared that he would go to hell and called his command. He was discharged on 24 February 2009 and was noted to be in stable condition with no suicidal or homicidal ideation. Following his hospitalization, he regularly sought behavioral health and family advocacy services until September 2009.

e. Medical notes from Marks Psychiatry and Forensic Services dated 30 April 2012 and 17 May 2012 indicated the applicant had a diagnosis of major depression in remission, a history of alcohol abuse.

f. Despite a review of additional medical documents from Red River Mental Hospital and Marks Psychiatry and Forensic Services, there is no change to the original medical decision. Based on the available information, there is no medical evidence that the diagnosis of depression or PTSD was misdiagnosed. These diagnoses were founded; however, neither severe depression nor PTSD is considered mitigating or reasonably related to the applicant's misconduct of domestic violence or adultery. Specifically, the diagnoses of depression and PTSD do not mitigate and are not reasonably related to:

1) Violation of Article 128- the applicant did commit assault by intentionally inflicting bodily harm to his spouse in which he struck his spouse which was evidenced by pictures of bruises taken in the RACH emergency room.

2) Violation of Article 134- the applicant did wrongfully have sexually active relationships with other women while married which was evidenced by his own admission.

3) Violation of Article 133- the applicant acted in a dishonorable manner and compromised his character as an officer and gentleman as evidenced by violating Articles 128 and 134.

g. Although the applicant was diagnosed with behavioral health conditions during his time in service and was granted a service-connected disability rating from the VA, there is a lack of evidence to support a causal relationship between his misconduct and the conditions of depression or PTSD. There is also no evidence of misdiagnosis. This observation does not negate his service-connected diagnosis of PTSD; however, the VA conducts evaluations based on different standards and regulations. The Army has neither the role nor the authority to compensate for progression or complications of service- connected conditions after separation. That role and authority is granted by

Congress to the VA, operating under a different set of laws.

h. In summary, based on a thorough review of military medical records, to include a review of medical documentation from Red River Mental Hospital, the applicant's medical conditions of PTSD or severe depression were correctly diagnosed in- service and were duly considered at the time of separation. The applicant's basis for separation was Unacceptable Conduct and was not due to a misdiagnosis of PTSD or severe depression. *A copy of the complete medical advisory was provided to the Board for their review and consideration.*

42. The applicant was provided a copy of this second advisory opinion on 15 April 2019 and given an opportunity to submit comments. The applicant responded twice, once on 30 April 2019 and again on 26 May 2020.

43. In the applicant's 30 April 2019 response he states:

a. The intent with his submitted request on 17 February 2019 was, to request an MEB/PEB review his case and that would be a better vehicle for evaluating his medical records, OERs, testimony of expert witnesses, Board of Inquiry minutes, and his rebuttal statements from a clinical aspect, due to the complexity of his case.

b. The advisory opinion from the military psychiatrist, who has not personally evaluated him, does not clinically give an alternate assessment of what caused his severe depression. The analysis of his severe depression as developed by the Red River Treatment Team was his challenges endured during combat were the root cause. The affair, alcoholism, and acts of violence were coping mechanisms for the severe depression. This is what he developed his recovery plan based on. He additionally requested an extension of his case for 30 days.

44. The applicant again responded on 26 May 2020. In his response he provided a memorandum from Counsel, a new letter from Dr. T____ M_____, dated 2 April 2020, and the previously provided and discussed documents of his Red River Discharge Summary, dated February 2009 and Standard Forms 600, dated August 2008 and February 2009.

45. The letter from Dr. T____ M____ of Marks Psychiatry, dated 2 April 2020 states:

a. She evaluated the applicant for the purpose of determining whether or not he had a mental condition at the time of his Army separation in 2012 and if a mental condition was present, was the mental condition related to his service and the misconduct for which he was discharged.

b. It was her opinion, within a reasonable degree of medical and psychiatric certainty, that beginning around 2007 during his second deployment to Iraq, that the applicant suffered from major depression. His symptoms persisted after his return to Oklahoma and these symptoms took the form of irritability, depressed mood, inability to enjoy things, and insomnia. Contemporaneous medical records show he was treated for depression.

c. Irritability and emotional volatility are symptoms of depression that can result in aggressive behavior, especially in the context of a verbal altercation. In the Board of Inquiry Proceedings, Dr. A____ P____ opined the applicant's behavior more likely stemmed from his personality and not PTSD because she did not see documentation of flashbacks. Also, the ABCMR Record of Proceedings concluded there is no evidence to suggest he did not understand the difference between right or wrong or that he could not adhere to the right.

d. Major depression and the emotional volatility and irritability that come with it does not require a person to lose the capacity to know right from wrong in relation to the act. The disorder lowers the threshold for frustration tolerance, lowers an individual's emotional/impulse control, and negatively distorts their perception of their circumstances. When irritability is present, it makes them more prone to anger. Therefore, it is plausible that a verbal altercation such as the one the applicant had with his wife could trigger aggression in the absence of any flashback or dissociative experiences. It is also likely that his anhedonia, which is the inability to derive pleasure in anything, led to his risk-taking behavior of seeking a relationship outside of his marriage.

e. Based on the timeline of his symptoms and the medical records, the applicant's depression was related to his military service. It is her opinion that the applicant suffered from major depression during his military service. The depression was related to his military service and related to his misconduct from 2008.

46. The memorandum from Counsel, dated 26 May 2020, states:

a. The advisory opinion makes no mention of the expert's qualifications, name, or level of expertise. The opinion itself references evidence found within the applicant's military and medical records. The opinion primarily discusses the negative effects of his diagnosed behavioral health issues, but does not find that these behavioral health conditions relate to the misconduct in this case. The applicant's VA service files, and the medical opinion of Dr. T____ M____ are filled with evidence of his behavioral health issues and diagnosis.

b. The applicant believes there was a failure on the part of the U.S. Army to both investigate the circumstances of his behavioral health conditions and to accurately

diagnose those conditions. The failure of the Army to thoroughly investigate his behavioral health problems is prominent in the medical files and resulted in an erroneous discharge. The Army decided his misconduct was criminal in nature but never investigated how the obvious behavioral health issues may be directly related to the conduct at issue.

c. The Army had an opportunity to rigorously evaluate the applicant and should have conducted a preliminary MEB. At the time of his administrative separation, the command completely ignored his behavioral health conditions. The proper procedure would have been to do an MEB to find out whether he was fit or unfit for duty. This could not have been done without investigating the underlying circumstances of the misconduct. To properly determine whether or not the applicant should have been evaluated and found unfit for duty, he would have had to have been referred to U.S. Army medical personnel to investigate the conditions and diagnosis which made it difficult for him to continue in his military duties.

d. Dr. T____ M____ had the opportunity to do a thorough forensic evaluation of the applicant in this case. She wrote a report in April 2020 detailing his behavioral health diagnosis and the cause of those mental health problems. She clearly states in her report that "Based on the timeline of his symptoms and the medical records, his depression was related to his military service. In conclusion, it is my opinion within a reasonable degree of medical and psychiatric certainty that [the applicant] suffered from major depression during his military service. The depression was related to his military service and related to his misconduct from 2008."

e. The military expert in the advisory opinion does not rely on the medical evidence to make his determination. He seems to rely on the misconduct as proof that there was no underlying behavioral health condition that was causing his conduct. If this board were to require him to provide those medical files and documents that were never properly diagnosed by the command, they would be relieving the Army of its duty to properly investigate the cause of the applicant's behavior and how the detrimental behavior affected his ability to continue military service. The lack of evidence on the part of the original treating medical personnel is without merit. The proper analysis should have been that without the proper records the original decision to not review his condition as a cause of his discharge is without merit.

f. Generally, service connection may be granted for disability due to a disease or injury that was incurred in or aggravated by service. In addition, service connection may be granted for any disease diagnosed after separation, when all the evidence, including that pertinent to service establishes that the disease was incurred in service. The applicant was on active duty status at the time that these incidents occurred. At the time of the alleged misconduct, he was suffering from severe mental disease. The injuries were caused by his military service and were related to the Army. All the

symptoms described by Dr. M____ in her analysis, including suicidal ideation, were present during his initial visit to the Fort Sill Behavioral Health Clinic in August 2008. This was the optimal time when the applicant should have been sent to an isolated treatment facility such as Walter Reed or the Red River Mental Health Hospital. If his command and the treatment facility had been proactive, then he may still have been on active duty today.

g. Dr. M____ has opined, “It is my opinion within a reasonable degree of medical and psychiatric certainty that beginning around 2007 during his second deployment in Iraq, the applicant suffered from major depression. His symptoms persisted after his return to Oklahoma, and these symptoms took the form of irritability, depressed mood, inability to enjoy things (anhedonia), and insomnia. [The applicant] was treated for depression and the contemporaneous medical records document his complaints and treatment.”

h. In this case the unit rushed to judgment. The applicant has a unique, but honest perspective on his situation at the time and he states, “When you spend years taking on inadequacies outside your span of control it takes a toll. My circumstances are unique only to me, which were a series of continuous events operating independently of each other. An outline of those details is in the forensic analysis of Dr. M____. However, I want to explain three crucial events by my chain of command along with the Fort Sill Behavioral Health Clinic that were counterproductive in my treatment. From 2008 through 2009, my chain of command unintentionally deepened my depression while I was seeking treatment to get better. The three contributing factors are lack of a thorough investigation, treatment interference, and no continuity of care.”

i. The U.S. Army had an opportunity to investigate the applicant’s behavior through a thorough investigation. Under Army regulations, when a Soldier has committed offenses under the UCMJ, the command has the authority and duty to investigate the circumstances of the offenses. The investigation should be thorough. The applicant remembers that “The investigating officer did not conduct a complete investigation. A police report is not evidence. Detective P____ mistakenly wrote he admitted to multiple affairs in his report after interviewing my wife and myself. Coincidentally, my wife’s information to the Lawton Police Department was regurgitating the false testimony of Ms. T____ B____. My command thought they had a pattern of my testimony with the Lawton Police Department and Ms. T____ B____’s false statement, but it was not. Outside of Ms. T____ B____’s statement, there was not any other evidence. This furthered his depression. Ms. T____ B____ recanted her accusation of multiple affairs in 2010. My continuous written rebuttals were consistent but never taken seriously. The investigating officer and my chain of command never heard my taped interview. I requested it at my Board of Inquiry hearing however the authorities destroyed it.”

j. In reviewing the medical records, Dr. M____ found that "[The applicant] received a GOMOR for his conduct related to infidelity and hitting his wife. [The applicant] felt demoralized by the GOMOR because he felt some of the language in the documentation portrayed him as a man who victimized women. [The applicant] contemplated suicide for a few weeks before nearly making an attempt to hang himself in February 2009." He was hospitalized and discharged to two months outpatient treatment. Part of his treatment plan at Red River Mental Hospital was for him to volunteer to return to Iraq as a goodwill gesture to give back to the military. He deployed to Iraq again in October 2010 and at the time of this deployment, he was aware of proceedings that were in motion to have him discharged from the military secondary to his GOMOR. He involuntarily separated from the Army in November 2012.

k. The command assumed that the misconduct that was investigated did not have a correlation to the mental health issues experienced by the applicant. The failure to investigate was directly attributable to the command. In this case, the unit originally had knowledge of the behavioral health issues. They continued to prosecute the applicant, but did not review how either the misconduct or his duties were affected by his behavioral health.

l. The applicant believes the command did not take his behavioral health issues seriously and they became part of the problem. His battalion commander unintentionally interfered with his treatment. He underwent a complete assessment after nearly taking his life in 2009. Despite significant documentation in his medical records, precious assessments never played a part. This was primarily due to Lieutenant Colonel (LTC) T____ reporting the applicant had several affairs as a possible motive for wanting to commit suicide. Of course, the Board of Inquiry acknowledged Ms. B____'s affidavit recanting her story in 2012. The Fort Sill Behavioral Health Clinic did not maintain a continuity of care. This would alert them of his treatment plan developed from his severe depression. Red River Mental Health Institute was trusted with providing him proper treatment, but his treatment plan never followed him to outpatient care. Red River Mental Health Hospital was his recovery turning point because he was able to focus without distractions.

m. The applicant requests immediate reinstatement on active duty with at least 90 days of transition through the Army's Wounded Warrior Program at Walter Reed Army Medical Center. This would allow him to be fully evaluated mentally and physically for active duty in an isolated environment, which is the same process that should have happened over one decade ago in August 2008. During this transition, the applicant requests the GOMOR ant two referred OERs be removed from his official file and he be reevaluated for the Fiscal Year 2008 Major Promotion Board. This transition time will allow the applicant to resolve financial difficulties and reapply for a secret security clearance after a clean bill of mental and physical health. If for any reason medical

officials feel the applicant is unfit for duty during the 90-day treatment, an MEB would be called for.

n. Due to his courageous undocumented success after his treatment at the Red River Mental Health Hospital, the applicant deserves this opportunity. The applicant did everything right and has no control over the actions of others involved in his personal life and professional career.

47. On 19 June 2020, a third advisory opinion was provided by the ARBA clinical psychologist, which states:

a. In May 2020, the applicant, through counsel, submitted a response to a 2019 ARBA medical advisory, a second advisory subsequent to a court remand, requesting "immediate reinstatement to active duty," specifically the Wounded Warriors Program, allowing the applicant to "be fully evaluated mentally and physically for active duty in an isolated environment" asserting this should have occurred in August 2008. Additionally, the applicant requested his GOMOR and deferred OERs be removed and he be re-evaluated for the FY08 MAJ Board. The applicant noted when given a "clean bill" of health, i.e. fit for duty, he'd be able to resolve financial difficulties and obtain a security clearance; however, if determined to be unfit a MEB would "suffice."

b. The applicant included a March 2020 psychiatric evaluation in support of his request. The evaluation was conducted based on the applicant's self-selected 2008-2009 treatment records, self-report, and review of the psychiatrist's prior two encounters with the applicant in 2012. The evaluation is void of a review of Officer Evaluation Reports (OER), Service Schools, or other documents related to performance. The evaluation is void of a review of the letter of reprimand, investigative or police reports, or other documents related to misconduct. Accordingly, the evaluation contains information that is incongruent with other documentation. The evaluator's conclusion was the applicant had Major Depressive Disorder while in-service, related to combat, and the related symptoms contributed to his misconduct.

c. In 2010, the applicant requested a GOMOR be moved to his restricted OMPF. ARBA reviewed the January 2009 Letter of Reprimand (LOR) which indicated the applicant admitted to his wife he'd had an affair leading to a physical fight in which he "attacked her by hitting her with his hands, then with a plastic baton, on her face and head to the brink of unconsciousness and leaving her with bruises still visible 5 days later. He reported when she fell, he dragged her across the floor. He choked her, scratching her on her neck. He verbally threatened her to the point that she feared for her life." The LOR indicated the applicant reported using an online site to meet other woman and had engaged in affairs with several women to include impregnating the wife of a deployed Soldier. The LOR stated the applicant admitted being the father of twins from a June 2008 affair which also started online and had

continued. While initially telling the woman he was pending a divorce, after learning he was living with his wife they continued a daily sexual relationship noting sexual activity "after morning physical training, on lunch breaks, and anytime he did not have to be at work."

d. In support of his 2010 request, the applicant highlighted his OERs, after the LOR, top blocked him with ratings of Outstanding Performance, Best Qualified, and Must Promote. A statement of support indicated the applicant's "performance and conduct as an officer is nothing less than admirable, and that he is highly regarded by his Iraqi counterparts and superiors alike."

e. The Board felt there was insufficient evidence to show the intent of the GOMOR had been served; it "would not be in the best interest of the Army to transfer it at this time." His request was denied.

f. In October 2012, the Deputy Assistant Secretary of the Army (DASA) approved the Board of Inquiry (BOI) and ARBA recommended separation; misconduct and moral and professional dereliction with an Honorable characterization.

g. In 2014, the applicant applied to the ABCMR requesting his military records be corrected asserting his GOMOR "contains erroneous information and resulted in his unjust involuntary discharge." Additionally, the applicant asserted he was "misdiagnosed with severe depression when in fact he suffered from chronic post-traumatic stress disorder (PTSD)" and if he had "been properly diagnosed and properly treated, his misconduct would not have resulted." The applicant reiterated his success after the misconduct noting the three subsequent OERs, 1 October 2009 through 9 March 2012, "show maximum ratings and recommend him for promotion to major."

h. The applicant included a February 2009 psychiatric discharge from Red River Mental Health hospital diagnosing MDD.

i. The applicant included psychiatric consultation notes from April and May 2012, written by the same provider as the updated March 2020 evaluation, listing a History of MDD in Remission and Alcohol Abuse. The applicant indicated he had been happily working as a nursing assistant part-time for four months; he stated he "felt needed" which he did not feel as a Soldier. The provider indicated presenting symptoms surrounded a sense he "was just a number" and "dissatisfaction with current job" as a Soldier "doesn't feel appreciated." The applicant reported "good" sleep, "ok" energy, and when bored "some" trouble concentrating. The Mental Status Exam (MSE) was unremarkable. The provider stated whether or not the applicant had PTSD in the past was "unclear;" however it was "not a current issue." The May 2012 follow up note restated the applicant had a history of depression, but his "current state – general

discontentment" was related to work dissatisfaction and determined treatment was not needed; he did not have a psychiatric condition requiring intervention.

j. The applicant submitted a VA record reflecting a diagnosis of PTSD and service connection for Anxiety Disorder NOS with Major Depressive Disorder.

k. The Board denied his request; his discharge was proper and equitable and behavioral health conditions were not contributory.

l. In June 2015, the applicant requested reconsideration. An ARBA Clinical Psychologist completed an advisory opinion concluding his condition, MDD, was not misdiagnosed and "there is no basis for the applicant's contention that his transgressions would never have happened if he was treated for severe depression in the beginning." His request was denied.

m. In February 2019, ARBA received a court remand requesting ARBA consider mental health records not previously reviewed. The applicant requested ARBA direct his case to the MEB/PEB who could either "validate the Army's current position," recommend placement on the TDRL or PDRL, or reinstate him to active duty.

n. In April 2019, the ARBA Clinical Psychologist completed a second advisory after reviewing additional documentation; however, concluded the applicant was not misdiagnosed and his misconduct was not mitigated by the diagnoses. The ARBA Senior Medical Advisor (SMA) reviewed both advisories and concurred.

o. In response, the applicant requested the case be referred to the MEB/PEB asserting these Boards "would be a better vehicle in evaluating" documentation. The applicant asserted the ARBA advisory was flawed as the individual did not personally evaluate him and reiterated his assertion his misconduct was related to depression.

p. The Interactive Personnel Electronic Records Management System (iPERMS) contains completed Service Schools in Field Artillery Officer Basic Course, Field Artillery Captains' Career Course, and Staff Process Course of the Combined Arms and Services Staff School from 1999 to 2003.

q. The applicant's OERs from 2000 through May 2008 reflect successful performance and ratings. The May 2008 to March 2009 OER addresses the GOMOR for misconduct rating him as Unsatisfactory and not recommended for promotion.

r. The April to September 2009 OER indicated the applicant had "exemplary work displays exceptional initiative," was holding multiple jobs to include assistant operations

officer while still teaching, was “invaluable to students,” executed tasks “flawless,” and assisted with rewriting BOLC classes. The applicant was recommended for Command and General Staff College, in residence.

s. The October 2009 to September 2010 OER reflected Outstanding Performance, Best Qualified, and Must Promote. His rater stated the applicant’s “performance is in the top quarter of all combat Arms Officers that I have observed within the last 21 years” as he could complete a “variety of complex and challenging tasks” still accomplishing them “to the highest standard.” Moreover, “His efforts were key to the success of increase in combat effectiveness as they provided a safer, more secure environment…” The senior rater indicated the applicant was in the “top ten percent of all company grade officers I have served with over the past 27 years … functioned at the senior Major level with professional maturity … always demonstrated the insight, integrity, vision, moral courage, and selflessness we look for … among the best we have and has shown an outstanding adaptability through his work…”

t. The October 2010 to September 2011 OER reflected Outstanding Performance, Best Qualified, and Must Promote indicating he was a “gifted leader,” could “always be counted on to produce excellent results,” “flawlessly supervised … provided outstanding analysis,” and emphasized promotion to Major and ILE, in residence, as “He is a future BN Commander.”

u. The October 2011 to March 2012 OER reflected Outstanding Performance, Best Qualified, and Must Promote stating the applicant was “number two of five Captains that I rate,” “critical to the success of that mission,” “master of managing several competing lines,” “hand-picked,” “smart and tenacious officer who has almost single handedly helped revise the Brigade’s T/M certification program as well as train the rest of the staff,” and should be promoted “immediately and place in a demanding armor battalion S3 or XO position.”

v. The DOD electronic medical record (AHLTA) indicates the applicant’s first behavioral health contact was in August 2008. At that time his wife and he reported increased drinking, irritability, discomfort in crowds, lack of motivation, impatience, fatigue, and difficulty relaxing. His wife added when the applicant was intoxicated, he made suicidal statements. The applicant was diagnosed with Alcohol Abuse with further evaluation for Depressive Disorder NOS. In follow up, the applicant reported depressive symptoms were secondary to dissatisfaction with his new role as an Instructor; “feeling of being somewhat unimportant and limited ability to access quality resources to do his current duty…” The applicant then joined a PI project indicating it instilled a sense of importance and engaging in a worthwhile task leading to symptom resolution; he reported sleeping well, exercising, and drinking less. The applicant was diagnosed with an Adjustment Disorder with Depressed Mood and Alcohol Abuse in Remission.

w. In October 2008, the applicant requested marital therapy noting difficulties since he had an affair resulting in pregnancy and an abortion. He noted his wife informed him she never felt he loved her and he "validated" some of these feelings. The following month, Command referred him after a domestic violence incident. The applicant "complains of increased drinking, increased irritability, pt. is also reporting struggling to find a sense of purpose in his current positions." During therapy, he stated "he had not been honest … had been having an affair and he reports that there were altercations that ended up with him staying at his old house;" a no contact order was in place. The applicant reported his wife was fearful of him leading her to stay at an unknown shelter rather than the home he left. The Family Advocacy Program (FAP) became involved and contacted Command who believed the applicant's wife initiated the argument; however, acknowledged the applicant's misconduct during the altercation. Command reported due to the events, the applicant's promotion was on hold and he was being referred to the Army Substance Abuse Program (ASAP). Command indicated the applicant had been successfully involved and discharged from ASAP in the past. Due to the period of service, FAP records were primarily contained in a hard file; there is limited information on the assessment and treatment. Additionally, ASAP records were also maintained in a hard file; the contents of the assessment and treatment are unknown. However, records do indicate he was attending ASAP with an Alcohol Abuse diagnosis listed.

x. In December 2008, the applicant reported his attitude changed after deployment "because of his frustrations with those experiences." A post-deployment screening indicated the applicant reported "mild depression, anger." The applicant was diagnosed with Anxiety Disorder NOS.

y. In January 2009, there was a second domestic incident. The applicant reported his wife asked him to come to their home which resulted in an altercation and she threw hot water on him. The applicant did not report the incident; however, while at a medical appointment, the provider noticed it. While the applicant was the victim in this incident, the provider noted he had violated the no contact and protective order. That same month, he saw psychiatry and was diagnosed with an Adjustment Disorder and prescribed an antidepressant. At the end of the month, he reported doing well.

z. In February 2009, the applicant rated himself as experiencing only mild irritability and difficulty related to marital, legal, and occupational stressors. He was later taken to the ER after an attempted suicide. The applicant reported the suicide attempt was in reaction to his letter of reprimand; the way it portrayed him, embarrassment, and concern for his future in the Army. The provider indicated "Service member denies a lot of PTSD-type symptoms … does remember being somewhat depressed with the loss of soldiers and was not able to make a connection with his soldiers." The applicant was subsequently hospitalized at Red River Mental

Health hospital and discharged with a diagnosis of Major Depressive Disorder (MDD); at the time of hospitalization the applicant had sufficient depressive symptoms with impairment in his ability to manage stressors to the extent he was suicidal. Of note, a diagnosis of MDD, in and of itself, does not fail medical retention standards; the expectation is with treatment individuals are able to improve and are given this opportunity before determining they are permanently unfit. At follow up, he reiterated his suicide attempt was related to his "pending a letter of reprimand from the CG and he could not face what other people thought or the ramifications this would have." He also discussed how a difficult childhood contributed to a sense of failure creating a sensitivity; any indication of failure triggered mood and behavioral symptoms. The applicant verified the adultery and domestic assault feeling divorce was the best recourse. Command reported prior to the suicide attempt, and since then, there "were no behavior problems noted on the job." The applicant's treatment surrounded coping with his legal issues, addressing his martial relationship, and understanding how his childhood experiences resulted in poor self-esteem and chronic feelings of failure. By the end of February, the applicant reported socializing, engaging in enjoyed activities, and actively participating in his legal defense; there was minimal symptoms or impairment.

aa. In March 2009, the applicant reported "feeling pretty good," other than a sense of "humiliation" about the UCMJ action, and was "seeing himself handing the situation." He rated his anxiety and depression as mild stating he "feels good" and "reports and appears to be coping well at this time;" his diagnosis was an Adjustment Disorder. Later in the month, the provider discussed maladaptive relational patterns; however, "reports that he is doing well at this time," was going out to dinner with his wife, and had an unremarkable MSE. Treatment continued to focus on identifying and overcoming childhood experiences and relational difficulties; treatment was not trauma based or related to MDD.

bb. In April 2009, the applicant reported marital issues began after his deployment. Additionally, he felt he sought an adrenaline rush post-deployment. The provider diagnosed PTSD. However, documentation is void of criteria to include clinically significant impairment; there is no substantiation for the diagnosis. The applicant continued to report "he is doing well." Moreover, he noted he "always received good ratings and had never had any disciplinary action in the past." In mid-April, the applicant indicated he was going to be retained and was "feeling quite happy pleased." Throughout April, he reported doing well and appointments were to "provide support" as he was "in good spirits and has a healthy outlook."

cc. In May 2009, the applicant reported treatment was helpful as it allowed him to "engage in extensive self-examination and exploration …working and developing

his self…" In mid-May, he reiterated he had "No anxiety and no depression;" his MSE was unremarkable.

dd. In August 2009, the applicant was preparing for PCS, volunteering to deploy, held a part-time job on the weekends, and was working on his marriage. In September, he was cleared to PCS and later to deploy.

ee. In April 2011, the applicant had a redeployment screen denying difficulties; "SM reported no present concerns." In June 2011, he sought out behavioral health due to pending administrative action and related stress. He did not return.

ff. In May 2012, he requested an off-post referral for therapy; "Pt states currently he is experiencing some depression due to occupational stressors." His MSE was unremarkable and "currently stable." He was cleared for an off-post referral as he was not a high risk Soldier or diagnosed with conditions mandating on-post treatment. In his final appointment, out-processing the Army, the applicant referenced the previously referred to April and May 2012 consultation notes which reflected a history of MDD, in Remission; he did not hold a psychiatric diagnosis at the time of separation.

gg. VA electronic medical records (JLV) indicate the applicant is 30 percent service connected for Anxiety Disorder NOS with MDD.

hh. In January 2013, the applicant sought out approval for a Security Clearance. The provider noted the applicant had "some PTSD" symptoms;" however was not in treatment as he was "doing very well … has made an excellent adjustment to civilian life." Although the provider indicated "some" PTSD symptoms, it was determined any symptoms had not "made him unstable in any way and are more a matter of mild occasional discomfort." Although this negates a PTSD diagnosis, as it lacks criteria to include clinically significant impairment, the provider listed PTSD.

ii. In February 2019, the applicant returned requesting an "independent psychological evaluation for the Army Board of Medical Examiners related to medical retirement." He reported a history of depression and anxiety with recent medication management. The provider explained this was not a service the VA could provide. The note lists a diagnosis of Anxiety Disorder NOS; this is more likely than not carried over from his service connected list as the note is void of substantiation.

jj. The ARBA clinic psychologist was asked to determine if the applicant had a behavioral health condition in service that failed retention standards. This opinion is based on the information provided by the Board, DOD electronic medical record (AHLTA), the Joint Legacy Viewer (JLV), and personnel records. Based on a thorough review of available records, the applicant met medical retention standards. The applicant initially went to behavioral health in 2008 reporting anxiety, depression, and

alcohol misuse. During follow up, he clarified occupational dissatisfaction drove symptoms and had resolved after identifying work activities that offered a sense of purpose. From 2008 until his separation, treatment surrounded occupational dissatisfaction, relational difficulties, legal stressors, and reactivity to a sense of failure or loss of purpose. While he held a variety of diagnoses over the course of care, an adjustment disorder best fits the applicant's symptom description, presentation, and lack of significant impairment. Even if the other diagnoses are taken at face value, at no point did the applicant's symptoms, presentation, or functioning reflect a Soldier who was psychiatrically unfit. Rather, the applicant consistently reported mild or no symptoms, provided a 2012 off-post consultation which was void of an active psychiatric diagnosis, and exhibited exemplary performance. In summary, while the applicant received behavioral health service in service, he continued to meet medical retention standards.

48. On 23 June 2020, the applicant was provided a copy of the 19 June 2020 advisory opinion and given an opportunity to provide comments. On 30 August 2020, Counsel and the applicant responded, providing a written rebuttal by each and multiple supporting documents, all of which have been provided to the Board for review, including clinical notes by Dr. J____ G____, a PCL-5 with LEC-5 and Criterion A document, Tactical Design information paper, and Direct –Effect Solutions, LLC information document.

49. In his rebuttal, Counsel states:

a. Most of the advisory opinion relates the history of the present case and only briefly concludes with, "While he held a variety of diagnoses over the course of care, and adjustment disorder best fits the applicant's symptom description, presentation, and lack of significant impairment. Even if the other diagnoses are taken at face value, at no point did the applicant's symptoms, presentation, or functioning reflect a Soldier who was psychiatrically unfit. Rather, the applicant consistently reported mild or no symptoms, provided a 2012 off post consultation which was void of an active psychiatric diagnosis, and exhibited exemplary performance. In summary, while the applicant received behavioral health service in service, he continued to meet medical retention standards." The opinion offers absolutely no response to the previously submitted response by the applicant to the April 2020 advisory opinion. Once again, the opinion seems to rely on the history of the case as a diagnosis of adjustment disorder. This has been wholly refuted by the applicant's subsequent medical history.

b. The opinion suggests the applicant's diagnosis of adjustment disorder was not related to his combat trauma prior to his PCS to Fort Sill, OK. This does not negate Dr. M____'s 2020 assessment of his service-connected transgressions, ultimately justifying his involuntary separation from active duty. Numerous assessments performed by

board analysts and outside board advisors continuously overlook the Red River Mental Health diagnosis and Dr. M____" initial 2012 assessment, both conducted during his military service. Furthermore, it was military medical officials who transferred the applicant to the Red River Mental Health Hospital. Even though the military is not bound by a civilian diagnosis, the Board should take it into consideration as it was a military psychologist who recommended Red River Mental Health Hospital. The advisory opinion should take those documents into account. It is immaterial where a patient receives treatment or advice if the accredited individuals follow the code of conduct and do not operate outside the scope of their profession.

c. The command should not have interfered with the applicant's treatment. He should have been directed to Walter Reed rather than Red River Mental Health Hospital for service-connected mental issues. This is precisely why is treatment plan is not documented. The command and Fort Sill Behavioral Health Clinic had several opportunities to get it right. The 15-6 investigation did acknowledge the applicant was receiving mental health treatment, but the command never considered any of his experiences in combat contributed to his unethical behavior. The command focused more on providing inaccurate information rather than receive information from the applicant's providers and/or requesting an MEB.

d. As new circumstances arose, they should have been vetted through the 15-6 investigating officer, not directly through the command, eliminating bias. There is no evidence that the 15-6 investigating officer interviewed the applicant's accuser, but the applicant's wife told the investigating officer she did not personally have knowledge of the applicant having multiple affairs. Even after she wrote the affidavit, the investigating officer should have interviewed Ms. B____ himself. This channels information through one source. Based on a complete investigation, the command should have just put the facts in the letter of reprimand. The applicant would have been fine with that. The letter of reprimand should have been filed locally, which would have met the command's obligation in addressing the intolerance of unethical behavior and acknowledging his behavior was service-connected. The applicant could have continued his treatment and military career.

e. The applicant requests that he be given full reinstatement on active duty, a discharge upgrade, medical retirement, or regular military retirement.

50. In the applicant's rebuttal, he states:

a. It is illogical to conclude an adjustment disorder diminishes his misconduct as serviced connected. The medical advisor's opinion of adjustment disorder is part of a bigger picture. The opinion never pinpointed a possible origin because he or she cannot with the given information. Page 1, paragraph 2 of the 19 June advisory opinion states in reference to the forensic psychiatric analysis performed by Dr.

M____: “The evaluation was conducted based on the applicant’s self-selected 2008-2009 treatment records, self- report, and review of the psychiatrist’s prior two encounters with the applicant in 2012. The evaluation is void of a review of Officer Evaluation Reports (OER), Service Schools, or other documents related to performance. The evaluation is void of a review of the letter of reprimand, investigative or police reports, or other documents related to misconduct.” This statement is false. The documentation he submitted to Dr. M____ for analysis excluding medical records included:

- minutes from the BOI
- Letter of Reprimand
- OERs from 2009-2012
- Fort Sill Oklahoma Police Report
- 15-6 Investigation
- accuser’s Sworn Statement

b. Dr. J____ G____’s diagnosis was not included in her forensic diagnosis but was mentioned by Dr. M____ and the 19 June 2020 advisory opinion. He was able to retrieve his medical evaluation after the release of this 19 June 2020 advisory opinion and included a copy of it with his supporting documents.

c. Page 4, paragraph 9 of the 19 June advisory opinion: “The DOD electronic medical record (AHLTA) indicates the applicant’s first behavioral health contact was in August 2008. At that time his wife and he reported increased drinking, irritability, discomfort in crowds, lack of motivation, impatience, fatigue, and difficulty relaxing. His wife added when the applicant was intoxicated, he made suicidal statements. The applicant was diagnosed with Alcohol Abuse with further evaluation for Depressive Disorder NOS. In follow up, the applicant reported depressive symptoms were secondary to dissatisfaction with his new role as an Instructor; “feeling of being somewhat unimportant and limited ability to access quality resources to do his current duty…” The applicant then joined a PI project indicating it instilled a sense of importance and engaging in a worthwhile task leading to symptom resolution; he reported sleeping well, exercising, and drinking less. The applicant was diagnosed with an Adjustment Disorder with Depressed Mood and Alcohol Abuse in Remission.” The first behavioral health contact also documents: “Service member reports two previous deployments to Iraq, first from 2004-2005 and second from 2006-2007…SM stated he wanted to get help several months ago, but he never followed through.” As stated, his problems started immediately after his second deployment before his transition to Fort Sill. If he suffered from adjustment from not adapting to standardized military life circumstances, then he would not have the 17 years of military service with accolades of accomplishments.

d. The overall analysis by the medical advisor is misleading simply because

assessments within his military medical records lack constructed responses. He only answered questions he was asked. There is a difference between “How was your day?” verses “Why did you join the Army?” The lack of constructed responses focused on current life circumstances that revolved around work and marriage. Reviewed repeated patterns of answers of questions surrounding his current environment, it is easy for anyone to conclude he suffered from an adjustment disorder. In addition, he never malingered from duty because he wanted to get better. Most of his follow-ups were promising simply because he was trained to interview well. This was from key leadership engagements in Iraq. After so many periodic assessments, he learned to mask his depression. It was his wife encouraging him to get help, not the command. His misconduct started at home and not at work. During the BOI Inquiry Dr. A____ P____ was asked her opinion on his diagnosis. She stated she could not give an assessment because she never treated him personally but she opined depression from childhood events. The stark contrast is treatment from the civilian providers allowed constructive responses in order to have a complete picture. The one opportunity he had in giving a constructed response was given inconsequently by his command with false information.

e. In his 14 February 2009 Mental Health Assessment for attempted suicide Dr. D____ states: “Details of the event: Service member has had a chronic history of behavior and relationship problems over the last several months and during this time there is the issue of domestic violence and now a no contact order between him and his spouse… Around the same time he was given a letter of reprimand by the general of the post due to his behavior. This seems to have been a critical moment in his recent mental health decline as he reports that as he read the letter he decided that this person that they were describing on paper really was not who he wanted to be.” RISK ASSESSMENT: Service members at high risk to harm himself and In the Imminent future as his time In the military Is coming to an end and or likely is coming to an end. When asked If he could kill himself again what he said "I don't know" his personality and view of himself his Informed around the military and yet his Impulse control and judgment has been quite poor as the unit reports that he said several extramarital relationships In the domestic assault with his wife as other Issues as well that the behavioral problems and yet when he goes to work they say he Is quite effective service loss of this note to her position as an officer and over for 17 years has damaged his persons self-concept. In addition to this his loss of focus progressive depression his alcohol consumption and his distorted thinking make his likelihood of acting quite high.”

f. The only opportunity he had in delivering a constructed response on the affair was during the BOI during a cross examination: “It was not really what my wife not giving what I needed it was me giving myself what I needed. My love for my wife never changed. My love for the Army never changed. It was taken that time. To continue to lead the Soldiers, I did not have time for myself to face”. He

did not have a psychiatrist or psychologist on his behalf to advise the board members on this statement. At this juncture in the applicant's rebuttal, he included an imbedded chart depicting a timeline of events that coincide with Dr. M____'s analysis. He states his challenges started immediately after redeployment and before he arrived at Fort Sill. Job satisfaction at Fort Sill, was a coping mechanism:

g. He then details what he deems are independent decisions made at the Operation, Division and Army Headquarters Levels. After his branch transfer, leadership promised a transition course that never happened. Several months later, training took priority over him attending the Commander and First Sergeant Course. Due to a surplus of captains in Europe, his battalion commander decided he would take a follow on command during the deployment. This was to give another captain command time for the promotion board. After arriving in Kuwait, Theater Command dismantled their brigade combat team and attached them to other U.S. forces. Did his Branch Manager know his leadership would deny him the Commanders and First Sergeant and the Armor Transition Course? No. Did his battalion commander know he would take command of two of the most hostile providences in Iraq? No. Did the brigade commander know dismantling his forces was a Theater Command decision prior to arriving in Kuwait? No. As a result, he had a 15-6 investigation soon after he took my second command in Ramadi. One of his platoons fired upon a friendly Marine convoy. The investigation determined that lacking knowledge of Marine vehicles greatly contributed to the force on force incident. The first constraint was they never knew they would co-op with Marines prior to deploying. The second is he never trained that platoon before the deployment, but ultimately was responsible. This is just one of several incidents in which every tiered independent decision had the same effect on his stress. Several of these details are in his rebuttals and testimony to the 2012 Board of Inquiry.

h. Page 5, number 9, paragraph 5 of the 19 June advisory opinion states: "Of note, a diagnosis of MDD, in and of itself, does not fail medical retention standards; the expectation is with treatment individuals are able to improve and are given this opportunity before determining they are permanently unfit." His "fit for duty" analysis was due to his hard work and dedication through a treatment plan he developed during his time in Red River Mental Health Hospital. Despite his medical records excluding his Red River treatment all together, portions of my treatment plan are mentioned in my medical records. A detailed outline of his progression is in his relief request to the ARBA in 2010 and the board of inquiry in 2012. He managed his treatment in three stages.

i. Stage 1 was as follows: As mentioned in the page 6, number 9, Paragraph 10 Advisory Opinion: "In August 2009, the applicant was preparing for PCS, volunteering to deploy, held a part-time job on the weekends, and was working on his marriage. In

September, he was cleared to PCS and later to deploy." He acquired a part-time job assisting three male clients suffering from retardation, brain injury and autism. He would bathe them, change their diapers, bathe and feed them. He was physically able to see what he did made a difference, rebuilding my self-worth.

j. Stage 2 was as follows: His removal as an instructor demonstrated the current command lost trust in him. He needed a fresh start and had unfinished business in Iraq. he volunteered for his third deployment as a military advisor for the Iraqi Army and Police. he ensured my soldiers, those he lost during my command did not die in vain, helping to provide stability. He advised Iraq commanders on operations and trained Iraqi soldiers and police officers on preventive maintenance and crater analysis. His training doctrine became the brigade standard and he provided a copy of it in his supporting documents.

k. Stage 3 was as follows: Upon redeploying, he became a trainer, mentor, coach at Fort Stewart, Georgia. Unlike being an instructor at Fort Sill, he was able to prepare deploying Army National Guard and U.S. Army Reserve Units with realistic and relevant scenarios. He developed "Tactical Design", a revised targeting concept deign to help tactical level commanders identify changes and apply appropriate resources in a rapidly changing operational environment, a copy of which has been provided for the Board.

l. Page 5, number 9, paragraph 5 of the 19 June advisory opinion states: "Of note, a diagnosis of MDD, in and of itself, does not fail medical retention standards; the expectation is with treatment individuals are able to improve and are given this opportunity before determining they are permanently unfit." Today, he still understands his triggers. After he was involuntary separated, he took a management position with Home Depot, who fired me within eight months. He hated the way they treated one of his subordinates. Pressured by upper management, he fired him for a documented infraction despite the circumstances. The thought process was "we have several applicants who wants this position so replacing him is not an issue." There was no consideration he had a family or the high cost of turnover. He walked off the job the next day. He found myself dealing with the same stress I experienced on active duty. He got back into service by working for the State of Georgia in Education. He also developed my Human Resource Management Company "DIRECT-EFFECT Solutions LLC". He uses the Tactical Design theory in helping managers make informed decisions in taking care of their employees by focusing on behavior, not unconscious bias. He included an exhibit documenting his human resources management company.

j. In summary, a large portion of the advisory opinion is baseless simply because of the command's interference in his treatment. For the past 6 years, board analysts continue disregarding civilian evaluations simply because specific qualifying criteria is

not in my military medical records. This is precisely why he filed through the Federal Court system. It will NEVER be in his military medical records. However, most of his civilian medical evaluations and opinions were on active duty. The baseline origin became non-combat related when his command inconsequently gave false information to his medical providers. There was never a need to pursue combat-related issues and any review of the same would render the same results. This is comparable to the social injustice happening in America today. When an unarmed African American male is shot, there are attempts to defame his character in order to justify the shooting verses understanding what circumstances lead to the shooting taking place. You can't see the forest through the trees no matter how much you refocus your lenses. It's simple. It wasn't until he was in an isolated environment (at Red River) that he was given the time to focus on his problems, away from the Army, family and friends. Red River's diagnosis of MDD focused entirely on his combat experiences and his treatment plan focused entirely on combat experiences.

51. The Army rates only conditions determined to be physically unfitting at the time of discharge, which disqualify the Soldier from further military service. The Army disability rating is to compensate the individual for the loss of a military career. The VA does not have authority or responsibility for determining physical fitness for military service. The VA may compensate the individual for loss of civilian employability.

52. Title 38, USC, Sections 1110 and 1131, permit the VA to award compensation for disabilities which were incurred in or aggravated by active military service. However, an award of a VA rating does not establish an error or injustice on the part of the Army.

53. Title 38, CFR, Part IV is the VA's schedule for rating disabilities. The VA awards disability ratings to veterans for service-connected conditions, including those conditions detected after discharge. As a result, the VA, operating under different policies, may award a disability rating where the Army did not find the member to be unfit to perform his duties. Unlike the Army, the VA can evaluate a veteran throughout his or her lifetime, adjusting the percentage of disability based upon that agency's examinations and findings.

BOARD DISCUSSION:

1. After reviewing the application and all supporting documents, the Board found that relief was not warranted.

2. The Board reviewed the applicant's contentions, the previous decisions in this case, the 1 February 2019 remand order issued by the United States Court of Federal Claims, the applicant's filings in the same Court, and the evidence of record, including the additional medical evidence submitted by the applicant. The Board found the applicant has failed to demonstrate by a preponderance of evidence an error or injustice

warranting the requested relief, specifically: referral of his records to a Medical Evaluation Board (MEB) / Physical Evaluation Board (PEB) for consideration of whether his mental health conditions were unfitting warranting placement on the Temporary Disability Retired List (TDRL) or Permanent Disability Retired List (PDRL); reinstatement on active duty; removal from his records of a General Officer Memorandum of Reprimand (GOMOR) and two referred Officer Evaluation Reports (OERs); and retroactive consideration for promotion by a Fiscal Year (FY) 2008 Major (MAJ) Promotion Board.

3. The Board determined that the greater weight of the evidence reflects that the applicant met medical retention standards at the time of service separation and was properly discharged from service for misconduct. After considering all the evidence, including the advisory opinions from the Army Review Boards Agency (ARBA) medical officers and the medical opinions and treatment records submitted by the applicant, the Board determined that the applicant has failed to demonstrate by a preponderance of the evidenced that his overall physical condition at the time of discharge warranted a finding that he failed medical retention standards / was unfit for military service. The Board further found no error in the issuance of the GOMOR and referred OERS – issued for domestic assault, adultery / multiple ongoing adulterous affairs, and failure to meet height and weight standards. The Board noted that the applicant was treated for mental health conditions during service, but found that the applicant has not demonstrated by a preponderance of the evidence that his underlying mental health conditions were mitigating to this misconduct / substandard performance. The Board found that the applicant’s medical conditions of PTSD and depression were correctly diagnosed in-service and duly considered in the issuance of the GOMOR and referred OERs as well as during his involuntary separation from service. Consequently, the Board must deny the relief that the applicant has requested.

BOARD VOTE:

| Mbr 1 | Mbr 2 | Mbr 3 | |
|---|---|---|---|
| : | : | : | GRANT FULL RELIEF |
| : | : | : | GRANT PARTIAL RELIEF |
| : | : | : | GRANT FORMAL HEARING |
| :SP | :SF | :KC | DENY APPLICATION |

BOARD DETERMINATION/RECOMMENDATION:

The evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned.

11/24/2020

X Suzanne M. Pierce

CHAIRPERSON
Signed by: suzanne.m.pierce4.civ@usa.army.mil

I certify that herein is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in this case.

REFERENCES:

1. Title 10, U.S. Code, chapter 61, provides the Secretaries of the Military Departments with authority to retire or discharge a member if they find the member unfit to perform military duties because of physical disability. The U.S. Army Physical Disability Agency is responsible for administering the Army physical disability evaluation system and executes Secretary of the Army decision-making authority as directed by Congress in chapter 61 and in accordance with DOD Directive 1332.18 and Army Regulation 635-40 (Physical Evaluation for Retention, Retirement, or Separation).

a. Soldiers are referred to the disability system when they no longer meet medical retention standards in accordance with Army Regulation 40-501 (Standards of Medical Fitness), chapter 3, as evidenced in an MEB; when they receive a permanent medical profile rating of 3 or 4 in any factor and are referred by an MOS Medical Retention Board; and/or they are command-referred for a fitness-for-duty medical examination.

b. The disability evaluation assessment process involves two distinct stages: the MEB and PEB. The purpose of the MEB is to determine whether the service member's injury or illness is severe enough to compromise his/her ability to return to full duty based on the job specialty designation of the branch of service. A PEB is an administrative body possessing the authority to determine whether or not a service member is fit for duty. A designation of "unfit for duty" is required before an individual can be separated from the military because of an injury or medical condition. Service members who are determined to be unfit for duty due to disability either are separated from the military or are permanently retired, depending on the severity of the disability and length of military service. Individuals who are "separated" receive a one-time severance payment, while veterans who retire based upon disability receive monthly military retired pay and have access to all other benefits afforded to military retirees.

c. The mere presence of a medical impairment does not in and of itself justify a finding of unfitness. In each case, it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the Soldier may reasonably be expected to perform because of his or her office, grade, rank, or rating. Reasonable performance of the preponderance of duties will invariably result in a finding of fitness for continued duty. A Soldier is physically unfit when a medical impairment prevents reasonable performance of the duties required of the Soldier's office, grade, rank, or rating.

2. Army Regulation 635-40 establishes the Army Disability Evaluation System and sets forth policies, responsibilities, and procedures that apply in determining whether a Soldier is unfit because of physical disability to reasonably perform the duties of his office, grade, rank, or rating. Only the unfitting conditions or defects and those which contribute to unfitness will be considered in arriving at the rated degree of incapacity warranting retirement or separation for disability.

a. Paragraph 3-2 states disability compensation is not an entitlement acquired by reason of service-incurred illness or injury; rather, it is provided to Soldiers whose service is interrupted and who can no longer continue to reasonably perform because of a physical disability incurred or aggravated in military service.

b. Paragraph 3-4 states Soldiers who sustain or aggravate physically-unfitting disabilities must meet the following line-of-duty criteria to be eligible to receive retirement and severance pay benefits:

(1) The disability must have been incurred or aggravated while the Soldier was entitled to basic pay or as the proximate cause of performing active duty or inactive duty training.

(2) The disability must not have resulted from the Soldier's intentional misconduct or willful neglect and must not have been incurred during a period of unauthorized absence.

3. Title 10, U.S. Code, section 1201, provides for the physical disability retirement of a member who has at least 20 years of service or a disability rating of at least 30 percent. Title 10, U.S. Code, section 1203, provides for the physical disability separation of a member who has less than 20 years of service and a disability rating of less than 30 percent.

4. Army Regulation 600-37 (Unfavorable Information) provides:

a. An administrative memorandum of reprimand may be issued by an individual’s commander, by superiors in the chain of command, and by any general officer or officer exercising general court-martial jurisdiction over the Soldier. The memorandum must be referred to the recipient and the referral must include and list applicable portions of investigations, reports, or other documents that serve as a basis for the reprimand. Statements or other evidence furnished by the recipient must be reviewed and considered before filing determination is made.

b. A General Officer Memorandum of Reprimand (GOMOR) may be filed in a Soldier’s Official Military Personnel File (OMPF) only upon the order of a general officer-level authority and is to be filed in the performance folder. The direction for filing is to be contained in an endorsement or addendum to the memorandum. If the GOMOR is to be filed in the OMPF, the recipient’s submissions are to be attached. Once an official document has been properly filed in the OMPF, it is presumed to be administratively correct and to have been filed pursuant to an objective decision by competent authority. The burden of proof rests with the individual concerned to provide evidence of a clear and convincing nature the document is untrue or unjust, in whole or in part, thereby warranting its alteration or removal from the OMPF.

5. Army Regulation 623-3 (Evaluation reporting System) establishes the policies and procedures for preparing, processing and using the Officer Evaluation Report (OER).

a. It provides that an OER accepted for inclusion in the official record of an officer is presumed to be administratively correct, to have been prepared by the proper rating officials, and to represent the considered opinion and objective judgment of the rating

officials at the time of preparation. The burden of proof in appealing an OER rests with the applicant.

b. Accordingly, to justify deletion or amendment of a report, the applicant must produce evidence that clearly and convincingly nullifies the presumption of regularity. Clear and convincing evidence must be of a strong and compelling nature, not merely proof of the possibility of administrative error or factual inaccuracy.

6. Army Regulation 600-8-24 (Officer Transfers and Discharges) serves as the authority for the transfer and discharge of Army officer personnel. It provides that elimination action may be or will be initiated for misconduct, moral or professional dereliction, acts of personal misconduct, conduct unbecoming an officer, and adverse information filed in the OMPF.

7. Title 38, U.S. Code, section 1110 (General – Basic Entitlement) states for disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.

8. Title 38, U.S. Code, section 1131 (Peacetime Disability Compensation – Basic Entitlement) states for disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during other than a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.

//NOTHING FOLLOWS//



PHILLIPS LAW, PLLC

1887 WHITNEY MESA DR #8780
HENDERSON, NV 89014
(931) 552-5670 – Telephone
(931) 552-5671 – Facsimile
888-552-5670 – Toll Free
Jphillipslaw22@gmail.com

30 August 2020

MEMORANDUM FOR Army Board of Correction for Military Records, Director, Case Management Division, Army Review Boards Agency, 251 18th Street South, Suite 385 Arlington, Virginia 22202

SUBJECT: Response to Addendum to Advisory Opinion for DANIELS, DERRICK, Redacted PII Case No. AR201900 089 dated 19 June 2020

1. This is in response to the advisory opinion from the redacted Military Expert Advisory Opinion (AO), dated 19 June 2020. Most of the AO opinion relates the history of the present case and only briefly concludes ". While he held a variety of diagnoses over the course of care, an Adjustment Disorder best fit the applicant's symptom description,

presentation, and lack of significant impairment. Even if the other diagnoses are taken at face value, at no point did the applicant's symptoms, presentation, or functioning reflect a Soldier who was psychiatrically unfit. Rather, the applicant consistently reported mild or no symptoms, provided a 2012 off-post consultation which was void of an active psychiatric diagnosis and exhibited exemplary performance. In summary, while the applicant received behavioral health services in-service, he continued to meet medical retention standards." The opinion offers absolutely no response to the previously submitted response by the applicant to the April 2020 AO advisory opinion. Once again, the opinion seems to rely on the history of the case as a diagnosis of adjustment disorder. This has been wholly refuted by Mr. Daniels subsequent medical history.

2. The opinion suggests the applicant diagnosis of adjustment disorder was not related to his combat trauma prior to his PCS to Fort Sill. This does not negate Dr. Mark's 2020 Assessment of his service-connected transgressions, ultimately justifying his involuntary separation from active duty. Numerous assessments performed by board analysts and outside board advisors continuously overlook the Red River Mental Health diagnosis and Dr. Marks Initial 2012 assessment, both conducted during his military service. Furthermore, it was military medical officials who transferred the applicant to the Red River Mental Health Hospital. Even though the military is not bound by civilian diagnosis, the board should take into consideration it was a military psychologist who recommended Red River Mental Health Hospital. The AO should take those documents into account. It is immaterial where a patient or client receives treatment or advice if the

accredited individuals follow the code of conduct and do not operate outside the scope of their profession.

3. The command should not have interfered with the applicant's treatment. He should have been directed to Walter Reed rather than Reed River Mental Health Hospital for service-connected mental issues. This is precisely why his treatment plan is not documented. The Command and Fort Sill Behavioral Health Clinic had several opportunities to get it right. The 15-6 Investigation did acknowledge the applicant was receiving mental health treatment, but the Command never considered any of his experiences in combat contributed to his unethical behavior. The Command focused more on providing inaccurate information rather receive information from the applicant's providers and/or requesting a medical board. As new circumstances arose, they should have been vetted through the 15-6 investigating officer, not directly through the command (eliminating bias). There is no evidence that the 15-6 investigating officer interviewed the applicant's accuser. But the applicant's wife told the 15-6 investigating officer she did not personally have knowledge of the applicant having multiple affairs. Even after she wrote the affidavit, the 15-6 investigating officer should have interviewed Ms. Brown himself. This channels information through one source. Based on a complete investigation, the Command should have just put the facts in the letter of reprimand. The applicant would have been fine with that. The letter of reprimand should have been filed locally which would have met the command's obligation in addressing the intolerance of unethical behavior and acknowledging his behavior was service connected. The applicant could have continued his treatment and military career.

5. The Applicant requests that he be given full reinstatement on active duty, a discharge upgrade, medical retirement, temporary disabled retirement, or a military retirement. I can be reached by phone at (931) 217-7648 or via email at jphillipslaw22@gmail.com.

Respectfully

James Phillips

Encls: Attachment 1
Attachment 2
Exhibit 1
Exhibit 2
Exhibit 3

**Attachment 1**

| ELEMENT | ERROR | REFERENCE |
|---|---|---|
| Command | Accepting a falsified 2008 Affidavit from Tara Brown without proof of additional affairs, pregnancy.<br><br>Using a police report and not my client's recorded testified statement about events of the domestic violence and affair with Tara Brown. **The police report was used to substantiate Ms. Brown's affidavit (after the domestic violence) when it was actually her initial false accusations to my client's wife that triggered the domestic violence.** The Lawton Investigator was merely trying to capture all of the information but a police report is not a sworn statement.<br><br>Unconscious Bias (Adultery)<br><br>Falsely assuming (15-6 Investigating Officer) my client was guilty when he exercised his right to pledge the fifth amendment. This was done under the direction of military counsel due to review of the bias nature of the interview questions. | Tara Browns 2010 New Affidavit presented to the Board of Inquiry 2010.<br><br>2012 Board of Inquiry<br>The Fort Sill Police Report<br>The 15-6 Investigation<br><br>Open interview with my client who recalls his immediate supervisor and battalion commander talked about their experiences with affairs as victims.<br><br>15-6 Investigation Findings |
| Ft. Sill BHC | Failure to review client's initial assessment when he talks about his experiences that predate his time at Fort Sill.<br><br>Documenting his battalion commander's unsubstantiated statement he committed numerous affairs and expecting children from an outside pregnancy which is a probable motive for wanted to commit suicide. | Medical records dated August 20, 2018<br><br>Medical Records dated February 9, 2019 |

| | | |
|---|---|---|
| | Not documenting my client's treatment and treatment plan after returning from Red River Mental Health Hospital. | Medical Records dated March 8, 2019 |

**Attachment 2**

In response to the 19 June 2020 Advisory Opinion to the ABCMR

It's illogical to conclude an adjustment disorder diminishes my misconduct as serviced connected.  The AO's opinion of adjustment disorder is part of a bigger picture. The opinion never pinpointed a possible origin because he or she cannot with the given information.  Page 1, Paragraph 2 of the June 19 Advisory Opinion states in reference to the forensic psychiatric analysis performed by Dr. Marks:  *"The evaluation was conducted based on the applicant's self-selected 2008-2009 treatment records, self-report, and review of the psychiatrist's prior two encounters with the applicant in 2012. The evaluation is void of a review of Officer Evaluation Reports (OER), Service Schools, or other documents related to performance. The evaluation is void of a review of the letter of reprimand, investigative or police reports, or other documents related to misconduct."*

This statement is false.  The documentation I submitted to Dr. Marks for analysis excluding medical records included:

1. Minutes from the BOI
2. Letter of Reprimand
3. OERs from 2009-2012
4. Fort Sill Oklahoma Police Report
5. 15-6 Investigation
6. Accuser's Sworn Statement

Dr. Jerald Gottlieb' diagnosis was not included in her forensic diagnosis but was mentioned by Dr. Marks and the 19 June 2020 Advisory Opinion. I was able to retrieve his medical evaluation after the release of this 19 June 2020 Advisory Opinion. **(Exhibit 1).**

Page 4, Paragraph 9 of the June 19 Advisory Opinion: *"The DOD electronic medical record (AHLTA) indicates the applicant's first behavioral health contact was in August 2008. At that time his wife and he reported increased drinking, irritability, discomfort in crowds, lack of motivation, impatience, fatigue, and difficulty relaxing. His wife added when the applicant was intoxicated, he made suicidal statements. The applicant was diagnosed with Alcohol Abuse with further evaluation for Depressive Disorder NOS. In follow up, the applicant reported depressive symptoms were secondary to dissatisfaction with his new role as an Instructor; "feeling of being somewhat unimportant and limited ability to access quality resources to do his current duty…" The applicant then joined a PI project indicating it instilled a sense of importance and engaging in a worthwhile task leading to symptom resolution; he reported sleeping well, exercising, and drinking less. The applicant was diagnosed with an Adjustment Disorder with Depressed Mood and Alcohol Abuse in Remission."*

The first behavioral health contact also documents: "*Service member reports two previous deployments to Iraq, 1st from Fed 2004-2005 & 2nd from 2006-2007…SM stated he wanted to get help several months ago, but he never followed through*." As stated, my problems started immediately after my second deployment before my transition to Fort Sill. If I suffered from adjustment from not adapting to standardized military life circumstances, then I would not have the seventeen years of military service with accolades of accomplishments.

The overall analysis by the AO is misleading simply because assessments within my military medical records lack constructed responses. I only answered questions I was asked. There is a difference between "How was your day?" Verses "Why did you join the Army?" The lack of constructed responses focused on current life circumstances that revolved around work and marriage. Reviewed repeated patterns of answers of questions surrounding my current environment, it's easy for anyone to conclude I suffered from an adjustment disorder. In addition, I never malingered from duty because I wanted to get better. Most of my follow-ups were promising simply because I was trained to interview well. This was from key leadership engagements in Iraq. After so many periodic assessments, I learned to mask my depression. It was my wife encouraging me to get help, not command. My misconduct started at home and not work. During the BOI Inquiry Dr. Ann Paroli was asked her opinion on my diagnosis. She stated she could not give an assessment because she never treated me personally but she opined depression from childhood events. The stark contrast is treatment from the civilian providers allowed constructive responses in order to have a complete picture. The one opportunity I had in giving a constructed response was given inconsequently by my command with false information:

14 February 2009 Mental Health Assessment for attempted Suicide: by Dr. Dodds *"Details of the event: Service member has had a chronic history of behavior and relationship problems over the last several months and during this time there is the issue of domestic violence and now a no contact order between him and his spouse… Around the same time he was given a letter of reprimand by the general of the post due to his behavior. This seems to have been a critical moment in his recent mental health decline as he reports that as he read the letter he decided that this person that they were describing on paper really was not who he wanted to belor was."*

*"RISK ASSESSMENT: SeNlee members at high ria\( to harm himself and In the Imminent future as his time In the military Is coming to an end and or likely is coming to an end. When asked If he could kill himself agaIn what he said "I don't know" his personality and view of himself his Informed around the military and yet his Impulse control and judgment has been quite poor as* ***the unit reports that he said several extramarital relationships*** *In the domestic assault with his wife as other Issues as well that the behavioral problems and yet when he goes to work they say he Is quite effective service loss of this note to her position as an officer and over for 17 years has damaged his persons self-concept. In addition to this his loss of focus progressive*

*depression his alcohol consumption and his distorted thinking make his likelihood of
acting quite high."*

The only opportunity I had in delivering a constructed response on the affair was during
the BOI during a cross examination:  *"It was not really what my wife not giving what I
needed it was me giving myself what I needed. My love for my wife never changed. My
love for the Army never changed. It was taken that time. To continue to lead the
Soldiers, I did not have time for myself to face".*  I did not have a psychiatrist or
psychologist on my behalf to advise the board members on this statement.

Below is timeline of events that coincide with Dr. Mark's analysis. My challenges started
immediately after redeployment and before I arrive a Fort Sill. Job satisfaction, at Fort
Sill, was a coping mechanism:

| Time Frame | Event No. | Stressor/Event | Documentation | (+/-) Coping Mechanisms (Conscious & Unconscious) |
|---|---|---|---|---|
| **1st Iraq Deployment (Full Spectrum Operations)** | | | | |
| 2005 | 1 | Witness a Soldier die in my arms while on a combat patrol from an overturned vehicle | Every rebuttal submitted for GOMOR Board of inquiry and four request for relief through the ARBA | Turned in 144 tanks for staging operations in Kuwait as the battalion maintenance officer and managed the reconstruction over 200 awards as the battalion administration officer. |
| **2nd Iraq Deployment (18 month extension for the insurgency/Full Spectrum Operations)** | | | | |
| 2006 | 2 | Sectarian Violence: We fished boated bodies with signs of torture floating in canals | Every rebuttal submitted for GOMOR Board of inquiry and four request for relief through the ARBA | Combat Patrols |
| | 3 | Sectarian Violence: Saw the bodies of young, who were executed by insurgents, left for their families to find. | | |
| | 4 | Small arms attack on my combat patrol returning from my outpost to FOB Falcon. | | |
| | 5 | My Platoon Leader was shot by a sniper | | |

| | | | | |
|---|---|---|---|---|
| | | from a mosque while on my reconnaissance mission | | |
| 2007 | 6 | IED attack on combat patrol while conducted resupply | | |
| | 7 | Suicide Car Bomb attack on my joint operations outpost, killing an Iraqi police officer | | |
| | 8 | Witnessed the body of SSG Aultman inside the compound morgue after the attack on "Donkey Island" | | |

Independent decisions made at the Operation, Division and Army Headquarters Levels. After my branch transfer, leadership promised a transition course that never happened. Several months later, training took priority over my attending the Commander and First Sergeant Course. Due to a surplus of captains in Europe, my battalion commander decided I would take a follow on command during the deployment. This was to give another captain command time for the promotion board. After arriving in Kuwait, Theater Command dismantled our brigade combat team and attached us to other US forces. Did my Branch Manager know my leadership would deny the Commanders and First Sergeant and the Armor Transition Course? No. Did my battalion commander know I would take command of two of the most hostile providences in Iraq? No. Did the brigade commander know dismantling his forces was a Theater Command decision prior to arriving in Kuwait? No. As a result, I had a 15-6 investigation soon after I took my second command in Ramadi. One of my platoons fired upon a friendly Marine convoy. The investigation determined that lacking knowledge of Marine vehicles greatly contributed to the force on force incident. The first constraint was we never knew we would co-op with Marines prior to deploying. The second is I never trained that platoon before the deployment but ultimately was responsible. This is just one of several incidents in which every tiered independent decision had the same effect on my stress. Several of these details are my rebuttals and testimony to the 2012 Board of Inquiry.

Page 5, Number 9 Paragraph 5 of the 19 Advisory Opinion: "*Of note, a diagnosis of MDD, in and of itself, does not fail medical retention standards; the expectation is with treatment individuals are able to improve and are given this opportunity before determining they are permanently unfit.*"

My "fit for duty" analysis was due to my hard work and dedication through a treatment plan I developed during my time in Red River Mental Health Hospital. Despite my medical records excluding my Red River treatment all together, portions of my treatment plan are mentioned in my medical records. A detailed outline of my progression is in my relief request to the ARBA in 2010 and the board of inquiry in 2012. I management my treatment in three stages:

- Stage 1: As mentioned in the Page 6, Number 9, Paragraph 10 Advisory Opinion: *"In August 2009, the applicant was preparing for PCS, volunteering to deploy, held a part-time job on the weekends, and was working on his marriage. In September, he was cleared to PCS and later to deploy."* I acquired a part-time job assisting three male clients suffering from retardation, brain injury and autism. I would bath them, change their diapers, bath and feed them. I was physically able to see what I did made a difference, rebuilding my self-worth.
- Stage 2: My removal as an instructor demonstrated the current command lost trust in me. I needed a fresh start and had unfinished business in Iraq. I volunteered for my third deployment as a military advisor for the Iraqi Army and Police. I ensured my soldiers, who I lost during my command, did not die in vain helping to provide stability. I advised Iraq commanders on operations and trained Iraqi soldiers and police officers on preventive maintenance and crater analysis. My training doctrine became the brigade standard (exhibit).
- Stage 3: Upon redeploying, I became a Trainer/Mentor/Coach at Fort Stewart, Georgia. Unlike being an instructor at Fort Sill, I was able to prepare deploying National Guard and Reserve Units with realistic and relevant scenarios. I developed "Tactical Design", a revised targeting concept deign to help tactical level commanders identify changes and apply appropriate resources in a rapidly changing operational environment. (**Exhibit 2)**

Page 5, Number 9, Paragraph 5 of the 19 Advisory Opinion: "*Of note, a diagnosis of MDD, in and of itself, does not fail medical retention standards; the expectation is with treatment individuals are able to improve and are given this opportunity before determining they are permanently unfit."*

Today, I still understand my triggers. After I was involuntary separated, I took a management position with Home Depot who fired me within eight months. I hated the way we treated one of my subordinates. Pressured by upper management, I fired him for a documented infraction despite the circumstances. The thought process was "we have several applicants who wants this position so replacing him is not an issue." There was no consideration he had a family or the high cost of turnover. I walked off the job the next day. I found myself dealing with the same stress I experienced on active duty. I got back into service by working for the State of Georgia in Education. I also developed my Human Resource Management Company "DIRECT-EFFECT Solutions LLC". I use the Tactical Design theory in helping managers make inform decisions in

taking care of their employees by focusing on behavior, not unconscious bias. **(Exhibit 3).**

In summary, a large portion of the AO's opinion is baseless simply because of the command's interference in my treatment.  For the past six years, board analysts continue disregarding civilian evaluations simply because specific qualifying criteria is not in my military medical records.  This is precisely why I filed through the federal court system.  It will NEVER be in my military medical records.  However, most of my civilian medical evaluations and opinions were on active duty.  The baseline origin became non-combat related when my command inconsequently gave false information to my medical providers.  There was never a need to pursue combat related issues and any review of the same would render the same results.  This is comparable to the social injustice happening in America today.  When an unarmed African American male is shot, there are attempts to defame his character in order to justify the shooting verse understanding what circumstances lead to the shooting taking place. You can't see the forest through the trees no matter my much you refocus your lenses.  It's simple.  It wasn't until I was in an isolated environment (Red River) that I was giving the time to focus on my problems, away from the Army, family and friends.  Red River's diagnosis of MDD focused entirely on my combat experiences, my treatment plan focused entirely on combat experiences.


Sincerely,

Derrick T. Daniels



Encls: Exhibit 1
       Exhibit 2
       Exhibit 3

Exhibit 1

### Jerald M. Gottlieb, Ph.D, P.C.

**Jerald M. Gottlieb, Ph.D**
Psychological Services Delivered with Care

7 Oglethorpe Professional Blvd, Ste 3                    Tel: 912-224-5841
Savannah, GA 31406-                                      Fax: 912-352-4220
www.DrPsych.com                                          DrCoolPool@gmail.com

Clinical Notes Note for Capt Derrick Daniels DOB [Redacted PII] in the Savannah on Wednesday, May 16, 2012 for 60 minutes from 6:00 am to 7:00 am (CPT Code 90801). Note written by Jerald M. Gottlieb,.

\
Capt on Ft. Stewart.   Had rec'd care Ft Sil, Ok after 2nd deployment.   Combat Arm; armor officer.
In tank.   Currently operations officer for infantry brigade; staff officeer.

Deployed for 3rd ( all in Iraq).  Afterwards to Stewart.

His cousin, a physician, found my name.   Wasn't satisfied w/military care process.   Seeing combination of people.

Why now?

1. past sev years (poss ending military career).     Never got clearly diagnosed (ptsd;dysthymia-- nothing definitive)
2. some guidance, but unclear.
3. trying to figure out what's up w/him.

17 years in "Army.   Got in age 17 and E-1 private.   Distinguished self.

[Redacted PII] A (near  SW GA; 1hr 30 S of Columbus (AL, FL, Ga intersection).  Farm.  Dad has 80 acres; generations.   Inherited from his father and bought from other family members.

Both parents alive:  Mom's in great health; very active; 79 , smoker, but doing great.     Dad ---77, diabetic, on dialysis.
  Parents relationship:  unsure if they like each other.  More love/hate.  Argue alot, but come around.
Homelife:  very religious, no divorce, make it work.    2 separate lifestyles:  mom very social (eastern star), dad a homebody.  Garden is her hobby.       They met: mother graduated from Sav State (Early Child Ed), taught in elem school; boarding w/someone, and DAD was visiting them every weekend, and mom would go in other room.     One weekend, they met there, he liked what he saw and never stopped.

His dad, only child also.

 Only child.      Cows/hogs  peanuts, soybeans, corn (livestock).   Primarily peanuts.  Lived in broad network of other extended family members, (great aunt and g'ma).  Majority time Derrick, school and work;  lots of work after school and weekend.  Would also do other work fro g'ma and aunt.   Very responsible.   Most intereaction w/other kids from Sunday School and Church.      Had sense life was planned for him.  S.W. rebelliouos during adolescent years;    knew what was expected of him.  Instead of college, went ot Army.    JOINING ARMY was rebellion; wanted to be on own.

Give him Eval sheets.

His goals:  adequate diagnosis;  understanding this, and learning to deal with this in effective ways.

**Jerald M. Gottlieb, Ph.D, P.C.**

**Jerald M. Gottlieb, Ph.D**
Psychological Services Delivered with Care

**7 Oglethorpe Professional Blvd, Ste 3**
**Savannah, GA 31406-**
**www.DrPsych.com**

**Tel: 912-224-5841**
**Fax: 912-352-4220**
**DrCoolPool@gmail.com**

Clinical Notes Note for Capt Derrick Daniels DOB Redacted PII in the Savannah on Thursday, June 07, 2012 for 45 minutes from 6:00 am to 6:45 am (CPT Code 90806). Note written by Jerald M. Gottlieb,.

Explored Capt Daniels hx in army. The description led me to the following conclusions, which he verified as applicable:

1. he's a man of integrity, who found that the army buraucracy has tendency to give PR to valuing the individeual solider then use them. That that is very subject to the particular supervisory officer, and thus whether valueing happens or not is directly related to the supervising officer's leadership skills
2. Pre-=deployment, after being in army for 4 years, then going to college and R"OTC, came out as Captain, and was in charge of all vehicles (trucks, tanks) preparing them for deployment. Found that the service contract that was supposed to be preparing the vehicles (non=army, outside contractor) failed to do the job. He has 6-week tight schedule, and worked 20 hour days and worked his company to the bone to get the vehicles in shape in time for deployment. His major, for whom he trusted because of favorable verbal conversations, failed to recognize Capt Daniels' work, and in fact snubbed him . That was injurious to Capt Daniels' sense of self, caused him to question his own well-being, sense of capability, made his wonder what he did wrong.

What made this more poignant: he grew up in family w/very powerful Dad, who demanded towing the line for recognition. Derrick rebelled, joined th earmy instead of going directly to college. The issue depicted above made Derrick really question himself, and he was overly dependent on the authority head to judge his competence.

3. additionally, while deployed, headed up youngsters who had hard time getting motivated to get in the line of fire; made worse by politics which called into question the integrity of what the unit was doing in iraq, which really harmed morale.

4. Derrick understood more post our conversation

We'll continue to explore his eval sheet.

Will see July 5; in meantoime, spending time w/his father and mother.

### Jerald M. Gottlieb, Ph.D, P.C.

**Jerald M. Gottlieb, Ph.D**
Psychological Services Delivered with Care

| | |
|---|---|
| **7 Oglethorpe Professional Blvd, Ste 3**<br>**Savannah, GA 31406-**<br>**www.DrPsych.com** | Tel: 912-224-5841<br>Fax: 912-352-4220<br>DrCoolPool@gmail.com |

Clinical Notes Note for Capt Derrick Daniels DOB [Redacted PII] in the Savannah on Wednesday, July 04, 2012 for 45 minutes from 6:00 am to 6:45 am (CPT Code 90806). Note written by Jerald M. Gottlieb,.

Reviewing Cap Daniels for evidence of PTSD:

## 1.  2 traumatic events occurred while on deployment in Iraq.  His narrative statements about these 2 events follow:

**a.**
Soldier loss of life: Because of my lack of maneuver operations in 2005, I approached the battalion operations officer about conducting some combat patrols. He developed a mission where I accompanied a tank crew as security escort from the Baghdad Airport to the Diyala Providence. After picking up soldiers returning from rest and recuperation leave, we experienced a vehicle rollover. The five-ton vehicle behind our tank was bottom up in the canal that ran adjacent to our road we traveled. I remember working feverishly trying to pull Sergeant Ruiz from the submerged crushed cab. The mixture of mud and water affectively caused our grip to slip as well pulled. When we finally pried the door loose with a crowbar, we pulled his lifeless body from the cab. He had been submerged for more than ten minutes, which felt like ten hours. I noticed his face was palishly blue as blood tricked from his right nostril while we dragged him from the canal to the road. This was the brigade's first non-combat casualty. The 15-6 investigation determined the weight of the tank soften the road's shoulder, causing it to crumble beneath the five-ton which rolled into the canal. That patrol usually has only light ton vehicles but because of my ambition, the operations officer used tanks for security. For years, I blamed myself for Sergeant Ruiz's death.

**b.**

Iraqi Soldier Loss of Life. In 2006, I was conducted a logistics "relief-in-place" patrol in Ramadi. I was delivering food, supplies and relieving my soldiers at an Iraq police substation. As I was talking with the Iraqi station commander, I heard and felt a thunderous explosion just outside the station. My combat patrol immediately arrived to the checkpoint that was attacked by a suicide bomber less than 150 feet away. I saw the Iraqi police put the torso remains of their fallen comrade in the back of a security pickup truck. The blast had enough force to severe his head along with all of his extremities to include blowing a engine block at least one hundred yards. Nothing remained resembled a car except a twisted frame. The only recognizable human remains found of the suicide bomber was a charred foot cartelized at the ankle. As I survey the blast site for my incident report, the smell of burnt flesh and debris caused me to vomit. How could someone hate another person for their religiously ideology enough to take their own life along with their own? Are we really making a difference by being here?

Subsequent to his return to the states in 2008,  after his deployments, Capt Daniels, who was a mild-mannered, reserved, mostly imperturbable, very thoughtful man, deomonstrated increased impulsivity, heightened irritability and anger, and this eventuated in his engagement in an affair plus domestic

violence with his wife. He had become an adrenaline addict, and from wht i gathered in this interview, he waas not receiving treatment for what sounds like enduring signs of PTSD

His narrative about this time in his life, which eventuated in his attempting suicide and for which he was saved at the last moment from suciide by hanging follows:

Suicide Attempt. In 2008, I was pending a permeant filing of a General Officer Memorandum for multiple affairs and domestic violence. AN affair and the domestic violence DID took place, but they were service-connected. The affair unconsciously substituted for the missed rush of adrenaline and comradery I missed from conducting combat patrols. I always used combat mission as coping mechanisms. But at Fort Sill, I could not hop in a tank or Humvee for a combat patrol down Ft. Sill Blvd. Patrols allowed me to prove my loyalty, share the same risks, even the possibility of being killed or permanently maimed in action would bring glory. I looked forward in dealing with my stressors in preparing lieutenants for combat operations in Iraq and Afghanistan. To my dismay, doctrine still focused on the cold war. I became increasingly frustrated because I could not change the curriculum. I began to take the rejections personally. My thinking became disoriented and misplaced through bad choices. I questioned a lot of my beliefs and values. I was untruthful with my wife, adulterer and counselors because I always relied on myself in fixing things. I had a hard time trusting people from past career and combat experiences. On top of that, my command accepted a falsified affidavit from the person I was sexually involved with without proof of allegations I had additional affairs and impregnating another woman. For a while, I still had confidence my command would eventually figure things out. After all, they were already aware I was receiving mental health treatment to all of these allegations and understand that the affair and domestic violence could be service connected. That did not happen. The letter of reprimand was placed in my permeant records. I was separated from my wife but still required to report to duty. I would lay in bed...thinking how could this have happened. What hurt me the most was how letter of reprimand was so reprehensible detailing how I disgraced all the soldiers that served under me in combat. I could not take it. I went to Walmart and brought a rope. I rode to my wife's house and opened the garage. My goal was to have her find me hanging their when she was ready to go somewhere. I ran the rope along the railing, tied and placed the noose around my neck, cinching it. I stared at the floor forever, my legs became jelly and I could not walk of the table inside the garage. My wife knew I was out their but did not bother to come see what I was doing. I really wanted her to come find me before I did it. Maybe that was enough for someone to see what I really was going through. When I got home, I called my wife, telling her what I was contemplating. While I was talking with my family, the command came to my house, picked me up and the behavioral health clinic had me admitted to the red river mental Health Hospital for attempted suicide. My wife had called my command, telling them about my actions. My actions brought the kind of judgment and scrutiny I desperately wanted to avoid.

Results of PCL-5 with LEDC-5 and Criterion (scores in 2012, which is 4 years after his engaged treatment, inpatient and continuing after inpatient discharge):

**Scored 40, where 31 is minimal cutoff suggestive of PTSD.**

**Impressions**:

Of note: Patient is a highly morally, spiritually driven individual, who has very high expectations of himself, and who was likely driven by a burning desire to be praised and recognized by a father, who was loving, yet controlling, and not recognizing his son's individuality. Joining the army, as mentioned in initial interview, was for Captain Daniels, an act of "acting out". So he developed a narrative self-concept of having to prove himself and finding himself "never good enough". He strove,

to a fault, to be self-directed, self-repairing, and autonomous.

One likely impact of the above was his tendency to ignore physical symptoms and physiological arousal, and a growing sense of anger, irritability, coupled with what sounds like anhedonic depressive affect.  He covered this with impulsive, reckless, adrenaline-producing activities--his affair, and his physical flairups with his wife, drinking excessively  and eventually this turned into a near suicide. Until he deteriorated to his near-destruction, he hid his symptoms and didn't get proper treatment.

Capt Daniels is being sent to Minnesota for some army-related training.   Will be calling to set next appt.

**Jerald M. Gottlieb, Ph.D, P.C.**

**Jerald M. Gottlieb, Ph.D**
Psychological Services Delivered with Care

**7 Oglethorpe Professional Blvd, Ste 3**
**Savannah, GA 31406-**
**www.DrPsych.com**

**Tel: 912-224-5841**
**Fax: 912-352-4220**
**DrCoolPool@gmail.com**

Clinical Notes Note for Capt Derrick Daniels DOB Redacted PII in the Savannah on Friday, October 19, 2012 for 45 minutes from 3:00 am to 3:45 am (CPT Code 90806). Note written by Jerald M. Gottlieb,.

MSE:

1. since last appt, 3 months ago, his mood is lighter, less depressed and anxious, He's obviously been thinking a lot about what we've discussed. Recognizing need to develop forgiveness rather than holding onto blame in his relationship w/elderly parents;

2. Exploring possible career path in the army. Trying to develop his social sense and expand social relationships after his debacle in his marriage. He's recognizing that growing up on a farm as an only child in a small town severely limited his social growth opportunities, and thus he has some impairment in this area.

3. we explored ideas re how to help parents; ideas re discernment in terms of what he 's looking for in a help mate.

4. He is using some of the skills/resources he developed while in inpatient treatment, to help him manage his life. He displays a certain hesitancy about getting into more difficult issues. I'm hoping he'll call back for an appt so that we can explore this further. My concern is that , just as he escalated over time into his post-deployment PTSD-driven behaviors and emotional tone, he may drift back into that without further treatment.

5. He has additional assignments he's expected to report to. He indicated he'll call me when ready to continue treatment.

# PCL-5 with LEC-5 and Criterion A

## Part 1

D Daniels

**Instructions:** Listed below are a number of difficult or stressful things that sometimes happen to people. For each event check one or more of the boxes to the right to indicate that: (a) it happened to you personally; (b) you witnessed it happen to someone else; (c) you learned about it happening to a close family member or close friend; (d) you were exposed to it as part of your job (for example, paramedic, police, military, or other first responder); (e) you're not sure if it fits; or (f) it doesn't apply to you.

Be sure to consider your entire life (growing up as well as adulthood) as you go through the list of events.

| Event | Happened to me | Witnessed it | Learned about it | Part of my job | Not sure | Doesn't apply |
|---|---|---|---|---|---|---|
| 1. Natural disaster (for example, flood, hurricane, tornado, earthquake) | ✓ | | | | | |
| 2. Fire or explosion | | ✓ | | | | |
| 3. Transportation accident (for example, car accident, boat accident, train wreck, plane crash) | | ✓ | | | | |
| 4. Serious accident at work, home, or during recreational activity | | ✓ | | ✓ | | |
| 5. Exposure to toxic substance (for example, dangerous chemicals, radiation) | | | | | | ✓ |
| 6. Physical assault (for example, being attacked, hit, slapped, kicked, beaten up) | ✓ | | | | | |
| 7. Assault with a weapon (for example, being shot, stabbed, threatened with a knife, gun, bomb) | | | | ✓ | | |
| 8. Sexual assault (rape, attempted rape, made to perform any type of sexual act through force or threat of harm) | | | | | | ✓ |
| 9. Other unwanted or uncomfortable sexual experience | ✓ | | | | | |
| 10. Combat or exposure to a war-zone (in the military or as a civilian) | | | | ✓ | | |
| 11. Captivity (for example, being kidnapped, abducted, held hostage, prisoner of war) | | | | | | ✓ |
| 12. Life-threatening illness or injury | | | | | | ✓ |
| 13. Severe human suffering | | ✓ | ✓ | ✓ | | |
| 14. Sudden violent death (for example, homicide, suicide) | | ✓ | ✓ | ✓ | | |
| 15. Sudden accidental death | | ✓ | ✓ | ✓ | | |
| 16. Serious injury, harm, or death you caused to someone else | ✓ | ✓ | ✓ | ✓ | | |
| 17. Any other very stressful event or experience | | ✓ | ✓ | ✓ | | |

## Part 2

**A.** If you checked anything for #17 in PART 1, briefly identify the event you were thinking of:

**B.** If you have experienced more than one of the events in PART 1, think about the event you consider the worst event, which for this questionnaire means the event that currently bothers you the most. If you have experienced only one of the events in PART 1, use that one as the worst event. Please answer the following questions about the worst event (check all options that apply):

**Briefly describe the worst event** (for example, what happened, who was involved, etc.).

ON Combat patrol, 2005 – Diyala Province, Tank flipped into creek, on its back trapped soldier was pained & drowned. Blamed self

**How long ago did it happen?** 2005 (7 yrs ago) (please estimate if you are not sure)

**How did you experience it?**

_____ It happened to me directly

_____ I witnessed it

_____ I learned about it happening to a close family member or close friend

X I was repeatedly exposed to details about it as part of my job (for example, paramedic, police, military, or other first responder)

_____ Other, please describe

**Was someone's life in danger?**

_____ Yes, my life

X Yes, someone else's life

_____ No

**Was someone seriously injured or killed?**

_____ Yes, I was seriously injured

X Yes, someone else was seriously injured or killed (circled)

_____ No

**Did it involve sexual violence?** O Yes X No

**If the event involved the death of a close family member or close friend, was it due to some kind of accident or violence, or was it due to natural causes?**

O Accident or violence

O Natural causes

X Not applicable (The event did not involve the death of a close family member or close friend)

**How many times altogether have you experienced a similar event as stressful or nearly as stressful as the worst event?**

O Just once

X More than once (please specify or estimate the total number of times you have had this experience ______)

2006 · Ramadi. Witnessed suicide bomber explode; severed heads, limbs Burnt flesh, vim[illegible]

## Part 3

7/5/#2 Post inpatient Tx for suicide attempt 2008

Below is a list of problems that people sometimes have in response to a very stressful experience. Keeping your worst event in mind, please read each problem carefully and then circle one of the numbers to the right to indicate how much you have been bothered by that problem <u>in the past month.</u>

0 1 2 3 4

| In the past month, how much were you bothered by: | Not at all | A little bit | Moderately | Quite a bit | Extremely |
|---|---|---|---|---|---|
| 1. Repeated, disturbing, and unwanted memories of the stressful experience? | 0 | 1 | 2 | 3 | 4 |
| 2. Repeated, disturbing dreams of the stressful experience? | 0 | 1 | 2 | 3 | 4 |
| 3. Suddenly feeling or acting as if the stressful experience were actually happening again (as if you were actually back there reliving it)? | 0 | 1 | 2 | 3 | 4 |
| 4. Feeling very upset when something reminded you of the stressful experience? | 0 | 1 | 2 | 3 | 4 |
| 5. Having strong physical reactions when something reminded you of the stressful experience (for example, heart pounding, trouble breathing, sweating)? | 0 | 1 | 2 | 3 | 4 |
| 6. Avoiding memories, thoughts, or feelings related to the stressful experience? | 0 | 1 | 2 | 3 | 4 |
| 7. Avoiding external reminders of the stressful experience (for example, people, places, conversations, activities, objects, or situations)? | 0 | 1 | 2 | 3 | 4 |
| 8. Trouble remembering important parts of the stressful experience? | 0 | 1 | 2 | 3 | 4 |
| 9. Having strong negative beliefs about yourself, other people, or the world (for example, having thoughts such as: I am bad, there is something seriously wrong with me, no one can be trusted, the world is completely dangerous)? | 0 | 1 | 2 | 3 | 4 |
| 10. Blaming yourself or someone else for the stressful experience or what happened after it? | 0 | 1 | 2 | 3 | 4 |
| 11. Having strong negative feelings such as fear, horror, anger, guilt, or shame? | 0 | 1 | 2 | 3 | 4 |
| 12. Loss of interest in activities that you used to enjoy? | 0 | 1 | 2 | 3 | 4 |
| 13. Feeling distant or cut off from other people? | 0 | 1 | 2 | 3 | 4 |
| 14. Trouble experiencing positive feelings (for example, being unable to feel happiness or have loving feelings for people close to you)? | 0 | 1 | 2 | 3 | 4 |
| 15. Irritable behavior, angry outbursts, or acting aggressively? | 0 | 1 | 2 | 3 | 4 |
| 16. Taking too many risks or doing things that could cause you harm? | 0 | 1 | 2 | 3 | 4 |
| 17. Being "superalert" or watchful or on guard? | 0 | 1 | 2 | 3 | 4 |
| 18. Feeling jumpy or easily startled? | 0 | 1 | 2 | 3 | 4 |
| 19. Having difficulty concentrating? | 0 | 1 | 2 | 3 | 4 |
| 20. Trouble falling or staying asleep? | 0 | 1 | 2 | 3 | 4 |

Score of 40

31 is cutoff for PTSD

# TACTICAL DESIGN

## TABLE OF CONTENTS

**INFORMATION PAPER** .......... 4
ILLUSTRATIONS .......... 6
TACTICAL DESIGN PLANNING MATRIX .......... 11
.......... 11
TACTICAL DESIGN RESPONSIBILITIES .......... 12
DETECT .......... 12
CoIST: .......... 12

# INFORMATION PAPER

What is it?

Tactical Design (Unified Land Operations for battalion and below)

What is its Purpose?

The whole concept of this design is to re-acquire the most important commodities on the battlefield as it relates to unified Land Operations, Unity of Effort and Time. We say Time is important but we violate that planning principle constantly with the assumption evolving technology can compensate for the 1/3rd-2/3rd planning rule. But one glaring fact we so easily forget is technology can fail. It's our responsibility to ensure we maximize our subordinates' time so they can compensate for possible friction points. Time is so important that it's in two major military planning acronyms, PMESII-PT and METT-TC. Several post command combat commanders have shared struggles with the lack of Unity of Effort. As units continue to deploy as smaller echelons to work within the constraints of minimized time, unfortunate incidents manifest due to having little knowledge of adjacent, joint and combined units' composition, disposition and capabilities. Unified Land Operations **(illustrations 1, 2 and 3)**, published in ADP 3-0 October 2011 is the Army's new fighting doctrine that understands the necessity of working jointly with other agencies. But yet there exists a need to outline a concept for tactical operations. Below is a realigning of how tactical leaders think (concept base) in order to support mission commanders with maximizing the Unity of Effort and Time. Initiative **(illustration 2)** is one of the four foundations of Unified Land Operations. So by revamping how we maximize the Unity of Effort and Time, Initiative is maintained throughout Tactical Design.

Concept:

First, we need to change our perspective of Targeting **(illustration 4)** as it relates to the Military Decision making Process (MDMP). Many times, Targeting took place with just the intelligence officer and the battalion FSO or targeting officer (If a battalion was lucky) in a small cubicle isolated from the MDMP. This was not true for all task forces; some cracked the code by integrating Targeting in the MDMP process. A more valid way to sync Targeting and the MDMP is to think of Targeting on a more macro level and make the MDMP a core critical component of a basic D3A (Detect, Decide, Deliver) Targeting Cycle **(illustration 5)**. This concept was introduced a few years ago at the operational level. But at the tactical level, task force officers were inexperienced. Most were senior platoon leaders or pre-command course captains filling primary staff positions. In order to fully appreciate the proper steps of D3A, I used a traditional target list worksheet from FM 6-20 and altered it slightly. It fully supports the D3A concept by focusing on each driver of instability or multiplier of stability as the constant problem. More refined Targeting concepts have been developed over the years, but a maneuver task force can better synchronize efforts with the older basic D3A Targeting Model against a constant changing operational environment (factoring Time). It's a perfect construct for tactical level operations. **When followed in lock-step column sequence as illustrated (illustration 10 columns c, b, e, d, f and g.), a robust mission analysis with information from bottom, top and adjacent sources takes place during the DETECT segment, the MDMP COAs are developed, compared and approved during the DECIDE segment for each driver of instability or multiplier of stability, Troop leading Procedures take place during the DELIVERY segment (at company level) and the ASSESSMENT segment is performed by the task force staff.** The beauty of this design is it identifies the end-state first and forces critical thinking in order to achieve the desired Effect. After a period of reasonable assessments **(illustration 6)**, the task force staff must identify where to change in the D3A process for Effects refinement. The change could be in the identified PMESII-PT, desired Effect, or type of Delivery System

## ILLUSTRATIONS

Per ADP 3-0, OCT 2011

### Unified Land Operations (ULO)

**How the Army seizes, retains, and exploits the initiative to gain and maintain a position of relative advantage in sustained land operations through simultaneous offensive, defensive, and stability operations in order to prevent or deter conflict, prevail in war, and create the conditions for favorable conflict resolution.**

**Illustration 1**

**Illustration 2**



https://direct-effectsolutions.com/

*"Targeted Solutions for Optimal Results"*

**DIRECT-EFFECT Solutions, LLC**
**1107 North Madison Street Apt 1**
**Albany, Georgia 31701**

**Cage Code: 7MP10**
**DUNs Number: 080255528**
**E-Verify Company ID: 1137679**
**FEIN: 81-2523697**
**(229) 733-0492**
**direct.effectsolutions16@gmail.com**

***Awarded contracts:***

| SMALL BUSINESS | EXECUTIVE LEADERSHIP |
|---|---|
| HUMAN RESOURCES | AGENCY STAFFING |

***Human Resource Management Training, MCLB, Albany Georgia***

## Capability Statement

DIRECT-EFFECT Solutions, LLC is a niche firm which utilizes method driven consultancy to commercial, not for profit and government organizations. Our model is designed in developing analytical and proactive thinkers and mobilize the right people, skills and technologies to help organizations improve their performance. DES is committed to excellence and creating innovative and flexible solutions for our Commercial, State and Federal Clients.

### Small Business Consulting

By incorporating industry best practices into your business processes and management strategies, we can help you stay ahead of the competition and better serve your customers. Our services include:

- Business Strategy & Planning Support
- Change Management
- Security Assessment
- Financial/Statistical Analysis

***Human Resources for Supervisors Training, Norfolk Naval Base, Norfolk, Virginia***

### Human Resources Coaching

Our HR Coaching Services focus on developing knowledge, analytical and proactive HR Managers and Business Leaders for your organization. Our training includes:

- Recruitment
- Retention
- Position Management
- Performance Management
- Effective Communication

   

**Executive Leadership Coaching**

Our Executive Leadership Coaching Services focus coaching facility senior leaders in the implementation of a comprehensive lean management program. Our training includes:

- Strengths, Weakness, Opportunities, Threats (SWOT) Analysis
- Root Cause Analysis
- Lean Strategy Deployment throughout the organization.
- Effects-Based Targeting
- Developing a Service Culture

**Agency Staffing**

DES provides a comprehensive scope of executive recruitment services, and each executive recruitment service contract is tailored to meet the client's specific needs. A full-service recruitment entail:

- Evidence-Based Interview Techniques
- Onboarding/Automated Time Tracking
- DiSC Assessments
- Thorough Background Checks
- Incentives

**North American Industry Classification System (NAICS)**

541214 – Payroll Processing Services

541611 – Administrative and General Management Consulting Services

541612 – Human Resources Consulting Services

541618 – Other Management Consulting Services

541690 – Other Scientific and Technical Consulting Services

541990 – All Other Scientific and Technical Consulting Services

561110 – Office Administrative Services

561311 – Employment Placement Services

561320 – Temporary Help Services

561330 – Professional Employer Organization

561312 – Executive Placement Services

611430 – Professional and Management Development Training

611499 – Educational Support Services

561499 – Other Management Consulting Services

**Product or Service Code (PSC)**

A - Research and Development

B - Special Studies and Analyses - Not R&D

R - Professional, Administrative and Management Support








**DEPARTMENT OF THE ARMY**
**ARMY REVIEW BOARDS AGENCY**
**251 18TH STREET SOUTH, SUITE 385**
**ARLINGTON, VA 22202-3531**

June 23, 2020

Case Management Division/sra
AR20190003089, Daniels, Derrick T

Mr. Derrick T Daniels

Dear Mr. Daniels:

This is in reference to your application to the Army Board for Correction of Military Records (ABCMR) dated February 01, 2019.

Title 10, United States Code, section 1556 requires we provide applicants a copy of various types of correspondence and communication we receive related to their application. This includes any advisory opinion provided from outside of the Army Review Boards Agency that directly pertains to or has a material effect on an applicant's case.

In your case, we received an advisory opinion dated 19 June 2020 from the Army Review Boards Medical Advisor (copy enclosed). The ABCMR can adopt the advisory opinion recommendation in whole, in part, or reject the recommendation, based on the Board's analysis of the facts and circumstances of your case.

We have placed the processing of your application on hold for 30 days from the date of this letter to allow you the opportunity to submit comments on the enclosed advisory opinion. Your comments must be submitted in writing to: Director, Case Management Division, Army Review Boards Agency, 251 18th Street South, Suite 385, Arlington, VA 22202-3531. You may also fax your comments to 703-601-0705 to the attention of Mr. Abrams or email to stacy.r.abrams.civ@mail.mil

If you choose not to submit comments by the suspense date, the ABCMR will make a final determination in your case based on available facts and documents.

A copy of this letter has been provided the counsel you listed on your application, Mr. James Phillips, 1887 Whitney Ranch Drive, Henderson, NV 89014.

Sincerely,

Kenneth L. Boehme
Acting Director, Case Management Division

Enclosure

Printed on Recycled Paper



**DEPARTMENT OF THE ARMY**
**ARMY REVIEW BOARDS AGENCY**
**251 18TH STREET SOUTH, SUITE 385**
**ARLINGTON, VA 22042-3531**

REPLY TO
ATTENTION OF

SAMR-RBM 19 June 2020

MEMORANDUM FOR Command Management Division, Army Review Boards Agency

SUBJECT: Advisory Opinion for Daniels, Derrick, T., **Redacted PII** AR20190003089

1. References

   a. Diagnostic and Statistical Manual of Mental Disorders-5th Edition
   b. AR 40-501, Standards of Medical Fitness, 14 January 2008
   c. AR 40-501, Standards of Medical Fitness, 04 Aug 2011
   d. AR 40-501, Standards of Medical Fitness, 27 July 2019
   e. Memorandum, Secretary of Defense, 3 Sep 2014, Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post-Traumatic Stress Disorder
   f. Army Directive 2014-28, Requests to Upgrade Discharge by Veterans Claiming Post-Traumatic Stress Disorder, 3 Nov 2014
   g. Memorandum, Undersecretary of Defense, 25 August 2017, Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records
   h. Memorandum, Undersecretary of Defense, 25 July 2018, Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Regarding Equity, Injustice, or Clemency Determinations

2. In May 2020, the applicant, through counsel, submitted a response to a 2019 ARBA medical advisory, a second advisory subsequent to a court remand, requesting "immediate reinstatement to active duty," specifically the Wounded Warriors Program, allowing the applicant to "be fully evaluated mentally and physically for active duty in an isolated environment" asserting this should have occurred in August 2008. Additionally, the applicant requested his GOMOR and deferred OERs be removed and he be re-evaluated for the FY08 MAJ Board. The applicant noted when given a "clean bill" of health, i.e. fit for duty, he'd be able to resolve financial difficulties and obtain a security clearance; however if determined to be unfit a MEB would "suffice."

The applicant included a March 2020 psychiatric evaluation in support of his request. The evaluation was conducted based on the applicant's self-selected 2008-2009 treatment records, self-report, and review of the psychiatrist's prior two encounters with the applicant in 2012. The evaluation is void of a review of Officer Evaluation Reports (OER), Service Schools, or other documents related to performance. The evaluation is void of a review of the letter of reprimand, investigative or police reports, or other documents related to misconduct. Accordingly, the evaluation contains information that is incongruent with other documentation. The evaluator's conclusion was the applicant had Major Depressive Disorder while in-service, related to combat, and the related symptoms contributed to his misconduct.

3. In 2010, the applicant requested a GOMOR be moved to his restricted OMPF. ARBA reviewed the January 2009 Letter of Reprimand (LOR) which indicated the applicant admitted to his wife he'd had an affair leading to a physical fight in which he "attacked her by hitting her with his hands, then with a plastic baton, on her face and head to the brink of unconsciousness and leaving her with bruises still visible 5 days later. He reported when she fell, he dragged her across the floor. He choked her, scratching her on her neck. He verbally threatened her to the point that she feared for her life." The LOR indicated the applicant reported using an online site to meet other woman and had engaged in affairs with several women to include impregnating the wife of a deployed Soldier. The LOR stated the applicant admitted being the father of twins from a June 2008 affair which also started online and had continued. While initially telling the woman he was pending a divorce, after learning he was living with his wife they continued a daily sexual relationship noting sexual activity "after morning physical training, on lunch breaks, and anytime he did not have to be at work."

In support of his 2010 request, the applicant highlighted his OERs, after the LOR, top blocked him with ratings of Outstanding Performance, Best Qualified, and Must Promote. A statement of support indicated the applicant's "performance and conduct as an officer is nothing less than admirable, and that he is highly regarded by his Iraqi counterparts and superiors alike."

The Board felt there was insufficient evidence to show the intent of the GOMOR had been served; it "would not be in the best interest of the Army to transfer it at this time." His request was denied.

4. In October 2012, the Deputy Assistant Secretary of the Army (DASA) approved the Board of Inquiry (BOI) and ARBA recommended separation; misconduct and moral and professional dereliction with an Honorable characterization.

5. In 2014, the applicant applied to the ABCMR requesting his military records be corrected asserting his GOMOR "contains erroneous information and resulted in his unjust involuntary discharge." Additionally, the applicant asserted he was "misdiagnosed with severe depression when in fact he suffered from chronic post-traumatic stress disorder (PTSD)" and if he had "been properly diagnosed and properly treated, his misconduct would not have resulted." The applicant reiterated his success after the misconduct noting the three subsequent OERs, 01 October 2009 through 09 March 2012, "show maximum ratings and recommend him for promotion to major."

The applicant included a February 2009 psychiatric discharge from Red River Mental Health hospital diagnosing MDD.

The applicant included psychiatric consultation notes from April and May 2012, written by the same provider as the updated March 2020 evaluation, listing a History of MDD in Remission and Alcohol Abuse. The applicant indicated he had been happily working as a nursing assistant part-time for four months; he stated he "felt needed" which he did not feel as a Soldier. The provider indicated presenting symptoms surrounded a sense he "was just a number" and "dissatisfaction with current job" as a Soldier;

"doesn't feel appreciated." The applicant reported "good" sleep, "ok" energy, and when bored "some" trouble concentrating. The Mental Status Exam (MSE) was unremarkable. The provider stated whether or not the applicant had PTSD in the past was "unclear;" however it was "not a current issue." The May 2012 follow up note restated the applicant had a history of depression, but his "current state – general discontentment" was related to work dissatisfaction and determined treatment was not needed; he did not have a psychiatric condition requiring intervention.

The applicant submitted a VA record reflecting a diagnosis of PTSD and service connection for Anxiety Disorder NOS with Major Depressive Disorder.

The Board denied his request; his discharge was proper and equitable and behavioral health conditions were not contributory.

6. In June 2015, the applicant requested reconsideration. An ARBA Clinical Psychologist completed an advisory opinion concluding his condition, MDD, was not misdiagnosed and "there is no basis for the applicant's contention that his transgressions would never have happened if he was treated for severe depression in the beginning." His request was denied.

7. In February 2019, ARBA received a court remand requesting ARBA consider mental health records not previously reviewed. The applicant requested ARBA direct his case to the MEB/PEB who could either "validate the Army's current position," recommend placement on the TDRL or PDRL, or reinstate him to active duty.

In April 2019, the ARBA Clinical Psychologist completed a second advisory after reviewing additional documentation; however concluded the applicant was not misdiagnosed and his misconduct was not mitigated by the diagnoses. The ARBA Senior Medical Advisor (SMA) reviewed both advisories and concurred.

In response, the applicant requested the case be referred to the MEB/PEB asserting these Boards "would be a better vehicle in evaluating" documentation. The applicant asserted the ARBA advisory was flawed as the individual did not personally evaluate him and reiterated his assertion his misconduct was related to depression.

8. The Interactive Personnel Electronic Records Management System (iPERMS) contains completed Service Schools in Field Artillery Officer Basic Course, Field Artillery Captains' Career Course, and Staff Process Course of the Combined Arms and Services Staff School from 1999 to 2003.

The applicant's OERs from 2000 through May 2008 reflect successful performance and ratings.

The May 2008 to March 2009 OER addresses the GOMOR for misconduct rating him as Unsatisfactory and not recommended for promotion.

The April to September 2009 OER indicated the applicant had "exemplary work … displays exceptional initiative," was holding multiple jobs to include assistant operations officer while still teaching, was "invaluable to students," executed tasks "flawless," and assisted with rewriting BOLC classes. The applicant was recommended for Command and General Staff College, in residence.

The October 2009 to September 2010 OER reflected Outstanding Performance, Best Qualified, and Must Promote. His rater stated the applicant's "performance is in the top quarter of all combat Arms Officers that I have observed within the last 21 year" as he could complete a "variety of complex and challenging tasks" still accomplishing them "to the highest standard." Moreover, "His efforts were key to the success … increase in combat effectiveness as they provided a safer, more secure environment…" The senior rater indicated the applicant was in the "top ten percent of all company grade officers I have served with over the past 27 years … functioned at the senior Major level with professional maturity … always demonstrated the insight, integrity, vision, moral courage, and selflessness we look for … among the best we have and has shown an outstanding adaptability through his work…"

The October 2010 to September 2011 OER reflected Outstanding Performance, Best Qualified, and Must Promote indicating he was a "gifted leader," could "always be counted on to produce excellent results," "flawlessly supervised … provided outstanding analysis," and emphasized promotion to Major and ILE, in residence, as "He is a future BN Commander."

The October 2011 to March 2012 OER reflected Outstanding Performance, Best Qualified, and Must Promote stating the applicant was "number two of five Captains that I rate," "critical to the success of that mission," "master of managing several competing lines," "hand picked," "smart and tenacious officer who has almost single handedly helped revise the Brigade's T/M certification program as well as train the rest of the staff," and should be promoted "immediately and place in a demanding armor battalion S3 or XO position."

9. The DOD electronic medical record (AHLTA) indicates the applicant's first behavioral health contact was in August 2008. At that time his wife and he reported increased drinking, irritability, discomfort in crowds, lack of motivation, impatience, fatigue, and difficulty relaxing. His wife added when the applicant was intoxicated, he made suicidal statements. The applicant was diagnosed with Alcohol Abuse with further evaluation for Depressive Disorder NOS. In follow up, the applicant reported depressive symptoms were secondary to dissatisfaction with his new role as an Instructor; "feeling of being somewhat unimportant and limited ability to access quality resources to do his current duty…" The applicant then joined a PI project indicating it instilled a sense of importance and engaging in a worthwhile task leading to symptom resolution; he reported sleeping well, exercising, and drinking less. The applicant was diagnosed with an Adjustment Disorder with Depressed Mood and Alcohol Abuse in Remission.

In October 2008, the applicant requested marital therapy noting difficulties since he had an affair resulting in pregnancy and an abortion. He noted his wife informed him she never felt he loved her and he "validated" some of these feelings. The following month, Command referred him after a domestic violence incident. The applicant "complains of increased drinking, increased irritability, pt. is also reporting struggling to find a sense of purpose in his current positions." During therapy, he stated "he had not been honest … had been having an affair and he reports that there was altercations that ended up with him staying at his old house;" a no contact order was in place. The applicant reported his wife was fearful of him leading her to stay at an unknown shelter rather than the home he left. The Family Advocacy Program (FAP) became involved and contacted Command who believed the applicant's wife initiated the argument; however acknowledged the applicant's misconduct during the altercation. Command reported due to the events, the applicant's promotion was on hold and he was being referred to the Army Substance Abuse Program (ASAP). Command indicated the applicant had been successfully involved and discharged from ASAP in the past. Due to the period of service, FAP records were primarily contained in a hard file; there is limited information on the assessment and treatment. Additionally, ASAP records were also maintained in a hard file; the contents of the assessment and treatment are unknown. However, records do indicate he was attending ASAP with an Alcohol Abuse diagnosis listed.

In December 2008, the applicant reported his attitude changed after deployment "because of his frustrations with those experiences." A post-deployment screening indicated the applicant reported "mild depression, anger." The applicant was diagnosed with Anxiety Disorder NOS.

In January 2009, there was a second domestic incident. The applicant reported his wife asked him to come to their home which resulted in an altercation and she threw hot water on him. The applicant did not report the incident; however while at a medical appointment, the provider noticed it. While the applicant was the victim in this incident, the provider noted he had violated the no contact and protective order. That same month, he saw psychiatry and was diagnosed with an Adjustment Disorder and prescribed an antidepressant. At the end of the month, he reported doing well.

In February 2009, the applicant rated himself as experiencing only mild irritability and difficulty related to marital, legal, and occupational stressors. He was later taken to the ER after an attempted suicide. The applicant reported the suicide attempt was in reaction to his letter of reprimand; the way it portrayed him, embarrassment, and concern for his future in the Army. The provider indicated "Service member denies a lot of PTSD-type symptoms … does remember being somewhat depressed with the loss of soldiers and was not able to make a connection with his soldiers." The applicant was subsequently hospitalized at Red River Mental Health hospital and discharged with a diagnosis of Major Depressive Disorder (MDD); at the time of hospitalization the applicant had sufficient depressive symptoms with impairment in his ability to manage stressors to the extent he was suicidal. Of note, a diagnosis of MDD, in and of itself,

does not fail medical retention standards; the expectation is with treatment individuals are able to improve and are given this opportunity before determining they are permanently unfit. At follow up, he reiterated his suicide attempt was related to his "pending a letter of reprimand from the CG and he could not face what other people thought or the ramifications this would have." He also discussed how a difficult childhood contributed to a sense of failure creating a sensitivity; any indication of failure triggered mood and behavioral symptoms. The applicant verified the adultery and domestic assault feeling divorce was the best recourse. Command reported prior to the suicide attempt, and since then, there "were no behavior problems noted on the job." The applicant's treatment surrounded coping with his legal issues, addressing his martial relationship, and understanding how his childhood experiences resulted in poor self-esteem and chronic feelings of failure. By the end of February, the applicant reported socializing, engaging in enjoyed activities, and actively participating in his legal defense; there was minimal symptoms or impairment.

In March 2009, the applicant reported "feeling pretty good," other than a sense of "humiliation" about the UCMJ action, and was "seeing himself handing the situation." He rated his anxiety and depression as mild stating he "feels good" and "reports and appears to be coping well at this time;" his diagnosis was an Adjustment Disorder. Later in the month, the provider discussed maladaptive relational patterns; however "reports that he is doing well at this time," was going out to dinner with his wife, and had an unremarkable MSE. Treatment continued to focus on identifying and overcoming childhood experiences and relational difficulties; treatment was not trauma based or related to MDD.

In April 2009, the applicant reported marital issues began after his deployment. Additionally, he felt he sought an adrenaline rush post-deployment. The provider diagnosed PTSD. However documentation is void of criteria to include clinically significant impairment; there is no substantiation for the diagnosis. The applicant continued to report "he is doing well." Moreover, he noted he "always received good ratings and had never had any disciplinary action in the past." In mid-April, the applicant indicated he was going to be retained and was "feeling quite happy pleased …" Throughout April, he reported doing well and appointments were to "provide support" as he was "in good spirits and has a healthy outlook."

In May 2009, the applicant reported treatment was helpful as it allowed him to "engage in extensive self-examination and exploration …working and developing his self…" In mid-May, he reiterated he had "No anxiety and no depression;" his MSE was unremarkable.

In August 2009, the applicant was preparing for PCS, volunteering to deploy, held a part-time job on the weekends, and was working on his marriage. In September, he was cleared to PCS and later to deploy.

In April 2011, the applicant had a redeployment screen denying difficulties; "SM reported no present concerns." In June 2011, he sought out behavioral health due to pending administrative action and related stress. He did not return.

In May 2012, he requested an off-post referral for therapy; “Pt states currently he is experiencing some depression due to occupational stressors.” His MSE was unremarkable and “currently stable.” He was cleared for an off-post referral as he was not a high risk Soldier or diagnosed with conditions mandating on-post treatment. In his final appointment, out-processing the Army, the applicant referenced the previously referred to April and May 2012 consultation notes which reflected a history of MDD, in Remission; he did not hold a psychiatric diagnosis at the time of separation.

10. VA electronic medical records (JLV) indicate the applicant is 30% service connected for Anxiety Disorder NOS with MDD.

In January 2013, the applicant sought out approval for a Security Clearance. The provider noted the applicant had “some PTSD” symptoms;” however was not in treatment as he was “doing very well … has made an excellent adjustment to civilian life.” Although the provider indicated “some” PTSD symptoms, it was determined any symptoms had not “made him unstable in any way and are more a matter of mild occasional discomfort.” Although this negates a PTSD diagnosis, as it lacks criteria to include clinically significant impairment, the provider listed PTSD.

In February 2019, the applicant returned requesting an “independent psychological evaluation for the Army Board of Medical Examiners related to medical retirement.” He reported a history of depression and anxiety with recent medication management. The provider explained this was not a service the VA could provide. The note lists a diagnosis of Anxiety Disorder NOS; this is more likely than not carried over from his service connected list as the note is void of substantiation.

11. The Army Review Boards Agency Clinical Psychologist was asked to determine if the applicant had a behavioral health condition in-service that failed retention standards. This opinion is based on the information provided by the Board, DOD electronic medical record (AHLTA), the Joint Legacy Viewer (JLV), and personnel records. Based on a thorough review of available records, the applicant met medical retention standards. The applicant initially went to behavioral health in 2008 reporting anxiety, depression, and alcohol misuse. During follow up, he clarified occupational dissatisfaction drove symptoms and had resolved after identifying work activities that offered a sense of purpose. From 2008 until his separation, treatment surrounded occupational dissatisfaction, relational difficulties, legal stressors, and reactivity to a sense of failure or loss of purpose. While he held a variety of diagnoses over the course of care, an Adjustment Disorder best fit the applicant’s symptom description, presentation, and lack of significant impairment. Even if the other diagnoses are taken at face value, at no point did the applicant’s symptoms, presentation, or functioning reflect a Soldier who was psychiatrically unfit. Rather, the applicant consistently reported mild or no symptoms, provided a 2012 off-post consultation which was void of an active psychiatric diagnosis, and exhibited exemplary performance. In summary, while the applicant received behavioral health services in-service, he continued to meet medical retention standards.

SAMR-RBM
AR20190003089, Daniels, Derrick, T., Redacted PII

Psy.D.
Clinical Psychologist, Medical Advisor

8

000081



DEPARTMENT OF THE ARMY
ARMY REVIEW BOARDS AGENCY
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22042-3531

REPLY TO
ATTENTION OF

SAMR-RBM 19 June 2020

MEMORANDUM FOR Command Management Division, Army Review Boards Agency

SUBJECT: Advisory Opinion for Daniels, Derrick, T., Redacted PII, AR20190003089

1. References

a. Diagnostic and Statistical Manual of Mental Disorders-5th Edition
b. AR 40-501, Standards of Medical Fitness, 14 January 2008
c. AR 40-501, Standards of Medical Fitness, 04 Aug 2011
d. AR 40-501, Standards of Medical Fitness, 27 July 2019
e. Memorandum, Secretary of Defense, 3 Sep 2014, Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post-Traumatic Stress Disorder
f. Army Directive 2014-28, Requests to Upgrade Discharge by Veterans Claiming Post-Traumatic Stress Disorder, 3 Nov 2014
g. Memorandum, Undersecretary of Defense, 25 August 2017, Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records
h. Memorandum, Undersecretary of Defense, 25 July 2018, Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Regarding Equity, Injustice, or Clemency Determinations

2. In May 2020, the applicant, through counsel, submitted a response to a 2019 ARBA medical advisory, a second advisory subsequent to a court remand, requesting "immediate reinstatement to active duty," specifically the Wounded Warriors Program, allowing the applicant to "be fully evaluated mentally and physically for active duty in an isolated environment" asserting this should have occurred in August 2008. Additionally, the applicant requested his GOMOR and deferred OERs be removed and he be re-evaluated for the FY08 MAJ Board. The applicant noted when given a "clean bill" of health, i.e. fit for duty, he'd be able to resolve financial difficulties and obtain a security clearance; however if determined to be unfit a MEB would "suffice."

The applicant included a March 2020 psychiatric evaluation in support of his request. The evaluation was conducted based on the applicant's self-selected 2008-2009 treatment records, self-report, and review of the psychiatrist's prior two encounters with the applicant in 2012. The evaluation is void of a review of Officer Evaluation Reports (OER), Service Schools, or other documents related to performance. The evaluation is void of a review of the letter of reprimand, investigative or police reports, or other documents related to misconduct. Accordingly, the evaluation contains information that is incongruent with other documentation. The evaluator's conclusion was the applicant had Major Depressive Disorder while in-service, related to combat, and the related symptoms contributed to his misconduct.

3. In 2010, the applicant requested a GOMOR be moved to his restricted OMPF. ARBA reviewed the January 2009 Letter of Reprimand (LOR) which indicated the applicant admitted to his wife he'd had an affair leading to a physical fight in which he "attacked her by hitting her with his hands, then with a plastic baton, on her face and head to the brink of unconsciousness and leaving her with bruises still visible 5 days later. He reported when she fell, he dragged her across the floor. He choked her, scratching her on her neck. He verbally threatened her to the point that she feared for her life." The LOR indicated the applicant reported using an online site to meet other woman and had engaged in affairs with several women to include impregnating the wife of a deployed Soldier. The LOR stated the applicant admitted being the father of twins from a June 2008 affair which also started online and had continued. While initially telling the woman he was pending a divorce, after learning he was living with his wife they continued a daily sexual relationship noting sexual activity "after morning physical training, on lunch breaks, and anytime he did not have to be at work."

In support of his 2010 request, the applicant highlighted his OERs, after the LOR, top blocked him with ratings of Outstanding Performance, Best Qualified, and Must Promote. A statement of support indicated the applicant's "performance and conduct as an officer is nothing less than admirable, and that he is highly regarded by his Iraqi counterparts and superiors alike."

The Board felt there was insufficient evidence to show the intent of the GOMOR had been served; it "would not be in the best interest of the Army to transfer it at this time." His request was denied.

4. In October 2012, the Deputy Assistant Secretary of the Army (DASA) approved the Board of Inquiry (BOI) and ARBA recommended separation; misconduct and moral and professional dereliction with an Honorable characterization.

5. In 2014, the applicant applied to the ABCMR requesting his military records be corrected asserting his GOMOR "contains erroneous information and resulted in his unjust involuntary discharge." Additionally, the applicant asserted he was "misdiagnosed with severe depression when in fact he suffered from chronic post-traumatic stress disorder (PTSD)" and if he had "been properly diagnosed and properly treated, his misconduct would not have resulted." The applicant reiterated his success after the misconduct noting the three subsequent OERs, 01 October 2009 through 09 March 2012, "show maximum ratings and recommend him for promotion to major."

The applicant included a February 2009 psychiatric discharge from Red River Mental Health hospital diagnosing MDD.

The applicant included psychiatric consultation notes from April and May 2012, written by the same provider as the updated March 2020 evaluation, listing a History of MDD in Remission and Alcohol Abuse. The applicant indicated he had been happily working as a nursing assistant part-time for four months; he stated he "felt needed" which he did not feel as a Soldier. The provider indicated presenting symptoms surrounded a sense he "was just a number" and "dissatisfaction with current job" as a Soldier;

"doesn't feel appreciated." The applicant reported "good" sleep, "ok" energy, and when bored "some" trouble concentrating. The Mental Status Exam (MSE) was unremarkable. The provider stated whether or not the applicant had PTSD in the past was "unclear;" however it was "not a current issue." The May 2012 follow up note restated the applicant had a history of depression, but his "current state – general discontentment" was related to work dissatisfaction and determined treatment was not needed; he did not have a psychiatric condition requiring intervention.

The applicant submitted a VA record reflecting a diagnosis of PTSD and service connection for Anxiety Disorder NOS with Major Depressive Disorder.

The Board denied his request; his discharge was proper and equitable and behavioral health conditions were not contributory.

6. In June 2015, the applicant requested reconsideration. An ARBA Clinical Psychologist completed an advisory opinion concluding his condition, MDD, was not misdiagnosed and "there is no basis for the applicant's contention that his transgressions would never have happened if he was treated for severe depression in the beginning." His request was denied.

7. In February 2019, ARBA received a court remand requesting ARBA consider mental health records not previously reviewed. The applicant requested ARBA direct his case to the MEB/PEB who could either "validate the Army's current position," recommend placement on the TDRL or PDRL, or reinstate him to active duty.

In April 2019, the ARBA Clinical Psychologist completed a second advisory after reviewing additional documentation; however concluded the applicant was not misdiagnosed and his misconduct was not mitigated by the diagnoses. The ARBA Senior Medical Advisor (SMA) reviewed both advisories and concurred.

In response, the applicant requested the case be referred to the MEB/PEB asserting these Boards "would be a better vehicle in evaluating" documentation. The applicant asserted the ARBA advisory was flawed as the individual did not personally evaluate him and reiterated his assertion his misconduct was related to depression.

8. The Interactive Personnel Electronic Records Management System (iPERMS) contains completed Service Schools in Field Artillery Officer Basic Course, Field Artillery Captains' Career Course, and Staff Process Course of the Combined Arms and Services Staff School from 1999 to 2003.

The applicant's OERs from 2000 through May 2008 reflect successful performance and ratings.

The May 2008 to March 2009 OER addresses the GOMOR for misconduct rating him as Unsatisfactory and not recommended for promotion.

The April to September 2009 OER indicated the applicant had "exemplary work … displays exceptional initiative," was holding multiple jobs to include assistant operations officer while still teaching, was "invaluable to students," executed tasks "flawless," and assisted with rewriting BOLC classes. The applicant was recommended for Command and General Staff College, in residence.

The October 2009 to September 2010 OER reflected Outstanding Performance, Best Qualified, and Must Promote. His rater stated the applicant's "performance is in the top quarter of all combat Arms Officers that I have observed within the last 21 year" as he could complete a "variety of complex and challenging tasks" still accomplishing them "to the highest standard." Moreover, "His efforts were key to the success … increase in combat effectiveness as they provided a safer, more secure environment…" The senior rater indicated the applicant was in the "top ten percent of all company grade officers I have served with over the past 27 years … functioned at the senior Major level with professional maturity … always demonstrated the insight, integrity, vision, moral courage, and selflessness we look for … among the best we have and has shown an outstanding adaptability through his work…"

The October 2010 to September 2011 OER reflected Outstanding Performance, Best Qualified, and Must Promote indicating he was a "gifted leader," could "always be counted on to produce excellent results," "flawlessly supervised … provided outstanding analysis," and emphasized promotion to Major and ILE, in residence, as "He is a future BN Commander."

The October 2011 to March 2012 OER reflected Outstanding Performance, Best Qualified, and Must Promote stating the applicant was "number two of five Captains that I rate," "critical to the success of that mission," "master of managing several competing lines," "hand picked," "smart and tenacious officer who has almost single handedly helped revise the Brigade's T/M certification program as well as train the rest of the staff," and should be promoted "immediately and place in a demanding armor battalion S3 or XO position."

9. The DOD electronic medical record (AHLTA) indicates the applicant's first behavioral health contact was in August 2008. At that time his wife and he reported increased drinking, irritability, discomfort in crowds, lack of motivation, impatience, fatigue, and difficulty relaxing. His wife added when the applicant was intoxicated, he made suicidal statements. The applicant was diagnosed with Alcohol Abuse with further evaluation for Depressive Disorder NOS. In follow up, the applicant reported depressive symptoms were secondary to dissatisfaction with his new role as an Instructor; "feeling of being somewhat unimportant and limited ability to access quality resources to do his current duty…" The applicant then joined a PI project indicating it instilled a sense of importance and engaging in a worthwhile task leading to symptom resolution; he reported sleeping well, exercising, and drinking less. The applicant was diagnosed with an Adjustment Disorder with Depressed Mood and Alcohol Abuse in Remission.

In October 2008, the applicant requested marital therapy noting difficulties since he had an affair resulting in pregnancy and an abortion. He noted his wife informed him she never felt he loved her and he "validated" some of these feelings. The following month, Command referred him after a domestic violence incident. The applicant "complains of increased drinking, increased irritability, pt. is also reporting struggling to find a sense of purpose in his current positions." During therapy, he stated "he had not been honest … had been having an affair and he reports that there was altercations that ended up with him staying at his old house;" a no contact order was in place. The applicant reported his wife was fearful of him leading her to stay at an unknown shelter rather than the home he left. The Family Advocacy Program (FAP) became involved and contacted Command who believed the applicant's wife initiated the argument; however acknowledged the applicant's misconduct during the altercation. Command reported due to the events, the applicant's promotion was on hold and he was being referred to the Army Substance Abuse Program (ASAP). Command indicated the applicant had been successfully involved and discharged from ASAP in the past. Due to the period of service, FAP records were primarily contained in a hard file; there is limited information on the assessment and treatment. Additionally, ASAP records were also maintained in a hard file; the contents of the assessment and treatment are unknown. However, records do indicate he was attending ASAP with an Alcohol Abuse diagnosis listed.

In December 2008, the applicant reported his attitude changed after deployment "because of his frustrations with those experiences." A post-deployment screening indicated the applicant reported "mild depression, anger." The applicant was diagnosed with Anxiety Disorder NOS.

In January 2009, there was a second domestic incident. The applicant reported his wife asked him to come to their home which resulted in an altercation and she threw hot water on him. The applicant did not report the incident; however while at a medical appointment, the provider noticed it. While the applicant was the victim in this incident, the provider noted he had violated the no contact and protective order. That same month, he saw psychiatry and was diagnosed with an Adjustment Disorder and prescribed an antidepressant. At the end of the month, he reported doing well.

In February 2009, the applicant rated himself as experiencing only mild irritability and difficulty related to marital, legal, and occupational stressors. He was later taken to the ER after an attempted suicide. The applicant reported the suicide attempt was in reaction to his letter of reprimand; the way it portrayed him, embarrassment, and concern for his future in the Army. The provider indicated "Service member denies a lot of PTSD-type symptoms … does remember being somewhat depressed with the loss of soldiers and was not able to make a connection with his soldiers." The applicant was subsequently hospitalized at Red River Mental Health hospital and discharged with a diagnosis of Major Depressive Disorder (MDD); at the time of hospitalization the applicant had sufficient depressive symptoms with impairment in his ability to manage stressors to the extent he was suicidal. Of note, a diagnosis of MDD, in and of itself,

does not fail medical retention standards; the expectation is with treatment individuals are able to improve and are given this opportunity before determining they are permanently unfit. At follow up, he reiterated his suicide attempt was related to his “pending a letter of reprimand from the CG and he could not face what other people thought or the ramifications this would have.” He also discussed how a difficult childhood contributed to a sense of failure creating a sensitivity; any indication of failure triggered mood and behavioral symptoms. The applicant verified the adultery and domestic assault feeling divorce was the best recourse. Command reported prior to the suicide attempt, and since then, there “were no behavior problems noted on the job.” The applicant’s treatment surrounded coping with his legal issues, addressing his martial relationship, and understanding how his childhood experiences resulted in poor self-esteem and chronic feelings of failure. By the end of February, the applicant reported socializing, engaging in enjoyed activities, and actively participating in his legal defense; there was minimal symptoms or impairment.

In March 2009, the applicant reported “feeling pretty good,” other than a sense of “humiliation” about the UCMJ action, and was “seeing himself handing the situation.” He rated his anxiety and depression as mild stating he “feels good” and “reports and appears to be coping well at this time;” his diagnosis was an Adjustment Disorder. Later in the month, the provider discussed maladaptive relational patterns; however “reports that he is doing well at this time,” was going out to dinner with his wife, and had an unremarkable MSE. Treatment continued to focus on identifying and overcoming childhood experiences and relational difficulties; treatment was not trauma based or related to MDD.

In April 2009, the applicant reported marital issues began after his deployment. Additionally, he felt he sought an adrenaline rush post-deployment. The provider diagnosed PTSD. However documentation is void of criteria to include clinically significant impairment; there is no substantiation for the diagnosis. The applicant continued to report “he is doing well.” Moreover, he noted he “always received good ratings and had never had any disciplinary action in the past.” In mid-April, the applicant indicated he was going to be retained and was “feeling quite happy pleased …” Throughout April, he reported doing well and appointments were to “provide support” as he was “in good spirits and has a healthy outlook.”

In May 2009, the applicant reported treatment was helpful as it allowed him to “engage in extensive self-examination and exploration …working and developing his self…” In mid-May, he reiterated he had “No anxiety and no depression;” his MSE was unremarkable.

In August 2009, the applicant was preparing for PCS, volunteering to deploy, held a part-time job on the weekends, and was working on his marriage. In September, he was cleared to PCS and later to deploy.

In April 2011, the applicant had a redeployment screen denying difficulties; “SM reported no present concerns.” In June 2011, he sought out behavioral health due to pending administrative action and related stress. He did not return.

In May 2012, he requested an off-post referral for therapy; "Pt states currently he is experiencing some depression due to occupational stressors." His MSE was unremarkable and "currently stable." He was cleared for an off-post referral as he was not a high risk Soldier or diagnosed with conditions mandating on-post treatment. In his final appointment, out-processing the Army, the applicant referenced the previously referred to April and May 2012 consultation notes which reflected a history of MDD, in Remission; he did not hold a psychiatric diagnosis at the time of separation.

10. VA electronic medical records (JLV) indicate the applicant is 30% service connected for Anxiety Disorder NOS with MDD.

In January 2013, the applicant sought out approval for a Security Clearance. The provider noted the applicant had "some PTSD" symptoms;" however was not in treatment as he was "doing very well … has made an excellent adjustment to civilian life." Although the provider indicated "some" PTSD symptoms, it was determined any symptoms had not "made him unstable in any way and are more a matter of mild occasional discomfort." Although this negates a PTSD diagnosis, as it lacks criteria to include clinically significant impairment, the provider listed PTSD.

In February 2019, the applicant returned requesting an "independent psychological evaluation for the Army Board of Medical Examiners related to medical retirement." He reported a history of depression and anxiety with recent medication management. The provider explained this was not a service the VA could provide. The note lists a diagnosis of Anxiety Disorder NOS; this is more likely than not carried over from his service connected list as the note is void of substantiation.

11. The Army Review Boards Agency Clinical Psychologist was asked to determine if the applicant had a behavioral health condition in-service that failed retention standards. This opinion is based on the information provided by the Board, DOD electronic medical record (AHLTA), the Joint Legacy Viewer (JLV), and personnel records. Based on a thorough review of available records, the applicant met medical retention standards. The applicant initially went to behavioral health in 2008 reporting anxiety, depression, and alcohol misuse. During follow up, he clarified occupational dissatisfaction drove symptoms and had resolved after identifying work activities that offered a sense of purpose. From 2008 until his separation, treatment surrounded occupational dissatisfaction, relational difficulties, legal stressors, and reactivity to a sense of failure or loss of purpose. While he held a variety of diagnoses over the course of care, an Adjustment Disorder best fit the applicant's symptom description, presentation, and lack of significant impairment. Even if the other diagnoses are taken at face value, at no point did the applicant's symptoms, presentation, or functioning reflect a Soldier who was psychiatrically unfit. Rather, the applicant consistently reported mild or no symptoms, provided a 2012 off-post consultation which was void of an active psychiatric diagnosis, and exhibited exemplary performance. In summary, while the applicant received behavioral health services in-service, he continued to meet medical retention standards.

SAMR-RBM
AR20190003089, Daniels, Derrick, T., Redacted PII

X Heather Corkins, Psy.D.

Heather Corkins, Psy.D.

Clinical Psychologist, Medical Advisor

8

000089



PHILLIPS LAW, PLLC

1887 WHITNEY MESA DR #8780
HENDERSON, NV 89014
(931) 552-5670 – Telephone
(931) 552-5671 – Facsimile
888-552-5670 – Toll Free
Jphillipslaw22@gmail.com

26 May 2020

MEMORANDUM FOR Army Board of Correction for Military Records, Director, Case Management Division, Army Review Boards Agency, 251 18th Street South, Suite 385 Arlington, Virginia 22202

SUBJECT: Response to Addendum to Advisory Opinion for DANIELS, DERRICK, Redacted PII Case No. AR201900089

1. This is in response to the advisory opinion from the redacted Military Expert Advisory Opinion (AO), dated 10 April 2020. The opinion makes no mention of the expert's qualifications, name or level of expertise. The opinion itself references evidence found within Mr. Daniels' military and medical records. The opinion primarily discusses the

negative effects of Mr. Daniels' diagnosed behavioral health issues but does not find that these behavioral health conditions relate to the alleged misconduct in this case. Mr. Daniels' VA, ABCMR files and Dr. Tracey I Marks medical opinion (EXHIBIT A) is filled with evidence of his behavioral health issues and diagnosis.

Mr. Daniels' believes that there was a failure on the part of the US Army to both investigate the circumstances of his behavioral health conditions and to accurately diagnose those conditions. The failure of the US Army to thoroughly investigate his behavioral health problems is prominent in the medical files and resulted in an erroneous discharge. The US Army decided that his misconduct was criminal in nature but never investigated how the obvious behavioral health issues may be directly related to the conduct at issue. The Army had an opportunity to rigorously evaluate Mr. Daniels and should have conducted a preliminary Medical Evaluation Board (MEB). At the time that he was administratively separated, the Command had completely ignored his behavioral health conditions. The proper procedure would have been to do an MEB and find whether he was fit or unfit for duty. This could not have been done without investigating the underlying circumstances of the alleged misconduct. To properly determine whether or not Mr. Daniels should have been evaluated and found unfit for duty, he would have had to have been referred to US Army Medical Personnel to investigate the conditions and diagnosis which made it difficult for him to continue in his military duties.

Dr. Tracey I. Marks has had the opportunity to do a thorough forensic evaluation of Mr. Daniels in this case. She wrote a report in April 2020, detailing his behavioral health diagnosis and the cause of those mental health problems. She states clearly in her report that "Based on the timeline of his symptoms and the medical records, his

depression was related to his military service. In conclusion, it is my opinion within a reasonable degree of medical and psychiatric certainty that Mr., Daniels suffered from major depression during his military service. The depression was related to his military service and related to his misconduct from 2008."

The Military Expert in the AO does not rely on the medical evidence to make his determination. He seems to rely on the misconduct as proof that there was no underlying behavioral health condition that was causing Mr. Daniels conduct. If this board were to require him to provide those medical files and documents that were never properly diagnosed by the command, they would be relieving the US Army of its duty to properly investigate the cause of Mr. Daniels behavior and how the detrimental behavior affected his ability to continue military service. The lack of evidence on the part of the original treating medical personnel was without merit. The proper analysis should have been that without the proper records the original decision to not review his condition as a cause of his discharge is without merit.

2. Generally, service connection may be granted for disability due to a disease or injury that was incurred in or aggravated by active service. 38 U.S.C.A. § 1110 (2014); 38 C.F.R. § 3.303. In addition, service connection may be granted for any disease diagnosed after separation, when all the evidence, including that pertinent to service establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

The appellant was on active duty status at the time that these incidents occurred. As such, at the time of the alleged misconduct, he was suffering from severe mental disease. The injuries were caused by his military service and were related to the US

Army. All the symptoms prescribed by Dr. Mark's analysis, including suicidal ideology, was present during his initial visit to the Fort Sill Behavioral Health Clinic of August 2008. (EXHIBIT B). This was the optimal time Mr. Daniels should have been sent to an isolated treatment facility such as Walter Reed or the Red River Mental Health Hospital. If his command and treatment facility was proactive, then my client may still have been on active duty today.

Dr. Marks has opined "It is my opinion within a reasonable degree of medical and psychiatric certainty that beginning around 2007 during his second deployment in Iraq, Mr. Daniels suffered from Major Depression. His symptoms persisted after his return to Oklahoma, and these symptoms took the form of irritability, depressed mood, inability to enjoy things (anhedonia), and insomnia. Mr. Daniels was treated for depression, and the contemporaneous medical records document his complaints and treatment."

In this case the unit rushed to judgment. Mr. Daniels has a unique but honest perspective on his situation at time and he states, "when you spend years taken on inadequacies outside your span of your control, it takes a toll. My circumstances are unique only to me, which were a series of continuous events operating independently of each other. An outline of those details is in the forensic analysis of Dr. Marks. However, I want to explain three crucial events by my chain of command along with the Fort Sill Behavioral Health Clinic that was counterproductive in my treatment. From 2008 through 2009, my chain of command unintentionally deepened my depression while I was seeking treatment to get better. Three contributing factors are lack of a thorough investigation, treatment interference and no continuity of care."

The US Army had an opportunity to investigate Mr. Daniels' behavioral through a thorough investigation. Under Army Regulation when a Soldier has committed offenses under the UCMJ, the command has the authority and duty to investigate the circumstances of the offenses. The investigation should be thorough.

Mr. Daniels' remembers that "The investigating officer did not conduct a complete investigation. A police report is not evidence. Detective Peralta mistakenly wrote I admitted to multiple affairs in his report after interviewing my wife and myself. Coincidently, my wife information to the Lawton Police Department was regurgitating the false testimony of Ms. Tara Brown. My command thought they had a pattern of my testimony to the Lawton Police Department and Ms. Tara Brown false statement, but it was not. Outside of Ms. Tara Brown's statement, there was not any other evidence. This furthered my depression. Ms. Tara Brown recanted her accusation of multiple affairs in 2010. My continuous written rebuttals were consistent but never taken seriously. The investigating officer nor my chain of command never heard my taped interview. I requested it at my Board of inquiry hearing however, authorities destroyed it."

Dr. Marks in reviewing the medical records found that "Mr. Daniels received a GOMAR for his conduct related to infidelity and hitting his wife. Mr. Daniels felt demoralized by the GOMAR because he felt some of the language in the documentation portrayed him as a man who victimized women. Mr. Daniels contemplated suicide for a few weeks before nearly making and attempt to hang himself in February 2009.

He was hospitalized and discharged to two months of outpatient treatment. Part of his treatment plan at Red River Mental Hospital was for Mr. Daniels to volunteer to return to Iraq as a goodwill gesture to give back to the military. Mr. Daniels deployed to

Iraq again in October 2010. At the time of his deployment, he was aware of proceedings that were in motion to have him discharged from the military secondary to his GOMAR. He involuntarily separated from the Army in November 2012."

The command assumed that the misconduct that was investigated did not have a correlation to the mental health issues experienced by Mr. Daniels. The failure to investigate was directly attributable to the command. In this case, the unit originally had knowledge the behavioral health issues. They continued to prosecute Mr. Daniels but did not review how either the misconduct or his duties were affected by his behavioral health.

Mr. Daniels believes "the command did not take the behavioral health issues seriously and they became part of the problem. My battalion commander, unintentionally, interfered with my treatment. I underwent a complete assessment after nearly taking my life by Dr. Dodds in 2009. Despite significant documentation in my medical records, previous assessments never played a part. This was primarily due to LTC Talcott reporting I had several affairs as a possible motive for wanting to commit suicide. (EXHIBIT C) Of course, the Board of Inquiry acknowledge Ms. Brown has recanted affidavit in 2012."

"The Fort Sill Behavioral Health Clinic did not maintain a continuity of care. This would alert them of my treatment plan developed from my severe depression. Red River Mental Health Institute was trusted with providing me proper treatment, but my treatment plan never followed me to outpatient care. Red river mental health Hospital was my recovery turning point because I was able to focus without distractions. (EXHIBIT D)

3. My client requests immediate reinstatement to active duty with at least 90 days of transition through the Army's "Wounded Warriors Program" at Walter Reed Hospital. This allows Mr. Daniels to be fully evaluated mentally and physically for active duty in an isolated environment, the same process that should have happened over a decade ago, August 2008. During this transition, the applicant requests the GOMAR and two deferred OERs are removed from his official file. In addition, he is re-evaluated for the FY08 Majors Board, but his year group is changed for competitiveness. This time will give my client time to resolve financial difficulties and re-apply for a secret security clearance after a clean bill of mental and physical health. If for any reason medical officials feel Mr. Daniels is unfit for duty during the 90-day treatment, a MEB would suffice at that time. Due to his courageous, undocumented success after his treatment from the Red River Mental Health Hospital, my client deserves this opportunity. Mr. Daniels did everything right, he has no control over the actions of others involved in his personal life and professional career. I can be reached by phone at (931) 217-7648 or via email at jphillipslaw22@gmail.com.

ENDORSED

APPLICANT

Respectfully

James Phillips

James Phillips

Encls: EXHIBIT A: Dr. Marks Expert Opinion

EXHIBIT B: Initial Assessment Fort Sill BH Outpatient Clinic

EXHIBIT C: Suicide Assessment Ft Sill BH Outpatient Clinic

EXHIBIT D: Red River Mental Health Hospital Treatment Assessment

 # Audit Trail

| | |
|---|---|
| **TITLE** | Derrick Daniels Endorsed Copy AO Rebuttal |
| **FILE NAME** | Daniels AO rebuttal v2E.pdf |
| **DOCUMENT ID** | 23ce433ee21bb6aad6a80ebc82647ee054915bef |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

| | | |
|---|---|---|
| SENT | **05** / **29** / **2020**<br>17:29:36 UTC | Sent for signature to Derrick Daniels (derrick.daniels72@gmail.com) from jphillipslaw22@gmail.com<br>IP: 174.72.244.81 |
| VIEWED | **05** / **29** / **2020**<br>17:32:33 UTC | Viewed by Derrick Daniels (derrick.daniels72@gmail.com)<br>IP: 173.20.210.180 |
| SIGNED | **05** / **29** / **2020**<br>17:33:29 UTC | Signed by Derrick Daniels (derrick.daniels72@gmail.com)<br>IP: 173.20.210.180 |
| COMPLETED | **05** / **29** / **2020**<br>17:33:29 UTC | The document has been completed. |

Powered by HELLOSIGN



Marks
Psychiatry

Tracey I. Marks, MD

April 2, 2020

James Phillips, Esq.
Phillips Law PLLC
1887 Whitney Ranch Drive
Henderson, NV 89014

Sent via facsimile: 931-552-5671

Re: Derrick Daniels

Dear Mr. Phillips:

At your request, I evaluated your client, Derek Daniels, for the purpose of determining and whether or not he had a mental condition at the time of his separation from the Army in 2012. Additionally, if a mental condition was present, was the mental condition related to his service and the misconduct for which he was charged?

**Sources of information**

- Notebook of documents provided by Mr. Daniels that included mental health treatment records from 2008 – 2009
- Evaluation notes from 2012 from Tracey Marks, MD
- Clinical interview of Derrick Daniels on March 24, 2020, for 2 hrs

**Timeline of events**

| | |
|---|---|
| 1990 – 1992 | Enlisted in Army, stationed at Ft. Carson |
| 1992 – 1994 | Mannheim, Germany |
| 1994 | Completed term as an enlisted soldier |
| 1994 – 1998 | Albany State College |
| 1999 – 2000 | Re-entered Army as a commissioned officer, stationed at Korea |
| 2000 – 2004 | Ft. Sill (Oklahoma) |
| 2004 – 2005 | First deployment to Iraq |
| 2005 - 2006 | Mannheim, Germany |
| 2006 - 2007 | Second deployment to Iraq |
| 2007 - 2009 | Ft. Sill |
| 2008 | Started treatment at Ft. Sill Community Mental Health |

6525 The Corners Pkwy, Ste 212
Peachtree Corners, GA 30092
404-327-5194 ph 404-719-5067 fax

| | |
|---|---|
| November 2008 | Domestic violence incident |
| December 2008 | Notified of GOMAR |
| January 2009 | GOMAR finalized |
| February 2009 | Hospitalized at Red River Mental Hospital for ten days after a suicide attempt |
| March – April 2009 | Continued weekly outpatient treatment at Fort Sill Community Mental Health |
| October 2009 – December 2010 | Third deployment to Iraq |
| 2010 – 2012 | Ft. Stewart (Georgia) |
| 2011 | Engaged in three months of treatment with a civilian mental health provider |
| November 2012 | Separated from the Army |

**Summary of the Situation**
Mr. Derrick Daniels first enlisted in the Army in 1999 after high school for a four-year term. He then attended college and completed a bachelor's degree. He was commissioned as an officer in the Army in 1999. He was deployed to Iraq on three occasions in 2004, 2006 and 2009. During his second deployment, he served in the capacity of a tank commander and experienced combat exposure. Mr. Daniels found his second deployment to be more difficult than the first. He felt inadequately trained to do the job to which he was assigned, and this created persistent anxiety that turned to anger. Mr. Daniels reported his mission frequently changed; he had soldiers who were killed, and he frequently worried that he would be blamed or possibly court-martialed for perceived errors on his part.

When his deployment was complete, he returned to Fort Sill and worked as an instructor training soldiers for deployment. He found his job frustrating because he was not authorized to teach unapproved strategies that he used during his deployment.

This frustration worsened the anger and anxiety he felt upon his return. He began drinking alcohol each night to deal with his frustrations. He would drink 3 -4 bottles of beer per weeknight and four glasses of whiskey each weekend night. His wife gave him an ultimatum to seek help, or she would leave him. He sought treatment at Fort Sill Community Mental Health. The medical records indicate Mr. Daniels reported depression symptoms such as insomnia, anhedonia, apathy, irritability, and loneliness. The medical records also indicate his condition was GDOT-related.

Sometime around September 2008, Mr. Daniels sought a relationship with a woman he met online. According to Mr. Daniels, he missed the fast-paced, risk-taking nature of his work in Iraq and sought the relationship to fulfill this desire. After his wife

discovered the relationship, he admitted his involvement and gave his wife permission to contact the woman with questions.

According to Mr. Daniels, the woman told his wife things that were not true, and his wife confronted him on these issues. She pushed him twice, and when she advanced on him the third time, he hit her on the side of the face with a children's plastic bat. She withdrew, and they spent the rest of the evening in separate rooms. Mr. Daniels then moved into a hotel. Several days later, his wife went to the emergency room for evaluation. Subsequent to that evaluation, the authorities were notified of the domestic event.

Mr. Daniels received a GOMAR for his conduct related to infidelity and hitting his wife. Mr. Daniels felt demoralized by the GOMAR because he felt some of the language in the documentation portrayed him as a man who victimized women. Mr. Daniels contemplated suicide for a few weeks before nearly making and attempt to hang himself in February 2009.

He was hospitalized and discharged to two months of outpatient treatment. Part of his treatment plan at Red River Mental Hospital was for Mr. Daniels to volunteer to return to Iraq as a goodwill gesture to give back to the military. Mr. Daniels deployed to Iraq again in October 2010. At the time of his deployment, he was aware of proceedings that were in motion to have him discharged from the military secondary to his GOMAR. He involuntarily separated from the Army in November 2012.

**Prior Psychiatric History**
Mr. Daniels denied being diagnosed with or treated for a psychiatric disorder prior to 2008.

**Mental Status Exam**

Mr. Daniels is an African American male who appeared his stated age of 47. He was casually dressed and friendly with the examiner.  His speech was normal rate and rhythm and spontaneous.  His mood was good, with a normal range of affect. His thought process was linear and goal-directed.  He denied suicidal or homicidal thoughts. There were no psychotic symptoms, such as hallucinations or delusions, discernible.  He was alert and oriented in all three spheres.  His insight and judgment were good.

**Opinion**
Mr. Derrick Daniels is a 47-year-old divorced man with a 17-year military history who was involuntarily separated from the Army after charges of misconduct related to domestic violence and adultery.

Is it my opinion within a reasonable degree of medical and psychiatric certainty that beginning around 2007 during his second deployment in Iraq, Mr. Daniels suffered from Major Depression. His symptoms persisted after his return to Oklahoma, and these symptoms took the form of irritability, depressed mood, inability to enjoy things (anhedonia), and insomnia. Mr. Daniels was treated for depression, and the contemporaneous medical records document his complaints and treatment.

Irritability and emotional volatility are symptoms of depression that can result in aggressive behavior, especially in the context of a verbal altercation. In the Board Inquiry Proceedings, Dr. Ann Parodi opined that Mr. Daniels' behavior more likely stemmed from his personality and not Post-Traumatic Stress Disorder (PTSD) because she did not see documentation of flashbacks. Also, the ABCMR Record of Proceedings concluded that "there is no evidence to suggest that he did not understand the difference between right or wrong or that he could not adhere to the right."

Major depression and the emotional volatility and irritability that come with it does not require that a person lose the capacity to know right from wrong in relation to the act. The disorder lowers the threshold for frustration tolerance, lowers an individual's emotional/impulse control, and negatively distorts their perception of their circumstances. When irritability is present, it makes them more prone to anger. Therefore, it is plausible that a verbal altercation such as the one Mr. Daniels had with his wife, could trigger aggression in the absence of any flashback or dissociative experience. It is also likely that his anhedonia, which is the inability to derive pleasure out of anything, led to his risk-taking behavior of seeking a relationship outside of his marriage.

Based on the timeline of his symptoms and the medical records, his depression was related to his military service.

In conclusion, it is my opinion within a reasonable degree of medical and psychiatric certainty that Mr. Daniels suffered from major depression during his military service. The depression was related to his military service and related to his misconduct from 2008.

Feel free to contact me should you have any questions.

Sincerely,

Tracey I. Marks, MD

Tracey Marks, MD

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: DANIELS, DERRICK TORAINO
Treatment Facility: REYNOLDS ACH
Patient Status: Outpatient

Date: 18 Aug 2008 0835 CDT
Clinic: MENTAL HEALTH

Appt Type: ACUT
Provider: DODD,DAVID S

Reason for Appointment: sod walk in

AutoCites Refreshed by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA

**Active Family History**

No Active Family History Found.

**Allergies**

- No Known Allergies

**Active Medications**

No Active Medications Found.

**Vitals**

Vitals Written by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT
Tobacco Use: Yes, Alcohol Use: Yes, Pain Scale: 0 Pain Free

SO Note Written by GROVE,SHERRY L @ 18 Aug 2008 1010 CDT

**History of present illness**

The Patient is a 35 year old male.

He reported: Encounter Background Information: This is a 35 year old African American, married male Active Duty Army CPT who walked in to CMHS this morning accompanied by his wife to see the SOD. SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. SM & wife report that since his return he has had an increase in drinking (2 beers or 2 liquor shots every night). He also reports depressive symptoms, irritability, uncomfortableness in crowds, lack of motivation, inpatience, fatigue, problems relaxing, and erectile dysfunction. SM stated that he wanted to get help several months ago, but he never followed through. SM relayed that his wife told him today that if he didn't come to CMHS, she would go to his Commander & tell him about SM's problems.

Psychological symptoms SM appeared neatly dressed and groomed in ACU's, appeared alert, oriented, & in no acute distress. SM denies SI/HI, denies perceptual distortions, denies psychotic symptoms. SM's wife relayed that SM has mentioned wanting to kill himself. Wife relayed that SM bought her a gun for her protection while he was deployed. Wife says when SM drinks, he'll say stuff like "Where's the gun-I'll blow my brains out right now". SM's speech appeared normal with regards to rate, tone, & flow. SM's mood appeared depressed with affect congruent. Risk issues appear minimal to moderate @ this time. SM informed of CMHS & RACH emergency protocol procedures should he become acutely distressed or decompensate.

**Subjective**

Will staff case with Dr. Dodd. R/O Depressive D/O NOS, R/O Alcohol Abuse. SM may benefit from medications, & he is amenable to taking them. SM is not amenable to groups, & he would prefer 1:1 therapy for post deployment related issues. Also, SM & his wife are interested in Marital counseling, & may need a referral to Social Work Services. SM & wife were informed of CMHS & RACH emergency protocol procedures should they become acutely distressed or decompensate. Taught SM & wife some breathing techniques & progressive muscle relaxation exercises, which they engaged in. They were encouraged to engage in the exercises @ home also. SM & wife will f/u as needed and scheduled with their primary providers.

A/P Written by DODD, DAVID S @ 19 Aug 2008 0659 CDT

1. ALCOHOL ABUSE
 Procedure(s): -Psychiatric Therapy Individual Approximately 45-50 Minutes x 1

Disposition Written by DODD, DAVID S @ 19 Aug 2008 0700 CDT

Released w/o Limitations

Follow up: as needed . - Comments: sm agreed to go to the ASAP program. Also set up appt for intake. clarified emergency

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 2 Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| Pat Cat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| DEERS Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS

EXHIBIT C Case 1:18-cv-01805-RAH Document 37-1 Filed 05/21/21 Page 109 of 908

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

13 Feb 2009 2315

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DODD, DAVID S

SO Note Written by DODD,DAVID S @ 14 Feb 2009 0757 CST

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: Partial implementation of a suicide plan to hang self details listed below.

A/P Written by DODD, DAVID S @ 14 Feb 2009 0800 CST

**1. DEPRESSION**

Procedure(s): -Psychiatric Therapy Indiv By A Physician Approx 75-80 Min x 1

**2. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II** *(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*

**3. SUICIDE ATTEMPT - HANGING**: acting on plan but did not make final jump off table.

Disposition Written by DODD, DAVID S @ 14 Feb 2009 0800 CST

**Admitted** - Comments:

**Follow up:** as needed . - Comments: see above for details. admitted to red river.

120 minutes face-to-face/floor time..

Note Written by DODD, DAVID S @ 14 Feb 2009 0743 CST

Name: Daniels, Derrick 2( Redacted PII

Identifying information: Service member is a 36-year-old like to be married African American male with the rank of captain.

Reason for referral: Service member was seen of the Reynolds Army Community Hospital emergency room at the request of Dr. Patrick after the service member was brought in for attempting to hang himself in his garage.

Details of the event: Service member has had a chronic history of behavior and relationship problems over the last several months and during this time there is the issue of domestic violence and now a no contact order between him and his spouse. They have been living in separate locations in the service member has been seeking services at the community mental Health Center since August of 2008. During that time he saw several different providers his current provider is Dr. Brandon, PhD, psychologist. He's been seen in the posterior 0.1 the clinical the last month and is also seeing Mr. McKeever and his psychiatrist is Dr. Tomlinson. He reports that approximately 2 weeks ago he was placed on Zoloft 100 mg. Around the same time he was given a letter of reprimand by the general of the post due to his behavior. This seems to have been a critical moment in his recent mental health decline as he reports that as he read the letter he decided that this person that they were describing on paper really was not who he wanted to be/or was. And yet in the letter of reprimand he realized that that would probably result in a secondary action which would force him out of the military his hope for the future started to decline at the same time his desire to talk to his wife was not allowed because of the no contact order and he was perceived by others as a substandard and soldier and despicable person by his report. He attempted to seek legal counsel as his trial defense calling the attorney hoping that there be some way to share his side of the story so he was not kicked out of the military which also he perceives as his primary way of life. He never adjusted well when he was a child as a single child at the form of a lot of siblings socially isolated but that the military which gave him away out of his current project his life. He joined the Army as enlisted and went to Greene Nicole did eventually became an officer is been deployed twice an L4-L5 and 06 to know 7 both to Iraq first appointment was to check crit and Bock about and the second one was to the Baghdad in her body area. He was in command 2 times during this period but felt disillusioned by what he was not able to accomplish versus what he was able to accomplish.

He used to drink alcohol heavily but states he stopped drinking entirely 2 weeks ago when he was prescribed Zoloft it's uncertain to this provider he's been in the ASAP program. Service member denies a lot of PTSD-type symptoms such as nightmares and intrusive recollections and thoughts. He does remember being somewhat depressed with the loss to soldiers and was not able to make a connection with his soldiers.

during the 2 weeks he was unable contact his attorney and within the last week he is becoming more and more depressed thinking that life is over so as of the day of the 12th on the evening he went to Wal-Mart but a 14 foot

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 2( Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINC Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE STANDARD FORM 600 (REV

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS Prescribed by GSA and ICMR

000103

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

13 Feb 2009 2315
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DODD, DAVID S

rope made and a salad at 100 around a steel beam in the garage of his wife he went to her house opened the garage door with his car door open her went in without disturbing his wife" around the steel beam in the garage. He got up on the table preparing to jump but in the final moments of contemplating whether he should do this he thought he might go to hell if he did this and decided he should jump he called his mother and father in South Carolina did not tell them to details but said that he was feeling like he didn't want to live they talk to him for an hour to on the phone and eventually he taxed his wife that he had been at the house and was to hang himself at that point in midafternoon she called the unit the unit contacted service member brought into the ER this evening

Previous suicide attempts: None by his report

Is not intoxicated at the time

Educational he has a bachelors degree in business management and a Masters degree in business the leadership. He reports that his performance as in school stopped up to the was not specific

RISK ASSESSMENT: Service members at high risk to harm himself and in the imminent future as his time in the military is coming to an end and or likely is coming to an end. When asked if he could kill himself again what he said "I don't know" his personality and view of himself his informed around the military and yet his impulse control and judgment has been quite poor as the unit reports that he said several extramarital relationships in the domestic assault with his wife as other issues as well that the behavioral problems and yet when he goes to work they say he is quite effective service loss of this note to her position as an officer and over for 17 years has damaged his persons self-concept. In addition to this his loss of focus progressive depression his alcohol consumption and his distorted thinking make his likelihood of acting quite high.

PLAN: Service member agreed to go to Red River psychiatric hospital versus being emergency order of detention to the local hospital which this provider stated he would do if needed to ensure his safety. Service member felt that it would be more beneficial for him to go to a treatment facility where he could stay for a longer period of time. Discussed this with his tying commander LTC Talcott, Dr. Patrick ER MD, and the Red River intake worker. Red River accepted him and there was a nurse to nurse discussion to transfer information re his vital signs, etc. SM will f/u with dr. brandon upon discharge from the hospital.

Signed By DODD, DAVID S (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 14 Feb 2009 0801

Name/SSN: DANIELS, DERRICK TORAINO/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

FMP/SSN: 20 Redacted PII
DOB: Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:

Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

EXHIBIT D

RED RIVER HOSPITAL

DISCHARGE SUMMARY

PATIENT NAME: DANIELS, DERRICK
PATIENT ID: Redacted PII
DATE OF ADMISSION: 2/14/2009
DATE OF DISCHARGE: 2/24/2009
ATTENDING PHYSICIAN: BRYAN WIECK, M.D.
UNIT: ADULT

RED RIVER HOSPITAL
This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of this person to whom it pertains or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

**ADMISSION DIAGNOSIS:**

**AXIS I:**
Major depressive disorder, recurrent, severe addiction.

**AXIS II:**
Deferred.

**AXIS III:**
None.

**AXIS IV:**
Psychosocial stressors, severe.

**AXIS V:**
Global assessment of functioning: Current is 30, highest in the past year is 75.

**DISCHARGE DIAGNOSES:**

**AXIS I:**
Major depressive disorder, recurrent and severe.

**AXIS II:**
None.

**AXIS III:**
None.

**AXIS IV:**
Psychosocial stressors, severe.

**AXIS V:**
Global Assessment of Functioning current 50, highest in the past year is 75.

**PHYSICAL ON ADMISSION:**
The patient's height 5 feet 9 inches, weight 210 pounds, blood pressure 117/84, pulse 73, respirations 18.

**ADMISSION LABORATORY:**
CBC with RBC 4.58 which is low, hematocrit 41.2 which is low, monocyte 9.3 which is elevated, urinalysis within normal limits. Survey 14 with anion gap of 9 which is slightly low, urine drug screen negative. TSH within normal range. RPR nonreactive, CMG Amplified D testing negative.

**PATIENT NAME:** DANIELS, DERRICK
**PATIENT ID:** Redacted PII
**DATE OF ADMISSION:** 2/14/2009
**DATE OF DISCHARGE:** 2/24/2009

**HOSPITAL COURSE:**
A 36-year-old male admitted to the adult inpatient program with chief complaint of 'I am trying to hang myself.' The patient's active duty stationed at Lawton Army base in Oklahoma, Fort Sill. It has been found in the past the patient has been drinking excessively to deal with stress. The patient depressed and increasingly depressed since November 2008. He was charged with adultery and he is separated from his wife, anticipated might reconcile or a very possible divorce although he would like things to work out. He has a 14-year old army career, he knows nothing else. Depression, depressed mood, energy, irritability, poor concentration, poor sleep, isolation, helplessness, thoughts of suicide, he purchased a rope and was beginning the process to hang himself and feared that he will go to hell and stopped and called his command. Initially in the unit, he was alert and oriented x4. His memory is intact. His mood depressed. Affect dysphoric. Thought process is well organized, recognized the need for treatment. Treatment plan included individual and group therapy and medication management. The patient attended groups and therapies on the unit. He worked on mood improvement skills. The patient worked on ways to decrease anxiety and improve his mood. The patient worked on building strength and motivation within himself and improves his self-esteem, self-worth, worked on relaxation techniques and worked on communication skills. The patient was attentive and contributory and participatory in the program, he opened up. He did good work on concentrating on himself and stop distancing. The patient was involved patient worked on positive thoughts and establishing those. Treatment went well improving himself on communication and healthy ways to cope and handle his emotions and self empowerment. Overall the patient is doing well. He tolerates medications without any side effects. His mood improved. His affect improved. He is discharged in stable condition with no suicidal or homicidal ideation.

**DISCHARGE MEDICATIONS:**
Zoloft 100 mg daily, Ambien 10 mg at bedtime p.r.n. for sleep.

**DISCHARGE PLAN:**
To follow up with Fort Sill Community Mental Health immediately upon arrival to base. Primary care physician as needed for physical health care needs. The patient's military services, instructed to contact Dr. Wieck at Red River Hospital for any questions, concerns, or problems.

Kristi Curd, RN

Bryan Wieck, M.D.

JOB ID: 702992
DD: 03/22/2009
DT: 03/23/2009

RED RIVER HOSPITAL
This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of this person to whom it pertains or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

# Derrick Daniels

Redacted PII

Cell: Redacted PII

derrick.daniels72@gmail.com


Director, Case Management Division
Army Review Boards Agency
251 18th Street South, Suite 385
Arlington, Virginia 22202-3531


April 30, 2019


RE:  Addendum to Advisory Opinion for DANIELS, DERRICK, Redacted PII
      Case No. AR20190003089


Dear Director,

        We submitted a request for a MEB/PEB on 17 February 2019 in reference to the court order.  That particular case no is AR20190003697 (acknowledgement email and letter attached).  The intent was, due to the complexity of my case, a MEB/PEB board would be a better vehicle in evaluating medical records, OERS, testimony of expert witnesses, Board of Inquiry Minutes and my Rebuttal Statements from a clinical aspect. The advisory opinion from the military psychiatrist, who has not personally evaluated me, does not clinically give an alternate assessment of WHAT caused the Severe Depression.  The root cause analysis of my Severe Depression developed by the Red River Treatment Team was my challenges endured during combat.  The affair, alcoholism and acts of violence were coping mechanisms for the Severe Depression.  This is what I developed my recovery plan on.  This is addressed in more detail in my request for relief Case No. AR190003697 (attached).

        I request continuance for 30 days due to the fact my lawyer was out of town.  I was just able to seek his counsel on 29, April 2019 in which he acknowledges not having the time in adequately reviewing the advisory opinion.  We want the opportunity to SPECIFICALLY address paragraph 9 on page 2.


        Sincerely,

        Derrick T. Daniels


3 Encl

Letter from Director, Case Management Division, April 15, 2019
Acknowledgement Email from Director, Case Management Division
Relief Submission to Army Review Board Agency



**DEPARTMENT OF THE ARMY**
ARMY REVIEW BOARDS AGENCY
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

April 15, 2019

Case Management Division/sra
AR20190003089, Daniels, Derrick T

Mr. Derrick T Daniels
Redacted PII

Dear Mr. Daniels:

This is in reference to your application to the Army Board for Correction of Military Records (ABCMR) dated February 01, 2019.

Title 10, United States Code, section 1556 requires we provide applicants a copy of various types of correspondence and communication we receive related to their application. This includes any advisory opinion provided from outside of the Army Review Boards Agency that directly pertains to or has a material effect on an applicant's case.

In your case, we received an advisory opinion from the Army Review Boards Medical Advisor (copy enclosed). The ABCMR can adopt the advisory opinion recommendation in whole, in part, or reject the recommendation, based on the Board's analysis of the facts and circumstances of your case.

We have placed the processing of your application on hold for 15 days from the date of this letter to allow you the opportunity to submit comments on the enclosed advisory opinion. Your comments must be submitted in writing to: Director, Case Management Division, Army Review Boards Agency, 251 18th Street South, Suite 385, Arlington, VA 22202-3531. You may also fax your comments to 703-601-0705 to the attention of Mr. Abrams or email to stacy.r.abrams.civ@mail.mil

If you choose not to submit comments by the suspense date, the ABCMR will make a final determination in your case based on available facts and documents.

A copy of this letter has been provide to the counsel listed on your application, Mr. Robert S. Poydasheff, PO Box 348, Columbus, GA 39861.

Sincerely,

X

Jeffrey C. Lieb
Director, Case Management Division

Enclosure

Printed on Recycled Paper

**Daniels, Derrick**

**From:** Derrick Daniels <derrick.daniels72@gmail.com>
**Sent:** Sunday, April 28, 2019 5:55 PM
**To:** Daniels, Derrick
**Subject:** Fwd: AR20190003697, Daniels, D.

print

---------- Forwarded message ---------
From: <usarmy.pentgon.hqda-arba.mbx.reception.donotreply@mail.mil>
Date: Wed, Apr 10, 2019 at 10:16 AM
Subject: AR20190003697, Daniels, D.
To: <derrick.daniels72@gmail.com>

Dear Applicant:

The Department of the Army Review Boards Agency acknowledges receipt of your application for correction of Military Records.

Your application has been assigned case number AR20190003697.

Our Agency processes a high volume of applications every year and we want to make sure each one is thoroughly analyzed and reviewed. In fairness to all applicants, the various Boards within the Army Review Boards Agency (ARBA), consider cases in the order in which they are received with limited exceptions.

Due to the high volume of applications received and complexity of many cases, it is currently taking 18 - 24 months or longer before you may receive a decision on your application.

Should your address change prior to receiving a final decision in your case, please notify us and include your case number with new address so we may contact you if necessary.

Thank you for your patience as we obtain your records and consider your application.

Sincerely,

Director, Case Management Division
Army Review Boards Agency

# APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552

*(Please read Privacy Act Statement and Instructions on back BEFORE completing this application.)*

OMB No. 0704-0003
OMB approval expires
Dec 31, 2017

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the Department of Defense, Washington Headquarters Services, Executive Services Directorate, Directives Division, 4800 Mark Center Drive, Alexandria, VA 22350-3100 (0704-0003). Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.

**RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.**

**1. APPLICANT DATA** *(The person whose record you are requesting to be corrected.)*

**a. BRANCH OF SERVICE** *(X one)*: [X] ARMY [ ] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD

**b. NAME** *(Print - Last, First, Middle Initial)*: Daniels, Derrick T.

**c. PRESENT OR LAST PAY GRADE**: 0-3E

**d. SERVICE NUMBER** *(If applicable)*:

**e. SSN**: Redacted PII

**2. PRESENT STATUS WITH RESPECT TO THE ARMED SERVICES** *(Active Duty, Reserve, National Guard, Retired, Discharged, Deceased)*: Active Duty

**3. TYPE OF DISCHARGE** *(If by court-martial, state the type of court.)*: Honorable

**4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY** *(YYYYMMDD)*: 20121216

**5. I REQUEST THE FOLLOWING ERROR OR INJUSTICE IN THE RECORD BE CORRECTED AS FOLLOWS:** *(Entry required)*

Medical Evaluation Board/Physical Evaluation Board

1. Validate the Army's current position
2. Recommend placement on the Temporary Disability Retirement List (TDRL) (Unfit for Duty)
3. Recommend placement of the Permanent Disability Retirement List (PDRL) PDRL ( (Unfit for Duty)
4. Recommend reinstatement on Active Duty in current Branch.

**6. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST FOR THE FOLLOWING REASONS:** *(Entry required)*

I therefore request relief due to symptoms of service-connected Major Depression prior involuntary separation.

**a. IS THIS A REQUEST FOR RECONSIDERATION OF A PRIOR APPEAL?** [X] YES [ ] NO

**b. IF YES, WHAT WAS THE DOCKET NUMBER?** AR20150012081

**c. DATE OF THE DECISION**: April 09, 2015

**7. ORGANIZATION AND APPROXIMATE DATE** *(YYYYMMDD)* **AT THE TIME THE ALLEGED ERROR OR INJUSTICE IN THE RECORD OCCURRED** *(Entry required)*

**8. DISCOVERY OF ALLEGED ERROR OR INJUSTICE**

**a. DATE OF DISCOVERY** *(YYYYMMDD)*: 20121116

**b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THE APPLICATION.**

I have enclosed a court order from The United States Court of Federal Claims ordering a voluntary remand on the condition the Army Board of Corrections considers mental health records not reviewed previously.

**9. IN SUPPORT OF THIS APPLICATION, I SUBMIT AS EVIDENCE THE FOLLOWING ATTACHED DOCUMENTS:** *(If military documents or medical records are pertinent to your case, please send copies. If Veterans Affairs records are pertinent, give regional office location and claim number.)*

Letter of Request for Relief with Time-line, United States Court of Federal Claims No. 18-1805, Army Mental Health Records, Civilian Mental Health Records, Fort Sill Policy Report, Ms. Tara Brown Affidavit, and Exerts from the 2012 Board of Inquiry.

**10. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.** *(At no expense to the Government) (X one)*: [ ] YES. THE BOARD WILL DETERMINE IF WARRANTED. [X] NO. CONSIDER MY APPLICATION BASED ON RECORDS AND EVIDENCE.

**11.a. COUNSEL** *(If any)* **NAME** *(Last, First, Middle Initial)* **and ADDRESS** *(Include ZIP Code)*

Robert S. Poydasheff
Post Office Box 348
Columbus, Georgia 39861

**b. TELEPHONE** *(Include Area Code)*: (706) 327-9415

**c. E-MAIL ADDRESS**:

**d. FAX NUMBER** *(Include Area Code)*:

**e. I WOULD LIKE ALL CORRESPONDENCE/DOCUMENTS SENT TO ME ELECTRONICALLY.** [ ] YES [X] NO

**12. APPLICANT MUST SIGN IN ITEM 15 BELOW. If the record in question is that of a deceased or incompetent person, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY THE APPLICATION. If the application is signed by other than the applicant, indicate the name** *(print)* **and relationship by marking one box below.**

[ ] SPOUSE [ ] WIDOW [ ] WIDOWER [ ] NEXT OF KIN [ ] LEGAL REPRESENTATIVE [ ] OTHER *(Specify)*

**13.a. COMPLETE CURRENT ADDRESS** *(Include ZIP Code)* **OF APPLICANT OR PERSON IN ITEM 12 ABOVE** *(Forward notification of all changes of address.)*

Derrick T. Daniels
Redacted PII

**b. TELEPHONE** *(Include Area Code)*: Redacted PII

**c. E-MAIL ADDRESS**: derrick.daniels72@gmail.com

**d. FAX NUMBER** *(Include Area Code)*:

**14. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sections 287 and 1001, provide that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

**CASE NUMBER** *(Do not write in this space.)*

**15. SIGNATURE** *(Applicant must sign here.)*: [signature]

**16. DATE SIGNED** *(YYYYMMDD)*: 20190219

# Derrick Daniels

Redacted PII

Cell: Redacted PII
derrick.daniels72@gmail.com

Army Review Board Agency
251 18th Street South, Suite 38
Arlington, Virginia 22202-3531

February 17, 2019

RE: Symptoms of Service-Connected Major Depression

President to the Army Board of Corrections of Military Records,

I therefore request relief due to symptoms of service-connected Major Depression prior involuntary separation. I have enclosed a court order from The United States Court of Federal Claims ordering a voluntary remand on the condition the Army Board of Corrections considers mental health records not reviewed previously (Attachment A). The board has previously denied my request twice without primarily acknowledging two essential diagnoses from the Red River Mental Hospital and Dr. Ann Marks, both occurring prior to my involuntary separation. I understand the board reviews thousands of cases yearly and my case is very convoluted. To that point, I further request the board considers directing a Medical Examination Board followed by a Physical Examination Board. With the adequate resources of all my medical records, officer evaluation reports, live testimonies from psychiatrists and my rebuttal statements, a live MEB/PEB can:

1. Validate the Army's current position
2. Recommend placement on the Temporary Disability Retirement List (TDRL) (Unfit for Duty)
3. Recommend placement of the Permeant Disability Retirement List (PDRL) PDRL ( (Unfit for Duty)
4. Recommend reinstatement on Active Duty in current Branch
5. Recommend reinstatement in another Branch due to any physical limitations

If a MEB/PEB determines either 4 or 5 above, I request the two deferred OERs are removed from my permanent file and the GOMAR is either removed or an addendum is attached and moved to my restricted file. I also request I am evaluated for fiscal year 2008 Major's Board which I was removed.

Timeline

- Initial Assessment by Fort Sill's Behavioral Health Clinic, August 2008 (Attachment B): Suicidal tendencies from possible depression/anxiety prior to transgressions. Medical officials did not understand the severity of my Major Depression, but symptoms are documented.

- Lawton Fort Sill Police Report, November 2008 (Attachment C):

Leadership utilized a false testimony by Ms. Tara Brown, the woman I had the affair with, and a misrepresentation of the facts in the Lawton Fort Sill Police Report. Ms. Brown stated I had several affairs, including impregnating a wife of a deployed Soldier. She also stated I impregnated her with twins. The leadership validated her statement with the Fort Sill Police report stating I admitted to several affairs. Officer Peralta interviewed my wife at the time, Wendy Daniels and myself. In the process of developing the report, he mistakenly created a false narrative based on both interviews. I also was recorded during my interview in which I ADMITTED to having an affair with Ms. Brown. A police report is not an official documentation of testimony. Ms. Brown did not provide any other proof outside of a signed affidavit to command. She later recanted her statement with another affidavit in 2010 (Attachment D). Ms. Brown wrongful allegation and the acknowledgment of my recorded testimony to Officer Peralta were proven during a Board of Inquiry Hearing in April 2012.

- Deferral to Red River Mental Health Hospital, February 2009 (Attachment E):
  During the 15-6 investigation, I was ordered to separate from my wife. I was isolated and felt alone. The effect of the GOMAR caused my depression to worsen to the point I attempted suicide. My command inadvertently interfered in my receiving proper assistance from Fort Sill Mental Health through informing I admitted to having several affairs. This is documented in my Mental Health records.

  Red River Mental Health Hospital Diagnosis, February 2009, (Attachment F)
  Red River Mental Health Hospital focused on the affair and domestic violence as symptoms of my depression from my deployments. I was able to identify my anger, my masking through covert depression, need for adrenaline, lack of self-worth, self-blaming, survivor's remorse and lack of self-esteem. Unfortunately, my continuity of treatment was never maintained by Fort Sill's Mental Health Clinic. The records from Red River should have been placed in my Military Mental Health Records because Fort Sill deferred my treatment.

- Board of Inquiry, Dr. L. Parodi, April 2012 (Attachment G):
  The commanding General of Fort Stewart granted me a Board of Inquiry based on a diagnosis of severe PTSD due to an elimination board. However, the Chief of the MEB Behavioral Health, Dr. Ana L. Parodi, testified that the diagnosis was erroneously placed in my file by an unqualified official. But she DID testify she saw symptoms of depression in my file. She also testified she was unable to validate the cause because she never personally evaluated me. The symptoms from Red River Mental Health Hospital were NEVER placed in my Military Health Records plus no one has never explained my symptoms to me at that point.

- Board of Inquiry Cross Examination, April 2012 (Attachment H):
  I was asked by LTC Hathaway on why I had the affair. I informed him that it wasn't anything my wife didn't do, it was what I was trying to give myself.

- Dr. Ann Mark's Diagnosis, August 2012 (Attachment I):
  After the board, I sought an independent evaluation through Dr. Ann Marks that came to the same conclusion as Red River Mental Health Hospital prior to my separation.

I am currently the Business Management Coordinator for a Behavioral Health Crisis Center, similar to the Red River Mental Health Hospital. The primary reason I desired to work at a crisis unit was to minimize the lack of continuity of care I experienced. A day doesn't go by without me reflecting on my circumstances, but my obligation to my patients is therapeutic. This position allows me to see the challenges in a socialistic mental health care system. It's common for technicians to chart on the wrong patient, administer wrong medications,

omit vital documentation from medical files etc. And often, our patients come back because mental health treatment is not an exact science. It's sometimes trial and error because people are different. During my last request for relief, the board identified several instances I displayed a calm demeanor during engagements. As a former commander, I learned to mask my depression because I had to lead Soldiers in combat. This is known as covert depression. The board also stated its psychiatrist didn't find anywhere in my military medical records where it was documented my affair and domestic violence were symptoms of my depression. But this was precisely the reason I submitted medical records from Red River Mental Health Hospital and the diagnosis from Dr. Ann Marks. In both instances, my time was dedicated to their care and observations. Both took time to understand all aspects of my circumstances.

Officers are held to the upmost highest standard. Officers also take responsibility for their actions. I have always taken responsibility and if I was afforded the opportunity at the beginning of my treatment, then I would still be on active duty. The affair and domestic violence were both symptoms of my Severe Depression. People suffering from Severe Depression do not exhibit the same symptoms. I couldn't control the actions of Ms. Brown or my command (I don't place any fault or judgement. My command followed protocol to the best of their abilities). But what I DID control is understanding what was affecting me and developing a treatment plan through Red River which allowed me to serve honorably four more years. If I was to be eliminated, it should have taken place at the time of accused violations. Operation Iraqi Freedom Rotation 07-08 had the highest suicide rate and Fort Sill was amongst the institutions with the highest suicides during that time. If the Board of Inquiry discovered that I didn't have multiple affairs and didn't impregnate multiple women then why was I suicidal? I am afraid that the severity of the GOMAR has overshadowed my depression and solidified Army officials in not taking my request for relief seriously. A live medical board will allow qualified officials to determine my disposition at critical times of my deployments and other specific periods in my military career. A determination should be made by evaluating medical records and medical officials who have PERSONALLY evaluated me. Thank you for your attention in this matter.

Sincerely,

Derrick T. Daniels

9 Encl

Attachment A United States Court of Federal Claims No. 18-1805C
Attachment B Initial Assessment by Fort Sill's Behavioral Health Clinic
Attachment C Lawton Fort Sill Police Report
Attachment D Ms. Tara Brown Recanted Statement (Affidavit)
Attachment E Referral to Red River Mental Health Hospital
Attachment F Red River Mental Health Hospital Diagnosis
Attachment G Board of Inquiry, Dr. Paroli Testimony
Attachment H Board of Inquiry, Cross Examination
Attachment I Dr. Ann Mark's Diagnosis

Attachment A

# In the United States Court of Federal Claims

No. 18-1805C

(Filed: February 1, 2019)

| | |
|---|---|
| DERRICK T. DANIELS, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

The court has before it defendant's consent motion for a voluntary remand. ECF No. 7. This is a military pay case, that was preceded by an adverse decision by the Army Board for Correction of Military Records (ABCMR). Id. at 1. According to defendant, there are three reasons justifying the remand:

> First, it is appropriate for Mr. Daniels to have one final opportunity to provide the ABCMR with the mental health records that he contends were not considered previously. Second, it is appropriate for the ABCMR to have an opportunity, in the first instance, to review the claims of Mr. Daniels based upon any additional mental health records that were not considered by the ABCMR previously. Third, during the proposed remand, the ABCMR potentially could provide Mr. Daniels with all of the relief he currently seeks, which would moot this action and obviate the need for any further litigation in this Court.

Id. at 2.

For the reasons stated in the unopposed motion, the court agrees that a remand to the ABCMR is warranted under Rule 52.2 of the Rules of the United States Court of Federal Claims (RCFC).

U.S. Certified Mail 7019 0040 0001 1393 1877

Accordingly,

(1) Defendant's consent motion for a voluntary remand, ECF No. 7, is **GRANTED;**

(2) Pursuant to RCFC 52.2(a) and 28 U.S.C. § 1491(a)(2) (2012), plaintiff's claims are **REMANDED** to the ABCMR for reconsideration based upon the existing record and any further evidence that Mr. Daniels may submit during the remand in accordance with any procedures that the ABCMR may establish for that purpose;

(3) The initial duration of the remand is for **180 days** from the date of this order, or until **July 31, 2019**, which may be extended, upon motion, pursuant to RCFC 52.2(c);

(4) The Clerk's Office is directed to **SERVE** a certified copy of this order and a copy of the complaint on the ABCMR, at the following address: **Dennis W. Dingle, Director, Army Board for Correction of Military Records, Army Review Boards Agency, 251 18th Street South, Suite 385, Arlington, VA 22202-3531;**

(5) The Clerk's Office is directed to continue the **STAY** of further proceedings in this action until further order of the court;

(6) Defendant shall **FILE** a **Status Report** on or before **May 2, 2019**, and every **90-day interval** thereafter, indicating the status of proceedings on remand, pursuant to RCFC 52.2(b)(1)(D); and,

(7) Defendant shall **FILE** a **Notice** of the ABCMR's decision within **30 days** of the issuance of a decision by the ABCMR on remand.

IT IS SO ORDERED.

Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge

Attachment B

## CHRONOLOGICAL RECORD OF MEDICAL CARE

Treatment Facility: REYNOLDS ACH
Patient Status: Outpatient

Date: 18 Aug 2008 0835 CDT
Clinic: MENTAL HEALTH

Appt Type: ACUT
Provider: DODD,DAVID S

**Reason for Appointment:** sod walk in

AutoCites Refreshed by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT

**Problems**
- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA

**Active Family History**
No Active Family History Found.

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

**Vitals**
Vitals Written by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT
Tobacco Use: Yes, Alcohol Use: Yes, Pain Scale: 0 Pain Free

SO Note Written by GROVE,SHERRY L @ 18 Aug 2008 1010 CDT
**History of present illness**

The Patient is a 35 year old male.

He reported: Encounter Background Information: This is a 35 year old African American, married male Active Duty Army CPT who walked in to CMHS this morning accompanied by his wife to see the SOD. SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. SM & wife report that since his return he has had an increase in drinking (2 beers or 2 liquor shots every night). He also reports depressive symptoms, irritability, uncomfortableness in crowds, lack of motivation, inpatience, fatigue, problems relaxing, and erectile dysfunction. SM stated that he wanted to get help several months ago, but he never followed through. SM relayed that his wife told him today that if he didn't come to CMHS, she would go to his Commander & tell him about SM's problems.

Psychological symptoms SM appeared neatly dressed and groomed in ACU's, appeared alert, oriented, & in no acute distress. SM denies SI/HI, denies perceptual distortions, denies psychotic symptoms. SM's wife relayed that SM has mentioned wanting to kill himself. Wife relayed that SM bought her a gun for her protection while he was deployed. Wife says when SM drinks, he'll say stuff like "Where's the gun-I'll blow my brains out right now". SM's speech appeared normal with regards to rate, tone, & flow. SM's mood appeared depressed with affect congruent. Risk issues appear minimal to moderate @ this time. SM informed of CMHS & RACH emergency protocol procedures should he become acutely distressed or decompensate.

**Subjective**

Will staff case with Dr. Dodd. R/O Depressive D/O NOS, R/O Alcohol Abuse. SM may benefit from medications, & he is amenable to taking them. SM is not amenable to groups, & he would prefer 1:1 therapy for post deployment related issues. Also, SM & his wife are interested in Marital counseling, & may need a referral to Social Work Services. SM & wife were informed of CMHS & RACH emergency protocol procedures should they become acutely distressed or decompensate. Taught SM & wife some breathing techniques & progressive muscle relaxation exercises, which they engaged in. They were encouraged to engage in the exercises @ home also. SM & wife will f/u as needed and scheduled with their primary providers.

A/P Written by DODD, DAVID S @ 19 Aug 2008 0659 CDT
**1. ALCOHOL ABUSE**
Procedure(s): -Psychiatric Therapy Individual Approximately 45-50 Minutes x 1

Disposition Written by DODD, DAVID S @ 19 Aug 2008 0700 CDT
**Released w/o Limitations**
**Follow up:** as needed . - Comments: sm agreed to go to the ASAP program. Also set up appt for intake. clarified emergency

Name/SSN: DANIELS, DERRICK TORAINO/ Redacted

FMP/SSN: 20 Redacted
DOB: Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sex: M PII
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:

Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

Attachment C

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

Police Action: FOLLOW UP APPROVED
Police Reason:
Prosecutor Action:
Reason Rejected:
Final Disposition:

Date Pol Action: 11/24/2008

Date Pros Action:
Date Reactivated:

***NARRATIVE***

On 11-21-08 at approx 0213 hrs, Officer Pollard was dispatched on a domestic abuse call that happened Monday 11-17-08 at approx 2100-2200 hrs. Pollard met Wendy Daniels at [redacted] who said her [redacted] and Derrick were [redacted] Wendy said she [redacted] when Derrick began [redacted] Wendy [redacted] head. Wendy said she [redacted] Wendy said she went to the ground and Derrick began [redacted] Wendy sought medical treatment at Reynolds, she signed to press charges was given a witness complaint form and domestic abuse sheet. Wendy was told to follow up at the county courthouse.

Lawton Police records ran a triple I of Derrick Daniels for prior domestic abuse and his [redacted] Pictures was taken of the injuries by Officer Carter.

SW-7000

***CASE MGMT NARRATIVE***

Reference Case 2008-12244, Victim Wendy Daniels, Domestic Abuse and AWDW

On 11-21-2008, Det. Peralta was assigned this case and he immediately went Reynolds Army Hospital to make contact with Mrs. Wendy Daniels however she was discharged prior to my arrival, and she was located at the Fort Sill Advocacy office. I them made contact with Mrs. Daniels and she stated that it was on [redacted] and not Monday as previously reported that she was assaulted by her husband. Mrs. Daniels stated that she reached over to give [redacted] Daniels [redacted] Mrs. Daniels then got upset and [redacted] in the face, and a physical altercation ensued. Mrs. [redacted] I then made contact with Mr. Daniels at his battalion headquarters where LTC Talcott assisted us and provided a room to interview Mr. Daniels. Mr. Daniels who is an active duty Captain in the US Army stated after his Miranda warning rights were read that he and his wife are having problems, and [redacted] Mr. Daniels also stated that [redacted] and his wife "Wendy", is a good women but that he need some time apart. During this investigation I was accompanied by Special Agent David L. Spiegel from the Fort Sill Criminal Investigation Command. Mrs. April Plumley also assisted from the Family advocacy office on Fort Sill. LTC Talcott who is the Battalion Commander from Captain Daniels command stated that he will place a military protective order on Captain Daniel restraining him from visiting his wife. Mrs. Daniels then came to the Lawton Police Department with Mrs. Plumley and was given a citizens statement and instructed on how to

Attachment D

TEMENT FOR CPT DANIELS GENERAL OFFICER LETTER OF REPRIMAND JANUARY 2009

To whom it may concern

I was never impregnated by CPT Daniels. First he said he met someone else. To get him back I said I was pregnant. He then told me he didn't have another woman, he felt guilty about being with me. The second time we broke off the relationship, he said he wanted to work things out with his wife and he would support me with the pregnancy.

After he confessed to his wife about our relationship, she called me. I told her CPT Daniels has had several affairs on her and has a woman pregnant named Tenisha (one of my friend's name) in Lawton as well as me. I told her these things to damage their relationship. CPT Daniels asked me to tell his wife the truth, but I told him I would only do it if we could keep our relationship going. When he refused to come back to me, I went to his commander to get him in trouble. I wrote in a statement that I was pregnant with twins and he had several affairs throughout his marriage. I also used the Tenisha story to reinforce this. I also added that Tenisha was married to a soldier who was deployed. All of these things are untrue.

After the second breakup, CPT Daniels only contacted me to ask about the pregnancy. I told him if he couldn't be with me, he couldn't have anything to do with the process. When it came close to the due date, I told him I had a miscarriage. I never produced any documentation to prove the pregnancy, doctor appointments or medical records to CPT Daniels.

Tara Brown

Tara Brown

Redacted PII

Signed before me notary public on April 4th 2011

TONI RAE WARD
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 8-28-2014

Attachment E

**CHRONOLOGICAL RECORD OF MEDICAL CARE**

I, OK Clinic: Mental Health Provider: DODD, DAVID S

14 Feb 2009 0757 CST

The Patient is a 36 year old male.
He reported: Encounter Background Information: Partial Implementation of a suicide plan to hang self details listed below.

A/P Written by DODD, DAVID S @ 14 Feb 2009 0800 CST

1. **DEPRESSION**
   Procedure(s): -Psychiatric Therapy Indiv By A Physician Approx 75-80 Min x 1
2. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II** *(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
3. **SUICIDE ATTEMPT - HANGING:** acting on plan but did not make final jump off table.

Disposition Written by DODD, DAVID S @ 14 Feb 2009 0800 CST
**Admitted** - Comments:
**Follow up:** as needed . - Comments: see above for details. admitted to red river.

120 minutes face-to-face/floor time..

Note Written by DODD, DAVID S @ 14 Feb 2009 0743 CST
Name: Daniels, Derrick 20 Redacted PII

Identifying information: Service member is a 36-year-old like to be married African American male with the rank of captain.

Reason for referral: Service member was seen of the Reynolds Army Community Hospital emergency room at the request of Dr. Patrick after the service member was brought in for attempting to hang himself in his garage.

Details of the event: Service member has had a chronic history of behavior and relationship problems over the last several months and during this time there is the issue of domestic violence and now a no contact order between him and his spouse. They have been living in separate locations in the service member has been seeking services at the community mental Health Center since August of 2008. During that time he saw several different providers his current provider is Dr. Brandon, PhD, psychologist. He's been seen in the posterior 0.1 the clinical the last month and is also seeing Mr. McKeever and his psychiatrist is Dr. Tomlinson. He reports that approximately 2 weeks ago he was placed on Zoloft 100 mg. Around the same time he was given a letter of reprimand by the general of the post due to his behavior. This seems to have been a critical moment in his recent mental health decline as he reports that as he read the letter he decided that this person that they were describing on paper really was not who he wanted to be/or was. And yet in the letter of reprimand he realized that that would probably result in a secondary action which would force him out of the military his hope for the future started to decline at the same time his desire to talk to his wife was not allowed because of the no contact order and he was perceived by others as a substandard and soldier and despicable person by his report. He attempted to seek legal counsel as his trial defense calling the attorney hoping that there be some way to share his side of the story so he was not kicked out of the military which also he perceives as his primary way of life. He never adjusted well when he was a child as a single child at the form of a lot of siblings socially isolated but that the military which gave him away out of his current project his life. He joined the Army as enlisted and went to Greene Nicole did eventually became an officer is been deployed twice an L4-L5 and 06 to know 7 both to Iraq first appointment was to check crit and Bock about and the second one was to the Baghdad in her body area. He was in command 2 times during this period but felt disillusioned by what he was not able to accomplish versus what he was able to accomplish.

He used to drink alcohol heavily but states he stopped drinking entirely 2 weeks ago when he was prescribed Zoloft it's uncertain to this provider he's been in the ASAP program. Service member denies a lot of PTSD-type symptoms such as nightmares and intrusive recollections and thoughts. He does remember being somewhat depressed with the loss to soldiers and was not able to make a connection with his soldiers.

during the 2 weeks he was unable contact his attorney and within the last week he is becoming more and more depressed thinking that life is over so as of the day of the 12th on the evening he went to Wal-Mart but a 14 foot

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20 Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNKI (0003 AR HQ 01 DET KI) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579) UNAUTHORIZED ACCESS

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

13 Feb 2009 2315

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DODD, DAVID S**

rope made and a salad at 100 around a steel beam in the garage of his wife he went to her house opened the garage door with his car door open her went in without disturbing his wife" around the steel beam in the garage. He got up on the table preparing to jump but in the final moments of contemplating whether he should do this he thought he might go to hell if he did this and decided he should jump he called his mother and father in South Carolina did not tell them to details but said that he was feeling like he didn't want to live they talk to him for an hour to on the phone and eventually he taxed his wife that he had been at the house and was to hang himself at that point in midafternoon she called the unit the unit contacted service member brought into the ER this evening

Previous suicide attempts: None by his report

Is not intoxicated at the time

Educational he has a bachelors degree in business management and a Masters degree in business the leadership. He reports that his performance as in school stopped up to the was not specific

RISK ASSESSMENT: Service members at high risk to harm himself and in the imminent future as his time in the military is coming to an end and or likely is coming to an end. When asked if he could kill himself again what he said "I don't know" his personality and view of himself his informed around the military and yet his impulse control and judgment has been quite poor as the unit reports that he said several extramarital relationships in the domestic assault with his wife as other issues as well that the behavioral problems and yet when he goes to work they say he is quite effective service loss of this note to her position as an officer and over for 17 years has damaged his persons self-concept. In addition to this his loss of focus progressive depression his alcohol consumption and his distorted thinking make his likelihood of acting quite high.

PLAN: Service member agreed to go to Red River psychiatric hospital versus being emergency order of detention to the local hospital which this provider stated he would do if needed to ensure his safety. Service member felt that it would be more beneficial for him to go to a treatment facility where he could stay for a longer period of time. Discussed this with his tying commander LTC Talcott, Dr. Patrick ER MD, and the Red River intake worker. Red River accepted him and there was a nurse to nurse discussion to transfer information re his vital signs, etc. SM will f/u with dr. brandon upon discharge from the hospital.

Signed By DODD, DAVID S (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 14 Feb 2009 0801

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20 Redacted | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

Attachment F

RED RIVER HOSPITAL

DISCHARGE SUMMARY

**PATIENT NAME:** DANIELS, DERRICK
**PATIENT ID:** Redacted PII
**DATE OF ADMISSION:** 2/14/2009
**DATE OF DISCHARGE:** 2/24/2009
**ATTENDING PHYSICIAN:** BRYAN WIECK, M.D.
**UNIT:** ADULT

RED RIVER HOSPITAL
This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of this person to whom it pertains or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

**ADMISSION DIAGNOSIS:**

**AXIS I:**
Major depressive disorder, recurrent, severe addiction.

**AXIS II:**
Deferred.

**AXIS III:**
None.

**AXIS IV:**
Psychosocial stressors, severe.

**AXIS V:**
Global assessment of functioning: Current is 30, highest in the past year is 75.

**DISCHARGE DIAGNOSES:**

**AXIS I:**
Major depressive disorder, recurrent and severe.

**AXIS II:**
None.

**AXIS III:**
None.

**AXIS IV:**
Psychosocial stressors, severe.

**AXIS V:**
Global Assessment of Functioning current 50, highest in the past year is 75.

**PHYSICAL ON ADMISSION:**
The patient's height 5 feet 9 inches, weight 210 pounds, blood pressure 117/84, pulse 73, respirations 18.

**ADMISSION LABORATORY:**
CBC with RBC 4.58 which is low, hematocrit 41.2 which is low, monocyte 9.3 which is elevated, urinalysis within normal limits. Survey 14 with anion gap of 9 which is slightly low, urine drug screen negative. TSH within normal range. RPR nonreactive, CMG Amplified D testing negative.

**PATIENT NAME:** DANIELS, DERRICK
**PATIENT ID:** Redacted PII
**DATE OF ADMISSION:** 2/14/2009
**DATE OF DISCHARGE:** 2/24/2009

**HOSPITAL COURSE:**
A 36-year-old male admitted to the adult inpatient program with chief complaint of 'I am trying to hang myself.' The patient's active duty stationed at Lawton Army base in Oklahoma, Fort Sill. It has been found in the past the patient has been drinking excessively to deal with stress. The patient depressed and increasingly depressed since November 2008. He was charged with adultery and he is separated from his wife, anticipated might reconcile or a very possible divorce although he would like things to work out. He has a 14-year old army career, he knows nothing else. Depression, depressed mood, energy, irritability, poor concentration, poor sleep, isolation, helplessness, thoughts of suicide, he purchased a rope and was beginning the process to hang himself and feared that he will go to hell and stopped and called his command. Initially in the unit, he was alert and oriented x4. His memory is intact. His mood depressed. Affect dysphoric. Thought process is well organized, recognized the need for treatment. Treatment plan included individual and group therapy and medication management. The patient attended groups and therapies on the unit. He worked on mood improvement skills. The patient worked on ways to decrease anxiety and improve his mood. The patient worked on building strength and motivation within himself and improves his self-esteem, self-worth, worked on relaxation techniques and worked on communication skills. The patient was attentive and contributory and participatory in the program, he opened up. He did good work on concentrating on himself and stop distancing. The patient was involved patient worked on positive thoughts and establishing those. Treatment went well improving himself on communication and healthy ways to cope and handle his emotions and self empowerment. Overall the patient is doing well. He tolerates medications without any side effects. His mood improved. His affect improved. He is discharged in stable condition with no suicidal or homicidal ideation.

**DISCHARGE MEDICATIONS:**
Zoloft 100 mg daily, Ambien 10 mg at bedtime p.r.n. for sleep.

**DISCHARGE PLAN:**
To follow up with Fort Sill Community Mental Health immediately upon arrival to base. Primary care physician as needed for physical health care needs. The patient's military services, instructed to contact Dr. Wieck at Red River Hospital for any questions, concerns, or problems.

Kristi Curd, RN

Bryan Wieck, M.D.

JOB ID: 702992
DD: 03/22/2009
DT: 03/23/2009

RED RIVER HOSPITAL
This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of this person to whom it pertains or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

Attachment G

t he talked to COL Williams on his last deployment. He had not n or seen him after the deployment. During deployment he contacted him for a letter for his initiation of elimination rebuttals. He contacted COL Williams prior this hearing to ask him if he could be a witness on his behalf.

The Defense stated that his elimination was initiated when he got back from deployment and was assigned to Fort Stewart.

The President requested a time frame.

The Defense stated that the elimination action was initiated in 2011.

The Government called Dr. Parodi.

Dr. Parodi was duly sworn in.

Dr. Ana L. Parodi, MD, Retired COL, US Army, was called as a witness for the Government, was sworn and testified in substance as follows:

Direct Examination

My name is Dr. Ana L. Parodi, MD, Retired COL. My duty position is Chief of MEB-Behavioral Health. I completed medical school. I did an internship, then I did my residency for four years and additional years in psychiatry. Then I went to the military for 20 years. I retired in 2010. I have evaluated and treated Soldiers that need to be cleared for deployment. I have been involved in that and in the SRC process. In 2003, I was involved in doing fitness for duty, MEBs, and chapter evaluations. I am currently in a position where I provide the same process for the Medical Boards. Yes, I have reviewed CPT Daniels' medical records. I don't have them in front of me. But I reviewed the packet that you provided me and I also reviewed the electronic record. Individuals who have PTSD often have other conditions. I am not saying this Soldier does. Individuals who have behavioral health conditions, especially if they have more than one condition, have the risk of having aggressive acts. Violence is different from being aggressive. Those who are violent happen to have behavioral health conditions. Generally, what we are looking at is personality style on how you are going to respond to different stressors. Generally that is shaped by your childhood. I don't know the technical definition of violence from a behavioral health point of view. From a behavioral health point of view, I called that I violent act because of the intensity, the emotions involved and the physical contact. I would consider this violent act more of a personality style than PTSD. And it does not have to be PTSD. It can be a significant depression, or an anxiety disorder, that is going to have the same answer. Mainly, if he were to describe what is called associative episodes or flash backs, then I might consider he was not responsible for what was going on. He is not describing that, so that makes me think this is more of a personality trait than an emotional condition at that moment.

No further questions by the Government.

Attachment H

lds. I was not living with my wife at that time. I continued to support the financial needs of my wife. The financial difficulties did not make me fail my financial obligations. It was the time to reflect, to understand where to go further in my career. There were things in that GOMOR that were unsubstantiated. My plan of action at that time was to try outperforming the GOMOR. I completed my mission and started my first deployment. My previous MOS was Armor. I came in as Field Artillery. I switched because I love tanks. As a tanker, it was the battlefield and the power that it would bring. I wanted to do that as an officer. For the past five years, from the situation with my wife that put me into alcoholism, put me into the extra marital affair, everything was a waste of time. The time that I had in combat was always dedicated to Soldiers and I did not dedicate time for myself. After going to a rehabilitative process on my own, I knew that time was always an issue for combat operations. As a company commander, I have administered a letter of reprimand for adultery to an E7. I have never administered an Article 15. There was an issue with a Soldier and his wife that escalated and we moved the Soldier to the barracks. The Soldier went through a rehabilitative process and reunited with his spouse, but not anything with an Article 15. I don't hold any bad feelings to the officer that gave me the GOMOR. He did the right thing. What I wished at that time was to establish a personal, social relationship with my command like I did before. The previous commanders did not testify because they liked me because I am a good guy. They saw me coming out from austere situations. Going through the process, I see where the Army has got to now. With 14 years in combat, I welcome resiliency programs, recreational, counseling. I would welcome the opportunity to lead Soldiers again. To serve Soldiers to make sure what happened to me does not happen to them. I think this whole process is a testimony of my character, of how I am as an individual. I first enlisted in the Army in 1990. I wanted to get commissioned as an officer. I only enlisted for two years. I was not ready for school. I did not have a real high ASVAB or STT. So I went to apply to the US Army Prep School, but was denied. It hurt my feelings. The problem was I knew I was not smart enough. So I studied at night. I took college courses. I suited ASVAB to raise my ASVAB score. During my time of service, I was not able to go to prep school, so I applied for the scholarship. I wanted to be an Armor officer. It took me five years to get my commission. I made thousands of mistakes, but I also believe that I went on a journey to prove I can still serve and learn from those mistakes. If the board decides to retain me, I have a plan for my career. My plan is to continue and stay in operations. It is my primarily goal. I love operations. I will welcome a field grade. But I also will welcome anything for Soldier services, resiliency, a way ahead. We don't go to war every day. Ten years of war against terrorism is something new. We have to apply a new way to do things. I think I have a way ahead for future operations and Soldiers.

No further questions by the Defense.

Cross Examination

It was not really my wife not giving me what I needed, it was me giving myself what I needed. My love for my wife never changed. My love for the Army never changed. It was taken that time. To continue to lead the Soldiers, I did not have time for myself to face my issues and problems. I did it in a very unbecoming manner in alcoholic abuse and the

adulterous affair. I did not allow myself the proper time to deal with my issues. It was not because of my wife, it was because of me. Mrs. Daniels became angry because of Mrs. Brown's lies. She was upset about the affair with Mrs. Brown. She was also upset about the allegations Mrs. Brown stated about the multiple affairs and the Soldier's wife that was pregnant. I hit her because she was coming towards me, but also because I was angry because she did not believe me. I am not claiming self-defense. I hit her on the right side of the ear. I am not sure if it actually caused a bruise. Sorry, it should be I struck her with my right hand on her left ear. I can't remember a bruise on her face. I am not sure where those scratches were from. I am not sure of the knee bruise.

Cross Examination

My peers were judgmental and that gave me stress. I expressed in the memo an inferiority complex due to race. The optempo gave me stress. The commanders, not my superiors, but the other company commanders gave me stress. There were small things that led me to stress. I did not feel I was cheated out of an award on my third deployment because of the allegations of the domestic violence. The gratification of the people who I worked for is my award. I don't need a medal on my chest. My marital problems led me to noncompliance to AR 600-9. I was not motivated with the thing going on with the investigation. I drank a lot of alcohol. I did not have any problem with the AWCP prior the incident. I was aware of the family advocacy, chaplain, social workers, etc., but I did not utilize the resources prior to assaulting my wife because I am human. Coming from a combat environment where so much is done, you come to realize you sacrifice so much. Sometimes you feel you are immune to a lot of things. Most times the commanders feel those types of programs are not for us, they are for the Soldiers. I am not the only one that feels that way, not being able to come forward, afraid of what people might say or people might do. If I were to command again, I would give an Article 15 for domestic violence or adultery very easy. The situation I have been gone through makes me more fair and impartial to deal with Soldiers with ease. I would be able to give an Article 15 to an E4 or below, where it will make them unable to reenlist with the first domestic violence offense for a lot of MOSs. I think each commander needs to look at each case. You need to look at each individual on a case by case basis. I don't have an issue in doing that. I would have expected an Article 15 if I were an enlisted at that time. But I would hear other circumstances surrounding that as well; what led to the domestic violence? How it impacted the Soldier? When did he join the Army? I understand the three pillars of ROTC: physical, emotional, and psychological. I think the dynamic is different, we talked about Soldiers as an E4. Commanders are held to higher standard because they command E4s. At that time, I did not exhibit emotional stability and that led to the assault. Led to marital problems, which led me to noncompliance with the AWCP. As an officer, you should be physically in compliance with the AWCP. At times we want to judge people based on individual circumstances. When I saw what the problem was, everything fell back in place. I have heard of that I am a Soldier 24/7. My personal life did influence my professional life. It will depend if that Soldier should stay in the Army. It depends if he was given a second chance, how he would work with it? What would be his plan of action? If the Soldier would see me for Article 15s, I will ask them, if you do this, what is the plan of action to overcome the circumstances? I could handle deployment stress again. Each

Attachment I

MARKS PSYCHIATRY
& FORENSIC SERVICES

Tracey I. Marks, MD

4/30/12.

I saw Mr. Derrick Daniels today for a consultation.

My diagnoses -

1) ~~Ha~~ History of major depression in remission
2) History of alcohol abuse - not current
3) Possible dysthymia

J Marks, MD

3975 ROSWELL ROAD, ATLANTA, GA 30342 PH 404 327 5194 · www.markspsychiatry.com

**Marks Psychiatry**
Enhancing Lives One Mind at a Time

Progress Note
Name: Derrick Daniels
Date: 5/17/12
90807

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph  404-719-5067 fa

Has petition to "move forward" next wk.
    ↳ not to be discharged.

Childhood
Grew up in [Redacted PII]. on farm.
Only child → mom 39, Dad 37. Not many people around.
Mom school teacher. Didn't see physical affection btw parents.
Parents went to separate churches.
Did farm work & yard work for money.
Didn't have much of a social life.  He lived far from school or
    classmates. Couldn't participate in after school activiti
    2° 2hr bus ride.
Didn't feel close to parents. Didn't do things as a family.
His highlight of the summer was vacation bible school.
Went to army p̄ H.S. x3 yrs, then college on scholarship, th
    return to army.
- Joined army to rebel against Dad's plans, but liked it.
1st deployment 2003. → this was beginning of things going downward
Witnessed senseless deaths followed by multiple moves
Was bothered that a supervisor wouldn't take the time to write h/s own
MSE - no mood. Ø psychosis

Imp: h/o Depression in remission
        h/o Etoh abuse - remote.
· Current state - general discontentment with work-related issues
Plan - No treatment needed
        Return as needed.

Signature: _____

000127

Marks Psychiatry
Enhancing Lives One Mind at a Time

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067 fa

# Progress Note

Name: Derrick Daniels
Date: 4/30/12
90801 -
Age 39

cc I want a proper diagnosis

17 yr army vet. 3 tours - after returned from 2nd tour "no"

Apr 2008 - was in Bagdad - lost a lot of soldiers
returned felt used
blamed self for a lot of things
felt purposeless → ~~diss~~ hard to transition to doing office work

Was easily aggravated
consequences - domestic violence - fought c̄ wife over affair
reported to military
Got a reprimand in 200
- affair
- alcohol abuse
↳ daily drinking beer during week at least weekends - 4 drinks hard EtOH

Jan '09 - went to Mental Heath Hosp. in TX p̄ suicide attem
Tried to hang self in garage. Planned for few days
bought rope from Walmart - put noose around neck, st
on table - couldnt do it. Returned home & called parer
Suggested he go to hospital (~~they~~ wife notified his "leadership")
He wanted to see that wife was concerned.

In hosp x 10 days → got Zoloft. Continued for "a while" →2 refills as out.

Returned to Ft Seal → 2 group sessions / wk for anger mg
~~Stan~~ ? la mon

↳ stopped drinking p̄ this hosp. → now occasional → maybe 1x

Signature: [illegible]

Marks Psychiatry
Enhancing Lives One Mind at a Time

Progress Note

Name: Derrick Daniels
Date: 4/30/12

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067 fa

Initial eval cont.

Got a part-time job as nursing assistant in a care home. x
Got it to feel needed.

Got deployed to Iraq - felt with the previous deployment people died senselessly. Wanted some closure on this issue.

Felt c̄ 3rd deployment had chance to redeem given more stable environment. Not sure if he got closure.

Returned Dec '10. Now at Ft Stewart training reservists.

Current issues - doesn't feel army understood what he ~~wasn't~~ was going t felt he was just a number.

Current sx

Feels he's going thru the motions
Dissatified c̄ current job - they are resistent to change
Doesn't feel appreciated - No matter what he does, it's never enoug
- No mentorship

Sleep - "good" ~~5~~-6 typical for him. Will nap @ lunch esp p̄ hea
Energy - "ok" noc
Some trouble concentrating when bored. Can focus ~~ed~~ when passionat
Thinks there is cultural bias.

Joined army age 17
Planning to get divorce.
Has upcoming board hearing re - trying to kick him out of milt

MSE good mood, nl speech ∅ psychosis, ∅ SI, ∅ HI ∅ cognitive impair

Imp - h/o major depression in remission
h/o Etoh abuse
- not clear if he had PTSD in past - not a current issue

Plan - Pt to retu 1-2 wks to discuss other t

Signature: [illegible]

Name printed: Tracey M[illegible]



DEPARTMENT OF THE ARMY
ARMY REVIEW BOARDS AGENCY
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22042-3531

REPLY TO
ATTENTION OF

SAMR-RBM 10 April 2019

MEMORANDUM FOR Case Management Division, Army Review Boards Agency

SUBJECT: **Addendum** to Advisory Opinion for DANIELS, DERRICK, Redacted PII, AR20190003089

1. No change to the medical advisory opinion dated 11 October 2016 which opined on Mr. Daniels's request that ABCMR consider a diagnosis of PTSD as part of his reason for separation being Unacceptable Conduct. His request to ABCMR was denied previously in April 2015 after the ABCMR determined that the discharge was proper and equitable and voted to deny relief.

2. Legal court documents filed 1 February 2019 indicated the motion for a voluntary remand was based on:
   a. Mr. Daniels having one final opportunity to provide the ABCMR with mental health records that he contends were not considered previously.
   b. The ABCMR having an opportunity, in the first instance, to review the claims of Mr. Daniels based upon any additional mental health records that were not considered by ABCMR previously.
   c. During the proposed remand, the ABCMR potentially could provide Mr. Daniels with all of the relief he currently seeks, which would moot this action and obviate the need for any further litigation in this Court.

3. A review of military records indicated Mr. Daniels' early separation from service was subsequent to a military investigation, dated 15 December 2008, which found Mr. Daniels assaulted his spouse, committed adultery, admitted to committing adultery, and committed offenses that amounted to conduct unbecoming of an officer and a gentleman. On 29 January 2009, Mr. Daniels received a GOMOR for the domestic assault and battery which entailed beating, choking, and threatening his wife; having ongoing multiple adulterous affairs with women; and for conduct unbecoming of an officer and a gentleman.

4. Since his involuntary discharge in 2012, Mr. Daniels has sought reinstatement on active duty due to a misdiagnosis of PTSD and Depression. At the time of separation, he had 13 years and 8 months time in service.

5. Mr. Daniels contends that if he was diagnosed and properly treated when he initially sought help, he would still be on active duty. He specifically contends that a misdiagnosis of severe depression, should have been diagnosed as PTSD.

6. A review of military medical records indicated a behavioral health treatment history for Alcohol Abuse, an Adjustment Disorder with Anxiety and Depressed Mood, Depression, and Post Traumatic Stress Disorder. Mr. Daniels self-referred to ASAP and behavioral health treatment in June 2008 for drinking problems and at the recommendation of his wife. ASAP note dated 18 August 2008 indicated Mr. Daniels reported symptoms of depression and increased alcohol use following his second deployment. Behavioral health note dated 2 April 2009 indicated Mr. Daniels was first diagnosed with PTSD in response to combat symptoms and disciplinary issues. He endorsed adjustment difficulties following his return from Iraq to include symptoms of depression, low motivation, interpersonal conflict, and marital problems. Post-service, a medical record dated 8 January 2013 indicated the examining psychiatrist stated, in part, his PTSD symptoms had not made Mr. Daniels unstable in any way and were more a matter of mild occasional discomfort.

7. An oversight and not included in the prior medical advisory dated 11 October 2016, was a review of discharge summary from Red River Mental Hospital, a Texas state mental health facility. This medical record indicated Mr. Daniels was diagnosed with Major Depressive Disorder, Recurrent, Severe. It noted that Mr. Daniels was inpatient hospitalized on 14 February 2009 following a suicide attempt in his wife's garage in which he tried to hang myself. He endorsed excessive drinking, depression since November 2008, irritability, poor concentration, poor sleep, isolation, helplessness, marital problems to include adultery and separation from his wife, and thoughts of suicide in which he purchased a rope and began the process to hang himself, but feared that he would go to hell and called his command. He was discharged on 24 February 2009 and was noted to be in stable condition with no suicidal or homicidal ideation. Following his hospitalization he regularly sought behavioral health and family advocacy services until September 2009.

8. Medical notes from Marks Psychiatry and Forensic Services dated 30 April 2012 and 17 May 2012 indicated Mr. Daniels had a diagnosis of Major Depression in Remission, a history of Alcohol Abuse.

9. Despite a review of additional medical documents from Red River Mental Hospital and Marks Psychiatry and Forensic Services, there is no change to the original medical decision. Based on the available information, there is no medical evidence that the diagnosis of depression or PTSD was misdiagnosed. These diagnoses were founded; however, neither severe depression or PTSD is considered mitigating or reasonably related to Mr. Daniels misconduct of domestic violence or adultery. Specifically, the diagnoses of Depression and PTSD do not mitigate and are not reasonably related to:
   a. Violation of Article 128- Mr. Daniels did commit assault by intentionally inflicting bodily harm to his spouse in which Mr. Daniels struck his spouse which was evidenced by pictures of bruises taken in the RACH emergency room.

b. Violation of Article 134- Mr. Daniels did wrongfully have sexually active relationships with other women while married which was evidenced by his own admission.
c. Violation of Article 133- Mr. Daniels acted in a dishonorable manner and compromised his character as an officer and gentleman as evidenced by violating Articles 128 and 134.

10. Although Mr. Daniels was diagnosed with behavioral health conditions during his time in service and was granted a service-connected disability rating from the VA, there is a lack of evidence to support a causal relationship between his misconduct and the conditions of Depression or PTSD. There is also no evidence of misdiagnosis. This observation does not negate Mr. Daniels' service-connected diagnosis of PTSD; however, the VA conducts evaluations based on different standards and regulations. The Army has neither the role nor the authority to compensate for progression or complications of service-connected conditions after separation. That role and authority is granted by Congress to the Department of Veterans Affairs, operating under a different set of laws.

11. In summary, based on a thorough review of military medical records, to include a review of medical documentation from Red River Mental Hospital, Mr. Daniels' medical conditions of PTSD or severe depression were correctly diagnosed in-service and were duly considered at the time of separation. Mr. Daniels' basis for separation was Unacceptable Conduct and was not due to a misdiagnosis of PTSD or severe depression.

4/11/2019

X Melissa Boyd

Melissa Boyd
MAJ, Clinical Psychologist
Signed by: BOYD.MELISSA.MUNRO Redacted PII

**Abrams, Stacy R Sr CIV USARMY HQDA ARBA (USA)**

| | |
|---|---|
| **From:** | Masterson, Joseph M CIV USARMY HQDA ARBA (US) |
| **Sent:** | Tuesday, July 23, 2019 2:59 PM |
| **To:** | Abrams, Stacy R Sr CIV USARMY HQDA ARBA (USA) |
| **Cc:** | Chatman, Arlene A CIV USARMY HQDA ARBA (USA); Smith, Andree D CIV USARMY HQDA ARBA (USA); Plooster, Leslie D (Les) CIV USARMY HQDA ARBA (USA) |
| **Subject:** | RE: [Non-DoD Source] 5th Request to ABCMR in response to Case No. AR20190003089 |
| **Signed By:** | joseph.m.masterson.civ@mail.mil |

Mr. Abrams,

I recommend granting that request.

Thanks!

Vr

JM

JOSEPH M. MASTERSON
Army Review Boards Agency
Senior Legal Advisor
703-545-5676
joseph.m.masterson.civ@mail.mil

NOTICE: The information contained in this email is likely privileged from disclosure by Attorney-Client Privilege, Attorney Work Product Privilege, and/or Deliberative Process Privilege. It also may contain information that is exempt from disclosure under the Freedom of Information Act, 5 U.S.C.552, and the Privacy Act, 5 U.S.C. 552a. Recipients are not to disseminate this information to individuals other than those with an official need to know in the course of their official government duties. If you receive this communication in error, please do not examine, review, print, copy, forward or otherwise use the information. Please immediately notify the sender and delete the copy received.

---

**From:** Abrams, Stacy R Sr CIV USARMY HQDA ARBA (USA) <stacy.r.abrams.civ@mail.mil>
**Sent:** Tuesday, July 23, 2019 2:07 PM
**To:** Masterson, Joseph M CIV USARMY HQDA ARBA (US) <joseph.m.masterson.civ@mail.mil>
**Cc:** Chatman, Arlene A CIV USARMY HQDA ARBA (USA) <arlene.a.chatman.civ@mail.mil>; Smith, Andree D CIV USARMY HQDA ARBA (USA) <andree.d.smith.civ@mail.mil>; Plooster, Leslie D (Les) CIV USARMY HQDA ARBA (USA) <leslie.d.plooster.civ@mail.mil>
**Subject:** FW: [Non-DoD Source] 5th Request to ABCMR in response to Case No. AR20190003089

Mr. Masterson, please see the attached request. Court Remanded case. Applicant is requesting extension until 15 Aug, 2019. Please advise.

Mr. Stacy Abrams
Analyst

Army Review Boards Agency (ARBA)
251 18th South, Suite 385
Arlington, VA 22202-3531
DP (703) 545-5668
FAX (703) 601-0705
http://arba.army.pentagon.mil

NOTICE: The information contained in this communication may contain information that is exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552 and the Privacy Act, 5 U.S.C. 552a. Recipients are not to disseminate this information to individuals other than those who have an official need to know in the course of their official government duties. If you received this communication in error, please do not examine, review, print, copy, forward, disseminate, or otherwise use the information. Please immediately notify the sender and delete the copy received.

CLASSIFICATION: UNCLASSIFIED

**From:** Derrick Daniels <derrick.daniels72@gmail.com>
**Sent:** Friday, July 19, 2019 1:05 PM
**To:** Abrams, Stacy R Sr CIV USARMY HQDA ARBA (USA) <stacy.r.abrams.civ@mail.mil>
**Subject:** [Non-DoD Source] 5th Request to ABCMR in response to Case No. AR20190003089

Director, Case Management Division
Army Review Boards Agency
251 18th Street South, Suite 385
Arlington, Virginia 22202-3531

July 19, 2019

RE: Addendum to Advisory Opinion for DANIELS, DERRICK, Redacted PII
Case No. AR20190003089

Dear Director,

I request continuance for an additional 15 days beyond my last request of 30 July 2019 (until 15 August 2019). August 6, 2019 is my last appointment with Dr. Sai Nayudu. His diagnosis will be sent to the board NLT August 15, 2019.

Sincerely,

Derrick T. Daniels

Encl: Appointment Reminder

# In the United States Court of Federal Claims

No. 18-1805C

(Filed: February 1, 2019)

DERRICK T. DANIELS,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## ORDER

The court has before it defendant's consent motion for a voluntary remand. ECF No. 7. This is a military pay case, that was preceded by an adverse decision by the Army Board for Correction of Military Records (ABCMR). Id. at 1. According to defendant, there are three reasons justifying the remand:

> First, it is appropriate for Mr. Daniels to have one final opportunity to provide the ABCMR with the mental health records that he contends were not considered previously. Second, it is appropriate for the ABCMR to have an opportunity, in the first instance, to review the claims of Mr. Daniels based upon any additional mental health records that were not considered by the ABCMR previously. Third, during the proposed remand, the ABCMR potentially could provide Mr. Daniels with all of the relief he currently seeks, which would moot this action and obviate the need for any further litigation in this Court.

Id. at 2.

For the reasons stated in the unopposed motion, the court agrees that a remand to the ABCMR is warranted under Rule 52.2 of the Rules of the United States Court of Federal Claims (RCFC).

Accordingly,

(1) Defendant's consent motion for a voluntary remand, ECF No. 7, is **GRANTED**;

(2) Pursuant to RCFC 52.2(a) and 28 U.S.C. § 1491(a)(2) (2012), plaintiff's claims are **REMANDED** to the ABCMR for reconsideration based upon the existing record and any further evidence that Mr. Daniels may submit during the remand in accordance with any procedures that the ABCMR may establish for that purpose;

(3) The initial duration of the remand is for **180 days** from the date of this order, or until **July 31, 2019**, which may be extended, upon motion, pursuant to RCFC 52.2(c);

(4) The Clerk's Office is directed to **SERVE** a certified copy of this order and a copy of the complaint on the ABCMR, at the following address: **Dennis W. Dingle, Director, Army Board for Correction of Military Records, Army Review Boards Agency, 251 18th Street South, Suite 385, Arlington, VA 22202-3531**;

(5) The Clerk's Office is directed to continue the **STAY** of further proceedings in this action until further order of the court;

(6) Defendant shall **FILE** a **Status Report** on or before **May 2, 2019**, and every **90-day interval** thereafter, indicating the status of proceedings on remand, pursuant to RCFC 52.2(b)(1)(D); and,

(7) Defendant shall **FILE** a **Notice** of the ABCMR's decision within **30 days** of the issuance of a decision by the ABCMR on remand.

IT IS SO ORDERED.

Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge

# In the United States Court of Federal Claims

No. 18-1805C

(Filed: February 1, 2019)

| | |
|---|---|
| DERRICK T. DANIELS, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

The court has before it defendant's consent motion for a voluntary remand. ECF No. 7. This is a military pay case, that was preceded by an adverse decision by the Army Board for Correction of Military Records (ABCMR). Id. at 1. According to defendant, there are three reasons justifying the remand:

> First, it is appropriate for Mr. Daniels to have one final opportunity to provide the ABCMR with the mental health records that he contends were not considered previously. Second, it is appropriate for the ABCMR to have an opportunity, in the first instance, to review the claims of Mr. Daniels based upon any additional mental health records that were not considered by the ABCMR previously. Third, during the proposed remand, the ABCMR potentially could provide Mr. Daniels with all of the relief he currently seeks, which would moot this action and obviate the need for any further litigation in this Court.

Id. at 2.

For the reasons stated in the unopposed motion, the court agrees that a remand to the ABCMR is warranted under Rule 52.2 of the Rules of the United States Court of Federal Claims (RCFC).

Accordingly,

(1) Defendant's consent motion for a voluntary remand, ECF No. 7, is **GRANTED**;

(2) Pursuant to RCFC 52.2(a) and 28 U.S.C. § 1491(a)(2) (2012), plaintiff's claims are **REMANDED** to the ABCMR for reconsideration based upon the existing record and any further evidence that Mr. Daniels may submit during the remand in accordance with any procedures that the ABCMR may establish for that purpose;

(3) The initial duration of the remand is for **180 days** from the date of this order, or until **July 31, 2019**, which may be extended, upon motion, pursuant to RCFC 52.2(c);

(4) The Clerk's Office is directed to **SERVE** a certified copy of this order and a copy of the complaint on the ABCMR, at the following address: **Dennis W. Dingle, Director, Army Board for Correction of Military Records, Army Review Boards Agency, 251 18th Street South, Suite 385, Arlington, VA 22202-3531**;

(5) The Clerk's Office is directed to continue the **STAY** of further proceedings in this action until further order of the court;

(6) Defendant shall **FILE** a **Status Report** on or before **May 2, 2019**, and every **90-day interval** thereafter, indicating the status of proceedings on remand, pursuant to RCFC 52.2(b)(1)(D); and,

(7) Defendant shall **FILE** a **Notice** of the ABCMR's decision within **30 days** of the issuance of a decision by the ABCMR on remand.

IT IS SO ORDERED.

Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DERRICK T. DANIELS,

v. No. 18-1805 C

THE UNITED STATES.

COMPLAINT

I. The court has special jurisdiction, spelled out in 28 U.S.C. § 1491: The U.S. Court of Federal Claims has nationwide jurisdiction over a variety of cases, including tax refunds, federal taking of private property for public use, constitutional and statutory rights of military personnel and their dependents, back-pay demands from civil servants claiming unjust dismissal, persons injured by childhood vaccines, and federal government contractors suing for breach of contract.

II. The plaintiff was involuntary discharged in 2012 with an honorable discharge. Since the discharge, the plaintiff has sought reinstatement on active duty due to a misdiagnosis of PTSD and Depression. Both were treated while on active duty. The plaintiff initially sought treatment from the Army's Behavior Health System prior to conducting transgressions unbecoming of a military officer. The treatment plan, however, was developed by a Texas state mental health hospital and implemented by the plaintiff. The hospital determined the plaintiff's transgressions were service connected. Despite being directed by an Army psychiatrist in getting treatment from the Texas state institution, the medical records from that institution were never incorporated in the plaintiff's army mental health records. The ABCMR, for whatever reason, did not take into consideration these records nor other evidence presented by the plaintiff. The plaintiff submitted vital documentation, which includes the medical records from the Texas state institution, that was not initially acknowledged nor mentioned in the board's evaluation process. This information is critical in understanding the totality of plaintiff's circumstances, particularly that his transgressions were service connected. The plaintiff's argument is if he was diagnosed and properly treated when he initially sought help, he would still be on active duty.

III. The plaintiff is seeking monetary relief for $922, 176.00 from the United States Government.

DERRICK T. DANIELS

Redacted PII

10 Nov. 2018



Case 1:18-cv-01805-PEC Document 1-1 Filed 11/13/18 Page 1 of 25

DEPARTMENT OF THE ARMY
ARMY BOARD FOR CORRECTION OF MILITARY RECORDS
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

December 07, 2016

Mr. Derrick T Daniels

Redacted PII

Dear Mr. Daniels:

Pursuant to your request for reconsideration of ABCMR Docket Number AR20140008998, the Army Board for Correction of Military Records (ABCMR) reconsidered your case on December 6, 2016. I regret to inform you that the Board denied your request for relief. A copy of the Board's Record of Proceedings which explains the Board's reasons for denying your request is enclosed. This decision in your case is final.

Paragraph 2-15b of Army Regulation 15-185 governs requests for reconsideration by the ABCMR. This regulation allows an applicant to request reconsideration of an earlier ABCMR decision only if the request is received within one year of the original decision and it has not already been reconsidered.

Since your request has now been reconsidered, you are not eligible for further reconsideration of this same matter by this Board. However, you have the option to seek relief in a court of appropriate jurisdiction.

A copy of the Board's decision and proceedings have been furnished to the counsel you listed on your application, Col Robert S. Poydasheff, Post Office Box 348, Columbia GA 31902.

Sincerely,

Dennis W. Dingle
Director, Army Board for Correction
of Military Records

Enclosure

Printed on Recycled Paper

ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

RECORD OF PROCEEDINGS

IN THE CASE OF: DANIELS, DERRICK T.

BOARD DATE: DEC 0 6 2016

DOCKET NUMBER: AR20150012081

THE BOARD CONSIDERED THE FOLLOWING EVIDENCE:

1. Application for correction of military records (with supporting documents provided, if any).

2. Military Personnel Records and advisory opinions (if any).

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. The applicant requests reconsideration of his previous request for correction of his records by:

- removing the General Officer Memorandum of Reprimand (GOMOR) from his official military personnel file (OMPF)
- removing two referred Officer Evaluation Reports (OERs) from his OMPF with the periods declared non-rated time (hereafter referred to as the contested OERs)
- removing the Department of the Army Suitability Evaluation Board (DASEB) Record of Proceedings (ROP) from his OMPF
- voiding his discharge
- reinstating him to active duty
- promoting him to major (MAJ)/O-4 with a date of rank of 1 December 2008
- he also requests a personal hearing

2. The applicant states, in effect, he is providing a new argument that was not previously considered.

3. The applicant provides:

- a letter from his counsel
- DA Form 1574 (ROP by Investigating Officer (IO)/Board of Officers) with attachments, dated 24 November 2008

Enclosure 2

- two DA Forms 67-9 (OER) for the rated periods from 15 May 2008 through 30 September 2009
- three memoranda for record (MFR), dated between 15 December 2008 and 13 January 2009
- 42 pages of medical records, dated between 27 March and 1 May 2009; and one page, dated 8 January 2013
- DASEB ROP with cover letter, dated 13 January 2011
- a letter from his parents, dated 30 June 2011
- Board of Inquiry (BOI) Proceedings, dated 18 April 2012
- three pages of a Department of Veterans Affairs (VA) Rating Decision
- AR20140008998 ROP with cover letter

CONSIDERATION OF EVIDENCE:

1. Incorporated herein by reference are military records which were summarized in the previous consideration of the applicant's case by the Army Board for Correction of Military Records (ABCMR) in Docket Number AR20140008998 on 7 April 2015.

2. As a new argument the applicant states:

a. His previous request was denied but his primary basis for submission was not considered. His entire case directly hinges on the fact that he was not diagnosed with or treated for severe depression when symptoms were clearly present during his initial enrollment at the Fort Sill, OK, Behavioral Health (BH) Clinic in August 2008.

b. In his letter to the ABCMR, dated 20 May 2014, he stated, "I request reinstatement on Active Duty due to a misdiagnosis of severe depression" and "The symptoms of the affair, physical altercations, and weight gain were results of severe depression" and "If I was treated for severe depression in the beginning, these transgressions would never have happened." This is the basis of his claim. The AR20140008998 ROP stated, "He continues by stating he was misdiagnosed with severe depression when in fact he suffered from chronic post-traumatic stress disorder (PTSD)." That statement was not in his letter to the Board.

c. In the Discussion and Conclusion portion of the ROP it stated, "The applicant's contention that PTSD caused his misconduct has also been noted and appears to lack merit." The PTSD submission was deliberated and discredited during his BOI hearing. In his letter to the ABCMR, he stated, "Dr. D's disqualification of his PTSD diagnosis in his mental health records raises

concern on his entire military treatment process." It was only after the BOI findings that he was made aware of his severe depression by Dr. M that predates his affair, weight gain, and physical altercation with his spouse. If the BOI had the full understanding of his severe depression diagnosis, he would still be on active duty.

d. In the Consideration of Evidence portion of the ROP it stated, "On 8 January 2013, the VA diagnosed the applicant as suffering from PTSD." This statement is also untrue. In his letter to the ABCMR it stated, "This 40 year old veteran is seen in follow up for treatment of PTSD." The purpose of this visit to the VA psychiatrist was to document that he was mentally stable in maintaining his security clearance. After informing the doctor of his severe depression diagnosis, he stated that PTSD could stem from it. This visit was more of an observation rather than an evaluation. He submitted this record in order to establish that he is still fit to serve on active duty. This was not an attempt to establish a PTSD diagnosis as a basis for his submission.

e. After the DASEB denied his request to transfer the GOMOR to the restricted folder of his OMPF, he obtained an affidavit from Ms. TB. Before his resubmission, he was targeted for elimination. The BOI accepted the merit of Ms. TB's affidavit but since Dr. P discredited the PTSD diagnosis there were no other mitigating circumstances for the affair and altercation. Based on the evidence, the BOI recommended involuntary separation. This action prompted him to get a concrete diagnosis on his mental state of mind post his 2007 – 2008 deployment. After Dr. M's diagnosis, he was able to identify other symptoms of depression in his mental health records.

f. Dr. M was the only psychiatrist who probed his combat experiences in pinpointing the origin of his depression. She documented the affair and physical altercation resulted from his severe depression. A cross examination of Dr. M's documentation and the military mental health records will show a more shallow evaluation from the military psychiatrists. The symptoms of severe depression; however, are undeniably documented in his initial interview at the Fort Sill BH Clinic. For validation, he even documented the definition of severe depression and its signs and symptoms in his initial letter to the ABCMR. Three doctors and a mental health hospital, with no correspondence between them, either documented or testified under oath of signs of depression.

g. He and his lawyer carefully reviewed his previous letter to the ABCMR for clarity and strongly agreed a reasonable person would have understood the intent of the initial letter. It has literally taken him years of time, money, and tremendous effort in collecting documentation, mental evaluations, and legal

advice. He had hoped the Board would at least seek counsel from a compatible counterpart of Dr. M or contact her directly in determining a decision. Based on the evidence submitted and the complexity of his case, he and his lawyer both agreed his case should be carefully reconsidered. If he is granted a hearing at his own expense, he would be grateful in providing any further clarification in all matters considered. It is imperative that his burden is resolved in the most absolute manner.

3. In a letter, dated 28 July 2015, the applicant's counsel stated:

a. In reviewing the work up and decision rendered by the ABCMR [in the applicant's initial application], he noted a distinct error. He respectfully submits that the ABCMR completely overlooked or missed the crux of the applicant's petition. The error was the ABCMR failed to consider the applicant's misdiagnosis of severe depression. He should have been diagnosed with PTSD.

b. The entire file contains supporting documents highlighting the correct diagnosis by Dr. M, Dr. P's BOI testimony, and the Red River Mental Hospital diagnosis. Even the VA used this evidence to support his percentage (%) of disability and found it vital. Nowhere in the findings has the Board considered these crucial documents and they are in his files. Therefore, they respectfully request reconsideration because it is clear the evidence stated above was not considered, mentioned, or commented upon.

4. Having had prior enlisted service, the applicant was appointed as a second lieutenant (2LT) Reserve commissioned officer on 12 December 1998 and entered active duty on 19 March 1999. He held area of concentration (AOC) 19A (Armor Officer, General). On 1 October 2002, he was promoted to captain (CPT)/O-3 in the Regular Army.

5. He served in Iraq in support of Operation Iraqi Freedom (OIF) from:

- 7 February 2004 to 6 February 2005
- 20 August 2006 to 20 November 2007

6. On 17 May 2008, he was assigned to A Battery, 1st Battalion (BN), 30th Field Artillery (FA) Regiment, Fort Sill, as a senior instructor/writer, Combined Arms Division (CAD), U.S. Army FA School (USAFAS).

7. On 21 November 2008, the Lawton Police Department (LPD), Lawton, OK, received a domestic abuse complaint from the applicant's spouse.

a. His spouse stated, in part, he had attacked her at their home on 17 November 2008 when they were arguing. He pushed her, hit her with a plastic baton, and dragged her across the ground after she fell down. She was treated at the Reynolds Army Community Hospital (RACH), Fort Sill, and then sought assistance from the Fort Sill Family Advocacy Office.

b. She stated she had reached over to give the applicant a good night kiss when she smelled another woman's scent on his face. He admitted to having an affair, she got upset and slapped him in the face, and a physical altercation ensued.

c. The responding officer contacted the applicant's BN commander (CDR) and the applicant was interviewed. After being read his Miranda warning rights, the applicant stated he and his wife were having problems, he had been having affairs with several other women, and his wife was a good woman but he needed some time apart (emphasis added).

d. During the investigation, he was accompanied by Special Agent DLS from the Fort Sill Criminal Investigation Command (CID). The applicant's BN CDR, Lieutenant Colonel (LTC) CT, was also present and stated he would place a military protective order on the applicant restraining him from visiting his wife. Included with the report were photographs of the applicant's spouse documenting the injuries she incurred during the physical altercation.

8. On 24 November 2008, an IO was appointed to conduct an AR 15-6 investigation into the facts and circumstances surrounding the allegations that he assaulted his spouse in a domestic dispute and caused her injuries while fighting with her and whether he had violated Article 128 (Assault), Article 134 (Adultery), and Article 133 (Conduct Unbecoming an Officer and Gentleman) of the Uniform Code of Military Justice (UCMJ).

9. After completing the investigation, in an MFR, dated 15 December 2008, the IO stated, in part:

a. Violation of Article 128 was substantiated. He found the applicant did commit assault by intentionally inflicting bodily harm to his spouse. According to statements given to the LPD detective by both the applicant and his spouse, he did strike her in anger during an altercation at their home. Photographic evidence from his spouse's visit to the RACH emergency room revealed bruises she sustained during the fight. Both parties confirmed in their verbal statements to the detective that the applicant's inappropriate sexual relationships with other women caused the fight.

b. Violation of Article 134 was substantiated. He found the applicant did, by his own admission, wrongfully have sexually active relationships with other women while he was married. In a verbal statement to the LPD detective, the applicant admitted to this and stated that his spouse possessed physical evidence consisting of email and photos that contained content confirming her suspicion that he was having adulterous affairs with other women. It was his opinion that the applicant's admission of guilt was sufficient evidence to substantiate this violation.

c. Violation of Article 133 was substantiated. Given that the applicant did violate Articles 128 and 134, it was clear that he acted in a dishonorable manner and compromised his character as an officer and gentleman. The Manual for Courts Martial clearly states that an officer who violates other articles of the UCMJ also violates this article.

d. He noted the applicant had a history of mental health problems and had been seeking help. According to his spouse, the applicant's behavior changed significantly after he returned home from a deployment to Iraq in 2008. She stated he drank heavily and often became angry. She asked him to seek help with mental health physicians which he did in July 2008. She stated he was also referred to the Army Substance Abuse Program (ASAP) and that she no longer felt the applicant was a threat to her.

e. He recommended the applicant receive a GOMOR, that he be removed from any duties involving officer instruction and reassigned to a position of lesser influence, that he continue to seek professional help through Family Advocacy and the chaplain; including anger management, marriage counseling, and that the no contact order between him and his spouse be lifted.

10. The DA Form 1574, shows the BN CDR approved the AR 15-6 findings and recommendations with exceptions and stated he concurred with recommending a GOMOR for the applicant; however, in light of his ongoing counseling and medical treatment, he was convinced that his continuing to be active teaching was a good thing. He had seen no dysfunction in his performance and believed the "outlet" was a positive part of his treatment. He recommended he continue to work and train LTs in the basic officer leader course.

11. In an MFR, dated 17 December 2008, the BN CDR, LTC CT stated, in part:

a. Additional information into the AR 15-6 investigation of the applicant:

- he had two deployments to Iraq, one for 12 months and the second for 15 months; both units were out of Germany
- he redeployed in November 2007 and arrived to Fort Sill in April 2008; his spouse was already at Fort Sill and they did not go through any reintegration training in Germany
- June 2008, he self-referred to ASAP for drinking problems; his spouse recommended the treatment and he agreed; he attended Alcoholics Anonymous meetings since June and after recent issues attended them once a week since November
- June 2008, additionally sought mental health treatments for drinking and emotional outbursts once a month; he was still in counseling once a month
- in light of the current issues, he had an appointment for a psychiatric evaluation with Dr. S on 22 December 2008 and had been enrolled in the Post Deployment Clinic with his first counseling session on 29 December 2008
- the applicant had two meetings with Family Advocacy in December 2008; he rejoined his church and attended services twice a week

b. The city of Lawton and Comanche County Courts were continuing to prosecute the case against the applicant, even after his spouse dropped the charges; his court hearing was scheduled for 26 January 2009. His no-contact order with his spouse by the County and the 30 FA BN CDR remained in effect.

12. On 29 January 2009, the applicant was issued the GOMOR by Major General (MG) PMV, Commanding General (CG), U.S. Army FA Center and Fort Sill. MG PMV stated, in part:

a. He was hereby reprimanded for domestic assault and battery; for beating, choking, and threatening his spouse; for ongoing multiple adulterous affairs with women including one married to a deployed Soldier; and for conduct unbecoming an officer and gentleman.

b. On 16 November 2008, he had a sexual encounter with a woman other than his spouse, returned home, and went to bed. His spouse woke him up when she realized he smelled of the other woman. He had admitted to his spouse that he was having an affair, had just returned from being with her, confirmed her suspicions based upon emails she read, and then engaged in a fight with his spouse. He attacked her by hitting her with his hands, then with a plastic baton on her face and head to the brink of unconsciousness, and leaving her with bruises still visible 5 days later. When she fell, he dragged her across

the floor and choked her, scratching her on her neck. He had verbally threatened her to the point that she feared for her life.

c. He later explained to his spouse that he met the other woman through an online website and admitted to the police that he had engaged in affairs with several other women. His spouse talked to one of the women who revealed his other affairs to include impregnating the spouse of a deployed Soldier.

d. He had admitted that he was the father of twins with the woman he met on the website and with whom he began a sexual relationship in June 2008. He continued the adulterous sexual relationship on a daily basis before and after morning physical training (PT), on lunch breaks, and anytime he did not have to work. He had admitted to her that he had several other affairs during his marriage including with another woman whom he admitted he also impregnated.

e. His behavior was repugnant. He (the applicant) expected the Officers and Soldiers that he trained and led to maintain the highest standards of duty, respect, honor, and integrity, and he must hold himself to the same standards as the example. He violated the Army leader values with his actions over many months. His actions indicated a lack of judgment in his professional and personal life.

f. The reprimand was imposed as an administrative measure under the provisions of AR 600-37 (Unfavorable Information) and not as punishment under Article 15, UCMJ. He was considering filing the GOMOR in the applicant's OMPF but would consider any statements/rebuttal he submitted and the recommendations of his chain of command prior to making the filing decision.

13. In a six-page statement dated, 5 March 2009, the applicant stated, in part:

a. He accepted full responsibility for his actions for the past several months. He had not lived up to the Army's expectations or his. He did assault his spouse and he did have an affair with Ms. TB for several months. He deeply regretted the decisions he made but the current picture depicted by the investigation was truly not who he was and the actual events during the assault did not occur as detailed during the investigation.

b. He detailed his version of the events that occurred between him and his spouse on the day of the altercation but disputed some of the facts of the case. He discussed his upbringing, his accomplishments throughout his military career, his experience during his deployments, and how his inferiority complex plagued him throughout his command.

c. He became extremely depressed, felt cheated, became frustrated about his life, began to hate some of his egotistical peers, and started not to trust his leaders. He started drinking heavily after the deployment and would have inappropriate conversations with women online because he enjoyed it.

d. He would constantly drink, yell, and break items in the house, thus his spouse had him self-admit into mental health and ASAP in August [2008]. He was embarrassed, felt he was going to be labeled, and was not completely truthful with his counselors about his true problems. In an effort to stop his affair, he told Ms. TB things about past affairs that were not true. However, he continued to see her especially when he became depressed about his marriage and profession. In addition, he only admitted to CID about one affair and not several as depicted in the investigation. He was continuing his treatment in the Post Deployment Clinic and was still doing everything to find his way again. He asked for another opportunity to prove himself.

14. On 26 March 2009, after considering the chain of command's recommendations to file GOMOR in the applicant's OMPF and the applicant's response, MG PMV directed the GOMOR be filed in his OMPF. The GOMOR is filed in the performance folder of his OMPF.

15. The applicant provides a medical record, dated 27 March 2009, showing he was seen on that date at the Psychiatry Clinic, RACH, for prescription refills.

a. The treating physician noted a long list of medical problems to include adjustment disorder with depressed mood, anxiety disorder not otherwise specified (NOS), and depression.

b. The psychiatric examination revealed his appearance was normal, behavior demonstrated no abnormalities, attitude was not abnormal, thought content and thought process were not impaired, and no multiple distinct and complex personalities were observed.

16. He provides a medical record, also dated 27 March 2009, showing he was seen on that date at the Mental Health Clinic, RACH, for an unscheduled visit for individual therapy.

a. The treating physician noted, in part, the applicant was awaiting disciplinary action from his command. His depression was mild at that time; he had no sleep complaints and normal enjoyment of activities; no abnormal thoughts or sexual behavior complaints were reported. He felt he was coping well with the pressures of waiting for the outcome of the disciplinary action and

stated that he felt he was prepared and would be able to handle the decision regardless of which way it went. He stated that during his tour in Iraq and upon his return to Germany, he felt as though he was under a great deal of stress. Upon arriving at Fort Sill, he still felt as though there was a lot of tension and pressure on him and he had difficulty adjusting to the new requirements.

b. The psychiatric examination revealed his mood was concerned, affect was constricted, behavior demonstrated no abnormalities, attitude was not abnormal, thought content revealed no abnormalities, and thought processes were not impaired. He had no suicidal or homicidal tendencies.

17. He provides additional medical records, dated between 30 March and 1 May 2009, showing he was seen at the Mental Health Clinic, RACH, on various occasions for treatment of his adjustment disorder with anxiety NOS and depressed mood.

18. The applicant was selected for promotion to MAJ by the Fiscal Year 2008 (FY08) MAJ Promotion Selection Board (PSB).

19. In May 2009, the applicant received the first contested OER, a change of rater OER covering 11 months of rated time for the period 15 May 2008 through 31 March 2009 for his duties as the senior instructor/writer, CAD, USAFAS. His rater was LTC TDZ, Director, CAD; his intermediate rater was LTC CT, BN CDR, and his senior rater was COL JSF, Brigade CDR. The OER shows it was a referred report and contained the following entries:

a. In Part IVa (Army Values), the rater placed an "X" in the "No" block for Honor and Courage values.

b. In Part Va (Performance Potential Evaluation), the rater placed an "X" in the "Unsatisfactory Performance - Do Not Promote" block and entered comments in Part Vb as follows, in part:

> [Applicant's] work performance as a CAD instructor has been utterly superb. He is technically and tactically competent and fully understands both fire support and maneuver doctrine. [Applicant] truly cares about his students, and routinely uses his personal time to coach and mentor LTs. [Applicant] also possesses an uncanny ability to cope with stress. Though he has had an extreme amount of personal stress the past few months, it has not affected his duty performance. Unfortunately, his personal conduct does not match his duty performance. During this rating period [Applicant] received a GOMOR for conduct unbecoming an

Officer. [Applicant] failed to manage his personal affairs and the GOMOR is the direct result of him not living up to the Army's high personal moral standards.

c. In Part VI (Intermediate Rater), the Intermediate Rater entered the comments:

Solid performance training and educating new FA 2LTs in the art of maneuver operations and warfare. [Applicant's] performance was overshadowed with personal misconduct that resulted in a GOMOR. Do not promote to MAJ but retain on active duty so [Applicant] had the opportunity to overcome the personal challenges that afflicted him during the rating period.

d. In Part VIIa (Senior Rater), the Senior Rater placed an "X" in the "Do Not Promote" block and entered the following comments, in part:

[Applicant] received a GOMOR during this rating period for misconduct as a direct result of challenges in his personal life. However, his work performance was solid and [Applicant] continued to provide excellent training in developing FA 2LTs in the maneuver operations skills as part of the CAD at the FA School. Retain on active duty and allow [Applicant] to continue to receive medical treatment and overcome the personal challenges that afflicted him during this rating period.

20. The contested OER was referred to the applicant for acknowledgement and he submitted comments that detailed certain aspects of his performance and character that was not specifically detailed in the evaluation. The OER was signed by the rating officials and the applicant and is filed in the performance folder of his OMPF.

21. He was subsequently removed from FY08 MAJ PSL.

22. In October 2009, the applicant received the second contested OER, a change of rater OER covering 6 months of rated time for the period 1 April 2009 through 30 September 2009 for his duties as the senior instructor/writer, CAD, USAFAS. His rater was MAJ CT, BN S-3; his intermediate rater was LTC CT, BN CDR, and his senior rater was COL JSF, Brigade CDR. The OER shows it was a referred report and contained the following entries:

a. In Part Iva, the rater placed an "X" in all the "Yes" blocks of the Army Values.

b. In Part Va, the rater placed an "X" in the "Satisfactory Performance - Promote" block and entered comments in Part Vb as follows, in part:

> Outstanding performance by a talented officer. [Applicant] has done exemplary work throughout this rating period. He is a self starter who works well with minimal supervision and displays exceptional initiative. Send him to the resident Command and General Staff College as soon as possible. During the last Army Physical Fitness Test, [Applicant] failed to meet height and weight standards. [Applicant] performs PT twice a day. His efforts in physical fitness have resulted in a constant improvement toward meeting Army height and weight standards. He was confident that within 6 months [Applicant] would be within height and weight standards.

c. In Part VI, the Intermediate Rater entered the comment:

> This officer has potential for promotion to MAJ; he clearly possesses the skills to operate at the field grade level.

d. In Part VIIa, the Senior Rater placed an "X" in the "Fully Qualified" block and entered the following comments, in part:

> [Applicant's] performance these past 5 months showed his desire and determination to stay in the Army and be competitive for promotion to MAJ. [Applicant's] performance as an instructor to FA LTs continued to be an area of strength for him. [Applicant] had continued treatment for some of his personal challenges and he was confident that if he continued to improve he should be strongly considered for promotion to MAJ.

23. The contested OER was referred to the applicant for acknowledgement and he submitted comments that stated, in part, he acknowledged and accepted his responsibility for his failure to maintain his weight standard. He described situations that contributed to his weight gain. He had made progress as he amended his relationship with his spouse, graduated from ASAP, and worked on weekends as a medical provider to the mentally and physically challenged. The OER was signed by the rating officials and the applicant and is filed in the performance folder of his OMPF.

24. He was subsequently assigned to the 18th Infantry Brigade, 3rd Infantry Division (ID), Fort Stewart, GA. He served in Iraq with his assigned unit from 17 December 2009 to 16 December 2010.

25. On 25 May 2010, while serving in Iraq, he was notified by a memorandum from the CG, U.S. Army Human Resources Command (HRC), that the Maneuver, Fires and Effects Division had identified him to show cause for retention on active duty because of misconduct, moral or professional dereliction.

26. On 28 September 2010, he appealed to the DASEB and requested the GOMOR be transferred to the restricted folder of his OMPF based on intent served. On 13 January 2011, DASEB denied his request. This DASEB ROP is filed in the restricted portion of his OMPF.

27. On 30 June 2011, the applicant submitted a rebuttal to elimination procedures to the CG, HRC. He stated the GOMOR contained in his records contained allegations that were not true. He did not have more than one extramarital affair, never admitted to having more than one affair, that he was never arrested for or convicted of domestic violence, the person who stated he had multiple affairs and that he had impregnated a Soldier's wife recanted her statement, and that both OERs were tied to the GOMOR.

28. On 3 February 2012, the CG, HRC, notified the applicant that after considering the his rebuttal, all relevant documentation, and the recommendations of the chain of command, a decision had been made to continue with elimination proceedings in his case.

29. On 13 March 2012, he was notified that he was to appear before a BOI at Fort Stewart to determine if he should be retained or involuntarily separated from the Army. The board convened on 18 April 2012 and the applicant was present with counsel. After hearing all of the testimony and reviewing all of the evidence in his case, the board determined that the applicant committed adultery, he had an incident of domestic violence in which he assaulted his wife, he committed acts of personal misconduct, and had committed actions considered conduct unbecoming a commissioned officer. The board notified the applicant that the members had unanimously recommended he be involuntarily separated with an honorable discharge.

30. On 12 June 2012, the convening authority approved the findings and recommendations of the BOI and forwarded the results of the BOI to the CG, HRC. The General Officer Show Cause Authority concurred with the BOI's recommendation and forwarded the applicant's case to the Deputy Assistant Secretary of the Army (Review Boards) (DASA RB) for final action.

31. On 23 October 2012, the Army Board of Review for Eliminations convened to review the BOI proceedings. After reviewing the BOI proceedings, the board

determined that the government had established by a preponderance of the evidence that the applicant committed adultery, did have an incident of domestic violence in which he assaulted his spouse, did commit acts of personal misconduct, and his actions could be considered conduct unbecoming a commissioned officer. The board unanimously recommended his elimination from the service with an honorable characterization of service.

32. On 31 October 2012, the DASA (RB) approved the recommendations of the Department of the Army Board of Review for Eliminations and directed the applicant be honorably discharged for unacceptable conduct. On 16 November 2012, he was discharged accordingly.

33. The DD Form 214 (Certificate of Release or Discharge from Active Duty) he was issued for this period of service shows he was honorably discharged under the provisions of AR 600-8-24 (Officer Transfer and Discharges), paragraph 4-2b, by reason of unacceptable conduct.

34. The applicant provides:

a. Three pages of a VA Rating Decision that shows, in part, he was granted service-connected disability effective 17 November 2012 for anxiety disorder (NOS) and major depressive disorder, rated at 30%.

b. A medical treatment record, dated 8 January 2013, that shows he was diagnosed with PTSD. The examining psychiatrist stated, in part, his PTSD symptoms had not made him unstable in any way and were more a matter of mild occasional discomfort. There was no security issue and he was fully competent from a security clearance point of view.

35. In the processing of this case an advisory opinion was received on 11 October 2016 from the Clinical Psychologist, Army Review Boards Agency (ARBA). The advisory official opined:

a. The applicant served in the Army from 19 March 1999 to 16 November 2012 in AOC 19A. He received an honorable discharge under the provisions of AR 600-8-24, paragraph 4-2b, for unacceptable conduct. He deployed in support of OIF from 7 February 2004 to 6 February 2005, 20 August 2006 to 20 November 2007, and 17 December 2009 to 16 December 2010.

b. On 13 June 2015, the applicant requested reconsideration of his previous application contending the ABCMR failed to consider his misdiagnosis of severe depression as PTSD. The applicant's previous application contended that if he

was treated for severe depression in the beginning, his transgression would never have happened. This case was denied on 7 April 2015 after the ABCMR determined his discharge was proper and equitable.

c. A military investigation, dated 15 December 2008, found the applicant had assaulted his spouse, committed adultery, admitted to committing adultery, and had committed offenses that amounted to conduct unbecoming an officer and a gentleman. On 29 January 2009, the applicant received a GOMOR for the domestic assault and battery which entailed beating, choking, and threatening his wife; for ongoing multiple adulterous affairs with women; and for conduct unbecoming an officer and gentleman.

d. Military medical records indicated a BH treatment history for alcohol abuse, adjustment disorder with anxiety and depressed mood, PTSD, and depression. The applicant engaged in several BH services to include psychology and social work individual and group treatments, medication management through psychiatry, outpatient and inpatient services, family advocacy, ASAP, and off-post counseling. It appears the applicant was evaluated thoroughly, actively engaged in treatment, and endorsed symptoms appropriate to the given diagnoses for each treatment session.

e. A medical note, dated 8 January 2013, indicated he had an Axis I diagnosis of PTSD from a VA psychiatrist. The provider included an opinion that the applicant endorsed scarcely unusual PTSD symptoms for someone exposed to combat and determined the symptoms had not made the applicant unstable in any way; they were more a matter of mild, occasional discomfort. A VA letter, dated 4 February 2015, indicated service connection for anxiety disorder (NOS) with major depressive disorder was granted and the applicant was assigned a disability rating of 20% effective 17 November 2012.

f. The ARBA Clinical Psychologist was asked to determine if the condition of PTSD was duly considered during the military separation process of the applicant. This opinion is based on the information provided by the Board and records available in the Department of Defense electronic medical record (AHLTA). Based on thorough review of available medical records, there is no evidence that the diagnosis of depression or PTSD was misdiagnosed or that either condition mitigated his misconduct as the nature of these conditions are not reasonably related to the misconduct of domestic violence and engaging in adultery.

g. This observation does not negate that applicant's deployment history or in-service and post-service diagnoses of depression and PTSD; however, the

presence of anxiety, depression, or PTSD during the time period of which he engaged in multiple infractions of misconduct, does not explain or directly mitigate his actions leading to an early separation from the Army. The medical evidence that is available makes no indication that the applicant was misdiagnosed, that he was not responsible for his decisions and actions, or that he was considered psychologically unfit for duty; therefore, there is no basis for the applicant's contention that his transgressions would never have happened if he was treated for severe depression in the beginning.

36. On 12 October 2016, the applicant was provided a copy of the advisory opinion for information and to allow him the opportunity to submit comments or a rebuttal; however, no response was received.

REFERENCES:

1. AR 600-37 provides that:

a. An administrative memorandum of reprimand may be issued by an individual's commander, by superiors in the chain of command, and by any general officer or officer exercising general court-martial jurisdiction over the Soldier. The memorandum must be referred to the recipient and the referral must include and list applicable portions of investigations, reports, or other documents that serve as a basis for the reprimand. Statements or other evidence furnished by the recipient must be reviewed and considered before filing determination is made.

b. A GOMOR may be filed in a Soldier's OMPF only upon the order of a general officer-level authority and is to be filed in the performance folder. The direction for filing is to be contained in an endorsement or addendum to the memorandum. If the GOMOR is to be filed in the OMPF, the recipient's submissions are to be attached. Once an official document has been properly filed in the OMPF, it is presumed to be administratively correct and to have been filed pursuant to an objective decision by competent authority. The burden of proof rests with the individual concerned to provide evidence of a clear and convincing nature the document is untrue or unjust, in whole or in part, thereby warranting its alteration or removal from the OMPF.

2. AR 623-3 (Evaluation Reporting System) establishes the policies and procedures for preparing, processing and using the OER. The regulation also provides that an OER accepted for inclusion in the official record of an officer is presumed to be administratively correct, to have been prepared by the proper rating officials and to represent the considered opinion and objective judgment of

the rating officials at the time of preparation. The burden of proof in appealing an OER rests with the applicant. Accordingly, to justify deletion or amendment of a report, the applicant must produce evidence that clearly and convincingly nullifies the presumption of regularity. Clear and convincing evidence must be of a strong and compelling nature, not merely proof of the possibility of administrative error or factual inaccuracy.

3. AR 600-8-24 serves as the authority for the transfer and discharge of Army officer personnel. It provides that elimination action may be or will be initiated for misconduct, moral or professional dereliction, acts of personal misconduct, conduct unbecoming an officer, and adverse information filed in the OMPF.

4. AR 15-185 (ABCMR) states ABCMR members will review all applications that are properly before them to determine the existence of an error or injustice; direct or recommend changes in military records to correct the error or injustice, if persuaded that material error or injustice exists and that sufficient evidence exists on the record; recommend a hearing when appropriate in the interest of justice; or deny applications when the alleged error or injustice is not adequately supported by the evidence and when a hearing is not deemed proper. The ABCMR will decide cases on the evidence of record. It is not an investigative body. The ABCMR may, in its discretion, hold a hearing. Applicants do not have a right to a hearing before the ABCMR. The Director or the ABCMR may grant a formal hearing whenever justice requires.

DISCUSSION:

1. By regulation, an applicant is not entitled to a hearing before the ABCMR. Hearings may be authorized by a panel of the ABCMR or by the Director of the ABCMR. In this case, the evidence of record and independent evidence provided by the applicant is sufficient to render a fair and equitable decision at this time.

2. The applicant contends the GOMOR and two contested OERs should be removed from his OMPF and he should be reinstated to active duty because he was not diagnosed with or treated for severe depression when symptoms were clearly present during his initial enrollment at the Fort Sill BH Clinic in August 2008. He contends the symptoms of the affair, physical altercations, and weight gain were results of severe depression and had he had been treated for this in the beginning, the transgressions would not have happened.

3. However, as confirmed by the advisory official, the available medical evidence does not show that the diagnosis of depression or PTSD was misdiagnosed or

that either condition mitigated his misconduct as the nature of these conditions were not reasonably related to the misconduct of domestic violence or engaging in adultery. The available medical evidence does not indicate he was not responsible for his decisions/actions, that he was considered psychologically unfit for duty, and do not support his contention that his misconduct and weight gain would never have happened if he was treated for severe depression in the beginning.

4. The evidence of record confirms the applicant received a GOMOR on 29 January 2009 for domestic assault and battery; for beating, choking, and threatening his spouse; for ongoing multiple adulterous affairs with women; and for conduct unbecoming an officer and gentleman. The GOMOR was issued as an administrative measure after the LPD investigated a complaint of domestic abuse and an AR 15-6 investigation found he did commit assault by inflicting bodily harm to his spouse; did, by his own admission, have sexual relationships with other women while married; and did commit conduct unbecoming an officer and gentleman.

5. He was afforded the opportunity to review the evidence against him and to submit matters in his own behalf prior to a final filing decision. His response was received and considered and the GOMOR was subsequently directed for filing in his OMPF.

6. With respect to the contested OERs, the governing Army regulation states an evaluation report included in the official record of a rated Soldier is presumed to be administratively correct, to have been prepared by the properly-designated rating officials who meet the minimum time and grade qualifications, and to represent the considered opinions and objective judgment of the rating officials at the time of preparation.

7. The contested OERs appear to be correct and each one appears to represent a fair, objective, and valid appraisal of the applicant's demonstrated performance and moral qualities during the rating periods period in question. By regulation, to support removal or amendment of a report, there must be evidence that establishes clearly and convincingly that the presumption of regularity should not be applied and that action is warranted to correct a material error, inaccuracy, or injustice. The applicant has not provided evidence that establishes clearly and convincingly that the presumption of regularity should not be applied to each OER under consideration or that action is warranted to correct a material error, inaccuracy, or injustice.

Annex K

RED RIVER HOSPITAL

DISCHARGE SUMMARY

**PATIENT NAME:** DANIELS, DERRICK
**PATIENT ID:** Redacted PII
**DATE OF ADMISSION:** 2/14/2009
**DATE OF DISCHARGE:** 2/24/2009
**ATTENDING PHYSICIAN:** BRYAN WIECK, M.D.
**UNIT:** ADULT

RED RIVER HOSPITAL
This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of this person to whom it pertains or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

**ADMISSION DIAGNOSIS:**

**AXIS I:**
Major depressive disorder, recurrent, severe addiction.

**AXIS II:**
Deferred.

**AXIS III:**
None.

**AXIS IV:**
Psychosocial stressors, severe.

**AXIS V:**
Global assessment of functioning: Current is 30, highest in the past year is 75.

**DISCHARGE DIAGNOSES:**

**AXIS I:**
Major depressive disorder, recurrent and severe.

**AXIS II:**
None.

**AXIS III:**
None.

**AXIS IV:**
Psychosocial stressors, severe.

**AXIS V:**
Global Assessment of Functioning current 50, highest in the past year is 75.

**PHYSICAL ON ADMISSION:**
The patient's height 5 feet 9 inches, weight 210 pounds, blood pressure 117/84, pulse 73, respirations 18.

**ADMISSION LABORATORY:**
CBC with RBC 4.58 which is low, hematocrit 41.2 which is low, monocyte 9.3 which is elevated, urinalysis within normal limits. Survey 14 with anion gap of 9 which is slightly low, urine drug screen negative. TSH within normal range. RPR nonreactive, CMG Amplified D testing negative.

**PATIENT NAME:** DANIELS, DERRICK
**PATIENT ID:** Redacted PII
**DATE OF ADMISSION:** 2/14/2009
**DATE OF DISCHARGE:** 2/24/2009

**HOSPITAL COURSE:**
A 36-year-old male admitted to the adult inpatient program with chief complaint of 'I am trying to hang myself.' The patient's active duty stationed at Lawton Army base in Oklahoma, Fort Sill. It has been found in the past the patient has been drinking excessively to deal with stress. The patient depressed and increasingly depressed since November 2008. He was charged with adultery and he is separated from his wife, anticipated might reconcile or a very possible divorce although he would like things to work out. He has a 14-year old army career, he knows nothing else. Depression, depressed mood, energy, irritability, poor concentration, poor sleep, isolation, helplessness, thoughts of suicide, he purchased a rope and was beginning the process to hang himself and feared that he will go to hell and stopped and called his command. Initially in the unit, he was alert and oriented x4. His memory is intact. His mood depressed. Affect dysphoric. Thought process is well organized, recognized the need for treatment. Treatment plan included individual and group therapy and medication management. The patient attended groups and therapies on the unit. He worked on mood improvement skills. The patient worked on ways to decrease anxiety and improve his mood. The patient worked on building strength and motivation within himself and improves his self-esteem, self-worth, worked on relaxation techniques and worked on communication skills. The patient was attentive and contributory and participatory in the program, he opened up. He did good work on concentrating on himself and stop distancing. The patient was involved patient worked on positive thoughts and establishing those. Treatment went well improving himself on communication and healthy ways to cope and handle his emotions and self empowerment. Overall the patient is doing well. He tolerates medications without any side effects. His mood improved. His affect improved. He is discharged in stable condition with no suicidal or homicidal ideation.

**DISCHARGE MEDICATIONS:**
Zoloft 100 mg daily, Ambien 10 mg at bedtime p.r.n. for sleep.

**DISCHARGE PLAN:**
To follow up with Fort Sill Community Mental Health immediately upon arrival to base. Primary care physician as needed for physical health care needs. The patient's military services, instructed to contact Dr. Wieck at Red River Hospital for any questions, concerns, or problems.

Kristy Curd, RN

Bryan Wieck, M.D.

JOB ID: 702992
DD: 03/22/2009
DT: 03/23/2009

RED RIVER HOSPITAL
This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of the person to whom it pertains or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

Case 1:18-cv-01805-PEC Document 1-1 Filed 11/13/18 Page 22 of 25

Annex C

MARKS PSYCHIATRY
& FORENSIC SERVICES

Tracey I. Marks, MD

4/30/12

I saw Mr. Derrick Daniels today for a consultation.

My diagnoses -

1) ~~Ha~~ History of major depression in remission
2) History of alcohol abuse - not current
3) Possible dysthymia

J Marks, MD

3975 ROSWELL ROAD, ATLANTA, GA 30342 PH 404 327 5194 www.markspsychiatry.com

Marks Psychiatry
Enhancing Lives One Mind at a Time

Progress Note

Name: Derrick Daniels
Date: 5/17/12

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067 fax

90807

Has petition to "move forward" next wk.
↳ not to be discharged.

Childhood

Grew up in Jaken GA. on farm.
Only child → mom 39, Dad 37. Not many people around.
Mom school teacher. Didn't see physical affection btw parents.
Parents went to separate churches.
Did farm work & yard work for money.
Didn't have much of a social life. He lived far from school un
classmates. Couldn't participate in after school activities
2° 2hr bus ride.
Didn't feel close to parents. Didn't do things as a family.
His highlight of the summer was vacation bible school.
Went to army c̄ H.S. x 3 yrs, then college on scholarship, the
return to army.
Joined army to rebel against Dad's plans, but liked it.
1st deployment 2003. → this was beginning of things going downward
Witnessed senseless deaths followed by multiple moves
Was bothered that a supervisor wouldn't take the time to write his e
MSE - ok mood Ø psychosis

Imp: h/o Depression in remission
h/o EtoH abuse - remote.
Current state - general discontentment with work-related issues
Plan - No treatment needed
Return as needed.

26

Marks Psychiatry
Enhancing Lives One Mind at a Time

Progress Note

Name: Derrick Daniels
Date: 4/30/12

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067

Initial eval cont.

Got a part-time job as nursing assistant in a care home. x
Got it to feel needed.
Got deployed to Iraq - felt with the previous deployment people died senselessly. Wanted some closure on this issue.
Felt c 3rd deployment had chance to redeem given more stable environment. Not sure if he got closure.
Returned Dec '10. Now at Ft Stewart training reservists.
Current issues - doesn't feel army understood what he was going.
felt he was just a number.
Current sx.
Feels he's going thru the motions
Dissatisfied c current job - they are resistent to change
Doesn't feel appreciated - No matter what he does, it's never enough
- No mentorship
Sleep - "good" 6-6 typical for him. Will nap @ lunch esp p [illegible]
Energy - "ok"
Some trouble concentrating when bored. Can focus when passionate
Thinks there is cultural bias.

Joined army age 17
Planning to get divorce.
Has upcoming board hearing re - trying to kick him out of mil
MSE - good mood, nl speech ø psychosis, ø SI, ø HI ø cognitive impair
Imp - h/o major depression in remission
h/o EtOH abuse
- not clear if he had PTSD in past - not a current issue
Plan - Pt to ret 1-2 wks to discuss other

Signature: [illegible] 27

Name printed: Tracey Marks, MD

Marks Psychiatry
Enhancing Lives One Mind at a Time

## Progress Note

Name: Derrick Daniels
Date: 4/30/12
90801 -

Age 39

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067 fax

cc I want a proper diagnosis

17 yr army vet. 3 tours - after returned from 2nd tour "not ri

apr 2008 - was in Bagdad - lost a lot of soldiers
returned felt used
blamed self for a lot of things
Felt purposeless → ~~diss~~ hard to transition to doing office work

Was easily aggravated
consequences - domestic violence - fought c wife over affair reported to military Got a reprimand in 2009
- affair
- alcohol abuse
↳ daily drinking beer during week at least 2 weekends - W drinks hard Etoh

Jan '09 - went to Mental Heath Hosp. in Tx p̄ suicide attemp
Tried to hang self in garage. Planned for few days
bought rope from Walmart - put noose around neck, step on table - couldnt do it. Returned home & called parents
Suggested he go to hospital (~~they~~ wife notified his "leadership")
He wanted to see that wife was concerned

In hosp x 10 days → got Zoloft. Continued for "a while" →2 refills as out pt
Returned to Ft Seal → 2 group sessions / wk for anger mgm
~~Stop~~ ~~x~~ la mon

↳ stopped drinking p̄ this hosp. → now occasional → maybe 1x wk

Signature:

Name printed: Tracey Marks, MD

# APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552

*(Please read Privacy Act Statement and instructions on back BEFORE completing this application.)*

*OMB No. 0704-0003*
*OMB approval expires*
*Dec 31, 2017*

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the Department of Defense, Washington Headquarters Services, Executive Services Directorate, Directives Division, 4800 Mark Center Drive, Alexandria, VA 22350-3100 (0704-0003). Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.

**RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.**

AR20190003697

Daniels, Derrick T
Redacted PII
Receipt Date: 2019/02/21

**1. APPLICANT DATA** *(The person whose record you are requesting to be corrected.)*

**a. BRANCH OF SERVICE** *(X one)* X ARMY | NAVY | AIR FORCE | MARINE CORPS | COAST GUARD

**b. NAME** *(Print - Last, First, Middle Initial)*
Daniels, Derrick T.

**c. PRESENT OR LAST PAY GRADE**
0-3E

**d. SERVICE NUMBER** *(If applicable)*

**e. SSN**
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

**2. PRESENT STATUS WITH RESPECT TO THE ARMED SERVICES** *(Active Duty, Reserve, National Guard, Retired, Discharged,* ***Deceased)***
Active Duty

**3. TYPE OF DISCHARGE** *(If by court-martial, state the type of court.)*
Honorable

**4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY** *(YYYYMMDD)*
20121216

**5. I REQUEST THE FOLLOWING ERROR OR INJUSTICE IN THE RECORD BE CORRECTED AS FOLLOWS:** *(Entry required)*

Medical Evaluation Board/Physical Evaluation Board

1. Validate the Army's current position
2. Recommend placement on the Temporary Disability Retirement List (TDRL) (Unfit for Duty)
3. Recommend placement of the Permanent Disability Retirement List (PDRL) PDRL ( (Unfit for Duty)
4. Recommend reinstatement on Active Duty in current Branch.

**6. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST FOR THE FOLLOWING REASONS:** *(Entry required)*

I therefore request relief due to symptoms of service-connected Major Depression prior involuntary separation.

**a. IS THIS A REQUEST FOR RECONSIDERATION OF A PRIOR APPEAL?** X YES | NO

**b. IF YES, WHAT WAS THE DOCKET NUMBER?**
AR20150012081

**c. DATE OF THE DECISION**
April 09, 2015

**7. ORGANIZATION AND APPROXIMATE DATE** *(YYYYMMDD)* **AT THE TIME THE ALLEGED ERROR OR INJUSTICE IN THE RECORD OCCURRED** *(Entry required)*

**8. DISCOVERY OF ALLEGED ERROR OR INJUSTICE**

**a. DATE OF DISCOVERY** *(YYYYMMDD)*
20121116

**b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THE APPLICATION.**
I have enclosed a court order from The United States Court of Federal Claims ordering a voluntary remand on the condition the Army Board of Corrections considers mental health records not reviewed previously.

**9. IN SUPPORT OF THIS APPLICATION, I SUBMIT AS EVIDENCE THE FOLLOWING ATTACHED DOCUMENTS:** *(If military documents or medical records are pertinent to your case, please send copies. If Veterans Affairs records are pertinent, give regional office location and claim number.)*

Letter of Request for Relief with Time-line, United States Court of Federal Claims No. 18-1805, Army Mental Health Records, Civilian Mental Health Records, Fort Sill Policy Report, Ms. Tara Brown Affidavit, and Exerts from the 2012 Board of Inquiry.

**10. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.** *(At no expense to the Government) (X one)*
YES. THE BOARD WILL DETERMINE IF WARRANTED. | X NO. CONSIDER MY APPLICATION BASED ON RECORDS AND EVIDENCE.

**11.a. COUNSEL** *(If any)* **NAME** *(Last, First, Middle Initial)* **and ADDRESS** *(Include ZIP Code)*
Robert S. Poydasheff
Post Office Box 348
Columbus, Georgia 39861

**b. TELEPHONE** *(Include Area Code)* (706) 327-9415

**c. E-MAIL ADDRESS**

**d. FAX NUMBER** *(Include Area Code)*

**e. I WOULD LIKE ALL CORRESPONDENCE/DOCUMENTS SENT TO ME ELECTRONICALLY.** YES | X NO

I20190003764

Daniels, Derrick T
Assigned To: Redacted PII
Receipt Date: 2019/02/21

**12. APPLICANT MUST SIGN IN ITEM 15 BELOW. If the record in question is that of a deceased or incompetent person, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY THE APPLICATION. If the application is signed by other than the applicant, indicate the name** *(print)* ______ **and relationship by marking one box below.**

SPOUSE | WIDOW | WIDOWER | NEXT OF KIN | LEGAL REPRESENTATIVE | OTHER *(Specify)*

**13.a. COMPLETE CURRENT ADDRESS** *(Include ZIP Code)* **OF APPLICANT OR PERSON IN ITEM 12 ABOVE** *(Forward notification of all changes of address.)*
Derrick T. Daniels
Redacted PII

**b. TELEPHONE** *(Include Area Code)* Redacted PII

**c. E-MAIL ADDRESS**
derrick.daniels72@gmail.com

**d. FAX NUMBER** *(Include Area Code)*

**14. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sections 287 and 1001, provide that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

**CASE NUMBER**
*(Do not write in this space.)*

**15. SIGNATURE** *(Applicant must sign here.)*

**16. DATE SIGNED** *(YYYYMMDD)*
20190219

**DD FORM 149, DEC 2014** PREVIOUS EDITION IS OBSOLETE. Adobe Designer 9.0

# Derrick Daniels

Redacted PII
Cell: Redacted PII
derrick.daniels72@gmail.com

Army Review Board Agency
251 18th Street South, Suite 38
Arlington, Virginia 22202-3531

February 17, 2019

RE: Symptoms of Service-Connected Major Depression

President to the Army Board of Corrections of Military Records,

I therefore request relief due to symptoms of service-connected Major Depression prior involuntary separation. I have enclosed a court order from The United States Court of Federal Claims ordering a voluntary remand on the condition the Army Board of Corrections considers mental health records not reviewed previously (Attachment A). The board has previously denied my request twice without primarily acknowledging two essential diagnoses from the Red River Mental Hospital and Dr. Ann Marks, both occurring prior to my involuntary separation. I understand the board reviews thousands of cases yearly and my case is very convoluted. To that point, I further request the board considers directing a Medical Examination Board followed by a Physical Examination Board. With the adequate resources of all my medical records, officer evaluation reports, live testimonies from psychiatrists and my rebuttal statements, a live MEB/PEB can:

1. Validate the Army's current position
2. Recommend placement on the Temporary Disability Retirement List (TDRL) (Unfit for Duty)
3. Recommend placement of the Permeant Disability Retirement List (PDRL) PDRL ( (Unfit for Duty)
4. Recommend reinstatement on Active Duty in current Branch
5. Recommend reinstatement in another Branch due to any physical limitations

If a MEB/PEB determines either 4 or 5 above, I request the two deferred OERs are removed from my permanent file and the GOMAR is either removed or an addendum is attached and moved to my restricted file. I also request I am evaluated for fiscal year 2008 Major's Board which I was removed.

Timeline

- Initial Assessment by Fort Sill's Behavioral Health Clinic, August 2008 (Attachment B): Suicidal tendencies from possible depression/anxiety prior to transgressions. Medical officials did not understand the severity of my Major Depression, but symptoms are documented.

- Lawton Fort Sill Police Report, November 2008 (Attachment C):

Leadership utilized a false testimony by Ms. Tara Brown, the woman I had the affair with, and a misrepresentation of the facts in the Lawton Fort Sill Police Report. Ms. Brown stated I had several affairs, including impregnating a wife of a deployed Soldier. She also stated I impregnated her with twins. The leadership validated her statement with the Fort Sill Police report stating I admitted to several affairs. Officer Peralta interviewed my wife at the time, Wendy Daniels and myself. In the process of developing the report, he mistakenly created a false narrative based on both interviews. I also was recorded during my interview in which I ADMITTED to having an affair with Ms. Brown. A police report is not an official documentation of testimony. Ms. Brown did not provide any other proof outside of a signed affidavit to command. She later recanted her statement with another affidavit in 2010 (Attachment D). Ms. Brown wrongful allegation and the acknowledgment of my recorded testimony to Officer Peralta were proven during a Board of Inquiry Hearing in April 2012.

- Deferral to Red River Mental Health Hospital, February 2009 (Attachment E):
  During the 15-6 investigation, I was ordered to separate from my wife. I was isolated and felt alone. The effect of the GOMAR caused my depression to worsen to the point I attempted suicide. My command inadvertently interfered in my receiving proper assistance from Fort Sill Mental Health through informing I admitted to having several affairs. This is documented in my Mental Health records.

  Red River Mental Health Hospital Diagnosis, February 2009, (Attachment F)
  Red River Mental Health Hospital focused on the affair and domestic violence as symptoms of my depression from my deployments. I was able to identify my anger, my masking through covert depression, need for adrenaline, lack of self-worth, self-blaming, survivor's remorse and lack of self-esteem. Unfortunately, my continuity of treatment was never maintained by Fort Sill's Mental Health Clinic. The records from Red River should have been placed in my Military Mental Health Records because Fort Sill deferred my treatment.

- Board of Inquiry, Dr. L. Parodi, April 2012 (Attachment G):
  The commanding General of Fort Stewart granted me a Board of Inquiry based on a diagnosis of severe PTSD due to an elimination board. However, the Chief of the MEB Behavioral Health, Dr. Ana L. Parodi, testified that the diagnosis was erroneously placed in my file by an unqualified official. But she DID testify she saw symptoms of depression in my file. She also testified she was unable to validate the cause because she never personally evaluated me. The symptoms from Red River Mental Health Hospital were NEVER placed in my Military Health Records plus no one has never explained my symptoms to me at that point.

- Board of Inquiry Cross Examination, April 2012 (Attachment H):
  I was asked by LTC Hathaway on why I had the affair. I informed him that it wasn't anything my wife didn't do, it was what I was trying to give myself.

- Dr. Ann Mark's Diagnosis, August 2012 (Attachment I):
  After the board, I sought an independent evaluation through Dr. Ann Marks that came to the same conclusion as Red River Mental Health Hospital prior to my separation.

I am currently the Business Management Coordinator for a Behavioral Health Crisis Center, similar to the Red River Mental Health Hospital. The primary reason I desired to work at a crisis unit was to minimize the lack of continuity of care I experienced. A day doesn't go by without me reflecting on my circumstances, but my obligation to my patients is therapeutic. This position allows me to see the challenges in a socialistic mental health care system. It's common for technicians to chart on the wrong patient, administer wrong medications,

omit vital documentation from medical files etc. And often, our patients come back because mental health treatment is not an exact science. It's sometimes trial and error because people are different. During my last request for relief, the board identified several instances I displayed a calm demeanor during engagements. As a former commander, I learned to mask my depression because I had to lead Soldiers in combat. This is known as covert depression. The board also stated its psychiatrist didn't find anywhere in my military medical records where it was documented my affair and domestic violence were symptoms of my depression. But this was precisely the reason I submitted medical records from Red River Mental Health Hospital and the diagnosis from Dr. Ann Marks. In both instances, my time was dedicated to their care and observations. Both took time to understand all aspects of my circumstances.

Officers are held to the upmost highest standard. Officers also take responsibility for their actions. I have always taken responsibility and if I was afforded the opportunity at the beginning of my treatment, then I would still be on active duty. The affair and domestic violence were both symptoms of my Severe Depression. People suffering from Severe Depression do not exhibit the same symptoms. I couldn't control the actions of Ms. Brown or my command (I don't place any fault or judgement. My command followed protocol to the best of their abilities). But what I DID control is understanding what was affecting me and developing a treatment plan through Red River which allowed me to serve honorably four more years. If I was to be eliminated, it should have taken place at the time of accused violations. Operation Iraqi Freedom Rotation 07-08 had the highest suicide rate and Fort Sill was amongst the institutions with the highest suicides during that time. If the Board of Inquiry discovered that I didn't have multiple affairs and didn't impregnate multiple women then why was I suicidal? I am afraid that the severity of the GOMAR has overshadowed my depression and solidified Army officials in not taking my request for relief seriously. A live medical board will allow qualified officials to determine my disposition at critical times of my deployments and other specific periods in my military career. A determination should be made by evaluating medical records and medical officials who have PERSONALLY evaluated me. Thank you for your attention in this matter.


Sincerely,

Derrick T. Daniels

9 Encl

Attachment A United States Court of Federal Claims No. 18-1805C
Attachment B Initial Assessment by Fort Sill's Behavioral Health Clinic
Attachment C Lawton Fort Sill Police Report
Attachment D Ms. Tara Brown Recanted Statement (Affidavit)
Attachment E Referral to Red River Mental Health Hospital
Attachment F Red River Mental Health Hospital Diagnosis
Attachment G Board of Inquiry, Dr. Paroli Testimony
Attachment H Board of Inquiry, Cross Examination
Attachment I Dr. Ann Mark's Diagnosis

Attachment A

# In the United States Court of Federal Claims

No. 18-1805C

(Filed: February 1, 2019)

| | |
|---|---|
| DERRICK T. DANIELS, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

The court has before it defendant's consent motion for a voluntary remand. ECF No. 7. This is a military pay case, that was preceded by an adverse decision by the Army Board for Correction of Military Records (ABCMR). Id. at 1. According to defendant, there are three reasons justifying the remand:

> First, it is appropriate for Mr. Daniels to have one final opportunity to provide the ABCMR with the mental health records that he contends were not considered previously. Second, it is appropriate for the ABCMR to have an opportunity, in the first instance, to review the claims of Mr. Daniels based upon any additional mental health records that were not considered by the ABCMR previously. Third, during the proposed remand, the ABCMR potentially could provide Mr. Daniels with all of the relief he currently seeks, which would moot this action and obviate the need for any further litigation in this Court.

Id. at 2.

For the reasons stated in the unopposed motion, the court agrees that a remand to the ABCMR is warranted under Rule 52.2 of the Rules of the United States Court of Federal Claims (RCFC).

U.S. Certified Mail 7019 0040 0001 1393 1877

Attachment B

**CHRONOLOGICAL RECORD OF MEDICAL CARE**

Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **18 Aug 2008 0835 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **ACUT**
Provider: **DODD,DAVID S**

**Reason for Appointment:** sod walk in

**AutoCites** Refreshed by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT

**Problems**
- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA

**Active Family History**
No Active Family History Found.

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

**Vitals**
**Vitals** Written by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT
Tobacco Use: Yes, Alcohol Use: Yes, Pain Scale: 0 Pain Free

**SO Note** Written by GROVE,SHERRY L @ 18 Aug 2008 1010 CDT
**History of present illness**
The Patient is a 35 year old male.
He reported: Encounter Background Information: This is a 35 year old African American, married male Active Duty Army CPT who walked in to CMHS this morning accompanied by his wife to see the SOD. SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. SM & wife report that since his return he has had an increase in drinking (2 beers or 2 liquor shots every night). He also reports depressive symptoms, irritability, uncomfortableness in crowds, lack of motivation, inpatience, fatigue, problems relaxing, and erectile dysfunction. SM stated that he wanted to get help several months ago, but he never followed through. SM relayed that his wife told him today that if he didn't come to CMHS, she would go to his Commander & tell him about SM's problems.
Psychological symptoms SM appeared neatly dressed and groomed in ACU's, appeared alert, oriented, & in no acute distress. SM denies SI/HI, denies perceptual distortions, denies psychotic symptoms. SM's wife relayed that SM has mentioned wanting to kill himself. Wife relayed that SM bought her a gun for her protection while he was deployed. Wife says when SM drinks, he'll say stuff like "Where's the gun-I'll blow my brains out right now". SM's speech appeared normal with regards to rate, tone, & flow. SM's mood appeared depressed with affect congruent. Risk issues appear minimal to moderate @ this time. SM informed of CMHS & RACH emergency protocol procedures should he become acutely distressed or decompensate.
**Subjective**
Will staff case with Dr. Dodd. R/O Depressive D/O NOS, R/O Alcohol Abuse. SM may benefit from medications, & he is amenable to taking them. SM is not amenable to groups, & he would prefer 1:1 therapy for post deployment related issues. Also, SM & his wife are interested in Marital counseling, & may need a referral to Social Work Services. SM & wife were informed of CMHS & RACH emergency protocol procedures should they become acutely distressed or decompensate. Taught SM & wife some breathing techniques & progressive muscle relaxation exercises, which they engaged in. They were encouraged to engage in the exercises @ home also. SM & wife will f/u as needed and scheduled with their primary providers.

**A/P** Written by DODD, DAVID S @ 19 Aug 2008 0659 CDT
**1. ALCOHOL ABUSE**
Procedure(s): -Psychiatric Therapy Individual Approximately 45-50 Minutes x 1

**Disposition** Written by DODD, DAVID S @ 19 Aug 2008 0700 CDT
**Released w/o Limitations**
Follow up: as needed . - Comments: sm agreed to go to the ASAP program. Also set up appt for intake. clarified emergency

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20 Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION...

Attachment C

)8

PAGE2

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

Police Action: FOLLOW UP APPROVED
Police Reason:
Prosecutor Action:
Reason Rejected:
Final Disposition:

Date Pol Action: 11/24/2008

Date Pros Action:
Date Reactivated:

***NARRATIVE***

On 11-21-08 at approx 0213 hrs, Officer Pollard was dispatched on a domestic abuse call that happened Monday 11-17-08 at approx 2100-2200 hrs. Pollard met Wendy Daniels at [redacted] who said her [redacted]. Wendy said she and Derrick were [redacted] when Derrick [redacted] [redacted] Wendy said she [redacted] Wendy said she went to the ground and Derrick began [redacted] Wendy sought medical treatment at Reynolds, she signed to press charges was given a witness complaint form and domestic abuse sheet. Wendy was told to follow up at the county courthouse.

Lawton Police records ran a triple I of Derrick Daniels for prior domestic abuse and his [redacted] Pictures was taken of the injuries by Officer Carter.

SW-7000

***CASE MGMT NARRATIVE***

Reference Case 2008-12244, Victim Wendy Daniels, Domestic Abuse and AWDW

On 11-21-2008, Det. Peralta was assigned this case and he immediately went Reynolds Army Hospital to make contact with Mrs. Wendy Daniels however she was discharged prior to my arrival, and she was located at the Fort Sill Advocacy office. I them made contact with Mrs. Daniels and she stated that it was [redacted] and not Monday as previously reported that she was assaulted by her husband. Mrs. Daniels stated that she reached over to give [redacted] Mrs. Daniels [redacted] her husband [redacted] Mrs. Daniels then got upset and [redacted] in the face, and a physical altercation ensued. Mrs. [redacted] I then made contact with Mr. Daniels at his battalion headquarters where LTC Talcott assisted us and provided a room to interview Mr. Daniels. Mr. Daniels who is an active duty Captain in the US Army stated after his Miranda warning rights were read that he and his wife are having problems, and [redacted] Mr. Daniels also stated that [redacted] and his wife "Wendy", is a good women but that he need some time apart. During this investigation I was accompanied by Special Agent David L. Spiegel from the Fort Sill Criminal Investigation Command. Mrs. April Plumley also assisted from the Family advocacy office on Fort Sill. LTC Talcott who is the Battalion Commander from Captain Daniels command stated that he will place a military protective order on Captain Daniel restraining him from visiting his wife. Mrs. Daniels then came to the Lawton Police Department with Mrs. Plumley and was given a citizens statement and instructed on how to

Attachment D

.TEMENT FOR CPT DANIELS GENERAL OFFICER LETTER OF REPRIMAND JANUARY 2009

To whom it may concern

I was never impregnated by CPT Daniels. First he said he met someone else. To get him back I said I was pregnant. He then told me he didn't have another woman, he felt guilty about being with me. The second time we broke off the relationship, he said he wanted to work things out with his wife and he would support me with the pregnancy.

After he confessed to his wife about our relationship, she called me. I told her CPT Daniels has had several affairs on her and has a woman pregnant named Tenisha (one of my friend's name) in Lawton as well as me. I told her these things to damage their relationship. CPT Daniels asked me to tell his wife the truth, but I told him I would only do it if we could keep our relationship going. When he refused to come back to me, I went to his commander to get him in trouble. I wrote in a statement that I was pregnant with twins and he had several affairs throughout his marriage. I also used the Tenisha story to reinforce this. I also added that Tenisha was married to a soldier who was deployed. All of these things are untrue.

After the second breakup, CPT Daniels only contacted me to ask about the pregnancy. I told him if he couldn't be with me, he couldn't have anything to do with the process. When it came close to the due date, I told him I had a miscarriage. I never produced any documentation to prove the pregnancy, doctor appointments or medical records to CPT Daniels.

Tara Brown

Tara Brown

Redacted PII

Signed before me notary public on April 4th 2011

Toni Rae Ward

TONI RAE WARD
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 8-28-2014

Attachment E

**CHRONOLOGICAL RECORD OF MEDICAL CARE**

**l, OK** **Clinic: Mental Health** **Provider: DODD, DAVID S**

l 14 Feb 2009 0757 CST

The Patient is a 36 year old male.
He reported: Encounter Background Information: Partial implementation of a suicide plan to hang self details listed below.

A/P Written by DODD, DAVID S @ 14 Feb 2009 0800 CST
1. **DEPRESSION**
Procedure(s): -Psychiatric Therapy Indiv By A Physician Approx 75-80 Min x 1
2. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
3. **SUICIDE ATTEMPT - HANGING**: acting on plan but did not make final jump off table.

**Disposition** Written by DODD, DAVID S @ 14 Feb 2009 0800 CST
**Admitted** - Comments:
**Follow up:** as needed . - Comments: see above for details. admitted to red river.

120 minutes face-to-face/floor time..

**Note** Written by DODD, DAVID S @ 14 Feb 2009 0743 CST
Name: Daniels, Derrick 20/ 9482

Identifying information: Service member is a 36-year-old like to be married African American male with the rank of captain.

Reason for referral: Service member was seen of the Reynolds Army Community Hospital emergency room at the request of Dr. Patrick after the service member was brought in for attempting to hang himself in his garage.

Details of the event: Service member has had a chronic history of behavior and relationship problems over the last several months and during this time there is the issue of domestic violence and now a no contact order between him and his spouse. They have been living in separate locations in the service member has been seeking services at the community mental Health Center since August of 2008. During that time he saw several different providers his current provider is Dr. Brandon, PhD, psychologist. He's been seen in the posterior 0.1 the clinical the last month and is also seeing Mr. McKeever and his psychiatrist is Dr. Tomlinson. He reports that approximately 2 weeks ago he was placed on Zoloft 100 mg. Around the same time he was given a letter of reprimand by the general of the post due to his behavior. This seems to have been a critical moment in his recent mental health decline as he reports that as he read the letter he decided that this person that they were describing on paper really was not who he wanted to be/or was. And yet in the letter of reprimand he realized that that would probably result in a secondary action which would force him out of the military his hope for the future started to decline at the same time his desire to talk to his wife was not allowed because of the no contact order and he was perceived by others as a substandard and soldier and despicable person by his report. He attempted to seek legal counsel as his trial defense calling the attorney hoping that there be some way to share his side of the story so he was not kicked out of the military which also he perceives as his primary way of life. He never adjusted well when he was a child as a single child at the form of a lot of siblings socially isolated but that the military which gave him away out of his current project his life. He joined the Army as enlisted and went to Greene Nicole did eventually became an officer is been deployed twice an L4-L5 and 06 to know 7 both to Iraq first appointment was to check crit and Bock about and the second one was to the Baghdad in her body area. He was in command 2 times during this period but felt disillusioned by what he was not able to accomplish versus what he was able to accomplish.

He used to drink alcohol heavily but states he stopped drinking entirely 2 weeks ago when he was prescribed Zoloft it's uncertain to this provider he's been in the ASAP program. Service member denies a lot of PTSD-type symptoms such as nightmares and intrusive recollections and thoughts. He does remember being somewhat depressed with the loss to soldiers and was not able to make a connection with his soldiers.

during the 2 weeks he was unable contact his attorney and within the last week he is becoming more and more depressed thinking that life is over so as of the day of the 12th on the evening he went to Wal-Mart but a 14 foot

**Name/SSN: DANIELS, DERRICK TORAIN(** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 2( Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAIN( Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

13 Feb 2009 2315

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DODD, DAVID S

rope made and a salad at 100 around a steel beam in the garage of his wife he went to her house opened the garage door with his car door open her went in without disturbing his wife" around the steel beam in the garage. He got up on the table preparing to jump but in the final moments of contemplating whether he should do this he thought he might go to hell if he did this and decided he should jump he called his mother and father in South Carolina did not tell them to details but said that he was feeling like he didn't want to live they talk to him for an hour to on the phone and eventually he taxed his wife that he had been at the house and was to hang himself at that point in midafternoon she called the unit the unit contacted service member brought into the ER this evening

Previous suicide attempts: None by his report

Is not intoxicated at the time

Educational he has a bachelors degree in business management and a Masters degree in business the leadership. He reports that his performance as in school stopped up to the was not specific

RISK ASSESSMENT: Service members at high risk to harm himself and in the imminent future as his time in the military is coming to an end and or likely is coming to an end. When asked if he could kill himself again what he said "I don't know" his personality and view of himself his informed around the military and yet his impulse control and judgment has been quite poor as the unit reports that he said several extramarital relationships in the domestic assault with his wife as other issues as well that the behavioral problems and yet when he goes to work they say he is quite effective service loss of this note to her position as an officer and over for 17 years has damaged his persons self-concept. In addition to this his loss of focus progressive depression his alcohol consumption and his distorted thinking make his likelihood of acting quite high.

PLAN: Service member agreed to go to Red River psychiatric hospital versus being emergency order of detention to the local hospital which this provider stated he would do if needed to ensure his safety. Service member felt that it would be more beneficial for him to go to a treatment facility where he could stay for a longer period of time. Discussed this with his tying commander LTC Talcott, Dr. Patrick ER MD, and the Red River intake worker. Red River accepted him and there was a nurse to nurse discussion to transfer information re his vital signs, etc. SM will f/u with dr. brandon upon discharge from the hospital.

Signed By DODD, DAVID S (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 14 Feb 2009 0801

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20 Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE STANDARD FORM 600 (RE

000175

Attachment F

**RED RIVER HOSPITAL**

**DISCHARGE SUMMARY**

**PATIENT NAME:** DANIELS, DERRICK
**PATIENT ID:** Redacted PII
**DATE OF ADMISSION:** 2/14/2009
**DATE OF DISCHARGE:** 2/24/2009
**ATTENDING PHYSICIAN:** BRYAN WIECK, M.D.
**UNIT:** ADULT

RED RIVER HOSPITAL
This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of this person to whom it pertains or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

**ADMISSION DIAGNOSIS:**

**AXIS I:**
Major depressive disorder, recurrent, severe addiction.

**AXIS II:**
Deferred.

**AXIS III:**
None.

**AXIS IV:**
Psychosocial stressors, severe.

**AXIS V:**
Global assessment of functioning: Current is 30, highest in the past year is 75.

**DISCHARGE DIAGNOSES:**

**AXIS I:**
Major depressive disorder, recurrent and severe.

**AXIS II:**
None.

**AXIS III:**
None.

**AXIS IV:**
Psychosocial stressors, severe.

**AXIS V:**
Global Assessment of Functioning current 50, highest in the past year is 75.

**PHYSICAL ON ADMISSION:**
The patient's height 5 feet 9 inches, weight 210 pounds, blood pressure 117/84, pulse 73, respirations 18.

**ADMISSION LABORATORY:**
CBC with RBC 4.58 which is low, hematocrit 41.2 which is low, monocyte 9.3 which is elevated, urinalysis within normal limits. Survey 14 with anion gap of 9 which is slightly low, urine drug screen negative. TSH within normal range. RPR nonreactive, CMG Amplified D testing negative.

**PATIENT NAME:** DANIELS, DERRICK
**PATIENT ID:** Redacted PII
**DATE OF ADMISSION:** 2/14/2009
**DATE OF DISCHARGE:** 2/24/2009

**HOSPITAL COURSE:**
A 36-year-old male admitted to the adult inpatient program with chief complaint of 'I am trying to hang myself.' The patient's active duty stationed at Lawton Army base in Oklahoma, Fort Sill. It has been found in the past the patient has been drinking excessively to deal with stress. The patient depressed and increasingly depressed since November 2008. He was charged with adultery and he is separated from his wife, anticipated might reconcile or a very possible divorce although he would like things to work out. He has a 14-year old army career, he knows nothing else. Depression, depressed mood, energy, irritability, poor concentration, poor sleep, isolation, helplessness, thoughts of suicide, he purchased a rope and was beginning the process to hang himself and feared that he will go to hell and stopped and called his command. Initially in the unit, he was alert and oriented x4. His memory is intact. His mood depressed. Affect dysphoric. Thought process is well organized, recognized the need for treatment. Treatment plan included individual and group therapy and medication management. The patient attended groups and therapies on the unit. He worked on mood improvement skills. The patient worked on ways to decrease anxiety and improve his mood. The patient worked on building strength and motivation within himself and improves his self-esteem, self-worth, worked on relaxation techniques and worked on communication skills. The patient was attentive and contributory and participatory in the program, he opened up. He did good work on concentrating on himself and stop distancing. The patient was involved patient worked on positive thoughts and establishing those. Treatment went well improving himself on communication and healthy ways to cope and handle his emotions and self empowerment. Overall the patient is doing well. He tolerates medications without any side effects. His mood improved. His affect improved. He is discharged in stable condition with no suicidal or homicidal ideation.

**DISCHARGE MEDICATIONS:**
Zoloft 100 mg daily, Ambien 10 mg at bedtime p.r.n. for sleep.

**DISCHARGE PLAN:**
To follow up with Fort Sill Community Mental Health immediately upon arrival to base. Primary care physician as needed for physical health care needs. The patient's military services, instructed to contact Dr. Wieck at Red River Hospital for any questions, concerns, or problems.

Kristi Curd, RN

Bryan Wieck, M.D.

JOB ID: 702992
DD: 03/22/2009
DT: 03/23/2009

RED RIVER HOSPITAL
This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of this person to whom it pertains or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

Attachment G

t he talked to COL Williams on his last deployment. He had not n or seen him after the deployment. During deployment he contacted him for a letter for his initiation of elimination rebuttals. He contacted COL Williams prior this hearing to ask him if he could be a witness on his behalf.

The Defense stated that his elimination was initiated when he got back from deployment and was assigned to Fort Stewart.

The President requested a time frame.

The Defense stated that the elimination action was initiated in 2011.

The Government called Dr. Parodi.

Dr. Parodi was duly sworn in.

Dr. Ana L. Parodi, MD, Retired COL, US Army, was called as a witness for the Government, was sworn and testified in substance as follows:

Direct Examination

My name is Dr. Ana L. Parodi, MD, Retired COL. My duty position is Chief of MEB-Behavioral Health. I completed medical school. I did an internship, then I did my residency for four years and additional years in psychiatry. Then I went to the military for 20 years. I retired in 2010. I have evaluated and treated Soldiers that need to be cleared for deployment. I have been involved in that and in the SRC process. In 2003, I was involved in doing fitness for duty, MEBs, and chapter evaluations. I am currently in a position where I provide the same process for the Medical Boards. Yes, I have reviewed CPT Daniels' medical records. I don't have them in front of me. But I reviewed the packet that you provided me and I also reviewed the electronic record. Individuals who have PTSD often have other conditions. I am not saying this Soldier does. Individuals who have behavioral health conditions, especially if they have more than one condition, have the risk of having aggressive acts. Violence is different from being aggressive. Those who are violent happen to have behavioral health conditions. Generally, what we are looking at is personality style on how you are going to respond to different stressors. Generally that is shaped by your childhood. I don't know the technical definition of violence from a behavioral health point of view. From a behavioral health point of view, I called that I violent act because of the intensity, the emotions involved and the physical contact. I would consider this violent act more of a personality style than PTSD. And it does not have to be PTSD. It can be a significant depression, or an anxiety disorder, that is going to have the same answer. Mainly, if he were to describe what is called associative episodes or flash backs, then I might consider he was not responsible for what was going on. He is not describing that, so that makes me think this is more of a personality trait than an emotional condition at that moment.

No further questions by the Government.

Attachment H

lds. I was not living with my wife at that time. I continued to support ... the financial needs of my wife. The financial difficulties did not make me fail my financial obligations. It was the time to reflect, to understand where to go further in my career. There were things in that GOMOR that were unsubstantiated. My plan of action at that time was to try outperforming the GOMOR. I completed my mission and started my first deployment. My previous MOS was Armor. I came in as Field Artillery. I switched because I love tanks. As a tanker, it was the battlefield and the power that it would bring. I wanted to do that as an officer. For the past five years, from the situation with my wife that put me into alcoholism, put me into the extra marital affair, everything was a waste of time. The time that I had in combat was always dedicated to Soldiers and I did not dedicate time for myself. After going to a rehabilitative process on my own, I knew that time was always an issue for combat operations. As a company commander, I have administered a letter of reprimand for adultery to an E7. I have never administered an Article 15. There was an issue with a Soldier and his wife that escalated and we moved the Soldier to the barracks. The Soldier went through a rehabilitative process and reunited with his spouse, but not anything with an Article 15. I don't hold any bad feelings to the officer that gave me the GOMOR. He did the right thing. What I wished at that time was to establish a personal, social relationship with my command like I did before. The previous commanders did not testify because they liked me because I am a good guy. They saw me coming out from austere situations. Going through the process, I see where the Army has got to now. With 14 years in combat, I welcome resiliency programs, recreational, counseling. I would welcome the opportunity to lead Soldiers again. To serve Soldiers to make sure what happened to me does not happen to them. I think this whole process is a testimony of my character, of how I am as an individual. I first enlisted in the Army in 1990. I wanted to get commissioned as an officer. I only enlisted for two years. I was not ready for school. I did not have a real high ASVAB or STT. So I went to apply to the US Army Prep School, but was denied. It hurt my feelings. The problem was I knew I was not smart enough. So I studied at night. I took college courses. I suited ASVAB to raise my ASVAB score. During my time of service, I was not able to go to prep school, so I applied for the scholarship. I wanted to be an Armor officer. It took me five years to get my commission. I made thousands of mistakes, but I also believe that I went on a journey to prove I can still serve and learn from those mistakes. If the board decides to retain me, I have a plan for my career. My plan is to continue and stay in operations. It is my primarily goal. I love operations. I will welcome a field grade. But I also will welcome anything for Soldier services, resiliency, a way ahead. We don't go to war every day. Ten years of war against terrorism is something new. We have to apply a new way to do things. I think I have a way ahead for future operations and Soldiers.

No further questions by the Defense.

Cross Examination

It was not really my wife not giving me what I needed, it was me giving myself what I needed. My love for my wife never changed. My love for the Army never changed. It was taken that time. To continue to lead the Soldiers, I did not have time for myself to face my issues and problems. I did it in a very unbecoming manner in alcoholic abuse and the

adulterous affair. I did not allow myself the proper time to deal with my issues. It was not because of my wife, it was because of me. Mrs. Daniels became angry because of Mrs. Brown's lies. She was upset about the affair with Mrs. Brown. She was also upset about the allegations Mrs. Brown stated about the multiple affairs and the Soldier's wife that was pregnant. I hit her because she was coming towards me, but also because I was angry because she did not believe me. I am not claiming self-defense. I hit her on the right side of the ear. I am not sure if it actually caused a bruise. Sorry, it should be I struck her with my right hand on her left ear. I can't remember a bruise on her face. I am not sure where those scratches were from. I am not sure of the knee bruise.

Cross Examination

My peers were judgmental and that gave me stress. I expressed in the memo an inferiority complex due to race. The optempo gave me stress. The commanders, not my superiors, but the other company commanders gave me stress. There were small things that led me to stress. I did not feel I was cheated out of an award on my third deployment because of the allegations of the domestic violence. The gratification of the people who I worked for is my award. I don't need a medal on my chest. My marital problems led me to noncompliance to AR 600-9. I was not motivated with the thing going on with the investigation. I drank a lot of alcohol. I did not have any problem with the AWCP prior the incident. I was aware of the family advocacy, chaplain, social workers, etc., but I did not utilize the resources prior to assaulting my wife because I am human. Coming from a combat environment where so much is done, you come to realize you sacrifice so much. Sometimes you feel you are immune to a lot of things. Most times the commanders feel those types of programs are not for us, they are for the Soldiers. I am not the only one that feels that way, not being able to come forward, afraid of what people might say or people might do. If I were to command again, I would give an Article 15 for domestic violence or adultery very easy. The situation I have been gone through makes me more fair and impartial to deal with Soldiers with ease. I would be able to give an Article 15 to an E4 or below, where it will make them unable to reenlist with the first domestic violence offense for a lot of MOSs. I think each commander needs to look at each case. You need to look at each individual on a case by case basis. I don't have an issue in doing that. I would have expected an Article 15 if I were an enlisted at that time. But I would hear other circumstances surrounding that as well; what led to the domestic violence? How it impacted the Soldier? When did he join the Army? I understand the three pillars of ROTC: physical, emotional, and psychological. I think the dynamic is different, we talked about Soldiers as an E4. Commanders are held to higher standard because they command E4s. At that time, I did not exhibit emotional stability and that led to the assault. Led to marital problems, which led me to noncompliance with the AWCP. As an officer, you should be physically in compliance with the AWCP. At times we want to judge people based on individual circumstances. When I saw what the problem was, everything fell back in place. I have heard of that I am a Soldier 24/7. My personal life did influence my professional life. It will depend if that Soldier should stay in the Army. It depends if he was given a second chance, how he would work with it? What would be his plan of action? If the Soldier would see me for Article 15s, I will ask them, if you do this, what is the plan of action to overcome the circumstances? I could handle deployment stress again. Each

Attachment I

MARKS PSYCHIATRY
& FORENSIC SERVICES

Tracey I. Marks, MD

4/30/12

I saw Mr. Derrick Daniels today for a consultation.

My diagnoses -

1) ~~Ha~~ History of major depression in remission
2) History of alcohol abuse - not current
3) Possible dysthymia

T Marks, MD

3975 ROSWELL ROAD, ATLANTA, GA 30342 PH 404 327 5194 · www.markspsychiatry.com

Progress Note

Marks Psychiatry
Enhancing Lives One Mind at a Time

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067 fax

Name: Derrick Daniels
Date: 5/17/12
90807

Has petition to "move forward" next wk.
↳ not to be discharged.

Childhood

Grew up in Jaken GA. on farm.
Only child → mom 39, Dad 37. Not many people around.
Mom schoolteacher. Didn't see physical affection btw parents.
Parents went to separate churches.
Did farm work & yard work for money.
Didn't have much of a social life. He lived far from school unli[ke]
classmates. Couldn't participate in after school activities
2° 2hr bus ride.
Didn't feel close to parents. Didn't do things as a family.
His highlight of the summer was vacation bible school.
Went to army p̄ H.S. x 3 yrs, then college on scholarship, then
return to army.
Joined army to rebel against Dad's plans, but liked it.
1st deployment 2003. → this was beginning of things going downward.
Witnessed senseless deaths followed by multiple moves
Was bothered that a supervisor wouldn't take the time to write his eval
MSE - ok mood ∅ psychosis

Imp: h/o Depression in remission
h/o EtOH abuse - remote.
Current state - general discontentment with work-related issues
Plan - No treatment needed
Return as needed.

Signature: [signature]

Name printed: Tracey Marks, MD

Progress Note

Marks Psychiatry
Enhancing Lives One Mind at a Time

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067 fax

Name: Derrick Daniels
Date: 4/30/12
90801 -
Age 39

cc I want a proper diagnosis
17 yr army vet. 3 tours - after retured from 2nd tour "not r...
Apr 2008 - was in Bagdad - lost a lot of soldiers
returned felt used
blamed self for a lot of things
Felt purposeless → ~~disso~~ hard to transition to doing office work

Was easily aggravated
consequences - domestic violence - fought c̄ wife over affair
reported to military
Got a reprimand in 2009
- affair
- alcohol abuse
↳ daily drinking beer during week at least 2
weekends - 4 drinks hard Etoh

Jan '09 - went to Mental Heath Hosp. in TX p̄ suicide attempt
Tried to hang self in garage. Planned for few days
bought rope from Walmart - put noose around neck, step...
on table - couldnt do it. Returned home & called parent...
Suggested he go to hospital (~~they~~ wife notified his "leadership")
He wanted to see that wife was concerned.
In hosp x 10 days → got Zoloft. Continued for "a while" as out p... → 2 refills
Returned to Ft Seal → 2 group sessions / wk for anger mgm...
~~Stop~~ x la mon
↳ Stopped drinking p̄ this hosp. → now occasional → maybe 1x w...

Signature: [signature]

Name printed: Tracey Marks, MD

Progress Note

Marks Psychiatry
Enhancing Lives One Mind at a Time

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067 fax

Name: Derrick Daniels
Date: 4/30/12

Initial eval cont.

Got a part-time job as nursing assistant in a care home. x 4 [illegible]
Got it to feel needed.
Got deployed to Iraq - felt with the previous deployment people died senselessly. Wanted some closure on this issue.
Felt c̄ 3rd deployment had chance to redeem given more stable environment. Not sure if he got closure.
Returned Dec '10. Now at Ft Stewart training reservists.
Current issues - doesn't feel army understood what he ~~wasn't~~ was going thr[illegible]
felt he was just a number.
Current sx.
Feels he's going thru the motions
Dissatified c̄ current job - they are resistent to change
Doesn't feel appreciated - No matter what he does, it's never enough
- No mentorship
Sleep - "good" ~~5~~-6 typical for him. Will nap @ lunch esp p̄ heavy meal
Energy - "ok"
Some trouble concentrating when bored. Can focus ~~ed~~ when passionate
Thinks there is cultural bias.

Joined army age 17
Planning to get divorce.
Has upcoming board hearing re - trying to kick him out of milita[illegible]
MSE good mood, nl speech ∅ psychosis, ∅ SI, ∅ HI ∅ cognitive impairm[illegible]
Imp - h/o major depression in remission
h/o EtOH abuse
- not clear if he had PTSD in past - not a current issue

Plan - Pt to retur[illegible] 1-2 wks to discuss other t[illegible]

Signature: [illegible]
Name printed: Tracey Marks, MD



**DEPARTMENT OF THE ARMY**
**ARMY BOARD FOR CORRECTION OF MILITARY RECORDS**
**251 18TH STREET SOUTH, SUITE 385**
**ARLINGTON, VA 22202-3531**

December 07, 2016

Mr. Derrick T Daniels
Redacted PII

Dear Mr. Daniels:

Pursuant to your request for reconsideration of ABCMR Docket Number AR20140008998, the Army Board for Correction of Military Records (ABCMR) reconsidered your case on December 6, 2016. I regret to inform you that the Board denied your request for relief. A copy of the Board's Record of Proceedings which explains the Board's reasons for denying your request is enclosed. This decision in your case is final.

Paragraph 2-15b of Army Regulation 15-185 governs requests for reconsideration by the ABCMR. This regulation allows an applicant to request reconsideration of an earlier ABCMR decision only if the request is received within one year of the original decision and it has not already been reconsidered.

Since your request has now been reconsidered, you are not eligible for further reconsideration of this same matter by this Board. However, you have the option to seek relief in a court of appropriate jurisdiction.

A copy of the Board's decision and proceedings have been furnished to the counsel you listed on your application, Col Robert S. Poydasheff, Post Office Box 348, Columbia GA 31902.

Sincerely,

Dennis W. Dingle
Director, Army Board for Correction
of Military Records

Enclosure

Printed on Recycled Paper



DEPARTMENT OF THE ARMY
ARMY BOARD FOR CORRECTION OF MILITARY RECORDS
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

SAMR-RBA

7 December 2016

MEMORANDUM FOR Army Review Boards Agency, Case Management Division, 251 18th Street South, Suite 385, Arlington, VA 22202-3531

SUBJECT: Army Board for Correction of Military Records Record of Proceedings for Daniels, Derrick T., SSN Redacted PII, AR20150012081

The application submitted by the individual concerned has been denied by the Army Board for Correction of Military Records.

Encl

DENNIS W. DINGLE
Director, Army Board for Correction of Military Records

CF:
( X ) OMPF

Printed on Recycled Paper

ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

RECORD OF PROCEEDINGS

IN THE CASE OF: DANIELS, DERRICK T.

BOARD DATE: DEC 0 6 2016

DOCKET NUMBER: AR20150012081

BOARD DETERMINATION/RECOMMENDATION:

The evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined that the overall merits of this case are insufficient as a basis to amend the decision of the ABCMR set forth in Docket Number AR20140008998, dated 7 April 2015.

CHAIRPERSON

I certify that herein is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in this case.

Enclosure 1

ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

RECORD OF PROCEEDINGS

IN THE CASE OF: DANIELS, DERRICK T.

BOARD DATE: DEC 06 2016

DOCKET NUMBER: AR20150012081

THE BOARD CONSIDERED THE FOLLOWING EVIDENCE:

1. Application for correction of military records (with supporting documents provided, if any).

2. Military Personnel Records and advisory opinions (if any).

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. The applicant requests reconsideration of his previous request for correction of his records by:

- removing the General Officer Memorandum of Reprimand (GOMOR) from his official military personnel file (OMPF)
- removing two referred Officer Evaluation Reports (OERs) from his OMPF with the periods declared non-rated time (hereafter referred to as the contested OERs)
- removing the Department of the Army Suitability Evaluation Board (DASEB) Record of Proceedings (ROP) from his OMPF
- voiding his discharge
- reinstating him to active duty
- promoting him to major (MAJ)/O-4 with a date of rank of 1 December 2008
- he also requests a personal hearing

2. The applicant states, in effect, he is providing a new argument that was not previously considered.

3. The applicant provides:

- a letter from his counsel
- DA Form 1574 (ROP by Investigating Officer (IO)/Board of Officers) with attachments, dated 24 November 2008

Enclosure 2

- two DA Forms 67-9 (OER) for the rated periods from 15 May 2008 through 30 September 2009
- three memoranda for record (MFR), dated between 15 December 2008 and 13 January 2009
- 42 pages of medical records, dated between 27 March and 1 May 2009; and one page, dated 8 January 2013
- DASEB ROP with cover letter, dated 13 January 2011
- a letter from his parents, dated 30 June 2011
- Board of Inquiry (BOI) Proceedings, dated 18 April 2012
- three pages of a Department of Veterans Affairs (VA) Rating Decision
- AR20140008998 ROP with cover letter

CONSIDERATION OF EVIDENCE:

1. Incorporated herein by reference are military records which were summarized in the previous consideration of the applicant's case by the Army Board for Correction of Military Records (ABCMR) in Docket Number AR20140008998 on 7 April 2015.

2. As a new argument the applicant states:

a. His previous request was denied but his primary basis for submission was not considered. His entire case directly hinges on the fact that he was not diagnosed with or treated for severe depression when symptoms were clearly present during his initial enrollment at the Fort Sill, OK, Behavioral Health (BH) Clinic in August 2008.

b. In his letter to the ABCMR, dated 20 May 2014, he stated, "I request reinstatement on Active Duty due to a misdiagnosis of severe depression" and "The symptoms of the affair, physical altercations, and weight gain were results of severe depression" and "If I was treated for severe depression in the beginning, these transgressions would never have happened." This is the basis of his claim. The AR20140008998 ROP stated, "He continues by stating he was misdiagnosed with severe depression when in fact he suffered from chronic post-traumatic stress disorder (PTSD)." That statement was not in his letter to the Board.

c. In the Discussion and Conclusion portion of the ROP it stated, "The applicant's contention that PTSD caused his misconduct has also been noted and appears to lack merit." The PTSD submission was deliberated and discredited during his BOI hearing. In his letter to the ABCMR, he stated, "Dr. D's disqualification of his PTSD diagnosis in his mental health records raises

concern on his entire military treatment process." It was only after the BOI findings that he was made aware of his severe depression by Dr. M that predates his affair, weight gain, and physical altercation with his spouse. If the BOI had the full understanding of his severe depression diagnosis, he would still be on active duty.

d. In the Consideration of Evidence portion of the ROP it stated, "On 8 January 2013, the VA diagnosed the applicant as suffering from PTSD." This statement is also untrue. In his letter to the ABCMR it stated, "This 40 year old veteran is seen in follow up for treatment of PTSD." The purpose of this visit to the VA psychiatrist was to document that he was mentally stable in maintaining his security clearance. After informing the doctor of his severe depression diagnosis, he stated that PTSD could stem from it. This visit was more of an observation rather than an evaluation. He submitted this record in order to establish that he is still fit to serve on active duty. This was not an attempt to establish a PTSD diagnosis as a basis for his submission.

e. After the DASEB denied his request to transfer the GOMOR to the restricted folder of his OMPF, he obtained an affidavit from Ms. TB. Before his resubmission, he was targeted for elimination. The BOI accepted the merit of Ms. TB's affidavit but since Dr. P discredited the PTSD diagnosis there were no other mitigating circumstances for the affair and altercation. Based on the evidence, the BOI recommended involuntary separation. This action prompted him to get a concrete diagnosis on his mental state of mind post his 2007 – 2008 deployment. After Dr. M's diagnosis, he was able to identify other symptoms of depression in his mental health records.

f. Dr. M was the only psychiatrist who probed his combat experiences in pinpointing the origin of his depression. She documented the affair and physical altercation resulted from his severe depression. A cross examination of Dr. M's documentation and the military mental health records will show a more shallow evaluation from the military psychiatrists. The symptoms of severe depression; however, are undeniably documented in his initial interview at the Fort Sill BH Clinic. For validation, he even documented the definition of severe depression and its signs and symptoms in his initial letter to the ABCMR. Three doctors and a mental health hospital, with no correspondence between them, either documented or testified under oath of signs of depression.

g. He and his lawyer carefully reviewed his previous letter to the ABCMR for clarity and strongly agreed a reasonable person would have understood the intent of the initial letter. It has literally taken him years of time, money, and tremendous effort in collecting documentation, mental evaluations, and legal

advice. He had hoped the Board would at least seek counsel from a compatible counterpart of Dr. M or contact her directly in determining a decision. Based on the evidence submitted and the complexity of his case, he and his lawyer both agreed his case should be carefully reconsidered. If he is granted a hearing at his own expense, he would be grateful in providing any further clarification in all matters considered. It is imperative that his burden is resolved in the most absolute manner.

3. In a letter, dated 28 July 2015, the applicant's counsel stated:

a. In reviewing the work up and decision rendered by the ABCMR [in the applicant's initial application], he noted a distinct error. He respectfully submits that the ABCMR completely overlooked or missed the crux of the applicant's petition. The error was the ABCMR failed to consider the applicant's misdiagnosis of severe depression. He should have been diagnosed with PTSD.

b. The entire file contains supporting documents highlighting the correct diagnosis by Dr. M, Dr. P's BOI testimony, and the Red River Mental Hospital diagnosis. Even the VA used this evidence to support his percentage (%) of disability and found it vital. Nowhere in the findings has the Board considered these crucial documents and they are in his files. Therefore, they respectfully request reconsideration because it is clear the evidence stated above was not considered, mentioned, or commented upon.

4. Having had prior enlisted service, the applicant was appointed as a second lieutenant (2LT) Reserve commissioned officer on 12 December 1998 and entered active duty on 19 March 1999. He held area of concentration (AOC) 19A (Armor Officer, General). On 1 October 2002, he was promoted to captain (CPT)/O-3 in the Regular Army.

5. He served in Iraq in support of Operation Iraqi Freedom (OIF) from:

- 7 February 2004 to 6 February 2005
- 20 August 2006 to 20 November 2007

6. On 17 May 2008, he was assigned to A Battery, 1st Battalion (BN), 30th Field Artillery (FA) Regiment, Fort Sill, as a senior instructor/writer, Combined Arms Division (CAD), U.S. Army FA School (USAFAS).

7. On 21 November 2008, the Lawton Police Department (LPD), Lawton, OK, received a domestic abuse complaint from the applicant's spouse.

a. His spouse stated, in part, he had attacked her at their home on 17 November 2008 when they were arguing. He pushed her, hit her with a plastic baton, and dragged her across the ground after she fell down. She was treated at the Reynolds Army Community Hospital (RACH), Fort Sill, and then sought assistance from the Fort Sill Family Advocacy Office.

b. She stated she had reached over to give the applicant a good night kiss when she smelled another woman's scent on his face. He admitted to having an affair, she got upset and slapped him in the face, and a physical altercation ensued.

c. The responding officer contacted the applicant's BN commander (CDR) and the applicant was interviewed. After being read his Miranda warning rights, the applicant stated he and his wife were having problems, he had been having affairs with several other women, and his wife was a good woman but he needed some time apart (emphasis added).

d. During the investigation, he was accompanied by Special Agent DLS from the Fort Sill Criminal Investigation Command (CID). The applicant's BN CDR, Lieutenant Colonel (LTC) CT, was also present and stated he would place a military protective order on the applicant restraining him from visiting his wife. Included with the report were photographs of the applicant's spouse documenting the injuries she incurred during the physical altercation.

8. On 24 November 2008, an IO was appointed to conduct an AR 15-6 investigation into the facts and circumstances surrounding the allegations that he assaulted his spouse in a domestic dispute and caused her injuries while fighting with her and whether he had violated Article 128 (Assault), Article 134 (Adultery), and Article 133 (Conduct Unbecoming an Officer and Gentleman) of the Uniform Code of Military Justice (UCMJ).

9. After completing the investigation, in an MFR, dated 15 December 2008, the IO stated, in part:

a. Violation of Article 128 was substantiated. He found the applicant did commit assault by intentionally inflicting bodily harm to his spouse. According to statements given to the LPD detective by both the applicant and his spouse, he did strike her in anger during an altercation at their home. Photographic evidence from his spouse's visit to the RACH emergency room revealed bruises she sustained during the fight. Both parties confirmed in their verbal statements to the detective that the applicant's inappropriate sexual relationships with other women caused the fight.

b. Violation of Article 134 was substantiated. He found the applicant did, by his own admission, wrongfully have sexually active relationships with other women while he was married. In a verbal statement to the LPD detective, the applicant admitted to this and stated that his spouse possessed physical evidence consisting of email and photos that contained content confirming her suspicion that he was having adulterous affairs with other women. It was his opinion that the applicant's admission of guilt was sufficient evidence to substantiate this violation.

c. Violation of Article 133 was substantiated. Given that the applicant did violate Articles 128 and 134, it was clear that he acted in a dishonorable manner and compromised his character as an officer and gentleman. The Manual for Courts Martial clearly states that an officer who violates other articles of the UCMJ also violates this article.

d. He noted the applicant had a history of mental health problems and had been seeking help. According to his spouse, the applicant's behavior changed significantly after he returned home from a deployment to Iraq in 2008. She stated he drank heavily and often became angry. She asked him to seek help with mental health physicians which he did in July 2008. She stated he was also referred to the Army Substance Abuse Program (ASAP) and that she no longer felt the applicant was a threat to her.

e. He recommended the applicant receive a GOMOR, that he be removed from any duties involving officer instruction and reassigned to a position of lesser influence, that he continue to seek professional help through Family Advocacy and the chaplain; including anger management, marriage counseling, and that the no contact order between him and his spouse be lifted.

10. The DA Form 1574, shows the BN CDR approved the AR 15-6 findings and recommendations with exceptions and stated he concurred with recommending a GOMOR for the applicant; however, in light of his ongoing counseling and medical treatment, he was convinced that his continuing to be active teaching was a good thing. He had seen no dysfunction in his performance and believed the "outlet" was a positive part of his treatment. He recommended he continue to work and train LTs in the basic officer leader course.

11. In an MFR, dated 17 December 2008, the BN CDR, LTC CT stated, in part:

a. Additional information into the AR 15-6 investigation of the applicant:

- he had two deployments to Iraq, one for 12 months and the second for 15 months; both units were out of Germany
- he redeployed in November 2007 and arrived to Fort Sill in April 2008; his spouse was already at Fort Sill and they did not go through any reintegration training in Germany
- June 2008, he self-referred to ASAP for drinking problems; his spouse recommended the treatment and he agreed; he attended Alcoholics Anonymous meetings since June and after recent issues attended them once a week since November
- June 2008, additionally sought mental health treatments for drinking and emotional outbursts once a month; he was still in counseling once a month
- in light of the current issues, he had an appointment for a psychiatric evaluation with Dr. S on 22 December 2008 and had been enrolled in the Post Deployment Clinic with his first counseling session on 29 December 2008
- the applicant had two meetings with Family Advocacy in December 2008; he rejoined his church and attended services twice a week

b. The city of Lawton and Comanche County Courts were continuing to prosecute the case against the applicant, even after his spouse dropped the charges; his court hearing was scheduled for 26 January 2009. His no-contact order with his spouse by the County and the 30 FA BN CDR remained in effect.

12. On 29 January 2009, the applicant was issued the GOMOR by Major General (MG) PMV, Commanding General (CG), U.S. Army FA Center and Fort Sill. MG PMV stated, in part:

a. He was hereby reprimanded for domestic assault and battery; for beating, choking, and threatening his spouse; for ongoing multiple adulterous affairs with women including one married to a deployed Soldier; and for conduct unbecoming an officer and gentleman.

b. On 16 November 2008, he had a sexual encounter with a woman other than his spouse, returned home, and went to bed. His spouse woke him up when she realized he smelled of the other woman. He had admitted to his spouse that he was having an affair, had just returned from being with her, confirmed her suspicions based upon emails she read, and then engaged in a fight with his spouse. He attacked her by hitting her with his hands, then with a plastic baton on her face and head to the brink of unconsciousness, and leaving her with bruises still visible 5 days later. When she fell, he dragged her across

the floor and choked her, scratching her on her neck. He had verbally threatened her to the point that she feared for her life.

c. He later explained to his spouse that he met the other woman through an online website and admitted to the police that he had engaged in affairs with several other women. His spouse talked to one of the women who revealed his other affairs to include impregnating the spouse of a deployed Soldier.

d. He had admitted that he was the father of twins with the woman he met on the website and with whom he began a sexual relationship in June 2008. He continued the adulterous sexual relationship on a daily basis before and after morning physical training (PT), on lunch breaks, and anytime he did not have to work. He had admitted to her that he had several other affairs during his marriage including with another woman whom he admitted he also impregnated.

e. His behavior was repugnant. He (the applicant) expected the Officers and Soldiers that he trained and led to maintain the highest standards of duty, respect, honor, and integrity, and he must hold himself to the same standards as the example. He violated the Army leader values with his actions over many months. His actions indicated a lack of judgment in his professional and personal life.

f. The reprimand was imposed as an administrative measure under the provisions of AR 600-37 (Unfavorable Information) and not as punishment under Article 15, UCMJ. He was considering filing the GOMOR in the applicant's OMPF but would consider any statements/rebuttal he submitted and the recommendations of his chain of command prior to making the filing decision.

13. In a six-page statement dated, 5 March 2009, the applicant stated, in part:

a. He accepted full responsibility for his actions for the past several months. He had not lived up to the Army's expectations or his. He did assault his spouse and he did have an affair with Ms. TB for several months. He deeply regretted the decisions he made but the current picture depicted by the investigation was truly not who he was and the actual events during the assault did not occur as detailed during the investigation.

b. He detailed his version of the events that occurred between him and his spouse on the day of the altercation but disputed some of the facts of the case. He discussed his upbringing, his accomplishments throughout his military career, his experience during his deployments, and how his inferiority complex plagued him throughout his command.

c. He became extremely depressed, felt cheated, became frustrated about his life, began to hate some of his egotistical peers, and started not to trust his leaders. He started drinking heavily after the deployment and would have inappropriate conversations with women online because he enjoyed it.

d. He would constantly drink, yell, and break items in the house, thus his spouse had him self-admit into mental health and ASAP in August [2008]. He was embarrassed, felt he was going to be labeled, and was not completely truthful with his counselors about his true problems. In an effort to stop his affair, he told Ms. TB things about past affairs that were not true. However, he continued to see her especially when he became depressed about his marriage and profession. In addition, he only admitted to CID about one affair and not several as depicted in the investigation. He was continuing his treatment in the Post Deployment Clinic and was still doing everything to find his way again. He asked for another opportunity to prove himself.

14. On 26 March 2009, after considering the chain of command's recommendations to file GOMOR in the applicant's OMPF and the applicant's response, MG PMV directed the GOMOR be filed in his OMPF. The GOMOR is filed in the performance folder of his OMPF.

15. The applicant provides a medical record, dated 27 March 2009, showing he was seen on that date at the Psychiatry Clinic, RACH, for prescription refills.

a. The treating physician noted a long list of medical problems to include adjustment disorder with depressed mood, anxiety disorder not otherwise specified (NOS), and depression.

b. The psychiatric examination revealed his appearance was normal, behavior demonstrated no abnormalities, attitude was not abnormal, thought content and thought process were not impaired, and no multiple distinct and complex personalities were observed.

16. He provides a medical record, also dated 27 March 2009, showing he was seen on that date at the Mental Health Clinic, RACH, for an unscheduled visit for individual therapy.

a. The treating physician noted, in part, the applicant was awaiting disciplinary action from his command. His depression was mild at that time; he had no sleep complaints and normal enjoyment of activities; no abnormal thoughts or sexual behavior complaints were reported. He felt he was coping well with the pressures of waiting for the outcome of the disciplinary action and

stated that he felt he was prepared and would be able to handle the decision regardless of which way it went. He stated that during his tour in Iraq and upon his return to Germany, he felt as though he was under a great deal of stress. Upon arriving at Fort Sill, he still felt as though there was a lot of tension and pressure on him and he had difficulty adjusting to the new requirements.

b. The psychiatric examination revealed his mood was concerned, affect was constricted, behavior demonstrated no abnormalities, attitude was not abnormal, thought content revealed no abnormalities, and thought processes were not impaired. He had no suicidal or homicidal tendencies.

17. He provides additional medical records, dated between 30 March and 1 May 2009, showing he was seen at the Mental Health Clinic, RACH, on various occasions for treatment of his adjustment disorder with anxiety NOS and depressed mood.

18. The applicant was selected for promotion to MAJ by the Fiscal Year 2008 (FY08) MAJ Promotion Selection Board (PSB).

19. In May 2009, the applicant received the first contested OER, a change of rater OER covering 11 months of rated time for the period 15 May 2008 through 31 March 2009 for his duties as the senior instructor/writer, CAD, USAFAS. His rater was LTC TDZ, Director, CAD; his intermediate rater was LTC CT, BN CDR, and his senior rater was COL JSF, Brigade CDR. The OER shows it was a referred report and contained the following entries:

a. In Part IVa (Army Values), the rater placed an "X" in the "No" block for Honor and Courage values.

b. In Part Va (Performance Potential Evaluation), the rater placed an "X" in the "Unsatisfactory Performance - Do Not Promote" block and entered comments in Part Vb as follows, in part:

> [Applicant's] work performance as a CAD instructor has been utterly superb. He is technically and tactically competent and fully understands both fire support and maneuver doctrine. [Applicant] truly cares about his students, and routinely uses his personal time to coach and mentor LTs. [Applicant] also possesses an uncanny ability to cope with stress. Though he has had an extreme amount of personal stress the past few months, it has not affected his duty performance. Unfortunately, his personal conduct does not match his duty performance. During this rating period [Applicant] received a GOMOR for conduct unbecoming an

> Officer. [Applicant] failed to manage his personal affairs and the GOMOR is the direct result of him not living up to the Army's high personal moral standards.

c. In Part VI (Intermediate Rater), the Intermediate Rater entered the comments:

> Solid performance training and educating new FA 2LTs in the art of maneuver operations and warfare. [Applicant's] performance was overshadowed with personal misconduct that resulted in a GOMOR. Do not promote to MAJ but retain on active duty so [Applicant] had the opportunity to overcome the personal challenges that afflicted him during the rating period.

d. In Part VIIa (Senior Rater), the Senior Rater placed an "X" in the "Do Not Promote" block and entered the following comments, in part:

> [Applicant] received a GOMOR during this rating period for misconduct as a direct result of challenges in his personal life. However, his work performance was solid and [Applicant] continued to provide excellent training in developing FA 2LTs in the maneuver operations skills as part of the CAD at the FA School. Retain on active duty and allow [Applicant] to continue to receive medical treatment and overcome the personal challenges that afflicted him during this rating period.

20. The contested OER was referred to the applicant for acknowledgement and he submitted comments that detailed certain aspects of his performance and character that was not specifically detailed in the evaluation. The OER was signed by the rating officials and the applicant and is filed in the performance folder of his OMPF.

21. He was subsequently removed from FY08 MAJ PSL.

22. In October 2009, the applicant received the second contested OER, a change of rater OER covering 6 months of rated time for the period 1 April 2009 through 30 September 2009 for his duties as the senior instructor/writer, CAD, USAFAS. His rater was MAJ CT, BN S-3; his intermediate rater was LTC CT, BN CDR, and his senior rater was COL JSF, Brigade CDR. The OER shows it was a referred report and contained the following entries:

a. In Part Iva, the rater placed an "X" in all the "Yes" blocks of the Army Values.

b. In Part Va, the rater placed an "X" in the "Satisfactory Performance - Promote" block and entered comments in Part Vb as follows, in part:

> Outstanding performance by a talented officer. [Applicant] has done exemplary work throughout this rating period. He is a self starter who works well with minimal supervision and displays exceptional initiative. Send him to the resident Command and General Staff College as soon as possible. During the last Army Physical Fitness Test, [Applicant] failed to meet height and weight standards. [Applicant] performs PT twice a day. His efforts in physical fitness have resulted in a constant improvement toward meeting Army height and weight standards. He was confident that within 6 months [Applicant] would be within height and weight standards.

c. In Part VI, the Intermediate Rater entered the comment:

> This officer has potential for promotion to MAJ; he clearly possesses the skills to operate at the field grade level.

d. In Part VIIa, the Senior Rater placed an "X" in the "Fully Qualified" block and entered the following comments, in part:

> [Applicant's] performance these past 5 months showed his desire and determination to stay in the Army and be competitive for promotion to MAJ. [Applicant's] performance as an instructor to FA LTs continued to be an area of strength for him. [Applicant] had continued treatment for some of his personal challenges and he was confident that if he continued to improve he should be strongly considered for promotion to MAJ.

23. The contested OER was referred to the applicant for acknowledgement and he submitted comments that stated, in part, he acknowledged and accepted his responsibility for his failure to maintain his weight standard. He described situations that contributed to his weight gain. He had made progress as he amended his relationship with his spouse, graduated from ASAP, and worked on weekends as a medical provider to the mentally and physically challenged. The OER was signed by the rating officials and the applicant and is filed in the performance folder of his OMPF.

24. He was subsequently assigned to the 18th Infantry Brigade, 3rd Infantry Division (ID), Fort Stewart, GA. He served in Iraq with his assigned unit from 17 December 2009 to 16 December 2010.

25. On 25 May 2010, while serving in Iraq, he was notified by a memorandum from the CG, U.S. Army Human Resources Command (HRC), that the Maneuver, Fires and Effects Division had identified him to show cause for retention on active duty because of misconduct, moral or professional dereliction.

26. On 28 September 2010, he appealed to the DASEB and requested the GOMOR be transferred to the restricted folder of his OMPF based on intent served. On 13 January 2011, DASEB denied his request. This DASEB ROP is filed in the restricted portion of his OMPF.

27. On 30 June 2011, the applicant submitted a rebuttal to elimination procedures to the CG, HRC. He stated the GOMOR contained in his records contained allegations that were not true. He did not have more than one extramarital affair, never admitted to having more than one affair, that he was never arrested for or convicted of domestic violence, the person who stated he had multiple affairs and that he had impregnated a Soldier's wife recanted her statement, and that both OERs were tied to the GOMOR.

28. On 3 February 2012, the CG, HRC, notified the applicant that after considering the his rebuttal, all relevant documentation, and the recommendations of the chain of command, a decision had been made to continue with elimination proceedings in his case.

29. On 13 March 2012, he was notified that he was to appear before a BOI at Fort Stewart to determine if he should be retained or involuntarily separated from the Army. The board convened on 18 April 2012 and the applicant was present with counsel. After hearing all of the testimony and reviewing all of the evidence in his case, the board determined that the applicant committed adultery, he had an incident of domestic violence in which he assaulted his wife, he committed acts of personal misconduct, and had committed actions considered conduct unbecoming a commissioned officer. The board notified the applicant that the members had unanimously recommended he be involuntarily separated with an honorable discharge.

30. On 12 June 2012, the convening authority approved the findings and recommendations of the BOI and forwarded the results of the BOI to the CG, HRC. The General Officer Show Cause Authority concurred with the BOI's recommendation and forwarded the applicant's case to the Deputy Assistant Secretary of the Army (Review Boards) (DASA RB) for final action.

31. On 23 October 2012, the Army Board of Review for Eliminations convened to review the BOI proceedings. After reviewing the BOI proceedings, the board

determined that the government had established by a preponderance of the evidence that the applicant committed adultery, did have an incident of domestic violence in which he assaulted his spouse, did commit acts of personal misconduct, and his actions could be considered conduct unbecoming a commissioned officer. The board unanimously recommended his elimination from the service with an honorable characterization of service.

32. On 31 October 2012, the DASA (RB) approved the recommendations of the Department of the Army Board of Review for Eliminations and directed the applicant be honorably discharged for unacceptable conduct. On 16 November 2012, he was discharged accordingly.

33. The DD Form 214 (Certificate of Release or Discharge from Active Duty) he was issued for this period of service shows he was honorably discharged under the provisions of AR 600-8-24 (Officer Transfer and Discharges), paragraph 4-2b, by reason of unacceptable conduct.

34. The applicant provides:

a. Three pages of a VA Rating Decision that shows, in part, he was granted service-connected disability effective 17 November 2012 for anxiety disorder (NOS) and major depressive disorder, rated at 30%.

b. A medical treatment record, dated 8 January 2013, that shows he was diagnosed with PTSD. The examining psychiatrist stated, in part, his PTSD symptoms had not made him unstable in any way and were more a matter of mild occasional discomfort. There was no security issue and he was fully competent from a security clearance point of view.

35. In the processing of this case an advisory opinion was received on 11 October 2016 from the Clinical Psychologist, Army Review Boards Agency (ARBA). The advisory official opined:

a. The applicant served in the Army from 19 March 1999 to 16 November 2012 in AOC 19A. He received an honorable discharge under the provisions of AR 600-8-24, paragraph 4-2b, for unacceptable conduct. He deployed in support of OIF from 7 February 2004 to 6 February 2005, 20 August 2006 to 20 November 2007, and 17 December 2009 to 16 December 2010.

b. On 13 June 2015, the applicant requested reconsideration of his previous application contending the ABCMR failed to consider his misdiagnosis of severe depression as PTSD. The applicant's previous application contended that if he

was treated for severe depression in the beginning, his transgression would never have happened. This case was denied on 7 April 2015 after the ABCMR determined his discharge was proper and equitable.

c. A military investigation, dated 15 December 2008, found the applicant had assaulted his spouse, committed adultery, admitted to committing adultery, and had committed offenses that amounted to conduct unbecoming an officer and a gentleman. On 29 January 2009, the applicant received a GOMOR for the domestic assault and battery which entailed beating, choking, and threatening his wife; for ongoing multiple adulterous affairs with women; and for conduct unbecoming an officer and gentleman.

d. Military medical records indicated a BH treatment history for alcohol abuse, adjustment disorder with anxiety and depressed mood, PTSD, and depression. The applicant engaged in several BH services to include psychology and social work individual and group treatments, medication management through psychiatry, outpatient and inpatient services, family advocacy, ASAP, and off-post counseling. It appears the applicant was evaluated thoroughly, actively engaged in treatment, and endorsed symptoms appropriate to the given diagnoses for each treatment session.

e. A medical note, dated 8 January 2013, indicated he had an Axis I diagnosis of PTSD from a VA psychiatrist. The provider included an opinion that the applicant endorsed scarcely unusual PTSD symptoms for someone exposed to combat and determined the symptoms had not made the applicant unstable in any way; they were more a matter of mild, occasional discomfort. A VA letter, dated 4 February 2015, indicated service connection for anxiety disorder (NOS) with major depressive disorder was granted and the applicant was assigned a disability rating of 30% effective 17 November 2012.

f. The ARBA Clinical Psychologist was asked to determine if the condition of PTSD was duly considered during the military separation process of the applicant. This opinion is based on the information provided by the Board and records available in the Department of Defense electronic medical record (AHLTA). Based on thorough review of available medical records, there is no evidence that the diagnosis of depression or PTSD was misdiagnosed or that either condition mitigated his misconduct as the nature of these conditions are not reasonably related to the misconduct of domestic violence and engaging in adultery.

g. This observation does not negate that applicant's deployment history or in-service and post-service diagnoses of depression and PTSD; however, the

presence of anxiety, depression, or PTSD during the time period of which he engaged in multiple infractions of misconduct, does not explain or directly mitigate his actions leading to an early separation from the Army. The medical evidence that is available makes no indication that the applicant was misdiagnosed, that he was not responsible for his decisions and actions, or that he was considered psychologically unfit for duty; therefore, there is no basis for the applicant's contention that his transgressions would never have happened if he was treated for severe depression in the beginning.

36. On 12 October 2016, the applicant was provided a copy of the advisory opinion for information and to allow him the opportunity to submit comments or a rebuttal; however, no response was received.

REFERENCES:

1. AR 600-37 provides that:

a. An administrative memorandum of reprimand may be issued by an individual's commander, by superiors in the chain of command, and by any general officer or officer exercising general court-martial jurisdiction over the Soldier. The memorandum must be referred to the recipient and the referral must include and list applicable portions of investigations, reports, or other documents that serve as a basis for the reprimand. Statements or other evidence furnished by the recipient must be reviewed and considered before filing determination is made.

b. A GOMOR may be filed in a Soldier's OMPF only upon the order of a general officer-level authority and is to be filed in the performance folder. The direction for filing is to be contained in an endorsement or addendum to the memorandum. If the GOMOR is to be filed in the OMPF, the recipient's submissions are to be attached. Once an official document has been properly filed in the OMPF, it is presumed to be administratively correct and to have been filed pursuant to an objective decision by competent authority. The burden of proof rests with the individual concerned to provide evidence of a clear and convincing nature the document is untrue or unjust, in whole or in part, thereby warranting its alteration or removal from the OMPF.

2. AR 623-3 (Evaluation Reporting System) establishes the policies and procedures for preparing, processing and using the OER. The regulation also provides that an OER accepted for inclusion in the official record of an officer is presumed to be administratively correct, to have been prepared by the proper rating officials and to represent the considered opinion and objective judgment of

the rating officials at the time of preparation. The burden of proof in appealing an OER rests with the applicant. Accordingly, to justify deletion or amendment of a report, the applicant must produce evidence that clearly and convincingly nullifies the presumption of regularity. Clear and convincing evidence must be of a strong and compelling nature, not merely proof of the possibility of administrative error or factual inaccuracy.

3. AR 600-8-24 serves as the authority for the transfer and discharge of Army officer personnel. It provides that elimination action may be or will be initiated for misconduct, moral or professional dereliction, acts of personal misconduct, conduct unbecoming an officer, and adverse information filed in the OMPF.

4. AR 15-185 (ABCMR) states ABCMR members will review all applications that are properly before them to determine the existence of an error or injustice; direct or recommend changes in military records to correct the error or injustice, if persuaded that material error or injustice exists and that sufficient evidence exists on the record; recommend a hearing when appropriate in the interest of justice; or deny applications when the alleged error or injustice is not adequately supported by the evidence and when a hearing is not deemed proper. The ABCMR will decide cases on the evidence of record. It is not an investigative body. The ABCMR may, in its discretion, hold a hearing. Applicants do not have a right to a hearing before the ABCMR. The Director or the ABCMR may grant a formal hearing whenever justice requires.

DISCUSSION:

1. By regulation, an applicant is not entitled to a hearing before the ABCMR. Hearings may be authorized by a panel of the ABCMR or by the Director of the ABCMR. In this case, the evidence of record and independent evidence provided by the applicant is sufficient to render a fair and equitable decision at this time.

2. The applicant contends the GOMOR and two contested OERs should be removed from his OMPF and he should be reinstated to active duty because he was not diagnosed with or treated for severe depression when symptoms were clearly present during his initial enrollment at the Fort Sill BH Clinic in August 2008. He contends the symptoms of the affair, physical altercations, and weight gain were results of severe depression and had he had been treated for this in the beginning, the transgressions would not have happened.

3. However, as confirmed by the advisory official, the available medical evidence does not show that the diagnosis of depression or PTSD was misdiagnosed or

that either condition mitigated his misconduct as the nature of these conditions were not reasonably related to the misconduct of domestic violence or engaging in adultery. The available medical evidence does not indicate he was not responsible for his decisions/actions, that he was considered psychologically unfit for duty, and do not support his contention that his misconduct and weight gain would never have happened if he was treated for severe depression in the beginning.

4. The evidence of record confirms the applicant received a GOMOR on 29 January 2009 for domestic assault and battery; for beating, choking, and threatening his spouse; for ongoing multiple adulterous affairs with women; and for conduct unbecoming an officer and gentleman. The GOMOR was issued as an administrative measure after the LPD investigated a complaint of domestic abuse and an AR 15-6 investigation found he did commit assault by inflicting bodily harm to his spouse; did, by his own admission, have sexual relationships with other women while married; and did commit conduct unbecoming an officer and gentleman.

5. He was afforded the opportunity to review the evidence against him and to submit matters in his own behalf prior to a final filing decision. His response was received and considered and the GOMOR was subsequently directed for filing in his OMPF.

6. With respect to the contested OERs, the governing Army regulation states an evaluation report included in the official record of a rated Soldier is presumed to be administratively correct, to have been prepared by the properly-designated rating officials who meet the minimum time and grade qualifications, and to represent the considered opinions and objective judgment of the rating officials at the time of preparation.

7. The contested OERs appear to be correct and each one appears to represent a fair, objective, and valid appraisal of the applicant's demonstrated performance and moral qualities during the rating periods period in question. By regulation, to support removal or amendment of a report, there must be evidence that establishes clearly and convincingly that the presumption of regularity should not be applied and that action is warranted to correct a material error, inaccuracy, or injustice. The applicant has not provided evidence that establishes clearly and convincingly that the presumption of regularity should not be applied to each OER under consideration or that action is warranted to correct a material error, inaccuracy, or injustice.

**DEPARTMENT OF THE ARMY**
**ARMY REVIEW BOARDS AGENCY**
**251 18TH STREET SOUTH, SUITE 385**
**ARLINGTON, VA 22042-3531**

REPLY TO
ATTENTION OF

SAMR-RBM 11 October 2016

MEMORANDUM FOR Case Management Division, Army Review Boards Agency

SUBJECT: Advisory Opinion for DANIELS, DERRICK, Redacted PII, AR20150012081

1. References

a. Diagnostic and Statistical Manual of Mental Disorders-5th Edition
b. AR 40-501, Standards of Medical Fitness, RAR003, 04 Aug 2011
c. AR 600-8-24, Officer Transfers and Discharges, 12 Apr 2006, RAR, 13 Sept 2011

2. Derrick T. Daniels served in the Army from 19 March 1999 to 16 November 2012 as a 19A (Armor Officer). He received an Honorable discharge IAW AR 635-8-24, Paragraph 4-2B, Unacceptable Conduct. He deployed from 7 February 2004 to 6 February 2005, 20 August 2006 to 20 November 2007, and 17 December 2009-16 December 2010 in support of Operation Iraqi Freedom.

3. On 13 June 2015, Mr. Daniels requested reconsideration of his previous application contending the ABCMR failed to consider his mis-diagnosis of severe depression as PTSD. Mr. Daniels' previous application contended that if he was treated for severe depression in the beginning, his transgression would never have happened. This case was previously denied on 7 April 2015 after the ABCMR determined that the discharge was proper and equitable and voted to deny relief.

4. A military investigation dated 15 December 2008, found Mr. Daniels had assaulted his spouse, committed adultery, admitted to committing adultery, and had committed offenses that amounted to conduct unbecoming of an officer and a gentleman. On 29 January 2009, Mr. Daniels received a GOMAR for the domestic assault and battery which entailed beating, choking, and threatening his wife; for ongoing multiple adulterous affairs with women; and for conduct unbecoming of an officer and a gentleman.

5. Military medical records indicated a behavioral health treatment history for Alcohol Abuse, an Adjustment Disorder with Anxiety and Depressed Mood, Post Traumatic Stress Disorder, and Depression. Mr. Daniels engaged in several behavioral health services to include Psychology and Social Work individual and group treatments, medication management through Psychiatry, outpatient and inpatient services, Family Advocacy, ASAP, and off-post counseling. It appears Mr. Daniels was evaluated thoroughly, actively engaged in treatment, and endorsed symptoms appropriate to the given diagnoses for each treatment session. A VA letter dated 4 February 2015 indicated that a service connection for Anxiety Disorder Not Otherwise Specified with

Major Depressive Disorder was granted and Mr. Daniels was assigned a disability rating of 30 percent effective 17 November 2012. A medical note dated 8 January 2013 indicated Mr. Daniels had an Axis I diagnosis of PTSD from a VA psychiatrist. The provider included an opine that Mr. Daniels endorsed scarcely unusual PTSD symptoms for someone exposed to combat and determined the symptoms had not made Mr. Daniels unstable in any way and that they were more a matter of mild occasional discomfort.

6. The Army Review Boards Agency Clinical Psychologist was asked to determine if the condition of PTSD was duly considered during the military separation process of Mr. Daniels. This opinion is based on the information provided by the Board and records available in the DOD electronic medical record (AHLTA). Based on thorough review of available medical records, there is no evidence that the diagnosis of Depression or PTSD was misdiagnosed or that either condition mitigated his misconduct as the nature of these conditions are not reasonably related to the misconduct of domestic violence and engaging in adultery. This observation does not negate Mr. Daniels's deployment history or in-service and post-service diagnoses of depression and post traumatic stress; however, the presence of anxiety, depression, or PTSD during the time period of which he engaged in multiple infractions of misconduct, does not explain or directly mitigate his actions leading to an early separation from the Army. The medical evidence that is available makes no indication that Mr. Daniels was misdiagnosed, that he was not responsible for his decisions and actions, or that he was considered psychologically unfit for duty; therefore there is no basis for Mr. Daniels contention that his transgressions would never have happened if he was treated for severe depression in the beginning.

7. Thank you for the opportunity to assist in this process. Point of contact for this memorandum is MAJ Melissa Boyd, Medical Advisor, Army Review Boards Agency.

X Melissa Boyd
Melissa Boyd
MAJ, Clinical Psychologist
Signed by: BOYD.MELISSA.MUNRO Redacted PII

# Robert S. Poydasheff, J.D.

ATTORNEY AT LAW
944 Second Avenue
P.O. Box 348
Columbus, Georgia 31902

Mayor of Columbus 2003-2007

Colonel (ret.), United States Army

Legislative Counsel
to Secretary of the Army 1973-1975

Staff Judge Advocate
on U.S. Army Posts 1974-1979

OFFICE 706-317-3224

HOME 706-327-9415

FAX 706-322-9385

bobpoydasheff@bellsouth.net

July 28, 2015

Department of The Army
Army Board For Correction of Military Records
251 18th Street South, Suite 385
Arlington, VA 22202-3531

ATTN: Natalle H. Abt

Re: AR20140008998, Daniels, Derrick T.

Dear Acting Director Abt:

Enclosed is a copy of your letter and decision, dated 9 April 2015, that was forwarded to my client, Mr. Derrick T. Daniels. A cop of his DD Form 149, November 2012, previously forwarded to you is also enclosed.

In reviewing the work up and decision rendered by the ABCMR I noted a distinct error. I respectfully submit that ABCMR completely overlooked, dare I say, Missed, the crux of our petition.

The error is the ABCMR failed to consider his mis-diagnosis of severe depression. He should have been so diagnosed with PTSD. The entire file contains supporting documents highlighting the correct diagnosis by Dr. Marks, Dr. Parodi's Board of Inquiry testimony and The Red River Mental Hospital diagnosis. Even the VA used this evidence to support his percentage of disability and found it vital.

Nowhere in the findings has the Board considered these crucial documents and they are in your files. Therefore, we respectfully request reconsideration because it is clear that, even though our case states the above, the evidence was not considered, mentioned, or commented upon.

With respect, I am

Sincerely,

Robert S. Poydasheff

RSP/js

encls

I20150015368

Daniels, Derrick T
Assigned To: Redacted PII
Receipt Date: 2015/08/03

# APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552

*(Please read instructions on reverse side BEFORE completing this application.)*

*OMB No. 0704-0003*
*OMB approval expires*
*Oct 31, 2014*

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the Department of Defense, Executive Services Directorate, Information Management Division, 4800 Mark Center Drive, Suite 02G09, Alexandria, VA 22350-3100 (0704-0003). Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.

**PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ORGANIZATION. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.** ALS #7

**PRIVACY ACT STATEMENT**

**AUTHORITY:** 10 U.S.C. 1552, and E.O. 9397, as amended (SSN).

**PRINCIPAL PURPOSE(S):** To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record. Completed forms are covered by correction of military records SORNs maintained by each of the Services or the Defense Finance and Accounting Service.

**ROUTINE USE(S):** The DoD Blanket Routine Uses found at: http://privacy.defense.gov/blanket_uses.shtml apply to this collection.

**DISCLOSURE:** Voluntary; however, failure to provide requested information may result in a denial of your application. An applicant's SSN is used to retrieve these records and links to the member's official military personnel file and pay record. Strickland

**1. APPLICANT DATA** *(The person whose record you are requesting to be corrected.)*

a. BRANCH OF SERVICE *(X one)*: [X] ARMY [ ] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD

b. NAME *(Print - Last, First, Middle Initial)*: Daniels, Derrick T.

c. PRESENT OR LAST PAY GRADE: O3

d. SERVICE NUMBER *(If applicable)*:

e. SSN: Redacted PII

**2. PRESENT STATUS WITH RESPECT TO THE ARMED SERVICES** *(Active Duty, Reserve, National Guard, Retired, Discharged, Deceased)*: Discharged

**3. TYPE OF DISCHARGE** *(If by court-martial, state the type of court.)*: Honorable

**4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY** *(YYYYMMDD)*: 20121115

**5. I REQUEST THE FOLLOWING ERROR OR INJUSTICE IN THE RECORD BE CORRECTED:** *(Entry required)*

General Officer memorandum of reprimand (GOMOR) removed from my file

**6. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST FOR THE FOLLOWING REASONS:** *(Entry required)*

The GOMOR contains erroneous information and was unjust in my involuntary seperation from the U.S. Army.

**7. ORGANIZATION AND APPROXIMATE DATE** *(YYYYMMDD)* **AT THE TIME THE ALLEGED ERROR OR INJUSTICE IN THE RECORD OCCURRED** *(Entry required)*: A Battery 1/30 FA, Forth Sill, OK 20090209

**8. DISCOVERY OF ALLEGED ERROR OR INJUSTICE**

a. DATE OF DISCOVERY *(YYYYMMDD)*: 20120430

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THE APPLICATION.

**9. IN SUPPORT OF THIS APPLICATION, I SUBMIT AS EVIDENCE THE FOLLOWING ATTACHED DOCUMENTS:** *(If military documents or medical records are pertinent to your case, please send copies. If Veterans Affairs records are pertinent, give regional office location and claim number.)*

Letter of Explanation with Board of Inquiry recordings, & Medical records

**10. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.** *(At no expense to the Government) (X one)*: [X] YES. THE BOARD WILL DETERMINE IF WARRANTED. [ ] NO. CONSIDER MY APPLICATION BASED ON RECORDS AND EVIDENCE

**11.a. COUNSEL** *(If any)* **NAME** *(Last, First, Middle Initial)* **and ADDRESS** *(Include ZIP Code)*:
Mr. Robert S. Poydasheff
Post Office Box 348
Columbus, Georgia 31902

b. TELEPHONE *(Include Area Code)*: Redacted PII

c. E-MAIL ADDRESS: derrick.daniels72@yahoo.com

d. FAX NUMBER *(Include Area Code)*

**12. APPLICANT MUST SIGN IN ITEM 15 BELOW. If the record in question is that of a deceased or incompetent person, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY THE APPLICATION. If the application is signed by other than the applicant, include the name** *(print)* ______ **and relationship by marking one box below.**

[ ] SPOUSE [ ] WIDOW [ ] WIDOWER [ ] NEXT OF KIN [ ] LEGAL REPRESENTATIVE [ ] OTHER *(Specify)*

**13.a. COMPLETE CURRENT ADDRESS** *(Include ZIP Code)* **OF APPLICANT OR PERSON IN ITEM 12 ABOVE** *(Forward notification of all changes of address.)*

b. TELEPHONE *(Include Area Code)*

c. E-MAIL ADDRESS

d. FAX NUMBER *(Include Area Code)*

**14. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sections 287 and 1001, provide that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

**CASE NUMBER** *(Do not write in this space.)*

**15. SIGNATURE** *(Applicant must sign here.)* [signature]

**16. DATE SIGNED** *(YYYYMMDD)*: 20140428

**DD FORM 149, NOV 2012** PREVIOUS EDITION IS OBSOLETE. 13 July 15 Adobe Designer 8.0

AR20150012081
Daniels, Derrick T
Redacted PII
Receipt Date: 2015/07/17

I20150014179
Daniels, Derrick T
Assigned To: Redacted PII
Receipt Date: 2015/07/17

**REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS**

For use of this form, see AR 15-6; the proponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

**SECTION I - APPOINTMENT**

Appointed by COL John S. Fant
*(Appointing authority)*

on 24 November 2008 *(Date)* *(Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)*

**SECTION II - SESSIONS**

The *(investigation) (board)* commenced at Fort Sill, OK *(Place)* at 0900 *(Time)*

on 26 November 2008 *(Date)* *(If a formal board met for more than one session, check here* ☐. *Indicate in an inclosure the time each session began and ended, the place, persons present and absent, and explanation of absences, if any.)* The following persons *(members, respondents, counsel)* were present: *(After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*

The following persons *(members, respondents, counsel)* were absent: *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*

The *(investigating officer) (board)* finished gathering/hearing evidence at ______ *(Time)* on ______ *(Date)*

and completed findings and recommendations at ______ *(Time)* on ______ *(Date)*

**SECTION III - CHECKLIST FOR PROCEEDINGS**

| A. COMPLETE IN ALL CASES | YES | NO 1/ | NA 2/ |
|---|---|---|---|
| Inclosures *(para 3-15, AR 15-6)* Are the following inclosed and numbered consecutively with Roman numerals: *(Attached in order listed)* | | | |
| *a.* The letter of appointment or a summary of oral appointment data? | ☒ | ☐ | |
| *b.* Copy of notice to respondent, if any? *(See item 9, below)* | ☐ | ☐ | ☒ |
| *c.* Other correspondence with respondent or counsel, if any? | ☒ | ☐ | ☐ |
| *d.* All other written communications to or from the appointing authority? | ☒ | ☐ | ☐ |
| *e.* Privacy Act Statements *(Certificate, if statement provided orally)*? | ☒ | ☐ | ☐ |
| *f.* Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered *(e.g., absence of material witnesses)*? | ☐ | ☐ | ☒ |
| *g.* Information as to sessions of a formal board not included on page 1 of this report? | ☐ | ☐ | ☒ |
| *h.* Any other significant papers *(other than evidence)* relating to administrative aspects of the investigation or board? | ☐ | ☐ | ☒ |

FOOTNOTES: *1/ Explain all negative answers on an attached sheet.*
*2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.*

| | | YES | NO 1/ | NA 2/ |
|---|---|---|---|---|
| 2 | Exhibits *(para 3-16, AR 15-6)* | | | |
| | *a.* Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | ☒ | ☐ | ☐ |
| | *b.* Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | ☒ | ☐ | ☐ |
| | *c.* Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | ☒ | ☐ | ☐ |
| | *d.* Are copies, descriptions, or depictions *(if substituted for real or documentary evidence)* properly authenticated and is the location of the original evidence indicated? | ☒ | ☐ | ☐ |
| | *e.* Are descriptions or diagrams included of locations visited by the investigating officer or board *(para 3-6b, AR 15-6)?* | ☐ | ☐ | ☒ |
| | *f.* Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | ☒ | ☐ | ☐ |
| | *g.* If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit *(para 3-16d, AR 15-6)?* | ☐ | ☐ | ☒ |
| 3 | Was a quorum present when the board voted on findings and recommendations *(paras 4-1 and 5-2b, AR 15-6)?* | ☐ | ☐ | ☒ |
| B. | COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS *(Chapter 5, AR 15-6)* | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment *(para 5-3b, AR 15-6)?* | ☐ | ☐ | |
| 5 | Was a quorum present at every session of the board *(para 5-2b, AR 15-6)?* | ☐ | ☐ | |
| 6 | Was each absence of any member properly excused *(para 5-2a, AR 15-6)?* | ☐ | ☐ | |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required *(para 3-1, AR 15-6)?* | ☐ | ☐ | ☐ |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence *(para 5-2d, AR 15-6)?* | ☐ | ☐ | ☐ |
| C. | COMPLETE ONLY IF RESPONDENT WAS DESIGNATED *(Section II, Chapter 5, AR 15-6)* | | | |
| 9 | Notice to respondents *(para 5-5, AR 15-6):* | | | |
| | *a.* Is the method and date of delivery to the respondent indicated on each letter of notification? | ☐ | ☐ | |
| | *b.* Was the date of delivery at least five working days prior to the first session of the board? | ☐ | ☐ | |
| | *c.* Does each letter of notification indicate — | ☐ | ☐ | |
| | (1) the date, hour, and place of the first session of the board concerning that respondent? | ☐ | ☐ | |
| | (2) the matter to be investigated, including specific allegations against the respondent, if any? | ☐ | ☐ | |
| | (3) the respondent's rights with regard to counsel? | ☐ | ☐ | |
| | (4) the name and address of each witness expected to be called by the recorder? | ☐ | ☐ | |
| | (5) the respondent's rights to be present, present evidence, and call witnesses? | ☐ | ☐ | |
| | *d.* Was the respondent provided a copy of all unclassified documents in the case file? | ☐ | ☐ | |
| | *e.* If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | ☐ | ☐ | ☐ |
| 10 | If any respondent was designated after the proceedings began *(or otherwise was absent during part of the proceedings):* | | | |
| | *a.* Was he properly notified *(para 5-5, AR 15-6)?* | ☐ | ☐ | ☐ |
| | *b.* Was record of proceedings and evidence received in his absence made available for examination by him and his counsel *(para 5-4c, AR 15-6)?* | ☐ | ☐ | ☐ |
| 11 | Counsel *(para 5-6, AR 15-6):* | | | |
| | *a.* Was each respondent represented by counsel? | ☐ | ☐ | |
| | Name and business address of counsel: | | | |
| | | | | |
| | *(If counsel is a lawyer, check here ☐ )* | | | |
| | *b.* Was respondent's counsel present at all open sessions of the board relating to that respondent? | ☐ | ☐ | ☐ |
| | *c.* If military counsel was requested but not made available, is a copy *(or, if oral, a summary)* of the request and the action taken on it included in the report *(para 5-6b, AR 15-6)?* | ☐ | ☐ | ☐ |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality *(para 5-7, AR 15-6):* | | | |
| | *a.* Was the challenge properly denied and by the appropriate officer? | ☐ | ☐ | ☐ |
| | *b.* Did each member successfully challenged cease to participate in the proceedings? | ☐ | ☐ | ☐ |
| 13 | Was the respondent given an opportunity to *(para 5-8a, AR 15-6):* | | | |
| | *a.* Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | ☐ | ☐ | |
| | *b.* Examine and object to the introduction of real and documentary evidence, including written statements? | ☐ | ☐ | ☐ |
| | *c.* Object to the testimony of witnesses and cross-examine witnesses other than his own? | ☐ | ☐ | ☐ |
| | *d.* Call witnesses and otherwise introduce evidence? | ☐ | ☐ | |
| | *e.* Testify as a witness? | ☐ | ☐ | |
| | *f.* Make or have his counsel make a final statement or argument *(para 5-9, AR 15-6)?* | ☐ | ☐ | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses *(para 5-8b, AR 15-6)?* | ☐ | ☐ | ☐ |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it *(para 5-11, AR 15-6)?* | ☐ | ☐ | ☐ |

FOOTNOTES: *1/ Explain all negative answers on an attached sheet.*
*2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.*

APD PE v1.30

## SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| 1st-30th FA HQ, Ft. Sill, OK | [illegible] | 16[illegible] hrs | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| Brown Tara M | Redacted PII | Civilian |

8. ORGANIZATION OR ADDRESS

9. I, Tara M Brown, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

TB I met Captain Derrick Daniels on a website called [redacted] his email address is [redacted]. We talked a few and then started chatting on yahoo @ cyberrogue 9. We [redacted]. We went out and [redacted]. Derrick initially told me that he was separated going through a divorce and he lived at his address on Lincoln and his wife Wendy Daniels lived in the new residence. I did not find out he was still with his wife until I was relocating to Lawton, OK from Wichita Falls, Tx. We [redacted] when I moved to Lawton, OK. Derrick would be at my residence [redacted] and if he didn't have to be at work he would be at the house. [redacted]. TB

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 3 PAGES |
|---|---|---|
| | TB | TB |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ____ TAKEN AT ____ DATED ____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.*

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF Tara Brown TAKEN AT 1-5th FA UAS DATED 20090107

9. STATEMENT (Continued)

TB Derrick let me know a few things about his past in [redacted]. He let me know about a relationship he had supposedly prior to ours with a [redacted]. He revealed that she had gotten [redacted] and he took her to have an abortion. He mentioned [redacted]. He informed me that if I was pregnant he would not leave nor make or ask me to have an abortion. He stated he loved me and that everything would be okay. I found out I was [redacted]. I informed Derrick, he acknowledged. Our relationship still continued physical we never stopped the relationship. My due date is July 4th 2009. TB

End of Statement

Q1 - On or about what date did you and CPT Derrick Daniels [redacted] in your relationship?

A1 - On or about the [redacted]. TB

Q2 - When did you find out the CPT Daniels, Derrick was still married?

A2 - I [redacted]. TB

INITIALS OF PERSON MAKING STATEMENT TB

PAGE 2 OF 3 PAGES TB

DA FORM 2823, NOV 2006

APD V1.00

STATEMENT OF Tara Brown TAKEN AT 1-31st FA HQ DATED 2007 01 07

9. STATEMENT *(Continued)*

Q3- Are you still seeing CPT Daniels?

A3- Our last physical contact was Dec 31st and I am not sure where things will go. TB

Q4- Does CPT Daniels know that you are pregnant? Is he the father?

Yes, ~~Yes~~ he knows I am pregnant. TB.
Yes, ~~he acknowledges he's the father~~, I have text messages from him stating so. TB.

Nothing Follows

AFFIDAVIT

I, Tara Brown, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 3. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

Tara Brown
*(Signature of Person Making Statement)*

WITNESSES: [signature]

GEORDIE E. BEAL
1-30 FA FT SILL OK

ORGANIZATION OR ADDRESS

[signature]
Thomas P. [illegible]
1-30 FA Ft Sill OK

ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 7 day of JAN, 2007 at 1-30th FA HQ Ft. Sill, OK 73503

[signature] LTC, FA
*(Signature of Person Administering Oath)*

Christopher P. Tolbert
*(Typed Name of Person Administering Oath)*

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT TB

PAGE 3 OF 3 PAGES

DA FORM 2823, NOV 2006

APD V1.00

**SWORN STATEMENT**

For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| BLDG 6007, FORT SILL, OK | 20081202 | | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| DANIELS, WENDY LAVELL | Redacted PII | CIV |

8. ORGANIZATION OR ADDRESS
Redacted PII

9. I, Wendy Daniels, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

1. Did an altercation take place in your home with your husband on Sunday [illegible] Nov.? [illegible]
Yes [initials]

2. Describe what took place during that altercation. [illegible]
Basically My husband Derrick was in bed... as I [illegible] to give him a kiss. I could smell sex [illegible] [illegible] (initials) area. Prior to this night I had suspicions because [illegible] that I [illegible]. Therefor I began to question him [illegible] the smell and my suspicions. Finally he [illegible] both I was so angry [illegible] I then slapped him. After I slapped him he basically lost his temper and started to [illegible] me. In the mist of the fight he picked up a plastic baton and hit me. [illegible] WD

3. Did you receive injuries from your husband? [illegible] Yes, scratches to my neck from being choked. Bruises on my arm and leg. And some soreness to my neck and head. WD

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 4 PAGES |
|---|---|---|
| 1 | WD | |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ____ TAKEN AT ____ DATED ____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF Wendy Daniels TAKEN AT Fort Sill DATED 2 Dec 08

9. STATEMENT (Continued)

4. As you stated previously, your husband ~~admitted to commiting adultery~~. What do you know about his relationship(s) with other women? WD From what I learned from Derrick after the fight is that he met this young lady online. He explained that he's felt lost and was ~~Searching for simple pleasures in the wrong places~~ I took it to mean that it was a "sex thing." Something that gave him short pleasure ~~for a sh~~ because didn't find pleasure in "anything" anymore. Explained that once he came back from Iraq that nothing was going the way he wanted as far as his duties in the military or anything else, meaning his relationship with his family and in his marriage. WD

5. You stated in ~~an~~ statement to Detective Perolta that you spoke to a woman who your husband had a sexual relationship with. What information did you receive from her concerning your husband's infidelity? WD She expressed or explained that ~~She knew that my husband had gotten a young lady pregnant and~~ that this ~~young lady was married to a soldier who apparently was~~ in iraq at the time. She said he told her the he had taken her to get an abortion. WD

6. Does your husband have a history of violence or infidelity over the course of your marriage? WD My husband has never been violent toward me over the course of our marriage. We've been ~~married 13 yrs~~. he has gone to Iraq twice. the 1st time he went to Iraq and returned, I had no issues with violence nor infidelity. However we did have counseling. "Re-intergration" that was coordinated to include the family members. WD Marriage retreats through the military and Help through the Battalion's chaplain. This time Derrick returned home a totally different person. Therefore I feel that because there wasn't any immediate re integration that included the family and we were living in separate places didn't help what issues he may have had at the time. WD

INITIALS OF PERSON MAKING STATEMENT WD

PAGE 2 OF 4 PAGES

DA FORM 2823, NOV 2006 APD PE v1.00

**USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.**

STATEMENT OF Wendy Daniels TAKEN AT Fort Sill DATED 2 Dec 08

9. STATEMENT *(Continued)*

7. Has your husband received any treatment for his different behavior following the most recent deployment? If so, what treatment and when? A Yes he has and still is. A year prior to his return back from Iraq (which he was stationed in Germany) I had moved back to Lawton to Finish College. He of course was stationed here at Ft Sill 6mths later. Although I could see a difference in him after his return, I could diffinately see more of a difference was we were re-united in the same household. Derrick's routine was [redacted] After a [redacted] things in the house I adviced him to seek mental help. He started to seek Mental Health treatments around the last part of June or maybe the 1st week of July. Mental Health refered him to go to ASAP and do AA meetings. WD

8. You told Detective Perolta on 21 Nov that you feared for your safety and did not want to have any contact with your husband. Is this still true? A This is not still true. [redacted] I had never gone through anything of this fashion with my husband before. It was a very [redacted] However, Derrick expressed how torn he felt for doing what he did the same night it happened but at that point I was just unsure of what could happen next. Also because I've been with Derrick for so long ([redacted]) I am totally aware of the man he was before, fun, loving, and caring. He sent a message to me through a mutual friend asking, "if he turn his life over to God and is able to prove that he could be a better man, the man he was before would I take him back?" I sent a message back saying that he needed to show me by making the first step and rejoin our old Church. Our friend called and told me that indeed this past Sunday he [redacted] In that information [redacted]. WD

INITIALS OF PERSON MAKING STATEMENT WD

PAGE 3 OF 4 PAGES

STATEMENT OF Wendy Daniels TAKEN AT Fort Sill DATED 2 Dec 08

9. STATEMENT (Continued)

9. Was this contact described in the last question the only contact of any form you have had since the incident? (A) Yes WD

10. Why did you decide to remove the protective order and drop the charges of assault against your husband? (A) Mainly because of ~~my~~ what I described in Question 8. WD

11. Do you have anything else to say in this statement? (A) I know that Derrick has infact broken rules (UCMJ) However I do believe that the ~~my~~ majority of his issues resulted from ~~[illegible]~~ In a Small way I feel that the ~~[illegible]~~ ~~help~~ that he may have needed which could have helped him to cope better after is return. He did take Command twice while there and I get a sense that ~~[illegible]~~ He just didn't know how to deal with his issues and was ~~[illegible]~~ ~~he needed~~. Not Saying the military or Iraq is to blame but I do feel a lot of what happened resulted from his last tour in Iraq. Derrick is a great Guy and has been a great Soldier and I believe he has served his Country and Army well. WD WD

WD WD WD

NOTHING FOLLOWS WD

**AFFIDAVIT**

I, Wendy Daniels, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 4. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

[signature]
(Signature of Person Making Statement)

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 2 day of Dec, 2008 at Bldg 6007, Fort Sill, OK

ORGANIZATION OR ADDRESS

(Signature of Person Administering Oath)

MAJ Christopher D. Compton
(Typed Name of Person Administering Oath)

[signature]
(Authority To Administer Oaths)

ORGANIZATION OR ADDRESS

INITIALS OF PERSON MAKING STATEMENT

PAGE 4 OF 4 PAGES

DA FORM 2823, NOV 2006 APD PE v1.00

Prepared By: 5605
Prepared Date: 11/26/2008

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

*INCIDENT INFORMATION*

Date Reported: 11/21/2008 Time: 0230
Report Officer: 4226 (POLLARD, JEFFERY ALLEN)
Approval Officer: 0700 (CARTER, ERIC MATTHEW)
Invest Officer: 5605 (PERALTA, ROBERTO)
Date Occurred: 11/17/2008 Time: 2100
Location: 5303 SW TYLER Pref: Apt:
City: LAWTON State: OK Zip: 73501-
Latest Poss Date: 11/17/2008 Time: 2200
Rpt District: 32 Beat: 12 Shift: 1
Command Area: 01
Damage Prop: Stolen Property: Stolen Vehicle:
Disposition: REFERRED TO OTHER AGENCY Disposition Date: 11/24/2008

*OFFENSES*

Offense: S21-644.C (ASSAULT/BATTERY ON A SPOUSE)
IBR Code: 01 Att/Comp: C UCR: 0430 UCR Arson:

*VICTIM*

Name Type: VICTIM Name: DANIELS, WENDY L
Address: Redacted PII
Bldg: Apt #:
Phone: Redacted PII SSN: Redacted PII DOB: Redacted PII Sex: F Race: B
DL Number: Redacted PII State: OK Hgt: 5'07 Wgt: 230 Hair: BLK Eyes: BRO
Employer: Phone:
Emp Addr: ,
Bldg: Apt #:

*SUSPECT*

Name Type: SUSPECT Name: DANIELS, DERRICK TORAINO
Address: Redacted PII
Bldg: Apt #:
Phone: Redacted PII SSN: Redacted PII DOB: Redacted PII Sex: M Race: B
DL Number: State: Hgt: 5'09 Wgt: 194 Hair: BLK Eyes: BRO
Employer: US ARMY Phone: Redacted PII
Emp Addr: ,
Bldg: Apt #:

*CASE*

Received Status: OPEN INVESTIGATION Date Assigned: 11/24/2008
Current Status: REFERRED TO OTHER AGENCY Scheduled Review:
Investigators: PERALTA, ROBERTO
Supervisor: LAFRANCE, LAWRENCE R Date Reassigned:

Prepared By: 5605                                                    **PAGE2**
Prepared Date: 11/26/2008

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

Police Action:        FOLLOW UP APPROVED          Date Pol Action:   11/24/2008
Police Reason:
Prosecutor Action:                                Date Pros Action:
Reason Rejected:                                  Date Reactivated:
Final Disposition:

### NARRATIVE

On 11-21-08 at approx 0213 hrs, Officer Pollard was dispatched on a domestic abuse call that happened Monday 11-17-08 at approx 2100-2200 hrs. Pollard met Wendy Daniels at Reynolds Army Hospital who said her ███████████████████ attacked her. Wendy said she and Derrick were ████████ over Derrick ██████████ when Derrick began pushing Wendy and then grabbed a police baton type object ████████ region and then Wendy over the head and on her head. Wendy said she ███████████████████ Wendy said she went to the ground and Derrick began dragging her across the ground. Wendy sought medical treatment at Reynolds, she signed to press charges was given a witness complaint form and domestic abuse sheet. Wendy was told to follow up at the county courthouse.

Lawton Police records ran a triple I of Derrick Daniels for prior domestic abuse and his records was clear. Pictures was taken of the injuries by Officer Carter.

SW-7000

### CASE MGMT NARRATIVE

Reference Case 2008-12244, Victim Wendy Daniels, Domestic Abuse and AWDW

On 11-21-2008, Det. Peralta was assigned this case and he immediately went Reynolds Army Hospital to make contact with Mrs. Wendy Daniels however she was discharged prior to my arrival, and she was located at the Fort Sill Advocacy office. I them made contact with Mrs. Daniels and she stated that it was on Sunday and not Monday as previously reported that she was assaulted by her husband. Mrs. Daniels stated that she reached over to give her husband ███████████ kiss when she smelled another women vagina on his face. Mrs. Daniels awoke and her husband Mr. Derrick Daniels and she attempted to perform oral sex on her. Mrs. Daniels then got upset and slapped her husband in the face, and a physical altercation ensued. Mrs. Daniels was ████████ to Mr. Daniels some ████████████ that she had found on the computer when he got upset and took the ████████ a small Daniels several times with a police baton. I then made contact with Mr. Daniels at his battalion headquarters where LTC Talcott assisted us and provided a room to interview Mr. Daniels. Mr. Daniels who is an active duty Captain in the US Army stated after his Miranda warning rights were read that he and his wife are having problems, and after ████████████ too cool and ███████████████ Mr. Daniels also stated that he ███ been having an affair with ██████ several other women and his wife "Wendy", is a good women but that he need some time apart. During this investigation I was accompanied by Special Agent David L. Spiegel from the Fort Sill Criminal Investigation Command. Mrs. April Plumley also assisted from the Family advocacy office on Fort Sill. LTC Talcott who is the Battalion Commander from Captain Daniels command stated that he will place a military protective order on Captain Daniel restraining him from visiting his wife. Mrs. Daniels then came to the Lawton Police Department with Mrs. Plumley and was given a citizens statement and instructed on how to

# ADVISE OF RIGHTS

POB Redacted PII
Redacted PII

**PERSON INTERVIEWED:**

NAME: Derrick Toriano Daniels SSN: Redacted PII Redacted PII

EDUCATION LEVEL: 18 yr ENGLISH LANGUAGE: ✓ YES ___ NO

**INTERVIEW:**

LOCATION: Fort Sill DATE: 11-21-2008

INTERVIEWER: Det. Peralta TIME: 0935 hrs

**YOUR RIGHTS**

DTD ✓ You have the right to remain silent.

DTD ✓ Anything you say can and will be used against you in court.

DTD ✓ You have the right to talk to a lawyer and have him present with you while you are being questioned.

DTD ✓ If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if You wish one.

DTD ✓ If you decide to make a statement, you may stop at any time.

**WAIVER OF RIGHTS**

Do you understand each of the rights I have explained to you? Yes DTD ✓ No ______

Having these rights in mind, do you wish to talk to us now? Yes DTD ✓ No ______

Witness: [signature] Signature: [signature]

SSN: Redacted PII

Witness: ______ Interviewer: Det. Robert Peralta

SSN: ______ Offense No.: 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

**Compton, Christopher D MAJ MIL USA TRADOC**

**Subject:** FW: Investigation (UNCLASSIFIED)

From: Kees, Duane A CPT MIL USA USARPAC
Sent: Thursday, December 11, 2008 2:47 PM
To: Compton, Christopher D MAJ MIL USA TRADOC
Subject: RE: Investigation (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Sir:

After speaking with CPT Daniels on more that one occasion regarding the events in question and CPT Daniels has decided to assert his Article 31 Rights.

I do apologize for the inconvenience.

Please use this communication as evidence of CPT Daniels assertion of his Article 31 Rights.

Thank you.

CPT Kees

3
4
5
6
7
8
9
10
11

04231608

# OFFICER EVALUATION REPORT

For use of this form, see AR 623-3; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO) SEE PRIVACY ACT STATEMENT IN AR 623-3.

## PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK (YYYYMMDD) | e. BRANCH | f. DESIGNATED SPECIALTIES / PMOS (WO) |
|---|---|---|---|---|---|
| DANIELS, DERRICK, T. | Redacted PII | CPTP | 20031001 | AR | 19A |

| g.1. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | g.2. STATUS CODE | h. REASON FOR SUBMISSION |
|---|---|---|
| HSB, 1-30TH FA, FORT SILL, OK 73503, TRADOC | | 03 Change of Rater |

| i. PERIOD COVERED FROM (YYYYMMDD) | THRU (YYYYMMDD) | j. RATED MONTHS | k. NONRATED CODES | l. NO. OF ENCL | m. RATED OFFICER'S AKO EMAIL ADDRESS (.gov or mil) | n. UIC | o. CMD CODE | p. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| 20080515 | 20090331 | 11 | | 1 | derrick.toraino6497@us.army.mil | W2NT02 | TC | TD22 |

## PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)

| | SSN | RANK | POSITION | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|---|---|
| a. NAME OF RATER (Last, First, MI): ZIVKOVIC, THOMAS D. | Redacted PII | LTC | Director, CAD | ZIVKOVIC.THOMAS.DAN Redacted PII | 20090417 |
| b. NAME OF INTERMEDIATE RATER (Last, First, MI): TALCOTT, CHRISTOPHER P. | Redacted PII | LTC | Battalion Commader | TALCOTT.CHRISTOPHER.PHILLIP Redacted PII | 20090420 |
| c. NAME OF SENIOR RATER (Last, First, MI): FANT, JOHN S. | Redacted PII | COL | Brigade Commader | FANT.JOHN.SARRATT Redacted PII | 20090425 |

SENIOR RATER'S ORGANIZATION: HQ, 428th Field Artillery Brigade, Fort Sill, OK 73503

BRANCH: FA

SENIOR RATER TELEPHONE NUMBER: 580-442-4704

E-MAIL ADDRESS (.gov or .mil): john.fant2@us.army.mil

d. This is a referred report, do you wish to make comments? [X] [X] Yes, comments are attached [ ] No

e. SIGNATURE OF RATED OFFICER: DANIELS.DERRICK.TORAINO Redacted PII — DATE (YYYYMMDD): 20090511

## PART III - DUTY DESCRIPTION

a. PRINCIPAL DUTY TITLE: SR INSTRUCTOR / WRITER

b. POSITION AOC/BR: 19A00

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES. REFER TO PART IVa, DA FORM 67-9-1.

Combined Arms Instructor for the United States Army Field Artillery School (USAFAS), Combined Arms Division. Serve as primary instructor for Army and Marine Corps lieutenants and international officers during the Combined Arms blocks of instruction. Responsible for instructing officers on combined ar1lms organization, capabilities, limitations, tactics, and the employment of Fires Support systems. Responsible for the physical, intellectual, and professional development of Field Artillery lieutenants attending the Basic Officer Course. Reviews, evaluates, and recommends developments in combined arms doctrine, fire support doctrine, training, equipment, and organization of the Field Artillery.

## PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

**CHARACTER** Disposition of the leader: combination of values, attributes, and skills affecting leader actions

**a. ARMY VALUES** (Comments mandatory for all "NO" entries. Use PART Vb.)

| Value | Yes | No |
|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | | X |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | X | |
| 3. COURAGE: Manifests physical and moral bravery | | X |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | X | |
| 5. RESPECT: Promotes dignity, consideration, fairness, & EO | X | |
| 6. SELFLESS-SERVICE: Places Army priorities before self | X | |
| 7. DUTY: Fulfills professional, legal, and moral obligations | X | |

**b. LEADER ATTRIBUTES / SKILLS / ACTIONS:** First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb.
**Comments are mandatory in Part Vb for all "No" entries.**

b.1. ATTRIBUTES (Select 1) — Fundamental qualities and characteristics

| Selected | Item | Yes/No |
|---|---|---|
| [ ] | 1. MENTAL — Possesses desire, will, initiative, and discipline | YES |
| [X] | 2. PHYSICAL — Maintains appropriate level of physical fitness and military bearing | YES |
| [ ] | 3. EMOTIONAL — Displays self-control; calm under pressure | YES |

b.2 SKILLS (Competence) (Select 2) — Skill development is part of self-development; prerequisite to action

| Selected | Item | Yes/No |
|---|---|---|
| [ ] | 1. CONCEPTUAL — Demonstrates sound judgment, critical/creative thinking, moral reasoning | YES |
| [X] | 2. INTERPERSONAL — Shows skill with people: coaching, teaching, counseling, motivating and empowering | YES |
| [ ] | 3. TECHNICAL — Possesses the necessary expertise to accomplish all tasks and functions | YES |
| [X] | 4. TACTICAL — Demonstrates proficiency in required professional knowledge, judgment, and warfighting | YES |

b.3. ACTIONS (LEADERSHIP) (Select 3) Major activities leaders perform: influencing, operating, and improving

| Category | Selected | Item | Yes/No |
|---|---|---|---|
| INFLUENCING — Method of reaching goals while operating / improving | [X] | 1. COMMUNICATING — Displays good oral, written, and listening skills for individuals / groups | YES |
| | [ ] | 2. DECISION-MAKING — Employs sound judgment, logical reasoning and uses resources wisely | YES |
| | [ ] | 3. MOTIVATING — Inspires, motivates, and guides others toward mission accomplishment | YES |
| OPERATING — Short-term mission accomplishment | [ ] | 4. PLANNING — Develops detailed, executable plans that are feasible, acceptable, and suitable | YES |
| | [X] | 5. EXECUTING — Shows tactical proficiency, meets mission standards, and takes care of people/resources | YES |
| | [ ] | 6. ASSESSING — Uses after-action and evaluation tools to facilitate consistent improvement | YES |
| IMPROVING — Long-term improvement in the Army its people and organizations | [X] | 7. DEVELOPING — Invests adequate time and effort to develop individual subordinates as leaders | YES |
| | [ ] | 8. BUILDING — Spends time and resources improving teams, groups and units; fosters ethical climate | YES |
| | [ ] | 9. LEARNING — Seeks self-improvement and organizational growth; envisioning, adapting and leading change | YES |

c. APFT: PASS DATE: 20090302 HEIGHT: 69 WEIGHT: 208 YES

d. OFFICER DEVELOPMENT - *MANDATORY YES OR NO ENTRY FOR RATERS OF CPTs, LTs, CW2s, AND WO1s.* WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED? [ ] YES [ ] NO [X]

NAME DANIELS, DERRICK, T. SSN Redacted PII PERIOD COVERED 20080515 - 20090331

## PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

☐ OUTSTANDING PERFORMANCE, MUST PROMOTE ☐ SATISFACTORY PERFORMANCE, PROMOTE ☒ UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE ☐ OTHER (Explain)

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-9 AND PART IVa, b, AND PART Vb, DA FORM 67-9-1.

CPT(P) Daniels work performance as a Combined Arms Division Instructor has been utterly superb. He is an outgoing and energetic instructor who displays exceptional platform manner. He is technically and tactically competent and fully understands both fire support and maneuver doctrine. CPT(P) Daniels truly cares about his students, and routinely uses his personal time to coach and mentor Lieutenants. CPT(P) Daniels also possesses an uncanny ability to cope with stress. Though he has had an extreme amount of personal stress the past few months, it has not affected his duty performance. Unfortunately, his personal conduct does not match his duty performance. During this rating period CPT(P) Daniels received a General Officer Memorandum of Reprimand (GOMOR) for conduct unbecoming an Officer. CPT(P) Daniels failed manage his personal affairs and the GOMOR is the direct result of him not living up to the Army's high personal moral standards. Though his work performance his been superb, it has been overshadowed by his personal misconduct.

c. COMMENT ON POTENTIAL FOR PROMOTION.

CPT(P) Daniel's personal misconduct and disregard for the Army Values have severely limited any further potential for promotion within the Army. Do not promote to Major. Retain as a Captain as an instructor or staff officer.

d. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

## PART VI - INTERMEDIATE RATER

Solid performance training and education new Field Artillery Second Lieutenants in the art of maneuver operations and warfare. CPT(P) Daniels performance was overshadowed with personal misconduct that resulted in a General Officer Memorandum of Reprimand. Do not promote to Major but retain on active duty so CPT(P) Daniels has the opportunity to overcome the personal challenges that afflicted him during this rating period.

## PART VII - SENIOR RATER

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

☐ BEST QUALIFIED ☐ FULLY QUALIFIED ☒ DO NOT PROMOTE ☐ OTHER (Explain below)

I currently senior rate 28 officer(s) in this grade

A completed DA Form 67-9-1 was received with this report and considered in my evaluation and review ☒ YES ☐ NO (Explain in c)

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)

HQDA COMPARISON OF THE SENIOR RATER'S PROFILE AND BOX CHECK AT THE TIME THIS REPORT PROCESSED

*BELOW CENTER OF MASS RETAIN*

RO: CPTP DANIELS DERRICK T
Redacted PII

SR: COL FANT JOHN S
Redacted PII

DATE: 2009 05 28

TOTAL RATINGS: 24

RATINGS THIS OFFICER: 1

c. COMMENT ON PERFORMANCE/POTENTIAL

CPT(P) Daniels received a General Officer Memorandum of Reprimand during this rating period for misconduct as a direct result of challenges in his personal life. However, his work performance was solid and CPT(P) Daniels continued to provide excellent training in developing Field Artillery Second Lieutenants in their maneuver operations skills as part of the Combined Arms Directorate at the Field Artillery School. Retain on Active Duty and allow CPT(P) Daniels to continue to receive medical treatment and overcome the personal challenges that afflicted him during this rating period.

d. LIST THREE FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Instructor, Staff Officer, AC/RC

**DEPARTMENT OF THE ARMY**
Combined Arms Division
Fires Center of Excellence
FT Sill, OK 73503

**REPLY TO
ATTENTION OF:**

AT-F-BFA                                                                    21 May 2009

MEMORANDUM FOR Commander, 1st Battalion, 30th Field Artillery Regiment, 428th FA
BDE, Fort Sill, OK 73505

SUBJECT: Referral Comments for Officer Evaluation Report (OER) Referral 15MAY08-
30MAR09, Derrick T. Daniels, CPT, AR, [Redacted PII]

1. Sir, it's not my intentions to influence anyone in changing my evaluation of the rating period.
The rating reflects by performance accordingly; however I want to detailed certain aspects of my
performance and character that was not specifically detailed in my evaluation.

2. During the investigation, I asked to be left on the platform and was. Today its still a daily
struggle with uncertainty about my military career, marriage and my financial stability. It would
have been too easy in allowing my personal struggles affect the way I coached, mentored and
taught our future leaders. My passion in seeing others succeed never died, just like always. Not
once did I allow my displeasure or depression degrade our Lieutenants patriotism and service.
Whatever your personal convictions were at the time, you believed in me and I didn't fail you in
that aspect. In addition, the evaluation does not mention my attempts to seek medical treatment
before the personal misconduct nor any diagnosis by my physician based on this rating period.

3. I have always believed my teaching style is unorthodox and despite push back from peers; I
started teaching in the scenario-based format before senior Army leaders constituted it necessary
in the school house. My Field Artillery and Armor background has given me incite about
combined arms relationships more than most. And even though I didn't receive an initial
counseling when I came here about my specific duties and responsibilities, I used that as
initiative in passing along my experience and expertise. During this period, I bridged the gap in
Fire Supporters truly understanding the purpose and significance of supporting maneuver. Often
times I wouldn't hesitate in helping Lieutenants with fire Support instruction, especially when we
were shorted handed instructors during tests and JCATs. Not part of my duty description, but
part of my character. So many students have approached me and thanked me personally. I was
able to instill a purpose because my experiences and knowledge is an invaluable asset to your
organization.

4. The point of contact for this memorandum is CPT Derrick T. Daniels at DSN 442-1528 or
derrick.toraino.daniels@us.army.mil.

DERRICK T. DANIELS
CPT, AR
Senior CAD Instructor/Writer

000230

# OFFICER EVALUATION REPORT

For use of this form, see AR 623-3; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO) SEE PRIVACY ACT STATEMENT IN AR 623-3.

## PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK (YYYYMMDD) | e. BRANCH | f. DESIGNATED SPECIALTIES / PMOS (WO) |
|---|---|---|---|---|---|
| DANIELS, DERRICK, T. | Redacted PII | CPTP | 20021001 | AR | 19A |

| g.1. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | g.2. STATUS CODE | h. REASON FOR SUBMISSION |
|---|---|---|
| HSB, 1-30TH FA, FORT SILL, OK 73503, TRADOC | | 03 Change of Rater |

| i. PERIOD COVERED FROM (YYYYMMDD) | THRU (YYYYMMDD) | j. RATED MONTHS | k. NONRATED CODES | l. NO. OF ENCL | m. RATED OFFICER'S AKO EMAIL ADDRESS (.gov or .mil) | n. UIC | o. CMD CODE | p. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| 20090401 | 20090930 | 6 | | 1 | derrick.toraino6497@us.army.mil | W2NT02 | TC | TD22 |

## PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)

| | NAME | SSN | RANK | POSITION | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|---|---|---|
| a. NAME OF RATER (Last, First, MI) | THOMAS, CELESTER | Redacted PII | MAJ | Battalion S3 | THOMAS.CELESTER Redacted PII | 20090923 |
| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | TALCOTT, CHRISTOPHER P. | Redacted PII | LTC | Battalion Commander | TALCOTT.CHRISTOPHER.PHILLIP Redacted PII | 20090923 |
| c. NAME OF SENIOR RATER (Last, First, MI) | FANT, JOHN S. | Redacted PII | COL | Brigade Commander | FANT.JOHN.SARRATT Redacted PII | 20090925 |

| SENIOR RATER'S ORGANIZATION | BRANCH | SENIOR RATER TELEPHONE NUMBER | E-MAIL ADDRESS (.gov or .mil) |
|---|---|---|---|
| HQ, 428th Field Artillery Brigade Fort Sill, OK 73503 | FA | 580-442-4704 | john.fant@us.army.mil |

d. This is a referred report, do you wish to make comments? [X] [X] Yes, comments are attached [ ] No

| e. SIGNATURE OF RATED OFFICER | DATE (YYYYMMDD) |
|---|---|
| DANIELS.DERRICK.TORAINO Redacted PII | 20091002 |

## PART III - DUTY DESCRIPTION

a. PRINCIPAL DUTY TITLE: SENIOR INSTRUCTOR / WRITER

b. POSITION AOC/BR: 19A00

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES. REFER TO PART IVa, DA FORM 67-9-1.

Combined Arms Instructor for the United States Army Field Artillery School (USAFAS), Combined Arms Division. Serve as primary instructor for Army and Marine Corps lieutenants and international officers during the Combined Arms blocks of instruction. Responsible for instructing officers on combined arms organization, capabilities, limitations, tactics, and the employment of Fires Support systems. Responsible for the physical, intellectual, and professional development of Field Artillery lieutenants attending the Basic Officer Course. Reviews, evaluates, and recommends developments in combined arms doctrine, fire support doctrine, training, equipment, and organization of the Field Artillery.

## PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

**CHARACTER** Disposition of the leader: combination of values, attributes, and skills affecting leader actions

**a. ARMY VALUES** (Comments mandatory for all "NO" entries. Use PART Vb.)

| Value | Yes | No |
|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | X | |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | X | |
| 3. COURAGE: Manifests physical and moral bravery | X | |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | X | |
| 5. RESPECT: Promotes dignity, consideration, fairness, & EO | X | |
| 6. SELFLESS-SERVICE: Places Army priorities before self | X | |
| 7. DUTY: Fulfills professional, legal, and moral obligations | X | |

**b. LEADER ATTRIBUTES / SKILLS / ACTIONS:** First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb.
**Comments are mandatory in Part Vb for all "No" entries.**

b.1. ATTRIBUTES (Select 1) — Fundamental qualities and characteristics

| Selected | Attribute | Yes | No |
|---|---|---|---|
| X | 1. MENTAL — Possesses desire, will, initiative, and discipline | X | |
| | 2. PHYSICAL — Maintains appropriate level of physical fitness and military bearing | X | |
| | 3. EMOTIONAL — Displays self-control; calm under pressure | X | |

b.2 SKILLS (Competence) (Select 2) — Skill development is part of self-development; prerequisite to action

| Selected | Skill | Yes | No |
|---|---|---|---|
| | 1. CONCEPTUAL — Demonstrates sound judgment, critical/creative thinking, moral reasoning | X | |
| | 2. INTERPERSONAL — Shows skill with people: coaching, teaching, counseling, motivating and empowering | X | |
| X | 3. TECHNICAL — Possesses the necessary expertise to accomplish all tasks and functions | X | |
| X | 4. TACTICAL — Demonstrates proficiency in required professional knowledge, judgment, and warfighting | X | |

b.3. ACTIONS (LEADERSHIP) (Select 3) Major activities leaders perform: influencing, operating, and improving

| Category | Selected | Action | Yes | No |
|---|---|---|---|---|
| INFLUENCING — Method of reaching goals while operating / improving | X | 1. COMMUNICATING — Displays good oral, written, and listening skills for individuals / groups | X | |
| | | 2. DECISION-MAKING — Employs sound judgment, logical reasoning and uses resources wisely | X | |
| | | 3. MOTIVATING — Inspires, motivates, and guides others toward mission accomplishment | X | |
| OPERATING — Short-term mission accomplishment | | 4. PLANNING — Develops detailed, executable plans that are feasible, acceptable, and suitable | X | |
| | X | 5. EXECUTING — Shows tactical proficiency, meets mission standards, and takes care of people/resources | X | |
| | | 6. ASSESSING — Uses after-action and evaluation tools to facilitate consistent improvement | X | |
| IMPROVING — Long-term improvement in the Army its people and organizations | | 7. DEVELOPING — Invests adequate time and effort to develop individual subordinates as leaders | X | |
| | X | 8. BUILDING — Spends time and resources improving teams, groups and units; fosters ethical climate | X | |
| | | 9. LEARNING — Seeks self-improvement and organizational growth; envisioning, adapting and leading change | X | |

c. APFT: PASS DATE: 20090302 HEIGHT: 69 WEIGHT: 208 NO

d. OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF CPTs, LTs, CW2s, AND WO1s.
WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED? [X YES] [NO] [N/A]

NAME DANIELS, DERRICK, T. SSN Redacted PII PERIOD COVERED 20090401 - 20090930

## PART V - PERFORMANCE AND POTENTIAL EVALUATION *(Rater)*

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

☐ OUTSTANDING PERFORMANCE, MUST PROMOTE ☒ SATISFACTORY PERFORMANCE, PROMOTE ☐ UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE ☐ OTHER *(Explain)*

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE, REFER TO PART III, DA FORM 67-9 AND PART IVa, b, AND PART Vb, DA FORM 67-9-1.

Outstanding performance by a talented officer. CPT Daniels has done exemplary work throughout this rating period. He is a self starter who works well with minimal supervision and displays exceptional initiative. He volunteered to be the Assistant Operations Officer for the battalion, while still teaching Combined Arms classes. His execution of taskings and the battalion's Organization Inspection Program was flawless. In addition, he assisted with the rewrite of several classes in BOLC III. His in-depth understanding of Field Artillery and full spectrum operations proved invaluable to his students. His efforts were a direct result of an improved Program of Instructions for our lieutenants. Track this officer's career carefully. Send him to the resident Command and General Staff College as soon as possible. If we continue to groom him, he will excel. During our last Army Physical Fitness Test, CPT Daniels failed to meet height and weight standards as prescribed in AR 600-9. CPT Daniels performs physical fitness training twice a day. His efforts in physical fitness have resulted in a constant improvement toward meeting Army height and weight standards. I'm confident, that within six months, CPT Daniels will be within height and weight standards.

c. COMMENT ON POTENTIAL FOR PROMOTION.

This officer has potential for promotion to Major; he clearly possesses the skills to operate at the field grade level.

d. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

## PART VI - INTERMEDIATE RATER

Improved performance by CPT Daniels in training and educating new Field Artillery officers in their Basic Officer Leadership Course III Combined Arms Directorate classes. In the past five months, Derrick has handled his personal challenges professionally and continued to provide first class training to our officers at the U.S. Field Artillery School. He has worked very hard on his height/weight challenges and scored 287 on his APFT. Definitely has the potential to work at the field grade level and should be considered for promotion.

## PART VII -SENIOR RATER

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

I currently senior rate 28 officer(s) in this grade

☐ BEST QUALIFIED ☒ FULLY QUALIFIED ☐ DO NOT PROMOTE ☐ OTHER *(Explain below)*

A completed DA Form 67-9-1 was received with this report and considered in my evaluation and review ☒ YES ☐ NO *(Explain in c)*

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)

HQDA COMPARISON OF THE SENIOR RATER'S PROFILE AND BOX CHECK AT THE TIME THIS REPORT PROCESSED

*CENTER OF MASS*

RO: CPTP DANIELS DERRICK T
Redacted PII

SR: COL FANT JOHN S
Redacted PII

DATE: 2009 11 12

TOTAL RATINGS: 43

RATINGS THIS OFFICER: 2

c. COMMENT ON PERFORMANCE/POTENTIAL

CPT Daniels' performance these past five months showed his desire and determination to stay in the Army and be competitive for promotion to Major. Derrick's performance as an instructor and mentor to Field Artillery lieutenants continues to be an area of strength for him. He has done an excellent job retooling our Combined Arms Directorate's courses to increase the knowledge and abilities of FA lieutenants in maneuver warfare and the Army's warfighting functions. CPT Daniels has continued treatment for some of his personal challenges and I am confident that if he continues to improve he should be strongly considered for promotion to Major. Continue to develop and send to ILE.

d. LIST THREE FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Instructor Armor School; AC/RC; MiTT Chief



REPLY TO
ATTENTION OF:

**DEPARTMENT OF THE ARMY**
Combined Arms Division
Fires Center of Excellence
FT Sill, OK 73503

AT-F-BFA

5 November 2009

MEMORANDUM FOR Commander, 1ST Battalion, 30TH Field Artillery Regiment, Fort Sill, OK 73503.

SUBJECT: Rebuttal for Officer Evaluation Report for CPT (P) Derrick T. Daniels, Redacted PII from 1 April 2009 to 30 September 2009.

1. HISTORY. I acknowledge and accept responsibility of my failure to maintain my weight standard as a Soldier in the United States Army. I come from an obese family, but during my fifteen years in the Army, it has been a manageable challenge. I have always been taped but able to meet my body fat standard. For the past year, I have battle several things which have contributed my weight gain.

a. Marital Separation. My wife and were separated for almost a year. Our finances were stretched and I became deeply depressed. I withdrew from my peers and would constantly eat alone as a comfort. During most of that time, I lacked the self discipline to cook healthy meals, normally a responsibility of my wife, because I lost my motivation to be competitive.

b. Hospitalization for mental evaluation. The ten days I didn't workout in the Red River Mental Clinic contributed to my lack of motivation. I hated working out with my peers after I returned to my unit because I felt they were judgmental. I became withdrawn from unit events and dreaded going to work.

c. Alcohol Abuse. The increased use of Alcohol from depression since my return from my second deployment also contributed to my weight gain.

2. PROGRESS. For the past six months, I have amended my relationship with my spouse. I have graduated from the ASAP program and I have been making constant progress to get my weight under control. To help with my progress and finances, I worked on weekends as a medical provider to the mental and physically challenged. I also was able to contribute to the team by working as the battalion AS3 for three months to help reestablish my self confidence. I am proud of my accomplishments and continuing my progress. I found new meaning to my life and self worth.

3. The point of contact for this memorandum is CPT Derrick T. Daniels at DSN (912) 767-3660 or derrick.toraino.daniels@us.army.mil.

//ORIGINAL SIGNED//
DERRICK T. DANIELS
CPT, AR
Senior CAD Instructor/Writer





**DEPARTMENT OF THE ARMY**
Headquarters, 1st Battalion, 78th Field Artillery
428th Field Artillery Brigade
Fort Sill, Oklahoma 73503-6202
"TEAMWORK"

REPLY TO
ATTENTION OF:

ATSF-KL 15 December 2008

MEMORANDUM FOR RECORD

SUBJECT: AR 15-6 Investigation Report of Findings and Recommendations

1. The following is a report of findings and recommendations by AR 15-6 Investigating Officer, MAJ Christopher D. Compton, assigned to conduct a formal investigation into the facts and circumstances surrounding allegations that CPT Derrick T. Daniels (Senior Instructor/Writer, A Btry, 1-30 FA) assaulted his wife in a domestic dispute and caused injuries while fighting on Sunday, 16 November 2008.

2. I, MAJ Christopher D. Compton, do certify that I have conducted an investigation regarding the facts and circumstances of the allegations against CPT Daniels. I also certify that this report addresses the following requirements directed to me by the appointing authority, COL John S. Fant:

a. Whether there was a violation of Army Regulation or any article governed by the Uniform Code of Military Justice (UCMJ).

b. Whether CPT Daniels is in violation of any civil law outside of military jurisdiction.

c. Recommendations as to what to do in order to prevent this incident from occurring in the future.

d. Recommendations of appropriate actions consistent with my findings.

3. Findings.

a. CPT Daniels violated Article 128 Assault, Article 134 Adultery and Article 133 Conducts Unbecoming an Officer and a Gentlemen.

1. *Violation of Article 128 Assault is substantiated*: I find that CPT Daniels did commit assault by intentionally inflicting bodily harm to his wife, Mrs. Wendy Daniels, on the evening of 16 November 2008. According to statements given to Detective Roberto Peralta of the Lawton Police Department (LPD) by both CPT Daniels and his wife, CPT Daniels did strike his wife in anger during a fight that occurred in their home on 16 November 2008 (see Exhibit 5). In a verbal statement to Detective Peralta, Mrs. Daniels described the incident and stated that her husband struck her and shoved her multiple times during the fight and also used a hard plastic baton (see Exhibit 6) to strike her in anger on her head. Mrs. Daniels described the incident in a manner consistent with her verbal statement in a written sworn statement to MAJ Compton during an interview on 12 December 2008 (see Exhibit 1). CPT Daniels also admitted to striking his wife in anger with the plastic baton during a verbal statement recorded by Detective Peralta (see Exhibit 5). CPT Daniels declined to make a written or verbal statement to MAJ Compton (see Exhibits 7, 8). Photographic evidence from Mrs. Daniels' visit to the emergency room at

Reynolds Army Community Hospital on 21 November 2008 reveals bruises sustained to Mrs. Daniels during the fight with her husband (see Exhibit 3). CPT Daniels inappropriate sexual relationships with other women caused the fight between CPT and Mrs. Daniels. Both parties confirm this in their verbal statements to Detective Peralta (see Exhibit 5) and Mrs. Daniels reiterated it in her written statement (see Exhibit 1).

2. *Violation of Article 134 Adultery is substantiated*: I find that CPT Daniels did by his own admission wrongfully have sexually active relationships with other women while he was married at the time. In a verbal statement to Detective Peralta (see Exhibit 5), CPT Daniels admitted to having sexually active relationships with other women. CPT Daniels also stated that his wife possessed physical evidence consisting of email and photos that contained content confirming her suspicion that he was having adulterous affairs with other women. Mrs. Daniels declined to provide copies of the photos and emails to the Investigating Officer, but did agree to mention two women that she believes were sexually involved with her husband in a phone conversation with the Investigating Officer. Mrs. Daniels declined to include the following information regarding her husband's adulterous relationships in her sworn statement: Mrs. Daniels stated that she had phone and email contact with Ms. Tara Brown, who admitted to having an adulterous relationship with CPT Daniels. During the course of their correspondence Ms. Brown told Mrs. Daniels about another woman with whom CPT Daniels had been sexually involved. Mrs. Daniels referred to her as Tanisha but did not know a last name. Mrs. Daniels stated that her husband allegedly impregnated Tanisha while the woman's husband was serving in Iraq and made arrangements for her to get an abortion in Oklahoma City. Again, CPT Daniels declined to make a statement to the Investigating Officer. While no physical evidence is available to confirm these allegations against CPT Daniels, his admission of guilt is sufficient evidence to substantiate the violation of Article 134, in my opinion.

3. *Violation of Article 133 Conduct Unbecoming an Officer and Gentleman is substantiated.* Given that CPT Daniels did violate both Articles 128 and 134 as stated in the paragraphs above, it is clear that he acted in a dishonorable manner and compromised his character as an officer and a gentleman. The Manual for Courts Martial clearly states that an officer who violates other articles of the UCMJ also violates this article.

b. Other findings that affect the Investigation Officer's conclusions.

1. *CPT Daniels does have a history of mental health problems and has been seeking help.* According to Mrs. Daniels sworn statement (see Exhibit 1), CPT Daniels behavior changed significantly after he returned from a deployment to Iraq in the spring of 2008. She stated that he heavily drank and often became angry. Mrs. Daniels asked him to seek help with mental health physicians, which he did in July 2008. She stated that he was referred to the ASAP program. I attempted to ask CPT Daniels about his involvement with CMHS but he declined to comment (see Exhibit 7, 8)

2. *Mrs. Daniels no longer feels her husband is a threat.* In her verbal statement to Detective Peralta (see Exhibit 5), Mrs. Daniels stated that she felt her life was in danger because of the threats made against her by her husband. She stated that he made remarks that referenced using his gun to kill her during their fight on 16 November. However, in her written sworn statement (see Exhibit 1) she stated that she no longer feels threatened and took steps to lift the civilian protective order that was put in place following the incident. A "No Contact Order" remains in place by the authority of the Battalion Commander.

4. Recommendations.

a. CPT Daniels should receive a General Officer Memorandum of Reprimand (GOMOR) for violating Articles 128, 133, and 134 of the UCMJ.

b. CPT Daniels should be immediately removed from any duties involving officer instruction and reassigned to a position of lesser influence.

c. CPT Daniels should continue to seek professional help through CMHS, Family Advocacy, and the Chapel including anger management and marriage counseling.

d. Because Mrs. Daniels no longer feels threatened by her husband (see Exhibit 1) and the civilian protective order has already been removed, I recommend lifting the no contact order between CPT Daniels and his wife.

5. The point of contact for this memorandum is the Investigating Officer, MAJ Christopher D. Compton, at 442.6426 or christopher.compton@conus.army.mil.

CHRISTOPHER D. COMPTON
MAJ, FA
AR 15-6 Investigating Officer

**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 1st BATTALION 30th FIELD ARTILLERY REGIMENT
UNITED STATES ARMY FIELD ARTILLERY SCHOOL
FORT SILL, OKLAHOMA 73503-5000

REPLY TO
ATTENTION OF

ATSF-BF 17 DEC 2008

MEMORANDUM FOR RECORD

SUBJECT: AR 15-6 Investigation of CPT Daniels, Derrick, CAD, 1-30th FA, 428th FAB.

1. Additional information reference the investigation:

- CPT Daniels' had two deployments to Iraq - 12 months / 2003-2004 as an Ops Officer in DIV G-3 and Battle CPT for 2-63 AR. Second deployment was 15 months / 2006-2007 as A Co and follow-on as HHC Cdr in 1-77 AR. Both units were out of 1st Infantry Division in Germany.

- Redeployed back NOV 2007 and PCSd to Ft. Sill APR 2008. His wife had already moved to Ft. Sill and they did not go through any reintegration training in Germany.

- June 2008 – Self referral to ASAP (Mr. Fred Jette) for drinking problems. His wife recommended this treatment and he agreed. Has been going to AA meetings since June and after recent issues has transferred to the "Senior Leaders Group" and attending those once a week since NOV. Scheduled treatment will end o/a FEB 2009.

- June 2008 – Additionally sought Mental Health treatments (Mrs. McKinney) for drinking and emotional outbursts (without physical contact with his wife) once a month. He is still in counseling once a month.

- DEC 2009 – Mrs. McKinney, in light of the current issues, has setup CPT Daniels for Psychiatric Evaluation with Dr. Smith on 22 DEC 2008. Additionally, she has enrolled him into the Post Deployment Clinic, with his first counseling session on 29 DEC 2008.

- CPT Daniels has had two meetings with Family Advocacy (Mrs. Barbara Christianson) in DEC 2008. He has also rejoined his Church and attends twice a week (Wednesday – Bible Study and Sunday – Services)

2. The city of Lawton and Comanche County Courts are continuing to prosecute the case against CPT Daniels (even after his wife dropped the charges of Assault) and his Court Hearing is scheduled for 26 JAN 2009. His no-contact order (with his spouse) by both the County and 1-30th Field Artillery Cdr remain in effect.

3. POC for this headquarters is the undersigned at 442-4768.

CHRISTOPHER P. TALCOTT
LTC, FA
Commanding

**DEPARTMENT OF THE ARMY**

HEADQUARTERS, 1ST BATTALION 30TH FIELD ARTILLERY REGIMENT
UNITED STATES ARMY FIELD ARTILLERY SCHOOL
FORT SILL, OKLAHOMA 73503-5000

REPLY TO
ATTENTION OF

R

LOR 29 JAN 09

ATSF-BF

13 JAN 2009

Redacted PII

MEMORANDUM FOR RECORD

SUBJECT: AR 15-6 Investigation of CPT Daniels, Derrick, CAD, 1-30th FA, 428th FAB.

1. Additional background information reference the 15-6 investigation by MAJ Chris Compton:

- CPT Daniels' had two deployments to Iraq - 12 months / 2003-2004 as an Ops Officer in DIV G-3 and Battle CPT for 2-63 AR. Second deployment was 15 months / 2006-2007 as A Co and follow-on as HHC Cdr in 1-77 AR. Both units were out of 1st Infantry Division in Germany.

- Redeployed back NOV 2007 and PCSd to Ft. Sill APR 2008. His wife had already moved to Ft. Sill and they did not go through any reintegration training in Germany.

- June 2008 – Self referral to ASAP (Mr. Fred Jette) for drinking problems. His wife recommended this treatment and he agreed. Has been going to AA meetings since June and after recent issues has transferred to the "Senior Leaders Group" and attending those once a week since NOV. Scheduled treatment will end o/a FEB 2009.

- June 2008 – Additionally sought Mental Health treatments (Mrs. McKenney) for drinking and emotional outbursts (without physical contact with his wife) once a month. He is still in counseling once a month.

- DEC 2009 – Mrs. McKinney, in light of the current issues, has setup CPT Daniels for Psychiatric Evaluation with Dr. Smith on 22 DEC 2008. Additionally, she has enrolled him into the Post Deployment Clinic, with his first counseling session on 29 DEC 2008.

- CPT Daniels has had two meetings with Family Advocacy (Mrs. Barbara Christianson) in DEC 2008. He has also rejoined his Church and attends twice a week (Wednesday– Bible Study and Sunday – Services)

2. The city of Lawton and Comanche County Courts are continuingto prosecute the case against CPT Daniels (even after his wife dropped the charges of Assault) and his Court Hearing is scheduled for 26 JAN 2009. His nocontact order (with his spouse) by both the County and 1-30th Field Artillery Cdr remain in effect.

3. Sworn statement by Ms. Tara Brown who states she is pregnant with CPT Daniels' twins and they have had a physical relationship since June 2008 (see attachment of sworn statement)

4. Recommend that CPT Daniels receive GOMOR and be dismissed from the service.

5. POC for this headquarters is the undersigned at 442-4768.

CHRISTOPHER P. TALCOTT
LTC, FA
Commanding

**SECTION VI - AUTHENTICATION** *(para 3-17, AR 15-6)*

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)*

(Recorder) (Investigating Officer) (President)

(Member) (Member)

(Member) (Member)

**SECTION VII - MINORITY REPORT** *(para 3-13, AR 15-6)*

To the extent indicated in inclosure ______, the undersigned do(es) not concur in the findings and recommendations of the board. *(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

(Member) (Member)

**SECTION VIII - ACTION BY APPOINTING AUTHORITY** *(para 2-3, AR 15-6)*

The findings and recommendations of the (investigating officer) ~~(board)~~ are ~~(approved) (disapproved)~~ (approved with following exceptions/substitutions). *(If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

After reviewing the investigating officer's report and recommendations, I concur with recommending a General Officer reprimand for CPT Daniels. However, in light of his ongoing counseling and medical treatment, I am convinced that him continuing to be active teaching is a good thing. I have seen no degradation in his performance and believe this "outlet" is a positive part for his treatment. So recommend he continue to work and train Lieutenants in BOLC III.

[signature] LTC, FA

Page 4 of 4 pages, DA Form 1574, Mar 1983 APD PE v1.30

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **27 Mar 2009 1559 CDT** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **PSYCHIATRY CLINIC** Provider: **TOMLINSON,JACK R.**
Patient Status: **Outpatient**

**Reason for Appointment:** med refill

AutoCites Refreshed by TOMLINSON, JACK R @ 27 Mar 2009 1602 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)

**Active Family History**
- Heart disease

**Allergies**
- No Known Allergies

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

27 Mar 2009 1700

Facility: Reynolds Army Community Hospital Ft. Sill, OK    Clinic: Psychiatry Clinic    Provider: TOMLINSON, JACK R

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by TOMLINSON,JACK R. @ 27 Mar 2009 1604 CDT

**Reason for Visit**

Visit for: medication refill Service member ran out of Zoloft and Ambien. He is here for a refill.

**History of present illness**

The Patient is a 36 year old male.

He reported: Past medical history reviewed, problem list reviewed, and medication list reviewed with patient.

Military service in the Army, currently on active duty, and visit is GWOT-related.

No systemic symptoms. No head symptoms. No neck symptoms. No eye symptoms. No otolaryngeal symptoms. No breast symptoms. No cardiovascular symptoms. No pulmonary symptoms. No gastrointestinal symptoms. No genitourinary symptoms. No endocrine symptoms. No hematologic symptoms. No musculoskeletal symptoms. No neurological symptoms. No psychological symptoms. No skin symptoms. No allergic/immunologic symptoms.

**Physical findings**

**General appearance:**

• General appearance: • Ill-appearing. • Patient appeared uncomfortable. • Acutely ill. • Chronically ill. • Patient appeared acutely exhausted. • Body odor was abnormal. • Poorly hydrated. ° Well-appearing.

**Neurological:**

° Level of consciousness was normal. ° No decrease in concentrating ability was observed. ° Cognitive functioning was normal. ° Executive functions were not decreased. ° No learning disability was noted.

Speech: ° Normal.

**Psychiatric Exam:**

• Psychiatric Exam: ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Attitude was not abnormal. ° Mood was euthymic. ° Affect was normal. ° Thought processes were not impaired. ° Thought content revealed no impairment. ° No multiple distinct and complex personalities were observed. ° Dangerousness assessment: no suicide risk. ° Dangerousness assessment: no homicide risk. ° Dangerousness assessment: no assault risk. ° Dangerousness assessment: no property damage risk. ° Dangerousness assessment: no self damage risk.

**Spiritual assessment:**

° Not specified.

A/P Written by TOMLINSON, JACK R @ 27 Mar 2009 1604 CDT

1. **ADJUSTMENT DISORDER WITH DEPRESSED MOOD:** refill meds zoloft and ambien

Procedure(s): -Psych Ther Indiv Interact Appr 20-30 Min W/ Med Eval Manage x 1
-Psychiatric Evaluation Review of Records and Reports x 1

Medication(s): -ZOLPIDEM-(AMBIEN) 10MG PO TAB (WHITE) - T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 Qt: 30 Rf: 3

Disposition Written by TOMLINSON, JACK R @ 27 Mar 2009 1611 CDT

**Released w/o Limitations**

**Follow up:** as needed in 1 month(s) or sooner if there are problems.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding. - Comments: Service members here for refill of his medications voices no complaints. Return for follow up. No HI SI or risk. Reviewed records and medications.

25 minutes face-to-face/floor time..

**Signed By TOMLINSON, JACK R** (Psychiatrist, Reynolds Army Community Hospital Ft. Sill, OK) @ 27 Mar 2009 1620

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20 Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **27 Mar 2009 1507 CDT** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
Notes Entered by: BACA, KERI 27 Mar 2009 1507

keb

**AutoCites** Refreshed by DOWLING, JAMES E @ 27 Mar 2009 1607 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
-
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20 Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**27 Mar 2009 1607**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

SO Note Written by DOWLING,JAMES E @ 27 Mar 2009 1625 CDT

**Chief complaint**
The Chief Complaint is: Depression.

**Reason for Visit**
Visit for: Unscheduled walk-in for individual therapy and responded during.

**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Soldier is a waiting disciplinary action from higher command.
Visit is GWOT-related.
Depression Mild at this time. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Turbulent and damaging interpersonal relationships, marital problems, and impulsive behavior resulting in being in physical danger Suicide gesture.

**Subjective**
Service member feels that he is coping well with the pressures of waiting far the outcome of the disciplinary action. He states that he feels he is prepared and will be able to handle the decision regard less of which way it goes. Service member states that as part of his job he has to supervise student officers working on a war game exercise. He states that he's noticed that doing this exercise his anxiety level increases and he reverts back to the type of behaviors he used in a combat situation in Iraq. He finds himself being more aggressive and assertive louder and confrontive. He states he also has noted that his use of caffeine tends to increase his anxiety and tension level. He states that while he was in Iraq he consumed a great deal of caffeine. Service member states that before going to Iraq there was no significant conflict with his wife. He states that during his tour in Iraq and upon his return to Germany he felt as though he was under a great deal of stress. He had been placed in charge of the headquarters battery at the request of his battalion commander who felt he could help straighten things out. Service member states that he felt like his transfer from a linebattery to headquarters battery was not something that he desired but that he did when he needed to do to support his commander. He states upon return from Iraq to Germany there was a great deal of confusion and difficulty in accounting for all of the property that was transported back and forth. He felt as though he were under a lot of pressure to account for everything which is very difficult to do undercircumstances. He states that while he was in Iraq his wife had moved from Germany to fort sill in order to attend school and upon to completion of his tour in Germany he returned to fort sill also. Service member states that upon arriving at fort sill he still felt as though there was a lot of tension and pressure on him and he had difficulty adjusting to the new requirements.

**Physical findings**
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was dysthymic. • Mood was concerned. • Affect was constricted. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Objective**
By all indications service member is coping adequately with his situation at this time. He is undergoing a period of intense self-examination and reevaluation of his life and his goals. He appears to be ready to accept whatever outcome the Army he chooses to make concerning his disciplinary action. Risk is felt to be low at this time.

A/P Written by DOWLING, JAMES E @ 27 Mar 2009 1624 CDT
1. **ADJUSTMENT DISORDER WITH DEPRESSED MOOD**: Continue individual therapy and risk monitoring
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: GAF 61

Disposition Written by DOWLING, JAMES E @ 27 Mar 2009 1625 CDT

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/ Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**27 Mar 2009 1607**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**Released w/o Limitations**
**Follow up:** 3 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

Note Written by DOWLING, JAMES E @ 27 Mar 2009 1612 CDT
Continuation from the subjective section. In addition to adjusting to his new duties he had difficulty readjusting to married life with his wife. She had her interestsand he had difficulty establishing emotional intimacy with her. He turned to alcohol to help relieve his pressures which only caused further problems. He also met a woman who provided another release for him without the responsibilities and obligations of married life. Service member states that at this time his wife says that she would like to try to work on the marriage but he is not sure what he wants to do. He states that he is not even sure he wants to remain in the Army if that option would become available and he is now focusing on trying to figure out his own identity goals and needs. He states that he remains committed to what he sees as his style of leadership in relation to soldiers, he believes that he is able to lead Bysupporting and having positive, respectful relationships with subordinates.

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 27 Mar 2009 1630

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

Sex: M
FMP/SSN: 20 Redacted PII
Tel H: Redacted PII
DOB: Redacted PII
Tel W: 229-518-4204
PCat: A11.1 USA ACTIVE DUTY OFFICER
CS:
MC Status: TRICARE PRIME (ACTIVE DUTY)
Status:
Insurance: No

Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **27 Mar 2009 1321 CDT** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** Post Deployment Stress Class
**Appointment Comments:**
Notes Entered by: MURIEL, NIXIDA 27 Mar 2009 1321

N M

AutoCites Refreshed by MCKEEVER, BRAD E @ 27 Mar 2009 1410 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by MCKEEVER,BRAD E @ 27 Mar 2009 1529 CDT
Reason for Visit
Visit for: post deployment symptoms: anger/depression.
History of present illness

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20 Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **30 Mar 2009 0830 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:**
**Appointment Comments:**
keb

AutoCites Refreshed by DOWLING, JAMES E @ 30 Mar 2009 0948 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII
FMP/SSN: 20 Redacted PII
DOB: Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:

Sponsor/SSN: DANIELS, DERRICK TORAINO/ Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**30 Mar 2009 0938**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

SO Note Written by DOWLING,JAMES E @ 30 Mar 2009 1357 CDT

**Chief complaint**

The Chief Complaint is: No complaints at this time.

**Reason for Visit**

Visit for: Scheduled followup visit for individual therapy and was monitoring.

**History of present illness**

The Patient is a 36 year old male.

He reported: Encounter Background Information: Service members awaiting disciplinary action and made a suicide attempt in the past with hospitalization.

Visit is GWOT-related.

Anxiety. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Marital problems. No behavioral complaints.

**Subjective**

Service member discussed the fact that he had issues from his childhood including inferiority issues and coping with critical parent. Discussed his service in Iraq, he trained an Armor Company prior to deployment and commanded the company for 45 days in country performing infantry type combat missions. His parent battalion commander requested that he take over headquarters Company because he had problems with it. He states that the whole time he had the headquarters battery was high intensity high stress situation. The unit was involved in performing a number of diverse nation building type missions in addition to being exposed to combat situations. He felt as though there was a great deal of pressure on him to see to it that the unit performed and he had no outlet for these stresses so he kept him inside. During his tour he lost 3 soldiers and had to deal with the familys. After 14 months of deployment and in a stressful situation he returns home and begins drinking as his method of coping with the pentup stresses and tensions. This led to a number of problems including marital problems. The service member stated that he feels he had no significant problems until his return from Iraq and assignment at fort sill. He acknowledges having had depression and self-concept issues but he was able to function well and cope with them prior to his deployment.

**Physical findings**

**General appearance:**

° Normal.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: ° Normal.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Mood was dysthymic. • Affect was constricted. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Spiritual assessment:**

• Faith provides strength and comfort.

**Objective**

Service memory continues to appear to be coping well. He is exploring himself he wants for himself. He is open to remaining in the Army are getting out if the disciplinary action goes against him. We'll continue to explore options, provide support and monitor status.

A/P Written by DOWLING, JAMES E @ 30 Mar 2009 1357 CDT

1. **DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS):** Continue individual therapy
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** Disciplinary actions marital problemsGAF65

Disposition Written by DOWLING, JAMES E @ 30 Mar 2009 1357 CDT

**Released w/o Limitations**

**Follow up:** 4 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| /SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**30 Mar 2009 0938**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 30 Mar 2009 1403

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

FMP/SSN: 20 Redacted PII
DOB: Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:

Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **02 Apr 2009 1300 CDT** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:** est. f/u apptmt
**Appointment Comments:**
SLG

AutoCites Refreshed by DOWLING, JAMES E @ 02 Apr 2009 1355 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII | Sex: M | Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
FMP/SSN: 20Redacted PII | Tel H: Redacted PII | Rank: CAPTAIN
DOB: Redacted PII | Tel W: 229-518-4204 | Unit: WAQNK1 (0003 AR HQ 01 DET K1)
PCat: A11.1 USA ACTIVE DUTY OFFICER | CS: | Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
MC Status: TRICARE PRIME (ACTIVE DUTY) | Status: | PCM: SANTORY-ORTIZ,JULIO
Insurance: No | | Tel. PCM: 912 435-5594

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**02 Apr 2009 1353**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

SO Note Written by DOWLING,JAMES E @ 02 Apr 2009 1411 CDT

**Chief complaint**
The Chief Complaint is: Depression.

**Reason for Visit**
Visit for: Scheduled followup visit for individual therapy.

**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Service member is coping with post combat symptoms and disciplinary issues do to his acting out behavior. Service member continues to complain of experiencing depression.
Visit is GWOT-related.
Depression. No sleep complaints. Anhedonia, social withdrawal, and energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Inability to communicate effectively, turbulent and damaging interpersonal relationships, and marital problems. No behavioral complaints.

**Subjective**
Service member states that he has been in communication with his battalion commander with whom he served in Iraq. Service member states that he had an epiphany, he became aware of the adrenaline high he experienced serving in a combat zone in the after effects of that. He states that he would return to Iraq immediately if offered the chance. He also discussed the difficulties of returning tolife in the United States with family and the adjustment problems that he experienced and continues to experience. He stated that one of the problems was that his wife is not able to understand even when he tried to talk to her about such experiences. This among other things led to a loss of connection with his wife.

**Physical findings**
**Vital signs:**
° Pain level was not reported [*].
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was dysthymic. • Affect was constricted. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.
**Spiritual assessment:**
° Not specified [*].

**Objective**
Service member is actively engaged in self-exploration and growth. Discussed ways that he could maintain newfound insights and make use of them in the future. At this time risk is low. Will continue individual therapy.

A/P Written by DOWLING, JAMES E @ 02 Apr 2009 1410 CDT
1. **POST-TRAUMATIC STRESS DISORDER**: Continue individual therapy continue individual therapy
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: Occupational problems problems financial problems GAF 60

Disposition Written by DOWLING, JAMES E @ 02 Apr 2009 1411 CDT
**Released w/o Limitations**
**Follow up:** 1 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

02 Apr 2009 1353
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

Signed By DOWLING, JAMES E (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 02 Apr 2009 1420

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20 Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **03 Apr 2009 1400 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:**
**Appointment Comments:**
prm

AutoCites Refreshed by DOWLING, JAMES E @ 03 Apr 2009 1509 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD | 3 of 3 | 27 Mar 2009 |

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII
FMP/SSN: 20 Redacted PII
DOB: Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:

Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

**03 Apr 2009 1500**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

| | | | | |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | #30 RF3 TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by DOWLING,JAMES E @ 03 Apr 2009 1512 CDT

Chief complaint

The Chief Complaint is: No complaints expressed.

Reason for Visit

Visit for: Scheduled followup visit for individual therapy and risk monitoring.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information:

Visit is GWOT-related.

Anxiety Mild at this time. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Marital problems. No behavioral complaints.

Subjective

Service member discussed his plans to start a journal on the experiences he's been through. Discussed future as a trainer whether in the Army or not. Service member thinks that there maybe work available for him through the VA system if he is out of the Army. Over the weekend serviceman states he plans to go see a movie and havedinner with his wife.

Physical findings

**Vital signs:**

• Pain level (0-10) No pain.

**General appearance:**

° Normal.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: ° Normal.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Mood was anxious. • Affect was full-ranging. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

Objective

Service member continues to report and display improvement. Discussed the need to continue to abstain from use of alcohol. Service member reports that he and his wife now have a civil relationship and are now able to talk to one another. We'll continue individual therapy and risk monitoring was with an emphasis on reality thinking and problem-solving.

A/P Written by DOWLING, JAMES E @ 03 Apr 2009 1512 CDT

1. **POST-TRAUMATIC STRESS DISORDER**: Continue individual therapy and risk monitoring
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: Occupational problems disciplinary action GAF 60

Disposition Written by DOWLING, JAMES E @ 03 Apr 2009 1512 CDT

**Released w/o Limitations**

**Follow up:** 5 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.

60 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 03 Apr 2009 1520

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| SSN: | 20Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**03 Apr 2009 1500**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**Name/SSN: DANIELS, DERRICK TORAINO/** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20 Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **07 Apr 2009 1420 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **GRP**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:** anger management
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 07 Apr 2009 1420

prm

**AutoCites** Refreshed by MCKEEVER, BRAD E @ 07 Apr 2009 1619 CDT

**Problems**
- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII
Sex: M
Sponsor/SSN: DANIELS, DERRICK TORAINO/ Redacted PII
FMP/SSN: 20/ Redacted PII
Tel H: Redacted PII
Rank: CAPTAIN
DOB: Redacted PII
Tel W: 229-518-4204
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
PCat: A11.1 USA ACTIVE DUTY OFFICER
CS:
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
MC Status: TRICARE PRIME (ACTIVE DUTY)
Status:
PCM: SANTORY-ORTIZ,JULIO
Insurance: No
Tel. PCM: 912 435-5594

STANDARD FORM 600 (REV. 5)

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**07 Apr 2009 1521**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

SERTRALINE HCL, 100MG, TABLET, ORAL Active TD #30 RF3 3 of 3 24 Feb 2009

SO Note Written by MCKEEVER,BRAD E @ 07 Apr 2009 1656 CDT

**Reason for Visit**

Visit for: post deployment symptoms: anger/depression.

**History of present illness**

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.

Visit is GWOT-related.

Not thinking about suicide noted "never" on Question 8 on OQ45, despite recent attempt, (see prior notes) and no homicidal thoughts noted " sometimes " on Question 44 of the OQ45, addressing regretable anger, a 2 level decline from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 07 Apr 2009 1658 CDT

**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**
**6. AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0): 75**

Disposition Written by MCKEEVER, BRAD E @ 07 Apr 2009 1658 CDT

**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 07 Apr 2009 1619 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed The Anger Continuim, strong focus on self control and belief in thinking can control feelings. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood

**Name/SSN: DANIELS, DERRICK TORAINO/** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

07 Apr 2009 1521
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By** MCKEEVER, BRAD E (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 07 Apr 2009 1658

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

FMP/SSN: 20 Redacted PII
DOB: Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:

Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**08 Apr 2009 1604**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

SERTRALINE HCL, 100MG, TABLET, ORAL Active TD #30 RF3 3 of 3 24 Feb 2009

SO Note Written by MCKEEVER,BRAD E @ 08 Apr 2009 1604 CDT

Reason for Visit

Visit for: post deployment symptoms: anger/depression.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.

Visit is GWOT-related.

Not thinking about suicide noted "never" on Question 8 on OQ45, and no homicidal thoughts noted " rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level improvement from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 08 Apr 2009 1606 CDT

1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
   Procedure(s): -Clinical Social Work Counseling Group x 1
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**
6. **AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)**: 75

Disposition Written by MCKEEVER, BRAD E @ 08 Apr 2009 1606 CDT

**Released w/o Limitations**

**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 08 Apr 2009 1607 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Discussed Inner Strength, strong focus on positive qualities, better perspective, and broadened experience. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was upbeat. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's**

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/ Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

08 Apr 2009 1604
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.

Signed By MCKEEVER, BRAD E (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 08 Apr 2009 1609

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII
Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:
FMP/SSN: 20 Redacted PII
DOB: Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **09 Apr 2009 1323 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **PROC**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:** Risk TPC

AutoCites Refreshed by DOWLING, JAMES E @ 09 Apr 2009 1326 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
-
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**me/SSN: DANIELS, DERRICK TORAINO**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

09 Apr 2009 1424
**Facility:** Reynolds Army Community Hospital Ft. Sill, OK **Clinic:** Mental Health **Provider:** DOWLING, JAMES E

A/P Written by DOWLING, JAMES E @ 09 Apr 2009 1327 CDT
**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 20-30 Minutes x 1

Disposition Written by DOWLING, JAMES E @ 09 Apr 2009 1328 CDT
**Released w/o Limitations**
**Follow up:** 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
30 minutes face-to-face/floor time..

Note Written by DOWLING, JAMES E @ 09 Apr 2009 1330 CDT

SM will be taken of the Risk monitoring procedure, he will continue to be followed closely and his status evaluated. He appears to be stable at this time.

1. Case was staffed/discussed in Risk Team Meeting on 9Apr09

2. SM is considered to be at Low risk for dangerousness or impulsively acting out in a disruptive manner post hospitalization post suicide gesture .

6. SM is scheduled to return on: 10Apr09 Last seen 3Apr09

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 09 Apr 2009 1334

**Name/SSN: DANIELS, DERRICK TORAINO**/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **08 Apr 2009 1503 CDT** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** Group
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 08 Apr 2009 1503

prm

AutoCites Refreshed by MCKEEVER, BRAD E @ 08 Apr 2009 1602 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **10 Apr 2009 0830 CDT** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
keb

AutoCites Refreshed by DOWLING, JAMES E @ 10 Apr 2009 1320 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
-
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000263

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**10 Apr 2009 0923**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

SO Note Written by DOWLING,JAMES E @ 10 Apr 2009 1320 CDT

Chief complaint

The Chief Complaint is: None stated.

Reason for Visit

Visit for: Scheduled followup visit for individual therapy and was monitoring.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: A service member is being followed for therapy and was monitoring following a suicide attempt. He is facing disciplinary action for inappropriate behaviors. He had no specific complaints today.

Visit is GWOT-related.

Depression. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. Being upset by problems at home or work. No sexual behavior complaints. Turbulent and damaging interpersonal relationships and marital problems. No behavioral complaints.

Subjective

Service member statedthat he may need with his commander today about possible disciplinary action but expressed no specific concerns or opinions. Discussed his previous assignments and performance of duties. He stated that he always received good ratings and had never had any disciplinary action in the past. He stated that he and his wife had been talking over the telephone and will be trying to make the relationship work. They have to begin couples counseling. He stated that he has begun keeping a journal of his thoughts and this has transpired him to write a book about his leadership experiences and how they can be applied to small business situations.

Physical findings

**General appearance:**

° Normal.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: ° Normal.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Mood was concerned. • Affect was constricted. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Spiritual assessment:**

• Spiritual assessment No change.

Objective

Service member appeared to be a bit subdued today. He anticipates speaking with his battalion commander later today concerning the action thatmay be taken against him.

A/P Written by DOWLING, JAMES E @ 10 Apr 2009 1330 CDT

1. **POST-TRAUMATIC STRESS DISORDER**: Continue individual therapy and risk monitoring
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** Marital issues, disciplinary issues GAF 60

Disposition Written by DOWLING, JAMES E @ 10 Apr 2009 1331 CDT

**Released w/o Limitations**

**Follow up:** 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.

60 minutes face-to-face/floor time..

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**10 Apr 2009 0923**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 10 Apr 2009 1331

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ-01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL 93-579). UNAUTHORIZED ACCESS Prescribed by GSA and ICMR

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **13 Apr 2009 0946 CDT** Appt Type: **T-CON***
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Telephone Consult:** Followup

**AutoCites** Refreshed by DOWLING, JAMES E @ 13 Apr 2009 0947 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

13 Apr 2009 1046
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

A/P Written by DOWLING, JAMES E @ 13 Apr 2009 0948 CDT
1. ANXIETY DISORDER NOS

Disposition Written by DOWLING, JAMES E @ 13 Apr 2009 0948 CDT

Note Written by DOWLING, JAMES E @ 13 Apr 2009 0948 CDT
**Provider Telecon Note**
Called to see if SM had talked with his commander re:discipline. He had not. May talk today, said he would call me when he does. No problems reported, sounded upbeat.

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 13 Apr 2009 0948

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **17 Apr 2009 1300 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:**
**Appointment Comments:**
prm

AutoCites Refreshed by DOWLING, JAMES E @ 17 Apr 2009 1352 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD | 3 of 3 | 27 Mar 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**17 Apr 2009 1355**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | #30 RF3<br>TD #30 RF3 | 3 of 3 | 24 Feb 2009 |
|---|---|---|---|---|

**Vitals**

Vitals Written by DOWLING, JAMES E @ 17 Apr 2009 1402 CDT

Tobacco Use: No, Alcohol Use: No, Pain Scale: 0 Pain Free

SO Note Written by DOWLING,JAMES E @ 17 Apr 2009 1354 CDT

**Chief complaint**

The Chief Complaint is: No complaints today.

**Reason for Visit**

Visit for: Scheduled followup visit for individual therapy and risk monitoring.

**History of present illness**

The Patient is a 36 year old male.

He reported: Encounter Background Information: Service member has had marital problems and was facing disciplinary action from the Army. Today he reports he is feeling happy.

Visit is GWOT-related.

Mood was euthymic, no sleep complaints, and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Marital problems Service member continues to have marital problems, he and his wife are talking and may reconcile. They plan to attend the pairs counseling program through the chaplain's office. No behavioral complaints.

**Subjective**

Service member states that he has learned that he is going to be allowed to remain in the Army. His promotion may or may not go through but he will have an opportunity to make an appeal. He is feeling quite happy pleased with the way things turned out after months of waiting. Discussed his future and his relationship with the military structure.

**Physical findings**

**General appearance:**

° Normal.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: ° Normal.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Mood was pleased. • Affect was full-ranging. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Mood was euthymic. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Spiritual assessment:**

• Spiritual assessment Serviceman he states that he has been reading his Bible more frequently. He states that he feels his relationship with God has improved through the trials he has experienced.

**Objective**

Serviceman is quite happy today about his career. We will continue to monitor his status to see that he maintains this mood.

A/P Written by DOWLING, JAMES E @ 17 Apr 2009 1354 CDT

1. **DEPRESSION**: Continue individual therapy and risk monitoring
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: GAF 61

Disposition Written by DOWLING, JAMES E @ 17 Apr 2009 1354 CDT

**Released w/o Limitations**

**Follow up:** 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
| --- | --- |

17 Apr 2009 1355

**F[illegible]y: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

**Signed By** DOWLING, JAMES E (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 17 Apr 2009 1402

**Name/SSN: DANIELS, DERRICK TORAIN**Redacted PII

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **21 Apr 2009 1432 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **GRP**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:** Anger Mgmt
**Appointment Comments:**
Notes Entered by: BACA, KERI 21 Apr 2009 1432

keb

AutoCites Refreshed by MCKEEVER, BRAD E @ 22 Apr 2009 1153 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |

**me/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**21 Apr 2009 1533**

**ility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

SERTRALINE HCL, 100MG, TABLET, ORAL Active TD #30 RF3 3 of 3 24 Feb 2009

SO Note Written by MCKEEVER,BRAD E @ 22 Apr 2009 1232 CDT

**Reason for Visit**

Visit for: post deployment symptoms: anger/depression.

**History of present illness**

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.

Visit is GWOT-related.

Not thinking about suicide noted "never" on Question 8 on OQ45, and no homicidal thoughts noted " rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level improvement from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 22 Apr 2009 1233 CDT

**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**

**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

Procedure(s): -Clinical Social Work Counseling Group x 1

**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**

**6. AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)**: 65

Disposition Written by MCKEEVER, BRAD E @ 22 Apr 2009 1233 CDT

**Released w/o Limitations**

**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 22 Apr 2009 1153 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed the Escalation of Anger, strong focus on developing and exercising self control, heading off anger at early stages, and adopting the humor alternative. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's**

**me/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

21 Apr 2009 1533
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

**presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 22 Apr 2009 1234

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **24 Apr 2009 1300 CDT** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
keb

AutoCites Refreshed by DOWLING, JAMES E @ 24 Apr 2009 1346 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
-
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD | 3 of 3 | 27 Mar 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**24 Apr 2009 1357**

**ility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

| | | | | |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | #30 RF3<br>TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

Vitals

Vitals Written by DOWLING, JAMES E @ 24 Apr 2009 1346 CDT

Tobacco Use: No, Alcohol Use: No, Pain Scale: 0 Pain Free

SO Note Written by DOWLING,JAMES E @ 24 Apr 2009 1349 CDT

Chief complaint

The Chief Complaint is: No specific plans but there is uncertainty about his future.

Reason for Visit

Visit for: Scheduled followup visit for individual therapy.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: Service member has had some marital problems and alcohol abuse issues which led to disciplinary action by the Army. It appears she will be able to remain in the Army and he is now addressing the issue of promotion. He and his wife are also talking and may or may not reconcile. Medication list reviewed No change.

Visit is GWOT-related.

Anxiety. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. Being upset by problems at home or work and concerned about work-related health problems. No sexual behavior complaints. Marital problems. No behavioral complaints.

Subjective

Service member discussed his process of growth particularly has has been influenced by the Army. He is exploring what he wants for himself in the future.

Physical findings

**General appearance:**

° Normal.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: ° Normal.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Mood was dysthymic. • Mood was anxious. • Affect showed worry. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Spiritual assessment:**

• Spiritual assessment Belief system is important but is not active church.

Objective

Service member continues to talk to his wife, he is trying to get enrolled in an upcoming pairs marriage who group. He is continuing the process of self exploration and goal setting. He appears to be coping well and denies any feelings of depression at this time.

A/P Written by DOWLING, JAMES E @ 24 Apr 2009 1349 CDT

1. **POST-TRAUMATIC STRESS DISORDER:** Continue individual therapy
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** Marital issues, occupational issues GAF 65

Disposition Written by DOWLING, JAMES E @ 24 Apr 2009 1349 CDT

**Released w/o Limitations**

**Follow up:** 2 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.

**me/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**24 Apr 2009 1357**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

60 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 24 Apr 2009 1358

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **28 Apr 2009 1353 CDT** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** walk in
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 28 Apr 2009 1353

prm

AutoCites Refreshed by MCKEEVER, BRAD E @ 28 Apr 2009 1608 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN | 3 of 3 | 27 Mar 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII
Sex: M
Sponsor/SSN: DANIELS, DERRICK TORAINO/Redacted PII
FMP/SSN: 20/Redacted PII
Tel H: Redacted PII
Rank: CAPTAIN
DOB: Redacted PII
Tel W: 229-518-4204
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
PCat: A11.1 USA ACTIVE DUTY OFFICER
CS:
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
MC Status: TRICARE PRIME (ACTIVE DUTY)
Status:
PCM: SANTORY-ORTIZ,JULIO
Insurance: No
Tel. PCM: 912 435-5594

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE
28 Apr 2009 1453
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

| | | EMPTY STOMACH, OR UD #30 RF3 | | |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by MCKEEVER,BRAD E @ 29 Apr 2009 1124 CDT
Reason for Visit
Visit for: post deployment symptoms: anger/depression.
History of present illness
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.
Not thinking about suicide noted "never" on Question 8 on OQ45, and no homicidal thoughts noted " rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level improvement from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 29 Apr 2009 1125 CDT
**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**
**6. AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0):** 65

Disposition Written by MCKEEVER, BRAD E @ 29 Apr 2009 1126 CDT
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 28 Apr 2009 1608 CDT
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed the Escalation of Anger, Part II, strong focus on developing and exercising self control, heading off anger at early stages, and adopting the humor alternative. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention,

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII
Sex: M Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
FMP/SSN: 20/Redacted PII Tel H: Redacted PII Rank: CAPTAIN
DOB: Redacted PII Tel W: 229-518-4204 Unit: WAQNK1 (0003 AR HQ 01 DET K1)
PCat: A11.1 USA ACTIVE DUTY OFFICER CS: Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
MC Status: TRICARE PRIME (ACTIVE DUTY) Status: PCM: SANTORY-ORTIZ,JULIO
Insurance: No Tel. PCM: 912 435-5594
000278

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

28 Apr 2009 1453

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By** MCKEEVER, BRAD E (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 29 Apr 2009 1126

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

01 May 2009 1410
Facility: Reynolds Army Community Hospital Ft. Sill, OK  Clinic: Mental Health  Provider: MCKEEVER, BRAD E

| | | | | |
|---|---|---|---|---|
| | | EMPTY STOMACH, OR UD #30 RF3 | | |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by MCKEEVER,BRAD E @ 01 May 2009 1413 CDT
Reason for Visit
Visit for: post deployment symptoms: anger/depression.
History of present illness
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.
Not thinking about suicide noted "never" on Question 8 on OQ45, and no homicidal thoughts noted " rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level improvement from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 01 May 2009 1415 CDT
1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**
6. **AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0):** 65

Disposition Written by MCKEEVER, BRAD E @ 01 May 2009 1415 CDT
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 01 May 2009 1407 CDT
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed Tips for Sleep Improvement, good interaction, acceptance of tech. (Cognitive restructuring)

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal**

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

01 May 2009 1410
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

actions.

Signed By MCKEEVER, BRAD E (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 01 May 2009 1415

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

Annex M

Printed On Jan 08, 2013

LOCAL TITLE: PSYCHIATRIST OUTPATIENT NOTE
STANDARD TITLE: PSYCHIATRY OUTPATIENT E & M NOTE
DATE OF NOTE: JAN 08, 2013@10:14 ENTRY DATE: JAN 08, 2013@10:15:05
AUTHOR: SOULE,ARTHUR B III EXP COSIGNER:
URGENCY: STATUS: COMPLETED

Psychiatry
This 40 year old veteran is seen in follow up treatment of PTSD. This brief psychotherapy session includes re-evaluation and management of medication. The current psychiatric regimen consists of [see below].
Current status is that he does have some PTSD from his 3 combat tours in Iraq. Not suicidal at this time. Not presently on medication. He had some difficult times dealing with the death and destruction he witnessed but is doing very well at the present time. He has recurrent intrusive recollections of war and occasional bad dreams of it. Some accentuated startling and hypervigilance are noted. Has made an excellent adjustment to civilian life.
Current medications are: na.
The veteran affirmed that he is on no new medications.
He has no side effects of consequence. He is not suicidal. Alcohol is not reported to be a problem.
On mental status examination the veteran is alert, articulate and appropriate. Mood is anxious but there is no suicidality. Oriented times three. Recent and remote memory intact. Good fund of information. No hallucinations, delusions. Thinking is abstract. Judgment is intact.

Diagnostically, the following is present.
Axis I: PTSD
Axis II: No diagnosis.
Axis V: GAF of 80

The PTSD symptoms which the veteran experiences are scarcely unusual for someone exposed to combat. I do not feel that they have made him unstable in any way and are more a matter of mild occasional discomfort. There is no security clearance issue here-- he is fully competent from a security clearance point of view.

Arthur Soule, M.D.
ACOS/Mental Health

/es/ ARTHUR B SOULE III, MD
MD, PSYCHIATRIST
Signed: 01/08/2013 10:39

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)
DANIELS,DERRICK TORAINO
Redacted PII
Redacted PII

VISTA Electronic Medical Documentation

Printed at TUSKEGEE VAMC

DEPARTMENT OF THE ARMY
SUITABILITY EVALUATION BOARD (DASEB)

RECORD OF PROCEEDINGS

IN THE CASE OF: CPT Derrick T. Daniels

BOARD DATE: 13 January 2011

DOCKET NUMBER: AR20100026510

---

**Board Determination and Directed Action**

1. The evidence presented does not provide substantial evidence that the document in question has served its intended purpose and that its transfer would be in the best interest of the Army. Therefore, by unanimous vote, the Department of the Army Suitability Evaluation Board (DASEB) determined the overall merits of this case do not warrant the relief requested.

2. The Board further determined the Board's decision memorandum will be filed in the appellant's Official Military Personnel File (OMPF) and the appeal documentation will be filed in the restricted section of the appellant's OMPF.

Presiding Officer

I certify that herein is recorded the true and complete record of the proceedings of the Department of the Army Suitability Evaluation Board in this case.

THE APPELLANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. Appeal Data:

a. Derogatory data being appealed: An Administrative General Officer Memorandum of Reprimand (GOMOR) while serving in the rank and grade of captain (CPT)/O-3.

b. Date of derogatory document: 29 January 2009

c. Date of appeal: 28 September 2010

d. Army Component: Regular Army

e. Current rank/Date of Rank: CPT/O-3/1 October 2002

2. The appellant requests transfer of an administrative GOMOR to the restricted portion of his Official Military Personnel File (OMPF).

3. The appellant states it is not his intention to foster sympathy for his transgressions, but to explain in full detail how he overcame his challenges after the GOMOR.

a. The appellant states the intent of the GOMOR has been served. He takes full responsibility for his actions and understands the ramifications he put others through from his dastardly behavior.

b. The worst of it all is that he emotionally scarred and humiliated his wife. His promotion was suspended; he embarrassed his entire family, especially his parents who planned on attending his promotion ceremony. He watched in humiliation as his peers enjoyed their promotions without him.

c. He was mortified in the presence of his peers and superiors, and is still bothered by the lack of judgment and the continuous horrible lies that destroyed his personal integrity. He contends he couldn't take reality and didn't admit the truth to his wife and others because he selfishly thought he was missing out on deserved happiness. He blamed his superiors for not appreciating his sacrifice during his deployment and was very unhappy where he was in his personal life.

d. He contends he became an alcoholic and gained a lot of weight, and was two inches "from walking off our old dining room table in hanging myself during the investigation." It was his religious faith that kept him from hanging himself. He was command directed for a psychiatric examination, spending 10 days for attempted suicide in the Red River mental institution, Wichita Falls, Texas.

e. He has not regressed since issuance of the GOMOR. He continued teaching; attended AA meetings; and received mental health care. He is still separated from his wife. He volunteered for a third deployment on an advisory team.

f. He was officially removed from the Fiscal Year (FY) 2008 major (MAJ) board.

4. The appellant provides a self-authored statement, dated 28 September 2010.

5. The appellant provides one supporting statement with his petition.

CONSIDERATION OF EVIDENCE:

1. On 29 January 2009, the Commander, Headquarters, US Army Field Artillery Center and Fort Sill, reprimanded the appellant for domestic assault and battery for beating, choking, and threatening his wife, for ongoing multiple adulterous affairs with women including one married to a deployed Soldier, and for conduct unbecoming an officer and gentleman.

a. On 16 November 2008, he had a sexual encounter with a woman other than his wife, returned home, and went to bed. His wife woke him when she realized he smelled of the other woman. He admitted to his wife that he was having an affair, and had just returned from her, confirmed her previous suspicions based upon e-mail traffic she had read, and then engaged in a fight with his wife. He attacked her by hitting her with his hands, then with a plastic baton, on her face and head to the brink of unconsciousness and leaving her with bruises still visible 5 days later. When she fell, he dragged her across the floor. He choked her, scratching her on her neck. He verbally threatened her to the point that she feared for her life.

b. He later explained to his wife that he met the other woman through an online website.

c. He admitted to the investigating police that he had engaged in affairs with several other women. His wife talked to one of the other women who revealed his other affairs, to include impregnating the wife of a deployed Soldier.

d. He admitted that he was the father of twins with the woman he met on the website, "onlinebootycall.com," and with whom he began a sexual relationship in June 2008 and continued to the present. Initially, he told the woman that he was separated from his wife and going through a divorce. Even after she learned he was still living with his wife, he continued the adulterous sexual relationship on a daily basis and after morning physical training, on lunch breaks, and anytime he did not have to be at work. He admitted to her that he had several other affairs during his marriage including with another woman whom he admitted he also impregnated.

e. The GOMOR was imposed as an administrative measure and not as punishment under Article 15 of the Uniform Code of Military Justice.

f. On 2 February 2009, the appellant acknowledged receipt of the GOMOR and elected to submit a response to the GOMOR. On 5 March 2009, he submitted a rebuttal to the GOMOR. He accepted responsibility for his misconduct.

g. The appellant's chain of command recommended the GOMOR be filed in his OMPF.

h. On 26 March 2009, the Acting Commander, US Army Field Artillery Center and Fort Sill, directed the GOMOR for filing in his OMPF.

2. The Officer Evaluation Report (OER) covering the period the GOMOR was issued (Change of Rater, 20080515-20090331), makes reference to the issues addressed in the GOMOR. It was a referred report. He was assessed as "Unsatisfactory Performance, Do Not Promote" and "Do Not Promote, Below Center of Mass, Retain," by his rater and senior rater (SR), respectively.

3. The appellant received a referred report covering the period 1 April through 30 September 2009. He was assessed as "Satisfactory Performance, Promote" and "Fully Qualified," by his rater and SR respectively.

a. The rater noted that the appellant failed to meet height and weight standards.

b. The SR noted, "[The appellant] has continued treatment for some of his personal challenges and I am confident that if he continues to improve he should be strongly considered for promotion to Major."

4. His last OER covered the period 1 October 2009 through 30 September 2010. He was rated as a Support Stability Transition Team Deputy Chief in Iraq. He was assessed as "Outstanding Performance, Must Promote," and "Best Qualified" by his rater and SR, respectively, with a recommendation for promotion now.

5. There is no other derogatory information in the appellant's official record.

6. The appellant was removed from the FY 2008 MAJ APL. There is no evidence he has been selected for promotion.

7. The appellant provides a supporting statement from his Team Chief (Colonel W), who recommends transfer of the GOMOR. He contends the appellant's performance and conduct as an officer is nothing less than admirable, and that he is highly regarded by his Iraqi counterparts and superiors alike.

8. Army Regulation 600-37 Unfavorable Information, Paragraph 7-2b(1), states that unfavorable documents may be appealed on the basis of proof that their intended purpose has been served and that their transfer would be in the best interest of the Army. The burden of proof rests with the recipient to provide substantial evidence that these conditions have been met.

ANALYST'S DISCUSSION AND RECOMMENDATIONS:

1. The appellant requests transfer of the GOMOR based on intent served. In order to have the GOMOR transferred, the appellant must show by substantial evidence that it has served its intended purpose and that it is in the best interest of the Army to transfer it.

2. The appellant contends the intent of the GOMOR has been served.

a. Less than two years have elapsed since the appellant received the GOMOR.

b. The appellant appears to accept responsibility for his misconduct; however, he presents numerous issues in mitigation of his accountability. To his credit, he has sought assistance for his personal and family issues, and has made some improvements in his personal conduct, which was noted in his last two OERs.

c. He received two OERs since receipt of the GOMOR. One of these OERs was a referred report. Although his performance was evaluated as outstanding on his last OER, insufficient time has elapsed for him to have demonstrated a solid performance over a sustained period of time.

d. His removal from the FY 2008 MAJ APL is noted; however, this result is viewed as the natural consequence of his misconduct. Inasmuch as he also received two referred OERs following the issuance of the GOMOR, the reprimand would only be one of the contributing factors for further non-selection for promotion.

e. While he did not provide a supporting recommendation from the imposing authority, he did provide a statement from his current team chief who attests to his outstanding professional and personal conduct. However, this statement alone does not satisfy the criterion of "intent served."

3. In weighing all the available evidence, it appears there is insufficient evidence to show the intent of the GOMOR has been served and it would not be in the best interest of the Army to transfer it at this time. Therefore, denial of his petition to transfer the GOMOR is recommended.

Legend:
ARNG – Army National Guard BNCOC – Basic Non-Commissioned Officer Course CI – Commander's Inquiry
DUI – Driving Under the Influence EER – Enlisted Evaluation Report GOMOR – General Officer Memorandum of Reprimand
IG - Inspector General LOR – Letter of Reprimand NCO – Non-Commissioned Officer NJP – Non-Judicial Punishment
OER – Officer Evaluation Report ROI – Report of Investigation SCM – Summary Court Martial SPCM – Special Court-Martial
UCMJ – Uniform Code of Military Justice USAR – U.S. Army Reserve

REPLY TO ATTENTION OF:

**DEPARTMENT OF THE ARMY**
United States Division-Central
Kharkh Area Command Advisory Team
APO AE 09348

28 September 2010

DA Stability Evaluation Board

President of the DA Stability Evaluation Board
1901 South Bell Street, 2nd Floor
Arlington, VA 7202-4508

Dear Mr. President of the DASEB,

It is not my intention to foster sympathy since my transgressions. My purpose is to explain in full detail how I overcame my challenges after the General Officer Memorandum of Reprimand filing. It's my desire the board will determine the General Officer Memorandum of Reprimand has served its purpose and it is in the best interest of the Army to transfer it from my performance to restricted file.

I take full responsibility for my actions and understand the ramifications I put others through from my dastardly behavior. The worst of it all is I emotionally scarred and humiliated my wife. My promotion was suspended prior to my 1 December 2008 pin on date. I embarrassed my entire family, especially my parents who planned on attending my promotion ceremony. I watched in humiliation as my peers enjoyed their promotion without me. Daily, I was mortified in the presence of peers and superiors. There is not a day that goes by that I am not bothered by the lack of judgment and the continuous horrible lies that destroyed my personal integrity. I couldn't take reality and didn't admit the truth to my wife and others because I selfishly thought I was missing out on deserved happiness. I blamed my superiors for not appreciating my sacrifice during my deployment and was very unhappy where I was in my personal life. I became an alcoholic and gained a lot of weight, exceeding the AR 600-9 standard. I was two inches from walking off our old dining room table in hanging myself during the investigation. I felt like the

DANIELS, DERRICK, T. Redacted PII Receipt Date: 2010/10/19 AR20100026510

Daniels, Derrick, T. Assigned To: Redacted PII Receipt Date: 2010/09/28 AR20100026119

whole world was against me. I was at my lowest point and felt like no one wanted to hear my story or cared to understand my feelings.

It was my religious faith that kept me from walking off the table, hanging myself. I was command directed for a psyche evaluation, spending ten days for attempted suicide in the Red River mental institution, Wichita Falls, Texas. I met other veterans there from Fort Sill and Fort Hood suffering from depression. Many, like me, recently returning from Iraq. As an officer, I shared my problems, as painful as it was. Coming from back from the fifteen month surge deployment, I thought I was invincible. But nothing was farther from the truth. This time away from the unit allowed me to focus on some deep inner problems that have plagued me for years. We shared each others pains by discussing what lead to some of the decisions that brought us to this point. I learned to communicate better in that hospital better than from any military school or college course.

After the official reprimand filing, I didn't regress. I don't blame my command for anything. I would have done the same thing if I was in their shoes. I am just thankful they saw enough in me not to pursue a court martial. They even allowed me to continue teaching on the platform. I was still impacting the lives of young officers, many getting ready for their first deployment. I continued my progression through A&A meetings, one-on-one sessions with my mental health care provider and weekly post-deployment working groups. These were the best part of my week as I found solace helping others, as well as myself, to cope. In addition, my wife and I were and still now separated. Having already bought a home a few years before, I purchased a new home two months before my expected promotion date. Without the promotion, I still had to maintain two households. So I received additional medical training to work weekends as an in home health care provider for the physically and mentally challenged. Working weekends generated extra money to maintain our bills. I needed to find a way to keep my finances intact

and did. It also kept me from frequenting bars on the weekends and most importantly, allowed me to regain some dignity.

I desperately needed to change my situation in order to continue my redemption. I felt I needed to prove myself more, so I volunteered for a third deployment on an advisory team. Due to my continued progress, the Army cleared me to go back to combat after coming back and I have demonstrated I can serve as a field grade in a very complex, tough mission. I was promotable at the time, placing me as an O-4 deputy team chief. I continue to serve admirably as the only captain on a forty plus team of O-4, O-5, and O-6 field grade officers.

On November 2009, I was officially removed from the 08 Majors board but that didn't falter my motivation. I welcomed it as a challenge and believe I have the ability to create my own destiny. In many aspects, this is the toughest deployment I have endured. The Support Stability Transition Team concept is still new and we are building the airplane as it flies. Establishing and maintaining sound relationships with our Iraqi counterparts despite operational, logistical, intellectual challenges all bind by corruption can often feel insurmountable. But my core principles have not changed on analyzing and solving new problems. Our two-man team was the least resourced. However, it allowed me to foster a very strong partnership bond with my counterparts, more than anyone else in our brigade. Building a partnership is something several field grades here are challenged with. I have developed the ability to take our challenges and exploit them as an advantage to accomplish the intent, involving patience and understanding. I attribute my honed skills with the trials and tribulations I experienced within the last year.

Even now, I still experience the subtle pain of explaining my ordeal with old friends and superiors I come across during my deployment. I witness the surprise in their facial expressions, but I get some comfort in their belief that I can get through this. I love the Army. I have been in the Army since I was seventeen. It has always given me a sense of purpose when I was a

troubled young teen still looking for an identity. So, I humbly ask to continue the momentum. Since the filing, I have displayed a strong character. I am reliable, dependable and most of all committed. I still want to have a solid family of morale character; just like the one I was raised in. Not only have I regained the weight control standards of AR 600-9, but I am in the best shape since fifteen years.

I possess the skills set the Army needs as an advisor to support building strong partnerships in Iraq and as we transition to a more advisory role in Afghanistan. As a commander, I have always giving Soldiers the opportunity for a second chance. I have been a survivor all my life, even when I didn't believe it. Every Soldier that has served under me may not have liked me, but I guarantee they would say I was fair. I am pleading for the same opportunity. I guarantee I will not waste it if granted.

Sincerely,

DERRICK T. DANIELS
CPT, AR
Karkh Area Command Advisory Team



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
251 18TH STREET SOUTH, THIRD FLOOR
ARLINGTON, VA 22202-3531

ARBA CASE NUMBER:  AR20120015382

OCT 3 1 2012

SAMR-RB

MEMORANDUM FOR Commanding General, U.S. Army Human Resources Command,
ATTN: AHRC-OPL-R, 1600 Spearhead Division Avenue, Fort Knox, Kentucky 40121

SUBJECT:  Officer Elimination Case
(DANIELS, Derrick T., Redacted PII CPT, AR, RA)

1.  On 18 April 2012, a Board of Inquiry recommended Captain Daniels be Discharged
from the United States Army based on misconduct and moral or professional dereliction,
with an Honorable Discharge Certificate.

2.  On 23 October 2012, the Department of the Army Board of Review for Eliminations
recommended Captain Daniels be eliminated from the United States Army based on
misconduct and moral or professional dereliction, with an Honorable characterization of
service.

3.  I approve the Boards' recommendations to eliminate Captain Derrick T. Daniels from
the United States Army based on misconduct and moral or professional dereliction (AR
600-8-24, paragraph 4-2b), with an Honorable characterization of service.

4.  Recoupment action will be conducted in accordance with Army Regulation 600-8-24,
paragraph 1-16, and Title 10 United States Code Section 2005.

BY ORDER OF THE SECRETARY OF THE ARMY:

CATHERINE C. MITRANO
Deputy Assistant Secretary of the Army
(Review Boards)

Annex O

30 June 2011

Redacted PII

To Whom it may concern:

We are the parents of Derrick Daniels and these are some of the observations noticed about Derrick after his last two tours in Iraq:

We are not sure about the years, we believe from 2003-2004 and from 2007-2008. He seemed jumpy and moving all the time. He was very, very easy to get upset. He would sit and just stare as there were problems he couldn't cope with. He was very depressed at one time he expressed to us his life was over and he didn't want to live.

He developed a drinking problem trying to solve his problems. We believe his drinking problem is better. We believe all his problems can be solved if he continues to get the right medical attention.

Sincerely,

Lauriene Daniels
Lauriene Daniels

Arthur Daniels
Arthur Daniels

Blanche R. Lewis

My commission expires
March 10, 2015

Annex P

**BOARD PERSONNEL**

| | |
|---|---|
| PRESIDENT | COL Douglas C. Cardinale |
| MEMBER 1 | LTC Stanley P. Fugate |
| MEMBER 2 | LTC Brian K. Hathaway |
| ALTERNATE MEMBER | LTC George E. Lewis |
| RECORDER | CPT Todd Chard |
| REPORTER | SPC Xiara Betancourt |
| LEGAL ADVISOR | CPT Amanda Presson |
| RESPONDENT COUNSEL | CPT Sarah Rykowski |
| RESPONDENT | CPT Derrick T. Daniels<br>Charlie Troop, 5-7th Cavalry Squadron,<br>US Army |

**PROCEEDINGS**

The Board of Inquiry was held at Fort Stewart, Georgia. The Board was called to order at 0940 hours, 18 April 2012.

The Board was appointed by Memorandum of Appointment, Headquarters, 3d Infantry Division, Staff Judge Advocate, dated 21 February 2012. A copy of the Memorandum of Appointment and Notification Memorandum were furnished to each member of the board, to the Respondent and the appointed counsel, and to the Reporter for incorporation as attachments to the record as Enclosures 1 and 2.

The Defense waived the reading of the orders.

All members of the Board were present.

The Legal Advisor, Recorder, Respondent and Respondent's Counsel were all present.

The Reporter was sworn by the Recorder.

The Defense stated that they will not call any member of the Board as a witness in the proceedings.

The Respondent stated his date of rank, 31 October 2010.

The President notified the Respondent of his rights and privileges.

The Defenses stated that the Respondent did not require a complete reading of the rights.

The President asked if there were grounds for challenging.

The Legal Advisor stated there was previous e-mail traffic between LTC Fugate and both Government and Defense.

The Defense stated that they had the email disclosing involvement prior the hearing. The Defense had no objection to LTC Fugate's grounds for challenge. The Defense requested that LTC Fugate's email be included in the board proceedings for filing purposes.

The Government had no challenges.

A voir dire of the members was conducted by the Respondent's Counsel.

The Defense had no objection to any members of the Board.

LTC Lewis, alternate board member, was permanently excused from this Board.

The Respondent's Counsel had no challenges.

The board members were sworn by the Recorder.

The Legal Advisor was sworn by the Recorder.

The Recorder was sworn by the board President.

The Board convened at 1005 hours.

The Government introduced its evidence to Board President for review and its witnesses for argument purposes.

The Defense stated it hadn't seen two pieces of evidence. The Defense had the following objections to the evidence: relevance of the evidence; introducing evidence from a website; to a portion of the regulation introduced; and to Government Exhibit 3.

The President asked the Recorder what was the intent of the evidence.

The Recorder stated that the primarily purpose of Government Exhibit 2 was to outline the definition of Domestic Violence according to AR 600-20.

The Legal Advisor stated that the definition is a regulatory function.

The Recorder presented the second point presented in AR 600-20, para 4-23c(8).

The President stated that AR 600-20, para 4-23c(8) will not be admitted.

The Recorder acknowledged.

The President requested that the Recorder explain the intent of the evidence.

The recorder stated it was to identify the mindset of the Respondent during the course of the adulterous relationship and to rebut his minimization of his recantation.

The Defense stated that the document provided and the Respondent's sworn statement detailed his mindset.

The Defense had no objection to Mrs. Brown's statement.

The Defense stated that the Government Exhibit 1 had no relevance to the case.

The Recorder made a statement.

The President deferred making a decision at this point.

The Recorder made a statement about the Army Weight Control Program in AR 635-200.

The Defense stated the AWCP is in AR 600-9, which applies to both enlisted and officers.

The President admitted the evidence for context purposes.

The Defense stated the discovery issues in getting evidence; the Respondent's intent to move forward with the recording of Detective Peralta; and with the Government's intent to call Detective Peralta as a witness.

The Defense wanted these issues documented for the record. The Defense submitted Defense Exhibit #1: Objections of missing discovery and failure to timely provide access to witness.

The President called a recess at 1030 hours to seek legal advice.

The board reconvened at 1039 hours.

All parties that were present before the board closed were again present.

The Recorder stated he did not intend to call LTC Compton, the 15-6 Investigating Officer, unless the Defense and Board Members desired to speak with him. [LTC Compton was unavailable as a witness due to a change in his working schedule.]

The Defense stated that LTC Compton was not an essential witness and they could make an argument without the witness's testimony.

The Recorder stated that there was an email provided on 11 April 2012 which outlined the witnesses. The Recorder stated that LTC Compton and Dr. Parodi have been available telephonically, they are TDY, and there was no power to subpoena.

The Defense stated that according to regulation, the Defense had 10 days notice of the evidence and witnesses to be presented by the Government.

The Defense stated that they would like the Government to continue efforts to locate the Detective Peralta's recording. CPT Daniels had the opportunity to submit additional matters to the CG and to the Board of Review. If the recording existed and Detective Peralta could get it, Defense wanted the Government to continue to try to get a copy.

The Legal Advisor stated there was nothing prohibiting the Defense from getting the recording if it still existed; the regulation only stated that the Government had to turn in what it had in its possession, and based on the email traffic CPT Chard had done that.

The Defense disagreed with the Legal Advisor's definition of what the Government is; and stated that the Government is United States Government, all state Governments, and all United State's law enforcement. The United States includes county jails, prisons… so the Government is not just CPT Chard.

The Government called Detective Peralta and was duly sworn.

Detective Roberto Peralta, CID, Fort Stewart, Georgia, was called as a witness for the Government, was sworn and testified in substance as follows:

Direct Examination

My name is Roberto Peralta. I am a Sergeant. I was lead patrol at the time. I was a detective at CID. I was involved in CPT Daniels's investigation. I was the primary investigator for the alleged assault that occurred. At that time I wrote a report. The responding officer takes the information. Information was taken from the victim, CPT Daniels' wife. She alleges that she was assaulted by her husband. Mrs. Daniels approached her husband to kiss him and she smelled another woman's vagina on his face and she attacked him. She slapped her husband and I guess his reaction was assaulting her back. I had a chance to speak with CPT Daniels. I did not type the narrative. I did not have the police report at that time. I advised CPT Daniels of his rights/warnings and asked some questions if he assaulted his wife and he said he did. After I did the interview, I went and typed the narrative. I must have gotten the information from one of the two parties. If I typed it in that statement, I got that information from CPT Daniels.

The Defense objected on relevance.

The Legal Advisor stated the Recorder's question was relevant.

The President overruled the objection.

Direct-Examination

I conducted my investigation in a fair and impartial manner. We do not forward it to the state prosecutor for prosecution; this incident was domestic abuse and is a misdemeanor in the state of Oklahoma. The victim has to sign a citizen statement and proceed to obtain charges from the city prosecutor, so it depends upon the victim if she wants to see justice.

No further questions by the Recorder.

Cross-Examination

I am retired from the Army as a First Sergeant. I served 20 years in Field Artillery.

The Recorder objected on relevance.

The President overruled the objection.

Cross-Examination

I retired in 1998 and went to the police academy. I don't investigate adultery, I investigate assault. I was notified on a Friday about this case. I was notified of the incident at approximately eight in the morning. I believe I was in contact with CPT Daniel at his battalion headquarters at about ten thirty to eleven o'clock that morning. The alleged incident occurred on a Sunday, about six days prior reporting. In the state of Oklahoma, if an incident is not reported within 72 hours, is not a requirement that anyone will be arrested. There is no probable cause for arrest if it is older than 72 hours. In the state of Oklahoma, injuries upon the victim must be within 72 hours to establish probable cause. When it is older, the victim has to make an official complaint. Is called a citizen statement and the victim takes that citizen statement to a local prosecutor to defer charges. CPT Daniels admitted he assaulted his wife after she has slapped him. In Oklahoma, we try to establish the person who attacks first or who is the aggressor. The aggressor would be the one apprehended, not both parties. Out of the two, you would have to establish the aggressor. In this case it was Mrs. Daniels who assaulted her husband while he was asleep. I interviewed her later that day. She told me a similar statement. She was informed that she would have to fill in a citizen statement and a family guardian has to be there to assist her. I did not have additional involvement after the interview. If the prosecutor and victim file a charge I would get a subpoena. That was 3 to 4 years ago and I never got a subpoena, so this was never filed or pursued. Based on the prosecution, it is in the case management to put if he stated that he had multiple affairs that may be true. I have no memory of that case. I have not been able to review it yet. As I recall it was one woman. CPT Daniels was extremely cooperative. He could have invoked his right to an attorney and not give a statement, it had no difference, I had nothing against him but he was very cooperative during the investigation. So was his chain of command. I do not recall speaking to LTC Compton. It was recorded, I attempted to find the recording this morning, but I have no knowledge of it or where it could be. Sometimes my office holds onto recordings, but if there is no criminal prosecution then they may go ahead and delete them because of the amount of space that this takes. The first time I heard from CPT Daniels' dismissal from the service was on Monday, two days ago. Yes, it has been four years since that

investigation. If this is based solely on his dismissal upon his service, I think it could be a miscarriage of justice on CPT Daniels. If there was anything else in his record why he should be dismissed I can understand. This is just based solely on this incident that occurred three to four years ago, I think it could be wrong.

No further questions by the Defense.

Questions by LTC Fugate

No, alcohol was not involved.

No further questions by the board members.

Re-direct examination

I was not aware of CPT Daniels' memorandum claiming he assaulted her on two occasions. No, I was not aware of him hitting her one time with a plastic baton in the head and later strangling her. No, my understanding is that he was asleep. I have handled hundreds of domestic violence cases, assault with weapons, murders of children. Yes, but most victims you would have heard sooner. I don't know the victim's motivation was in this case in delaying in going to the law enforcement or the ER. Lots of victims tend to state that they are scared. For some of them that might be true, but we always heard they called the police. I have seen recantation of a spouse who has been a victim of an assault.

The Defense made an objection because the question was not in evidence.

The Legal Advisor said it was an administrative procedure.

Re-direct examination

That might be true (many victim of domestic violence have many different reasons why they might not report or minimize what the report is).

No further questions by the Government.

Re-Cross examination

True and there is also the victim that choses to go forward because they are angry and want to harm the individual's career. Yes, people go forward even when the allegations are not true or exaggerated. There are a lot of reasons for people to choose to go forward or not to go forward. There are many reasons why we can request to delay the reporting. Yes, when the victim showed up to the Reynolds Army Hospital.

No further questions by Defense.

LTC Hathaway

No, all we know is that any victim that shows up to a hospital and show signs of abuse the police is automatically notified. I would not know who called us; that might be between her and the officers.

President

I have done hundreds of domestic violence cases. This case is four years old and I have not had the opportunity to review this case. The reason is I was notified this Monday afternoon, I had the day off; I have not been in my office yet. Yes, the main reason is that this is the first and only case I had of domestic abuse on an army officer on Fort Stewart. I saw a lot of soldiers, but the only commissioned officer I had to investigate of domestic abuse was CPT Daniels case. It was pretty strange that occurred five days before; don't know the motivation to proceed at that time. It stuck out me with the fact that I am a retired first sergeant. I interviewed both CPT Daniels and Mrs. Daniels. At that time she did not wanted to prosecute she said she did not wanted to do anything; however, the family advocacy from Fort Sill was pushing that she files the charge and convinced her to prosecute; if that happened or not I do not know. CPT Daniels was very cooperative. He was not disrespectful at all.

No further questions by the board members.

Re-cross examination

No, I don't believe we discusses if this was the first time of a domestic abuse incident.

No further questions by Defense.

The President stated the witness is excused and not subject to recall.

The Recorder stated that the Government will call Dr. Parodi, who is currently TDY and will not be available until noon.

The Defense stated that they still had three telephonic witnesses and one in person.

The President asked the Defense if she had any evidence to present to build her case.

The Recorder stated that the 15-6 had been included in his packet.

The President asked the Legal Advisor if Defense could go forward because of the Government witness delay.

The Legal Advisor stated the President could proceed if there were no objections.

The President called a recess at 1117 hours.

The board reconvened at 1132 hours.

All parties that were present before the board closed were again present.

The Defense called COL Bennie Williams.

COL Williams was duly sworn in.

COL Bennie Williams, Jr., Retired US Army, was called as a witness for the Defense, was sworn and testified in substance as follows:

Direct examination

My name is Colonel Bennie Williams, Junior. I have been a Colonel since October 2006. I am currently a board member for the Military Review Board within the Army Review Board Agency. I am assigned to the Pentagon with duty in Crystal City. I have been in this duty position since December 2010. My previous duty position was as a Stability Transition Team leader with 1-38 AV at Fort Stewart. I have been in the Army almost twenty years in September. I am an Infantry Officer. The source of my commission is ROTC from South Carolina State University. I deployed in Desert Shield/Storm. I deployed with the STT to Iraq in January 2010 through December 2011. I reported to Fort Stewart in September 2009 in preparation for deployment with the brigade. I know CPT Derrick Daniels. I met Derrick when I reported to Fort Stewart along with 35 other officers. When I met him, like him, I was like many other officers going through training on how to perform my STT duties as well as integrating into the unit. I was able to see his duty performance, mostly within a classroom environment or training environment on post, but nothing outside Fort Stewart at that time. He came to work with me during part of the train up and mostly when we deployed. We deployed in January 2010. We assisted and partnered with the Iraqi police and we were their advisors. We were the link between the unit and the Iraqis. I advised the Iraqi counterparts. We assisted them with their problems and provided some support. My particular team was with the Second Federal Police Division and I had a sub-team. Derrick was in one of the sub-teams within the brigade. During deployment, I had the opportunity to observe Derrick's duty performance. I interacted with Derrick on a daily basis. We were on a FOB with American Forces and the Iraqi Federal Police Force. I saw him on a daily basis. He had daily reporting responsibilities to me, which I had to the brigade. Derrick was in unique circumstances where we were going uncover from his brigade. So all the equipment that we signed for, he pretty much had to turn that in himself while the LTC did his part with the Iraqi's Brigadier General. Derrick was one man making sure all the equipment was turned in. He did that with little to no guidance and that's why we felt confident with him being able to do that. Yes, at some point he left our STT. When we were uncovering the brigade, we started restructuring the unit that we were covering on based on who is forced to leave it. Derrick went away from my team, but not by my choice. I tried to keep him actually. He went to the Academy of Action Center (AAC). He went to work for COL Atcher. I discussed him as well as other officers. COL Atcher wanted to know what kind of guy he was. I told him that were some things that had actually happened in Derrick's past that

were probably threatening his career. However, when you saw him perform his duties you would not know that. Derrick was one of two CPTs and everybody else were MAJs and LTCs, and maybe a handful of COLs. I think the other CPT got promoted, so Derrick was the only CPT and I am pretty sure it generated conversation as to why he was not a MAJ. So, that is why I addressed this with COL Atcher. I checked back with COL Atcher later and he was more than happy with his performance and it was reflected in his evaluation. He was very pleased with Derrick's performance. Derrick's movement was pretty much done by brigade. I think he just got caught in the salami slice. Yes, I am aware of why Derrick is now facing a board. I became aware while we were deployed. Derrick wanted HRC to move his paperwork to the restricted fiche. I wrote a letter in support of that. I could only speak to his performance before me. I don't condone the actions at all, but I think he has learned from it. And I think he has recognized how severe his actions were based on that and what I saw on his performance. I found Derrick could be very forthcoming, honest, and he was a hard worker. I was very surprised of the stuff he would share with me. I remember us sitting down and I said, "Hey, how do you make it from day to day?" He said, "I am a Soldier, just one day at a time." I can say without hesitation that I would work with Derrick again if I had the opportunity. From what I have seen of the Soldier in action in the performance of his duties, I would not have any problem working with Derrick again. My job here, I see a lot of young officers that make mistakes. I see a lot of good young officers. I do think that they have some retainability. I would say Derrick would be one of those. He is one of the people that given the amount of time that he has put into the Army, serving this country, multiple deployments. Again, I don't condone his misconduct, but at the same time I look at the total Soldier in this job. Yes, I would deploy with him again. I would trust him to lead Soldiers. I think that Derrick's multiple commands at the company grade were indicative of his leadership and his commitment. I witnessed his hard work, a Soldier with a lot of integrity, who cared for the job and the mission. I feel Derrick is best fit for any type of operational job. Derrick is a go getter type person. If you witness his performance you would not think that, at least when I met him, that you were looking at an individual that just got pulled off the MAJ's list and had the issues he went through. I would have not bought it until he shared it with me. His promotion potential, if it was based on just judging his performance, I still think he has the potential. But that is not the reality of things. I think his misconduct will likely play into his promotion potential. I think he is retainable, that he is still a value asset to the Army and any team he is on. But I can't speak to a selection board. He may draw a group of guys who will see his case differently. I think he does have leadership potential, he has demonstrated that. He demonstrated how he worked with the Iraqis and guiding them with some of the issues. No, Derrick seemed just like any of the officers there, but I can't think of anything that made me question his ability.

No further questions by Defense.

Cross examination

I could not tell you what Retention Control Point is. Yes, I am aware that he has been in the Army since 1998.

Cross examination

A young officer may request through HRC to get evaluations and GOMORs moved to their restricted fiche or in some cases request for total removal. We also reviewed cases when officers were being eliminated from the Army and when officers resign in lieu of court-martial. We also do grade determination for officers retiring who have some type of misconduct in their files. So, my statement was that I see a lot of incidents where officers of all grades have misconduct in their files. Some of them were young officers making mistakes. I think it negatively impacted CPT Daniels' promotion potential because he was pulled off the promotion list. Derrick requested to have the derogative paperwork moved to the restricted fiche and it was denied if I am not mistaken. I was here when that happened. I was not even selected for that board. I can't speak for what a selection board may do, but I have seen and I am sure the panel has seen crazy things happen with some selection boards. I am a little outdated on the specifics of the domestic altercation that occurred. I do know there was physical contact, that there was pushing and someone got stroked, I do know that. Now that you have said it, now I remember the plastic baton. I may have read about the crying, that was first brought to my attention when we were in Iraq about 2010. Derrick was very forthcoming about what he shared with me, but I have not read anything since then. I don't remember the strangling or that, I do vaguely remember the baton you mentioned. I don't recall reading a police report. I am not saying it did not exist. I know there was some talk of an affair, but I don't recall him admitting having an affair with multiple women. I don't recall reading that. I was not aware he was not in compliance with height and weight since 2008. I can tell you he was in compliance while we were deployed and for the entire time that we were together. While down range, we were required to take a PT test and I don't think there were any issues there, at least at that time. I am not sure about now. I don't recall he stated that was the reason why he was out of compliance. I know through some of the conversations we had that he had some marital problems. I am sure he did state the reason why the assault occurred that night. I remember him talking, perhaps not addressing some issues from deployment, while he was in command. I remember him telling me about times that he did not feel part of the team. He did not feel that certain people appreciated his job and performance and he was dealing with all of that. I can't recall whether or not he stated that made him turn to alcohol. I don't recall if the incident involved alcohol. He had two commands. I don't think life was easy for him.

No further questions by the Government.

No questions by the Defense.

LTC Hathaway asked CPT Daniels how many years of service he had and he answered over 17 years of service.

LTC Hathaway

Sanctuary is something that has not been spoken about. I have not heard anything. We actually have sanctuary guys in the group that went to the STT. CPT Daniel's potential to

stay on active duty actually remains with you guys, or starts with you guys. I think if you guys decide to retain, they can allow him to retire. I think he potentially can get there, but it all depends on what they decide and what the course of action is going to be in terms of reducing the force. I don't have any other information to share with you about Sanctuary.

COL Cardinale

Through the years I came in contact with a lot of people. Even in my shortest time in the job, I came in contact with a lot of people. I think what I remember most about Derrick and will always remember is that even in his challenging times during his career, he was able to put the mission first and himself last. And I know that his past weighs in his mind. I know it was hard for him to be pulled off the MAJ's list and then be surrounded by other people who were going over their careers. But at no time did Derrick let that pull his motivation and I think that is a quality that a lot of people should have in terms of the mission. We put a lot of stuff on him to get the stuff turned in. I talked to LTC Compton and he said he was making it happen and he was blessed to have him. I remember Derrick's commitment and his honesty. Derrick has performed in a manner that proves that he is a valued asset to the Army, the mission and the potential future for increased performance or continued solid performance lies within him. There is no question in my mind that he would not be successful in doing what he has been doing. Then you asked me for promotion potential, but I can't speak for the board. But probably the truth be told that the promotion potential is not that high given of what is going on with the draw down. If I were voting a case, I would take into consideration his service, multiple deployments, the multiple commands. I am not sure when he was told he was going to deploy again, but that was prior to him being pulled of the list.

No further questions by the President or the board members.

No questions by Defense.

No questions by the Government.

The witness was excused and not subject to recall and was duly warned.

The Recorder stated that Dr. Parodi was available and ready to testify.

The President called a five minute recess at 1210 hours to seek legal advice.

The Board reconvened at 1216 hours.

All parties that were present before the Board closed were again present.

The President asked CPT Daniel's when the last time he was in contact with COL Williams.

came to 1-77 Armor where he served as my S1. Then he was Alpha Company commander and then HHC company commander. He arrived to the 1-77 the month before I took command about 21 June 2005. He served as an S1 until December 2005, and then he took command of Alpha Company until January or February 2006. Primarily he was on the order of merit list because of the dedication he showed during the time he was the S1. He was selected to be the Alpha company commander in preparation for deployment. We actually deployed to Kuwait about August 2006. We did all our activities in Kuwait and then we deployed. The battalion cross-attached Alpha company to 1-18 Infantry when deployed in Bagdad. They left Kuwait about the end of September or early October 2006. Yes, I did have the opportunity to observe CPT Daniels' duty performance. In Garrison, he was doing the train up for approximately the entire year of 2006 up until the deployment. We had a training cycle. CPT Daniels was focused, his duty performance was outstanding. I think that was articulated and written in the evaluation report. That led him to be selected to become the Commander of Headquarters Company which was the largest company in the task force. Based on the recommendation to the brigade commander, at that time he was selected in combat and based on his performance in Baghdad, which was where the brigade commander was, he was soon selected as commander of HHC. My assistant battalion commander, which at that time was LTC George Glace, frequently visited me at Ramadi. He also visited me in Baghdad twice during the time Derrick was in command. We discussed his performance and based on his performance, he agreed with my recommendation for him to assume command of HHC, I think in January or February 2007. In Ramadi there was not a day from the time we assumed responsibilities in September/October 2006 until April 2007 that I had combat patrol lead that was not engaged. During that period of time, I lost from my task force a total of 12 Soldiers to IEDs and other forms of combat engagements, so it was very hectic. Understand that during that time, that was pre-search activities, so late 2006 to 2007 was the deadliest time for troops in Iraq to include the Baghdad area because that was the time when the EF PID was introduced in the area. CPT Daniels joined me in Ramadi when he took over HHC in January/February 2007. We deployed about 15 November 2007. I worked with the 8-35 task force while I was in Ramadi, compiled by HHC and Charlie Company. I also had two infantry companies, Bravo Company 1-18 and Bravo Company 1-26, and also Charlie Company, 9th Engineers. He was the company commander of the largest and most diverse company in the task force. That is a difficult job, especially in combat. Our area of operation with the task force was probably 600 square miles because it had everything from west of the bridge in Ramadi up to the west, which is the largest task force area in and around Ramadi. We also managed over 1200 Iraqi police. We were partners with the Iraqi and the army battalion. We all were responsible for the ER forces, that is the emergency forces and also the highway patrol. I left probably January 2008. He was still in command of HHC when I left. As I explained earlier, I had the largest area of operations. I had companies that maintained seven operations. I received the email; I can't exactly remember when it was, probably in 2009 or 2010 from COL Burton that asked me if I knew anything that was going on with Derrick. I said I didn't. He said he received a notification that CPT Daniels was being investigated. I asked him if he wanted me to find out what was going on and he said no. The next thing I heard was actually from Derrick about last summer. He laid out what activities he had been engaged in what was being considered as far as his future.

My understanding of those allegations was that he got into extra marital affairs. It was wrong, he knew it was wrong, I think he admitted that he was wrong. This is the first time I am aware he assaulted his wife when she found out of his extra marital affair. I met her when she was participating at the FRG. I remember during the deployment Derrick said his wife was going back to the Oklahoma area to continue pursue her master's degree. I asked him if there was anything I can do for her. The next time I saw her was after I changed command when my wife and I were home on leave. We saw Wendy in the mall. At that time she said we just missed Derrick. He worked an assignment to go back to Fort Sill at that time. That was the last time I saw Wendy. We just spoke for about 15 minutes. Yes, I did discuss the allegations with him when he called me last year. First, I told him I was very disappointed in him. I asked why didn't contact me earlier when that happened and he told me he was embarrassed. I reminded him to just contact me if he ever needed to talk to me about anything. I scolded Derrick for not calling me. He let me know what was going on with his career and within his life so I could counsel him and mentor him. I told him not to be embarrassed now. He needed to take responsibility for the things he did. There was nothing he could do to change it. The only thing he could do was to move forward and make a commitment to straighten his life out. Yes, I would work with CPT Daniels again. Once again, we all make mistakes. I will judge nobody because we all make mistakes. We are not perfect. I think he does have the capacity to continue his service in the Army. He has learned, he admitted that he did wrong. We have challenges and we are going to have more challenges as we continue to disengage from Afghanistan. I think a leader like Derrick has proven his leadership ability and has also admitted that he did wrong. He pursued to correct those deficiencies and that is the type of leader that we know. He understands what the Soldiers are going through. I think he enrolled in some counseling sessions and support groups that helped him overcome some of the problems he was having with alcohol and the behavior issues he was having. Yes, I would deploy with CPT Daniels again. He is the type of leader that a commander and Soldiers need because he will cover your back and make sure that he understands what the mission task and purpose is. I would recommend him as an advisor during the deployment. I cannot say I recommend him for command, but I would as a staff officer, especially an operational staff officer and training officer because of the stability he exhibited during the train up for deployment. He was phenomenal in that role making sure the Soldiers understood the mission task and purpose, especially during the cultural training. He had the capacity to lead the training to the fullest making sure that Soldiers understood they needed understand the culture going to the Iraqi theater conflict and that was essential to the success that we experienced in Ramadi. Yes, he was a branch transfer from Field Artillery. He adapted aggressively. He had two opportunities in command. During two gunneries, Derrick's company was at the top.

No further questions by Defense.

Cross Examination

His distraction was related to deployment. Logistical support and analysis was his primary role while he was HHC Commander. He and the first sergeant made sure our troops had everything they needed. Sometimes they would leave at 0400 hours and would not get back until over 24 hours later because they had to do a tactical pause during the logistic operation. I can remember one time when they were delivering supplies to a FOB and they were gone for 72 hours. CPT Daniels made sure that the logistical plan was synchronized with the battalion executive officer, making sure that he supported the operational concepts and plans of the battalion. He was responsible for all that activity to include log packs and maintenance, even though all the mechanics were in Baghdad.

The recorder presented the ORB to the board members.

The Legal Advisor stated that a complete packet of CPT Daniels' OMPF had been provided.

Cross Examination

He would make sure the patrol briefs were done and that the rehearsals were executed. HHC had approximately 384 personnel. He made sure that every HHC patrol that left the gate was properly planned, resourced and executed. That was his responsibility as the company commander.

The recorder read one of the bullets from CPT Daniels' memorandum dated 30 June 2006.

Cross Examination

I can tell you exactly were that came from. Baghdad in 2006. At that time, I don't know if any in the room recalls, Sadder was killing Sunni citizens and dumping their bodies on the side of the road. I can remember vividly, and Bravo company was responsible for picking up those bodies identifying them through the proper channels. At that time in Baghdad, there was no acting partnership with the Iraqi police, so if we wanted that to happen and we had to make that happen. He was not on every single patrol. As a company commander, especially in Baghdad, he was out and about with his troops. He was in Ramadi. As a commander you have to be out on the patrols so you are in the game and get a true understanding of the area of operations. He would be out in the area of operation much more in Baghdad than he would in Ramadi. He and the first sergeant spent an exorbitant amount of time in the field. I think I spoke with CPT Daniels about his extra marital affair somewhere between May and June 2011. I can't recall if he mentioned the assault. We did talk about how obsessed she was, but I can't recall discussing the assault with him. I think I do recall a discussion about emails [of him and his mistress] and some of the activities that the mistress actually communicated to the command. I did not know that CPT Daniels destroyed the emails. I was not aware that he strangled her and said that neither of them had to get hurt. I know adultery is wrong and is in the good keeping of the Army, but I am not willing to judge. I think people can learn from their mistakes and they can persevere and overcome their mistakes and they can continue, in this case, to serve our nation because they are committed in serving our nation. Everybody has done something wrong.

I think he can overcome this. Especially when he admitted that he did something wrong. There is a difference when you don't admit to doing something wrong than taking responsibility. I don't recall him admitting committing the assault to me.

No further questions by the Government.

Re-direct Examination

I was only concerned about the assault. One corrective action I would recommend is counseling. I still think he can serve the Army and our nation. He has served 17 plus years in the army. That is a commitment. That commitment should not be taken in light because only one percent of our nation is willing to serve. I think they should be allowed to serve. I knew there was some type of counseling, I just did not know it was family advocacy. Once he has completed a period of observation, he should be allowed to continue his service until his retirement or beyond. His pattern of performance up to this instance was exemplary. And he is taking responsibility. His performance after the incident demonstrated a leader and that he was willing to sacrifice and serve his nation.

No further questions by Defense.

LTC Fugate

Based on the activity, I can't truthfully recommend a promotion to MAJ right now. Maybe if it was wartime, I would reconsider that. But based on that error I cannot truthfully say that I would recommend him for promotion.

COL Cardinale

I did ask other company commanders if they knew what was going on with Derrick. Nobody heard from Derrick. And I did not hear anything from Derrick until I was back in the States, which I think was last spring. I talked to him and asked why he did not talk to me. His answer was that he was embarrassed. In my opinion, Derrick will not make the cutline. Today's percentile is below 50% now I think. I don't think he would make that cut.

No further questions by the board members.

No further questions by the Government.

The witness was permanently excused and duly warned.

The Defense called COL David Atcher.

COL David Atcher, G4, Fort Knox, Kentucky, was called as a witness for the Defense, was sworn and testified in substance as follows:

Direct Examination

I have been in the Army a little over 29 years. I am actually on Permissive TDY. I will start my transitional leave in about two weeks. My retirement day will be 30 June 2012. I have been a COL for about six years. I am currently a logistical officer. I elected to transfer as MAJ where I was a transportation officer. My source of my commission is ROTC. I am a graduate from the University of Kentucky. I have deployed. I had an operational deployment back in the 90s. I deployed in 2009 and 2010 to Iraq with an STT. We were assigned to 1st Brigade, 3ID. Yes, I have helped command before. I commanded as a company commander and I commanded a recruiting unit. I did a battalion command with the 25th Transportation Battalion in Korea from June 2002 to June 2004. I know CPT Daniels. He was a member of our Stability Transition Team. The entire team was about 44 to 48 folks that were attached to the brigade. He was attached to my specific team in about either June or July of 2010. I didn't know him on a personal basis, he was part of a larger group. We trained with the brigade. We did train at Fort Stewart. The environment changed, in some cases the locations where we had teams deployed already had a transition team there or maybe for whatever reason, the commander would decide that we move a team to a new location. Derrick's team was being split because they were going to vacate the location where he was. I think he was with the Federal Police Brigade. So, I gained a couple of officers and he was part of that transition. COL Bennie Williams and I discussed all of the officers that were coming from the Federal Police Unit. We specifically discussed CPT Daniels. I remember that is the first time I became aware there was a background to Derrick's situation and why he had not been promoted. I recall when we all linked up at Fort Stewart, we had four or five junior officers and they were all CPTs and they were all on the promotion list. Derrick was on the promotion list and we all assumed they were all getting promoted before we deployed. I thought the actual requirement was for all to be MAJs before deployment. We discussed the reasons why CPT Daniels was not promoted. There were some issues that happened prior to deployment. I did not know COL Williams before we deployed. During our train up and during our deployment, we both had a professional discussion of what was going on with all the officers I had. CPT Daniels' case was particular. My understanding was he had a DUI and some issues after redeployment. He had some issues adapting after deployment. He had a domestic altercation with his wife. I recall asking COL Williams if this was going to be an issue for CPT Daniels after he came to me. I did not want to take on somebody else's problems. I was concerned about the team. After talking to COL Williams, I felt comfortable that CPT Daniels and I could work together. I did not know him very well when we were at Fort Stewart. I did not think I was going to have any discipline issues when he came to our team. I did not have any discipline issues. I contacted the Armor branch. Derrick came to the location where I was. I don't recall if he had taken his mid-tour leave or if he took it as soon as he got there, but once he got his feet on the ground Derrick got saddled with a bunch of headaches when the previous team departed his location. They got stuck with probably twenty, maybe $30,000 worth property that he was not signed for, but he took responsibility for it. The outgoing team was actually signed for the property. Derrick took responsibility for it, so he was left with the headache of getting that stuff documented and turned in. That's what we were doing with Derrick along with his duties as a transition team member. I discussed what was going on with his promotion with him. That's when

he showed me, I think it was a memorandum. I don't remember if it was from his branch or the Combat Arms Division Chief. Basically it stated that he had been removed from the promotion list and laid out some of the issues as to why. I think they told him the appeal process. He could write a letter of rebuttal or something to that effect. That is when we actually talked about it. He showed me the document. I talked with the Armor Branch Chief just to find out what the appeal process was and what could he do for his rebuttal. I wrote a letter of recommendation. Derrick believed with this deployment and the good job he was doing, he would get reinstated on the promotion list. After talking with the Armor Branch, it became very evident that was not going to take place. I asked why would you deploy him if you knew he was not going to have a chance to move on with his career? That did not make any sense to me. Regardless, I talked with him to try to understand he would not get an opportunity to ever be promoted and probably eventually be dismissed from the Army. I don't recall the Armor Branch answering those questions and that was two years ago. I don't recall an explanation on why they would deploy an officer who they did not think had an opportunity to move forward in the Army. The impression I was left with was they had a requirement to fill and he was an officer who wanted to deploy. I was able to see his duty performance. It was late June or early July when he came to me. He worked for me for the last four or five months that we were deployed. He worked on a daily basis with me. I saw him either in briefings or in briefings with the Iraqi teams who were conducting their own internal meetings. We were also were going missions together, with the Iraqis or occasionally we had to go back to BBC or the Baghdad Operational Center. I saw him in Iraq with the Federal Artillery Battery that provided our security and our support. I would see him during PT on an American compound. I saw him every day at breakfast, lunch, and dinner. He would come to me and let me know how things were going on. Derrick was a great performer. I never had an issue with his duty performance. He was eager. He was willing to take on missions and he was willing to take on those crappy missions that nobody wanted. Things like policing the area and tracking down a Soldier if we had a question for somebody. Derrick would work late at night and get up early in the morning. He worked well with our Iraqi counterparts. He was in a rough spot. He was in a senior headquarters. The people he dealt with on a daily basis were Iraqis and LTCs and COLs. When I talked to COL Williams, my biggest concern was more about morale. He did not complaint about the tasks. If he did not know how to do a specific thing, he would find someone who did. I knew he was going to do a pretty good work. He was with us until we redeployed in December. He worked until the very last day that we deployed. I would work with CPT Daniels again. I won't hesitate. Yes, I would deploy with him, keeping in mind that I am a logistic officer. I think Derrick has combat experience. I think the Army can capitalize on Derrick's good and bad experiences. If we took advantage of that knowledge and maybe use it as a way to explain others the outcome of ones actions and the pitfalls of not seeking help. I think Derrick is good in operations. I think he would make a fine operations officer. You can't spend your whole life being an operations officer, but he has that experience and he is good working with the counterparts. I know he was very remorseful of what happened and he admitted to me he screwed up. The time I was most concerned was after the deployment because he won't have a career or much time left in the Army. We had that conversation in my office, so I kept an eye on him for a couple of days. I was concerned that might create a situation where we were going to have a suicide, but he kept a pretty good attitude about it. He continued to do his

work. He continued to work out. He came to work every day, we did not have to track him down.

No further questions by the Government.

Cross Examination

I understand that he had a DUI and then he had a domestic violence, he either struck or pushed his wife. I don't recall discussing anything else. At that time I did not ask more about it.

The President said he had not seen a DUI in the file.

The Defense stated that might be missing information; Defense had not seen anything about a DUI.

The President asked his Legal Advisor if it was okay to ask CPT Daniels if he had a DUI.

The Legal Advisor stated that the hearing is open.

The President asked CPT Daniels if he ever got a DUI.

The Respondent stated that he never received a DUI.

COL Cardinale

The incident was domestic violence of some sort. I just wanted to know how Derrick got into that situation with regard to future promotion or taken off the promotion list. I thought it was regarding a DUI.

The Defense objected to the Government's question based on relevance.

Objection overruled by the President.

The President asked the Respondent if there was an alcohol related incident, a DUI, or driving while impaired, or anything else that went to court and got pled down, or did not even go to court. Was there a driving alcohol related incident?

The respondent stated no.

Cross Examination

When we talked, he told me there was a domestic violence. When we had that conversation, he was on my transition team. He came over to my headquarters. I was not aware that he pushed her several times, hit her in the head with a plastic baton, destroyed email traffic of an adulterous relationship, or that he strangled her and told her that "stop,

neither one of us needs to get hurt." Whether he had a DUI or domestic violence, the domestic violence spoke for itself. My assumption was that he got violent with his spouse. The nature of it or the amount of the abuse, I don't condone it, but based on my experience with Derrick, he understood he made a mistake and admitted he made a mistake and that is not the behavior he should have exhibited. How you describe the incident would not alter my belief on whether Derrick could continue in the service. I did not know when his commission was. I am 29 years in the Army, so every CPT seems very young to me. I mean junior as in he was a young officer. I don't think those are examples or indicators of what we expect in the office corps.

The Defense objected on the Government question about Derrick's financial difficulties prior deployment.

The President sustained the objection and requested the Government to rephrase the question.

Cross Examination

No, I am not aware that he made that statement. I am not sure about any statement until you mentioned it. As for volunteering for deployment, I don't recall having a conversation on that.

The Defense objected on relevancy.

The Recorder stated its relevant because it was the benchmark if whether or not you can maintain a security clearance or your job.

The Defense stated that there was no evidence that he did not maintain his finances. He still had a security clearance, so he was able to maintain his financial obligations. There is no evidence that his duty performance was affected by his second job.

LTC Fugate asked for the reference to be read.

The Recorder referenced to the appeal that CPT Daniels wrote.

The President called 10 minutes recess at 1517 hours for legal advice.

The Board reconvened at 1539 hours.

All parties that were present before the board closed were again present.

The President stated that Defense's objection was technically sustained, however, the Government needed to make a linkage and to choose the wording carefully.

The Legal Advisor cited AR 600-8-24, paragraph 4-6.

The Defense stated that the questions were irrelevant.

The President agreed, and told the Government there had to be a clearly defined linkage when looking at the actions unbecoming an officer and was financial irresponsibly a part of it.

The President asked CPT Daniels if he still had a security clearance.

The Respondent stated he still had a security clearance.

The President asked the Defense if she was familiar with the security clearance regulation.

The Defense stated she was not familiar with the regulation.

The President asked if anybody has put a derogatory statement in his file.

The Respondent stated that nobody put anything his file specific to his security clearance.

The President stated it is a requirement by regulation that a domestic violence incident, that the derogatory statement goes in the file. It is not up to the local commander to make a determination, it is determined by CCF. They take the preponderance of that evidence and they make a determination on whether the security clearance remains in effect, gets suspended, or gets revoked. There was a step that was missed.

The President stated that the question is relevant, but irrelevant to COL Atcher.

The Government has no further questions for COL Atcher.

No further questions by Defense.

COL Atcher was recalled at 1547 hours.

The Defense objected to the line of questioning (about CPT Daniels' finances).

The President sustained the objection.

LTC Hathaway

I am not aware of any specific incident where a member of his leadership team specifically said to him if he needed help with an issue or anything like that. When you are the commander, you need to know what is happening to your people. Some folks are good at that. When I was the battalion commander, I don't say I knew everything about every single Soldier. I would like to say that I knew quite well about my office first. If I had an officer I thought was not doing well or was having an issue, then I would at least talk to them. In my mind, one of his commanders should have asked him what was going on in his life? Especially if in fact he was having an alcohol related issue and domestic violence.

He had a couple jobs. It seems to me that somebody in his leadership should have talked to him.

LTC Fugate

I can only speak for the time that I worked with CPT Daniels. I think he can serve in the Army as a MAJ. I believe there are some folks that are probably smarter than me of specific niches that CPT Daniels could fill at higher ranks. I think he can serve as a staff officer, working on the division staff. Be a good plans officer or as an operational officer. I think he could do those types of jobs.

COL Cardinale

He did receive an OER from me. I am not at a place where I can go and pull that up.

The President stated that he did not see the OER in CPT Daniels' OMPF packet.

The Respondent stated he received just an end of tour OER.

Yes, that is correct, I would not recommend him for command. I would recommend him for promotion. I think he would be a good staff officer and would do well at the rank of MAJ.

No further questions by the board members.

No further questions by the Government.

Redirect Examination

No, that OER was based on that period of time. My comment was based on what I saw CPT Daniels do and how he performed for me in the combat deployment. Certainly, I heard things during this conversation today and some of them I did not know about. But I don't think that anything that I heard here today would cause me to change my thought from the previous conversation. In my conversation with Derrick, I truly believed that he had remorse and regret for what he did. He knows he let a lot of folks down. During the time he was on my team, he was very professional. He did his job and based on what I saw there, I would not hesitate to recommend him to be promoted to MAJ. Command is a different story, but I think he can serve as a MAJ. I have been a staff officer for a couple of years with the exception of the Transition Team. The last six or seven years of my career, I was a staff officer. But every day I am in front of a Soldier, I am a leader. Every day I am at PT, I am leading. So you don't have to be a commander to be a leader. I have been a staff officer for a couple of years.

No further questions by Defense.

No questions by Government.

The witness was excused not subject to recall and was duly warned.

The Defense presented Defense Exhibit 1, Army Career Book;

Defense Exhibit 2;

Defense Exhibit 3, Pamphlet (work product);

Defense Exhibit 4, medical record.

The Recorder requested time to review the exhibits.

The President asked the Legal Advisor if the recorder should get the opportunity to review the documents before the board members do.

The Legal Advisor stated that he should get the opportunity to see the documents before the board does, in case the Recorder had any objections.

The Government does not object to the medical records.

The Defense presented Defense exhibit 5, conviction of Ms. Brown for fraud.

The Recorder requested to review Defense exhibit 5.

The Government objected because it was not a prior conviction. And Captain Daniels admitted he had an affair with Mrs. Tara Brown.

The President sustained the Government objection. Defense exhibit 6 was submitted, but not admitted.

The President called a recess at 1641 hours to seek legal advice.

The Board reconvened at 1652 hours.

All parties that were present before the Board closed were again present.

The Defense called MAJ Barr as a telephonic witness.

MAJ Terrance Barr, US Army, was called as a witness; was duly sworn in and his statement is as follows:

Direct Examination

Currently I am the executive officer for the 188th Infantry Brigade, Fort Stewart, Georgia. I have been in this duty position since June 2011 for nine months. I have been with the Brigade since April 11, 2009. I have 17 years in the Army, 7 years as an enlisted, 10 as a senior commissioned. My MOS as an enlisted was 54B and 74D, chemical specialist. My current branch is a chemical officer. I have deployed one time in 1995. I went to Kuwait for 12 months. I know CPT Daniels from the S3 shop as the deputy Chief of Operations. I met Derrick in April 2011, almost a year ago. I see him at Fort Stewart five days a week, when he is TDY with the brigade, I see him maybe twice a week. He trains the Army National Guard Unit and Reserve. This is pre-deployment training. His duty performance has been great. He is a senior mentor for the National Guard and Reserve commanders. Derrick is passive-aggressive. He gets their trust and he helps them focus in the right direction. He has a calm demeanor and he gains their trust and shows them ways to make things easier. Derrick always comes to work on time. He is a hard worker. I don't have to worry when he is coming to work. Yes, right now we were planning on putting Derrick back down to the Infantry Battalion. If he is retained, we will put him at the battalion level. The company commanders of the National Guard and Reserve Units at training run a team of about 29 commissioned officers. CPT Daniels is a good trainer-mentor. He helped them understand what they can do better. He assesses their tour. He is always on time. The S3 is his rater, COL Collier, our brigade commander is the senior rater; he just got back from NTC. I was not in NTC, I was acting commander. I am aware that CPT Daniels had allegations of domestic violence for hitting his spouse and hitting another female. He had some issues with alcohol abuse and PTSD. I do know he was receiving treatment for all of those. Prior to this, the only thing I mentioned to CPT Daniels was if he was ready to tell me what really happened, I was willing to listen. I won't judge him based on his performance. I told him to go to counseling and keep his head up.

COL Cardinale

From what I understand, the issue was Derrick had domestic violence for basically hitting his wife at that time and she lost the hearing in one of the ears. Then he also hit another female or was accused of hitting another female. He had an alcohol abuse issues and PTSD.

Redirect Examination

If the board retains Derrick, there is a room for him. We had no issues with Derrick, so if he is retained in the Army, he is a good mentor for our Battalion.

No further questions by the Defense.

Cross Examination

I depart Fort Stewart on 24 June 2012. I have 39 months as a company commander. I am now the battalion XO of logistical support battalion. Yes, I hold officers to higher standard than enlisted personnel. Yes, I have addressed Soldiers who had domestic violence issues before. We did a commander's inquiry first. The spouse was making some accusation of domestic violence just to get more money from the Soldier.

No further questions by the Government.

LTC Fugate

If he is promoted to MAJ and the Army sees he is fit, I won't have any issued with that.

LTC Hathaway

I have not met Wendy to make an opinion about their actual relationship.

No further questions by the Board members.

The witness was permanently excused and was duly warned.

The Defense called CPT Daniels as a witness.

CPT Derrick Daniels was duly sworn in and his statement is as follows:

Direct Examination

I met Mrs. Brown on a website called "onlinebootycall.com." I met Mrs. Brown after my return from Iraq at Fort Sill. I returned from Iraq in May 2008. I contacted Mrs. Brown in July 2008. At that time my wife was going to college. The transition coming back was a hard transition at that time. I had insufficient time for myself for the issues I had. I left a small amount of time to myself for my immediate needs with alcoholism and the adulterous affair that I am not proud of. Instead of giving more time to myself to fix in my situation, I stole a lot of time from my wife. When I returned from my second deployment to Iraq, my wife was at Fort Sill, Oklahoma. I returned to Germany. She came for the initial return, then she left to continue school. There was a reintegration post-deployment procedure after the first deployment and after the second deployment. I was able to take advantage of the program. I arrived at Fort Sill in May 2008. She went back to school. She felt like she supported me through the two tours in Iraq. Now it was her time to go to school. And I was there to support her. I did not have what I thought I needed from my wife and that affected our relationship. I was not there for her. I was hollow, I was not there emotionally. When I lost Soldiers, I felt I was a failure at times and felt I was not able to complete a mission when I returned to Fort Sill. When I came back to Fort Sill, my wife and I were living in the same house. The first time I met Mrs. Brown physically was in Wichita Falls, Texas around the same time I met her online in July 2008. I had an affair with Mrs. Brown. It involved sexual intercourse. I did not have an affair with anyone else. I did not have sexual relationships with anyone other than Mrs. Brown and Mrs. Wendy

Daniels. I was living with my wife the night of the assault. On the night of the assault, I came back from post and I confessed about the relationship with Mrs. Brown. My wife wanted to talk to Mrs. Brown to get the full details of the relationship. After the conversation, Mrs. Brown disclosed some things that were not true; the additional affairs and the issue of impregnating another Soldier's wife. When I came home, my wife confronted me about the conversation. I told her everything that Mrs. Brown was saying was not true. She showed me the email and I told her that Mrs. Brown was telling the truth about my situation. Then she slapped me and when she did, she attempted to block the door. I asked her to move out of the way and she did not. I forced myself through the door towards the vehicle. At that time she was pursuing me. At that point, I picked up a plastic baton and I hit her in the head. She fell to the ground and started crying. I tried to console her, but she got up she asked me why I had nasty emails. When she pushed me, I grabbed her around her neck and start chocking her and I told her this was not worth it. After I released her, we sat down and we talked about the situation. At that point, I made a decision to remove myself from the house. I spent two nights at a hotel. She called me and she asked me if I was with Mrs. Brown and I told her I was not. But she felt I was with Mrs. Brown because I few days later she went to the hospital. That is what started the investigation. I am still married to Mrs. Daniels. I have been married for almost 14 years. I was 26 when we got married. We were in High School together. She is three years younger than me. We start dating after I came home from basic training when I was 18 years old. I did not continue the relationship with Mrs. Brown after the assault. I had stopped seeing her when the assault happened. My wife contacted Mrs. Brown to get details of our relationship. I gave my wife Mrs. Brown's phone number. I had confessed the affair. That was before the assault. My first deployment was with the 1st Infantry Division to Korea in 2003. At that time I was a Division Battle CPT. Then I was moved to 3rd Brigade. I was a Battle CPT again. Then I came home and deployed the second time with COL Johnson. The third time was with COL Williams and COL Atcher's command. During my first deployment as a battle captain of 263rd Armor, COL Chipman at that time wanted us to have the situation awareness. Every week we got combat patrols. On the way back there was a firing. It hit through the driver and it crushed the seat and I was still alive. At that point we did a security roll. We tried to get the door open. We tried to flip the tank around and we could see the Soldier's leg. I tried to call a line medevac. I could not get the task force there. We finally got the door open with an axe. We pulled the Soldier out. When the medevac came, I knew the Soldier was a goner. That was my first deployment. As we travelled north to a check point so we could mark the place so we could tell where we were. Then someone with an AK-47 opened up on the side of my truck. Before my company could react, the lead tank suddenly collapsed and knocked down through the door. The next incident, in the same location, a sniper shot my platoon leader in the shoulder. He survived. In Baghdad, when I arrived as a company commander from HHC, within three days after taking command, an IED exploded my convoy. The next one was several months later on a FOB as we supplied. The Iraqi police were outside doing a check point to enter the FOB. A VAV went off just outside the FOB. The impact was so fierce that it knocked them down the ground. The VAV that exploded killed one Iraqi police officer. The only thing left was his torso. I lost Soldiers, the first two were in S3 PSD; SGT Oaks from Virginia and SGT Gibbs, from Maryland. SPC Ruling was killed from an IED that went off less than 25 meters from our check point. SSG Walls was killed by a

sniper. So between from Baghdad and Ramadi I have seen Soldiers get killed. I received awards during these deployments. For my first deployment I received an Army Commendation Medal. On the second deployment I received a Bronze Star for service in combat and an MSM for my time in command. On the third deployment, with the GOMOR, I did not to get an award. I got flagged because of the GOMOR. I was not in command at the time of the assault. At that time, I was an instructor at Fort Sill. After the incident with my wife, I stayed in that position. My religious background is unique. In my younger years, I grew up in a Baptist church. My parents were married for four years, my mother being a Baptist and my father being an African Methodist Episcopal. As a smaller child, I followed my mother. When I got older I started following my father. So I got a different perspective from both. After the incident with my wife, I got involved in a local church at Fort Sill. At that point I was a little low. I knew I needed help from beyond. I started going to church before the suicide attempt. The work with community access was after the suicide attempt. Based on my behavior at home, I had outbreaks where it was not directed towards my spouse, it was just me being angry and depressed at myself. I was tired. The command at that time did what they were supposed to do. It was for the alleged domestic violence. The multiple affairs were still investigated. The command moved me out of the house to my other home. I had two houses. I had to go to work every day and still performed my duties. I knew about the false allegations from Mrs. Brown. I went to work every day. I knew those rumors went around. My wife was still upset. I felt like there was no light at the end of the tunnel. This was it, I couldn't take it anymore. I wanted my wife to see me when she got to the garage that morning. I went to her house, I opened the garage door. I got on a kitchen table that was in the garage, got on top of the table with the rope tied around my neck. Then I went into a dilemma of pushing myself off of my table. I could not do it because I was not sure. I know I will automatically go to hell. So I got down, went back to my house and called my parents and told them what was going on. It took me months later after getting treatment. I wanted to feel that someone did care about me. She knew I was in the house. I wanted my wife to come and stop me. After that, I was an inpatient at Red River for 10 days. I got physical treatment. No shoe laces, no belt and under supervision. When I went to sleep at night, they did checks on me. I had medication. I had supervision while I ate, while in recreation. In working groups, I found it was very intriguing. There were other Soldiers from Fort Sill. I was the only officer. There was a Lieutenant before me that had just committed suicide during his treatment. At that point I knew that could not be the end of me. I had to come up with a plan. I have been in ASAP before and in behavioral health. After the suicide attempt those services changed. After I was released from Red Rover, I started with the working groups. At that time, Fort Sill was trying to develop a group of officers, but there were not enough officers to set up a group. I was involved in family advocacy. My involvement with family advocacy was with the marriage itself which identify other things between me and my wife. I completed it before PCSing. Being at Red River made me realize some things. I realized the immediate need was not met by my poor decisions. Alcohol was not doing any good. Then the extra marital affair. That led me to look for a job, and there was the strain of maintaining two houses. The job was a full service care provider for three male at home. The duties consisted on feeding, bathing, and changing diapers when necessary. I could see the immediate satisfaction where the immediate need was being met.

I had two households. I was not living with my wife at that time. I continued to support her. I never failed the financial needs of my wife. The financial difficulties did not make me fail my financial obligations. It was the time to reflect, to understand where to go further in my career. There were things in that GOMOR that were unsubstantiated. My plan of action at that time was to try outperforming the GOMOR. I completed my mission and started my first deployment. My previous MOS was Armor. I came in as Field Artillery. I switched because I love tanks. As a tanker, it was the battlefield and the power that it would bring. I wanted to do that as an officer. For the past five years, from the situation with my wife that put me into alcoholism, put me into the extra marital affair, everything was a waste of time. The time that I had in combat was always dedicated to Soldiers and I did not dedicate time for myself. After going to a rehabilitative process on my own, I knew that time was always an issue for combat operations. As a company commander, I have administered a letter of reprimand for adultery to an E7. I have never administered an Article 15. There was an issue with a Soldier and his wife that escalated and we moved the Soldier to the barracks. The Soldier went through a rehabilitative process and reunited with his spouse, but not anything with an Article 15. I don't hold any bad feelings to the officer that gave me the GOMOR. He did the right thing. What I wished at that time was to establish a personal, social relationship with my command like I did before. The previous commanders did not testify because they liked me because I am a good guy. They saw me coming out from austere situations. Going through the process, I see where the Army has got to now. With 14 years in combat, I welcome resiliency programs, recreational, counseling. I would welcome the opportunity to lead Soldiers again. To serve Soldiers to make sure what happened to me does not happen to them. I think this whole process is a testimony of my character, of how I am as an individual. I first enlisted in the Army in 1990. I wanted to get commissioned as an officer. I only enlisted for two years. I was not ready for school. I did not have a real high ASVAB or STT. So I went to apply to the US Army Prep School, but was denied. It hurt my feelings. The problem was I knew I was not smart enough. So I studied at night. I took college courses. I suited ASVAB to raise my ASVAB score. During my time of service, I was not able to go to prep school, so I applied for the scholarship. I wanted to be an Armor officer. It took me five years to get my commission. I made thousands of mistakes, but I also believe that I went on a journey to prove I can still serve and learn from those mistakes. If the board decides to retain me, I have a plan for my career. My plan is to continue and stay in operations. It is my primarily goal. I love operations. I will welcome a field grade. But I also will welcome anything for Soldier services, resiliency, a way ahead. We don't go to war every day. Ten years of war against terrorism is something new. We have to apply a new way to do things. I think I have a way ahead for future operations and Soldiers.

No further questions by the Defense.

Cross Examination

It was not really my wife not giving me what I needed, it was me giving myself what I needed. My love for my wife never changed. My love for the Army never changed. It was taken that time. To continue to lead the Soldiers, I did not have time for myself to face my issues and problems. I did it in a very unbecoming manner in alcoholic abuse and the

adulterous affair. I did not allow myself the proper time to deal with my issues. It was not because of my wife, it was because of me. Mrs. Daniels became angry because of Mrs. Brown's lies. She was upset about the affair with Mrs. Brown. She was also upset about the allegations Mrs. Brown stated about the multiple affairs and the Soldier's wife that was pregnant. I hit her because she was coming towards me, but also because I was angry because she did not believe me. I am not claiming self-defense. I hit her on the right side of the ear. I am not sure if it actually caused a bruise. Sorry, it should be I struck her with my right hand on her left ear. I can't remember a bruise on her face. I am not sure where those scratches were from. I am not sure of the knee bruise.

Cross Examination

My peers were judgmental and that gave me stress. I expressed in the memo an inferiority complex due to race. The optempo gave me stress. The commanders, not my superiors, but the other company commanders gave me stress. There were small things that led me to stress. I did not feel I was cheated out of an award on my third deployment because of the allegations of the domestic violence. The gratification of the people who I worked for is my award. I don't need a medal on my chest. My marital problems led me to noncompliance to AR 600-9. I was not motivated with the thing going on with the investigation. I drank a lot of alcohol. I did not have any problem with the AWCP prior the incident. I was aware of the family advocacy, chaplain, social workers, etc., but I did not utilize the resources prior to assaulting my wife because I am human. Coming from a combat environment where so much is done, you come to realize you sacrifice so much. Sometimes you feel you are immune to a lot of things. Most times the commanders feel those types of programs are not for us, they are for the Soldiers. I am not the only one that feels that way, not being able to come forward, afraid of what people might say or people might do. If I were to command again, I would give an Article 15 for domestic violence or adultery very easy. The situation I have been gone through makes me more fair and impartial to deal with Soldiers with ease. I would be able to give an Article 15 to an E4 or below, where it will make them unable to reenlist with the first domestic violence offense for a lot of MOSs. I think each commander needs to look at each case. You need to look at each individual on a case by case basis. I don't have an issue in doing that. I would have expected an Article 15 if I were an enlisted at that time. But I would hear other circumstances surrounding that as well; what led to the domestic violence? How it impacted the Soldier? When did he join the Army? I understand the three pillars of ROTC: physical, emotional, and psychological. I think the dynamic is different, we talked about Soldiers as an E4. Commanders are held to higher standard because they command E4s. At that time, I did not exhibit emotional stability and that led to the assault. Led to marital problems, which led me to noncompliance with the AWCP. As an officer, you should be physically in compliance with the AWCP. At times we want to judge people based on individual circumstances. When I saw what the problem was, everything fell back in place. I have heard of that I am a Soldier 24/7. My personal life did influence my professional life. It will depend if that Soldier should stay in the Army. It depends if he was given a second chance, how he would work with it? What would be his plan of action? If the Soldier would see me for Article 15s, I will ask them, if you do this, what is the plan of action to overcome the circumstances? I could handle deployment stress again. Each

deployment is different. My command is unique. Now I think I will be more resilient. I did not say the assault was PTSD related. I knew Mrs. Brown was lying when my wife confronted me. I saw the lies in the GOMOR. In my rebuttal, the question was if the allegation was true and my response was yes. I said, "Why fight it?" When I wrote that at that time, I did not address it because I did not want to fight it. I would try to outperform the GOMOR. I don't consider myself a victim.

No further questions by the Government.

Redirect Examination

Before the incident I was in compliance. After that referred OER and since then I have been in compliance with the AWCP. Before that OER, when did not make the height and weight, they did not put me on the AWCP. I was never counseled. I was not referred for examination.

No further questions by Defense.

The President called a recess at 1814 hours.

The Board reconvened at 1819 hours.

All parties that were present before the Board closed were again present.

LTC Hathaway

I did commit adultery with Mrs. Tara Brown from about July until November. We actually had sex about four times. It was not before or after PT. The relationship was not just a physical connection, it was more like emotional relationship. I did strike my wife on or about 17 November. I was not under the effects of alcohol or medication at the time of the incident. I was not impaired by alcohol or medication when I was going to the bootycall.com website. I am not in any federal database for being a domestic violence offender.

[The President clarified the Oklahoma Police Department opened up a police investigation and CPT Daniels was in the database for domestic violence.]

To my knowledge I am not in any database for domestic violence. I don't have any profile that limits the performance of my duties.

[The President stated that Sanctuary Rule is still in effect. If CPT Daniels makes the 18 year mark, HRC will continue Sanctuary and he would be allowed to reach 20 years to retire at that rank that he is at.]

LTC Fugate

The actual relationship with Mrs. Brown lasted from July to October. It was an inappropriate relationship. During the process I wanted to stop, I was tangling and thinking how to cut it off. I felt relief when I confessed to my wife.

No further questions.

COL Cardinale

Yes, I am still married. I currently passed my height and weight. My current weight is 192 pounds. My height is 69 inches. My last allowed table weight is 184 pounds. I did not pass by table weight. I did pass my tape test. My last tape test was in January. My last APFT was with my last OER. I have not taken a PT test since August 2011. The PT test is good for six months. I am almost at a year. They did a height and weight in January. I don't have the body fat sheet. I am at 39 years old. My authorized body fat is 24%. I think I was 21.5% in January. I can get it from my battalion. If I take a PT test tomorrow, I think I would score approximately 260 with my weakest event being the run. I probably would score lower than 278. I think my weakest event would be the sit-ups. Since Iraq, I made table weight. During my ten years in the Army, I might have made table weight or might have not. One time I have not been in compliance with AR 600-9. I was not in compliance probably for about four and half months. I passed the PT test, but failed the table weight and failed the tape test. It was at Fort Sill. It was just a regular PT Test we took. It was not for the OER evaluation. At that point in time, I was waiting for the outcome of the GOMOR investigation. I was still drinking alcohol. I was still having problems with the situation. I was still in mental health and ASAP. It was after the suicide attempt and after Red River. We owned two houses. We own one house now. When I came up on the MAJ list, my wife wanted a bigger house. I made a purchase at that time, before the allegations. When the allegations started, the other house had not been sold. When I talked to the battalion commander, he said I needed to move out of the house and I stayed at the old house. So, at that time I maintained two houses. BAH in Oklahoma at that time was about $1,800.00. I maintained two vehicles, her car and mine. It was a BMW 2002 and a Nissan Altima. I paid around $1,100.00. I did not miss any payments. It was just that the money that was used to maintain both houses and both vehicles was a financial strain. We cashed in our 401k plan to buy the house, but that is what is she wanted. All this was done out of guilt. She did not know I knew something bad was happening. I believe I abused alcohol. I mostly drink at home. It was not social drinking. It was liquor or beer every day after work for at least three months. I drink occasionally. I don't think I still have a drinking problem. I know I am overcoming my challenges. I believe I am still on step seven and a half. I did not allow myself to get what I needed from myself. Mrs. Brown, just as with alcohol, was a bad decision for a temporary fix. The adjustment coming back from a combat environment, I still wanted to allocate time to serve my country and do my job. I allowed my wife to do the things that she wanted to do. I needed more time for myself to fix my situation. On the second deployment, I did not go through the integration training. It was my company that did the integration training. I came back in 2008. I went to some of the integrations classes, but not the ones involving the spouses because my spouse was not with me. I am not currently going through

marriage counseling. My relationship with my wife is a 4 with 5 being good. I have given about three Article 15s in my 10 years in command. I have 24 months as a company commander. I was deployed 15 months down range. The extra job was nothing specific that my counselor told me to do. It came on my own. I wanted a job in a medical field or similar or some type of community service. It happened that there was a job available during the weekend. It did not interfere with my career as an instructor. It put additional money in my pocket. If I was providing service to these individuals during the weekends, I was not drinking. I talked with my S3 about it and told him what my plan was. The S3 is not allowed to authorize me to have another job. I did not think about it at that time. The battalion commander would be the one to authorize that. I did not talk to him. I am not sure if the S3 talked to the battalion commander. I don't know if my chain of command knew, but I knew and did not seek for approval from my chain of command. There were some issues with the other company commanders. It started back in Germany. The previous commander before myself in Alpha Company was African American like me. COL Johnson, the battalion commander, is African American. In that battalion, it was rare to have four to five African American LTCs in the task force. The rumor was the only reason I took command was because LTC Johnson was looking out for me. They saw the time COL Shikovy would say stuff about COL Johnson, rumors that he was incompetent. My wife overheard a rumor from the 1SG of Charlie Company's wife who said that only reason why CPT Miller and CPT Daniels are commanders is because of COL Johnson and his experience that black commanders can't operate as well. The other commanders thought COL Johnson offered me the position based on the color of my skin. There was a MSG I talked to at that time who was as an instructor. He was also an ordained minister. He is the individual I talked to often after duty hours. He went to a different church. I talked to my pastor in two occasions. I was not in ASAP yet. I was not in marriage counseling yet. I was talking to a behavioral health. I played that scenario several times in my mind about going to my wife and telling her about the board recommendation not to be retained. She supports me either way. My plan of action is if HRC retains me, I continue my career in the Armor Branch until I do at least 20 years. I want to serve as a Field Grade Commissioned Officer. I don't really desire the battalion command, but if I make it to LTC… I did not get any other woman other than my wife pregnant. I don't have kids.

The President called a recess at 1911 hours to seek legal advice.

The Board reconvened at 1912 hours.

All parties that were present before the Board closed were again present.

No questions by the Defense.

Cross Examination

Yes, I felt race based prejudice. It was more like cultural biases. We did not have time for that. We were in a combat environment. We needed to lead Soldiers. I had a court date. My wife changed her mind. She said that she did not want to pursue the allegations. The

suicide attempt was around January 2, 2009. I can't remember when the court date was, maybe November.

No further questions by the Government.

No questions by the Board members.

The Defense rested.

The Defense stated that the Respondent had no further evidence to present on his behalf.

The Government had no further evidence to present.

The Government made a closing argument.

The Defense made a closing argument.

The board was closed for deliberation at 1944 hours on 18 April 2012.

The board was called to order at 2033 hours on 18 April 2012.

All partiers that were present before the board closed were again present.

The President ruled some evidence is not admissible, but will be submitted with the record, but not admitted.

FINDINGS

Captain Daniels, it is my duty as President of this Board of Inquiry to inform you that the board, in closed session and on secret ballot, a majority of the members present at the time the vote was taken concurring, has made the following findings and recommendations:

Given the preponderance of the evidence, we conclude that you did in fact commit adultery and you did in fact have an incident of domestic violence in which you assaulted your wife. Therefore, the board of inquiry finds that there is sufficient evidence to prove that Captain Daniels did commit acts of personal misconduct and this board of inquiry finds that there is sufficient evidence to prove that Captain Daniels' action can be considered conduct of unbecoming a commissioned officer.

RECOMMENDATION

Because of this, the board of inquiry recommends that Captain Daniels be involuntarily separated and receive an Honorable Discharge; and all three members of the board, myself, LTC Fugate, and LTC Hathaway have all signed. You are dismissed Captain Daniels.

The board adjourned at 2035 hours.

AUTHENTICATION

______________________________ (PRESIDENT)
COL DOUGLAS C. CARDINALE

______________________________ (MEMBER)
LTC STANLEY P. FUGATE

______________________________ (MEMBER)
LTC BRIAN K. HATHAWAY

______________________________ (RECORDER)
CPT TODD CHARD

Annex N

Daniels, Derrick T

## You Can Expect Payment

Your payment begins the first day of the month following your effective date. You will receive a payment covering the initial amount due under this award, minus any withholdings. Thereafter, payment will be made at the beginning of each month for the prior month. For example, benefits due for May are paid on or about June 1.

**Your payment will be directed to the financial institution and account number that you specified. To confirm when your payment was deposited, please contact that financial institution.**

***If this account is no longer open,*** please notify us immediately.

## What We Decided

We determined that the following conditions were related to your military service, so service connection has been granted:

| Medical Description | Percent (%) Assigned | Effective Date |
|---|---|---|
| Hypertension with cardiomegaly | 30% | Nov 17, 2012 |
| Anxiety disorder not otherwise specified and major depressive disorder | 30% | Nov 17, 2012 |
| Right elbow strain | 10% | Nov 17, 2012 |
| Degenerative arthritis, left knee | 10% | Nov 17, 2012 |
| Degenerative arthritis, right knee | 10% | Nov 17, 2012 |
| Dermatitis and pseudofolliculitis barbae (claimed as tinea nigra) | 10% | Nov 17, 2012 |
| Degenerative arthritis, left shoulder | 0% | Nov 17, 2012 |
| Ring finger tendon injury status post avulsion fracture, left hand | 0% | Nov 17, 2012 |
| Proximal interphalangeal fracture, middle finger right hand | 0% | Nov 17, 2012 |
| Healed fifth metacarpal fracture, left hand | 0% | Nov 17, 2012 |
| Left ankle, calcaneal spur | 0% | Nov 17, 2012 |
| Burn scar right arm | 0% | Nov 17, 2012 |

An examination will be scheduled at a future date to evaluate the severity of your service connected Hypertension with cardiomegaly.

- Service Treatment Records, from May 15, 1990 through November 9, 2012
- Disability Benefit Questionnaires for: post traumatic stress disorder, hearing loss, hypertension, esophageal, sinusitis, scars, skin, hypertension, heart disease, hand, shoulder, elbow, knee, ankle, and flat foot completed on October 23, 2013, October 21, 2013, and November 20, 2013
- VA examination addendum dated January 27, 2014

## REASONS FOR DECISION

**1. Service connection for anxiety disorder not otherwise specified and major depressive disorder.**

Service connection for anxiety disorder not otherwise specified and major depressive disorder has been established as directly related to military service.

An evaluation of 30 percent is assigned from November 17, 2012, the day after your release from active duty.

We have assigned a 30 percent evaluation for your anxiety disorder, not otherwise specified based on:

- Difficulty in establishing and maintaining effective work and social relationships
- Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal)
- Anxiety
- Depressed mood
- Mild memory loss

Your Global Assessment of Function (GAF) score is 65. A range of 61-70 indicates some mild symptoms; or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

The overall evidentiary record shows that the severity of your disability most closely approximates the criteria for a 30 percent disability evaluation.

A higher evaluation of 50 percent is not warranted unless there is occupational and social impairment with reduced reliability and productivity due to such symptoms as:

- Flattened affect; circumstantial, circumlocutory, or stereotyped speech;
- Panic attacks more than once a week;
- Difficulty in understanding complex commands;

- Impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks);
- Impaired judgment; impaired abstract thinking;
- Disturbances of motivation and mood;
- Difficulty in establishing and maintaining effective work and social relationships.

**2. Service connection for hypertension with cardiomegaly.**

Service connection for hypertension with cardiomegaly has been established as directly related to military service.

A 30 percent evaluation is assigned from November 17, 2012, the day after your release from active duty. This evaluation is not based on evaluation criteria in the rating schedule for hypertension. The reason this non-schedular evaluation is assigned is because of the presence of cardiomegaly (an enlarged heart/cardiac hypertrophy) that the VA examiner linked directly to your service connected hypertension. As cardiomegaly is not a disease but a symptom of another underlying disease and as the VA examiner link your enlarged heart/cardiac hypertrophy as a direct symptom of your service connected hypertension, a 30 percent is assigned as cardiac hypertrophy is most closely associated with a 30 percent evaluation for other heart diseases in the rating schedule.

A higher evaluation of 40 percent is not warranted unless diastolic pressure is predominantly 120 or more.

Since there is a likelihood of improvement, the assigned evaluation is not considered permanent and is subject to a future review examination.

**3. Service connection for dermatitis and pseudofolliculitis barbae (claimed as tinea nigra).**

Service connection for dermatitis and pseudofolliculitis barbae (claimed as tinea nigra) has been established as directly related to military service.

An evaluation of 10 percent is assigned from November 17, 2012, the day after your release from active duty.

We have assigned a 10 percent evaluation for your dermatitis and pseudofolliculitis barbae (claimed as tinea nigra) based on:

- At least 5 percent, but less than 20 percent, of the entire body affected

ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

RECORD OF PROCEEDINGS

IN THE CASE OF: DANIELS, DERRICK T.

BOARD DATE: 7 April 2015

DOCKET NUMBER: AR20140008998

THE BOARD CONSIDERED THE FOLLOWING EVIDENCE:

1. Application for correction of military records (with supporting documents provided, if any).

2. Military Personnel Records and advisory opinions (if any).

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. The applicant requests the following:

- that his discharge be voided
- that he be reinstated to active duty
- promoted to the rank of major with a date of rank of 1 December 2008
- his year group adjusted for competitiveness
- consideration for a change to Functional Area 57
- removal of his General Officer Memorandum of Reprimand (GOMOR) from his Official Military Personnel File (OMPF)
- removal of two referred Officer Evaluation Reports (OERs) from his OMPF with the periods declared non-rated
- removal of the Department of the Army Suitability Evaluation Board (DASEB) proceedings from his OMPF

2. The applicant states, in effect, that the GOMOR contains erroneous information and resulted in his unjust involuntary discharge from the Army. He continues by stating that he was misdiagnosed with severe depression when in fact he suffered from chronic post-traumatic stress disorder (PTSD). He further states that had he been properly diagnosed and properly treated, his misconduct would not have resulted. Additionally, had the proper diagnosis been made he would not have been discharged.

3. The applicant provides a two-inch binder containing a five-page and two-page letter explaining his application and a list of enclosures containing enclosures A through P.

CONSIDERATION OF EVIDENCE:

1. After serving over 4 years of active enlisted service in the Regular Army, the applicant was commissioned as a U.S. Army Reserve second lieutenant upon completion of the Reserve Officer's Training Corps program on 12 December 1998. He entered active duty on 19 March 1999.

2. He completed his training and was transferred to Korea for his first duty assignment. He also completed multiple tours in Iraq and Kuwait and was promoted to the rank of captain on 1 October 2002.

3. On 15 December 2008, an investigation conducted under Army Regulation 15-6 (Procedures for Investigating Officers (IOs) and Boards of Officers) was completed at Fort Sill, Oklahoma which found that the applicant had assaulted his spouse, that he had committed adultery and admitted to committing adultery, and that he had committed offenses that amounted to conduct unbecoming an officer and a gentleman. The IO noted that the applicant had a history of mental health problems and alcohol abuse and was seeking treatment for both.

4. The IO recommended that the applicant receive a GOMOR, that he be removed from his present position and reassigned to a position of lesser influence, and that he continue to seek professional help for his problems.

5. On 29 January 2009, the Commanding General (CG) at Fort Sill issued the applicant a GOMOR for domestic assault and battery; for beating, choking and threatening his wife; for ongoing multiple adulterous affairs with women; and for conduct unbecoming an officer and gentleman.

6. The applicant elected to submit a rebuttal to the GOMOR which consisted of his accepting responsibility for his actions and regretting the assault on his wife and having an affair with another woman. He went on to state that the investigation did not reveal the true facts and then outlined his accomplishments. He concluded by stating that the stress of multiple deployments and lack of treatment caused his misconduct.

7. The entire chain of command recommended filing the GOMOR in the applicant's OMPF and the appropriate authority so directed on 26 March 2009.

8. Meanwhile, the applicant was selected for promotion to major by the Fiscal Year 2008 Major Promotion Selection Board.

9. On 11 May 2009, the applicant received a change of rater OER covering the period 20080515 – 20090331 evaluating him as a senior instructor/writer. In Part

IVa, under Army Values, the applicant received "NO" ratings under "Honor" and "Loyalty."
10. In Part Va, under Performance and Potential Evaluation, he received an "Unsatisfactory Performance" rating. In Part Vb, the specific comments indicate that the applicant's personal conduct did not match his duty performance as his duty performance was superb; however, he received a GOMOR for conduct unbecoming an officer and gentleman, which was the direct result of his not living up to the Army's high personal moral standards. His rater recommended that he not be promoted to the rank of major and that he be retained as an instructor or staff officer. His intermediate rater also recommended that the applicant not be promoted but that he should be retained on active duty.

11. The applicant's senior rater (brigade commander) in Part VII gave the applicant a "Do Not Promote" rating and placed him below center of mass on his senior rater profile. He recommended that the applicant be retained on active duty to continue to receive medical treatment and overcome the personal challenges that afflicted him during the rating period.

12. The report was considered adverse and as such was referred to the applicant who responded with a one-page letter of explanation. Meanwhile, he was removed from the Fiscal Year 2008 Major Promotion Selection List.

13. On 2 October 2009, he received a change of rater OER covering the period 20090401 - 20090930 evaluating him as a senior instructor/writer. In Part IVc, under APFT, he received a "NO" rating for meeting height and weight standards.

14. His rater gave him a "Satisfactory Performance – Promote" rating in Part V and indicated that he had potential for promotion. His intermediate rater indicated that he should be considered for promotion and his senior rater gave him a "Fully Qualified" rating, placed him center of mass on his senior rater profile and indicated he should be strongly considered for promotion. The report was considered adverse and as such was referred to the applicant.

15. The applicant submitted a rebuttal to the referred OER contending that he had amended his marital relationship, graduated from the Army Substance Abuse Program, and had been making progress on getting his weight under control.

16. On 25 May 2010, while deployed to Iraq, the applicant was notified through his CG by a memorandum from the CG of the U.S. Army Human Resources Command (HRC) that the Maneuver, Fires and Effects Division had identified him to show cause for retention on active duty because of misconduct, moral or professional dereliction.

17. On 28 September 2010, he appealed to the DASEB requesting the GOMOR to be transferred to the restricted section of his OMPF based on intent served. The DASEB denied his request on 13 January 2011.

18. The applicant completed his deployment to Iraq and was returned to Fort Stewart, Georgia in 2011.

19. On 30 June 2011, the applicant submitted a rebuttal to elimination procedures through the CG, 3rd Infantry Division to the CG, HRC. He asserted, in effect, that the GOMOR contained in his records contained allegations that were not true. He went on to state that he did not have more than one extramarital affair and never admitted to having more than one affair, that he was never arrested for or convicted of domestic violence, the person who stated he had multiple affairs and that he had impregnated a Soldier's wife recanted her statement, and that both OER's were tied to the GOMOR.

20. On 3 February 2012, the CG, HRC notified the applicant through his CG that after considering the applicant's rebuttal, all relevant documentation and the recommendations of the chain of command, a decision had been made to continue with elimination proceedings in his case.

21. On 13 March 2012, the applicant was notified that he was to appear before a Board of Inquiry (BOI) at Fort Stewart, Georgia on 18 April 2012 to determine if he should be retained or involuntarily separated from the Army. The board convened at 1005 hours and the applicant was present with counsel. After hearing all of the testimony and reviewing all of the evidence in his case, the board determined that the applicant committed adultery, that he had an incident of domestic violence in which he assaulted his wife, he committed acts of personal misconduct, and had committed actions considered conduct unbecoming a commissioned officer. The board notified the applicant that the members had unanimously recommended that he be involuntarily separated with an Honorable Discharge. The board adjourned at 2035 hours.

22. The convening authority approved the findings and recommendations of the BOI on 12 June 2012 and forwarded the results of the BOI to the CG, HRC, the General Officer Show Cause Authority who concurred with the BOI's recommendation and forwarded the applicant's case to the Deputy Assistant Secretary of the Army (Review Boards) for final action.

23. On 23 October 2012, the Army Board of Review for Eliminations convened to review the BOI proceedings. After reviewing the BOI proceedings, the board determined that the government had established by a preponderance of the evidence that:

- The applicant committed adultery
- The applicant did have an incident of domestic violence in which he assaulted his wife
- The applicant did commit acts of personal misconduct
- His actions can be considered conduct unbecoming a commissioned officer

24. The board unanimously recommended in a closed session and by secretly written ballots that the applicant be eliminated from the service with an Honorable characterization of service.

25. On 31 October 2012, the Deputy Assistant Secretary of the Army (Review Boards) approved the recommendations of the Department of the Army Board of Review for Eliminations and directed that the applicant be honorably discharged for unacceptable conduct.

26. Accordingly, he was honorably discharged on 16 November 2012 under the provisions of Army Regulation 600-8-24, paragraph 4-2b, due to unacceptable conduct. He had served 17 years, 9 months, and 27 days of active service.

27. The statement provided by the applicant with his application from the individual he had an adulterous affair with is dated 4 April 2011 and she indicates that she made up the story about being pregnant and his having an affair with a deployed Soldier's wife.

28. A review of the applicant's official records shows that after receiving the second referred OER, the applicant received three evaluations during the period of 20091001 – 20120309. One of the OER's was rendered during his 12-month deployment to Iraq and the remaining two were rendered at Fort Stewart. All of the reports show maximum ratings and recommend him for promotion to major.

29. The applicant provides a copy of his VA Rating Decision showing that he was granted service-connected disability compensation effective 17 November 2012 for the following:

- hypertension with cardiomegaly – 30%
- anxiety disorder not otherwise specified and major depressive disorder – 30%
- right elbow strain – 10%
- degenerative arthritis, left knee – 10%
- degenerative arthritis – right knee – 10%

30. On 8 January 2013, the VA diagnosed the applicant as suffering from PTSD. The examining psychiatrist opined that his PTSD symptoms had not made him unstable in any way and that they were more a matter of mild occasional discomfort. There is no security issue and he is fully competent from a security clearance point of view.

31. Army Regulation 600-8-24 (Officer Transfer and Discharges) serves as the authority for the transfer and discharge of Army officer personnel. It provides, in pertinent part, that elimination action may be or will be initiated for misconduct, moral or professional dereliction, acts of personal misconduct, conduct unbecoming an officer, and adverse information filed in the OMPF.

32. Army Regulation 623-3 establishes the policies and procedures for preparing, processing and using the OER. The regulation also provides that an OER accepted for inclusion in the official record of an officer is presumed to be administratively correct, to have been prepared by the proper rating officials and to represent the considered opinion and objective judgment of the rating officials at the time of preparation. The burden of proof in appealing an OER rests with the applicant. Accordingly, to justify deletion or amendment of a report, the applicant must produce evidence that clearly and convincingly nullifies the presumption of regularity. Clear and convincing evidence must be of a strong and compelling nature, not merely proof of the possibility of administrative error or factual inaccuracy.

DISCUSSION AND CONCLUSIONS:

1. The applicant's administrative discharge (elimination) proceedings were conducted in accordance with law and regulations in effect with no indication of any violations of any of the applicant's rights. The type of discharge issued and the reasons therefore were appropriate given the circumstances in this case.

2. The applicant's contentions and supporting documents have been carefully considered and appear to lack merit.

3. The applicant's contention that he should be reinstated because the woman he had an adulterous affair with has recanted the portion of her statement regarding his impregnating her and having an affair with another Soldier's wife has been noted and appears to lack merit. While it cannot be determined with any degree of certainty which statement made by the woman is true, the applicant provided the statement to all of the boards that considered his case and when the board's deliberated, they determined that the two elements of impregnating a women who was not his wife and having an affair with a deployed Soldier's wife were not the basis for his elimination.

4. Both the show-cause board and the Army Board of Review for Eliminations determined that the preponderance of the evidence showed that the applicant:

- committed adultery
- did have an incident of domestic violence in which he assaulted his wife
- did commit acts of personal misconduct and
- committed actions that can be considered conduct unbecoming a commissioned officer

5. Additionally, the applicant has never denied having an adulterous affair with a woman who was not his wife, which in itself is sufficient to warrant elimination proceedings.

6. The applicant's contention that his PTSD caused his misconduct has also been noted and appears to lack merit. After committing the misconduct, the applicant deployed to Iraq for a year and returned to Fort Stewart for an additional 2 years. During that period, he received maximum ratings on his OERs as well as recommendation for promotion. There is no evidence to suggest that he did not understand the difference between right or wrong or that he could not adhere to the right.

7. After reviewing the facts and circumstances surrounding his discharge as well as the documents submitted by the applicant, it appears that the GOMOR was properly administered based on the available evidence at the time, that his OERs were properly prepared, referred and filed in his OMPF in accordance with the applicable regulations and his elimination proceedings were conducted in accordance with applicable regulations.

8. Accordingly, there appears to be no basis to grant the applicant's request for reinstatement, promotion, and removal of adverse documents from his OMPF.

BOARD VOTE:

________ ________ ________ GRANT FULL RELIEF

________ ________ ________ GRANT PARTIAL RELIEF

________ ________ ________ GRANT FORMAL HEARING

TH TRG cd DENY APPLICATION

BOARD DETERMINATION/RECOMMENDATION:

The evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined that the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned.

Carmen Dunn

CHAIRPERSON

I certify that herein is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in this case.



**DEPARTMENT OF THE ARMY**
ARMY BOARD FOR CORRECTION OF MILITARY RECORDS
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

April 09, 2015

AR20140008998, Daniels, Derrick T.

Mr. Derrick T. Daniels

Dear Mr. Daniels:

I regret to inform you that the Army Board for Correction of Military Records denied your application.

The Board considered your application under procedures established by the Secretary of the Army. I have enclosed a copy of the Board's Record of Proceedings. This decision explains the Board's reasons for denying your application.

This decision in your case is final. You may request reconsideration of this decision within one year by letter to the above address only if you can present new evidence or argument that was not considered by the Board when it denied your original application.

A copy of the Board's decision and proceedings has been furnished to the counsel you listed on your application, Robert S. Poydasheff, Post Office Box 348, Columbus, Georgia 31902.

Sincerely,

Natalie H. Abt
Acting Director, Army Board for Correction of Military Records

Enclosure

Printed on Recycled Paper

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES | THIS IS AN IMPORTANT RECORD. SAFEGUARD IT. | ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

# CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME *(Last, First, Middle)* | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| DANIELS, DERRICK TORAINO | ARMY/RA/AR | Redacted PII |

| 4a. GRADE, RATE OR RANK | b. PAY GRADE | 5. DATE OF BIRTH *(YYYYMMDD)* | 6. RESERVE OBLIGATION TERMINATION DATE *(YYYYMMDD)* |
|---|---|---|---|
| CPT | 003 | Redacted PII | 00000000 |

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY | b. HOME OF RECORD AT TIME OF ENTRY *(City and state, or complete address if known)* |
|---|---|
| FORT BRAGG, NORTH CAROLINA | Redacted PII |

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | b. STATION WHERE SEPARATED |
|---|---|
| 188TH INFANTRY BDE HQ FC | FORT STEWART TC, GA 31314 |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE NONE AMOUNT: $ |
|---|---|
| N/A | 400,000.00 |

**11. PRIMARY SPECIALTY** *(List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.)*

19A 2B ARMOR, GENERAL - 13 YRS 8 MOS// NOTHING FOLLOWS

| 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|
| a. DATE ENTERED AD THIS PERIOD | 1999 | 03 | 19 |
| b. SEPARATION DATE THIS PERIOD | 2012 | 11 | 16 |
| c. NET ACTIVE SERVICE THIS PERIOD | 0013 | 07 | 28 |
| d. TOTAL PRIOR ACTIVE SERVICE | 0004 | 01 | 29 |
| e. TOTAL PRIOR INACTIVE SERVICE | 0004 | 06 | 11 |
| f. FOREIGN SERVICE | 0007 | 02 | 23 |
| g. SEA SERVICE | 0000 | 00 | 00 |
| h. INITIAL ENTRY TRAINING | 0000 | 00 | 00 |
| i. EFFECTIVE DATE OF PAY GRADE | 2002 | 10 | 01 |

**13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED** *(All periods of service)*

IRAQ CAMPAIGN MEDAL W/ SIX CAMPAIGN STARS //BRONZE STAR MEDAL//MERITORIOUS SERVICE MEDAL//ARMY COMMENDATION MEDAL//VALOROUS UNIT AWARD//ARMY GOOD CONDUCT MEDAL// NATIONAL DEFENSE SERVICE MEDAL//GLOBAL WAR ON TERRORISM EXPEDITIONARY MEDAL//GLOBAL WAR ON TERRORISM SERVICE MEDAL//CONT IN BLOCK 18

**14. MILITARY EDUCATION** *(Course title, number of weeks, and month and year completed)*

COMB ARMS SVC STF SCH, 3 WEEKS, 2003//OFF ADV, 3 WEEKS, 2003//OFF BASIC, 3 WEEKS, 1999//NOTHING FOLLOWS

| | | YES | | NO |
|---|---|---|---|---|
| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | | YES | X | NO |
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP *(10 USC Sec. 2107b)* | | YES | X | NO |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM *(10 USC Chap. 109) (If Yes, years of commitment: NA )* | | YES | X | NO |

| 16. DAYS ACCRUED LEAVE PAID | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO |
|---|---|---|---|
| 23 | | | X |

**18. REMARKS** ////////////////////////////////////////////////////////////////////////////////

SERVED IN A DESIGNATED IMMINENT DANGER PAY AREA//SERVICE IN IRAQ 20060820-20071120// SERVICE IN IRAQ 20091217-20101216//SERVICE IN IRAQ 20040207-20050206//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE//CONT FROM BLOCK 13: //KOREAN DEFENSE SERVICE MEDAL //NON COMMISSIONED OFFICER PROFESSIONAL DEVELOPMENT RIBBON//ARMY SERVICE RIBBON//OVERSEAS SERVICE RIBBON (3RD AWARD)//COMBAT ACTION BADGE//PARACHUTIST BADGE//AIR ASSAULT BADGE// NOTHING FOLLOWS

The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program.

| 19a. MAILING ADDRESS AFTER SEPARATION *(Include ZIP Code)* | b. NEAREST RELATIVE *(Name and address - include ZIP Code)* |
|---|---|
| Redacted PII | Redacted PII |

| | | YES | | NO |
|---|---|---|---|---|
| 20. MEMBER REQUESTS COPY 6 BE SENT TO *(Specify state/locality)* GA OFFICE OF VETERANS AFFAIRS | X | YES | | NO |
| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, DC) | X | YES | | NO |

| 21.a. MEMBER SIGNATURE | b. DATE *(YYYYMMDD)* | 22.a. OFFICIAL AUTHORIZED TO SIGN *(Typed name, grade, title, signature)* | b. DATE *(YYYYMMDD)* |
|---|---|---|---|
| ESIGNED BY: DANIELS.DERRICK.TORAINO. Redacted PII | 20121116 | ESIGNED BY: DOUGHERTY.MELVIN.L. Redacted PII M L DOUGHERTY, GS09, CH, TRANSITION CENTER | 20121116 |

**SPECIAL ADDITIONAL INFORMATION** *(For use by authorized agencies only)*

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE *(Include upgrades)* |
|---|---|
| DISCHARGE | HONORABLE |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AR 600-8-24, PARA 4-2B | JNC | NA |

| 28. NARRATIVE REASON FOR SEPARATION |
|---|
| UNACCEPTABLE CONDUCT |

| 29. DATES OF TIME LOST DURING THIS PERIOD *(YYYYMMDD)* | 30. MEMBER REQUESTS COPY 4 *(Initials)* |
|---|---|
| NONE | DTD |

derrick.toraino.daniels@us.army.mil

# OFFICER RECORD BRIEF

AR600-8-104 CMAAGF- R1

| ORB TYPE | BRIEF DATE | FUNCTIONAL CATEGORY | DESIG DATE | CNTL BRANCH | COMPONENT | AD GRADE-ADOR | SSN | NAME |
|---|---|---|---|---|---|---|---|---|
| 2900 | 20090324 | MANEUVER FIRES AND EFFECTS | 20061026 | AR BR DTL/EXPIRES | RA | CPT/P 20021001 | Redacted PII | DANIELS DERRICK TORAINO |

## SECTION I - Assignment Information

OVERSEAS / DEPLOYMENT / COMBAT DUTY

| End Date | CT | MO | S | T |
|---|---|---|---|---|
| 20071120 | IZ | 15 | 1 | C |
| 20001114 | KS | 12 | C | |

NUMBER OF TOURS: Short- 1 Long- 0

DROS 20080514 DEROS NA

eMILPO Tour Data: CBT- 1 OPN- 0 RES- 0

Dwell Start 20071120
Dwell Mo-Days 16Mo 10D

Date Dependents Arrived OS

Career Field Information - Commissioned/AMEDD/Warrant

BR Code/MedMos1/Pmos 19 — Fnctl Area/MedMos2/Smos

BRAOC/MedMos3/Pmos Sqi A — Fnctl Aoc/Smos SQI

Skills 2B 5P

Basic Branch/PMOS ARMOR

Functional Area SMOS

Career Track X Single Dual
Primacy X Branch Functional Area

Prev Branch/MOS 13

Prev Functional Area

Control Career Management Field 01A00

Projected Career Management Field 19Z00

Geographic Orientation

## SECTION II - Security Data

INVEST PD-REINVES-SECRET

DTEINV 20020206 DTPSCG 20020302

CLNC SEC

## SECTION V - Foreign Language

| Language | L | S | R | YMPTL |
|---|---|---|---|---|

DLAT 068

## SECTION VI - Military Education

CAS3 GRAD

| Course | Year |
|---|---|
| CAS3 | 2003 |
| FIELD ARTY CCC | 2003 |
| FIELD ARTY OFF BASIC | 1999 |
| AIR ASSAULT | 1997 |
| AIRBORNE | 1995 |

## SECTION III - Service Data

| BASD 19950120 | Current PPN D5 | Ead Current Tour 19990319 |
|---|---|---|
| Basic Date of Apt 19981212 | Cohort Yr Gp FY1999 | Source of Orig Apt ROTC |
| Mo/Days Afcs 126/12 | Mo/Afs 176 | Type of Orig Apt USAR |
| Curr Svc Agrmt/Expr Date | | Date of Proj/Mand Ret |

| | 2LT-W01 | 1LT-CW2 | CPT-CW3 | MAJ-CW4 |
|---|---|---|---|---|
| PDOR | 19981212 | 20000919 | 20021001 | |
| | LTC-CW5 | COL | BG | MG |
| PDOR | | | | |
| TDOR | LTG | | GEN | |

## SECTION VII - Civilian Education

LEVEL COMPLETED MASTERS

| | | | | |
|---|---|---|---|---|
| INSTITUTION / DISCIPLINE | MO, WEBSTER UNIV / LEADERSHIP AND MANAGEMENT | MA | G | YR 2004 |
| INSTITUTION / DISCIPLINE | GA, ALBANY STATE UNIV / BUSINESS ADM | BS | G | YR 1998 |
| INSTITUTION / DISCIPLINE | | | | YR |

## SECTION VIII - Awards and Decorations

| | | | | | |
|---|---|---|---|---|---|
| BSM- | 1 GWOTE- | 1- CAB- | 1 | | |
| MSM- | 1 GWOTS- | 1 PRCHTBAD- | | | |
| ARCOM- | 4 KDSM- | 1 | | | |
| AAM- | 2 NOPDR- | 1 | | | |
| VUA- | 1 ASR- | 1 | | | |
| AGCM- | 1 OSR- | 1 | | | |
| NDSM- | 2 AIR ASLT- | | | | |

## SECTION IV - Personal/Family Data

| | |
|---|---|
| Date of Birth: Redacted PII | Birthplace: Redacted PII |
| Country of Cit: US | Sex/Race/Eth: M /BLACK,NOT HISP |
| No of Dependent Adults/Children: 01/00 | Religion: METH-CH |
| Marital Status: MARRIED | Spouse Birthplace/City: Redacted PII |
| Pulhes/Date: 111111/20081216 | Height/Weight: 69/192 |
| Home of Record at Ead: Redacted PII | |

Mailing Address

Redacted PII

## SECTION X - Remarks

50 MO PRIOR SERVICE

DATE LAST PHOTO 200703

AVIATOR QUALIFICATIONS

ASED — TOFDC As Of

| Pilot Status | Aircraft | Qual | Aircraft | Qual | Aircraft | Qual | Aircraft | Qual |
|---|---|---|---|---|---|---|---|---|
| Rating Date | | | | | | | | |

## SECTION IX-Assignment Information

Date of Last PCS 20080506 — Date of Last OER 20080116 — Org Zip Code 73503

| ASGT | FROM | MO | UNIT NO | ORGANIZATION | STATION | LOC | COMD | DUTY TITLE | DMOS |
|---|---|---|---|---|---|---|---|---|---|
| PROJ | | | | | | | | | |
| Current | 20090101 | | W2NT | A BTRY 1-30 PP | FT SILL | 1 OK | TC | SR INSTR/WTR | 19A005K00 |
| 1st Prev | 20080517 | 07 | W2NT | W2NT A BTRY 1-30 PP | FT SILL | 1 OK | TC | C COMB ARMS | 11A005K00 |
| 2nd Prev | 20080303 | 02 | 0000 | ARBN HHD | SCHWEINFU | GM | E1 | INCOMING PERSONNEL | 19A000000 |
| 3rd Prev | 20070213 | 12 | 0077 | ARBN 01HHC | CONN BARR | GM | E5 | COMMANDER | 19A000000 |
| 4th Prev | 20060124 | 12 | 0077 | ARBN 02CO A | CONN BARR | GM | E5 | COMMANDER | 19B000000 |
| 5th Prev | 20050907 | 04 | 0077 | ARBN 01HHC | CONN BARR | GM | E5 | S1 | 19B000000 |
| 6th Prev | 20040714 | 14 | 0063 | ARBN 02BN HHC | S CAMP VI | GM | E5 | BATTALION MAINT OFFICER | 19A000000 |
| 7th Prev | 20030616 | 13 | 0001 | INHHC DIV | LEIGHTON | GM | E5 | OPERATIONS OFFICER | 19A000000 |
| 8th Prev | 20011203 | 11 | 0014 | FABN 01HHS MLRS | FT SILL | 5 OK | FC | BATRY EXECUTIVE OFFICER | 13A000000 |
| 9th Prev | 20010701 | 05 | 0014 | FABN 01A BTRY MLRS | FT SILL | 5 OK | FC | BATRY EXECUTIVE OFFICER | 13A000000 |
| 10th Prev | 20001120 | 07 | 0014 | FABN 01 A BTRY MLRS | FT SILL | 5 OK | FC | PLATOON LEADER | 13A000000 |
| 11th Prev | 20000501 | 06 | 0015 | FABN 01HHB 155MM SP | CP CASEY | KS | P8 | COLT PLATOON LEADER | 13A000000 |
| 12th Prev | 19991114 | 06 | 0015 | FABN 01 A BTRY 155M | CP CASEY | KS | P8 | FIRE DIRECTION OFFICER | 13A000000 |
| 13th Prev | | | | | | | | | |
| 14th Prev | | | | | | | | | |
| 15th Prev | | | | | | | | | |
| 16th Prev | | | | | | | | | |
| 17th Prev | | | | | | | | | |
| 18th Prev | | | | | | | | | |
| 19th Prev | | | | | | | | | |

DA FORM 4037 RECSTA: G PPA: MF CURUPC: 2NT03 MPCAD: 0 PSC-CODE: TD22

31 OCTOBER 2012

CDR AHRC FORT KNOX, KY/AHRC-ZA//

CDR, HEADQUARTERS, 3RD INFANTRY DIVISION AND FORT STEWART, FORT STEWART, GA 31314//AFZP-CG//

SUBJECT: OFFICER ELIMINATION
UNCLAS

ACTION PRECEDENCE: ROUTINE

1. THE DEPUTY ASSISTANT SECRETARY OF THE ARMY (REVIEW BOARDS) APPROVED THE ELIMINATION OF CAPTAIN DERRICK T. DANIELS.
2. ON 18 APRIL 2012, A BOARD OF INQUIRY RECOMMENDED **CPT DANIELS, DERRICK T., Redacted PII AR, RA**, BE SEPARATED FROM THE UNITED STATES ARMY BASED ON MISCONDUCT AND MORAL OR PROFESSIONAL DERELICTION AND DEROGATORY INFORMATION, WITH AN HONORABLE DISCHARGE CERTIFICATE.
3. ON 23 OCTOBER 2012, THE DEPARTMENT OF THE ARMY BOARD OF REVIEW FOR ELIMINATIONS RECOMMENDED CPT DANIELS BE ELIMINATED FROM THE UNITED STATES ARMY BASED ON MISCONDUCT AND MORAL OR PROFESSIONAL DERELICTION AND DEROGATORY INFORMATION WITH AN **HONORABLE** DISCHARGE CERTIFICATE DD FORM 256A (FORMAT 500 OR 501). DD FORM 214 WILL BE PREPARED IAW AR 635-5. AUTHORITY FOR SEPARATION WILL CITE THIS MESSAGE AND CHAPTER 4, AR 600-8-24, PARAGRAPH 4-2(B) FOR MISCONDUCT AND MORAL OR PROFESSIONAL DERELICTION. **SPD CODE** WILL BE **JNC** (JULIETT NOVEMBER CHARLIE) IAW 635-5-1.
4. SEPARATION ORDERS WILL CONTAIN THIS STATEMENT: "OFFICER IS AN ROTC SCHOLARSHIP RECIPIENT AND IS SUBJECT TO RECOUPMENT UP CHAP 31, AR 37-104-4. THE AMOUNT EXPENDED SHOULD BE PRORATED AND THE OFFICER IS REQUIRED TO REIMBURSE THE GOVERNMENT FOR THAT PORTION OF THE COST OF EDUCATION NOT SATISFIED BY ACTIVE DUTY."
5. **DISCHARGE WILL BE COMPLETED NO LATER THAN 14 CALENDAR DAYS AFTER OFFICER IS OFFICIALLY NOTIFIED OF THIS ACTION.** HOWEVER, IN NO EVENT WILL DISCHARGE BE DELAYED PAST 21 CALENDAR DAYS FROM DATE OF THIS MESSAGE.
6. **ACKNOWLEDGE RECEIPT NO LATER THAN 7 DAYS FROM DATE OF THIS MESSAGE**. YOUR ACKNOWLEDGEMENT WILL INCLUDE THE DATE THE OFFICER WAS NOTIFIED OF THIS ACTION AND THE OFFICER'S ANTICIPATED SEPARATION DATE.
7. FORWARD ONE COPY OF DISCHARGE ORDERS TO THIS HEADQUARTER'S, ATTN: AHRC-OPL-R (MRS. WHITE), EMAIL: TEAIA.M.WHITE.CIV@MAIL.MIL, NO LATER THAN 10 DAYS AFTER OFFICER'S DISCHARGE.

DRAFTER: TEAIA M. WHITE, AHRC-OPL-R, DSN 983-6462

//SIGNED//
MAJ CORY J. MACK, CHIEF, RET&TRAN, DSN: 983-6609



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY FIELD ARTILLERY CENTER AND FORT SILL
FORT SILL, OKLAHOMA 73503-5000

REPLY TO
ATTENTION OF

29 JAN 2009

ATZR-C

MEMORANDUM FOR CPT Derrick T. Daniels, Redacted PII A Battery, 1st Battalion, 30th Field Artillery Regiment, 428th Field Artillery Brigade, Fort Sill, OK 73503

SUBJECT: Reprimand

1. You are hereby reprimanded for domestic assault and battery for beating, choking, and threatening your wife, for ongoing multiple adulterous affairs with women including one married to a deployed Soldier, and for conduct unbecoming an officer and gentleman.

2. On Sunday, 16 November 2008, you had a sexual encounter with a woman other than your wife, returned home, and went to bed. Your wife woke you up when she realized you smelled of the other woman. You admitted to your wife that you were having an affair and had just returned from her, confirmed her previous suspicions based upon email traffic she had read, then engaged in a fight with your wife. You attacked her by hitting her with your hands, then with a plastic baton, on her face and head to the brink of unconsciousness and leaving her with bruises still visible 5 days later. When she fell, you dragged her across the floor. You choked her, scratching her on her neck. You verbally threatened her to the point that she feared for her life.

3. You later explained to your wife that you met the other woman through an online website. You admitted to the investigating police that you had engaged in affairs with several other women. Your wife talked to one of the other women who revealed your other affairs, to include impregnating the wife of a deployed Soldier.

4. You have admitted that you are the father of twins with the woman you met on the website "onlinebootycall.com" and with whom you began a sexual relationship in June 2008 and continue until now. Initially you told her that you were separated from your wife and going through a divorce. Even after she learned you were still living with your wife, you continued the adulterous sexual relationship on a daily basis before and after morning physical training, on lunch breaks, and anytime you did not have to be at work. You admitted to her that you had several other affairs during your marriage including with another woman whom you admitted you also impregnated.

5. Your behavior is repugnant. You expect the Officers and Soldiers you train and lead to maintain the highest standards of duty, respect, honor and integrity, and, as such, must hold yourself to these same standards as the example. You violated the Army leader values with your actions over many months. Your actions indicate a lack of judgment in your professional and personal life.

6. Officers in the United States Army, especially those who teach and train others, must lead by example and conduct themselves beyond reproach. The young Americans we welcome to our ranks are bound together by their honor, integrity, and trust. They will learn that, in the Army, every Soldier is a leader and responsible for their personal conduct, regardless of rank. You have failed to lead by example.

7. This reprimand is imposed as an administrative measure under the provisions of AR 600-37 and not as punishment under UCMJ, Article 15. I intend to file this reprimand in your Official Military Personnel File (OMPF). You will acknowledge this memorandum by signing the attached endorsement, and return it through your chain of command to me within 15 calendar days, together with any statements or rebuttal on your behalf. I will withhold my decision on imposing and filing this reprimand until I receive and consider your response along with the recommendations of the chain of command.

PETER M. VANGJEL
Major General, USA
Commanding

(Office Symbol) 2 FEB 04 (Date)

MEMORANDUM THRU Office of the Staff Judge Advocate, Criminal Law Division, USAFACFS, Fort Sill, Oklahoma 73503

FOR Commander, USAFACFS, Fort Sill, Oklahoma 73503

SUBJECT: Reprimand

1. I acknowledge receipt of the subject memorandum. DTD (Initial)

2. I (wish) ~~(do not wish)~~ to submit matters on my behalf. DTD (Initial)

3. I understand that, should I wish to submit matters, I will be given the opportunity to consult with legal counsel. I understand that I must contact the Legal Assistance Office, OSJA (442-5058/5059) within two working days of receipt of the subject memorandum to make an appointment. DTD (Initial)

4. I understand that if I have already retained legal counsel, my retained counsel must authorize Army counsel to represent me for preparing matters. DTD (Initial)

5. I understand that if I have difficulty making an appointment to consult counsel, I will contact the Chief, Criminal Law Division (442-3900/3533), for assistance. DTD (Initial)

6. I (do) ~~(do not)~~ wish to consult with counsel. DTD (Initial)

[signature]
(Signature)

DERRICK T. DANIELS
(Print Name)

CPT, AR
(Rank, Branch)

**DEPARTMENT OF THE ARMY**
Combined Arms Division
Fires Center of Excellence
FT Sill, OK 73503

REPLY TO
ATTENTION OF:

AT-F-BFA                                                                        5 March 2009

MEMORANDUM FOR Major General Peter M. Vangjel, Commanding General, United States
Fires Center of Excellence, Fort Sill, OK 73503

SUBJECT: Reprimand Rebuttal

1. **Violations of UCMJ.** I accept full responsibility for my actions for the past several months.
I have not lived up to the Army's expectations or mine. I did assault my wife and I did have an
affair with Tara Brown for several months. I deeply regret the decisions I made but the current
picture depicted by the investigation is truly not who I am and the actual events during the
assault didn't occur as detailed during the investigation.

2. **The Assault.** On 17 February 2008, I did admit to my wife I was having an affair with Tara
Brown after returning from the first day of Red Leg War. This was based on the suspicion and
confrontation by her on the previous day. Wendy asked me if I loved her and I said yes. My
wife slapped me and I proceeded to push her several times to get her out of my way. We both
were in the den and she was blocking the exit, but I just wanted to get away from the situation.
As I continued to push her, she caught my thumb in her mouth and bit. I pleaded with her to let
me go and she did. As I walked away, she followed me into the bed room still screaming at me
about how I had ruined our lives. In the guest room, she went to the closet where she printed off
emails of my conversation with Ms. Brown. I told her that I was very sorry and tired of
everything, but I just wanted to be left alone. She shouted that she wanted me to see them. I was
ashamed, hurt and dismayed about the situation and everything else going on in my life after the
deployment. I told Wendy not to approach me but she did. As she came up to me, I notice a
plastic baton from her police woman Halloween costume on the floor. I picked up the baton and
stuck her on the side of the head once. The force and type of object was not nearly enough to
knock her to the ground nor did she ever go into unconsciousness. She went to her knees and
began to cry with her head on the bed. She then said "Why don't you just kill me!" I said if you
want to die then you know where the gun is at. **I didn't tell her go get the gun and I will shoot
you in the fucking head!** My wife had since hidden the weapon from me because I was already
seeing mental health. She was the only one who knew its location. I quickly grabbed the emails
still in her hands and tore them up. I then left the bed room to throw the torn papers into the
garbage can in the kitchen. As I was walking back to the bedroom to see if I had missed any
papers, Wendy was sitting in the hallway. She then kicked me between the legs. I then knelt
down and grabbed her around the neck, squeezing, and saying, "Stop it! This is not worth both
of us getting hurt!!" I then told her I was very sorry and helped her to her feet. At that point we
talked a couple hours about the affair and future plans.

3. **Me.** I am the Soldier that joined the Army at seventeen. As an E-1 private, I truly became to
love the Army's structure and camaraderie. I was sexually assaulted by my male cousin when I
was thirteen years old. I also grew up an only child and isolated in rural South Georgia. My

father was very strict and didn't allow me to participate in any extra curricular activities. Coming from South Georgia, I have a deep inferiority complex, but the Army gave me a chance to prove myself. Despite not being admitted to the West Point prep-school, I enlisted two additional years to get a green-to-gold scholarship. I really believed in the Army's philosophy of building people, giving them a sense of pride and belongingness. Unfortunately, some of my immediate supervisors didn't seem to fully support my goals and I really wanted to change that as a company commander.

4. **My research.** During my Master's Thesis I conducted a comparison and contrast case study on implementing change by Dr. John P. Kotter, a Harvard business professor who authored the Eight-Step Change Model, with the FM 6-22 Army Leadership and found they were the same in aspects of leading change. A fact very few military leaders know and this reconfirmed by desires and beliefs. The study confirmed that Soldiers are our most important resources and we can accomplish the impossible only if we invest properly. I poured my heart and soul in an attempt to make this work.

5. **My OPTEMPO.** The Army has the system to build strong leaders but we rarely make the system operate as it was design. I gave myself completely too every job in an attempt to facilitate this philosophy. But somewhere along the way, I lost who I was. My positions from the past few years included:

a. 1ID Division Battle Captain OIF II: February 2004 to July 2004.

b. 2-63 AR, Battle Captain OIF II: July 2004 to January 2005.

c. 2-63 AR, Battalion Maintenance Officer: February 2005 to August 2005. Due to BRAC relocation, I was tasked with organizing and monitoring equipment turn-in over 337 vehicles within 45 days for the relocation of 3BDE/1ID. This was accomplished with a depleted workforce due to post-OIF II and a daily fifteen hour workday.

d. 1-77 AR, Battalion S1: August 2005 to January 2006. I inherited and resubmitted over 286 awards for Soldiers from the previous deployment while simultaneously preparing to redeploy for 06-08. Several awards had to be rewritten despite several leaders having PCSd and ETSd. Leadership was brand new and companies were already training for deployment, so I rewrote several awards myself.

e. A/1-77 AR Commander: January 2006 to December 2006. All of my lieutenant experience is Field Artillery and I didn't attend a maneuver transition course due to deployment preparation.

1. Tank Gunnery: January 2006 to February 2006. Through hard work and perseverance, I accomplished the best crew score of the entire company commander's with a superior score of 806/1000 points.

2. Hohenfels Mission Readiness Exercise: February 2006 to March 2006. The 2BCT/1ID compressed a 45 day exercise within 30 days. We experienced bitter cold but were able to complete all required training tasks.

3. Tank Gunnery: July 2006 to August 2006. We had to re-qualify several crews due to the change in the deployment dates and new arrivals. We accomplished this within ten days.

4. Deployment: August 2006 to December 2006.

a. Left-seat right seat ride. I attended the COIN academy in Taji. Soon after, I conducted a RECON for two areas of operations because of uncertainly were to implement tanks. We also conducted an accelerated left-seat-right-seat ride within two weeks and signed for equipment from a tank company and FA battery with-in two days.

b. Battle Rhythm. We were half the size of my Infantry Company, but we innovatively operated effective by task organizing down in the platoons. Our missions included conducting deliberate cordon and searches, SOI engagements, project assessments, and daily patrols. It was standard SOP for us to police, myself included, dead bodies from canals and streets. I was also personally involved in two small arm attacks, one involving my platoon leader being shot in his shoulder. We experienced strategic challenges such as OPERATION LION's GATE which was to maintain security by keeping insurgents out of Baghdad with barriers erected outside the city. My tactical challenge was that the local civilians couldn't tend their crops or walk their kids to school. My orders were to stencil Arabic on the barriers warning anyone not to breach these barriers or they would be shot.

5. Command inventories. I gave up command in December to take command of HHC/1-77 AR in Ramadi. I had to work around the other company's battle rhythms to perform my inventories. This was accomplished within three weeks within cities of Baghdad, Taji and Ramadi.

f. HHC/1-77 AR Commander, January 2007 to April 2008.

1. Deployment. The support platoon and HQs platoon was directly under my command and I was responsible for all logistical support for several ISF and coalition outposts across the battalion's footprint.

2. Casualties. The day I took command of over three hundred forty two Soldiers, I lost two junior NCOs. Several months later, two more of my Soldiers suffered gun shot wounds and one became a double amputee below the knees. Two months prior to redeployment, I lost a fine NCO on the TF Commander's PSD. I spoke at the memorial service for all of my Soldiers and I personally consoled family members with a phone call.

2. Administration. I also didn't falter in completing numerous congressionals, article 15s, OERs NCOERs and every deployment, PCS, ETS award in the company, including staff, prior to redeployment.

3. BRAC relocation. After redeployment, we were informed the BDE was moving to Grafenwhoer. Thus preparations were being made to move over 136 designated families within three months. The move was to be completed before the rigorous training in preparation for the next deployment.

4. Property Accountability. Property accountability was a humongous problem due to a very in-experienced supply sergeant and new XO. I would spend several hours monitoring, training and coaching just to maintain the required standard. Due to our tremendous hard work and effort of every leader I influenced, I left both commands without spending a penny.

5. Inferiority. My complex really plagued me during my command. My battalion commander was African American and my predecessor for Headquarters' Company was African American as well. There was a rumor going through our battalion FRG that my battalion commander was showing favoritism. The battalion executive officer and commander didn't have a good relationship and it showed in training meetings. There was always a constant power struggle and I felt that the battalion XO was trying to command my company by giving orders and requirements to my company executive officer daily. The high tension among the staff and myself along with everything else going on in my command affected me deeply. So I worked harder. I worked desperately just to get everyone's approval that I was good despite my color. I never mentioned anything to anybody because I was afraid that I would be labeled as using the race card. My complex worsened when I returned. I became obsessed with the presidential election. I would daily read all the bias comments, blogs and racial slurs about the President on several chat websites. I had a hard time accepting that some people will never accept me no matter how hard I worked and would question my sincerity and patriotism.

6. **Post Deployment**. After command, I became extremely depressed. I worked so hard in trying to maintain a standard, but I didn't accomplish it the way I had envisioned.

a. I felt cheated, I was held responsible for everything my companies did or fail to do, but I wasn't giving any latitude to make any decisions on training based on my assessment. Everything was dictated, and I didn't have the time to work on my mentorship program.

b. So many Soldiers fell by the waste side. Some reasons were that their immediate supervisors are being promoted at an accelerated rate. These subordinate leaders don't know how to counsel, teach and/or mentor. I still had junior NCOs fraternizing with Soldiers. Our Lieutenants were fresh college kids. Our staff was senior lieutenants and junior captains who had yet to go to their career courses. The only thing that helped us get through the deployment was adrenaline and knocking down fifty meter targets. It was never really about me, but I wanted so desperately to be part of the solution. We treat counseling as if it's just PART of what we do, but it needs to be the nucleus of a leader's existence. Everything should steam from this; the problem is most leaders don't see how it would or could work.

c. I became frustrated about where I was in my life and num to everything around me. I began to hate people, especially some of my egotistical peers who bragged about their deployment experiences and I started not to trust my leaders. I felt as if I was taken for granted just to get the job done. Whatever tough crisis, I did it. I didn't ask questions or question my

leaders decisions, I executed. I started drinking heavily after the deployment and would have inappropriate conversations with women online because I enjoyed it. I resented the constant arguments in my marriage and I also began to resent the Army standard. I began to feel it was false, a hoax, just a way to get what they wanted out of you and send you on your way with a badge on your chest damn near everyone received.

7. **Family.** My wife and I have known each other since high school. She was fourteen and I was seventeen when we met.

a. I would constantly drink, yell and break items in the house, thus my wife had me to self admit into mental health and ASAP this past August. I was embarrassed, I felt that I was going to be labeled and I wasn't completely truthful with my counselors about my true problems. My wife Wendy, like me, suffers from depression. We are unable to have any children and we have an extremely hard time finding decent medical insurance because of her heart murmur. She also suffers from carpal tunnel syndrome which limits her ability to work and perform activities in her studies. We constantly have to monitor her mother's medical condition since she lives by herself in Florida.

b. Wendy and I always had problems, but I have never hit her in anger or never had an actual affair until after my second deployment. I wanted to give my wife everything but I had nothing left after command. Trying to deal with my personal guilt, helping my wife deal with her depression, her stress of continuing her education, and financial difficulties became too much for me to bear. I thought I could handle my actions and feelings alone, but I was wrong. I felt horrible about my actions and bought a house, hoping things would get better but they didn't.

c. In an effort to stop the extra martial affair, I told Ms. Brown things about past affairs that were not true in an effort to ease out of the relationship. However, I would continue to see her constantly, especially when I became depressed about my marriage and profession. In addition, I only admitted to CID about one affair, not several as depicted in the investigation.

8. **The future.** I take full responsibility for my actions and expect to be punished.

a. I have recently learned through the post-deployment clinic that post-deployment anger is a form of male depression and I have taken steps to control it. It was never my intentions to strike my wife in anger or cheat; I still love her and this country and hopefully would like to have the opportunity to command again to take care of some unfinished business. I still possess the moral character to make the tough right choices and I undoubtedly have the knowledge and desire.

b. Despite my personal feelings of ineffectiveness, my Armor and FA experience still made me one of the best commanders in the Dagger brigade and my OERs illustrate that. I also accomplished this as the only African American maneuver commander in the brigade, another fact I am proud of. From my recent sessions with my therapist, I have found comfort in knowing that I did affect a few, some Soldiers went OCS, some warrant officers and others went Green-to-Gold. And this was accomplished only by observing my compassion in command.

ATSF-BF

2 FEB 09
Date

MEMORANDUM FOR Commander, 428th Field Artillery, Fort Sill, Oklahoma 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII, Alpha Battery, 1st Battalion, 30th Field Artillery, Fort Sill, Oklahoma 73503

1. I have reviewed the reprimand imposed on 29 January 2009 against CPT Derrick T. Daniels, Alpha Battery, 1st Battalion, 30th Field Artillery:

2. After due consideration, I hereby recommend that the reprimand with all attachments be:

CPT Forwarded to be filed in his Official Military Personnel File (OMPF) for the following reason(s):
CPT Daniels' behavior is/was absolutely unacceptable for a Senior Captain. His multiple offenses could have easily gone to a Court Martial!

_____ Maintained in the local unit Service Member Information File (SMIF) for a period of 3 years from the date of the reprimand or until the Soldier's PCS form his unit or ETS from the service for the following reason(s):

_____ Returned to the Soldier without any filing in his files or records for the following reason(s):

3. In my opinion, this Soldier ~~(does)~~ (does not) have rehabilitative potential because:
Do not believe CPT Daniels should be promoted and move up in our ranks. He is still accomplishing his mission training Lieutenants.

4. The Soldier's actions have caused the following impact on the unit:
Embarrassing for the Unit and the Officer Corps.

Encl
Reprimand File

CHRISTOPHER P. TALCOTT
LTC, FA
Commanding

ATSF-B

14 MAR 09
Date

MEMORANDUM FOR Commander, USAFACFS, Fort Sill, Oklahoma 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII, Alpha Battery, 1st Battalion, 30th Field Artillery, Fort Sill, Oklahoma 73503

1. I have reviewed the reprimand imposed on 29 January 2009 against CPT Derrick T. Daniels, Alpha Battery, 1st Battalion, 30th Field Artillery:

2. After due consideration, I hereby recommend that the reprimand with all attachments be:

X Forwarded to be filed in his Official Military Personnel File (OMPF) for the following reason(s):
Unacceptable behavior.

_____ Maintained in the local unit Service Member Information File (SMIF) for a period of 3 years from the date of the reprimand or until the Soldier's PCS form his unit or ETS from the service for the following reason(s):

_____ Returned to the Soldier without any filing in his files or records for the following reason(s):

3. In my opinion, this Soldier (does) (does not) have rehabilitative potential because:
SM has multiple deployments and is being treated for PTSD. He continues to be a fine instructor and provides value to the brigade.

4. The Soldier's actions have caused the following impact on the unit:
embarrassed the officer corps

Encl
Reprimand File

JOHN S. FANT
COL, FA
Commanding

ATZR-J

26 MAR 2009

MEMORANDUM FOR Commander, USAFACFS, Fort Sill, OK 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII, A Battery, 1st Battalion, 30th Field Artillery Regiment, 428th Field Artillery Brigade, Fort Sill, OK 73503

1. This is a **DECISION PAPER**. This is no suspense.

2. **Purpose:** To make a filing determination on the subject reprimand.

3. **Facts/Background:**

a. On 29 January 2009, CPT Daniels was issued a reprimand for domestic assault and battery, for ongoing multiple adulterous affairs with women including one married to a deployed Soldier, and for conduct unbecoming an officer and gentleman (Tab A).

b. On 2 February 2009, CPT Daniels acknowledged receipt of the reprimand and indicated that he would submit matters on his behalf. In his matters, CPT Daniels takes full responsibility for his actions. CPT Daniels states that he admits and regrets his actions over the past few months and that his actions do not truly display the type of soldier he really is. (Tab B).

4. **Chain of Command:** The chain of command recommends that it be filed in his OMPF file (Tab C).

5. **Recommendation:** File the reprimand in CPT Daniels's OMPF.

STEVEN C. HENRICKS
LTC, JA
Acting Staff Judge Advocate

3 Encls
1. Reprimand
2. Acknowledgement
3. Recommendations



**DEPARTMENT OF THE ARMY**
**UNITED STATES ARMY FIELD ARTILLERY CENTER AND FORT SILL**
**FORT SILL, OKLAHOMA 73503-5000**

REPLY TO
ATTENTION OF

26 MAR 2009

ATZR-C

MEMORANDUM FOR Office of the Staff Judge Advocate, Criminal Law Division, USAFACFS, Fort Sill, OK 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII, A Battery, 1st Battalion, 30th Field Artillery Regiment, 428th Field Artillery Brigade, Fort Sill, OK 73503

1. I have reviewed the reprimand imposed on 29 January 2009 against CPT Daniels, the matters submitted by CPT Daniels, as well as the recommendations of his chain of command.

2. After due consideration and in accordance with AR 600-37, I direct that the reprimand with appropriate enclosures be:

__[initials]__ Filed in CPT Daniels's Official Military Personnel File (OMPF).

_______ Maintained in the local unit Service Member Information File (SMIF) for a period of 3 years from the date of the reprimand or until CPT Daniels's PCS from Fort Sill.

_______ Returned to CPT Daniels without any filing in his files or records.

[signature]
GREGORY J. DYEKMAN
COL, FA
Acting Commander

CF:
CPT Daniels
Cdr, 428th FA Bde
Cdr, 1-10 FAR





**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY FIELD ARTILLERY CENTER AND FORT SILL
FORT SILL, OKLAHOMA 73503-5100

REPLY TO
ATTENTION OF:

ATZR-C                                                              26 March 2009

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Assumption of Command

1. By the authority of AR 600-20, para. 2-8, the undersigned assumes command of the United
States Army Field Artillery Center and Fort Sill (W2NTAA), Fort Sill, Oklahoma 73503, during
the temporary absence and/or voluntary devolvement of the regularly assigned Commander,
Major General Peter M. Vangjel, and the Assistant Commandant, Brigadier General, Ross E.
Ridge.

2. Effective date time: 24 1330 March 2009 to 27 1020 March 2009.

GREGORY J. DYEKMAN
COL, FA
Chief of Staff

DSITRIBUTION:
HQDA (DAPE-GO)
Cdr, TRADOC (ATPL-AP)
Asst Cmdt, USAFAS
AG (ATZR-O)
SJA



DEPARTMENT OF THE ARMY
ARMY REVIEW BOARDS AGENCY
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22042-3531

REPLY TO
ATTENTION OF

SAMR-RBM 11 October 2016

MEMORANDUM FOR Case Management Division, Army Review Boards Agency

SUBJECT: Advisory Opinion for DANIELS, DERRICK, Redacted PII, AR20150012081

1. References

a. Diagnostic and Statistical Manual of Mental Disorders-5th Edition
b. AR 40-501, Standards of Medical Fitness, RAR003, 04 Aug 2011
c. AR 600-8-24, Officer Transfers and Discharges, 12 Apr 2006, RAR, 13 Sept 2011

2. Derrick T. Daniels served in the Army from 19 March 1999 to 16 November 2012 as a 19A (Armor Officer). He received an Honorable discharge IAW AR 635-8-24, Paragraph 4-2B, Unacceptable Conduct. He deployed from 7 February 2004 to 6 February 2005, 20 August 2006 to 20 November 2007, and 17 December 2009-16 December 2010 in support of Operation Iraqi Freedom.

3. On 13 June 2015, Mr. Daniels requested reconsideration of his previous application contending the ABCMR failed to consider his mis-diagnosis of severe depression as PTSD. Mr. Daniels' previous application contended that if he was treated for severe depression in the beginning, his transgression would never have happened. This case was previously denied on 7 April 2015 after the ABCMR determined that the discharge was proper and equitable and voted to deny relief.

4. A military investigation dated 15 December 2008, found Mr. Daniels had assaulted his spouse, committed adultery, admitted to committing adultery, and had committed offenses that amounted to conduct unbecoming of an officer and a gentleman. On 29 January 2009, Mr. Daniels received a GOMAR for the domestic assault and battery which entailed beating, choking, and threatening his wife; for ongoing multiple adulterous affairs with women; and for conduct unbecoming of an officer and a gentleman.

5. Military medical records indicated a behavioral health treatment history for Alcohol Abuse, an Adjustment Disorder with Anxiety and Depressed Mood, Post Traumatic Stress Disorder, and Depression. Mr. Daniels engaged in several behavioral health services to include Psychology and Social Work individual and group treatments, medication management through Psychiatry, outpatient and inpatient services, Family Advocacy, ASAP, and off-post counseling. It appears Mr. Daniels was evaluated thoroughly, actively engaged in treatment, and endorsed symptoms appropriate to the given diagnoses for each treatment session. A VA letter dated 4 February 2015 indicated that a service connection for Anxiety Disorder Not Otherwise Specified with

Major Depressive Disorder was granted and Mr. Daniels was assigned a disability rating of 30 percent effective 17 November 2012. A medical note dated 8 January 2013 indicated Mr. Daniels had an Axis I diagnosis of PTSD from a VA psychiatrist. The provider included an opine that Mr. Daniels endorsed scarcely unusual PTSD symptoms for someone exposed to combat and determined the symptoms had not made Mr. Daniels unstable in any way and that they were more a matter of mild occasional discomfort.

6. The Army Review Boards Agency Clinical Psychologist was asked to determine if the condition of PTSD was duly considered during the military separation process of Mr. Daniels. This opinion is based on the information provided by the Board and records available in the DOD electronic medical record (AHLTA). Based on thorough review of available medical records, there is no evidence that the diagnosis of Depression or PTSD was misdiagnosed or that either condition mitigated his misconduct as the nature of these conditions are not reasonably related to the misconduct of domestic violence and engaging in adultery. This observation does not negate Mr. Daniels's deployment history or in-service and post-service diagnoses of depression and post traumatic stress; however, the presence of anxiety, depression, or PTSD during the time period of which he engaged in multiple infractions of misconduct, does not explain or directly mitigate his actions leading to an early separation from the Army. The medical evidence that is available makes no indication that Mr. Daniels was misdiagnosed, that he was not responsible for his decisions and actions, or that he was considered psychologically unfit for duty; therefore there is no basis for Mr. Daniels contention that his transgressions would never have happened if he was treated for severe depression in the beginning.

7. Thank you for the opportunity to assist in this process. Point of contact for this memorandum [redacted], Medical Advisor, Army Review Boards Agency.

10/11/2016

X [redacted]

[redacted]
MAJ, Clinical Psychologist
Signed by [redacted] Redacted PII



**DEPARTMENT OF THE ARMY**
ARMY REVIEW BOARDS AGENCY
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

October 12, 2016

Case Management Division
/rp
AR20150012081, Daniels, Derrick T

Mr. Derrick T Daniels

Dear Mr. Daniels:

This is in reference to your application to the Army Board for Correction of Military Records (ABCMR) dated July 13, 2015.

Title 10, United States Code, section 1556 requires we provide applicants a copy of various types of correspondence and communication we receive related to their application. This includes any advisory opinion provided from outside of the Army Review Boards Agency that directly pertains to or has a material effect on an applicant's case.

In your case, we received an advisory opinion from the Army Review Boards Agency, 251 18th Street South, Suite 385, Arlington, VA 22042-3531 (copy enclosed). The ABCMR can adopt the advisory opinion recommendation in whole, in part, or reject the recommendation, based on the Board's analysis of the facts and circumstances of your case.

We have placed the processing of your application on hold for 30 days from the date of this letter to allow you the opportunity to submit comments on the enclosed advisory opinion. Your comments or any request for an extension beyond this period must be submitted in writing to: Director, Case Management Division, Army Review Boards Agency, 251 18th Street South, Suite 385, Arlington, VA 22202-3531. You may also fax your comments to 703-601-0705 or DSN 329-0705 to the attention of Ms. Rosa M. Pace.

If you choose not to submit comments by the suspense date, the ABCMR will make a final determination in your case based on available facts and documents.

16 Nov 16 Applicant did not reply

Sincerely,

for Rosa M Pace

Jeffrey C. Lieb
Director, Case Management Division

Enclosure

Printed on Recycled Paper

**Derrick Daniels**

Redacted PII
Cell: Redacted PII derrick.daniels72@gmail.com

Jeanne Marie Rowan
Army Review Board Agency
Acting Chief, Congressional and Special Actions
251 18th Street South, Suite 385
Arlington, VA 22202-3531

July, 13 2015

RE: Dock #: AR20140008998

Dear Mrs. Rowan,

I am writing requesting reconsideration of my application. The ABCMR response letter dated 07 April 2015 did not consider my primary basis for submission. My entire case directly hinges on I was not diagnosed with and treated for Severe Depression when symptoms were clearly present during my initial enrollment at the Fort Sill Behavioral Clinic in August of 2008. Here is my analysis:

1. The very first line of my letter to ABCMR dated 20 May 2014 is verbatim "I request reinstatement on Active Duty due to a misdiagnosis of severe depression". Also in paragraph 4, line 7 it states verbatim: "The symptoms of the affair, physical altercation and weight gain were results of severe depression". Again in paragraph 9 the first line is verbatim: "If I was treated for severe depression in the beginning, these transgressions would never have happened." This is the basis of my claim.

2. The 07 April 2015 letter under the Applicant's, Request, Statement, and Evident second line is verbatim: "He continues by stating he was misdiagnosed with severe depression when in fact he suffered from chronic post-traumatic stress disorder (PTSD). That statement is not in my letter to the board.

3. The 07 April 2015 letter under Discussion and Conclusions line 6 is verbatim: "The applicant's contention that PTSD caused his misconduct has also been noted and appears to lack merit." The PTSD submission was deliberated and discredited during my BOI hearing. In my letter to the ABCMR, fourth paragraph, line 3 states verbatim "Dr. Parodi's disqualification of my PTSD diagnosis in my mental health records raises concern on my entire military treatment process." It was only after the BOI findings I was made aware of my severe depression by Dr. Marks which predates my affair, weight gain and physical altercation with my wife. If the BOI had the full understanding of my severe depression diagnosis, I would still be on active duty.

4. The 07 April 2015 letter under Consideration of Evidence number 30 is verbatim: "On 8 January 2013, the VA diagnosed the applicant as suffered from PTSD." This statement is also untrue. In my letter to the ABCMR, Annex M, first line is verbatim: "This 40 year old veteran is seen in follow up treatment of PTSD." The purpose of this visit to the VA psychiatrist was to document I was mentally stable in maintaining my security clearance. After informing the doctor of my severe depression diagnosis, he stated that PTSD can stem from it. This visit was more of an observation rather an evaluation. I submitted this record in order to establish I am still fit to serve on active duty. This was not an attempt in trying to establish a PTSD diagnosis as a basis for this submission.

5. After the Stability Board denied my request to transfer the GOMAR into my restricted file, I obtained the affidavit from Ms. Brown. Before my resubmission, I was targeted for elimination. The BOI accepted the merit of Tara Brown's affidavit. But since Dr. Paroli discredited the PTSD diagnosis, there were no other mitigating circumstances for the affair and altercation. Based on the evidence, the BOI

recommended involuntary separation. This very action prompted me to get a concrete diagnosis on my mental state of mind post 2007-08 deployment. After Dr. Mark's diagnosis, I was able to identify other symptoms of depression in my mental health records.

6. Dr. Marks was the only psychiatrist who probed my combat experiences in pinpointing the origin of my depression. She documented the affair and physical altercation resulted from my severe depression. A cross examination of Dr. Marks documentation and the military mental health records will show a more shallow evaluation from the military psychiatrists. The symptoms of severe depression, however, are undeniably documented in my initial interview at Fort Sill Behavioral Health Clinic. For validation, I even documented the definition of severe depression and its signs and symptoms in paragraph 4, line 3 of my initial letter to the ABCMR. Three doctors and a mental health hospital, with no correspondence amongst each other, either documented or testified under oath signs of depression.

My lawyer and I carefully reviewed my letter to the ABCMR for clarity and strongly agree a reasonable person would have understood the initial intent of the letter. Technically, the one year resubmission period should be waived since the primary evidence was never reviewed. It has literally taken me years of time, money and tremendous effort in collecting documentation, mental evaluations and legal advice. I had hoped this board would at least seek counsel from a compatible counterpart of Dr. Marks or contact her directly in determining a decision. Based on the evidence submitted and the complexity of this case, we both agree my case should be carefully reconsidered.

Depression is extremely real. A Fusion article details many veterans feel the ABCMR does not honor the warranted review simply because of the possible benefit payouts. This is truly disheartening since many of us have lost so much in our lives, including families, Soldiers and self-worth. What we have discovered is there is a prescreening process which disqualifies a large portion prior to reaching the board. The frustration is these applications are denied by staff members without any consolation from specialists. These applications are carefully prepared with expert analysis and packaged by lawyers prior to submission. Some veterans have decided to file a lawsuit against the Army Review Board Agency. A review of the reasons for denials is inconsistent. Some of these veterans disqualifying criteria I actually have documented. But systems are only as good as people that orchestrate them. However, I understand the characteristic of a bureaucratic process in which agencies are overwhelmed in producing desired results. I have experienced this during my command and as a staff officer. But I served the Army for seventeen years and have met some very honorable people. This is why I decided to write you personally for a second review. A similar letter will be sent to the ABCMR. Even if I am granted a hearing at my own expense, I would be grateful in providing any further clarification in all matters considered. It's imperative that my burden is resolved in the most absolute manner.

Sincerely,

Derrick T. Daniels

**Derrick Daniels**

Redacted PII
Cell: Redacted PII derrick.daniels72@gmail.com

Army Review Board Agency
251 18th Street South, Suite 385
Arlington, VA 22202-3531

June 29, 2015

RE: Dock #: AR20140008998

President of the Army Board for Correction of Military Records,

I am writing requesting reconsideration of my application. The ABCMR response letter dated 07 April 2015 did not consider my primary basis for submission. My entire case directly hinges on I was not diagnosed with and treated for Severe Depression when symptoms were clearly present during my initial enrollment at the Fort Sill Behavioral Clinic in August of 2008.

The very first line of my letter to ABCMR dated 20 May 2014 is verbatim "I request reinstatement on Active Duty due to a misdiagnosis of severe depression". Also in paragraph four, line seven it states verbatim: "The symptoms of the affair, physical altercation and weight gain were results of severe depression". Again in paragraph nine the first line is verbatim: "If I was treated for severe depression in the beginning, these transgressions would never have happened." This is the basis of my claim.

The 07 April 2015 letter under the Applicant's, Request, Statement, and Evident second line is verbatim: "He continues by stating he was misdiagnosed with severe depression when in fact he suffered from chronic post-traumatic stress disorder (PTSD). That statement is not in my letter to the board.

The 07 April 2015 letter under Discussion and Conclusions line six is verbatim: "The applicant's contention that PTSD caused his misconduct has also been noted and appears to lack merit." The PTSD submission was deliberated and discredited during my BOI hearing. In my letter to the ABCMR, fourth paragraph, line three states verbatim "Dr. Parodi's disqualification of my PTSD diagnosis in my mental health records raises concern on my entire military treatment process." It was only after the BOI findings I was made aware of my severe depression by Dr. Marks which predates my affair, weight gain and physical altercation with my wife. If the BOI had the full understanding of my severe depression diagnosis, I would still be on active duty.

The 07 April 2015 letter under Consideration of Evidence number thirty is verbatim: "On 8 January 2013, the VA diagnosed the applicant as suffered from PTSD." This statement is also untrue. In my letter to the ABCMR, Annex M, first line is verbatim: "This 40 year old veteran is seen in follow up treatment of PTSD." The purpose of this visit to the VA psychiatrist was to document I was mentally stable in maintaining my security clearance. After informing the doctor of my severe depression diagnosis, he stated that PTSD can stem from it. This visit was more of an observation rather an evaluation. I submitted this record in order to establish I am still fit to serve on active duty. This was not an attempt in trying to establish a PTSD diagnosis as a basis for this submission.

After the Stability Board denied my request to transfer the GOMAR into my restricted file, I obtained the affidavit from Ms. Brown. Before my resubmission, I was targeted for elimination. The BOI accepted the merit of Tara Brown's affidavit. But since Dr. Paroli discredited the PTSD diagnosis, there were no other mitigating circumstances for the affair and altercation. Based on the evidence, the BOI recommended involuntary separation. This very action prompted me to get a concrete diagnosis on my mental state of mind post 2007-08 deployment. After Dr. Mark's diagnosis, I was able to identify other symptoms of depression in my mental health records.

Dr. Marks was the only psychiatrist who probed my combat experiences in pinpointing the origin of my depression. She documented the affair and physical altercation resulted from my severe depression. A cross examination of Dr. Marks documentation and the military mental health records will show a more shallow evaluation from the military psychiatrists. The symptoms of severe depression, however, are undeniably documented in my initial interview at Fort Sill Behavioral Health Clinic. For validation, I even documented the definition of severe depression and its signs and symptoms in paragraph four, line five of my initial letter to the ABCMR. Three doctors and a mental health hospital, with no correspondence amongst each other, either documented or testified under oath signs of depression.

My lawyer and I carefully reviewed my letter to the ABCMR for clarity and strongly agree a reasonable person would have understood the initial intent of the letter. It has literally taken me years of time, money and tremendous effort in collecting documentation, mental evaluations and legal advice. I had hoped this board would at least seek counsel from a compatible counterpart of Dr. Marks or contact her directly in determining a decision. Based on the evidence submitted and the complexity of this case, we both agree my case should be carefully reconsidered. Even if I am granted a hearing at my own expense, I would be grateful in providing any further clarification in all matters considered. It's imperative that my burden is resolved in the most absolute manner.

Sincerely,

Derrick T. Daniels



**DEPARTMENT OF THE ARMY**
ARMY BOARD FOR CORRECTION OF MILITARY RECORDS
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

April 09, 2015

AR20140008998, Daniels, Derrick T.

Mr. Derrick T. Daniels
**Redacted PII**

Dear Mr. Daniels:

I regret to inform you that the Army Board for Correction of Military Records denied your application.

The Board considered your application under procedures established by the Secretary of the Army. I have enclosed a copy of the Board's Record of Proceedings. This decision explains the Board's reasons for denying your application.

This decision in your case is final. You may request reconsideration of this decision within one year by letter to the above address only if you can present new evidence or argument that was not considered by the Board when it denied your original application.

A copy of the Board's decision and proceedings has been furnished to the counsel you listed on your application, Robert S. Poydasheff, Post Office Box 348, Columbus, Georgia 31902.

Sincerely,

Natalie H. Abt
Acting Director, Army Board for Correction of Military Records

Enclosure



**DEPARTMENT OF THE ARMY**
**ARMY BOARD FOR CORRECTION OF MILITARY RECORDS**
**251 18TH STREET SOUTH, SUITE 385**
**ARLINGTON, VA 22202-3531**

SAMR-RBA

9 April 2015

MEMORANDUM FOR US ARMY REVIEW BOARDS AGENCY, CASE MANAGEMENT DIVISION, 251 18TH STREET SOUTH, SUITE 385, ARLINGTON, VA 22202-3531

SUBJECT: Army Board for Correction of Military Records Record of Proceedings for Daniels, Derrick T., SSN Redacted PII, AR20140008998

The application submitted by the individual concerned has been denied by the Army Board for Correction of Military Records.

Encl

NATALIE H. ABT
Acting Director, Army Board for Correction
of Military Records

CF:
( ) OMPF

Printed on Recycled Paper

ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

RECORD OF PROCEEDINGS

IN THE CASE OF: DANIELS, DERRICK T.

BOARD DATE: 7 April 2015

DOCKET NUMBER: AR20140008998

THE BOARD CONSIDERED THE FOLLOWING EVIDENCE:

1. Application for correction of military records (with supporting documents provided, if any).

2. Military Personnel Records and advisory opinions (if any).

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. The applicant requests the following:

- that his discharge be voided
- that he be reinstated to active duty
- promoted to the rank of major with a date of rank of 1 December 2008
- his year group adjusted for competitiveness
- consideration for a change to Functional Area 57
- removal of his General Officer Memorandum of Reprimand (GOMOR) from his Official Military Personnel File (OMPF)
- removal of two referred Officer Evaluation Reports (OERs) from his OMPF with the periods declared non-rated
- removal of the Department of the Army Suitability Evaluation Board (DASEB) proceedings from his OMPF

2. The applicant states, in effect, that the GOMOR contains erroneous information and resulted in his unjust involuntary discharge from the Army. He continues by stating that he was misdiagnosed with severe depression when in fact he suffered from chronic post-traumatic stress disorder (PTSD). He further states that had he been properly diagnosed and properly treated, his misconduct would not have resulted. Additionally, had the proper diagnosis been made he would not have been discharged.

3. The applicant provides a two-inch binder containing a five-page and two-page letter explaining his application and a list of enclosures containing enclosures A through P.

CONSIDERATION OF EVIDENCE:

1. After serving over 4 years of active enlisted service in the Regular Army, the applicant was commissioned as a U.S. Army Reserve second lieutenant upon completion of the Reserve Officer's Training Corps program on 12 December 1998. He entered active duty on 19 March 1999.

2. He completed his training and was transferred to Korea for his first duty assignment. He also completed multiple tours in Iraq and Kuwait and was promoted to the rank of captain on 1 October 2002.

3. On 15 December 2008, an investigation conducted under Army Regulation 15-6 (Procedures for Investigating Officers (IOs) and Boards of Officers) was completed at Fort Sill, Oklahoma which found that the applicant had assaulted his spouse, that he had committed adultery and admitted to committing adultery, and that he had committed offenses that amounted to conduct unbecoming an officer and a gentleman. The IO noted that the applicant had a history of mental health problems and alcohol abuse and was seeking treatment for both.

4. The IO recommended that the applicant receive a GOMOR, that he be removed from his present position and reassigned to a position of lesser influence, and that he continue to seek professional help for his problems.

5. On 29 January 2009, the Commanding General (CG) at Fort Sill issued the applicant a GOMOR for domestic assault and battery; for beating, choking and threatening his wife; for ongoing multiple adulterous affairs with women; and for conduct unbecoming an officer and gentleman.

6. The applicant elected to submit a rebuttal to the GOMOR which consisted of his accepting responsibility for his actions and regretting the assault on his wife and having an affair with another woman. He went on to state that the investigation did not reveal the true facts and then outlined his accomplishments. He concluded by stating that the stress of multiple deployments and lack of treatment caused his misconduct.

7. The entire chain of command recommended filing the GOMOR in the applicant's OMPF and the appropriate authority so directed on 26 March 2009.

8. Meanwhile, the applicant was selected for promotion to major by the Fiscal Year 2008 Major Promotion Selection Board.

9. On 11 May 2009, the applicant received a change of rater OER covering the period 20080515 – 20090331 evaluating him as a senior instructor/writer. In Part

IVa, under Army Values, the applicant received "NO" ratings under "Honor" and "Loyalty."
10. In Part Va, under Performance and Potential Evaluation, he received an "Unsatisfactory Performance" rating. In Part Vb, the specific comments indicate that the applicant's personal conduct did not match his duty performance as his duty performance was superb; however, he received a GOMOR for conduct unbecoming an officer and gentleman, which was the direct result of his not living up to the Army's high personal moral standards. His rater recommended that he not be promoted to the rank of major and that he be retained as an instructor or staff officer. His intermediate rater also recommended that the applicant not be promoted but that he should be retained on active duty.

11. The applicant's senior rater (brigade commander) in Part VII gave the applicant a "Do Not Promote" rating and placed him below center of mass on his senior rater profile. He recommended that the applicant be retained on active duty to continue to receive medical treatment and overcome the personal challenges that afflicted him during the rating period.

12. The report was considered adverse and as such was referred to the applicant who responded with a one-page letter of explanation. Meanwhile, he was removed from the Fiscal Year 2008 Major Promotion Selection List.

13. On 2 October 2009, he received a change of rater OER covering the period 20090401 - 20090930 evaluating him as a senior instructor/writer. In Part IVc, under APFT, he received a "NO" rating for meeting height and weight standards.

14. His rater gave him a "Satisfactory Performance – Promote" rating in Part V and indicated that he had potential for promotion. His intermediate rater indicated that he should be considered for promotion and his senior rater gave him a "Fully Qualified" rating, placed him center of mass on his senior rater profile and indicated he should be strongly considered for promotion. The report was considered adverse and as such was referred to the applicant.

15. The applicant submitted a rebuttal to the referred OER contending that he had amended his marital relationship, graduated from the Army Substance Abuse Program, and had been making progress on getting his weight under control.

16. On 25 May 2010, while deployed to Iraq, the applicant was notified through his CG by a memorandum from the CG of the U.S. Army Human Resources Command (HRC) that the Maneuver, Fires and Effects Division had identified him to show cause for retention on active duty because of misconduct, moral or professional dereliction.

17. On 28 September 2010, he appealed to the DASEB requesting the GOMOR to be transferred to the restricted section of his OMPF based on intent served. The DASEB denied his request on 13 January 2011.

18. The applicant completed his deployment to Iraq and was returned to Fort Stewart, Georgia in 2011.

19. On 30 June 2011, the applicant submitted a rebuttal to elimination procedures through the CG, 3rd Infantry Division to the CG, HRC. He asserted, in effect, that the GOMOR contained in his records contained allegations that were not true. He went on to state that he did not have more than one extramarital affair and never admitted to having more than one affair, that he was never arrested for or convicted of domestic violence, the person who stated he had multiple affairs and that he had impregnated a Soldier's wife recanted her statement, and that both OER's were tied to the GOMOR.

20. On 3 February 2012, the CG, HRC notified the applicant through his CG that after considering the applicant's rebuttal, all relevant documentation and the recommendations of the chain of command, a decision had been made to continue with elimination proceedings in his case.

21. On 13 March 2012, the applicant was notified that he was to appear before a Board of Inquiry (BOI) at Fort Stewart, Georgia on 18 April 2012 to determine if he should be retained or involuntarily separated from the Army. The board convened at 1005 hours and the applicant was present with counsel. After hearing all of the testimony and reviewing all of the evidence in his case, the board determined that the applicant committed adultery, that he had an incident of domestic violence in which he assaulted his wife, he committed acts of personal misconduct, and had committed actions considered conduct unbecoming a commissioned officer. The board notified the applicant that the members had unanimously recommended that he be involuntarily separated with an Honorable Discharge. The board adjourned at 2035 hours.

22. The convening authority approved the findings and recommendations of the BOI on 12 June 2012 and forwarded the results of the BOI to the CG, HRC, the General Officer Show Cause Authority who concurred with the BOI's recommendation and forwarded the applicant's case to the Deputy Assistant Secretary of the Army (Review Boards) for final action.

23. On 23 October 2012, the Army Board of Review for Eliminations convened to review the BOI proceedings. After reviewing the BOI proceedings, the board determined that the government had established by a preponderance of the evidence that:

- The applicant committed adultery
- The applicant did have an incident of domestic violence in which he assaulted his wife
- The applicant did commit acts of personal misconduct
- His actions can be considered conduct unbecoming a commissioned officer

24. The board unanimously recommended in a closed session and by secretly written ballots that the applicant be eliminated from the service with an Honorable characterization of service.

25. On 31 October 2012, the Deputy Assistant Secretary of the Army (Review Boards) approved the recommendations of the Department of the Army Board of Review for Eliminations and directed that the applicant be honorably discharged for unacceptable conduct.

26. Accordingly, he was honorably discharged on 16 November 2012 under the provisions of Army Regulation 600-8-24, paragraph 4-2b, due to unacceptable conduct. He had served 17 years, 9 months, and 27 days of active service.

27. The statement provided by the applicant with his application from the individual he had an adulterous affair with is dated 4 April 2011 and she indicates that she made up the story about being pregnant and his having an affair with a deployed Soldier's wife.

28. A review of the applicant's official records shows that after receiving the second referred OER, the applicant received three evaluations during the period of 20091001 – 20120309. One of the OER's was rendered during his 12-month deployment to Iraq and the remaining two were rendered at Fort Stewart. All of the reports show maximum ratings and recommend him for promotion to major.

29. The applicant provides a copy of his VA Rating Decision showing that he was granted service-connected disability compensation effective 17 November 2012 for the following:

- hypertension with cardiomegaly – 30%
- anxiety disorder not otherwise specified and major depressive disorder – 30%
- right elbow strain – 10%
- degenerative arthritis, left knee – 10%
- degenerative arthritis – right knee – 10%

30. On 8 January 2013, the VA diagnosed the applicant as suffering from PTSD. The examining psychiatrist opined that his PTSD symptoms had not made him unstable in any way and that they were more a matter of mild occasional discomfort. There is no security issue and he is fully competent from a security clearance point of view.

31. Army Regulation 600-8-24 (Officer Transfer and Discharges) serves as the authority for the transfer and discharge of Army officer personnel. It provides, in pertinent part, that elimination action may be or will be initiated for misconduct, moral or professional dereliction, acts of personal misconduct, conduct unbecoming an officer, and adverse information filed in the OMPF.

32. Army Regulation 623-3 establishes the policies and procedures for preparing, processing and using the OER. The regulation also provides that an OER accepted for inclusion in the official record of an officer is presumed to be administratively correct, to have been prepared by the proper rating officials and to represent the considered opinion and objective judgment of the rating officials at the time of preparation. The burden of proof in appealing an OER rests with the applicant. Accordingly, to justify deletion or amendment of a report, the applicant must produce evidence that clearly and convincingly nullifies the presumption of regularity. Clear and convincing evidence must be of a strong and compelling nature, not merely proof of the possibility of administrative error or factual inaccuracy.

DISCUSSION AND CONCLUSIONS:

1. The applicant's administrative discharge (elimination) proceedings were conducted in accordance with law and regulations in effect with no indication of any violations of any of the applicant's rights. The type of discharge issued and the reasons therefore were appropriate given the circumstances in this case.

2. The applicant's contentions and supporting documents have been carefully considered and appear to lack merit.

3. The applicant's contention that he should be reinstated because the woman he had an adulterous affair with has recanted the portion of her statement regarding his impregnating her and having an affair with another Soldier's wife has been noted and appears to lack merit. While it cannot be determined with any degree of certainty which statement made by the woman is true, the applicant provided the statement to all of the boards that considered his case and when the board's deliberated, they determined that the two elements of impregnating a women who was not his wife and having an affair with a deployed Soldier's wife were not the basis for his elimination.

4. Both the show-cause board and the Army Board of Review for Eliminations determined that the preponderance of the evidence showed that the applicant:

- committed adultery
- did have an incident of domestic violence in which he assaulted his wife
- did commit acts of personal misconduct and
- committed actions that can be considered conduct unbecoming a commissioned officer

5. Additionally, the applicant has never denied having an adulterous affair with a woman who was not his wife, which in itself is sufficient to warrant elimination proceedings.

6. The applicant's contention that his PTSD caused his misconduct has also been noted and appears to lack merit. After committing the misconduct, the applicant deployed to Iraq for a year and returned to Fort Stewart for an additional 2 years. During that period, he received maximum ratings on his OERs as well as recommendation for promotion. There is no evidence to suggest that he did not understand the difference between right or wrong or that he could not adhere to the right.

7. After reviewing the facts and circumstances surrounding his discharge as well as the documents submitted by the applicant, it appears that the GOMOR was properly administered based on the available evidence at the time, that his OERs were properly prepared, referred and filed in his OMPF in accordance with the applicable regulations and his elimination proceedings were conducted in accordance with applicable regulations.

8. Accordingly, there appears to be no basis to grant the applicant's request for reinstatement, promotion, and removal of adverse documents from his OMPF.

BOARD VOTE:

________ ________ ________ GRANT FULL RELIEF

________ ________ ________ GRANT PARTIAL RELIEF

________ ________ ________ GRANT FORMAL HEARING

TH TRG cd DENY APPLICATION

BOARD DETERMINATION/RECOMMENDATION:

The evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined that the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned.

Carmen Dunn
CHAIRPERSON

I certify that herein is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in this case.

DERRICK DANIELS
Redacted PII
Redacted PII

30 July 2014

Army Review Board Agency
251 18th Street South, Suite 385
Arlington, VA 22202-3531

President of the Army Board for Correction of Military Records,

I am sending this letter as an addendum to the original 20 May 2014 review submission. There are four documents I am unable to recover from personal files but imperative to this findings process. I request this board acquire these documents listed below through the Director of Army Records Holding Agency:

1. The GOMOR in my official OMPF. By regulation, an official document that has been properly filed in the OMPF is presumed to be administratively correct and to have been filed pursuant to an objective decision by competent authority. Thereafter, the burden of proof rests with the individual concerned to provide evidence of a clear and convincing nature that the document is untrue or unjust, in whole or in part, thereby warranting its alteration or removal from the OMPF. Three specific statements in the GOMOR have in fact been determined as untrue (Annex D to 20 May 2014 review submission).

   a. I had multiple affairs with several women.

   b. I impregnated Ms. Tara Brown.

   c. I impregnated a deployed Soldier's Wife

2. Two deferred OERs in my OMPF submitted in 2009 under the 3/30TH Field Artillery Battalion.

   a. Deferred OER for receiving the GOMOR.

   b. Deferred OER for not being within AR 600-9 standards.

3. 2011 DASEB Board Findings in my OMPF.

I want to ensure that this board has the opportunity to clearly see the specific language in the GOMOR, not only for its untrue facts but the disparaging depiction of my character. As the board understands my state of mind due to the Severe Depression, it's understandable how this false depiction ignited my thoughts of suicide. Both deferred OERs should be removed in regards to the falsehood of the GOMOR and the real contributing weight gain factor. If my Severe Depression was adequately identified and treated during my initial visit to Behavioral Health, then the affair, altercation with my wife, attempted suicide and weight gain could have been avoided. After taking responsibility for my actions, I requested through the DASEB to have the reprimand removed to my restricted file. The

DASEB denied my request stating that despite me making some admirable changes in my life; it was not enough to grant relief. Realizing I could never outperform the GOMOR, I became more determine in clearing my name. The treatment plan I developed and followed through after my stay in the Red River Mental Hospital can be validated in the DASEB findings. I unknowingly developed this plan for my Severe Depression I never knew I suffered from but my plan was effective. I was able to perform my duties four years after my suicide attempt. This diagnosis was evident in 2009 but never communicated to me by Behavioral Health (See Annex K to May 20 review submission).

The OMPF filing of the GOMOR removed me from the fiscal year 2008 Major promotions list. I was flagged prior to my promotion date due to these allocations, but also endured months of inadequate mental health treatment as well. If it's the board's authority with all things considered and corrected, I request the Board reinstate me at the rank of Major with a date of rank 1 December 2008.

Sincerely

Derrick T. Daniels

Attachments:
May 20 2014 Request
DD FORM 149

**DERRICK DANIELS**
Redacted PII
Redacted PII
Redacted PII

**20 May 2014**

Army Review Board Agency
251 18th Street South, Suite 385
Arlington, VA 22202-3531

President of the Army Board for Correction of Military Records,

I request reinstatement on Active Duty due to a misdiagnosis of Severe Depression. On April 18, 2012, A Board of Inquiry recommended an involuntary separation with an honorable discharge as a result of an affair and domestic violence. Superficial information prematurely influenced conclusions without the full understanding and acknowledgment of a proper diagnosis. No one on the board consulted a mental health professional who physically treated me. My immediate family knew there were some changes in my behavior, pleading with me to seek help. Since I sought help through mental health before my transgressions, I used a diagnosis of Chronic PTSD placed in my medical files as my defense. The government's medical professional witness, Dr. Ann L. Parodi, is not a psychiatrist but a general medical doctor who reviews medical records for the Army (See Annex A, page 1). Dr. Ann L. Parodi testified, from her personal review of my records, that the health care official who diagnosed me with PTSD did not have the proper documentation to support it. (See Annex B, page 14). Also, Dr. Ann L. Parodi stated during the hearing, my actions do not illustrate I suffered from PTSD, but possibly from "significant depression" (See Annex B, page 13). Since there was no evidence in my file documenting my deployment experiences, she drew the conclusion it stemmed from my documented childhood abuse. The abuse took place over 25 years ago. After the Board of Inquiry's recommendation, I received a diagnosis from Dr. Tracy Ann Marks who discovered these were signs of Severe Depression actually dating back to 2005 (See Annex C). Since the initial AR 15-6 investigation and treatment was conducted independently, my symptoms were never acknowledged and were grounds for elimination.

I proved that Ms. Tara Brown's initial allegations were false and LTC Christopher D. Compton's AR 15-6 investigation was incomplete during the Board of Inquiry proceedings (Annex D and E). Both share equally in the calamity of errors, overshadowing the true nature of my mental state. Ms. Brown initially signed a false affidavit stating I impregnated her with twins, impregnated a deployed Soldier's wife and had several previous affairs. I always admitted to having an affair with Ms. Brown and an altercation with my wife. The altercation was not domestic violence. After I confessed my affair, my wife began beating me in which I defended myself. I confessed this during my initial taped interview with Detective Peralta of the Lawton, Fort Sill Police Department. The tape was not available for the Board of Inquiry but the board President COL Cardinale stated "We can all agree that there was only one affair" during the hearing. This statement was not specifically recorded but the validation can be drawn from a review of the board proceedings and the final charges. (Annex P).

The AR 15-6 Investigation conducted by LTC Compton was used to validate Ms. Tara Brown's accusations. LTC Compton drew references from unclear notes taken by Detective Roberto Peralta

(Annex F). In addition, key evidence of the taped interview was unrecoverable during the Board of Inquiry. LTC Compton never interviewed Detective Peralta directly, which prevented him discovering the taped interview. LTC Compton also never interviewed Ms. Brown. Ms. Brown only provided directly to my command a signed affidavit but no other proof. However, LTC Compton did interview my wife Wendy who stated she only had knowledge of one affair with Ms. Brown and could not confirm other affairs outside of Ms. Brown's information. Moreover, LTC Compton used my refusal in providing an interview as an admission of guilt (Annex E, page 2). After a review OF LTC Compton's questions by my Fort Sill defense attorney, he defined the questions as pointed and close ended. The attorney then advised me to exercise my rights in not answering them. Ms. Brown later wrote another sworn statement, presented in the Board of Inquiry; her false allegations were designed to damage my marriage and career. The AR 15-6 investigation was the most critical and decisive of these allegations and the synergy of misconception. In my behalf, LTC Compton could have asked me open-ended questions, interviewed Detective Penalta and Ms. Brown along reviewing the tape for more clarity. LTC Compton was contacted by my Fort Stewart defense attorney but was unable to testify For the Board of Inquiry. Prior to this, I never had any disciplinary actions against me. (See Annex G) Since the allegations weren't true, I thought the system would work. It didn't. Information from various sources received from different leaders was piecemealed together in detailing a false sense of my character. I agonized for years why I was never taken seriously, but it became evident during the Board of Inquiry. If a deliberate AR 15-6 Investigation was conducted with proper consolation, I could have been exonerated and facilitated in getting the proper care through a tailored mental health program.

I only discovered the PTSD diagnosis, amongst other things, in my medical records after notification of possible elimination. Throughout my treatment at Fort Sill, no one made it clear if I was suffering from anything. Dr. Parodi's disqualification of my PTSD diagnosis in my Army mental health records raises concern on my entire military treatment process. After the board's recommendation, I was personally evaluated by Dr. Marks, a very qualified professional, who has no bias and competing priorities outside of the Army. Severe Depression is a mental disease that impairs an individual's judgment. Individuals may demonstrate outburst, uncontrollable and unexplainable crying at times, rapid weight gain or loss, risky behavior and thoughts of suicide. These symptoms, including the thoughts of suicide, were annotated in my initial assessment under the care of Fort Sill psychologist Dr. Dodds. (See Annex H) The symptoms of the affair, physical altercation and weight gain were the results of Severe Depression. I had no sense of purpose, meaning and all I wanted was to be appreciated and valued. I engaged in an extra marital affair (risky behavior) for immediate relief, rapid weight gain from heavy drinking and altercation (outburst) with my wife about the affair. I was suicidal but not on a daily basis. As a result of my condition, I was rewarded with a GOMOR and two deferred OERs. In just two sessions, Dr. Marks came to a conclusion of my diagnosis by drawing from specific challenges, references and experiences I faced as Staff Officer, Commander and African American during deployments and post deployments. My experiences are unique to me with two combat commands in both Baghdad and Ramadi during the height of sectarian violence, especially leading Soldiers in an unstable and unpredictable environment that constantly brought complex challenges. Each deployment and mission is different, especially for a conventional force fighting innovative nonconventional tactics. Senior Leaders far removed from the daily grind of combat operations could not relate to me. Dr.

Marks devotion never took place from multiple providers at Fort Sill. It's easier to develop proper coping skills when you understand the root cause. Dr. Marks also stated it's hard to get an adequate diagnosis of Severe Depression with a social style system like Fort Sill Behavioral Health. I placed her findings in my personal statement authorizing Major General Abrams and anyone else from the HRC Separation Board to consult before confirming the Board of Inquiry's recommendation. According to Dr. Marks, neither the Commanding General nor any members of the HRC separation board members consulted her before my separation was confirmed. It is unfair to dismiss my actions as a result of Severe Depression without clearly understanding the causes in which I was not fortunate to address in a proper forum. This discovery after the Board of Inquiry did not get the adequate attention it deserved. It's no secret the Army has had problems with mental health institutions giving inadequate diagnosis, including Severe Depression. An article in Army Times was published in 2009 because there was a lack of depth understanding the effects of Severe Depression by military officials (See Annex I). These calamities of errors equally include no continuity of care:

Dr. Dodd also processed me as a command referral to the Red River Mental Institute in Wichita Falls, Texas not Walter Reed Army Medical Hospital after my suicide attempt. This was standard protocol. Dr. Dodd did not mention in my file I had previous thoughts of suicide and most likely didn't remember my initial visit. (See Annex J) After consulting with my command, he placed in my medical file I confessed to having multiple affairs which is now known as untrue. In addition, he placed in my file my home of record is South Carolina but it is actually Georgia. This symbolizes the lack of depth and attention to detail for my mental wellbeing at Fort Sill, OK. My command provided the multitude of adulterous affairs as possible reason for my suicide attempt which further hindered my diagnosis. If Dr. Dodd took the time reviewing my historical data, understood me entirely as an individual and allowed me to express fully why I attempted suicide outside the interference of my command, then I may have had a proper diagnosis. Numerous alternatives could and should have been considered. A possible duty station change to Walter Reed or the local Wounded Warriors program would have been more appropriate. No one made the connection the reason was Severe Depression. I was even given a diagnosis of Severe Depression at Red River Mental Hospital that was never documented in my medical records (See Annex K). Dr. Paroli, Dr. Marks and Red River Mental Hospital, with no connectivity with Fort Sill's Behavioral Health or each other, all determined my "actions" illustrate Severe Depression.

There is no depth of diagnosis in my medical records (Annex L). Anyone reviewing these records could draw the conclusion I had trouble adjusting to normal stressors of garrison Army, but my problems were much deeper. As long as I performed my duties, then treatment was standard. There were no discussion groups for officers. Some things I didn't feel comfortable discussing amongst enlisted Soldiers. Fort Sill was my first experience so I had no other style of treatment in comparison, but I was diligent in attending every group and individual session. The very thing I was afraid would happen about seeking help did. The ambivalence of my command, peers and healthcare officials further agitated my Severe Depression, causing me to almost take my own life.

My diagnosis took a magnitude of time and effort in a modern technological savvy Army custom to quick responses and results. Zero tolerance for domestic violence, Army mission and mandated

downsizing contributed to the complication of understanding me. As for my diagnosis, I feel the Army's handling of my mental health is like a can being kicked down the road by everyone but no one takes the time and effort in disposing of it. Many professionals are not fully aware of the devastation of Severe Depression. The Army providers relied on the system instead of themselves in dealing with my circumstances.

What's disheartening is no one gives me credit in getting the proper treatment, further helping me to serve my country. Out of all this, I still took responsibility of my condition even before fully understanding what I was suffering from. I served the Army admirably for an additional four years after my suicide attempt (Annex P, COL (R) Atcher, COL Williams, COL Johnson and MAJ Barr's testimony). It was solely on my accord I did the necessary things in finding adequacy and meaning again in my life. After the discovery of Severe Depression, I also had the flexibility of choosing my provider based on their credentials and treated by an appointed provider. One of my coping skills was developing a training document called Tactical Design which was instrumental in preparing company commanders for combat operations in Afghanistan.

If I was treated for Severe Depression in the beginning, these transgressions would never have happened. The lynchpin is understanding the psychological effects of performing combat operations during the surge. There was a spike in combat Soldier suicides from that time period. I want the same vigor and emphasis leaders placed on the seriousness of adultery and domestic violence with understanding my diagnosis. For whatever reason, there is a lack of empathy for my circumstances. I truly believe with the Board of Inquiry's deliberate analysis, I would still be on active duty if there was presentation of a Severe Depression diagnosis. The board still felt compelled in recommending an honorable discharge based on my previous leadership testimonies and my accomplishments.

My Severe Depression (PTS) is still in remission (See Annex M). Also, I submitted all my mental health documentation, including Dr. Mark's diagnosis, for VA disability compensation in which I receive thirty percent (Annex N). Severe Depression is a serious disease, when seeking treatment; you must connect with someone genuinely concerned with your wellbeing. Severe Depression doesn't mean the person is weak but he or she has been going strong for too long. Leaders cannot lean on their own understanding of what they think are symptoms of Severe Depression. Just because my work didn't reflect any abnormities, doesn't mean I didn't suffer from this disease. It was the observations at home (Annex H and O), not work that prompted me to seek help in the first place. The bureaucracy, whether from inefficient providers, lack of continuity, funding, conflicts of interests, lines of communication with leadership or combination of all, contributed to this misunderstanding. Ironically, this whole process allowed me to discover the truth. I fear some officials maybe using my circumstances in fueling their own agendas. There must be willingness in acknowledging the compounding problems that affected me. Plus, it simply takes time to adjust. I sincerely hope my worth as an individual and the service to my country is enough for fair consideration and not ignored because it's cumbersome, complex and time consuming.

My performance evaluations prior to and after my transgressions had me in the top percentage of my peers. I was never convicted of any crime and I still have my secret security clearance. I request the board contact Dr. Mark's in reference to her diagnosis. I then request the Army reinstate me at the current rank of Captain, remove the GOMOR and two deferred OERs from my official fiche and I am re-evaluated for the 2008 Major's Board. At the time of the GOMOR filing, I was promotable. If granted, I request my year group is changed for competiveness and additional consideration is made for Functional Area 57.

Sincerely,

Derrick Daniels

Attachments:
Annex A: CPT Sarah Rykowsi's Email, page 1-6
Annex B: Board of Inquiry Proceeding, pages 13-16
Annex C: Dr. Tracy Ann Mark's Diagnosis
Annex D: Tara Brown's Affidavit
Annex E: LTC Christopher Compton's 15-6 Investigation
Annex F: Detective Roberto Penalta's Incident Report
Annex G: Good Soldier File
Annex H: Dr. Dodd's Initial Assessment
Annex I: Army Times Article on Severe Depression
Annex J: Dr. Dodds Suicide Assessment
Annex K: Red River Mental Health Diagnosis
Annex L: Army Mental Health Medical Records
Annex M: Dr. Arthur B. Soule's Diagnosis
Annex N: VA Disability Assessment
Annex O: Arthur and Lauriene Daniels' Affidavit
Annex P: 18 April, 2012 Board of Inquiry Proceedings

Annex A

JSA IMCOM

Amanda G CPT MIL USA FORSCOM
......, April 17, 2012 10:49 AM

**To:** Rykowski, Sarah J CPT MIL USA IMCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
**Cc:** Chard, Todd M CPT MIL USA FORSCOM
**Subject:** RE: CPT Daniels case (UNCLASSIFIED)
**Signed By:** amanda.g.presson@us.army.mil

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Rykowski,

The Board wants someone present to testify concerning PTSD since none of the Board members are doctors. I am not sure what the Government witness, Dr. Parodi, is going to testify to as I am not involved in the Government's case. I know that she is merely a medical doctor. As a result, I am giving you the contact information for someone that the Board might call as a witness to ask about PTSD. That is the extent of my involvement.

The numbers given for Dr. Karim specify that her office number is 767-8921 and if it is during lunch, to call the front desk at 767-7301. Those are the numbers for any day, today and tomorrow. As I stated before, I have not spoken to Dr. Karim (only left a voicemail that Government and Defense Counsel might be calling), but you have her contact information in case she is called by the Board to ask general questions about PTSD. That decision will ultimately be the Board's decision whether or not they actually call Dr. Karim or not after hearing testimony from Dr. Parodi.

Respectfully,

Amanda G. Presson
CPT, JA
Administrative Law Attorney
Office of the Staff Judge Advocate
3rd Infantry Division, Fort Stewart, Georgia
Office: (912) 767-7717
amanda.g.presson@conus.army.mil

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Tuesday, April 17, 2012 10:32 AM
To: Presson, Amanda G CPT MIL USA FORSCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Presson,

Why are you the one locating witnesses?

Are the times you gave for Dr. Karim times she would be available today or times tomorrow?

I need to know, once and for all, what witnesses are going to be called. Please ensure I have all names/contact information. If it's Dr. Karim, that's fine - just let me know.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Presson, Amanda G CPT MIL USA FORSCOM
Sent: Tuesday, April 17, 2012 10:28 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

All,

Capt. McRae (Chief of Behavioral Health) gave me the name of Dr. Sanjana Karim to testify concerning PTSD if the Board needed more information on PTSD. She is a Psychiatrist in the Division Behavioral Health Clinic and would be available during the Board. If it is before 1200 or after 1300, the best number would be 767-8921. If it is between 1200 and 1300, the front desk of the clinic (767-7301) will know her number if it is different.

I just tried to call her; however, I got voicemail. I did leave her a message that both of you might be calling her.

Respectfully,

Amanda G. Presson
CPT, JA
Administrative Law Attorney
Office of the Staff Judge Advocate
3rd Infantry Division, Fort Stewart, Georgia
Office: (912) 767-7717
amanda.g.presson@conus.army.mil

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Tuesday, April 17, 2012 10:02 AM
To: Presson, Amanda G CPT MIL USA FORSCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM

Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Presson,

Thanks for the information. I am still trying to contact Dr. Parodi, so if anyone has been successful, please let me know. I am severely handicapped by the inability to get in touch with both the government's witnesses and the board's, and today is our busiest day at HAAF TDS.

I will object to the testimony of any witness with whom I have not had a prior opportunity to speak - and I need to do that ASAP in the event that that individual's testimony requires testimony from additional witnesses or evidence that I need to track down in response to their expected testimony.

Please let me know if there are any further changes.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Presson, Amanda G CPT MIL USA FORSCOM
Sent: Tuesday, April 17, 2012 10:00 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Rykowski,

MAJ Czech is unavailable to testify. I have emailed Capt. McRae (Chief of Behavioral Health) to get his contact information. However, COL Cardinale indicated to me that if Dr. Parodi is able to testify about PTSD then this will suffice. If I get an answer back from Capt. McRae concerning his number, I will forward that to both Government and Defense. However, there is a likelihood that he won't be called at all if Dr. Parodi is able to answer the Board's questions concerning PTSD.

Also, just as a reminder, the Board of Inquiry is in the Command Conference Room at the 2nd Brigade Headquarters Building (Building 615). The uniform is ACUs.

Respectfully,

Amanda G. Presson
CPT, JA
Administrative Law Attorney
Office of the Staff Judge Advocate
3rd Infantry Division, Fort Stewart, Georgia

Office: (912) 767-7717
amanda.g.presson@conus.army.mil

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Tuesday, April 17, 2012 9:43 AM
To: Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM; Presson, Amanda G CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

SPC Betancourt,

I have tried, via email and phone, to get in contact with MAJ Czech. If you have better contact information than the number on global and his email, I really need to get in touch with him this morning.

I may object to his participation tomorrow in the event I am not able to get in contact with him.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Betancourt, Xiara G SPC MIL USA FORSCOM
Sent: Wednesday, April 11, 2012 11:05 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM
Cc: Cardinale, Douglas C COL MIL USA FORSCOM; Chard, Todd M CPT MIL USA FORSCOM; Presson, Amanda G CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Ma'am,

MAJ Robert Czech contact phone number: 435-9582, you can find him on global as well.

Also, CPT Chard will have his witness list by COB today.

V/R,

Xiara G. Betancourt, SPC
Pre Trial Paralegal
Office of the Staff Judge Advocate
Military Justice Section
1791 Gulick Avenue, Bldg 709 (2nd floor) Fort Stewart, Georgia 31314
OFFICE: 912.767.7902

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Wednesday, April 11, 2012 10:49 AM
To: Betancourt, Xiara G SPC MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

SPC Betancourt,

You will have a list by COB today. I still have not received a response to my discovery request which I sent to CPT Chard. I need to know if the government is going to call witnesses and I need their contact information today, as I will be out of the office Friday through Monday.

Please send me MAJ Czech's contact information - I'd like to talk to him today to determine if I need another psychiatrist.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Betancourt, Xiara G SPC MIL USA FORSCOM
Sent: Wednesday, April 11, 2012 10:11 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM
Subject: CPT Daniels case

Ma'am,

Per COL Cardinale request please send me a copy of the witness list that you intend to call on CPT Daniels BOI.
Also, please let me know if you intend to call a doctor specialized in PTSD, if not COL Cardinale will like to request MAJ Czech, Division Psychiatrist to testify.

Thank you.

V/R,

Xiara G. Betancourt, SPC
Pre Trial Paralegal
Office of the Staff Judge Advocate
Military Justice Section
1791 Gulick Avenue, Bldg 709 (2nd floor) Fort Stewart, Georgia 31314
OFFICE: 912.767.7902

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Annex B

t he talked to COL Williams on his last deployment. He had not talked to him or seen him after the deployment. During deployment he contacted him for a letter for his initiation of elimination rebuttals. He contacted COL Williams prior this hearing to ask him if he could be a witness on his behalf.

The Defense stated that his elimination was initiated when he got back from deployment and was assigned to Fort Stewart.

The President requested a time frame.

The Defense stated that the elimination action was initiated in 2011.

The Government called Dr. Parodi.

Dr. Parodi was duly sworn in.

Dr. Ana L. Parodi, MD, Retired COL, US Army, was called as a witness for the Government, was sworn and testified in substance as follows:

Direct Examination

My name is Dr. Ana L. Parodi, MD, Retired COL. My duty position is Chief of MEB-Behavioral Health. I completed medical school. I did an internship, then I did my residency for four years and additional years in psychiatry. Then I went to the military for 20 years. I retired in 2010. I have evaluated and treated Soldiers that need to be cleared for deployment. I have been involved in that and in the SRC process. In 2003, I was involved in doing fitness for duty, MEBs, and chapter evaluations. I am currently in a position where I provide the same process for the Medical Boards. Yes, I have reviewed CPT Daniels' medical records. I don't have them in front of me. But I reviewed the packet that you provided me and I also reviewed the electronic record. Individuals who have PTSD often have other conditions. I am not saying this Soldier does. Individuals who have behavioral health conditions, especially if they have more than one condition, have the risk of having aggressive acts. Violence is different from being aggressive. Those who are violent happen to have behavioral health conditions. Generally, what we are looking at is personality style on how you are going to respond to different stressors. Generally that is shaped by your childhood. I don't know the technical definition of violence from a behavioral health point of view. From a behavioral health point of view, I called that I violent act because of the intensity, the emotions involved and the physical contact. I would consider this violent act more of a personality style than PTSD. And it does not have to be PTSD. It can be a significant depression, or an anxiety disorder, that is going to have the same answer. Mainly, if he were to describe what is called associative episodes or flash backs, then I might consider he was not responsible for what was going on. He is not describing that, so that makes me think this is more of a personality trait than an emotional condition at that moment.

No further questions by the Government.

Cross Examination

The Electronic Medical Record is not a hard copy. I can print a hard copy of it. Yes, a print out of the medical record would be a print out of the electronic record. I have not evaluated him. People develop their behavioral health conditions, often it can be a genetic condition or from their childhood experience. The personality traits are, if you read the definition, enduring chronic pattern, so we talk about behaviors that were molded from childhood. I would like to think it is more of a personality trait that is driving the development than that of the other condition. In his condition, I found that he had childhood abuse, so that would make me think it is possible now that he has something like PTSD because of that childhood condition. The childhood conditions shaped him so that he is going to react uniquely to many things. We all have personality styles. But not everybody is going to develop a condition like PTSD or depression. I have not discussed this case with CPT Chard other than what I told you yesterday.

The Government objected on relevance of the question.

The President allowed the question.

Cross Examination

CPT Chard texted me earlier if I was ready to testify. I believe he talked to me last week and on the phone. He told me about the case, then he emailed me the packet, then last night we talked.

No further questions by Defense.

LTC Hathaway

No sir, I don't want you to believe that. What I am saying is that without actually evaluating him, I am not going to say whether he did or did not have something. The way he might have something only because of his past and I am not going to say he does or did not. In the record, I reviewed a variety of diagnosis and never was there anything about his personality style. The diagnosis the provider gave, once or twice, he called it PTSD. If I look into those notes, the information documented does not support a diagnosis of PTSD. The provider does not say what the traumatic event is. In one instance, somebody gave CPT Daniels a questionnaire, a self-record, and based on that, he said he did not have PTSD. I don't remember the day of that encounter. The score was 32, which is the low cut off for PTSD. The documentation does not support it. I say that I have to evaluate him, it's possible nobody bothered to look, it's possible that at that time there was no type of evidence, and it's possible that when the incident happened that nobody documented that he had it. No, is not possible that CPT Daniels attacked his wife that night because he had PTSD.

LTC Fugate

He does not describe that there were flashbacks. He does not describe dissociative episodes. Those would be supported by a PTSD diagnosis. If he does not describe those two, PTSD did not have a role at that moment for his behavior. At the top of my head, I don't remember if he was on any medication. He was diagnosed with alcohol abuse. Alcohol stays in your body neurologically six to twelve months afterwards.

The Recorder stated that Dr. Parodi reviewed the medical records, the memorandum CPT Daniels wrote, and both sworn statements from Tara Brown and from CPT Daniel's wife.

COL Cardinale

My statement is based on the record review. Yes, I had his additional statement and reaction to the misconduct. He does not describe the flashback and the dissociative episodes. He does not describe that. He is describing very well what happened; step by step and is very logical. You would not find that in a flashback or in a dissociative episode. A definition of a flashback is reliving the event again and again, I don't know what his stressor was or what his traumatic event was, so I don't know what he would have been living. Did he go out there and have hand to hand combat? His rebuttal describes a very stressful command environment. I don't know what his flashback could be. And in a dissociative episode event, you are not aware of what you is going on. In a dissociative episode you cannot give an explanation of what happened. Your Soldier is not describing either occurrence. He describes very logically and systematically what occurred. A result of the trigger was his wife's slapping. An example of a flashback would have been somebody was talking and I heard a boom and I thought I was back in Iraq and I had to run for cover or get underneath something; that is a flashback. He does not describe that at all.

Cross examination

Yes, I reviewed his record after the alleged assault had occurred and his behavioral health record in 2008. I don't have the record in front of me but I think it was August 2008 to the present. The last visit was in June 2011. There is not much information there, but I started from the end to the beginning. No, I did not talk to the physician involved in the diagnosis and treatment, they were at Fort Sill. There was one physician who provided that diagnosis. There was also a social worker. Again nobody documented what the traumatic event was. Just that I have been exposed to something that was scary or traumatic does not mean it is going to lead to PTSD. It is how you are dealing and coping with what you have experienced. Yes, those individuals who made that diagnosis had the opportunity to meet with CPT Daniels and evaluate him.

No further questions by Defense.

Re-direct Examination

I know there was a social worker and his area of expertise was marital problems. He worked in family advocacy. Why he went and diagnosed PTSD, I don't know. He did not give an explanation. I don't know his experience because social workers don't have the training most of the time to make diagnosis. The documentation is not clear. The title does not mean you have the experience to make a diagnosis. No, my idea is that if he has any PTSD, it is from his childhood. All I have to do is read what the abuse was and if he never had treatment, that might come out under stress. Maybe it does not meet the full criteria for PTSD. The abuse is what I would imagine this is where it is coming from.

No further questions by the Government.

No questions by Defense.

No questions by the board members.

The President permanently excused the witness and was duly warned.

The President called a lunch recess at 1247 hours.

The Board reconvened at 1355 hours.

All parties that were present before the Board closed were again present.

The Government had no further witnesses at this time.

The Defense called COL Miciotto Johnson, a telephonic witness.

The witness was duly sworn in.

COL Johnson, was called as a witness for the Defense, was sworn and testified in substance as follows:

Direct Examination

My name is COL Miciotto M. Johnson and my current duty title is Director, TRADOC Capability for Virtual Simulation. My current place of duty is Fort Leavenworth, Kansas. I have been in a TRADOC capability since August 2010. My previous duty position was Deputy Chief of Plans in Germany. On May 23rd, I will have 26 years in the military. My current branch is Armor. I have been an Armor Officer, except for two and half years in my secondary MOS, a 53A, which is an Automation Officer. Yes, I had three deployments to Asia and one to deployment to Desert Shield/Desert Storm from August 1990 until April 1991. Then, Iraq from June 2004 to February 2005 and from August 2006 until November 2007. That last deployment I was the battalion commander of the task force. I was in command from 21 June 2005 until 31 January 2008. I do know CPT Daniels. I met him when he first arrived to 2nd Brigade, 1st ID, in the spring of 2005. Then subsequently he

Annex C

MARKS PSYCHIATRY
& FORENSIC SERVICES

Tracey I. Marks, MD

4/30/12

I saw Mr. Derrick Daniels today for a consultation.

My diagnoses -

1) ~~Ha~~ History of major depression in remission
2) History of alcohol abuse - not current
3) Possible dysthymia

T Marks, MD

3975 ROSWELL ROAD, ATLANTA, GA 30342 PH 404 327 5194 · www.markspsychiatry.com

Progress Note

Marks Psychiatry
Enhancing Lives One Mind at a Time

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067 fax

Name: Derrick Daniels
Date: 5/17/12
90807

Has petition to "move forward" next wk.
↳not to be discharged.

Childhood

Grew up in Jaken GA. on farm.
Only child → mom 39, Dad 37. Not many people around.
Mom schoolteacher. Didn't see physical affection btw parents.
Parents went to separate churches.
Did farm work & yard work for money.
Didn't have much of a social life. He lived far from school unlike classmates. Couldn't participate in after school activities 2° 2hr bus ride.
Didn't feel close to parents. Didn't do things as a family.
His highlight of the summer was vacation bible school.
Went to army ē H.S. x 3 yrs, then college on scholarship, then return to army.
Joined army to rebel against Dad's plans, but liked it.
1st deployment 2003. → this was beginning of things going downward.
Witnessed senseless deaths followed by multiple moves
Was bothered that a supervisor wouldn't take the time to write his eval

MSE - nl mood Ø psychosis

Imp: h/o Depression in remission
h/o EtOH abuse - remote.

Current state - general discontentment with work-related issues

Plan - No treatment needed
Return as needed.

Signature: [signature] MD

Name printed: Tracey Marks, MD

Progress Note

Marks Psychiatry
Enhancing Lives One Mind at a Time

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067 fax

Name: Derrick Daniels
Date: 4/30/12
90801 -
Age 39

cc I want a proper diagnosis
17 yr army vet. 3 tours - after returned from 2nd tour "nothing
Apr 2008 - was in Baghdad - lost a lot of soldiers
returned felt used
blamed self for a lot of things
Felt purposeless → ~~diss~~ hard to transition to doing office work

Was easily aggravated
consequences - domestic violence - fought c̄ wife over affair reported to military Got a reprimand in 2009
- affair
- alcohol abuse
↳ daily drinking beer during week at least 2 weekends - 4 drinks hard EtOH

Jan '09 - went to mental Heath Hosp. in TX p̄ suicide attempt
Tried to hang self in garage. Planned for few days
bought rope from Walmart - put noose around neck, stepped on table - couldnt do it. Returned home & called parents
Suggested he go to hospital (~~they~~ wife notified his "leadership")
He wanted to see that wife was concerned
In hosp x 10 days → got Zoloft. Continued for "a while" as out pt → 2 refills
Returned to Ft Seal → 2 group sessions/wk for anger mgmt
~~Stan~~ ✓ la mon
↳ stopped drinking p̄ this hosp. → now occasional → maybe 1x wk

Signature: [signature] MD

Name printed: Tracey Marks, MD

# Progress Note

Marks Psychiatry
Enhancing Lives One Mind at a Time

3975 Roswell Road
Atlanta GA 30342
404-327-5194 ph 404-719-5067 fax

Name: Derrick Daniels
Date: 4/30/12

Initial eval cont.

Got a part-time job as nursing assistant in a care home. x 4 mo
Got it to feel needed.
Got deployed to Iraq - felt with the previous deployment people died senselessly. Wanted some closure on this issue.
Felt c 3rd deployment had chance to redeem given more stable environment. Not sure if he got closure.
Returned Dec '10. Now at Ft Stewart training reservists.
Current issues - doesn't feel army understood what he ~~wasn't~~ was going thru
felt he was just a number.
Current sx
feels he's going thru the motions
Dissatified c current job - they are resistent to change
Doesn't feel appreciated - No matter what he does, it's never enough
- No mentor ship
Sleep - "good" ~~5~~-6 typical for him. Will nap @ lunch esp p heavy meal
Energy - "ok"
Some trouble concentrating when bored. Can focus when passionate
Thinks there is cultural bias.

Joined army age 17
Planning to get divorce.
Has upcoming board hearing re - trying to kick him out of militar
MSE good mood, nl speech ø psychosis, ø SI, ø HI ø cognitive impairment
Imp - h/o major depression in remission
No Etoh abuse
- not clear if he had PTSD in past - not a current issue

Plan - Pt to return 1-2 wks to discuss other thi

Signature: [illegible signature] MD
Name printed: Tracey Marks, MD



Search this website... GO

Enhancing Lives One Mind at a Time

# About

Dr. Tracey Marks is a highly skilled and experienced psychiatrist who is dedicated to helping her patients restore balance and joy in their lives by utilizing the most up-to-date treatment strategies and the highest quality of care.

As a psychiatrist, Dr. Marks has a special interest in how the mind and body connect to shape a patients life. She has worked with numerous women struggling to balance their life and work, while also overcoming burnout, anxiety, depression, and other stress-related issues. Dr. Marks also specializes in sleeping problems and often appears on major prime-time television to discuss important sleep-related issues. Dr. Marks' thorough and effective treatments have made her a leading psychiatrist in Atlanta, GA and have helped many patients move forward with their life.

Dr. Marks obtained her undergraduate degree from Duke and her medical degree from the Univ. of Florida. She completed her residency at The New York Presbyterian Hospital, Cornell Medical Center where she served as Chief Resident. She is also the founder of the Beyond Burnout Blog (www.BeyondBurnoutBlog.com), where she features videos and articles that help people deal with stress, anxiety, sleep problems, and other life-balance issues.

Board certified in Forensic Psychiatry, Dr. Marks also appears as a forensic contributor on TruTV's "InSession."

Annex D

STATEMENT FOR CPT DANIELS GENERAL OFFICER LETTER OF REPRIMAND JANUARY 2009

To whom it may concern

I was never impregnated by CPT Daniels. First he said he met someone else. To get him back I said I was pregnant. He then told me he didn't have another woman, he felt guilty about being with me. The second time we broke off the relationship, he said he wanted to work things out with his wife and he would support me with the pregnancy.

After he confessed to his wife about our relationship, she called me. I told her CPT Daniels has had several affairs on her and has a woman pregnant named Tenisha (one of my friend's name) in Lawton as well as me. I told her these things to damage their relationship. CPT Daniels asked me to tell his wife the truth, but I told him I would only do it if we could keep our relationship going. When he refused to come back to me, I went to his commander to get him in trouble. I wrote in a statement that I was pregnant with twins and he had several affairs throughout his marriage. I also used the Tenisha story to reinforce this. I also added that Tenisha was married to a soldier who was deployed. All of these things are untrue.

After the second breakup, CPT Daniels only contacted me to ask about the pregnancy. I told him if he couldn't be with me, he couldn't have anything to do with the process. When it came close to the due date, I told him I had a miscarriage. I never produced any documentation to prove the pregnancy, doctor appointments or medical records to CPT Daniels.

Tara Brown

Tara Brown
Redacted PII

signed before me notary public on April 4th 2011

Toni Rae Ward

TONI RAE WARD
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 8-28-2014

Annex E

**DEPARTMENT OF THE ARMY**
Headquarters, 1st Battalion, 78th Field Artillery
428th Field Artillery Brigade
Fort Sill, Oklahoma 73503-6202
"TEAMWORK"

REPLY TO ATTENTION OF:

ATSF-KL 15 December 2008

MEMORANDUM FOR RECORD

SUBJECT: AR 15-6 Investigation Report of Findings and Recommendations

1. The following is a report of findings and recommendations by AR 15-6 Investigating Officer, MAJ Christopher D. Compton, assigned to conduct a formal investigation into the facts and circumstances surrounding allegations that CPT Derrick T. Daniels (Senior Instructor/Writer, A Btry, 1-30 FA) assaulted his wife in a domestic dispute and caused injuries while fighting on Sunday, 16 November 2008.

2. I, MAJ Christopher D. Compton, do certify that I have conducted an investigation regarding the facts and circumstances of the allegations against CPT Daniels. I also certify that this report addresses the following requirements directed to me by the appointing authority, COL John S. Fant:

a. Whether there was a violation of Army Regulation or any article governed by the Uniform Code of Military Justice (UCMJ).

b. Whether CPT Daniels is in violation of any civil law outside of military jurisdiction.

c. Recommendations as to what to do in order to prevent this incident from occurring in the future.

d. Recommendations of appropriate actions consistent with my findings.

3. Findings.

a. CPT Daniels violated Article 128 Assault, Article 134 Adultery and Article 133 Conduct Unbecoming an Officer and a Gentlemen.

1. *Violation of Article 128 Assault is substantiated*: I find that CPT Daniels did commit assault by intentionally inflicting bodily harm to his wife, Mrs. Wendy Daniels on the evening of 16 November 2008. According to statements given to Detective Roberto Peralta of the Lawton Police Department (LPD) by both CPT Daniels and his wife, CPT Daniels did strike his wife in anger during a fight that occurred in their home on 16 November 2008 (see Exhibit 5). In a verbal statement to Detective Peralta, Mrs. Daniels described the incident and stated that her husband struck her and shoved her multiple times during the fight and also used a hard plastic baton (see Exhibit 6) to strike her in anger on the head. Mrs. Daniels described the incident in a manner consistent with her verbal statement in a written sworn statement to MAJ Compton during an interview on 12 December 2008 (see Exhibit 1). CPT Daniels also admitted to striking his wife in anger with the plastic baton during a verbal statement recorded by Detective Peralta (see Exhibit 5). CPT Daniels declined to make a written or verbal statement to MAJ Compton (see Exhibits 7, 8). Photographic evidence from Mrs. Daniels' visit to the emergency room at

Reynolds Army Community Hospital on 21 November 2008 reveals bruises sustained to Mrs. Daniels during the fight with her husband (see Exhibit 3). CPT Daniels' inappropriate sexual relationships with other women caused the fight between CPT and Mrs. Daniels. Both parties confirm this in their verbal statements to Detective Peralta (see Exhibit 5) and Mrs. Daniels reiterated it in her written statement (see Exhibit 1).

2. *Violation of Article 134 Adultery is substantiated*: I find that CPT Daniels did, by his own admission, wrongfully have sexually active relationships with other women while he was married at the time. In a verbal statement to Detective Peralta (see Exhibit 5), CPT Daniels admitted to having "sexually active" relationships with other women." CPT Daniels also stated that his wife possessed physical evidence consisting of email and photos that contained content confirming her suspicion that he was having adulterous affairs with other women. Mrs. Daniels declined to provide copies of the photos and emails to the Investigating Officer, but did agree to mention two women that she believes were sexually involved with her husband in a phone conversation with the Investigating Officer. Mrs. Daniels declined to include the following information regarding her husband's adulterous relationships in her sworn statement: Mrs. Daniels stated that she had phone and email contact with Ms. Tara Brown who admitted to having an adulterous relationship with CPT Daniels. During the course of their correspondence Ms. Brown told Mrs. Daniels about another woman with whom CPT Daniels had been sexually involved. Mrs. Daniels referred to her as "Tanisha" but did not know a last name. Mrs. Daniels stated that her husband allegedly impregnated Tanisha while the woman's husband was serving in Iraq and made arrangements for her to get an abortion in Oklahoma City. Again, CPT Daniels declined to make a statement to the Investigating Officer. While no physical evidence is available to confirm these allegations against CPT Daniels, his admission of guilt is sufficient evidence to substantiate the violation of Article 134, in my opinion.

3. *Violation of Article 133 Conduct Unbecoming an Officer and Gentleman is substantiated.* Given that CPT Daniels did violate both Articles 128 and 134 as stated in the paragraphs above, it is clear that he acted in a dishonorable manner and compromised his character as an officer and a gentleman. The Manual for Courts Martial clearly states that an officer who violates other articles of the UCMJ also violates this article.

b. Other findings that affect the Investigation Officer's conclusions.

1. *CPT Daniels does have a history of mental health problems and has been seeking help.* According to Mrs. Daniels sworn statement (see Exhibit 1), CPT Daniels behavior changed significantly after he returned from a deployment to Iraq in the spring of 2008. She stated that he heavily drank and often became angry. Mrs. Daniels asked him to seek help with mental health physicians, which he did in July 2008. She stated that he was referred to the ASAP program. I attempted to ask CPT Daniels about his involvement with CMHS but he declined to comment (see Exhibit 7, 8)

2. *Mrs. Daniels no longer feels her husband is a threat.* In her verbal statement to Detective Peralta (see Exhibit 5), Mrs. Daniels stated that she felt her life was in danger because of the threats made against her by her husband. She stated that he made remarks that referenced using his gun to kill her during their fight on 16 November. However, in her written sworn statement (see Exhibit 1) she stated that she no longer feels threatened and took steps to lift the civilian protective order that was put in place following the incident. A "No Contact Order" remains in place by the authority of the Battalion Commander.

4. Recommendations.

a. CPT Daniels should receive a General Officer Memorandum of Reprimand (GOMOR) for violating Articles 128, 133, and 134 of the UCMJ.

b. CPT Daniels should be immediately removed from any duties involving officer instruction and reassigned to a position of lesser influence.

c. CPT Daniels should continue to seek professional help through CMHS, Family Advocacy, and the Chapel including anger management and marriage counseling.

d. Because Mrs. Daniels no longer feels threatened by her husband (see Exhibit 1) and the civilian protective order has already been removed, I recommend lifting the no contact order between CPT Daniels and his wife.

5. The point of contact for this memorandum is the Investigating Officer, MAJ Christopher D. Compton, at 442.6426 or christopher.compton@conus.army.mil.

CHRISTOPHER D. COMPTON
MAJ, FA
AR 15-6 Investigating Officer

Annex F

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

*INCIDENT INFORMATION*

Date Reported: 11/21/2008 Time: 0230
Report Officer: 4226 (POLLARD, JEFFERY ALLEN)
Approval Officer: 0700 (CARTER, ERIC MATTHEW)
Invest Officer: 5605 (PERALTA, ROBERTO)
Date Occurred: 11/17/2008 Time: 2100
Location: 5303 SW TYLER Pref: Apt:
City: LAWTON State: OK Zip: 73501-
Latest Poss Date: 11/17/2008 Time: 2200
Rpt District: 32 Beat: 12 Shift: 1
Command Area: 01
Damage Prop: Stolen Property: Stolen Vehicle:
Disposition: REFERRED TO OTHER AGENCY Disposition Date: 11/24/2008

*OFFENSES*

Offense: S21-644.C (ASSAULT/BATTERY ON A SPOUSE)
IBR Code: 01 Att/Comp: C UCR: 0430 UCR Arson:

*VICTIM*

Name Type: VICTIM Name: DANIELS,WENDY L
Address: Redacted PII
Bldg: Apt #:
Phone: Redacted PII SSN: Redacted PII DOB: Redacted PII Sex: F Race: B
DL Number: Redacted PII State: OK Hgt: 5'07 Wgt: 230 Hair: BLK Eyes: BRO
Employer: Phone:
Emp Addr: ,
Bldg: Apt #:

*SUSPECT*

Name Type: SUSPECT Name: DANIELS,DERRICK TORAINO
Address: Redacted PII
Bldg: Apt #:
Phone: Redacted PII SSN: Redacted PII DOB: Redacted PII Sex: M Race: B
DL Number: State: Hgt: 5'09 Wgt: 194 Hair: BLK Eyes: BRO
Employer: US ARMY Phone: Redacted PII
Emp Addr: ,
Bldg: Apt #:

*CASE*

Received Status: OPEN INVESTIGATION Date Assigned: 11/24/2008
Current Status: REFERRED TO OTHER AGENCY Scheduled Review:
Investigators: PERALTA, ROBERTO
Supervisor: LAFRANCE, LAWRENCE R Date Reassigned:

EXHIBIT 2

Prepared By: 5605                                                          PAGE2
Prepared Date: 11/26/2008

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

Police Action:      FOLLOW UP APPROVED          Date Pol Action:  11/24/2008
Police Reason:
Prosecutor Action:                             Date Pros Action:
Reason Rejected:                               Date Reactivated:
Final Disposition:


*NARRATIVE*

On 11-21-08 at approx 0213 hrs, Officer Pollard was dispatched on a domestic abuse call that happened Monday 11-17-08 at approx 2100-2200 hrs. Pollard met Wendy Daniels at Reynolds Army Hospital who said her husband Derrick Daniels attacked her. Wendy said she and Derrick were arguing over Derrick ██████████ when Derrick began pushing Wendy and then grabbed a police baton ████████████ and hit Wendy over the left side of her head. Wendy said she ███████ ████████ ████████. Wendy said she went to the ground and Derrick began ██████████ ████████. Wendy sought medical treatment at Reynolds, she signed to press charges was given a witness complaint form and domestic abuse sheet. Wendy was told to follow up at the county courthouse.

Lawton Police records ran a triple I of Derrick Daniels for prior domestic abuse and his ████████ ████████. Pictures was taken of the injuries by Officer Carter.

SW-7000


*CASE MGMT NARRATIVE*

Reference Case 2008-12244, Victim Wendy Daniels, Domestic Abuse and AWDW


On 11-21-2008, Det. Peralta was assigned this case and he immediately went Reynolds Army Hospital to make contact with Mrs. Wendy Daniels however she was discharged prior to my arrival, and she was located at the Fort Sill Advocacy office. I them made contact with Mrs. Daniels and she stated that it was on Sunday and not Monday as previously reported that she was assaulted by her husband. Mrs. Daniels stated that she reached over to give her husband a good night kiss when she smelled another woman vagina on his face. Mrs. Daniels awoke ██ her husband ██████ ████████ and he admitted to be having an affair. Mrs. Daniels then got upset and ██████████ her husband in the face, and a physical altercation ensued. Mrs. Daniels ████ ████ me Mr. Daniels some of the e-mails that she had found on the computer when he got upset and lost his cool and hit Mrs. Daniels several times with a plastic Baton. I then made contact with Mr. Daniels at his battalion headquarters where LTC Talcott assisted us and provided a room to interview Mr. Daniels. Mr. Daniels who is an active duty Captain in the US Army stated after his Miranda warning rights were read that he and his wife are having problems, and that he need ████ ████ cool and assaulted his wife. Mr. Daniels also stated that he has been having an affair with several other women, and his wife "Wendy", is a good woman but that he need some time apart. During this investigation I was accompanied by Special Agent David L. Spiegel from the Fort Sill Criminal Investigation Command. Mrs. April Plumley also assisted from the Family advocacy office on Fort Sill. LTC Talcott who is the Battalion Commander from Captain Daniels command stated that he will place a military protective order on Captain Daniel restraining him from visiting his wife. Mrs. Daniels then came to the Lawton Police Department with Mrs. Plumley and was given a citizens statement and instructed on how to

Prepared By: 5605
Prepared Date: 11/26/2008

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

fill it out, and Mrs. Plumley informed me that she escorted Mrs. Daniels to the Comanche County court house and obtained a protective order issued by the judge. This case is a referred to other agency code 62, Detective Roberto Peralta 221/5605, 11-21-2008.
lrl#41

REVIEWED by POLLARD, JEFFERY ALLEN

APPROVED by CARTER, ERIC MATTHEW

Annex G

**[AW]ARD (For Other Than Valor) OF ARMY ACHIEVEMENT MEDAL (AAM), [ARMY COMMENDATIO]N MEDAL (ARCOM), AND MERITORIOUS SERVICE MEDAL (MSM)**

[For] use of this form, see AR 672-5-1; the proponent agency is ODCSPER

| 1. TO | 2. FROM | 3. DATE |
|---|---|---|
| Commander, 2-7 Cavalry | Commander, A Trp, 2-7 Cavalry | 21 OCT 91 |

**PART A - SOLDIER DATA**

4. BRANCH OF SERVICE: ☑ ARMY ☐ USN ☐ USAF ☐ USMC ☐ USCG

5. RECOMMENDED AWARD: ☐ MSM ☐ ARCOM ☑ AAM ☐ OLC# ☐ INTERIM

6. REASON: ☑ ACH ☐ SVC ☐ PCS ☐ ETS ☐ RET

7. PERIOD OF AWARD: a. FROM 7 OCT 91 b. TO 8 OCT 91

8. POSTHUMOUS? ☐ Yes ☑ No

9. PROPOSED PRESENTATION DATE: 1 NOV 91

10a. NAME (Last, First, Middle): Daniels, Derrick T.

10b. RANK: PFC

10c. SSN: Redacted PII

11. DUTY POSITION/TITLE: MOBILITY TEAM / combat Lifesaver

12. ORGANIZATION: A-trp, 2-7 Cavalry Ft. Carson, CO 80913

13. PREVIOUS AWARDS: ARMY SERVICE RIBBON, NATIONAL DEFENSE RIBBON

14. Recommender

a. NAME: FortenBerry, Kelvin E.

b. TITLE/POSITION: Platoon Leader

c. ADDRESS: A Trp, 2-7 CAV Ft. Carson, CO 80913

d. SIGNATURE: [signature]

e. RANK: Second Lieutenant

**PART B - JUSTIFICATION AND CITATION DATA (Use Specific Bullet Examples of Meritorious Acts or Service)**

15. ACHIEVEMENT #1: while Assigned As A combat Life saver For the mobility Team whi[le] on a Joint task Force-six Mission, Private First class Daniels Reconized that two soldiers From A Reconaissance Team Had fallen Due to Becoming A Heat casualty

16. ACHIEVEMENT #2: Private First class Daniels was quick to administer first Aid To one of the soldiers which quite possibly saved the life of the stricken soldier.

17. ACHIEVEMENT #3

18. ACHIEVEMENT #4

19. PROPOSED CITATION: For quick thinking and Fast Action which may Have saved the lif[e] of a Fellow soldier. Private First class Daniels' Outstanding Display Is In Keeping with the Finest Traditions of the Unit, The Squadron, and The United states Army.

DA FORM 638-1, NOV 90

Redacted PII

PART C - RECOMMENDATIONS/APPROVAL/DISAPPROVAL

**20. Immediate Supervisor/Unit Commander/Staff Officer Recommendation**

| a. TO | b. FROM | c. DATE |
|---|---|---|
| COMMANDER 2-7 CAV | COMMANDER A TRP 2-7 CAV | 22 OCT 9 |

d. Recommend: (APPROVAL) UPGRADE TO DOWNGRADE TO DISAPPROVAL

| e. NAME | f. TITLE/POSITION | g. SIGNATURE / h. RANK |
|---|---|---|
| STOLLENWERK, MICHAEL F. | TRP CDR | Michael F. Stollenwerk / CPT |

i. COMMENTS

**21. Certification of Eligibility and Data**

| | a. SIGNATURE | b. DATE |
|---|---|---|
| *I certify that this individual is eligible for an award in accordance with AR 600-8-2; and that the information contained in Part A is correct.* | [signature] | 23 OCT 91 |

**22. AAM APPROVAL AUTHORITY**

| a. TO | b. FROM | c. DATE |
|---|---|---|
| ORDERS ISSUING AUTHORITY | CDR, 2-7 CAV | 28 OCT [illegible] |

d. Recommend: (APPROVAL) UPGRADE TO DOWNGRADE TO DISAPPROVAL

| e. NAME | f. TITLE/POSITION | g. SIGNATURE / h. RANK |
|---|---|---|
| RICHARD G. ROWE | SQDN CDR | Richard G. Rowe / LTC |

i. COMMENTS

**23. ARCOM APPROVAL AUTHORITY**

| a. TO | b. FROM | c. DATE |
|---|---|---|
| | | |

d. Recommend: APPROVAL UPGRADE TO DOWNGRADE TO DISAPPROVAL

| e. NAME | f. TITLE/POSITION | g. SIGNATURE / h. RANK |
|---|---|---|
| | | |

i. COMMENTS

**24. MSM APPROVAL AUTHORITY**

| a. TO | b. FROM | c. DATE |
|---|---|---|
| | | |

d. APPROVED DOWNGRADE TO RECOMMEND UPGRADE TO DISAPPROVED

| e. NAME | f. TITLE/POSITION | g. SIGNATURE / h. RANK |
|---|---|---|
| | | |

i. COMMENTS

**PART D - ORDERS DATA**

| 25. ORDERS ISSUING HQ | 25a. PERMANENT ORDER NUMBER / 25b. DATE | 26. APPROVED AWARD |
|---|---|---|
| HHT 2-7 CAV FT. CARSON, CO 80913 | 050-004 / 7 NOV 91 | AAM (A) |
| 27a. NAME OF ORDERS APPROVAL AUTHORITY: VON M. BRICKHOUSE | 27b. TITLE/POSITION: ADJUTANT | 28. DISTRIBUTION |
| 27c. SIGNATURE: [signature] | 27d. RANK: 1LT | |

DEPARTMENT OF THE ARMY
187th Personnel Service Company
APO Army Europe 09166-3798

PERMANENT ORDERS [illegible]-15 10 SEP 93

DANIELS, DERRICK T. Redacted PII SFC HHC 3RD BDE APO AE 09028

Announcement is made of the following award.

Award: Good Conduct Medal: 1ST AWARD
Date(s) or period of service: 09 JUL 90 TO 08 JUL 93
Authority: Para 3-4a, AR 672-5-1
Reason: Exemplary behavior, efficiency, and fidelity in active federal military service.
Format: 320

FOR THE MILITARY PERSONNEL OFFICER:

DANIEL [illegible] SYLVESTER
CPT, AG
ASST PERSONNEL OFFICER

DISTRIBUTION:
INDIVIDUAL (5)
MPRJ (1)
AEUAR-MH-PA (1)
Cdr, HHC 3RD BDE APO AE 09028 (1)
Cdr, USAEREC, ATTN: PCRE-FS, FT. BENJAMIN HARRISON, IN 46249 (1)

Inquiries concerning this order should be directed to the Commander, 187th Personnel Service Company, APO AE 09166-3798. Telephone 380-6781.

Redacted PII

# Certificate of Achievement

## 3rd "Bulldog" Brigade
## 1st Armored Division
## United States Army, Europe, and Seventh Army

is awarded to

SPECIALIST DERRICK T. DANIELS
HHC, 3RD BRIGADE, 1ST ARMORED DIVISION

For DISTINGUISHING YOURSELF AS A MEMBER OF THE HEADQUARTERS AND HEADQUARTERS COMPANY TEAM DURING THE 1994 BRITISH ARMY OF THE RHEIN ORIENTEERING COMPETITION. YOUR STAMINA AND PERSEVERANCE RESULTED IN THE ENTIRE TEAM COMPLETING EVERY PORTION OF THE COURSE, THUS BRINGING GREAT CREDIT UPON YOU, YOUR TEAM, AND THE THIRD BRIGADE COMBAT TEAM. BULLDOGS!

EDWARD L. DYER
COL, AR
Commanding

This 14th Day of JUNE 19 94

AETV-THP-SP Form 672-5-1, JAN 93

Redacted PII

# THE UNITED STATES OF AMERICA

TO ALL WHO SHALL SEE THESE PRESENTS, GREETING: THIS IS TO CERTIFY THAT THE PRESIDENT OF THE UNITED STATES OF AMERICA AUTHORIZED BY EXECUTIVE ORDER, 24 AUGUST 1962 HAS AWARDED

# THE BRONZE STAR MEDAL

TO CAPTAIN DERRICK T. DANIELS, UNITED STATES ARMY
HEADQUARTERS AND HEADQUARTERS COMPANY, 1-77TH ARMOR REGIMENT

FOR EXCEPTIONALLY MERITORIOUS SERVICE DURING OPERATION IRAQI FREEDOM. HIS OUTSTANDING DEDICATION TO DUTY DURING COMBAT OPERATIONS IN IRAQ CONTRIBUTED TO THE OVERWHELMING SUCCESS OF THE COMMAND'S MISSION. HIS ACTIONS ARE IN KEEPING WITH THE FINEST TRADITIONS OF MILITARY SERVICE AND REFLECT GREAT CREDIT UPON HIM, MULTI-NATIONAL CORPS-IRAQ, AND THE UNITED STATES ARMY.

FROM: 29 AUGUST 2006 TO 30 JUNE 2007

GIVEN UNDER MY HAND IN THE CITY OF WASHINGTON
THIS 9TH DAY OF MARCH 2007

RAYMOND T. ODIERNO
Lieutenant General, USA
Commanding
PO 068-1019, 9 MARCH 2007

SECRETARY OF THE ARMY

DA FORM 4980-5 (VT), JAN 2000

Redacted PII

# THE UNITED STATES OF AMERICA

TO ALL WHO SHALL SEE THESE PRESENTS, GREETING: THIS IS TO CERTIFY THAT THE PRESIDENT OF THE UNITED STATES OF AMERICA AUTHORIZED BY EXECUTIVE ORDER, 16 JANUARY 1969 HAS AWARDED

## THE MERITORIOUS SERVICE MEDAL

TO

CAPTAIN DERRICK T. DANIELS
HEADQUARTERS AND HEADQUARTERS COMPANY, 1ST BATTALION, 77TH ARMOR REGIMENT

FOR EXCEPTIONALLY MERITORIOUS SERVICE IN VARIOUS DIVISION AND BATTALION STAFF POSITIONS, CULMINATING AS COMMANDER, ALPHA AND LATER, HEADQUARTERS AND HEADQUARTERS COMPANY. CPT DANIELS' OUTSTANDING PERFORMANCE IS IN KEEPING WITH THE FINEST TRADITIONS OF MILITARY SERVICE AND REFLECTS GREAT CREDIT UPON HIM, THE 1ST INFANTRY DIVISION, VICTORY CORPS, AND THE UNITED STATES ARMY.

FROM 16 JUNE 2003 TO 13 MARCH 2008

PO 070-02, 10 MAR 08
Headquarters, V Corps
Heidelberg, Germany

KENNETH W. HUNZEKER
Lieutenant General, USA
Commanding General



# DEPARTMENT OF THE ARMY

THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY COMMENDATION MEDAL

TO

CAPTAIN DERRICK DANIELS
ALPHA COMPANY, 1ST BATTALION, 77TH ARMOR

FOR MERITORIOUS ACHIEVEMENT WHILE SERVING AS THE COMMANDER OF ALPHA COMPANY, 1ST BATTALION, 77TH ARMOR, TASK FORCE 1-18, DURING COMBAT OPERATIONS IN BAGHDAD, IRAQ IN SUPPORT OF OPERATION IRAQI FREEDOM 06-08. CPT DANIELS LED THE WAY IN COMBAT, INSPIRING HIS SOLDIERS AND OFFICERS TO ACCOMPLISH THE MISSION TO BRING STABILITY AND SECURITY TO THE WEST RASHEED DISTRICT OF BAGHDAD, IRAQ. HIS DEDICATION TO DUTY, LEADERSHIP, PERSONAL COURAGE, AND UNQUESTIONABLE INTEGRITY REFLECT GREAT CREDIT UPON HIM, THE DAGGER BRIGADE, AND THE UNITED STATES ARMY.

GIVEN UNDER MY HAND IN THE CITY OF WASHINGTON
THIS 20TH DAY OF DECEMBER 2006

PO# 354-04, 20 December 2006
HQ, 2nd Brigade, 1ID
Camp Liberty, Iraq

J. B. Burton
COL, IN
Commanding

DA FORM 4980-14, NOV 97



0. Redacted PII

# DEPARTMENT OF THE ARMY

THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY COMMENDATION MEDAL

TO CAPTAIN DERRICK T. DANIELS
HHC, 2ND BATTALION, 63RD ARMOR, 3RD BRIGADE COMBAT TEAM, 1ST INFANTRY DIVISION

FOR EXCEPTIONALLY MERITORIOUS SERVICE DURING OPERATION IRAQI FREEDOM II WHILE SERVING AS A DIVISION AND TASK FORCE BATTLE CAPTAIN. CAPTAIN DANIELS' PERFORMANCE DURING FULL SPECTRUM, CONTINUOUS COMBAT OPERATIONS DIRECTLY CONTRIBUTED TO SETTING THE CONDITIONS FOR IRAQI SELF-RELIANCE AND REPRESENTATIVE GOVERNMENT. CAPTAIN DANIELS' DEDICATION TO HIS FELLOW SOLDIERS ON THE BATTLEFIELD UPHOLDS THE FINEST TRADITIONS OF MILITARY SERVICE AND REFLECTS GREAT CREDIT UPON HIM, TASK FORCE DANGER, AND THE UNITED STATES ARMY.

FROM 14 FEBRUARY 2004 TO 06 FEBRUARY 2005

THIS 2ND DAY OF DECEMBER 2004

PO# 337-18, 02 December 2004
HQ, 1st Infantry Division (FWD)
Tikrit, Iraq

JOHN R. S. BATISTE
Major General, USA
Commanding

DA FORM 4980-14, NOV 97

# RECOMMENDATION FOR AWARD

For use of this form, see AR 600-8-22; the proponent agency is ODCSPER

For valor/heroism/wartime and all awards higher than MSM, refer to special instructions in Chapter 3, AR 600-8-22.

| 1. TO | 2. FROM | 3. DATE |
|---|---|---|
| COMMANDER, 1ID (M)<br>TIKRIT, IRAQ, APO, AE 09392 | COMMANDER, 2-63 AR, 3BDE, 1ID (M)<br>BA'QUBAH, IRAQ, APO AE 09392 | |

**PART I - SOLDIER DATA**

| 4. NAME | 5. RANK | 6. SSN |
|---|---|---|
| DANIELS, DERRICK T. | CPT | Redacted PII |

| 7. ORGANIZATION | 8. PREVIOUS AWARDS |
|---|---|
| HHC, 2-63 AR, 3BDE, 1ID (M)<br>BA'QUBAH, IRAQ, APO AE 09392 | AAM (6-OLC), ARCOM |

| 9. BRANCH OF SERVICE | 10. RECOMMENDED AWARD | 11. PERIOD OF AWARD a. FROM | b. TO |
|---|---|---|---|
| U.S. ARMY | BSM | 14 FEB 04 | 06 FEB 05 |

12. REASON FOR AWARD

| 12a. INDICATE ACH, SVC, PCS, ETS, OR RET | 12b. INTERIM AWARD | 13. POSTHUMOUS |
|---|---|---|
| SVC | YES [ ] NO [X]<br>IF YES, STATE AWARD GIVEN | YES [ ] NO [X] |

**PART II - RECOMMENDER DATA**

| 14. NAME | 15. ADDRESS |
|---|---|
| DOWNING, JEB S. | HQ, 2-63 AR, 3BDE, 1ID (M)<br>BA'QUBAH, IRAQ, APO AE 09392 |

| 16. TITLE/POSITION | 17. RANK |
|---|---|
| BATTALION OPERATIONS OFFICER | MAJ |

| 18. RELATIONSHIP TO AWARDEE | 19. SIGNATURE |
|---|---|
| BATTALION OPERATIONS OFFICER | [signature] |

**PART III - JUSTIFICATION AND CITATION DATA** *(Use specific bullet examples of meritorious acts or service)*

20. ACHIEVEMENTS

ACHIEVEMENT #1

CPT Daniels served as the division operations officer for 1ID from early February 04 until early July 04. During his tenure as the division battle captain, he daily coordinated with primary and special staff members along with brigade combats teams to de-conflict current operations, assisted the G-2 Battle CPT with vital Intel, and staffed future operations with brigade LNOs. Based on lessons learned, CPT Daniels assisted in updating the Division TACSOP and DMAIN Battle Drills to facilitate future operations.

ACHIEVEMENT #2

CPT Daniels was instrumental in providing guidance and managing assets for OPERATION DANGER FORTITUDE the DTAC and 3BCT movement to An Najaf in support of the MNC-I's operations in April of 2004. CPT Daniels provided relative information to the 1ID Commander and command group as well as provided timely SITREPS to MNC-I on this operation. In addition, CPT Daniels professionalism and dedication to duty greatly contributed to the G-3 current operations staff success.

ACHIEVEMENT #3

As the 2-63 AR battle captain, CPT Daniels possessed the ability to make sound decisions in the absence of guidance as well as provide courses of actions to battalion leadership on current operations. In the battalion Tactical Operations Center, he supervised and synchronized over 600 combat patrols. In addition, he has joined convoy commanders on three combat patrols to gain situational awareness and increase his effectiveness as a Lion battle captain.

ACHIEVEMENT #4

CPT Daniels quickly adapted from the wide scope of division operations to focused battalion operations. His flexibility and selflessness quickly added to an outstanding shift of soldiers and battle NCOs that routinely tackle each mission and critical event with the requisition attention to detail required for decisiveness. His performance as a TF 2-63 Battle Captain has ensured the continued success of the battalion.

21. PROPOSED CITATION

**EXTRAORDINARY MERITORIOUS SERVICE DURING GROUND COMBAT OPERATIONS AGAINST ENEMY FORCES IN TASK FORCE LION'S SECTOR FROM FEB04 TO FEB05. CPT DANIELS' MOTIVATION AND DEDICATION TO DUTY WERE INSTRUMENTAL TO THE TRAINING, PROFESSIONAL DEVELOPMENT, AND SUCCESS OF THE DIVISION AND BATTALION TACTICAL OPERATIONS CENTER. CPT DANIELS' DEDICATION TO HIS FELLOW SOLDIERS ON THE BATTLEFIELD UPHOLDS THE FINEST TRADITIONS OF MILITARY SERVICE AND REFLECTS GREAT CREDIT UPON HIMSELF, THE LION BATTALION, TASK FORCE DANGER, AND THE UNITED STATES ARMY.**

NAME
DANIELS, DERRICK T.

SSN
Redacted PII

PART IV - RECOMMENDATIONS/APPROVAL/DISAPPROVAL

22. *I certify that this individual is eligible for an award in accordance with AR 600-8-22; and that the information contained in Part I is correct.*

22a. SIGNATURE

22b. DATE 19 Sep 04

23. INTERMEDIATE AUTHORITY
a. TO COMMANDER, 3BDE, 1ID (M) BA'QUBAH, IRAQ, APO AE 09392
b. FROM COMMANDER, 2-63 AR, 1ID (M) BA'QUBAH, IRAQ, APO AE 09392
c. DATE 19 Sep 04

d. RECOMMEND: [X] APPROVAL [ ] DISAPPROVAL UPGRADE TO: DOWNGRADE TO:
e. NAME JEFFREY J. KULP
f. RANK LTC
g. TITLE/POSITION BATTALION COMMANDER
h. SIGNATURE
i. COMMENTS outstanding leader who makes significant contributions in C2 to battalion daily.

24. INTERMEDIATE AUTHORITY
a. TO COMMANDER, 1ID (M) TIKRIT, IRAQ, APO AE 09392
b. FROM COMMANDER, 3BDE, 1ID (M) BA'QUBAH, IRAQ, APO AE 09392
c. DATE 30 SEP 04

d. RECOMMEND: [X] APPROVAL [ ] DISAPPROVAL UPGRADE TO: DOWNGRADE TO:
e. NAME DANA J.H. PITTARD
f. RANK COL
g. TITLE/POSITION BRIGADE COMMANDER
h. SIGNATURE
i. COMMENTS Sir, I recommend approval. CPT Daniels is a leader who has made a contribution in a combat environment to TF 2-63

25. INTERMEDIATE AUTHORITY
a. TO
b. FROM
c. DATE 5/4/05

d. RECOMMEND: [ ] APPROVAL [ ] DISAPPROVAL UPGRADE TO: DOWNGRADE TO: ARCOM
e. NAME
f. RANK
g. TITLE/POSITION
h. SIGNATURE Batiste
i. COMMENTS

26. APPROVAL AUTHORITY
a. TO ORDERS ISSUING AUTHORITY
b. FROM COMMANDER 1ID (M) TIKRIT, IRAQ, APO AE 09392
c. DATE

d. [ ] APPROVED [ ] DISAPPROVED RECOMMEND UPGRADE TO: DOWNGRADE TO:
e. NAME JOHN R.S. BATISTE
f. RANK MG
g. TITLE/POSITION DIVISION COMMANDER
h. SIGNATURE
i. COMMENTS

PART V - ORDERS DATA

27a. ORDERS ISSUING HQ
HQ, 1ST INF DIV, APO AE 09392

27b. PERMANENT ORDER NO.
337-18

31. DISTRIBUTION
1-OMPF
1-MPRJ
1-FILE
1-INDIV

28a. NAME OF ORDERS APPROVAL AUTHORITY
REGINA THOMAS

28b. RANK
MSG

28c. TITLE/POSITION
PA NCOIC

29. APPROVED AWARD
ARCOM (1OLC)

28d. SIGNATURE
Regina Thomas

30. DATE
2 DEC 04

*REVERSE, DA FORM 638, NOV 94* USAPPC V6.0

**RECOMMENDATION FOR AWARD (*For Other Than Valor*) OF ARMY ACHIEVEMENT MEDAL (*AAM*), ARMY COMMENDATION MEDAL (*ARCOM*), AND MERITORIOUS SERVICE MEDAL (*MSM*)**

For use of this form, see AR 672-5-1; the proponent agency is ODCSPER

| 1. TO | 2. FROM | 3. DATE |
|---|---|---|
| Commander HHC 3rd BDE | BDE S-3 Plans | 1 Dec 93 |

**PART A - SOLDIER DATA**

4. BRANCH OF SERVICE: ☒ ARMY ☐ USN ☐ USAF ☐ USMC ☐ USCG

5. RECOMMENDED AWARD: ☐ MSM ☐ ARCOM ☒ AAM ☐ OLC# ☐ INTERIM

6. REASON: ☒ ACH ☐ SVC ☐ PCS ☐ ETS ☐ RET

| 7. PERIOD OF AWARD a. FROM | b. TO | 8. POSTHUMOUS? | 9. PROPOSED PRESENTATION DATE |
|---|---|---|---|
| 21 Oct 93 | 24 Nov 93 | ☐ Yes ☒ No | 15 Dec 93 |

| 10a. NAME (Last, First, Middle) | 10b. RANK | 10c. SSN |
|---|---|---|
| DANIELS DERRICK TORAINO | E-4 | Redacted PII |

| 11. DUTY POSITION/TITLE | 12. ORGANIZATION |
|---|---|
| Plans Assistant / Driver | HHC 3rd BDE |

13. PREVIOUS AWARDS: (1) AAM

14. Recommender

| a. NAME | b. TITLE/POSITION | c. ADDRESS |
|---|---|---|
| Vest Robert H | Plans NCOIC | HHC 3rd BDE 1st AR Div APO NY 09028 |
| d. SIGNATURE: Robert H Vest | e. RANK: SSG | |

**PART B - JUSTIFICATION AND CITATION DATA (Use Specific Bullet Examples of Meritorious Acts or Service)**

15. ACHIEVEMENT #1

SPC Daniels was Responsible for maintaining 100% Accountability of Equipment used for The AAR Sight. SPC Daniels made sure All equipment was serviceable and Cleaned

16. ACHIEVEMENT #2

While At Range 301 Spc Daniels recorded 12 AARs And ensured each Plt Table XII run had A Breakdown of scoreing.

17. ACHIEVEMENT #3

SPC Daniels Set up The Tower At Range 301 And made sure ALL movement score's were Available to be posted There within minutes of Completion.

18. ACHIEVEMENT #4

SPC Daniels Volunteered to drive Cpt Lawson to Each mayor cell meeting and often delivered The BDE status himself. Also SPC Daniels took Initiative And Helped Post scores in The Conference Room.

19. PROPOSED CITATION

Meritorious achievement during Iron Thunder 94-1 at Grafenwoehr, Germany. Your attention to detail, dedication and hardwork enabled the S3 section to successfully accomplished all its missions. Your exemplary performance reflects great credit upon you, the 3d Brigade, 1st Armored Division and the United States Army.

## PART C - RECOMMENDATIONS/APPROVAL/DISAPPROVAL

**20. Immediate Supervisor/Unit Commander/Staff Officer Recommendation**

| a. TO | b. FROM | c. DATE |
|---|---|---|
| CDR, HHC, 3D BDE | S3, 3D BDE, 1st AD | 1 Dec |

d. Recommend: (APPROVAL) UPGRADE TO DOWNGRADE TO DISAPPROVAL

| e. NAME | f. TITLE/POSITION | g. SIGNATURE / h. RANK |
|---|---|---|
| DAVID M. NAMIOT | COMPANY COMMANDER | [signature] / CPT |

i. COMMENTS

**21. Certification of Eligibility and Data**

*I certify that this individual is eligible for an award in accordance with AR 600-8-2; and that the information contained in Part A is correct.*

a. SIGNATURE [signature] b. DATE 1 Dec 9

**22. AAM APPROVAL AUTHORITY**

| a. TO | b. FROM | c. DATE |
|---|---|---|
| ORDERS ISSUING AUTHORITY | CDR, HHC, 3D BDE | DEC 0 3 |

d. Recommend: (APPROVAL) UPGRADE TO DOWNGRADE TO DISAPPROVAL

| e. NAME | f. TITLE/POSITION | g. SIGNATURE / h. RANK |
|---|---|---|
| JOSEPH L. KRAWCZYK | BDE CDR | [signature] / COL |

i. COMMENTS

**23. ARCOM APPROVAL AUTHORITY**

| a. TO | b. FROM | c. DATE |
|---|---|---|
| | | |

d. Recommend: APPROVAL UPGRADE TO DOWNGRADE TO DISAPPROVAL

| e. NAME | f. TITLE/POSITION | g. SIGNATURE / h. RANK |
|---|---|---|
| | | |

i. COMMENTS

**24. MSM APPROVAL AUTHORITY**

| a. TO | b. FROM | c. DATE |
|---|---|---|
| | | |

d. APPROVED DOWNGRADE TO RECOMMEND UPGRADE TO DISAPPROVED

| e. NAME | f. TITLE/POSITION | g. SIGNATURE / h. RANK |
|---|---|---|
| | | |

i. COMMENTS

## PART D - ORDERS DATA

| 25. ORDERS ISSUING HQ | 25a. PERMANENT ORDER NUMBER / 25b. DATE | 26. APPROVED AWARD |
|---|---|---|
| HQ, 3D BDE, 1st AD UNIT 29702 APO AE 09028 | 12-560 / DEC 0 3 1993 | AAM-1OLC |

**DEPARTMENT OF THE ARMY**
**HEADQUARTERS, MULTI-NATIONAL DIVISION (BAGHDAD)**
**CAMP LIBERTY, IRAQ**
**APO AE 09344**

PERMANENT ORDERS # 264-036 21 September 2007

DANIELS, DERRICK T. Redacted PII CPT, Headquarters and Headquarters Company, 1st Battalion, 77th Armored Regiment(WAM8T0), 2nd Brigade, 1st Infantry Division APO AE 09390

Announcement is made of the following award:

Award: Combat Action Badge
Date(s) or period of service: 7 November 2006
Authority: HQDA Letter 600-05-1, dated 3 June 2005 and MNC-I Memorandum, Subject: Delegation of Wartime Awards Approval Authority-Multi-National Corps-Iraq and Subordinate Units dated 26 April 2005.
Reason: Actively engaging or being engaged by the enemy.
Format: 320

FOR THE COMMANDER:

JESSICA COCHRAN
1LT, AG
Chief of Operations, G1

DISTRIBUTION:
1-INDIVIDUAL CONCERNED
1-UNIT
1-FILE
1-CDR, USAEREC, ATTN: PCRE-FS, 8899 E. 56th St., Indianapolis, IN 46249-5301 (Enlisted)
1-CDR, HQDA, ATTN: AHRC-MSR, 200 Stovall St., Alexandria, VA 22332-0444 (Officer)

DEPARTMENT OF THE ARMY
HEADQUARTERS UNITED STATES ARMY INFANTRY CENTER
Fort Benning, Georgia 31905-5000

IMSE-BEN-HRM-T 12 February 2007

MEMORANDUM FOR RECORD

SUBJECT: Award of Parachutist Badge

1. This is to certify that DANIELS DERRICK Redacted PII attended Airborne Class 31-95 from 23 JUN 95 TO 14 JUL 95 as verified by the Army Training Requirements and Resources System (ATRRS). Individual was awarded the Parachutist Badge per Paragraph 8-11, AR 600-8-22 for successful completion of the Basic Airborne Course.

2. POC is the undersigned at DSN 835-8811 or C[illegible] 8811.

H.Q. U.S. ARMY INFANTRY CENTER
OFFICIAL
FORT BENNING, GEORGIA

VICKIE DIKES
Chief, Personnel Operations Division

CF:
DANIELS DERRICK (1)
RHA (1)

DEPARTMENT OF THE ARMY
HEADQUARTERS, UNITED STATES ARMY INFANTRY CENTER
FORT BENNING, GEORGIA 31905-5000

PERMANENT ORDERS 184-413 03 July 1995

DANIELS DERRICK T Redacted PII CDT pres atch Co B 1st Battalion (ABN) 507th Parachute Infantry USAIS (W2L59J) Ft Benning, GA 31905-5560 (ABN CL 31-95)

Announcement is made of the following award.

Award: Parachutist Badge
Date(s) or period of service: 14 Jul 1995
Authority: Paragraph 6-14, AR 672-5-1.
Reason: For successful completion of Airborne training.
Format: 320

FOR THE COMMANDER:

*******************
* OFFICIAL *
* FORT BENNING, GA *
*******************

JAMES R. BRINSON
Adjutant General

DISTRIBUTION
ATZB-AGA
CDT DANIELS DERRICK T (1)
ABN Rec (1)
Cdr, Co B 1st Battalion (ABN) 507th Parachute Infantry USAIS (W2L59J) Ft Benning, GA 31905-5560 (1)
Cdr, USAEREC ATTN: PCRE-FS Ft Benjamin Harrison, IN 46249-5000 (1)
Total copies: (4)

DEPARTMENT OF THE ARMY
Headquarters, 25th Infantry Division(Light)
Schofield Barracks, HI 96857-6000

PERMANENT ORDERS A216-14

4 Aug 97

DANIELS, DERRICK T. Redacted PII CDT Albang State Univ. Albany, GA 31705

Announcement is made of the following award.

Award:  Air Assault Badge
Date(s) or period of service: 1 Aug 1997
Authority:  Paragraph 5-23, AR 672-5-1
Reason:  For successful completion of the Air Assault Training Course.
Format: 320

FOR THE COMMANDER:



MAKALENA Y. SHIBATA
2LT, AG
Chief, Personnel Action Branch

DISTRIBUTION:
APVG-PSC-PIB (1)
APVG-PT-LITC (1)
Individual concerned (5)
Cdr, USAEREC, ATTN: PCRE-FS, Fort Benjamin Harrison, IN 46249-5000 (1)

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES | THIS IS AN IMPORTANT RECORD. SAFEGUARD IT. | ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

# CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| DANIELS, DERRICK TORAINO | ARMY/RA/AR | Redacted PII |

| 4a. GRADE, RATE OR RANK | b. PAY GRADE | 5. DATE OF BIRTH (YYYYMMDD) | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) |
|---|---|---|---|
| CPT | 003 | Redacted PII | 00000000 |

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) |
|---|---|
| FORT BRAGG, NORTH CAROLINA | Redacted PII |

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | b. STATION WHERE SEPARATED |
|---|---|
| 188TH INFANTRY BDE HQ FC | FORT STEWART TC, GA 31314 |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE NONE |
|---|---|
| N/A | AMOUNT: $ 400,000.00 |

**11. PRIMARY SPECIALTY** (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.)

19A 2B ARMOR, GENERAL - 13 YRS 8 MOS// NOTHING FOLLOWS

| 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|
| a. DATE ENTERED AD THIS PERIOD | 1999 | 03 | 19 |
| b. SEPARATION DATE THIS PERIOD | 2012 | 11 | 16 |
| c. NET ACTIVE SERVICE THIS PERIOD | 0013 | 07 | 28 |
| d. TOTAL PRIOR ACTIVE SERVICE | 0004 | 01 | 29 |
| e. TOTAL PRIOR INACTIVE SERVICE | 0004 | 06 | 11 |
| f. FOREIGN SERVICE | 0007 | 02 | 23 |
| g. SEA SERVICE | 0000 | 00 | 00 |
| h. INITIAL ENTRY TRAINING | 0000 | 00 | 00 |
| i. EFFECTIVE DATE OF PAY GRADE | 2002 | 10 | 01 |

**13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED** (All periods of service)

IRAQ CAMPAIGN MEDAL W/ SIX CAMPAIGN STARS //BRONZE STAR MEDAL//MERITORIOUS SERVICE MEDAL//ARMY COMMENDATION MEDAL//VALOROUS UNIT AWARD//ARMY GOOD CONDUCT MEDAL// NATIONAL DEFENSE SERVICE MEDAL//GLOBAL WAR ON TERRORISM EXPEDITIONARY MEDAL//GLOBAL WAR ON TERRORISM SERVICE MEDAL//CONT IN BLOCK 18

**14. MILITARY EDUCATION** (Course title, number of weeks, and month and year completed)

COMB ARMS SVC STF SCH, 3 WEEKS, 2003//OFF ADV, 3 WEEKS, 2003//OFF BASIC, 3 WEEKS, 1999//NOTHING FOLLOWS

| | YES | NO |
|---|---|---|
| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | | X |
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP (10 USC Sec. 2107b) | | X |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If Yes, years of commitment: NA ) | | X |

| 16. DAYS ACCRUED LEAVE PAID | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO |
|---|---|---|---|
| 23 | | | X |

**18. REMARKS** ////////////////////////////////////////////////////////////

SERVED IN A DESIGNATED IMMINENT DANGER PAY AREA//SERVICE IN IRAQ 20060820-20071120// SERVICE IN IRAQ 20091217-20101216//SERVICE IN IRAQ 20040207-20050206//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE//CONT FROM BLOCK 13: //KOREAN DEFENSE SERVICE MEDAL //NON COMMISSIONED OFFICER PROFESSIONAL DEVELOPMENT RIBBON//ARMY SERVICE RIBBON//OVERSEAS SERVICE RIBBON (3RD AWARD)//COMBAT ACTION BADGE//PARACHUTIST BADGE//AIR ASSAULT BADGE// NOTHING FOLLOWS

The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program.

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code) | b. NEAREST RELATIVE (Name and address - include ZIP Code) |
|---|---|
| Redacted PII | Redacted PII |

| | YES | NO |
|---|---|---|
| 20. MEMBER REQUESTS COPY 6 BE SENT TO (Specify state/locality) GA OFFICE OF VETERANS AFFAIRS | X | |
| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, DC) | X | |

| 21.a. MEMBER SIGNATURE | b. DATE (YYYYMMDD) | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature) | b. DATE (YYYYMMDD) |
|---|---|---|---|
| ESIGNED BY: DANIELS.DERRICK.TORAINO Redacted PII | 20121116 | ESIGNED BY: DOUGHERTY.MELVIN. Redacted PII M L DOUGHERTY, GS09, CH, TRANSITION CENTER | 20121116 |

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Include upgrades) |
|---|---|
| DISCHARGE | HONORABLE |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AR 600-8-24, PARA 4-2B | JNC | NA |

**28. NARRATIVE REASON FOR SEPARATION**

UNACCEPTABLE CONDUCT

| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD) | 30. MEMBER REQUESTS COPY 4 (Initials) |
|---|---|
| NONE | DTD |

DD FORM 214, AUG 2009 | PREVIOUS EDITION IS OBSOLETE. GENERATED BY TRANSPROC | MEMBER - 4

Annex H

## CHRONOLOGICAL RECORD OF MEDICAL CARE

Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **18 Aug 2008 0835 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **ACUT**
Provider: **DODD,DAVID S**

**Reason for Appointment:** sod walk in

AutoCites Refreshed by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT

**Problems**
- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA

**Active Family History**
No Active Family History Found.

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

**Vitals**
Vitals Written by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT
Tobacco Use: Yes, Alcohol Use: Yes, Pain Scale: 0 Pain Free

**SO Note** Written by GROVE,SHERRY L @ 18 Aug 2008 1010 CDT
**History of present illness**
The Patient is a 35 year old male.
He reported: Encounter Background Information: This is a 35 year old African American, married male Active Duty Army CPT who walked in to CMHS this morning accompanied by his wife to see the SOD. SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. SM & wife report that since his return he has had an increase in drinking (2 beers or 2 liquor shots every night). He also reports depressive symptoms, irritability, uncomfortableness in crowds, lack of motivation, inpatience, fatigue, problems relaxing, and erectile dysfunction. SM stated that he wanted to get help several months ago, but he never followed through. SM relayed that his wife told him today that if he didn't come to CMHS, she would go to his Commander & tell him about SM's problems.
Psychological symptoms SM appeared neatly dressed and groomed in ACU's, appeared alert, oriented, & in no acute distress. SM denies SI/HI, denies perceptual distortions, denies psychotic symptoms. SM's wife relayed that SM has mentioned wanting to kill himself. Wife relayed that SM bought her a gun for her protection while he was deployed. Wife says when SM drinks, he'll say stuff like "Where's the gun-I'll blow my brains out right now". SM's speech appeared normal with regards to rate, tone, & flow. SM's mood appeared depressed with affect congruent. Risk issues appear minimal to moderate @ this time. SM informed of CMHS & RACH emergency protocol procedures should he become acutely distressed or decompensate.
**Subjective**
Will staff case with Dr. Dodd. R/O Depressive D/O NOS, R/O Alcohol Abuse. SM may benefit from medications, & he is amenable to taking them. SM is not amenable to groups, & he would prefer 1:1 therapy for post deployment related issues. Also, SM & his wife are interested in Marital counseling, & may need a referral to Social Work Services. SM & wife were informed of CMHS & RACH emergency protocol procedures should they become acutely distressed or decompensate. Taught SM & wife some breathing techniques & progressive muscle relaxation exercises, which they engaged in. They were encouraged to engage in the exercises @ home also. SM & wife will f/u as needed and scheduled with their primary providers.

A/P Written by DODD, DAVID S @ 19 Aug 2008 0659 CDT
**1. ALCOHOL ABUSE**
Procedure(s): -Psychiatric Therapy Individual Approximately 45-50 Minutes x 1

**Disposition** Written by DODD, DAVID S @ 19 Aug 2008 0700 CDT
**Released w/o Limitations**
**Follow up:** as needed . - Comments: sm agreed to go to the ASAP program. Also set up appt for intake. clarified emergency

| | | | | | |
|---|---|---|---|---|---|
| **Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII | | | | | |
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

18 Aug 2008 0936
**Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DODD, DAVID S**

services and how to access them. discussed need to dispose of weapon for a while until his mood and alcohol use stablize/improve. Wife will help with this treatment plan implementation.

50 minutes face-to-face/floor time..

**Signed By DODD, DAVID S** (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 19 Aug 2008 0701

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000420

Annex I

# Army promotes awareness of depression

September 29, 2009

By **Mr. Jerry Harben (Army Medicine)**

<div id="others"> <ul> </ul> </div>

With a theme of "One of the bravest acts ... is to ask for help when you need it," the Army is using National Depression Education and Awareness Month activities in October to combat a stigma associated with behavioral-health care and teach Soldiers and their Families how to recognize depression and get help for it.

Depression is more than just "feeling low." It is a serious medical condition that may be persistent and can interfere with a person's ability to function. It affects some 18.8 million Americans, according to the Uniformed Services University of the Health Sciences (USUHS).

Signs and symptoms of depression may include sadness, irritability, anxiety, fatigue, lack of energy, changes in appetite or weight, inability to sleep or changes in sleep pattern, inability to concentrate or make decisions, feeling worthless or inappropriate guilt, and thoughts of death or suicide.

Almost everyone experiences some of these symptoms at some time. But the more symptoms there are, the stronger they are and the longer they last, the more likely the person is suffering depression. Experts say it is time to seek treatment when these symptoms are overwhelming and disabling.

"Depression is a medical illness caused by malfunctioning of certain neuro-chemical systems in the brain," said Col. C. J. Diebold, chief of psychiatry at Tripler Army Medical Center and the Army Surgeon General's consultant for psychiatry. "Factors contributing to depression can be psychological stress; physical illness; medical conditions such as anemia or a malfunctioning thyroid gland and side effects of certain medications. Depression can also occur with other psychiatric conditions like post-traumatic stress disorder."

"Like many medical conditions, depression can be inherited, so people may be at risk if their parents or grandparents have a history of depression," he added.

The Department of Defense and Department of Veterans Affairs offer anonymous behavioral-health assessments online at www.militarymentalhealth.org and www.mentalhealth.va.gov/depression.asp.

In 2008, the Department of Defense, Office of Personnel Management (OPM) and the Office of

Management and Budget (OMB) approved revisions to question 21 on the Questionnaire for National Security Positions, Standard Form (SF) 86, regarding mental and emotional health counseling. The change allows people who have been treated by a behavioral-health professional due to marital or family reasons not related to their violence, or related to adjustments from service in a military combat environment, to answer "no" to the question about receiving behavioral-health care.

"Major depression is a remarkably treatable disorder and the majority of people who receive treatment overcome the illness and return to normal lives," Dr. Jack Smith, acting chief medical officer of the TRICARE Management Activity, wrote in an online article.

"If a person is concerned that they are depressed, then he or she should make an appointment to speak with a primary-care provider or a behavioral-health professional for an assessment. Possible interventions include talk therapy and medications to treat symptoms associated with depression. The success rate is very high if a person follows the treatment plan," Diebold said.

For mild depression that does not require professional treatment, USUHS lists the following actions that can help:
A-A A(R) Manage your diet.
A-A A(R) Get adequate rest.
A-A A(R) Avoid alcohol.
A-A A(R) Participate in regular exercise.
A-A A(R) Surround yourself with people who are important to you.
A-A A(R) Communicate your feelings to someone you trust.
A-A A(R) Join a social support group in your military community or in your local area.

Key Facts about Depression

Depression is treatable. Seeking help for depression is a sign of strength.

The Army is committed to decreasing the stigma associated with seeking behavioral-health care and encourages its Soldiers, Family members and civilians to get help if they need it.

Most Soldiers who seek behavioral health support recover and remain on active duty.

Resilience is the ability to grow and thrive in the face of challenges and bounce back from adversity.

The Real Warriors Campaign is a DoD program to help Soldiers combat the stigma associated with seeking behavioral-health care.

The Department of Defense offers anonymous behavioral-health assessments for Soldiers, Family members and civilian government employees 24 hours a day, seven days a week, online at www.MilitaryMentalHealth.org or by phone at (877) 877-3647.

Help for those who may experience depression is available at Military One Source (www.militaryonesource.com) and the Defense Center of Excellence for Psychological Health and Traumatic Brain Injury Outreach Center (http://www.dcoe.health.mil/media/DCoE_News/DCoE_Outreach_Center.aspx). Information about depression is available from the Army Center for Health Promotion and Preventive Medicine at http://chppm-www.apgea.army.mil and from the Army Behavioral Health Website http://www.behavioralhealth.army.mil

 

**CHRONOLOGICAL RECORD OF MEDICAL CARE**

**l, OK Clinic: Mental Health Provider: DODD, DAVID S**

14 Feb 2009 0757 CST

History of present illness
The Patient is a 36 year old male.
He reported: Encounter Background Information: Partial implementation of a suicide plan to hang self details listed below.

A/P Written by DODD, DAVID S @ 14 Feb 2009 0800 CST
**1. DEPRESSION**
Procedure(s): -Psychiatric Therapy Indiv By A Physician Approx 75-80 Min x 1
**2. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II**(*OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
3. **SUICIDE ATTEMPT - HANGING**: acting on plan but did not make final jump off table.

**Disposition** Written by DODD, DAVID S @ 14 Feb 2009 0800 CST
**Admitted** - Comments:
**Follow up:** as needed . - Comments: see above for details. admitted to red river.

120 minutes face-to-face/floor time..

**Note** Written by DODD, DAVID S @ 14 Feb 2009 0743 CST
Name: Daniels, Derrick 20/ 9482

Identifying information: Service member is a 36-year-old like to be married African American male with the rank of captain.

Reason for referral: Service member was seen of the Reynolds Army Community Hospital emergency room at the request of Dr. Patrick after the service member was brought in for attempting to hang himself in his garage.

Details of the event: Service member has had a chronic history of behavior and relationship problems over the last several months and during this time there is the issue of domestic violence and now a no contact order between him and his spouse. They have been living in separate locations in the service member has been seeking services at the community mental Health Center since August of 2008. During that time he saw several different providers his current provider is Dr. Brandon, PhD, psychologist. He's been seen in the posterior 0.1 the clinical the last month and is also seeing Mr. McKeever and his psychiatrist is Dr. Tomlinson. He reports that approximately 2 weeks ago he was placed on Zoloft 100 mg. Around the same time he was given a letter of reprimand by the general of the post due to his behavior. This seems to have been a critical moment in his recent mental health decline as he reports that as he read the letter he decided that this person that they were describing on paper really was not who he wanted to be/or was. And yet in the letter of reprimand he realized that that would probably result in a secondary action which would force him out of the military his hope for the future started to decline at the same time his desire to talk to his wife was not allowed because of the no contact order and he was perceived by others as a substandard and soldier and despicable person by his report. He attempted to seek legal counsel as his trial defense calling the attorney hoping that there be some way to share his side of the story so he was not kicked out of the military which also he perceives as his primary way of life. He never adjusted well when he was a child as a single child at the form of a lot of siblings socially isolated but that the military which gave him away out of his current project his life. He joined the Army as enlisted and went to Greene Nicole did eventually became an officer is been deployed twice an L4-L5 and 06 to know 7 both to Iraq first appointment was to check crit and Bock about and the second one was to the Baghdad in her body area. He was in command 2 times during this period but felt disillusioned by what he was not able to accomplish versus what he was able to accomplish.

He used to drink alcohol heavily but states he stopped drinking entirely 2 weeks ago when he was prescribed Zoloft it's uncertain to this provider he's been in the ASAP program. Service member denies a lot of PTSD-type symptoms such as nightmares and intrusive recollections and thoughts. He does remember being somewhat depressed with the loss to soldiers and was not able to make a connection with his soldiers.

during the 2 weeks he was unable contact his attorney and within the last week he is becoming more and more depressed thinking that life is over so as of the day of the 12th on the evening he went to Wal-Mart but a 14 foot

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

Annex 

RED RIVER HOSPITAL

DISCHARGE SUMMARY

**PATIENT NAME:** DANIELS, DERRICK
**PATIENT ID:** Redacted PII
**DATE OF ADMISSION:** 2/14/2009
**DATE OF DISCHARGE:** 2/24/2009
**ATTENDING PHYSICIAN:** BRYAN WIECK, M.D.
**UNIT:** ADULT

RED RIVER HOSPITAL
This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of this person to whom it pertains or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

**ADMISSION DIAGNOSIS:**

**AXIS I:**
Major depressive disorder, recurrent, severe addiction.

**AXIS II:**
Deferred.

**AXIS III:**
None.

**AXIS IV:**
Psychosocial stressors, severe.

**AXIS V:**
Global assessment of functioning: Current is 30, highest in the past year is 75.

**DISCHARGE DIAGNOSES:**

**AXIS I:**
Major depressive disorder, recurrent and severe.

**AXIS II:**
None.

**AXIS III:**
None.

**AXIS IV:**
Psychosocial stressors, severe.

**AXIS V:**
Global Assessment of Functioning current 50, highest in the past year is 75.

**PHYSICAL ON ADMISSION:**
The patient's height 5 feet 9 inches, weight 210 pounds, blood pressure 117/84, pulse 73, respirations 18.

**ADMISSION LABORATORY:**
CBC with RBC 4.58 which is low, hematocrit 41.2 which is low, monocyte 9.3 which is elevated, urinalysis within normal limits. Survey 14 with anion gap of 9 which is slightly low, urine drug screen negative. TSH within normal range. RPR nonreactive, CMG Amplified D testing negative.

**PATIENT NAME:** DANIELS, DERRICK
**PATIENT ID:** Redacted PII
**DATE OF ADMISSION:** 2/14/2009
**DATE OF DISCHARGE:** 2/24/2009

**HOSPITAL COURSE:**
A 36-year-old male admitted to the adult inpatient program with chief complaint of 'I am trying to hang myself.' The patient's active duty stationed at Lawton Army base in Oklahoma, Fort Sill. It has been found in the past the patient has been drinking excessively to deal with stress. The patient depressed and increasingly depressed since November 2008. He was charged with adultery and he is separated from his wife, anticipated might reconcile or a very possible divorce although he would like things to work out. He has a 14-year old army career, he knows nothing else. Depression, depressed mood, energy, irritability, poor concentration, poor sleep, isolation, helplessness, thoughts of suicide, he purchased a rope and was beginning the process to hang himself and feared that he will go to hell and stopped and called his command. Initially in the unit, he was alert and oriented x4. His memory is intact. His mood depressed. Affect dysphoric. Thought process is well organized, recognized the need for treatment. Treatment plan included individual and group therapy and medication management. The patient attended groups and therapies on the unit. He worked on mood improvement skills. The patient worked on ways to decrease anxiety and improve his mood. The patient worked on building strength and motivation within himself and improves his self-esteem, self-worth, worked on relaxation techniques and worked on communication skills. The patient was attentive and contributory and participatory in the program, he opened up. He did good work on concentrating on himself and stop distancing. The patient was involved patient worked on positive thoughts and establishing those. Treatment went well improving himself on communication and healthy ways to cope and handle his emotions and self empowerment. Overall the patient is doing well. He tolerates medications without any side effects. His mood improved. His affect improved. He is discharged in stable condition with no suicidal or homicidal ideation.

**DISCHARGE MEDICATIONS:**
Zoloft 100 mg daily, Ambien 10 mg at bedtime p.r.n. for sleep.

**DISCHARGE PLAN:**
To follow up with Fort Sill Community Mental Health immediately upon arrival to base. Primary care physician as needed for physical health care needs. The patient's military services, instructed to contact Dr. Wieck at Red River Hospital for any questions, concerns, or problems.

Kristi Curd, RN

Bryan Wieck, M.D.

JOB ID: 702992
DD: 03/22/2009
DT: 03/23/2009

RED RIVER HOSPITAL
This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of this person to whom it pertains or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

13 Feb 2009 2315
**Facility:** Reynolds Army Community Hospital Ft. Sill, OK **Clinic:** Mental Health **Provider:** DODD, DAVID S

rope made and a salad at 100 around a steel beam in the garage of his wife he went to her house opened the garage door with his car door open her went in without disturbing his wife" around the steel beam in the garage. He got up on the table preparing to jump but in the final moments of contemplating whether he should do this he thought he might go to hell if he did this and decided he should jump he called his mother and father in South Carolina did not tell them to details but said that he was feeling like he didn't want to live they talk to him for an hour to on the phone and eventually he taxed his wife that he had been at the house and was to hang himself at that point in midafternoon she called the unit the unit contacted service member brought into the ER this evening

Previous suicide attempts: None by his report

Is not intoxicated at the time

Educational he has a bachelors degree in business management and a Masters degree in business the leadership. He reports that his performance as in school stopped up to the was not specific

RISK ASSESSMENT: Service members at high risk to harm himself and in the imminent future as his time in the military is coming to an end and or likely is coming to an end. When asked if he could kill himself again what he said "I don't know" his personality and view of himself his informed around the military and yet his impulse control and judgment has been quite poor as the unit reports that he said several extramarital relationships in the domestic assault with his wife as other issues as well that the behavioral problems and yet when he goes to work they say he is quite effective service loss of this note to her position as an officer and over for 17 years has damaged his persons self-concept. In addition to this his loss of focus progressive depression his alcohol consumption and his distorted thinking make his likelihood of acting quite high.

PLAN: Service member agreed to go to Red River psychiatric hospital versus being emergency order of detention to the local hospital which this provider stated he would do if needed to ensure his safety. Service member felt that it would be more beneficial for him to go to a treatment facility where he could stay for a longer period of time. Discussed this with his tying commander LTC Talcott, Dr. Patrick ER MD, and the Red River intake worker. Red River accepted him and there was a nurse to nurse discussion to transfer information re his vital signs, etc. SM will f/u with dr. brandon upon discharge from the hospital.

Signed By **DODD, DAVID S** (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 14 Feb 2009 0801

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

13 Feb 2009 2315

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DODD, DAVID S**

**SO Note** Written by DODD,DAVID S @ 14 Feb 2009 0757 CST

**History of present illness**

The Patient is a 36 year old male.

He reported: Encounter Background Information: Partial implementation of a suicide plan to hang self details listed below.

A/P Written by DODD, DAVID S @ 14 Feb 2009 0800 CST

**1. DEPRESSION**

Procedure(s): -Psychiatric Therapy Indiv By A Physician Approx 75-80 Min x 1

**2. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*

**3. SUICIDE ATTEMPT - HANGING:** acting on plan but did not make final jump off table.

**Disposition** Written by DODD, DAVID S @ 14 Feb 2009 0800 CST

**Admitted** - Comments:

**Follow up:** as needed . - Comments: see above for details. admitted to red river.

120 minutes face-to-face/floor time..

**Note** Written by DODD, DAVID S @ 14 Feb 2009 0743 CST

Name: Daniels, Derrick 20/ 9482

Identifying information: Service member is a 36-year-old like to be married African American male with the rank of captain.

Reason for referral: Service member was seen of the Reynolds Army Community Hospital emergency room at the request of Dr. Patrick after the service member was brought in for attempting to hang himself in his garage.

Details of the event: Service member has had a chronic history of behavior and relationship problems over the last several months and during this time there is the issue of domestic violence and now a no contact order between him and his spouse. They have been living in separate locations in the service member has been seeking services at the community mental Health Center since August of 2008. During that time he saw several different providers his current provider is Dr. Brandon, PhD, psychologist. He's been seen in the posterior 0.1 the clinical the last month and is also seeing Mr. McKeever and his psychiatrist is Dr. Tomlinson. He reports that approximately 2 weeks ago he was placed on Zoloft 100 mg. Around the same time he was given a letter of reprimand by the general of the post due to his behavior. This seems to have been a critical moment in his recent mental health decline as he reports that as he read the letter he decided that this person that they were describing on paper really was not who he wanted to be/or was. And yet in the letter of reprimand he realized that that would probably result in a secondary action which would force him out of the military his hope for the future started to decline at the same time his desire to talk to his wife was not allowed because of the no contact order and he was perceived by others as a substandard and soldier and despicable person by his report. He attempted to seek legal counsel as his trial defense calling the attorney hoping that there be some way to share his side of the story so he was not kicked out of the military which also he perceives as his primary way of life. He never adjusted well when he was a child as a single child at the form of a lot of siblings socially isolated but that the military which gave him away out of his current project his life. He joined the Army as enlisted and went to Greene Nicole did eventually became an officer is been deployed twice an L4-L5 and 06 to know 7 both to Iraq first appointment was to check crit and Bock about and the second one was to the Baghdad in her body area. He was in command 2 times during this period but felt disillusioned by what he was not able to accomplish versus what he was able to accomplish.

He used to drink alcohol heavily but states he stopped drinking entirely 2 weeks ago when he was prescribed Zoloft it's uncertain to this provider he's been in the ASAP program. Service member denies a lot of PTSD-type symptoms such as nightmares and intrusive recollections and thoughts. He does remember being somewhat depressed with the loss to soldiers and was not able to make a connection with his soldiers.

during the 2 weeks he was unable contact his attorney and within the last week he is becoming more and more depressed thinking that life is over so as of the day of the 12th on the evening he went to Wal-Mart but a 14 foot

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

13 Feb 2009 2315

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DODD, DAVID S

rope made and a salad at 100 around a steel beam in the garage of his wife he went to her house opened the garage door with his car door open her went in without disturbing his wife" around the steel beam in the garage. He got up on the table preparing to jump but in the final moments of contemplating whether he should do this he thought he might go to hell if he did this and decided he should jump he called his mother and father in South Carolina did not tell them to details but said that he was feeling like he didn't want to live they talk to him for an hour to on the phone and eventually he taxed his wife that he had been at the house and was to hang himself at that point in midafternoon she called the unit the unit contacted service member brought into the ER this evening

Previous suicide attempts: None by his report

Is not intoxicated at the time

Educational he has a bachelors degree in business management and a Masters degree in business the leadership. He reports that his performance as in school stopped up to the was not specific

RISK ASSESSMENT: Service members at high risk to harm himself and in the imminent future as his time in the military is coming to an end and or likely is coming to an end. When asked if he could kill himself again what he said "I don't know" his personality and view of himself his informed around the military and yet his impulse control and judgment has been quite poor as the unit reports that he said several extramarital relationships in the domestic assault with his wife as other issues as well that the behavioral problems and yet when he goes to work they say he is quite effective service loss of this note to her position as an officer and over for 17 years has damaged his persons self-concept. In addition to this his loss of focus progressive depression his alcohol consumption and his distorted thinking make his likelihood of acting quite high.

PLAN: Service member agreed to go to Red River psychiatric hospital versus being emergency order of detention to the local hospital which this provider stated he would do if needed to ensure his safety. Service member felt that it would be more beneficial for him to go to a treatment facility where he could stay for a longer period of time. Discussed this with his tying commander LTC Talcott, Dr. Patrick ER MD, and the Red River intake worker. Red River accepted him and there was a nurse to nurse discussion to transfer information re his vital signs, etc. SM will f/u with dr. brandon upon discharge from the hospital.

Signed By DODD, DAVID S (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 14 Feb 2009 0801

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE

STANDARD FORM 600 (RE Prescribed by GSA and ICMI

000429

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579) UNAUTHORIZED ACCESS

Annex L

**CHRONOLOGICAL RECORD OF MEDICAL CARE**

**Clinic: Mental Health** **Provider: MCKENNEY, SHEELA R**

...e excited about fixing it up the way they want. SM has plans regarding the yard and privacy fence. The living environment is satisfactory. Guns in the home SM reports having a 9 mm automatic somewhere. He says his wife has it somewhere. The racial background is black SM reports that he was an only child and that his wife is significantly younger than her siblings. They have been married 9 years with no children. Parents of both are in Georgia.

Abuse / neglect: No abuse/neglect.
Activities: Watching movies.
Functional status: No lack of social support.

Review of systems

**Systemic symptoms:** General overall feeling. Feeling fine and not feeling tired (fatigue).
**Neurological symptoms:** No neurological symptoms.

Physical findings

**General appearance:**

- General appearance: ° Well-appearing. ° Awake. ° Alert. ° Oriented to time, place, and person. ° Well developed. ° Well nourished. ° Well hydrated. ° Active. ° In no acute distress.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Mood was euthymic. ° Affect was normal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

Objective

SM finds that talking to someone else has proven helpful to him. He has benefited from the classes as ASAP and believes that talking to someone else gives him some object insight and some new ideas. He requested follow up visits. SM did report that today was a good day and not all days are as good.

A/P Written by MCKENNEY, SHEELA R @ 12 Sep 2008 1408 CDT

**1. ADJUSTMENT DISORDER WITH DEPRESSED MOOD**
Procedure(s): -Social Work Individual Outpatient Counseling 75-80 Minutes x 1
**2. ALCOHOL ABUSE - IN REMISSION**
**3. visit for: military services physical***(OCCUPATIONAL EXAMINATION)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**6. AXIS IV PROBLEMS OCCUPATIONAL:** AXIS V: GAF - 85

Disposition Written by MCKENNEY, SHEELA R @ 12 Sep 2008 1411 CDT

**Released w/o Limitations**
**Follow up:** as needed in 2 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems. - Comments: SM to return for follow up on Friday 26 September 2008 @ 1000.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding. 75 minutes face-to-face/floor time..

**Signed By MCKENNEY, SHEELA R** (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 12 Sep 2008 1411

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **21 Nov 2008 1046 CST** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **BELL,KEVIN T**
Patient Status: **Outpatient**

**Reason for Appointment:** SOD
**Appointment Comments:**
Notes Entered by: BACA, KERI 21 Nov 2008 1046

keb

AutoCites Refreshed by BELL, KEVIN T @ 24 Nov 2008 1338 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

Questionnaire AutoCites Refreshed by BELL, KEVIN T @ 24 Nov 2008 1338 CST

**Questionnaires**
No Questionnaires Found.

SO Note Written by BELL,KEVIN T @ 24 Nov 2008 1338 CST

Reason for Visit

Visit for: SoD contact. Thre patient was seen today as a walk-in on the recommendation of his commander. He reportedly had a domestic Violence inscident last night where there was a physical altercation between the patient and his wife. He had reportedly struck her on the side fo her head with a plastic Baton. She is complaining of some ringing in her ears and numbness. Pt complains of increased drinking, increased irritability, pt is also reportedly struggling to find a sense of purpose in his current position. He reports he and his wife are officially separated, with both living in separate homes. No weapons reported.

Referred here

Commander.

History of present illness

The Patient is a 36 year old male. Source of patient information was patient.

High irritability and hostility toward authority figures. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, no stated intent to commit suicide, and no previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported. Turbulent and damaging interpersonal relationships and marital problems. No behavioral complaints. Impulsive behavior.

Patient not accompanied. Visit is not GWOT-related.

Review of systems

**Systemic symptoms:** General overall feeling. Feeling fine and not feeling tired (fatigue). No recent weight change and no dissatisfaction with body weight..
**Head symptoms:** No headache.
**Cardiovascular symptoms:** No chest pain or discomfort and no palpitations.
**Pulmonary symptoms:** No dyspnea and no rapid breathing.
**Gastrointestinal symptoms:** Appetite. Normal appetite. No nausea, no diarrhea, and no constipation.
**Neurological symptoms:** No neurological symptoms.

Physical findings

**Vital signs:**
° Pain level was not reported [*].
**Standard Measurements:**
° Weight was normal. ° Height was normal.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
| --- | --- |

24 Nov 2008 1007
Facility: Reynolds Army Community Hospital Ft. Sill, OK    Clinic: Mental Health    Provider: MCKENNEY, SHEELA R

Signed By MCKENNEY, SHEELA R (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 25 Nov 2008 1606

**Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII**

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| D | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| P | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **12 Sep 2008 1300 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **SPEC**
Provider: **MCKENNEY,SHEELA R**

**Reason for Appointment:**
**Appointment Comments:**
als

AutoCites Refreshed by MCKENNEY, SHEELA R @ 12 Sep 2008 1304 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE

**Active Family History**
No Active Family History Found.

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

Screening Written by MCKENNEY, SHEELA R @ 12 Sep 2008 1305 CDT
**Reason(s) For Visit (Chief Complaint):** ALCOHOL ABUSE (Follow-Up) ;

Vitals
Vitals Written by MCKENNEY, SHEELA R @ 12 Sep 2008 1305 CDT
Tobacco Use: No, Alcohol Use: Yes, Alcohol Comments: limited. SM is going through AA and ASAP and ADAP. He reports drinking 1 beer a week., Pain Scale: 0 Pain Free

SO Note Written by MCKENNEY,SHEELA R @ 12 Sep 2008 1402 CDT
Reason for Visit
Visit for: Intake.
History of present illness
The Patient is a 36 year old male. Source of patient information was patient.
Visit is GWOT-related SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. He was a combat commander.
Mood was euthymic, no fear, no high irritability, no hostility, not grieving, no hypersensitivity, no emotional lability, and no loneliness. Depression comes and goes. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, no stated intent to commit suicide, and no previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no interpersonal relationship problems. No behavioral complaints.
Patient not accompanied.
Personal history
SM reports that most of his friends have children so that typically his wife and he go places by themselves. His wife is currently attending Cameron to complete her degree in Art. SM is being supportive of her now and has had to make some sacrifices in order for her to be able to achieve her goals. He reports that she supported him when he was more actively involved in the military and he is willing to make this sacrifice for her. SM reports a feeling of less importance when he transitioned from combat commander to instructor. He feels most of his depression comes from that job change and his feeling of being somewhat unimportant and limited in abilities to access quality resources to do his current duty as well as he would like.
Behavioral history: Not under stress at this time. SM reported that when he came into clinic on SOD he had been experiencing multiple stressors. Some of those stressors have resolved and SM and his wife are getting more sleep and exercising more as a substitute to drinking. This results in SM feeling better, no tobacco use, and no self-damaging behavior.
Alcohol: Not using alcohol.
Drug use: Not using drugs.
Antisocial: No legal problems or arrests.
Habits: Sleep habits. No lack of adequate sleep SM is getting between 7-8 hours per night.
Home environment: Owns home SM is closing on a brand new home today. He reports that both his wife and he are going to

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII
FMP/SSN: 20/Redacted PII
Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No
Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:
Sponsor/SSN: DANIELS, DERRICK TORAINO/Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR

000433

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

13 Mar 2009 1133
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: Service member is separated from his wife and is facing possible legal consequences from the military for his behavior. He has made a suicidal gesture in the past. Today he complained of irritability and anger at coworkers.

Visit is GWOT-related.

High irritability. No sleep complaints, normal enjoyment of activities, no energy: normal, not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Being overly passive in a relationship, inability to communicate effectively, inability to express anger, aggressive, turbulent and damaging interpersonal relationships, and marital problems. No behavioral complaints.

Subjective

Service member reports that he considered canceling his appointment today in order to carry out job task he felt others were not stepping up to do. He acted out of character by walking away from the job of allowing others to step in and do what they needed to do and come to his appointment to take care of himself. We discussed the significance of this and the need to provide self-care which he has not done the past. Discussed natural logical consequences and his ability to use his talents and skills whether he is in the Army out of the army. Service member states that he has a long history of stuffing his emotions and not taking care of his own needs. Discussed his need to be a people pleaser.

Physical findings

**General appearance:**

° Normal.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: • Rate was rapid. • Demonstrated sound distortions.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Mood was dysthymic. • Mood was irritable. • Affect was full-ranging. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Spiritual assessment:**

° Not specified [*].

Objective

Service member is able to openly and comfortably discuss the possibility of his not remaining in the Army. Today he was irritated and able to state that if he were released from the Army today he would not be unhappy. Will continue to develop realistic approach to possible outcomes and responses. Discusses plans for the weekend, he is working on building a model.

A/P Written by DOWLING, JAMES E @ 13 Mar 2009 1148 CDT

1. **ANXIETY DISORDER NOS**: Continue individual therapy
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: Occupational problems, marital problems, financial problems GAF 61

Disposition Written by DOWLING, JAMES E @ 13 Mar 2009 1148 CDT

**Released w/o Limitations**

**Follow up:** 5 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.

60 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 13 Mar 2009 1159

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **12 Mar 2009 1346 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **PROC**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:** Risk TPC

AutoCites Refreshed by DOWLING, JAMES E @ 12 Mar 2009 1346 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

A/P Written by DOWLING, JAMES E @ 12 Mar 2009 1347 CDT

**1. ANXIETY DISORDER NOS**

Procedure(s): -Psychiat Ther Indiv Interactive Approximately 20-30 Minutes x 1

Disposition Written by DOWLING, JAMES E @ 12 Mar 2009 1349 CDT

**Released w/o Limitations**

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

12 Mar 2009 1446

**Facility:** Reynolds Army Community Hospital Ft. Sill, OK **Clinic:** Mental Health **Provider:** DOWLING, JAMES E

**Follow up:** 2 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
30 minutes face-to-face/floor time..

Note Written by DOWLING, JAMES E @ 12 Mar 2009 1349 CDT

1. Case was staffed/discussed in Risk Team Meeting on 12 March 09 .

2. SM is considered to be at High risk for dangerousness or impulsively acting out in a disruptive manner post hospitalization post suicide gesture . Per clinic SOP, SM will be evaluated weekly (high risk will be seen weekly and if moderate risk will at least be contacted weekly) to monitor progress and assess risk.

3. Will work on mood stabilization, risk reduction, impulse control and command-soldier cooperation. SM will be evaluated weekly until their risk is either stabilized or reduced sufficiently to take them off the risk tracking list.

4. Weekly contact and documentation will verify follow through.

5. Special Circumstances: none

6. SM is scheduled to return on: 13 March 09 Last seen 11 March 09

Signed By DOWLING, JAMES E (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 12 Mar 2009 1350

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
| --- | --- |

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **11 Mar 2009 0900 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:** established follow up
**Appointment Comments:**
n m

AutoCites Refreshed by DOWLING, JAMES E @ 11 Mar 2009 0953 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
| --- | --- | --- | --- | --- |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by DOWLING,JAMES E @ 11 Mar 2009 1007 CDT

Chief complaint

The Chief Complaint is: Low self-esteem.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

**11 Mar 2009 1007**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**Reason for Visit**
Visit for: This is a scheduled followup visit for individual therapy and to monitor status.

**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Service member is undergoing marital problems and is facing disciplinary action. He recently made a suicide attempt/gesture and was hospitalized. He now reports that he is feeling much better and is not suicidal. He presented with no specific complaints beyond concern over the outcome of his legal action.
Visit is GWOT-related.
Depression. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Turbulent and damaging interpersonal relationships and marital problems. No behavioral complaints.

**Subjective**
Service member states that he recently was in a training session with his brigade commander during which they discussed a new approach to training it is to be implemented in the Army. Service member states that he felt validated because the new approach more closely fits the method that he has used to train and deal with soldiers. Discussed how myths guide actions often with poor outcomes.

**Physical findings**
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was dysthymic. • Mood was depressed. • Mood was concerned. • Affect was constricted. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.
**Spiritual assessment:**
° Not specified [*].

**Objective**
Service member reports and appears to be coping well at this time. We continued to discuss the fact that the outcome of his legal action may not be to his liking and that he has the ability to overcome this and choose new directions for his life. We will teach the PAC model of behavior next session.

A/P Written by DOWLING, JAMES E @ 11 Mar 2009 1008 CDT
**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**: Continue individual therapy
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: financial problems, marital problems, occupational problems, legal problems GAF 60

Disposition Written by DOWLING, JAMES E @ 11 Mar 2009 1008 CDT
**Released w/o Limitations**
**Follow up:** 2 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 11 Mar 2009 1008

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **10 Mar 2009 1530 CDT** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** Group
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 10 Mar 2009 1530

---

prm

AutoCites Refreshed by MCKEEVER, BRAD E @ 11 Mar 2009 1042 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by MCKEEVER,BRAD E @ 11 Mar 2009 1256 CDT

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000439

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**10 Mar 2009 1630**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

Reason for Visit

Visit for: post deployment symptoms: anger/depression.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.

Visit is GWOT-related.

Not thinking about suicide noted "never" on Question 8 on OQ45, despite recent attempt, (see prior notes) and no homicidal thoughts noted "never" on Question 44 of the OQ45, addressing regretable anger, a 1 level improvement from our last session.

A/P Written by MCKEEVER, BRAD E @ 11 Mar 2009 1258 CDT

**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**

**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

Procedure(s): -Clinical Social Work Counseling Group x 1

**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**5. military deployment**

Disposition Written by MCKEEVER, BRAD E @ 11 Mar 2009 1258 CDT

**Released w/o Limitations**

**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 11 Mar 2009 1042 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality**: Cognitive Behavioral

**Presenting Problem**: Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed Safe Sleep techniques, strong focus on discussing the night terrors with spuouse, and creating and maintaining a safe environment for everyone in the home. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| /SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**10 Mar 2009 1630**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 11 Mar 2009 1259

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS ... VIOLATORS WILL BE PROSECUTED.

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **09 Mar 2009 0827 CDT** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:** walk in per Dr.Dowling
**Appointment Comments:**
Notes Entered by: MURIEL, NIXIDA 09 Mar 2009 0827

N M

AutoCites Refreshed by DOWLING, JAMES E @ 09 Mar 2009 0948 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by DOWLING,JAMES E @ 09 Mar 2009 0948 CDT

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**09 Mar 2009 0928**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

Chief complaint

The Chief Complaint is: Depression.

Reason for Visit

Visit for: This is a scheduled visit for individual therapy.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM is awaiting disciplinary action and was hospitalized for suicide attempt. He is separated from his wife.

Visit is GWOT-related.

Loneliness and depression. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Being demanding, turbulent and damaging interpersonal relationships, marital problems, and a lack of balance between leisure activities and work.

Subjective

Service member stated that most of his life he has been extremely goal oriented always working for the next level of achievement. He is never learned to take the time to stop relax and enjoy his successes. Discussed his relationship with his wife and her academic goals. He is beginning to recognize that he is critical of her and trying to guide her performance of the way he thinks it should go. Discussed his relationship with his father and his parents who appear to push him towards achievement in the academic areas but lacked confidence in him in other areas. He states that he spent much of his life working to please others and achieve goals to make others happy and is questioning what he actually wants. He did raise some issues and concerns about hissexuality. Discussed myths and particularly myths about himself which are generally negative due to his low self-esteem.

Physical findings

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: • Abnormal Slightly pressured with a mild articulation problem.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Mood was dysthymic. • Mood was depressed. • Mood was concerned. • Affect was constricted. • Affect showed worry. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No suicidal ideation. ° No suicidal plans. ° No suicidal intent. ° No homicidal tendencies.

**Spiritual assessment:**

° Not specified [*].

Objective

Service member is actively engaged in working on his therapeutic process. We'll explore critical communications, particularly critical self talk. Will present the PAC model.

A/P Written by DOWLING, JAMES E @ 09 Mar 2009 1002 CDT

**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**

Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1

**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*

**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** GAF 60

Disposition Written by DOWLING, JAMES E @ 09 Mar 2009 1002 CDT

**Released w/o Limitations**

**Follow up:** 2 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.

60 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 09 Mar 2009 1003

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | **M** | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **06 Mar 2009 1631 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **PROC**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:** Risk TPC

AutoCites Refreshed by DOWLING, JAMES E @ 06 Mar 2009 1632 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

A/P Written by DOWLING, JAMES E @ 06 Mar 2009 1632 CDT

**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**

Procedure(s): -Psychiat Ther Indiv Interactive Approximately 20-30 Minutes x 1

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

06 Mar 2009 1731

Facility: Reynolds Army Community Hospital Ft. Sill, OK  Clinic: Mental Health  Provider: DOWLING, JAMES E

Disposition Written by DOWLING, JAMES E @ 06 Mar 2009 1633 CDT

**Released w/o Limitations**

**Follow up:** 1 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
30 minutes face-to-face/floor time..

Note Written by DOWLING, JAMES E @ 06 Mar 2009 1633 CDT

1. Case was staffed/discussed in Risk Team Meeting on 5Mar09
2. SM is considered to be at High risk for dangerousness post hospitalization post suicide gesture . Per clinic SOP, SM will be evaluated weekly (high risk will be seen weekly and if moderate risk will at least be contacted weekly) to monitor progress and assess risk.
3. Will work on mood stabilization, risk reduction, impulse control and command-soldier cooperation. SM will be evaluated weekly until their risk is either stabilized or reduced sufficiently to take them off the risk tracking list.
4. Weekly contact and documentation will verify follow through.
5. Special Circumstances: none
6. SM is scheduled to return on: 9Mar09 Last seen 5Mar09

Signed By DOWLING, JAMES E (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 06 Mar 2009 1634

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **06 Mar 2009 1409 CDT** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
Notes Entered by: BACA, KERI 06 Mar 2009 1409

keb

AutoCites Refreshed by DOWLING, JAMES E @ 06 Mar 2009 1556 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

Name/SSN: **DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| Pcat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000446

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**06 Mar 2009 1509**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

SO Note Written by DOWLING,JAMES E @ 06 Mar 2009 1556 CDT
**Chief complaint**
The Chief Complaint is: Stress of awaiting disciplinary action.
**Reason for Visit**
Visit for: Scheduled walk-in visit to monitor status.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Service member is being followed closely following a suicidal ideation and gesture by cutting her lobe around his neck and housing over the rafters of the garage. He was hospitalized at red River. Service member is facing some type of disciplinary action coming through the commanding general for physical violence towards his wife and adultery.
Visit is GWOT-related.
Anxiety Mild and depression Mild. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Turbulent and damaging interpersonal relationships and marital problems. No behavioral complaints.
**Subjective**
Service member discussed lack of contact with his wife, his efforts to overcome racial prejudice in his life, and possible outcomes of the disciplinary action.
**Physical findings**
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was depressed Mildly. • Affect showed worry. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.
**Spiritual assessment:**
° Not specified [*].
**Objective**
Service there is states he feels good because he was able to compose and submit a rebuttal concerning the disciplinary action contemplative. Discussed with him variety of options with the R. making use against him emphasizing being realistic in and looking at both the worse case at this case scenarios and options under each of those headings. Service member presents as understanding the process clearly and having a realistic attitude. He also presents as being accepting of the possibility of a negative outcome and voices the realization that his wife will continue and he will have further options and opportunities available. Serzone but states that his plans for this weekend is to work on building a model which would give him something to do with his hands and keep in March. We will see him on Monday moming and again on a scheduled appointment Wednesday.

A/P Written by DOWLING, JAMES E @ 06 Mar 2009 1604 CDT
1. **ADJUSTMENT DISORDER WITH DEPRESSED MOOD**: Continue to monitor and provided due to therapy
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 20-30 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: GAF 61

Disposition Written by DOWLING, JAMES E @ 06 Mar 2009 1605 CDT
**Released w/o Limitations**
**Follow up:** 3 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
30 minutes face-to-face/floor time..

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

... PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS ... WILL BE PROSECUTED.

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

06 Mar 2009 1509

Facility: Reynolds Army Community Hospital Ft. Sill, OK  Clinic: Mental Health  Provider: DOWLING, JAMES E

Signed By DOWLING, JAMES E (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 06 Mar 2009 1605

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **06 Mar 2009 1311 CDT** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** group
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 06 Mar 2009 1311

prm

AutoCites Refreshed by MCKEEVER, BRAD E @ 06 Mar 2009 1512 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

06 Mar 2009 1412

F[illegible]y: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

SO Note Written by MCKEEVER,BRAD E @ 06 Mar 2009 1512 CDT

Reason for Visit

Visit for: post deployment symptoms: anger/depression.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.

Visit is GWOT-related.

Not thinking about suicide noted "never" on Question 8 on OQ45, despite recent attempt, (see prior notes) and no homicidal thoughts noted "rarely" on Question 44, addressing regretable anger.

A/P Written by MCKEEVER, BRAD E @ 06 Mar 2009 1515 CDT

**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**

**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

Procedure(s): -Clinical Social Work Counseling Group x 1

**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**5. military deployment**

Disposition Written by MCKEEVER, BRAD E @ 06 Mar 2009 1515 CDT

**Released w/o Limitations**

**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 06 Mar 2009 1512 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality**: Cognitive Behavioral

**Presenting Problem**: Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed Positive Scanning, part II. Strong focus on using cognitive process over ingrained fear, with self directed gradual desentization tech. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

06 Mar 2009 1412

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 06 Mar 2009 1516

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **05 Mar 2009 1614 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **ACUT**
Provider: **JOHNSON,DEBRA A**

**Reason for Appointment:**
**Appointment Comments:**
Notes Entered by: BACA, KERI 05 Mar 2009 1614
---------------------------
keb

AutoCites Refreshed by JOHNSON, DEBRA ANN @ 06 Mar 2009 1025 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

... PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS ... PROSECUTED

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

05 Mar 2009 1715

Facility: Reynolds Army Community Hospital Ft. Sill, OK  Clinic: Mental Health  Provider: JOHNSON, DEBRA ANN

Screening Written by JOHNSON, DEBRA ANN @ 06 Mar 2009 1328 CDT
**Reason(s) For Visit (Chief Complaint):** DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS) (Follow-Up) ;

**Vitals**
Vitals Written by JOHNSON, DEBRA ANN @ 06 Mar 2009 1328 CDT
Tobacco Use: No, Alcohol Use: Yes, Pain Scale: 0 Pain Free
**Comments:** There is no need for a nutrition consult. He is in the ASAP program and alcohol has been a problem for him. He will resume the ASAP program now that he is out of Red River.

SO Note Written by JOHNSON,DEBRA A @ 06 Mar 2009 1025 CDT
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Derrick is a 36 year old afro amercian Cpt.

A/P Written by JOHNSON, DEBRA ANN @ 06 Mar 2009 1336 CDT
**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS):** Axis II no diagnosis
Axis III none
Axis IV social evrionment, occupatiional, marital problem
Axis V 60
Procedure(s): -Social Work Individual Outpatient Counseling 45-50 Minutes x 1
Patient Instruction(s): -Psychiatric Therapy Approach Cognitive Behavioral

Disposition Written by JOHNSON, DEBRA ANN @ 06 Mar 2009 1339 CDT
**Released w/o Limitations**
**Follow up:** 1 day(s) for therapy 45 in the MENTAL HEALTH clinic or sooner if there are problems. - Comments: appointment with Debra Johnson, LCSW on 6 March 09
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
45 minutes face-to-face/floor time..

Note Written by JOHNSON, DEBRA ANN @ 06 Mar 2009 1339 CDT
Purpose of Visit: walk in for Risk check/Therapy
Length of Session: 45min
Referral Source: out of Red River Hosptial ongoing monitoring for risk.
Voluntary: Yes
Symptoms: not presently suicidal and reports increased mood since release from Red River, called ASAP as patient had indicated he would resume therapy with them, they have not seen him in this short period he has been out of the hospital and will give him a call to begin participation once more.
Content of Session: mainly discussed his humiliation for the UCMJ action, he is looking at all the positives he has done in his career and is trying not to dwell on his mistakes as much. Seeing himself handling the situation. Discussed the relationship and the need for marriage counseling. Signed him up for marriage counseling at SWS they did an Intake on the telephone and will call him with an appointment hopefully next week. He has known his wife since she was 14 and he 17, they have a long history together.
Mental Status Exam: Mood was depressed. Affect was congruent with mood. Language was normal with regards to rate, tone and flow. Attention, concentration and judgment were good. Language was normal with regard to fluency and comprehension. Thought process and content were within normal limits. Insight is good. Denied suicidal or homicidal ideation or plan.
Risk Assessment/Capacity: High. At the current time this patient is considered fully competent to be discharged to his own custody and does contitute an imminent danger to himself. He is considered high risk due to protocol and will be followed weekly if not daily to monior this. The patient understands the treatment Plan. The patient does possess the capacity to make medical decisions.
Treatment Plan: Follow up with Dr. Dowling.
cognitive behavioral therapy to decrease depressive symptoms

**Signed By JOHNSON, DEBRA ANN** (LCSW, Reynolds Army Community Hospital Ft. Sill, OK) @ 06 Mar 2009 1419

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

Patient: **DANIELS, DERRICK TORAINO** Date: **04 Mar 2009 1555 CDT** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **JOHNSON,DEBRA A**
Patient Status: **Outpatient**

**Reason for Appointment:** SOD
**Appointment Comments:**
Notes Entered by: BACA, KERI 04 Mar 2009 1555

keb

AutoCites Refreshed by JOHNSON, DEBRA ANN @ 05 Mar 2009 1027 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**04 Mar 2009 1656**
**F[illegible]y: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: JOHNSON, DEBRA ANN**

**Screening** Written by JOHNSON, DEBRA ANN @ 04 Apr 2009 2240 CDT
**Reason(s) For Visit (Chief Complaint):** DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS) (Follow-Up) ;

**Vitals**
**Vitals** Written by JOHNSON, DEBRA ANN @ 04 Apr 2009 2240 CDT
Tobacco Use: No, Alcohol Use: Yes, Pain Scale: 0 Pain Free
**Comments:** There is no need for a nutrition consult. He is in the ASAP program and alcohol has been a problem for him. He does not smoke.

**SO Note** Written by JOHNSON,DEBRA A @ 05 Mar 2009 1027 CDT
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Derrick Daniels is a 36 year old afro american Cpt.

**A/P** Written by JOHNSON, DEBRA ANN @ 04 Apr 2009 2242 CDT
**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**
Procedure(s): -Social Work Individual Outpatient Counseling 45-50 Minutes x 1
Patient Instruction(s): -Psychiatric Therapy Approach Cognitive Behavioral

**Disposition** Written by JOHNSON, DEBRA ANN @ 04 Apr 2009 2243 CDT
**Released w/o Limitations**
**Follow up:** as needed in the MENTAL HEALTH clinic.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
45 minutes face-to-face/floor time..

**Note** Written by JOHNSON, DEBRA ANN @ 04 Apr 2009 2243 CDT
Purpose of Visit: walk in for Risk Check/Therapy
Length of session: 45 min
Referral Source out of Red River hospoital ongoing monitoring for risk.
Voluntary: yes
Symtoms: not presently suicidal and reports increaseed mood since release from Red River. He is attempting not to dwell on his mistakes. Discussed the relationship and need for marriage counseling. making progress.
Mental Status Exam: Mood was depressed. Affect was congruent with mood. Language was normal with regard to rate, tone and flow. Attention, concentration and judgment were good. Language was normal with regard to fluency and comprehension. Thought process and content were within normal limits. Insight is good. Denied suicidal or homicidal ideation or plan.
Risk Assessment/Capacity: High. At the current time this patient is considered fully competent to be discharged to his own custody and does constitute an imminent danger to himself. He is considered high risk due to protocol and will be followed weekly if not daily to monitor this. The patient understands the treatment plan. The patient does possess the capacity to make medical decsisions.
Treatment Plan:Follow up in mental health Clinic
Cognitive behavioral therapy to decrease depressive symptoms

**Signed By JOHNSON, DEBRA ANN** (LCSW, Reynolds Army Community Hospital Ft. Sill, OK) @ 04 Apr 2009 2252

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **03 Mar 2009 1428 CDT** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** anger management
**Appointment Comments:**
Notes Entered by: BACON, LIZELDA K 03 Mar 2009 1428

lkb

AutoCites Refreshed by MCKEEVER, BRAD E @ 03 Mar 2009 1545 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**03 Mar 2009 1529**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

**SO Note** Written by MCKEEVER,BRAD E @ 03 Mar 2009 1549 CDT
**Reason for Visit**
Visit for: post deployment symptoms: anger/depression.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.
Not thinking about suicide noted "never" on Question 8 on OQ45, despite recent attempt, (see prior notes) and no homicidal thoughts noted "rarely" on Question 44, addressing regretable anger.

**A/P** Written by MCKEEVER, BRAD E @ 03 Mar 2009 1558 CDT
**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. military deployment**

**Disposition** Written by MCKEEVER, BRAD E @ 03 Mar 2009 1558 CDT
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

**Note** Written by MCKEEVER, BRAD E @ 03 Mar 2009 1546 CDT
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed The Addiction of Anger, focus on long term cost of anger reactions strongly outweights short term gains, and the counterproductive nature of "venting". (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

03 Mar 2009 1529
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

**Signed By** MCKEEVER, BRAD E (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 03 Mar 2009 1559

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **03 Mar 2009 1352 CDT** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:** walk in per Dr. Dowling
**Appointment Comments:**
Notes Entered by: MURIEL, NIXIDA 03 Mar 2009 1352

N M

AutoCites Refreshed by DOWLING, JAMES E @ 05 Mar 2009 1641 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**03 Mar 2009 1453**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**SO Note** Written by DOWLING,JAMES E @ 05 Mar 2009 1645 CDT

**Chief complaint**
The Chief Complaint is: Depression and anxiety.

**Reason for Visit**
Visit for: Scheduled followup visit for individual therapy and monitoring.

**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Service members being followed closely following hospitalization for suicidal ideation.
Visit is GWOT-related.
Anxiety and depression. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, no stated intent to commit suicide, and no previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Turbulent and damaging interpersonal relationships and marital problems. No behavioral complaints At this time.

**Subjective**
Service member states that today he is "feeling pretty good". He states that he has begun to learn to open up to others about some of his childhood abuse and other issues. States that he is beginning to enjoy talking in groups and feels that he is able to help other people by sharing his story. We discussed his options for the future and discussed the fact that he may not be able to remain in the Army and discussed what he could do if he were to get out of the army.

**Physical findings**
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was dysthymic. • Mood was unhappy. • Mood was anxious. • Affect was abnormal. • Affect showed worry.
° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° Insight was intact. ° No suicidal tendency. ° No homicidal tendencies.
**Spiritual assessment:**
° Not specified [*].

**Objective**
Service member reports he is doing well and he appears to be doing well at this time due to the risk factors involved however he will continue to be monitored closely. We'll continue to help him look at his situation realistically.

**A/P** Written by DOWLING, JAMES E @ 05 Mar 2009 1644 CDT
1. **ANXIETY DISORDER NOS**: Continue individual therapy and monitor daily to keep track of his current status
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: GAF 60

**Disposition** Written by DOWLING, JAMES E @ 05 Mar 2009 1645 CDT
**Released w/o Limitations**
**Follow up:** 1 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems. - Comments: Monitor daily until further notice
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 05 Mar 2009 1652

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **02 Mar 2009 1619 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **ACUT**
Provider: **JOHNSON,DEBRA A**

**Reason for Appointment:** SOD
**Appointment Comments:**
Notes Entered by: BACA, KERI 02 Mar 2009 1619

keb

AutoCites Refreshed by JOHNSON, DEBRA ANN @ 02 Mar 2009 1641 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**02 Mar 2009 1719**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: JOHNSON, DEBRA ANN**

Screening Written by JOHNSON, DEBRA ANN @ 02 Mar 2009 1641 CDT

**Reason(s) For Visit (Chief Complaint):** DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS) (Follow-Up) ;

**Vitals**

Vitals Written by JOHNSON, DEBRA ANN @ 02 Mar 2009 1641 CDT

Tobacco Use: No, Alcohol Use: Yes, Pain Scale: 0 Pain Free

**Comments:** There is no need for a nutrition consult. He is in the ASAP program and alxohol has been a problem to him. He will resume the ASAP program since he is now out of Red River.

SO Note Written by JOHNSON,DEBRA A @ 02 Mar 2009 1643 CDT

**History of present illness**

The Patient is a 36 year old male.

He reported: Encounter Background Information: Derrick Daniels is a 36 year old Capt. who came in as an Sod walkin to CMHS after being discharged from Red River Hospital. He has been followed regularly by Dr.Brandon who is on sick leave presently, soldier will be followed for risk and has been asked to check in with SOD on Thursday and Friday and will be seen by writer on Monday 2 March 09. Spoke to his commander and outlined the mental health plan, Lt Col. Talcott agreed that the unit would keep an eye him over the weekend. Patient is on a regimen of 100mg. of Zoloft dailyand Ambien 10 mg. as needed for sleep..

A/P Written by JOHNSON, DEBRA ANN @ 02 Mar 2009 1645 CDT

**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS):**

Axis II no diagnosis
Axis III none
Axis IV social environment, occupational
Axis V 60

Procedure(s): -Social Work Individual Outpatient Counseling 45-50 Minutes x 1
Patient Instruction(s): -Psychiatric Therapy Approach Cognitive Behavioral

Disposition Written by JOHNSON, DEBRA ANN @ 02 Mar 2009 1646 CDT

**Released w/o Limitations**

**Follow up:** 1 day(s) for therapy 30 in the MENTAL HEALTH clinic or sooner if there are problems. - Comments: appointment with Dr Dowling tomorrow as a walk in

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding. 30 minutes face-to-face/floor time..

Note Written by JOHNSON, DEBRA ANN @ 02 Mar 2009 1646 CDT

Purpose of Visit: SOD walk in
Length of Session: 30 min
Referral Source: out of Red River Hopstial and has been seen x3 SOD for continued monitoring
Voluntary : yes
Symptoms: not presently suicidal, still with depressive symptoms but his depression is better in the last few days according to patient.
Content of Session: Beginning to accept the fact that he has done some good things as a soldier after talking with his Sgt. Major and the people he has seen SOD. He is now deciding he can express himself, states he went to a suicide prevention class and fealt they were discussing him, but that can change and he does not have to be a statistic.
Mental Status Exam: Affect was appropriate. Mood was less depressed than on past visits. Language was normal with regard to rate, tone and flowl.l Attention, concentration and judgment were good. Language was noraml with regards to fluency and comprehension. Thought proces and content were within normal limits. Insight is good. Denied suicidal or homicidal ideation or plan.
Risk Assessment/ Capacity: High. At the current time this patient is considered fully competent to be discharged to his own custody and does not constitute an imminent danger to himself or others. He is considered high risk due to protocol and will be followed weekly if not daily to monitor this. The patient understands the treatment plan. The patient does possess the capacity to make medical decisions.
Treatment Plan: follow up with Dr. Dowling, PhD. tomorrow
cognitive behavioral therapy to decrease depression and PTSD symptoms

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**CHRONOLOGICAL RECORD OF MEDICAL CARE**

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS ... LAW. VIOLATORS WILL BE PROSECUTED.

STANDARD FORM 600 (REV. 5
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

02 Mar 2009 1719

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: JOHNSON, DEBRA ANN

Signed By JOHNSON, DEBRA ANN (LCSW, Reynolds Army Community Hospital Ft. Sill, OK) @ 02 Mar 2009 1700

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **02 Mar 2009 0849 CDT** Appt Type: **T-CON***
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Telephone Consult:** Command contact

AutoCites Refreshed by DOWLING, JAMES E @ 02 Mar 2009 0849 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

A/P Written by DOWLING, JAMES E @ 02 Mar 2009 0853 CDT

1. ANXIETY DISORDER NOS

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS ... VIOLATORS WILL BE PROSECUTED.

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**02 Mar 2009 0949**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**Disposition** Written by DOWLING, JAMES E @ 02 Mar 2009 0853 CDT

**Note** Written by DOWLING, JAMES E @ 02 Mar 2009 0853 CDT

**Provider Telecon Note**

0850 today spoke with LTC Talcot, Cpt Daniels' BN CMDR. Cmdr stated that he had seen Cpt Daniels this morning, unit had watched the mandated antisuicide video. Cmdr interested in what Cpt thought of it since the Cpt has had SI. Good suggestion, I will followup on it. Told LTC I would keep in contact with him.

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 02 Mar 2009 0853

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **01 Mar 2009 0554 CST** Appt Type: **PROC**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DODD,DAVID S**
Patient Status: **Outpatient**

**Reason for Appointment:** HIGH RISK TPC TEAM CONFERENCE MEETING
**Appointment Comments:**
Notes Entered by: DODD, DAVID S 01 Mar 2009 0554

------------------------

Dr. Dowling is handling this case. The case was discussed in TPC as well as several times Iraq the week. Dr. Dowling has spoke with command regarding the risk issues. That should be documented in his notes the service member remains on high risk per protocol as he has recently been discharged from the hospital. He had a plan to hang himself and actually partially implemented a plan by tying a rope often putting it around his neck but then decided not to jump this was prior to his hospitalization. Because of family issues where he separated from his spouse and because of the ongoing legal problems at he is encountered with the pending letter of reprimand from the commander of the post, his wrists to remains high especially if he does not feel that he can manage outside the military. This has been discussed in detail with Dr. Dowling and he has investigated this fairly closely with the service member trying to determine if the service member has unreasonable expectations. Finally we discussed this provider going in with Dr. Dowling next week when the patient comes in and discussing the difference a perception between what he gave Dr. Dowling and this provider the goal is to somewhat inoculated and in case it turns out that he has to get out of the military and yet building hope and coping skills. So was above discussed in TPC remains on high risk the patient will come in this next week at least one time and see Dr. Dowling.

AutoCites Refreshed by DODD, DAVID S @ 01 Mar 2009 0559 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

01 Mar 2009 0658
Facility: Reynolds Army Community Hospital Ft. Sill, OK    Clinic: Mental Health    Provider: DODD, DAVID S

**Active Family History**
- Heart disease

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

Screening Written by DODD, DAVID S @ 01 Mar 2009 0559 CST
**Reason(s) For Visit (Chief Complaint):** SUICIDE ATTEMPT - HANGING (Follow-Up) : as stated previously. Attempt was in mid February see other all Altha notes.;

SO Note Written by DODD,DAVID S @ 01 Mar 2009 0559 CST
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: As above.

A/P Written by DODD, DAVID S @ 01 Mar 2009 0600 CST
**1. visit for: administrative purpose**
**2. ALCOHOL ABUSE**
**3. DEPRESSION**

Disposition Written by DODD, DAVID S @ 01 Mar 2009 0600 CST
**Released w/o Limitations**
**Follow up:** as needed . - Comments: As above
120 minutes face-to-face/floor time..

**Signed By DODD, DAVID S** (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 01 Mar 2009 0601

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **27 Feb 2009 1550 CST** Appt Type: **T-CON***
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Telephone Consult:** Coordinate with Command

AutoCites Refreshed by DOWLING, JAMES E @ 27 Feb 2009 1551 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

A/P Written by DOWLING, JAMES E @ 27 Feb 2009 1553 CST

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**27 Feb 2009 1651**

**F[illegible]ity: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**

**Disposition** Written by DOWLING, JAMES E @ 27 Feb 2009 1553 CST

**Note** Written by DOWLING, JAMES E @ 27 Feb 2009 1553 CST

**Provider Telecon Note**

Placed call to LTC to consult, he is not available. Left a message on his machine is stating that I would like to speak to him concerning Capt. Daniels and Capt. Daniels plans for the weekend.Placed call at about 1510 hrs.

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 27 Feb 2009 1553

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | **M** | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | **20/**Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **27 Feb 2009 1544 CST**
Clinic: **MENTAL HEALTH**

Appt Type: **T-CON***
Provider: **DOWLING,JAMES E**

**Reason for Telephone Consult:** Risk Followup

AutoCites Refreshed by DOWLING, JAMES E @ 27 Feb 2009 1545 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

A/P Written by DOWLING, JAMES E @ 27 Feb 2009 1550 CST

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

FMP/SSN: 20/Redacted PII
DOB: Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:

Sponsor/SSN: DANIELS, DERRICK TORAINO/Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

27 Feb 2009 1645
Facility: Reynolds Army Community Hospital Ft. Sill, OK   Clinic: Mental Health   Provider: DOWLING, JAMES E

1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

Disposition Written by DOWLING, JAMES E @ 27 Feb 2009 1550 CST

Note Written by DOWLING, JAMES E @ 27 Feb 2009 1550 CST
**Provider Telecon Note**
Called service member to remind him to come see me this afternoon, he stated that he had already been to CMHS this afternoon and had been interviewed by the SOD. Asked him what he was going to do this weekend and he stated that after talking with his defense counsel he was going to work on revising his communication to the general. He also stated he planned to watch the Laker's basketball game with a friend (Maj. Dexter Brookings). He also stated that he was going to go to a store to get comic books as he has enjoyed looking at and drawing comics himself. I will meet with him on Monday.

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 27 Feb 2009 1550

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **27 Feb 2009 1357 CDT** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **HAMMOND,LINDA K**
Patient Status: **Outpatient**

**Reason for Appointment:** walk in per Dr.Dowling
**Appointment Comments:**
Notes Entered by: MURIEL, NIXIDA 27 Feb 2009 1357

---

N M

AutoCites Refreshed by HAMMOND, LINDA K @ 02 Mar 2009 1420 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**27 Feb 2009 1502**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: HAMMOND, LINDA K**

A/P Written by HAMMOND, LINDA K @ 02 Mar 2009 1607 CDT
**1. ALCOHOL ABUSE**
Procedure(s): -Social Work Individual Outpatient Counseling 45-50 Minutes x 1

Disposition Written by HAMMOND, LINDA K @ 02 Mar 2009 1608 CDT
**Released w/o Limitations**
**Follow up:** in the MENTAL HEALTH clinic. - Comments: SM to f/u with Dr. Dowling who is his reg. provider
45 minutes face-to-face/floor time..

Note Written by HAMMOND, LINDA K @ 02 Mar 2009 1420 CDT
SOD High Risk SM
SM denied SI/HI/Hallucinations. He does not present as a risk. He reports his mood as "pretty good" . Nutrition good; no pain. Plans for this week-end: spend time at friend's house watching Basketball games.
His affect appeared cheerful, mood good, insight and judgment improving. motor activity WNL, Thought processes appeared WNL, speech logical and coherent; session behavior friendly;posture relaxed; attitude cooperative.

**Signed By HAMMOND, LINDA K** (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 02 Mar 2009 1608

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **26 Feb 2009 1600 CST** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:** F/U PER DR DOWLING
**Appointment Comments:**
mmh

AutoCites Refreshed by DOWLING, JAMES E @ 27 Feb 2009 1145 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**26 Feb 2009 1642**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

SO Note Written by DOWLING,JAMES E @ 27 Feb 2009 1148 CST

Chief complaint

The Chief Complaint is: Worry about his future in the Army and depression.

Reason for Visit

Visit for: Scheduled followup visit for individual therapy and risk monitoring.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: He reported: Encounter Background Information: The service member is experiencing turmoil and difficulties in many areas of his life. He is facing disciplinary action through the Army channels, he is separated from his wife and has a conflicted relationship with her. Approximately 2 weeks ago service member made a suicide gesture by fixing a rope to a rafter and around his neck butdecided not to hang himself. He spent 11 days in a psychiatric hospital and has been released back to Fort sill. He complains of the difficulties he is undergoing and he is unhappy that he is under a no contact order to stay away from his wife.

Visit is GWOT-related.

Anxiety and depression. No sleep complaints. Anhedonia. No energy: normal, not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Being overly passive in a relationship, inability to communicate effectively, turbulent and damaging interpersonal relationships, marital problems, and impulsive behavior.

Subjective

Service member described aspects of his relationship with his wife and the difficulties. Discussed options open to him including best and worst case scenarios. Service member states he is to meet with his defense counsel tomorrow to review his rebuttal statement to be submitted to the commanding general. Service member states that due to the poor relationship with his wife he came to feel alone and hopeless which is quite difficult for him as he is a "people pleaser". Discussed his low self-esteem and racial prejudice issues.

Physical findings

**General appearance:**

° Normal.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: • Abnormal. • Articulation abnormalities.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Behavior demonstrated psychomotor restlessness. • Mood was dysthymic. • Mood was depressed. • Mood was despairing. • Mood was fearful. • Mood was anxious. • Affect was abnormal. • Affect showed worry. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency voiced at this time. ° No homicidal tendencies.

**Spiritual assessment:**

• Spiritual assessment [*]. • Faith provides strength and comfort.

Objective

Service member expressed a positive and hopeful attitude which appear to be genuine. Discussed a range of outcomes including the worst case and other more positive possibilities. Will see him tomorrow and discuss plans for the weekend.

A/P Written by DOWLING, JAMES E @ 27 Feb 2009 1147 CST

1. **DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**: Continue individual therapy, monitor daily
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II**(*OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III**(*OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: GAF 50

Disposition Written by DOWLING, JAMES E @ 27 Feb 2009 1201 CST

**Released w/o Limitations**

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 27 Feb 2009 1202

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

26 Feb 2009 1642
[illegible]ity: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

Patient: **DANIELS, DERRICK TORAINO** Date: **26 Feb 2009 1155 CST** Appt Type: **PROC**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:** Risk TPC

AutoCites Refreshed by DOWLING, JAMES E @ 26 Feb 2009 1156 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

A/P Written by DOWLING, JAMES E @ 26 Feb 2009 1202 CST

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**26 Feb 2009 1255**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 20-30 Minutes x 1
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** GAF 50

**Disposition** Written by DOWLING, JAMES E @ 26 Feb 2009 1203 CST
**Released w/o Limitations**
**Follow up:** 1 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
30 minutes face-to-face/floor time..

**Note** Written by DOWLING, JAMES E @ 26 Feb 2009 1156 CST

1. Case was staffed/discussed in Risk Team Meeting on 26Feb09.

2. SM is considered to be at High risk for dangerousness or impulsively acting out in a disruptive manner post hospitalization post suicide gesture. Per clinic SOP, SM will be evaluated weekly (high risk will be seen weekly and if moderate risk will at least be contacted weekly) to monitor progress and assess risk.

3. Will work on mood stabilization, risk reduction, impulse control and command-soldier cooperation. SM will be evaluated weekly until their risk is either stabilized or reduced sufficiently to take them off the risk tracking list.

4. Weekly contact and documentation will verify follow through.

5. Special Circumstances: maintain close communication with command.

6. SM is scheduled to return on: 26Feb09 Last seen 25Feb09

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 26 Feb 2009 1203

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **26 Feb 2009 1055 CST** Appt Type: **T-CON***
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Telephone Consult:** Coordinate with command

AutoCites Refreshed by DOWLING, JAMES E @ 26 Feb 2009 1057 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

A/P Written by DOWLING, JAMES E @ 26 Feb 2009 1058 CST

**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNKI (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

26 Feb 2009 1156
[illegible]ity: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

Disposition Written by DOWLING, JAMES E @ 26 Feb 2009 1058 CST

Note Written by DOWLING, JAMES E @ 26 Feb 2009 1058 CST
**Provider Telecon Note**
On 25 February Lieut. Col. Talcott to discuss service members status. COL Talcott reported that there were no behavior problems noted on the job stated that the service member can put on a front that may not reflect accurately how he feels. Informed COL Talcott that I would stay in touch with him concerning service members condition.

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 26 Feb 2009 1058

**[illegible]me/SSN: DANIELS, DERRICK TORAINO/Redacted PII**

FMP/SSN: 20/Redacted PII
DOB: Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:

Sponsor/SSN: DANIELS, DERRICK TORAINO/Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

Patient: **DANIELS, DERRICK TORAINO** Date: **25 Feb 2009 1343 CST** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **JOHNSON,DEBRA A**
Patient Status: **Outpatient**

**Reason for Appointment:** Risk Team Meeting note

AutoCites Refreshed by JOHNSON, DEBRA ANN @ 25 Feb 2009 1344 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

Screening Written by JOHNSON, DEBRA ANN @ 25 Feb 2009 1344 CST
**Reason(s) For Visit (Chief Complaint):** DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS) (Follow-Up) ;

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

FMP/SSN: 20/Redacted PII Sex: M Sponsor/SSN: DANIELS, DERRICK TORAINO/Redacted PII
DOB: Redacted PII Tel H: Redacted PII Rank: CAPTAIN
PCat: A11.1 USA ACTIVE DUTY OFFICER Tel W: 229-518-4204 Unit: WAQNK1 (0003 AR HQ 01 DET K1)
CS: Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
MC Status: TRICARE PRIME (ACTIVE DUTY) Status: PCM: SANTORY-ORTIZ,JULIO
Insurance: No Tel. PCM: 912 435-5594

CHRONOLOGICAL RECORD OF MEDICAL CARE STANDARD FORM 600 (REV. 5)

000481

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

25 Feb 2009 1444
[Facil]ity: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: JOHNSON, DEBRA ANN

A/P Written by JOHNSON, DEBRA ANN @ 25 Feb 2009 1345 CST
**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS):**

Disposition Written by JOHNSON, DEBRA ANN @ 25 Feb 2009 1346 CST
**Released w/o Limitations**
**Follow up:** 1 day(s) for therapy 30 in the MENTAL HEALTH clinic or sooner if there are problems. - Comments: to check in with the SOD Thurs.& Fri. and with Debra Johnson, LCSW on Monday
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
15 minutes face-to-face/floor time:.

Note Written by JOHNSON, DEBRA ANN @ 25 Feb 2009 1346 CST
CMHS Risk Team Meeting Note:
1. Case was discussed in Risk Team Meeting as someone who is at High Risk when he comes out of the hospital. Discharged from the hospital on 24 Feb. 09 came in to see the SOD on that day with follow up to happen with the SOD and provider Debra Johnson, LCSW on Monday 2 March 09.
2. Soldier is considered to be at High risk for self harm. He denied any suicidal or homicidal ideation or plan in our visit today.
3. Per clinic SOP Capt Daniels will be evaluated weekly to moniot progress and assess risk
4. Capt. Daniels will be evaluated at least weekly until his risk is either tabilized or reduced sufficiently to take him off the risk list.
5. His command has offered to provide some social outlets on the week-ends.
6 Will work on mood stabilization, risk reduction,, impulse control and command-soldier cooperation.
7. Soldier is cheduled to return Thurs. and Fri this week to see the SOD and has an appointment with Debra Johnson, LCSW on 2 March 09 @ 8:30am.

**Signed By JOHNSON, DEBRA ANN** (LCSW, Reynolds Army Community Hospital Ft. Sill, OK) @ 25 Feb 2009 1356

**[N]ame/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

Patient: **DANIELS, DERRICK TORAINO** Date: **25 Feb 2009 1334 CST** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:** SOD
**Appointment Comments:**
Notes Entered by: BACA, KERI 25 Feb 2009 1334
---------------------------
keb

AutoCites Refreshed by DOWLING, JAMES E @ 26 Feb 2009 1034 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 | NR | 24 Feb 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

25 Feb 2009 1434
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

Vitals
Vitals Written by DOWLING, JAMES E @ 26 Feb 2009 1052 CST
Alcohol Use: Yes, Pain Scale: 0 Pain Free
**Comments:** Service and he reports that in the past he drank 3 beers per week, he states he is not drinking any alcohol at this time but he is enrolled in the ASAP program.

SO Note Written by DOWLING,JAMES E @ 26 Feb 2009 1154 CST
Chief complaint
The Chief Complaint is: Depression and unhappiness over not being able to contact his wife.
Reason for Visit
Visit for: This was an unscheduled walk-in visit for the SOD as directed by Ms. Johnson.
History of present illness
The Patient is a 36 year old male.
He reported: Encounter Background Information: The service member is experiencing turmoil and difficulties in many areas of his life. He is facing disciplinary action through the Army channels, he is separated from his wife and has a conflicted relationship with her. Approximately 2 weeks ago service member made a suicide gesture by fixing a rope to a rafter and around his neck butdecided not to hang himself. He spent 11 days in a psychiatric hospital and has been released back to Fort sill. He complains of the difficulties he is undergoing and he is unhappy that he is under a no contact order to stay away from his wife.
Visit is GWOT-related.
Depression. No sleep complaints. Anhedonia and energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Turbulent and damaging interpersonal relationships and marital problems. No behavioral complaints.
Subjective
Service member reported some events from his past that he feels have an impact on his current situation and behavior. He reported experiencing sexual abuse at the hands and older cousin when he was about 12 or 13 years of age. He states that he has struggled with overcoming racial prejudices. He reports that his wife also has problems with depression and had been abused physically by her mother and sexually by her brother-in-law. Service member reported that there had been adultery and assault in his marriage. He states that he now feels that the divorce would be best for him and his wife.
Physical findings
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was dysthymic. • Mood was unhappy. • Mood was depressed. • Affect was abnormal. • Affect was constricted. • Affect showed worry. • Impaired insight. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Affect was congruent with the mood. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° No suicidal tendency. ° No suicidal ideation. ° No suicidal plans. ° No suicidal intent. ° No homicidal tendencies.
**Spiritual assessment:**
• Faith provides strength and comfort. • Concerns about death and the afterlife were expressed.
Objective
Service member presents as open and gregarious which may mask other issues. He denies any intent harm himself at this time. He will be monitored closely for the foreseeable future. Given his current circumstance and per clinic SOP the service member will be followed as high risk for the next 4 weeks, he will be seen least once weekly but for now will be seen daily, communication will be maintained with his command, LT COL Talcott(580-917-6390).

A/P Written by DOWLING, JAMES E @ 26 Feb 2009 1051 CST
1. **DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS):** Monitor daily for the time being.
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 20-30 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

25 Feb 2009 1434
ty: Reynolds Army Community Hospital Ft. Sill, OK  Clinic: Mental Health  Provider: DOWLING, JAMES E

4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** Occupational problems, legal problems, marital problems, financial problems GAF 50

Disposition Written by DOWLING, JAMES E @ 26 Feb 2009 1051 CST
**Released w/o Limitations**
**Follow up:** 1 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
30 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 26 Feb 2009 1155

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Inpatient**

Date: **24 Feb 2009 1525 CST**
Clinic: **PSYCHIATRY CLINIC**
Inpatient Location: **YYYA**

Appt Type: **ACUT**
Provider: **BURGESS,CHARLES D**

**Reason for Appointment:**

AutoCites Refreshed by BURGESS, CHARLES D @ 24 Feb 2009 1532 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 20 Jan 2009 |

SO Note Written by BURGESS,CHARLES D @ 24 Feb 2009 1532 CST

**Reason for Visit**

Visit for: Visit for: medication refill and for medication reconciliation and referred by SOD ,Ms Debra Johnson as pt just returned form Red River today with prescritpions written by Bryan Wieck, M.D. for Zoloft 100 mg daily and Ambien 10 mg hs prn insomnia.

**History of present illness**

The Patient is a 36 year old male. Source of patient information was patient Ms Johnsonn, AHLTA records and personal evaluation.

Visit is GWOT-related.

**Name/SSN: DANIELS, DERRICK TORAINO**/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

24 Feb 2009 1625
**ty: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Psychiatry Clinic Provider: BURGESS, CHARLES D**

Anxiety relieved by medication, middle-night awakening and having a cigarette, early morning awakening, and nonrestorative sleep. No nightmares. No decreased need for sleep, not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt previous attempt as recorded by Dr. Dodd after pt was brought to Emergency Department on 13th February after trying to hang himself in his wife's garage and marital problems not resolved but pt and wife are living in separate houses here in Lawton, but on opposite sides of town.

Physical findings

**General appearance:**
° Normal.

**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**
• Attitude was abnormal. • Attitude was guarded. • Mood was dysthymic. ° Appearance was normal dressed appropiately in civilian Clothes. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Affect was congruent with the mood. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Spiritual assessment:**
• Spiritual assessment [*]. • Faith provides strength and comfort.

A/P Written by BURGESS, CHARLES D @ 24 Feb 2009 1615 CST
**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS):** Axis I: Dysthymic disorder (Depressive Neurosis)
Axis I: Adjustment Insomnia
Axis II: Diagnosis Deferred
Axis III: diagnosis Deferred on Axis III
Axis IV: condition is GWOT-Related and Post-deployment related
Axis V: Current GAF: 65
Treatment Plan: Safety Assessment: Pt currently denies any suicidal ideas and denie any homocidal ideation and denies accessiblity to weapons.
Medications reconciled. He has a prescriotion for sertaline 100 mg daily in Pharmacy ordered by Dr. tomlinson. this is renewed and he is given small Rx of ambien 10 mg hspm to help with tranxiition back home to assist with middle of night and early morning awakening.

Procedure(s): -Psychiat Ther Indiv Interactive Approximately 20-30 Minutes x 1
-Psychiatric Evaluation Review of Records and Reports x 1

Medication(s): -ZOLPIDEM-(AMBIEN) 10MG PO TAB (WHITE) - T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #10 RF0 Qt: 10 Rf: 0
-SERTRALINE-(ZOLOFT) 100MG PO TAB--PO 100 - TD #30 RF3 Qt: 30 Rf: 3

Disposition Written by BURGESS, CHARLES D @ 24 Feb 2009 1617 CST
**Discharged Home**
**Follow up:** as needed in 2 week(s) with PCM and/or in the PSYCHIATRY CLINIC clinic or sooner if there are problems. - Comments: continue with Ms Johnson for risk assessment and coordination of therapies until Dr. Brandon returns . dr. Tomlinson to continuae eith Medication management .Medications reconciled with medication to continue as sertaline 100 mg daily and Ambien 10 mg hs prn insomnia
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
30 minutes face-to-face/floor time. >50% of appointment time spent counseling and/or coordinating care.

**Signed By BURGESS, CHARLES D** (Psychiatrist, Reynolds Army Community Hospital Ft. Sill, OK) @ 24 Feb 2009 1618

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINORedacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **24 Feb 2009 1336 CST** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **JOHNSON,DEBRA A**
Patient Status: **Inpatient** Inpatient Location:

**Reason for Appointment:**

AutoCites Refreshed by JOHNSON, DEBRA ANN @ 24 Feb 2009 1534 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 20 Jan 2009 |

Screening Written by JOHNSON, DEBRA ANN @ 25 Feb 2009 1058 CST
**Reason(s) For Visit (Chief Complaint):** DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS) (Follow-Up) ;

**Vitals**
Vitals Written by JOHNSON, DEBRA ANN @ 25 Feb 2009 1058 CST
Tobacco Use: No, Alcohol Use: Yes, Pain Scale: 0 Pain Free
**Comments:** There is no need for a nutrition consult. He is in the ASAP program and alcohol has been a problem to him. He will resume the ASAP program since he is now out of Red River.

**Name/SSN: DANIELS, DERRICK TORAINO**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

RECORD OF MEDICAL CARE STANDARD FORM 600 (REV. 5)
000488

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

24 Feb 2009 1437
ty: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: JOHNSON, DEBRA ANN

SO Note Written by JOHNSON,DEBRA A @ 25 Feb 2009 1246 CST
History of present illness
The Patient is a 36 year old male.
He reported: Encounter Background Information: Derrick Daniels is a 36 year old Capt. who came in as an Sod walkin to CMHS after being discharged from Red River Hospital. He has been followed regularly by Dr.Brandon who is on sick leave presently, soldier will be followed for risk and has been asked to check in with SOD on Thursday and Friday and will be seen by writer on Monday 2 March 09. Spoke to his commander and outlined the mental health plan, Lt Col. Talcott agreed that the unit would keep an eye him over the weekend. Patient is on a regimen of 100mg. of Zoloft dailyand Ambien 10 mg. as needed for sleep..

A/P Written by JOHNSON, DEBRA ANN @ 25 Feb 2009 1254 CST
1. **DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**: Axis II no diagnosis
Axis III none
Axis IV social enviroment, occupational
Axis V 60
Procedure(s): -Social Work Individual Outpatient Counseling 45-50 Minutes x 1
Patient Instruction(s): -Psychiatric Therapy Approach Cognitive Behavioral

Disposition Written by JOHNSON, DEBRA ANN @ 25 Feb 2009 1255 CST
**Continued Stay**
**Follow up:** 3 day(s) for therapy 50 in the MENTAL HEALTH clinic or sooner if there are problems. - Comments: to be followed the next two days by the SOD
follow up with Debra Johnson,LCSW 2 March 09
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
45 minutes face-to-face/floor time..

Note Written by JOHNSON, DEBRA ANN @ 25 Feb 2009 1256 CST
Puprose of Visit: mandatory visit after hospitalization at Red River
Length of Sesseion: 45min
Referral Source: Red River Hospital
Voluntary: yes
Symptoms: was suicidal before admission to Red River Hospital, is claiming he is not suicidal now.
Content of Session: Discusses what made him suicidal in the first place, he is pending a letter of reprimand from the CG and he could not face what other people thought or the ramifications this would have. He states he is not suicidal presently, but did seem rather closed and not willing to really discuss his feelings.Will have him come in SOD for two days then will see him March 2, 2009 at 8:30 to check for risk.
Chief Complaint: dysthymia
Syptoms: Pending letter of reprimand from CG, he was suicidal before going to Red River denies he is now.
Experiencing some depressed mood because of his present circumstances
Sleep: He is sleeping 8 hours with the Ambien
Prior Tx. Had been seeing Dr. Brandon before hospitalization was on Zoloft 100mg. and Ambien 10 mg.
Current Medications: Zoloft 100 mg. and Ambien 10 mg.
Drug/Alcohol and Tobacco: does not do drugs, Alcohol was a problem and he was involved in ASAP prior to his hospitalization and will resume with them.Called Asap and let them know he was out of the hospital.
Si/HI denies
Weapons: none
Domestic Violence: none states he and his wife have been seperated since Nov.
Abuse: none
Medical issues: none
Dx. Dysthymia
Goal: Decrease depressive symptoms
Disposition: Follow up with Debra Johnson Monday 2 March09 @8:30

**Signed By JOHNSON, DEBRA ANN** (LCSW, Reynolds Army Community Hospital Ft. Sill, OK) @ 25 Feb 2009 1406

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **13 Feb 2009 2213 CST** Appt Type: **SPEC**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DODD,DAVID S**
Patient Status: **Outpatient**

**Reason for Appointment:** ER consult at 730 pm
**Appointment Comments:**
Notes Entered by: DODD, DAVID S 13 Feb 2009 2213

---

hanging plan partially implemented.

AutoCites Refreshed by DODD, DAVID S @ 14 Feb 2009 0800 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- ADULT PHYSICAL ABUSE
- PARENT / CHILD PROBLEM
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)

**Active Family History**
- Heart disease

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 20 Jan 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **10 Feb 2009 1457 CST** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** Anger Class
**Appointment Comments:**
Notes Entered by: BACA, KERI 10 Feb 2009 1457
---------------------------
keb

AutoCites Refreshed by MCKEEVER, BRAD E @ 11 Feb 2009 0922 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- PARENT / CHILD PROBLEM
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 20 Jan 2009 |

SO Note Written by MCKEEVER,BRAD E @ 11 Feb 2009 1025 CST
**Reason for Visit**
Visit for: post deployment symptoms: anger/depression.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group. Visit is GWOT-related.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| : | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| : | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000491

10 Feb 2009 1558

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

Not thinking about suicide and no homicidal thoughts.

A/P Written by MCKEEVER, BRAD E @ 11 Feb 2009 1025 CST

1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
2. visit for: **military services physical***(POST-DEPLOYMENT EXAMINATION)*
   Procedure(s): -Clinical Social Work Counseling Group x 1
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
5. **military deployment**

Disposition Written by MCKEEVER, BRAD E @ 11 Feb 2009 1026 CST

**Released w/o Limitations**

**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 11 Feb 2009 0922 CST

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed the Origins of Post Deployment Anger, strong focus on positive recovery, non-violent behavior, and personal responsibility. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 11 Feb 2009 1026

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **06 Feb 2009 1333 CST** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** Combat Stress Class
**Appointment Comments:**
Notes Entered by: BACA, KERI 06 Feb 2009 1333
-------------------------------
keb

AutoCites Refreshed by MCKEEVER, BRAD E @ 06 Feb 2009 1518 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- PARENT / CHILD PROBLEM
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 20 Jan 2009 |

SO Note Written by MCKEEVER,BRAD E @ 09 Feb 2009 1048 CST
**Reason for Visit**
Visit for: post deployment symptoms: anger/depression.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
STANDARD FORM 600 (REV. 5) Prescribed by GSA and ICMR
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
000493

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

06 Feb 2009 1433
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

Not thinking about suicide and no homicidal thoughts.

A/P Written by MCKEEVER, BRAD E @ 09 Feb 2009 1049 CST
1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
   Procedure(s): -Clinical Social Work Counseling Group x 1
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
5. **military deployment**

Disposition Written by MCKEEVER, BRAD E @ 09 Feb 2009 1050 CST
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 06 Feb 2009 1518 CST
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality**: Cognitive Behavioral

**Presenting Problem**: Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed Survivor Guilt, strong focus on balancing guilt with gratitude, and thought stopping to divert to good positive memories of the deceased. Very good group participation. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

Signed By MCKEEVER, BRAD E (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 09 Feb

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
STANDARD FORM 600 (REV. 5) Prescribed by GSA and ICMR
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS
000494

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**06 Feb 2009 1433**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

2009 1050

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**CHRONOLOGICAL RECORD OF MEDICAL CARE**

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS

**STANDARD FORM 600 (REV. 5)**
**Prescribed by GSA and ICMR**

000495

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **03 Feb 2009 1426 CST** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** anger class

**AutoCites** Refreshed by MCKEEVER, BRAD E @ 03 Feb 2009 1616 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- PARENT / CHILD PROBLEM
- military deployment
- visit for: administrative purpose

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 20 Jan 2009 |

**SO Note** Written by MCKEEVER,BRAD E @ 04 Feb 2009 0858 CST
**Reason for Visit**
Visit for: post deployment symptoms: anger/depression.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.
Not thinking about suicide and no homicidal thoughts.

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
000496

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**03 Feb 2009 1527**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

A/P Written by MCKEEVER, BRAD E @ 04 Feb 2009 0859 CST
**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. military deployment**

**Disposition** Written by MCKEEVER, BRAD E @ 04 Feb 2009 0900 CST
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

**Note** Written by MCKEEVER, BRAD E @ 04 Feb 2009 0900 CST
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed the Anger Continuim, learning to head off anger at early stage, strong focus on maintaining control, and learning the relaxation response. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 04 Feb 2009 0900

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| /SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **04 Feb 2009 1300 CST** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **BRANDON,PATRICIA**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
keb

**AutoCites** Refreshed by BRANDON, PATRICIA @ 04 Feb 2009 1317 CST

**Vitals**
**Vitals** Written by BRANDON, PATRICIA @ 04 Feb 2009 1317 CST
Tobacco Use: No, Alcohol Use: No, Pain Scale: 0 Pain Free

**SO Note** Written by BRANDON,PATRICIA @ 04 Feb 2009 1353 CST
**Reason for Visit**
Visit for: mild depression, anger; improving and remitting.
**History of present illness**
The Patient is a 36 year old male. Source of patient information was patient. Source of patient information was medical records. Encounter Background Information: Post Deployment Clinic Individual. Problem list reviewed, medication list reviewed Zoloft; reports no adverse SEs, and reliability of source of patient information was fairly good.
Patient not accompanied.
In the Army, currently on active duty, visit is deployment-related, and visit is GWOT-related.
A desire to continue living, not wishing to be dead, not thinking about suicide, no previous suicide attempt, no homicidal thoughts, and no abnormal thoughts reported.
**Subjective**
"This [homework] was harder than I thought it'd be." SM siginificantly increasing his selfawareness/mindfulness; having new insights and understandings. Reviewed reared by older parents as only child; parents pretty much led separate lives; wanted father's approval and praise but didn't get. Has not had contact w/wife yet. Working on his statement for CG.
**Physical findings**
**General appearance:**
° Awake. ° Alert. ° Oriented to time, place, and person. ° Well developed. ° Well nourished. ° Well hydrated. ° Active. ° In no acute distress.
**Objective**
Mental status appears WNL. Mood improving. Appears more relaxed and comfortable with himself. Recognizing a lack of identity outside of military. Increasing active in his fatemity and in mentoring young males. Goes to Tulsa over weekend for meeting..

**A/P** Written by BRANDON, PATRICIA @ 04 Feb 2009 1402 CST
1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**: risk low. Good progress. current ratings: Irritability 3/10; functioning 3/10. PLAN: SM needs to see wife before knowing what direction he's going in. SM schedule individual after seeing her. Will con't PDC Activities.
Procedure(s): -Psychiatric Therapy Individual Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PROBLEMS OCCUPATIONAL**

**Disposition** Written by BRANDON, PATRICIA @ 04 Feb 2009 1403 CST
**Released w/o Limitations**
**Follow up:** 2 week(s) with PCM or sooner if there are problems.
50 minutes face-to-face/floor time..

**Signed By BRANDON, PATRICIA** (Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 04 Feb 2009 1403

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINORedacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **30 Jan 2009 1451 CST** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **BRANDON,PATRICIA**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
Notes Entered by: MOORE, LEWIS 30 Jan 2009 1451

---

KEB

**AutoCites** Refreshed by BRANDON, PATRICIA @ 30 Jan 2009 1517 CST

**SO Note** Written by BRANDON,PATRICIA @ 30 Jan 2009 1616 CST
**Reason for Visit**
Visit for: mild depression, anger.
**History of present illness**
The Patient is a 36 year old male. Source of patient information was patient. Source of patient information was medical records. Encounter Background Information: Post Deployment Clinic Individual. Problem list reviewed, medication list reviewed met w/Dr. Tomlinson this morning, and reliability of source of patient information was fairly good.
Patient not accompanied.
In the Army, currently on active duty, visit is deployment-related, and visit is GWOT-related.
A desire to continue living, not wishing to be dead, not thinking about suicide, no previous suicide attempt, no homicidal thoughts, and no abnormal thoughts reported.
**Subjective**
"I'm doing better. Sleeping 5-7 hrs night. I'm taking one day at a time".
**Physical findings**
**General appearance:**
° Awake. ° Alert. ° Oriented to time, place, and person. ° Well developed. ° Well nourished. ° Well hydrated. ° Active. ° In no acute distress.
**Objective**
Mental status appears WNL. Mood improving. Charges were dismissed. Doesn't yet know what his CO is going to recommend. Hasn't spoken to wife; has decided he wants to a attempt salvage the marriage. SM more aware of his 'naive and idealistic' pattems. Recalled how when on R&R was scammed by a fence repair; on return attempted to collect "for the priniciple of it" but the scammer wasn't to be found. Also, SM brought up issue of race; reviewed his development in GA. SM becoming aware he's always felt he was inferior to others; doesn't like those who 'use the race card'.

**A/P** Written by BRANDON, PATRICIA @ 30 Jan 2009 1619 CST
1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**: risk low. SM becoming more aware of himself; taking inventory and identifying areas for improvement. PLAN: r/u x 1 wk; con't PDC activities. HMWK: Identify what he measures himself by to make appropriate adjustments to that yardstick.
Procedure(s): -Psychiatric Therapy Individual Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PROBLEMS OCCUPATIONAL**

**Disposition** Written by BRANDON, PATRICIA @ 30 Jan 2009 1619 CST
**Released w/o Limitations**
**Follow up:** 1 week(s) with PCM or sooner if there are problems.
60 minutes face-to-face/floor time..

**Signed By BRANDON, PATRICIA** (Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 30 Jan 2009 1619

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| /SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS Prescribed by GSA and ICMR

Patient: **DANIELS, DERRICK TORAINO** Date: **30 Jan 2009 1301 CST** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:**

AutoCites Refreshed by MCKEEVER, BRAD E @ 30 Jan 2009 1432 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- PARENT / CHILD PROBLEM
- military deployment
- visit for: administrative purpose

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 20 Jan 2009 |

SO Note Written by MCKEEVER,BRAD E @ 30 Jan 2009 1435 CST

**Reason for Visit**

Visit for: post deployment symptoms: anger/depression.

**History of present illness**

The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.
Not thinking about suicide and no homicidal thoughts.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS Prescribed by GSA and ICMR

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**30 Jan 2009 1402**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

A/P Written by MCKEEVER, BRAD E @ 30 Jan 2009 1437 CST

1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
   Procedure(s): -Clinical Social Work Counseling Group x 1
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
5. **military deployment**: GAF OF 65

**Disposition** Written by MCKEEVER, BRAD E @ 30 Jan 2009 1437 CST
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

**Note** Written by MCKEEVER, BRAD E @ 30 Jan 2009 1437 CST
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem**: Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed Inner Strength, identifying areas where they are no longer confident, areas where they are just a good, and areas where they are better, after having been in combat. (Cognitive restructuring, strong focus on reestablishment of resilience)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. .. **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 30 Jan 2009 1438

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| /SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **23 Jan 2009 1554 CST** Appt Type: **PROC**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **BRANDON,PATRICIA**
Patient Status: **Outpatient**

**Reason for Appointment:** PDC Staffing

**AutoCites** Refreshed by BRANDON, PATRICIA @ 23 Jan 2009 1555 CST

**SO Note** Written by BRANDON,PATRICIA @ 23 Jan 2009 1612 CST
**Objective**
POST-DEPLOYMENT CLINIC (PDC) Staffing: SM is 4 weeks since starting PDC activities. His attendance has been consistent and frequent, and his engagement considered good. SM was started on a course of an SSRI with no adverse side effects and good efficacy. SM's progress is considered good for his goal of decreasing anger. He is considered low risk. PLAN: Will transition SM from initial Phase I to maintenance status. He is invited and encouraged to attend the Combat Stress Class and Biofeedback/PMR as SM deems beneficial.

**A/P** Written by BRANDON, PATRICIA @ 23 Jan 2009 1613 CST
**1. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

**Disposition** Written by BRANDON, PATRICIA @ 23 Jan 2009 1613 CST
**Released w/o Limitations**
30 minutes face-to-face/floor time..

**Signed By BRANDON, PATRICIA** (Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 23 Jan 2009 1613

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

/SSN: 20/Redacted PII Sex: M Sponsor/SSN: DANIELS, DERRICK TORAINO/Redacted PII
DOB: Redacted PII Tel H: Redacted PII Rank: CAPTAIN
PCat: A11.1 USA ACTIVE DUTY OFFICER Tel W: 229-518-4204 Unit: WAQNK1 (0003 AR HQ 01 DET K1)
CS: Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
MC Status: TRICARE PRIME (ACTIVE DUTY) Status: PCM: SANTORY-ORTIZ,JULIO
Insurance: No Tel. PCM: 912 435-5594

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **23 Jan 2009 1316 CST** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** Combat Stress
**Appointment Comments:**
Notes Entered by: BACA, KERI 23 Jan 2009 1316

keb

AutoCites Refreshed by MCKEEVER, BRAD E @ 23 Jan 2009 1506 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- PARENT / CHILD PROBLEM
- military deployment

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 20 Jan 2009 |

SO Note Written by MCKEEVER,BRAD E @ 23 Jan 2009 1507 CST
**Reason for Visit**
Visit for: post deployment symptoms: anger/depression.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.
Not thinking about suicide and no homicidal thoughts.

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
000503

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**23 Jan 2009 1417**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

A/P Written by MCKEEVER, BRAD E @ 23 Jan 2009 1508 CST
**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. military deployment:** GAF OF 65

Disposition Written by MCKEEVER, BRAD E @ 23 Jan 2009 1511 CST
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 23 Jan 2009 1511 CST
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed the balancing of grief and gratitude, focus on combat survivor guilt, presentation of positive memories to counter intrusive thoughts and guilt. Good participation, good interaction. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By** **MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 23 Jan 2009 1511

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| /SSN: | 20/ Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| : | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **22 Jan 2009 1306 CST**
Clinic: **MENTAL HEALTH**

Appt Type: **ACUT**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:** PDC
**Appointment Comments:**
Notes Entered by: BACA, KERI 22 Jan 2009 1306

keb

AutoCites Refreshed by MCKEEVER, BRAD E @ 22 Jan 2009 1553 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- PARENT / CHILD PROBLEM
- military deployment

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 20 Jan 2009 |

SO Note Written by MCKEEVER,BRAD E @ 22 Jan 2009 1601 CST

Reason for Visit
Visit for: post deployment symptoms: anger/depression.

History of present illness
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into CMHS for Post Deployment Clinic, 1 to 1 session and med consult.
Visit is GWOT-related.
Not thinking about suicide and no homicidal thoughts.

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| /SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR

000505

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

22 Jan 2009 1407
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

A/P Written by MCKEEVER, BRAD E @ 22 Jan 2009 1602 CST
**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Social Work Individual Outpatient Counseling 20-30 Minutes x 1
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. military deployment**

**Disposition** Written by MCKEEVER, BRAD E @ 22 Jan 2009 1605 CST
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
20 minutes face-to-face/floor time..

**Note** Written by MCKEEVER, BRAD E @ 22 Jan 2009 1606 CST
**Purpose of Visit:** Post Deployment Clinic, 1 TO 1 Session

**Length of Session:** 20 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem**: Deployment Symptoms: Anger/Depression, Alienation, Sleep Disturbances

**Treatment Plan:** Continued 1 to 1 follow ups sessions, and group sessions

**Content of the Session:** SM experiencing sleep impairment, anger issues, set up with Dr. Thomlinson for med consult.

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was depressed. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were fair to good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "tired". Insight was good. . **No apparent homicidal ideation,or sucidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Risk assessment/Capacity:** low At the current time this patient is considered competent to be discharged to their own custody and does not constitute an imminent danger to themselves or others. The patient understands the treatment plan. The patient has the capacity to make medical decisions.

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINORedacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

22 Jan 2009 1407
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

Signed By MCKEEVER, BRAD E (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 22 Jan 2009 1606

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR

000507

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **20 Jan 2009 1321 CST** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** PDC
**Appointment Comments:**
Notes Entered by: BACA, KERI 20 Jan 2009 1321
------------------------------
keb

AutoCites Refreshed by MCKEEVER, BRAD E @ 20 Jan 2009 1423 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- visit for: ears / hearing exam
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- PARENT / CHILD PROBLEM
- military deployment

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 20 Jan 2009 |
| Silver Sulfadiazine 1%, Cream, Topical | Active | AAA DAILY TO BID , THEN DRESS AREA AND COVER, KEEP IT CLEAN | NR | 23 Dec 2008 |

A/P Written by MCKEEVER, BRAD E @ 20 Jan 2009 1424 CST
**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Social Work Individual Outpatient Counseling 20-30 Minutes x 1

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM --AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

20 Jan 2009 1422
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II**(*OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET*)
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III**(*OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET*)
5. **military deployment**: GAF OF 65

**Disposition** Written by MCKEEVER, BRAD E @ 20 Jan 2009 1424 CST
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
20 minutes face-to-face/floor time..

**Note** Written by MCKEEVER, BRAD E @ 20 Jan 2009 1424 CST
**Purpose of Visit:** Post Deployment Clinic, 1 TO 1 Session

**Length of Session:** 20 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality**: Cognitive Behavioral

**Presenting Problem**: Post Deployment Symptoms: Anger/Depression, Alienation, Sleep Disturbances

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions before group if needed.

**Content of the Session:** SM came in, set up with Dr. |Brandon for continued 1 to 1, had med consult, will fill prescrption later today.

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was tired. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Risk assessment/Capacity:** Minimal At the current time this patient is considered fully competent to be discharged to their own custody and does not constitute an imminent danger to themselves or others. The patient understands the treatment plan. The patient has the capacity to make medical decisions.

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 20 Jan 2009 1426

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| /SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS

Patient: **DANIELS, DERRICK TORAINO** Date: **15 Jan 2009 1103 CST** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **BRANDON,PATRICIA**
Patient Status: **Outpatient**

**Reason for Appointment:**

AutoCites Refreshed by BRANDON, PATRICIA @ 15 Jan 2009 1230 CST

**Vitals**
**Vitals** Written by BRANDON, PATRICIA @ 15 Jan 2009 1229 CST
Tobacco Use: No, Alcohol Use: Yes, Pain Scale: 0 Pain Free
**Comments:** no tobacco x 10 days.

**SO Note** Written by BRANDON,PATRICIA @ 16 Jan 2009 1644 CST
**Reason for Visit**
Visit for: mild depression, anger.
**History of present illness**
The Patient is a 36 year old male. Source of patient information was patient. Source of patient information was medical records. Encounter Background Information: Post Deployment Clinic Individual. Past medical history reviewed, problem list reviewed, medication list reviewed met w/Dr. Tomlinson this morning, and reliability of source of patient information was fairly good.
Patient not accompanied.
In the Army, currently on active duty, visit is deployment-related, and visit is GWOT-related.
A desire to continue living, not wishing to be dead, not thinking about suicide, no previous suicide attempt, no homicidal thoughts, and no abnormal thoughts reported.
**Subjective**
Processed outcome options.
**Physical findings**
**General appearance:**
° Awake. ° Alert. ° Oriented to time, place, and person. ° Well developed. ° Well nourished. ° Well hydrated. ° Active. ° In no acute distress.
**Objective**
Mental status appears WNL. Goes to court 26 January. Processed his idealistic - disappointed cognitive patterns. SM able to identify and change.

**A/P** Written by BRANDON, PATRICIA @ 16 Jan 2009 1652 CST
1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**: risk low. Mood stabilizing; concerned about pending legal and career matters. PLAN: con't Post-Deployment Clinic activities.
Procedure(s): -Psychiatric Therapy Individual Approximately 45-50 Minutes x 1
-Biofeedback Training By Any Modality x 1 (51-MULTIPLE PROCEDURES)
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PROBLEMS OCCUPATIONAL**

**Disposition** Written by BRANDON, PATRICIA @ 16 Jan 2009 1652 CST
**Released w/o Limitations**
75 minutes face-to-face/floor time..

**Note** Written by BRANDON, PATRICIA @ 16 Jan 2009 1644 CST
**BIOFEEDBACK**
SM has been placed on Biofeedback Program for 3rd time, and is on Level 2. The process (breathing, imagery, relaxation by combination/coherence of breathing and heart rate) was explained, demonstrated, and/or reviewed. SM acknowledged understanding. Total time was on Biofeedback training was 20 minutes. Soldier obtained following results: **Display** (20 minutes): 34 % low/red, 58% blue/medium and 8% green/high relaxation, overall heart rate of 62. SM had good response to the training session. Soldier was encouraged to continue practicing the relaxation technique at home and throughout the day.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**15 Jan 2009 1204**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: BRANDON, PATRICIA**

**Signed By BRANDON, PATRICIA** (Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 16 Jan 2009 1652

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| /SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| B: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
000511

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **15 Jan 2009 1000 CST** Appt Type: **SPEC**
Treatment Facility: **REYNOLDS ACH** Clinic: **PSYCHIATRY CLINIC** Provider: **TOMLINSON,JACK R.**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
als

**AutoCites** Refreshed by TOMLINSON, JACK R @ 15 Jan 2009 1050 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- visit for: ears / hearing exam
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- PARENT / CHILD PROBLEM
- military deployment

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| Silver Sulfadiazine 1%, Cream, Topical | Active | AAA DAILY TO BID , THEN DRESS AREA AND COVER, KEEP IT CLEAN | NR | 23 Dec 2008 |

**SO Note** Written by TOMLINSON,JACK R. @ 15 Jan 2009 1103 CST
**Chief complaint**
The Chief Complaint is: Depression.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: he has a lot going on at this time. He and wife are seperated and with no contact and restraining order. There are still civil charges for assault he said that are pending.He has been depressed a lot of the time though not every day. He sleeps about 5-6 hour a night. He has energy and appetite is normal. Will try Zoloft 100 mg daily and

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINORedacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR FIRMR (41 CFR) 201-45.505
000512

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**15 Jan 2009 1128**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Psychiatry Clinic** **Provider: TOMLINSON, JACK R**

follow ina month or sooner ,He is to ci\ontinue seeing Dr. Brindon and go to PDC. Past medical history reviewed, problem list reviewed, and medication list reviewed with patient.

Military service in the Army and visit is GWOT-related.

Neurological symptoms. No dizziness, no vertigo, no lightheadedness, no fainting, no decrease in consciousness, no decrease in concentrating ability, no confusion, no disorientation, no memory lapses or loss, no convulsions, no focal disturbances, sense of smell is normal, no mouth droop, no taste disturbances, no speech difficulties, no difficulty writing, no change in handwriting, no motor disturbances, no difficulty with balance, good coordination, and no sensory disturbances.

Depression as a chronic condition. No sleep complaints, normal enjoyment of activities, no dangerous thoughts reported no hi/si or risk, no abnormal thoughts reported, no change in thought patterns, no sexual behavior complaints, no personality-related complaints, and no behavioral complaints.

No systemic symptoms. No head symptoms. No neck symptoms. No eye symptoms. No otolaryngeal symptoms. No breast symptoms. No cardiovascular symptoms. No pulmonary symptoms. No gastrointestinal symptoms. No genitourinary symptoms. No endocrine symptoms. No hematologic symptoms. No musculoskeletal symptoms.

**Physical findings**

**General appearance:**

- General appearance: ° Well-appearing. ° Awake. ° Alert. ° Oriented to time, place, and person. ° Well developed. ° Well nourished. ° Well hydrated. ° Active. ° In no acute distress.

**Neurological:**

- System: ° Level of consciousness was normal. ° No decrease in concentrating ability was observed. ° Cognitive functioning was normal. ° Executive functions were not decreased. ° No learning disability was noted.

Speech: ° Normal.

**Psychiatric Exam:**

- Psychiatric Exam: • Mood was dysthymic. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Attitude was not abnormal. ° Affect was normal. ° Thought processes were not impaired. ° Thought content revealed no impairment. ° No multiple distinct and complex personalities were observed. ° Neurovegetative assessment was normal.

A/P Written by TOMLINSON, JACK R @ 15 Jan 2009 1102 CST

**1. ADJUSTMENT DISORDER WITH DEPRESSED MOOD:** to start zoloft and follow

Procedure(s): -Psych Ther Indiv Interact Appr 45-50 Min W/ Med Eval Manage x 1

Medication(s): -SERTRALINE-(ZOLOFT) 100MG PO TAB--PO 100 - TD #30 RF3 Qt: 30 Rf: 3

**Disposition** Written by TOMLINSON, JACK R @ 15 Jan 2009 1111 CST

**Released w/o Limitations**

**Signed By TOMLINSON, JACK R** (Psychiatrist, Reynolds Army Community Hospital Ft. Sill, OK) @ 15 Jan 2009 1501

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS

Patient: **DANIELS, DERRICK TORAINO** Date: **13 Jan 2009 1323 CST** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** pdc
**Appointment Comments:**
Notes Entered by: GUERRA, RANDY 13 Jan 2009 1323

---

sdh

**AutoCites** Refreshed by MCKEEVER, BRAD E @ 14 Jan 2009 0951 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- visit for: ears / hearing exam
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- PARENT / CHILD PROBLEM

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| Silver Sulfadiazine 1%, Cream, Topical | Active | AAA DAILY TO BID , THEN DRESS AREA AND COVER, KEEP IT CLEAN | NR | 23 Dec 2008 |

**SO Note** Written by MCKEEVER,BRAD E @ 14 Jan 2009 1049 CST
**Reason for Visit**
Visit for: post deployment symptoms: anger/depression.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into CMHS for Post Deployment Clinic, group.
Visit is GWOT-related.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

13 Jan 2009 1424
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

Not thinking about suicide and no homicidal thoughts.

A/P Written by MCKEEVER, BRAD E @ 14 Jan 2009 1051 CST
**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. military deployment:** GAF OF 70

Disposition Written by MCKEEVER, BRAD E @ 14 Jan 2009 1051 CST
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 14 Jan 2009 0951 CST
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed The Addiction of Anger, acknowledging the short term gains of hostile behavior, with an emphisis on the long term disruptive and dysfunctional ramifications. Very good group interaction. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 14 Jan 2009 1052

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

Patient: **DANIELS, DERRICK TORAINO** Date: **09 Jan 2009 1359 CST** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **BRANDON,PATRICIA**
Patient Status: **Outpatient**

**Reason for Appointment:**

AutoCites Refreshed by BRANDON, PATRICIA @ 09 Jan 2009 1419 CST

**Vitals**
Vitals Written by BRANDON, PATRICIA @ 09 Jan 2009 1458 CST
Tobacco Use: No, Alcohol Use: Yes, Pain Scale: 2/10 Mild, Pain Scale Comments: left shoulder

SO Note Written by BRANDON,PATRICIA @ 09 Jan 2009 1619 CST
**Reason for Visit**
Visit for: mild depression, anger.
**History of present illness**
The Patient is a 36 year old male. Source of patient information was patient. Source of patient information was medical records. Encounter Background Information: Post Deployment Clinic Individual.
In the Army, currently on active duty, visit is deployment-related, and visit is GWOT-related.
A desire to continue living, not wishing to be dead, not thinking about suicide, no previous suicide attempt, no homicidal thoughts, and no abnormal thoughts reported.
**Subjective**
"I wanted someone to hear my side of things [re: his journaling]". SM recounted pending UCMJ/legal involvement; currentlly he and wife are estranged.
**Physical findings**
**General appearance:**
° Awake. ° Alert. ° Oriented to time, place, and person. ° Well developed. ° Well nourished. ° Well hydrated. ° Active. ° In no acute distress.
**Objective**
Mental status appears WNL. Processed his experiences over past deployments and residency in Germany. SM assumed military role as primary with overwhelming time line; lost connection to his wife and himself. His career, marriage, and self-identity are in transition.

A/P Written by BRANDON, PATRICIA @ 09 Jan 2009 1627 CST
1. **ANXIETY DISORDER NOS**: risk low. SM's trying to get his life back on track. Anger decreasing. PLAN: f/u individual x 1 wk; con't PDC activities.
Procedure(s): -Psychiatric Therapy Individual Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PROBLEMS PRIMARY SUPPORT GROUP**

Disposition Written by BRANDON, PATRICIA @ 09 Jan 2009 1628 CST
**Released w/o Limitations**
**Follow up:** 1 week(s) with PCM or sooner if there are problems.
60 minutes face-to-face/floor time..

**Signed By BRANDON,PATRICIA** (Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 09 Jan 2009 1628

Note Written by BRANDON, PATRICIA @ 09 Jan 2009 1649 CST
**(Added after encounter was signed.)**
SM signed consent form and requested staff speak w/LTC Tallest if he should call.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| : | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| Pcat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **09 Jan 2009 1259 CST**
Clinic: **MENTAL HEALTH**

Appt Type: **GRP**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:** pdc
**Appointment Comments:**
Notes Entered by: EARL, BARBARA 09 Jan 2009 1259

---

sdh

**AutoCites** Refreshed by MCKEEVER, BRAD E @ 09 Jan 2009 1435 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PARTNER RELATIONAL PROBLEM
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- visit for: ears / hearing exam
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| Silver Sulfadiazine 1%, Cream, Topical | Active | AAA DAILY TO BID , THEN DRESS AREA AND COVER, KEEP IT CLEAN | NR | 23 Dec 2008 |

**SO Note** Written by MCKEEVER,BRAD E @ 09 Jan 2009 1448 CST
**Reason for Visit**
Visit for: post deployment symptoms: anger/depression.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into CMHS for Post Deployment Clinic, group. Visit is GWOT-related.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000517

09 Jan 2009 1400

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

Not thinking about suicide and no homicidal thoughts.
Pain Level 4/10 , up 1 level from last sessionOverall Functioning: 2 /10, 2 level dropAlcohol Use: SM reports 4 per weekTobacco Use: SM reports 4 packs per week, increaseSleep Patterns: SM reports 5 hours of poor sleep, 1 level drop in quality,CONSULT WITH PRIMARY THERAPIST, DECREASE IN FUNCTIONING IN ALL 5 AREAS.

A/P Written by MCKEEVER, BRAD E @ 09 Jan 2009 1458 CST

1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
2. **visit for: military services physical**(*POST-DEPLOYMENT EXAMINATION)*
   Procedure(s): -Clinical Social Work Counseling Group x 1
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II**(*OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III**(*OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
5. **AXIS IV PROBLEMS OCCUPATIONAL**: GAF OF 60

Disposition Written by MCKEEVER, BRAD E @ 09 Jan 2009 1459 CST
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 09 Jan 2009 1442 CST

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality**: Cognitive Behavioral

**Presenting Problem**: Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed Mood Improvement exercises, strong focus on Star D Study tech. , strong focus on understanding seritonine and dophmain enhancement techniques, and importance of medication compliance. Good group participation, good interaction. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**09 Jan 2009 1400**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 09 Jan 2009 1502

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

Patient: **DANIELS, DERRICK TORAINO** Date: **08 Jan 2009 1258 CST** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **BRANDON,PATRICIA**
Patient Status: **Outpatient**

**Reason for Appointment:** pdc
**Appointment Comments:**
Notes Entered by: BACA, KERI 08 Jan 2009 1258
------------------------------
keb

AutoCites Refreshed by GUERRA, RANDY @ 08 Jan 2009 1627 CST

**Problems**
- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- visit for: ears / hearing exam
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- AXIS IV PROBLEMS OCCUPATIONAL

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| Silver Sulfadiazine 1%, Cream, Topical | Active | AAA DAILY TO BID , THEN DRESS AREA AND COVER, KEEP IT CLEAN | NR | 23 Dec 2008 |

SO Note Written by GUERRA,RANDY @ 08 Jan 2009 1627 CST
**Subjective**
Soldier was placed on Biofeedback Program for his second time and started on level 2. The process (breathing, imagery, relaxation by combination/coherence of breathing and heart rate) was explained, demonstrated, and/or reviewed. Soldier acknowledged understanding. Total time Soldier was on Biofeedback was 30 minutes. Soldier was able to achieve an overall coherence of 5% red/low, 35% blue/medium and 60% green/high relaxation while on the Heart Rhythm display. Soldier had an overall heart rate of 76. Soldier was encouraged to continue practicing the relaxation technique at home and throughout the day, and return for further Biofeedback sessions.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| : | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

08 Jan 2009 1359

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: BRANDON, PATRICIA

SO Note Written by BRANDON,PATRICIA @ 09 Jan 2009 1318 CST

**Chief complaint**

The Chief Complaint is: Anger and depression.

**Reason for Visit**

Visit for: Post-Deployment Clinic (PDC) Biofeedback and Progressive Muscle Relaxation (PMR).

**History of present illness**

The Patient is a 36 year old male.

He reported: Currently on active duty, visit is deployment-related, and visit is GWOT-related.

A desire to continue living, not wishing to be dead, not having a suicide plan, no stated intent to commit suicide, no previous suicide attempt, no homicidal thoughts, and no abnormal thoughts reported.

**Subjective**

"I'm doing better".

**Physical findings**

**Psychiatric Exam:**

• Mood was unhappy. • Mood was dysphoric. • Affect was flat. • Affect was anhedonic. • Affect was somber. • Affect was sad. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Attitude was not abnormal. ° Mood was calm. ° Thought processes were not impaired. ° Thought content revealed no impairment.

**Objective**

Mental status WNL.

A/P Written by BRANDON, PATRICIA @ 09 Jan 2009 1327 CST

1. **ADJUSTMENT DISORDER WITH DEPRESSED MOOD:** risk low. Working towards treatment goal; appears more depressed than angry. PLAN: SM handed typed journal recounting highlights/stressors since first deployment. Will have individual session to process. Con't PDC activities

Procedure(s): -Biofeedback Training By Any Modality x 1

2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PROBLEMS PRIMARY SUPPORT GROUP**
6. **PARTNER RELATIONAL PROBLEM**

Disposition Written by BRANDON, PATRICIA @ 09 Jan 2009 1327 CST

**Released w/o Limitations**

**Follow up:** 1 day(s) or sooner if there are problems.

60 minutes face-to-face/floor time..

**Signed By BRANDON, PATRICIA** (Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 09 Jan 2009 1327

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **06 Jan 2009 1617 CST** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:**

AutoCites Refreshed by MCKEEVER, BRAD E @ 07 Jan 2009 1540 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- visit for: ears / hearing exam
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| Silver Sulfadiazine 1%, Cream, Topical | Active | AAA DAILY TO BID , THEN DRESS AREA AND COVER, KEEP IT CLEAN | NR | 23 Dec 2008 |

SO Note Written by MCKEEVER,BRAD E @ 08 Jan 2009 1148 CST

Reason for Visit

Visit for: post deployment symptoms: anger/depression.

History of present illness

The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into CMHS for Post Deployment Clinic, anger group.
Visit is GWOT-related.
Not thinking about suicide and no homicidal thoughts.
Pain Level 3/10Overall Functioning: 4 /10Alcohol Use: SM reports 4 per weekTobacco Use: SM reports 3 packs per weekSleep Patterns: SM reports 5 hours of fair/poor sleep..

A/P Written by MCKEEVER, BRAD E @ 08 Jan 2009 1147 CST

**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| : | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| Cat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000522

06 Jan 2009 1717
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
5. **AXIS IV PROBLEMS OCCUPATIONAL:** GAF OF 65

Disposition Written by MCKEEVER, BRAD E @ 08 Jan 2009 1148 CST
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 07 Jan 2009 1540 CST
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem**: Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed The Origins of Post Deployment Anger, strong focus on understanding seritonine and dophmain depletion, and importance of medication compliance. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 08 Jan 2009 1150

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| : | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **06 Jan 2009 1259 CST** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **BRANDON,PATRICIA**
Patient Status: **Outpatient**

**Reason for Appointment:** PDC
**Appointment Comments:**
Notes Entered by: BACA, KERI 06 Jan 2009 1259
------------------------------
keb

AutoCites Refreshed by BRANDON, PATRICIA @ 06 Jan 2009 1527 CST

**Vitals**
**Vitals** Written by BRANDON, PATRICIA @ 06 Jan 2009 1533 CST
Pain Scale: 0 Pain Free, Pain Scale Comments: not now; frequently has pain in left shoulder, especially if sleeps wrong.

**SO Note** Written by BRANDON,PATRICIA @ 06 Jan 2009 1533 CST
**Reason for Visit**
Visit for: mild depression, anger.
**History of present illness**
The Patient is a 36 year old male. Source of patient information was patient. Source of patient information was medical records. Encounter Background Information: Post Deployment Clinic Biofeedback, Anger Class and Individual.
In the Army, currently on active duty, visit is deployment-related, and visit is GWOT-related.
A desire to continue living, not wishing to be dead, not thinking about suicide, no previous suicide attempt, no homicidal thoughts, and no abnormal thoughts reported.
**Subjective**
"I want to think about all this [today's activities]".SM expressed the Biofeedback, Progressive Muscle Relaxation and Anger Class have been instructive and beneficial.
**Physical findings**
**General appearance:**
• In acute distress. ° Awake. ° Alert. ° Oriented to time, place, and person. ° Well developed. ° Well nourished. ° Well hydrated. ° Active.
**Objective**
Mental status appears WNL. SM engaging in treatment.

A/P Written by BRANDON, PATRICIA @ 06 Jan 2009 1556 CST
1. **ANXIETY DISORDER NOS**: Risk low. Mental status WNL; engaged in treatment; good response. PLAN: con't PDC activities.
Procedure(s): -Psychiatric Therapy Individual Approximately 20-30 Minutes x 1
-Biofeedback Training By Any Modality x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PROBLEMS PRIMARY SUPPORT GROUP**

Disposition Written by BRANDON, PATRICIA @ 06 Jan 2009 1557 CST
**Released w/o Limitations**
50 minutes face-to-face/floor time..

Note Written by BRANDON, PATRICIA @ 06 Jan 2009 1549 CST
**BIOFEEDBACK**
SM has been placed on Biofeedback Program for first time, started on Level 2. The process (breathing, imagery, relaxation by combination/coherence of breathing and heart rate) was explained, demonstrated, and/or reviewed. SM acknowledged understanding. Total time was on Biofeedback training was 20 minutes with following results: 39% low/red, 34% blue/medium and 27% green/high relaxation, overall heart rate of 79.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

06 Jan 2009 1400

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: BRANDON, PATRICIA

Signed By BRANDON, PATRICIA (Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 06 Jan 2009 1557

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| : | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **23 Dec 2008 0900 CST**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:**
**Appointment Comments:**
bne

AutoCites Refreshed by MCKEEVER, BRAD E @ 23 Dec 2008 1108 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PARTNER RELATIONAL PROBLEM
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- visit for: ears / hearing exam
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| Silver Sulfadiazine 1%, Cream, Topical | Active | AAA DAILY TO BID , THEN DRESS AREA AND COVER, KEEP IT CLEAN | NR | 23 Dec 2008 |

SO Note Written by MCKEEVER,BRAD E @ 23 Dec 2008 1110 CST

**Reason for Visit**
Visit for: mild depression, anger.

**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into CMHS for an INTAKE into Post Deployment Clinic.
Visit is GWOT-related.
Mood slightly angry and sleep 7 hours of good sleep. Normal enjoyment of activities. Energy: normal. Not thinking about suicide and no previous suicide attempt. No homicidal thoughts. Interpersonal relationship problems SM is separated from his wife, with military and state no contact orders. See prior notes, domestic violence, played down in earlier sessions.

**Physical findings**
**General appearance:**
° Well-appearing.
**Neurological:**
° No disorientation was observed. ° No disorientation to date. ° No disorientation to time. ° No disorientation to place. ° No disorientation to person. ° No disorientation to situation. ° An adequate fund of knowledge was demonstrated. ° An

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000526

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

23 Dec 2008 0947

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

adequate fund of knowledge regarding current events was demonstrated. ° An adequate fund of knowledge regarding past history was demonstrated. ° An adequate fund of knowledge regarding vocabulary was demonstrated.

**Psychiatric Exam:**

° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

A/P Written by MCKEEVER, BRAD E @ 23 Dec 2008 1119 CST

**1. ANXIETY DISORDER NOS**

**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

Procedure(s): -Social Work Individual Outpatient Counseling 45-50 Minutes x 1

**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**5. AXIS IV PROBLEMS PRIMARY SUPPORT GROUP:** GAF OF 80

**Disposition** Written by MCKEEVER, BRAD E @ 23 Dec 2008 1120 CST

**Released w/o Limitations**

**Follow up:** as needed in 2 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

60 minutes face-to-face/floor time..

**Note** Written by MCKEEVER, BRAD E @ 23 Dec 2008 1121 CST

**Purpose of Visit** INTAKE

***Consent documents were signed***

**Length of Session:** 60 minutes

**Post-deployment Related?:** Yes

Voluntary Yes

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Therapeutic Modality**: Cognitive Behavioral and Crisis Intervention

**Referral Source** Self

**History:**

Childhood: SM raised intact family, positive and supportive, parents college educated.
Educational: college
Legal: Restraining orders from separted wife and military
Medical: Chronic pain
Psychiatric: Ongoing in our clinic
Family: Separated , no children

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "annoyed!". Insight was poor, see prior sessions . **Denied suicidal or homicidal ideation.**

**Pain Level** 0/10

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| : | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| Pcat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505

000527

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

23 Dec 2008 0947
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

**Functioning this Week** 4/10

**Nutrition** SM reports normal nutrition

**Initial Treatment Plan:**

Combat Stress Classes: : Fridays at 13:00
Post Combat Anger Classes: Tuesdays at 14:30
Medication Consults: Tuesdays and Thursdays, at 13:00
Biofeedback: Tues., Wed., Thurs. at 13:00, up to 3 times weekly.
Progressive Muscle Relaxation: to be scheduled, 2 times weekly.

Rapid delivery of services, 2 to 5 times a week, for one month. Our goal is to help the service member build new and better coping skills, and to prevent the misbehavior and dysfunctional conduct that can often be a result of deployment strain.

A follow-up report addressing the service member's participation and progress will be provided to command in approximately 4 to 6 weeks. If our clinic recommends additional services after the first month, that recommendation will be noted in the follow up report.

**Duration of Treatment Plan:** 8 to 15 sessions, over 4 to 6 weeks

**Medical Consultation:** Scheduled for PDC, strongly encouraged to come in within the next week.

**Prior Deployment:**

Dates: July 2004 to July 2005, Iraq/ Aug. 2006 to Nov. 2007 Iraq

Fire Weapon: yes

Deal with Bodies: yes Insurgents: Civilians: 7 Soldiers:

IED's: 2 Proximity: < 300 meters LOC none

**Post Deployment Symptoms;**

Re-experienced Symptoms: 1 or more

Intrusive thoughts: n
Recurrent Nightmares: n
Flashbacks/Re-experiencing Combat: n
Triggers Emotional: y
Triggers Physiological n

Avoidance Symptoms: 3 or more

Avoids thoughts, feelings, conversations about deployment n
Avoids activities, places, or people related to deployment n
Inability to recall aspects of trauma/deployment n
Loss of interest in significant prior activities yes reading, work, working out
Detachment/Alienation yes
Restricted range of affect y
Sense of foreshortened future/Loss of hope y

Hyper-arousal: 2 or more

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| : | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000528

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**23 Dec 2008 0947**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

Sleep disturbances/ Lack of sleep n
Anger/Rage y
Difficulty concentrating n
Hypervigilance y
Startle Respones n

PCL-17 Score: 32, validity is not established.

**Risk assessment/Capacity:** Minimal At the current time this patient is considered fully competent to be discharged to their own custody and does not constitute an imminent danger to themselves or others. The patient understands the treatment plan. It appears the patient has the capacity to make medical decisions.

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 23 Dec 2008 1135

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| Pcat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **12 Dec 2008 1030 CST** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKENNEY,SHEELA R**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
als

AutoCites Refreshed by MCKENNEY, SHEELA R @ 12 Dec 2008 1327 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PARTNER RELATIONAL PROBLEM
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III

**Active Family History**
No Active Family History Found.

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

Screening Written by MCKENNEY, SHEELA R @ 12 Dec 2008 1336 CST
**Reason(s) For Visit (Chief Complaint):** ADJUSTMENT DISORDER WITH DEPRESSED MOOD (Follow-Up) ;

**Vitals**
Vitals Written by MCKENNEY, SHEELA R @ 12 Dec 2008 1334 CST
Tobacco Use: No, Alcohol Use: Yes, Alcohol Comments: SM admits to increased use after recent problems but reports that now he is drinking only 1-2 beers per week. He reports that he is attending meetings every Tuesday when the leaders meet., Pain Scale: 0 Pain Free

SO Note Written by MCKENNEY,SHEELA R @ 12 Dec 2008 1336 CST
**Reason for Visit**
Visit for: follow up.
**History of present illness**
The Patient is a 36 year old male. Source of patient information was patient.
Visit is GWOT-related SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. He was a combat commander.
Loneliness, depression, sleep disturbances 3-4 hours per night, anhedonia, and apathy. Not wishing to be dead, not thinking about suicide, not having a suicide plan, no stated intent to commit suicide, and no previous suicide attempt. No homicidal thoughts. Absence of motivation and marital problems.
Patient not accompanied.
SM reflected on job duties in Iraq, stressors involved in changes in duties, assignments, chaos, loss of soldiers, and transition back to noncombat zone. He recognizes that he has had a change in attitude since returning from Iraq because of his frustrations with those experiences. He indicated that other people might have been able to process his situations better than he had but that he had initially become unmotivated at work and at home. He felt that nothing really mattered. He reported that his brief affair of 3

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| [illegible]: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| [illegible]: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000530

12 Dec 2008 1426
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKENNEY, SHEELA R

months was over and that he felt motivated to work on his marriage because he felt like he owed it to his wife to do so. He reports that she had always been there for him. He thinks he loves her. He is currently being investigated by CID due to conduct unbecoming an officer, adultry, and assault. He reports that his wife went to RACH 3 days after their altercation. He reported that she had a bruise on her face from when he hit her. LPD became involved because the incident occurred off post. He went to court on 9 December and has new court date on 26 December regarding possible charges. He is represented by a civilian attorney. There is a no contact order because LPD have pressed charges. SM's wife has dropped her charges. SM reports that his command has been supportive through the investigation and he continues to do his regular job. He is currently residing in his old house and his wife is living in their new home. He denies having any contact with her. He was open to attending post deployment clinic and being assessed for medication to assist in reducing depression and increasing sleep.

**Personal history**

Behavioral history: Under stress. No tobacco use and no self-damaging behavior.
Alcohol: Alcohol use.
Drug use: Not using drugs.
Antisocial: Legal problems or arrests.
Home environment: Owns home. No guns in the home.

**Review of systems**

**Systemic symptoms:** Feeling as well as can be expected and feeling tired (fatigue).

**Physical findings**

**General appearance:**

• General appearance: ° Well-appearing. ° Awake. ° Alert. ° Oriented to time, place, and person. ° Well developed. ° Well nourished. ° Well hydrated. ° Active. ° In no acute distress.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Appearance was abnormal. • Appearance was tired. • Mood was unhappy. • Mood was concerned. • Affect was quiet. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Mood was calm. ° Affect was congruent with the mood. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Objective**

Plan: SM will attend post deployment clinic orientation, intake, and obtain treatment plan. He will continue with 1:1 individual CBT and cognitive reframing in order to reduce his symptoms of depression and improve his sleep. He will follow up with psychiatry for assessment for medications regarding his depression and insomnia. Treatment plan and goals were discussed with and agreed on by SM.

A/P Written by MCKENNEY, SHEELA R @ 12 Dec 2008 1331 CST

**1. PARTNER RELATIONAL PROBLEM:** SI/HI Risk: Low

Procedure(s): -Social Work Individual Outpatient Counseling 20-30 Minutes x 1

**2. ADJUSTMENT DISORDER WITH DEPRESSED MOOD**

**3. ALCOHOL ABUSE - EPISODIC**

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**5. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**6. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** AXIS V: GAF - 60

Disposition Written by MCKENNEY, SHEELA R @ 12 Dec 2008 1334 CST

**Released w/o Limitations**

**Follow up:** as needed with PCM and/or in the MENTAL HEALTH clinic. - Comments: SM scheduled for Intake to Post Deployment Clinic on 29 December 2008 for orientatiion at 1000 and Intake at 1400. SM scheduled for follow up 1:1 CBT with MsMcKenney on 23 December 2008 at 0900. Sm scheduled for Intake with psychiatry on 22 December 2008 at 0900 with Dr. Smith.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
30 minutes face-to-face/floor time..

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/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 |
| FMP/SSN: | 20/Redacted PII Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| Pcat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

12 Dec 2008 1426

**Facility:** Reynolds Army Community Hospital Ft. Sill, OK **Clinic:** Mental Health **Provider:** MCKENNEY, SHEELA R

**Signed By MCKENNEY, SHEELA R** (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 12 Dec 2008 1403

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

FMP/SSN: 20/Redacted PII Redacted PII
Sex: M
Sponsor/SSN: DANIELS, DERRICK TORAINO/Redacted PII
Tel H: Redacted PII
Rank: CAPTAIN
Tel W: 229-518-4204
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
PCat: A11.1 USA ACTIVE DUTY OFFICER
CS:
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
MC Status: TRICARE PRIME (ACTIVE DUTY)
Status:
PCM: SANTORY-ORTIZ,JULIO
Insurance: No
Tel. PCM: 912 435-5594

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **20 Oct 2008 1000 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **MCKENNEY,SHEELA R**

**Reason for Appointment:**
**Appointment Comments:**
bne

AutoCites Refreshed by MCKENNEY, SHEELA R @ 20 Oct 2008 1052 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE

**Active Family History**
No Active Family History Found.

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

**Vitals**
**Vitals** Written by MCKENNEY, SHEELA R @ 22 Oct 2008 1550 CDT
Tobacco Use: No, Alcohol Use: Yes, Alcohol Comments: significantly decreased, Pain Scale: 0 Pain Free

**SO Note** Written by MCKENNEY,SHEELA R @ 22 Oct 2008 1550 CDT
**Reason for Visit**
Visit for: Follow up.
**History of present illness**
The Patient is a 36 year old male. Source of patient information was patient.
Visit is GWOT-related SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. He was a combat commander.
Mood was euthymic, no fear, no high irritability, no hostility, not grieving, no hypersensitivity, no emotional lability, and no loneliness. Depression but continues to decline. He has been so busy with his new home, getting involved in his new work project, and working on marital relationship he has not had much time to be depressed. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, no stated intent to commit suicide, and no previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported. Marital problems SM admitted to marital problems stemming back to the time when they first married. He had gotten another woman pregnant and she had an abortion. SM married his wife and she felt like he did it for the wrong reasons. She has never felt like he really loved her. He validated some of her feelings. He wants to start marriage counseling and plans to do so. No behavioral complaints.
Patient not accompanied.
**Physical findings**
**General appearance:**
- General appearance: ° Well-appearing. ° Awake. ° Alert. ° Oriented to time, place, and person. ° Well developed. ° Well nourished. ° Well hydrated. ° Active. ° In no acute distress.

**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Mood was calm. ° Affect was normal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.
**Objective**

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| Pcat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel: PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000533

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

**20 Oct 2008 1048**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKENNEY, SHEELA R**

SM wants to continue to come to therapy. He reports that he finds it helpful to talk to someone. SM states that he will be out of town to Delaware from 24 October to 2nd week of November. His 10 year old nephew Jarvaris is coming to stay with them for a couple of months. He reports that this is his wife's nephew and that he is looking forward to having him here. SM is also being promoted on 12/1 and his parents are coming out for that event. Plan: continue to follow up with rapport building and therapy. As SM is showing improvement regarding his career, other problems are beginning to surface.

**A/P** Written by MCKENNEY, SHEELA R @ 22 Oct 2008 1603 CDT

**1. ADJUSTMENT DISORDER WITH DEPRESSED MOOD**
Procedure(s): -Social Work Individual Outpatient Counseling 45-50 Minutes x 1
**2. ALCOHOL ABUSE - IN REMISSION**
**3. visit for: military services physical***(OCCUPATIONAL EXAMINATION)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**6. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** AXIS V: GAF - 72

**Disposition** Written by MCKENNEY, SHEELA R @ 22 Oct 2008 1607 CDT
**Released w/o Limitations**
**Follow up:** as needed with PCM and/or in the MENTAL HEALTH clinic. - Comments: SM to follow up on 10 November 2008 at 1000.
45 minutes face-to-face/floor time..

**Note** Written by MCKENNEY, SHEELA R @ 22 Oct 2008 1603 CDT
**Progress**
GAF

Intake - 85
Last Session - 75
Current - 80

**Signed By MCKENNEY, SHEELA R** (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 22 Oct 2008 1607

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **26 Sep 2008 1000 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **MCKENNEY,SHEELA R**

**Reason for Appointment:**
**Appointment Comments:**
dms

AutoCites Refreshed by MCKENNEY, SHEELA R @ 26 Sep 2008 1025 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE

**Active Family History**
No Active Family History Found.

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

Screening Written by MCKENNEY, SHEELA R @ 29 Sep 2008 0834 CDT
**Reason(s) For Visit (Chief Complaint):** ADJUSTMENT DISORDER WITH DEPRESSED MOOD (Follow-Up) ;

**Vitals**
**Vitals** Written by MCKENNEY, SHEELA R @ 29 Sep 2008 0834 CDT
Tobacco Use: No, Alcohol Use: Yes, Alcohol Comments: SM reports that his etoh intake has decreased significantly., Pain Scale: 0 Pain Free

**SO Note** Written by MCKENNEY,SHEELA R @ 29 Sep 2008 0834 CDT
**Reason for Visit**
Visit for: Follow up.
**History of present illness**
The Patient is a 36 year old male. Source of patient information was patient.
Visit is GWOT-related SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. He was a combat commander.
Mood was euthymic, no fear, no high irritability, no hostility, not grieving, no hypersensitivity, no emotional lability, and no loneliness. Depression but less so than last visit. SM reports that he had found a PI project at work and he was excited about working on that. He reports that he considers it an important and worthwile project and feels good about his involvement. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, no stated intent to commit suicide, and no previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no interpersonal relationship problems. No behavioral complaints.
Patient not accompanied.
**Personal history**
SM is busy with moving but has spoken to several friends about the movie theater in Moore and plans to go soon.
Behavioral history: Not under stress SM reports that his wife and he are very busy moving into their new home. They have not had time to think about anything because they are unpacking and getting the house in order, no tobacco use, and no self-damaging behavior.
Alcohol: Not using alcohol.
Drug use: Not using drugs.
Antisocial: No legal problems or arrests.
Habits: Sleep habits. No lack of adequate sleep SM is getting between 7-8 hours per night.
Home environment: Owns home. The living environment is satisfactory. Guns in the home SM reports having a 9 mm automatic somewhere. He says his wife has it somewhere. The racial background is black SM reports that he was an only child and that his wife is significantly younger than her siblings. They have been married 9 years with no children. Parents of both are in Georgia.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

FMP/SSN: 20/Redacted PII
: Redacted PII
t: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:

Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel. PCM: 912 435-5594

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505

000535

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

26 Sep 2008 1104

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKENNEY, SHEELA R

Abuse / neglect: No abuse/neglect.
Activities: Watching movies.
Functional status: No lack of social support.

Physical findings

**General appearance:**

- General appearance: ° Well-appearing. ° Awake. ° Alert. ° Oriented to time, place, and person. ° Well developed. ° Well nourished. ° Well hydrated. ° Active. ° In no acute distress.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Mood was euthymic. ° Affect was normal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

Objective

SM finds that talking to someone else has proven helpful to him. Plan to continue to stress the benefits that can be identified in his life and focus on the importance of his roles. Follow up appointments were scheduled.

A/P Written by MCKENNEY, SHEELA R @ 26 Sep 2008 1027 CDT

**1. ADJUSTMENT DISORDER WITH DEPRESSED MOOD**
Procedure(s): -Social Work Individual Outpatient Counseling 20-30 Minutes x 1
**2. ALCOHOL ABUSE - IN REMISSION**
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. visit for: military services physical***(OCCUPATIONAL EXAMINATION)*
**6. AXIS IV PROBLEMS OCCUPATIONAL:** AXIS V: GAF - 75

Disposition Written by MCKENNEY, SHEELA R @ 29 Sep 2008 0841 CDT

**Released w/o Limitations**
**Follow up:** as needed with PCM and/or in the MENTAL HEALTH clinic. - Comments: follow up appointment scheduled for 15th of October at 0900.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
45 minutes face-to-face/floor time..

**Signed By MCKENNEY, SHEELA R** (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 29 Sep 2008 0841

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| [illegible]: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| [illegible]t: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505

000536

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **12 Sep 2008 1400 EDT** Appt Type: **EST**
Treatment Facility: **LLOYD C. HAWKS TMC** Clinic: **Psychiatry Clinic** Provider: **LEONG, ERIC N**
Patient Status: **Outpatient**

# See AHLTA for Encounter Details

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| [illegible]: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| [illegible]t: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505

000537

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **18 Aug 2008 0835 CDT** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DODD,DAVID S**
Patient Status: **Outpatient**

**Reason for Appointment:** sod walk in

AutoCites Refreshed by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT

**Problems**
- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA

**Active Family History**
No Active Family History Found.

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

**Vitals**
**Vitals** Written by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT
Tobacco Use: Yes, Alcohol Use: Yes, Pain Scale: 0 Pain Free

**SO Note** Written by GROVE,SHERRY L @ 18 Aug 2008 1010 CDT
**History of present illness**
The Patient is a 35 year old male.

He reported: Encounter Background Information: This is a 35 year old African American, married male Active Duty Army CPT who walked in to CMHS this morning accompanied by his wife to see the SOD. SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. SM & wife report that since his return he has had an increase in drinking (2 beers or 2 liquor shots every night). He also reports depressive symptoms, irritability, uncomfortableness in crowds, lack of motivation, inpatience, fatigue, problems relaxing, and erectile dysfunction. SM stated that he wanted to get help several months ago, but he never followed through. SM relayed that his wife told him today that if he didn't come to CMHS, she would go to his Commander & tell him about SM's problems.

Psychological symptoms SM appeared neatly dressed and groomed in ACU's, appeared alert, oriented, & in no acute distress. SM denies SI/HI, denies perceptual distortions, denies psychotic symptoms. SM's wife relayed that SM has mentioned wanting to kill himself. Wife relayed that SM bought her a gun for her protection while he was deployed. Wife says when SM drinks, he'll say stuff like "Where's the gun-I'll blow my brains out right now". SM's speech appeared normal with regards to rate, tone, & flow. SM's mood appeared depressed with affect congruent. Risk issues appear minimal to moderate @ this time. SM informed of CMHS & RACH emergency protocol procedures should he become acutely distressed or decompensate.

**Subjective**
Will staff case with Dr. Dodd. R/O Depressive D/O NOS, R/O Alcohol Abuse. SM may benefit from medications, & he is amenable to taking them. SM is not amenable to groups, & he would prefer 1:1 therapy for post deployment related issues. Also, SM & his wife are interested in Marital counseling, & may need a referral to Social Work Services. SM & wife were informed of CMHS & RACH emergency protocol procedures should they become acutely distressed or decompensate. Taught SM & wife some breathing techniques & progressive muscle relaxation exercises, which they engaged in. They were encouraged to engage in the exercises @ home also. SM & wife will f/u as needed and scheduled with their primary providers.

A/P Written by DODD, DAVID S @ 19 Aug 2008 0659 CDT
**1. ALCOHOL ABUSE**
Procedure(s): -Psychiatric Therapy Individual Approximately 45-50 Minutes x 1

**Disposition** Written by DODD, DAVID S @ 19 Aug 2008 0700 CDT
**Released w/o Limitations**
**Follow up:** as needed . - Comments: sm agreed to go to the ASAP program. Also set up appt for intake. clarified emergency

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII
Sex: M | Sponsor/SSN: DANIELS, DERRICK TORAINO/Redacted PII
FMP/SSN: 20/Redacted PII | Tel H: Redacted PII | Rank: CAPTAIN
DOB: Redacted PII | Tel W: 229-518-4204 | Unit: WAQNK1 (0003 AR HQ 01 DET K1)
PCat: A11.1 USA ACTIVE DUTY OFFICER | CS: | Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
MC Status: TRICARE PRIME (ACTIVE DUTY) | Status: | PCM: SANTORY-ORTIZ,JULIO
Insurance: No | Tel. PCM: 912 435-5594

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

**18 Aug 2008 0936**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DODD, DAVID S**

services and how to access them. discussed need to dispose of weapon for a while until his mood and alcohol use stablize/improve. Wife will help with this treatment plan implementation.

50 minutes face-to-face/floor time..

**Signed By DODD, DAVID S** (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 19 Aug 2008 0701

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| D | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PC | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE
24 Mar 2009 1559
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

thoughts however, noted "rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level decrease from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 25 Mar 2009 0839 CDT

**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**

**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

Procedure(s): -Clinical Social Work Counseling Group x 1

**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**5. military deployment**

Disposition Written by MCKEEVER, BRAD E @ 25 Mar 2009 0840 CDT

**Released w/o Limitations**

**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 25 Mar 2009 0829 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality**: Cognitive Behavioral

**Presenting Problem**: Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed Dumb Anger vs. Rightous Anger, strong focus on staying in the congnitive mode, thinking before acting, and knowing that when you are mad about everything, no one understands when you are agry about something. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 25 Mar 2009 0840

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII
Sex: M | Sponsor/SSN: DANIELS, DERRICK TORAINO/Redacted PII
FMP/SSN: 20/Redacted PII | Tel H: Redacted PII | Rank: CAPTAIN
DOB: Redacted PII | Tel W: 229-518-4204 | Unit: WAQNK1 (0003 AR HQ 01 DET K1)
PCat: A11.1 USA ACTIVE DUTY OFFICER | CS: | Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
MC Status: TRICARE PRIME (ACTIVE DUTY) | Status: | PCM: SANTORY-ORTIZ,JULIO
Insurance: No | Tel. PCM: 912 435-5594
CHRONOLOGICAL RECORD OF MEDICAL CARE STANDARD FORM 600 (REV. 5)
000540

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

24 Mar 2009 1559
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE STANDARD FORM 600 (REV. 5)
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579) UNAUTHORIZED ACCESS Prescribed by GSA and ICMR
000541

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **20 Mar 2009 1300 CDT** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** Group
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 20 Mar 2009 1300
---------------------------
PRM

AutoCites Refreshed by MCKEEVER, BRAD E @ 20 Mar 2009 1432 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by MCKEEVER,BRAD E @ 20 Mar 2009 1533 CDT
**Reason for Visit**
Visit for: post deployment symptoms: anger/depression.

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

20 Mar 2009 1401
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.

Visit is GWOT-related.

Not thinking about suicide noted "never" on Question 8 on OQ45, despite recent attempt, (see prior notes) and no homicidal thoughts however, noted "rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level decrease from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 20 Mar 2009 1534 CDT

1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
   Procedure(s): -Clinical Social Work Counseling Group x 1
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
5. **military deployment**

Disposition Written by MCKEEVER, BRAD E @ 20 Mar 2009 1534 CDT
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 20 Mar 2009 1432 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed Grounding and Hypervigilance Avoidance tech., strong focus on relearning reaction responses ingrained downrange, with emphisis on keeping the good and functional, and letting go of the negative. . (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

20 Mar 2009 1401

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

**Signed By** MCKEEVER, BRAD E (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 20 Mar 2009 1535

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **18 Mar 2009 1501 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **PROC**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:** Risk T. p.c.

AutoCites Refreshed by DOWLING, JAMES E @ 18 Mar 2009 1503 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

A/P Written by DOWLING, JAMES E @ 18 Mar 2009 1505 CDT

**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS):** Continue individual therapy and risk monitoring
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 20-30 Minutes x 1

Disposition Written by DOWLING, JAMES E @ 18 Mar 2009 1506 CDT

**Released w/o Limitations**

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS:. | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

**18 Mar 2009 1602**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**Follow up:** 3 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
30 minutes face-to-face/floor time..

Note Written by DOWLING, JAMES E @ 18 Mar 2009 1503 CDT

1. Casewill be staffed/discussed in Risk Team Meeting on 19 March 09 .

2. SM is considered to be at High risk for dangerousness or impulsively acting out in a disruptive manner post hospitalization post suicide gesture . Per clinic SOP, SM will be evaluated weekly (high risk will be seen weekly and if moderate risk will at least be contacted weekly) to monitor progress and assess risk.

3. Will work on mood stabilization, risk reduction, impulse control and command-soldier cooperation. SM will be evaluated weekly until their risk is either stabilized or reduced sufficiently to take them off the risk tracking list.

4. Weekly contact and documentation will verify follow through.

5. Special Circumstances: none

6. SM is scheduled to return on: 23 March 09 Last seen 18 March 09

Signed By DOWLING, JAMES E (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 18 Mar 2009 1506

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **18 Mar 2009 0830 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:** per Dr. dowing
**Appointment Comments:**
als

AutoCites Refreshed by DOWLING, JAMES E @ 18 Mar 2009 1246 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by DOWLING,JAMES E @ 18 Mar 2009 1246 CDT

**Chief complaint**
The Chief Complaint is: No complaints today.
**Reason for Visit**
Visit for: This was a scheduled followup visit for risk assessment and monitoring.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**18 Mar 2009 0959**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: Service member is dealing with anticipation of disciplinary action.

Visit is GWOT-related.

Anxiety, depression, and sleep Service member reports he is getting 6 hours of sleep with no complaints. Normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Marital problems. No behavioral complaints.

Subjective

Service member discussed a work related issues. He states he feels he is doing well on his job.

Physical findings

**General appearance:**

° Normal.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: ° Normal.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Mood was dysthymic. • Affect was full-ranging. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Spiritual assessment:**

• Faith provides strength and comfort.

Objective

Service member reports and appears to be doing well at this time. We'll continue to monitor closely and help him maintain a realistic towards his current situation.

A/P Written by DOWLING, JAMES E @ 18 Mar 2009 1252 CDT

1. **ADJUSTMENT DISORDER WITH DEPRESSED MOOD**: Continue individual therapy and risk monitoring
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 20-30 Minutes x 1
2. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** Marital problems, occupational problems GAF 60
5. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

Disposition Written by DOWLING, JAMES E @ 18 Mar 2009 1252 CDT

**Released w/o Limitations**

**Follow up:** as needed in 2 day(s) in the MENTAL HEALTH clinic or sooner if there are problems. - Comments: I will be gone for the next 2 days, and struck the service member to come in on Friday to check in with the SOD

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.

30 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 18 Mar 2009 1253

**Name/SSN: DANIELS, DERRICK TORAINO**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **13 Mar 2009 1302 CDT** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** Group
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 13 Mar 2009 1302

prm

AutoCites Refreshed by MCKEEVER, BRAD E @ 13 Mar 2009 1458 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by MCKEEVER,BRAD E @ 13 Mar 2009 1500 CDT

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**13 Mar 2009 1403**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

Reason for Visit

Visit for: post deployment symptoms: anger/depression.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.

Visit is GWOT-related.

Not thinking about suicide noted "never" on Question 8 on OQ45, despite recent attempt, (see prior notes) and no homicidal thoughts however, noted "rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level decrease from our last session.

A/P Written by MCKEEVER, BRAD E @ 13 Mar 2009 1502 CDT

**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**

**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

Procedure(s): -Clinical Social Work Counseling Group x 1

**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**5. military deployment**

Disposition Written by MCKEEVER, BRAD E @ 13 Mar 2009 1502 CDT

**Released w/o Limitations**

**Follow up:** as needed in week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 13 Mar 2009 1500 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed Safe Talk, limiting discussions of prior trauma events to appropriate outlets, reducing alienation of spouses or family members, and learning basic self assertivness in dealing with voyeuristic strangers or aqaintances. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

13 Mar 2009 1403
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 13 Mar 2009 1503

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS Prescribed by GSA and ICMR

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **13 Mar 2009 1100 CDT** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
keb

AutoCites Refreshed by DOWLING, JAMES E @ 13 Mar 2009 1146 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- SUICIDE ATTEMPT - HANGING
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**SO Note** Written by DOWLING,JAMES E @ 13 Mar 2009 1148 CDT

**Chief complaint**
The Chief Complaint is: Angry because he feels that some of his coworkers do not step up and carry there share of the load.

**Reason for Visit**
Visit for: This is a scheduled followup visit for individual therapy and risk monitoring.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **24 Mar 2009 1458 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **GRP**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:** PDC/anger management

**AutoCites** Refreshed by MCKEEVER, BRAD E @ 25 Mar 2009 0807 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**SO Note** Written by MCKEEVER,BRAD E @ 25 Mar 2009 0838 CDT

**Reason for Visit**

Visit for: post deployment symptoms: anger/depression.

**History of present illness**

The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.
Not thinking about suicide noted "never" on Question 8 on OQ45, despite recent attempt, (see prior notes) and no homicidal

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

02 Jun 2011 1319
**Facility: Winn ACH, Fort Stewart, GA Clinic: TBI Psychology Clinic Provider: AVILES-SALGADO, MARIA D**

Limits of Confidentiality Reviewed with patient, patient verbally acknowledged understanding and signature obtained..

**Physical findings**

**General appearance:**
° Awake. ° Alert. ° Oriented to time, place, and person. ° In no acute distress.

**Neurological:**
° No hallucinations. ° Mental status was normal.
Speech: ° Normal. ° Sufficient nonverbal communication skills were demonstrated.

**Psychiatric Exam:**
Appearance: ° Normal.
Demonstrated Behavior: ° Behavior demonstrated no abnormalities.
Attitude: ° Not abnormal.
Mood: ° Euthymic "fine".
Affect: ° Congruent with the mood.
Thought Processes: ° Not impaired.
Thought Content: ° Revealed no impairment . ° Insight was intact. ° No suicidal ideation. ° No suicidal plans. ° No suicidal intent. ° No homicidal ideations. ° No homicidal plans. ° No homicidal intent.

**Spiritual assessment:**
° Not specified.
Judgment: Good.

A/P Written by AVILES-SALGADO,MARIA D @ 22 Jun 2011 1727 EDT
**1. visit for: administrative purpose**
Procedure(s): -Psychiatric Therapy Individual Approximately 20-30 Minutes x 1
Consult(s): -Referred To: BEHAVIORAL HEALTH - ADULT (Routine) Specialty: Clinic: BEHAVIORAL HEALTH CLINIC Primary Diagnosis: visit for: administrative purpose Order Date: 06/22/2011 17:26

Disposition Written by AVILES-SALGADO,MARIA D @ 22 Jun 2011 1727 EDT
**Released w/o Limitations**
**Follow up:** as needed with PCM.
**Administrative Options:** Consultation requested

Note Written by MUNRO-MORRIS,TRACEY M @ 02 Jun 2011 1436 EDT
PRIVACY ACT AND LIMITS OF CONFIDENTIALITY

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**02 Jun 2011 1319**

**Facility: Winn ACH, Fort Stewart, GA Clinic: TBI Psychology Clinic Provider: AVILES-SALGADO, MARIA D**

**MEDICAL RECORD-SUPPLEMENTAL MEDICAL DATA**

For use of this form, see AR 40-66; the proponent agency is the Office of The Surgeon General.

REPORT TITLE: LIMITS OF CONFIDENTIALITY AND INFORMED CONSENT TO CARE (BH CLINICS)

For use of this form, see MEDCOM Suppl 1 to AR 40-66; the proponent agency is the Office of The Surgeon General.

OTSG APPROVED (Date) (YYYYMMDD)

As part of your healthcare team, our goal is to provide you with quality care as well as protect the privacy of your personal information. The care we provide you may include, but is not limited to, assessment, referral, individual therapy, couples therapy, family therapy, group therapy, and psychiatric evaluation and medications.

As your providers, we will document information about your visits in your military health record (written and electronic) to ensure continuity of care. Your health record is maintained as the property of the U.S. Government. In the majority of cases, we will not disclose any of your personal information nor confirm/deny that we have met with you unless you provide us with written authorization to disclose your personal information. There are just a few exceptions, however, under which we may be required to release your personal information without obtaining your prior authorization. However, we will discuss these with you at the beginning of treatment and throughout treatment, whenever possible. For example:

1. Safety: If you threaten to harm yourself, we may seek hospitalization and/or contact others to ensure your safety. If you threaten serious bodily harm to another, we are required to take protective actions, such as contacting the victim, police, chain of command, or seeking hospitalization.

2. Abuse: If we believe that a child, spouse, or vulnerable adult is being abused, we may be required to file a report.

3. Legal: If you are involved in legal actions/proceedings, your records may be subject to subpoena or lawful directive from a court. Under the Uniform Code of Military Justice (UCMJ), we have a limited "privileged communication" that may prevent your records from being disclosed in legal proceedings. This privilege is not absolute and there may be situations involving some violations of the UCMJ or civil law where we may be required to divulge this information to the chain of command and/or other authorities. If you have any concerns related to this, please contact an attorney.

4. Fitness for Duty/Command-Directed Referrals: If you are command-referred, your chain of command will not be authorized to view your medical record, but is entitled to limited information pertinent to any duty limitation or restriction, security clearance, or treatment that might affect duty performance or jeopardize the safety of yourself or co-workers.

5. Care Coordination: Because we operate as a team with other healthcare staff to provide you the best possible services, other members of the military medical system are permitted access to your record. In most cases, your information will not be disclosed outside the clinic/hospital setting without your written permission.

6. Quality Care Review: Quality assurance personnel may review your record to ensure that care standards are being met. If this occurs, the reviewer is required to keep your identity confidential.

If you have any questions or concerns, please feel free to discuss it with us.

[illegible]

I have read the above and understand that clinical information about me will be safeguarded within the limitations mentioned above and under the provisions of the Privacy Act - DD Form 2005 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996.

Patient/Caregiver Signature: [signature] Date: 2 Jun 11

I have explained the nature of the assessment and treatment(s) including benefits and risks of proposed and alternative treatments.

| PREPARED BY (Signature & Title) | DEPARTMENT/SERVICE/CLINIC | DATE (YYYYMMDD) |
| --- | --- | --- |
| | | |

PATIENT'S IDENTIFICATION (For typed or written entries give: Name - last, first, middle; grade; date; hospital or medical facility)

- ☐ HISTORY/PHYSICAL
- ☐ FLOW CHART
- ☐ OTHER EXAMINATION OR EVALUATION
- ☐ OTHER (Specify)
- ☐ DIAGNOSTIC STUDIES
- ☐ TREATMENT

DA FORM 4700, FEB 2008 EDITION OF MAY 78 IS OBSOLETE. MEDCOM OVERPRINT 44, FEB 2011

APD PE v1.01ES MC PE v1.00

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**02 Jun 2011 1319**
**Facility: Winn ACH, Fort Stewart, GA Clinic: TBI Psychology Clinic Provider: AVILES-SALGADO, MARIA D**

PRIVACY ACT STATEMENT - HEALTH CARE RECORDS

THIS FORM IS NOT A CONSENT FORM TO RELEASE OR USE HEALTH CARE INFORMATION PERTAINING TO YOU.

1. AUTHORITY FOR COLLECTION OF INFORMATION INCLUDING SOCIAL SECURITY NUMBER (SSN)

Sections 133, 1071-87, 3012, 5031 and 8012, title 10, United States Code and Executive Order 9397.

2. PRINCIPAL PURPOSES FOR WHICH INFORMATION IS INTENDED TO BE USED

This form provides you the advice required by The Privacy Act of 1974. The personal information will facilitate and document your health care. The Social Security Number (SSN) of member or sponsor is required to identify and retrieve health care records.

3. ROUTINE USES

The primary use of this information is to provide, plan and coordinate health care. As prior to enactment of the Privacy Act, other possible uses are to: Aid in preventive health and communicable disease control programs and report medical conditions required by law to federal, state and local agencies; compile statistical data; conduct research; teach; determine suitability of persons for service or assignments; adjudicate claims and determine benefits; other lawful purposes, including law enforcement and litigation; conduct authorized investigations; evaluate care rendered; determine professional certification and hospital accreditation; provide physical qualifications of patients to agencies of federal, state, or local government upon request in the pursuit of their official duties.

4. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL OF NOT PROVIDING INFORMATION

In the case of military personnel, the requested information is mandatory because of the need to document all active duty medical incidents in view of future rights and benefits. In the case of all other personnel/beneficiaries, the requested information is voluntary. If the requested information is not furnished, comprehensive health care may not be possible, but CARE WILL NOT BE DENIED.

This all inclusive Privacy Act Statement will apply to all requests for personal information made by health care treatment personnel or for medical/dental treatment purposes and will become a permanent part of your health care record.

Your signature merely acknowledges that you have been advised of the foregoing. If requested, a copy of this form will be furnished to you.

| SIGNATURE OF PATIENT OR SPONSOR | SSN OF MEMBER OR SPONSOR | DATE |
|---|---|---|
| [signature] | 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 | 2 June 11 |

DD FORM 2005, FEB 76 PREVIOUS EDITION IS OBSOLETE.

**Signed By AVILES-SALGADO, MARIA D** (Psychology Clinic, CIV, Licensed Clinical Psychologist, Winn Army Community Hospital, Fort Stewart, GA 31314) @ 22 Jun 2011 1727

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **WINN ACH**
Patient Status: **Outpatient**

Date: **12 Apr 2011 1012 EDT**
Clinic: **SRP SOCIAL WORK CLINIC**

Appt Type: **ACUT**
Provider: **RIOS,CHERIE**

**Reason for Appointment:** In processing

AutoCites Refreshed by RIOS,CHERIE @ 12 Apr 2011 1012 EDT

**Problems**

**Chronic:**

- Chronic post-traumatic stress disorder
- Post-traumatic stress disorder
- Axis V global assessment of functioning (GAF) scale
- Dysthymic disorder
- Conditions influencing health status
- Visit for: military services physical for accession
- Depression
- Visit for: administrative purposes
- Military deployment
- Adult physical abuse
- Adjustment disorder with anxiety and depressed mood
- Primary support group problems
- Anxiety disorder NOS
- Burns
- The patient was overweight
- Essential hypertension
- Visit for: ears/hearing exam
- Psychiatric diagnosis or condition deferred on axis III
- Psychiatric diagnosis or condition deferred on axis II
- Visit for: military services physical
- Alcohol abuse - episodic
- Adjustment disorder with depressed mood
- Alcohol abuse - in remission
- Alcohol abuse
- Hypermetropia
- Regular astigmatism
- Shoulder joint pain
- Knee joint pain
- Condition was work-related
- Astigmatism
- Anomalies of hair
- Tinea nigra
- Olecranon bursitis

**Family History**

- Of heart disease

**Allergies**

- No Known Allergies

**Active Medications**

No Active Medications Found.

A/P Written by RIOS,CHERIE @ 12 Apr 2011 1013 EDT

**1. visit for: administrative purpose**

Disposition Written by RIOS,CHERIE @ 12 Apr 2011 1013 EDT

**Released w/o Limitations**

**Follow up:** as needed .

Note Written by RIOS,CHERIE @ 12 Apr 2011 1012 EDT

**Purpose of Visit: Behavioral Health Screening:**

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

12 Apr 2011 1012
ility: Winn ACH, Fort Stewart, GA Clinic: SRP Social Work Clinic Provider: RIOS, CHERIE

Name: Daniels, Derrick
Unit: 1/306TH IN
Time in Service: 16 years

Rank: CPT
MOS: 19A

SSN: Redacted PII
Telephone # Redacted PII

**Previous Mental Health Treatment:**

Military One Source: no (☑) yes (☐)
Behavioral Health Clinic: no(☐) yes (☑)
Inpatient no (☐) yes (☑) when: Red River Jan 2009 for suicide attempt
SWS no (☐) yes (☑)
ASAP no (☐) yes (☑)

**Medication:** no (☑) yes (☐) see CHCS

**Current Mental Health Status:**

Depression Symptoms no (☑) yes (☐)
Anxiety Symptoms no (☑) yes (☐)
SI/HI no (☑) yes (☐)

**Referral:**

SM redeployed in Dec 2010 for the third time. SM records reflected a history of anxiety and depression. SM reported being last seen in 2009 for adjustment related issues. SM reproted completing FAP in 2009. SM reported completing ASAP in 2009. SM reported no present concerns.
Technician provided SM with a list of Behavioral Health Services located at Fort Stewart, HAA , and in the surrounding community.

**Signed By RIOS, CHERIE** (Physician/Workstation) @ 12 Apr 2011 1015

me/SSN: DANIELS, DERRICK TORAINO Redacted PII

FMP/SSN: 20/Redacted PII
DOB: Redacted PII
PCat: A11.1 USA ACTIVE DUTY OFFICER
MC Status: TRICARE PRIME (ACTIVE DUTY)
Insurance: No

Sex: M
Tel H: Redacted PII
Tel W: 229-518-4204
CS:
Status:

Sponsor/SSN: DANIELS, DERRICK TORAINO Redacted PII
Rank: CAPTAIN
Unit: WAQNK1 (0003 AR HQ 01 DET K1)
Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
PCM: SANTORY-ORTIZ,JULIO
Tel PCM: 912 435-5594

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **21 Sep 2009 1337 CDT** Appt Type: **PROC**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:** Behavioral Health Post Clearance Chart Review
**Appointment Comments:**
Notes Entered by: CARRUTHERS, CHRISTINE A 21 Sep 2009 1337

---

CC

AutoCites Refreshed by CARRUTHERS, CHRISTINE A @ 21 Sep 2009 1338 CDT

**Problems**
- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER
- CHRONIC POST-TRAUMATIC STRESS DISORDER

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN | 3 of 3 | 27 Mar 2009 |

**me/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINRedacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**21 Sep 2009 1438**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

| | | | | |
|---|---|---|---|---|
| | | EMPTY STOMACH, OR UD #30 RF3 | | |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**SO Note** Written by CARRUTHERS,CHRISTINE A @ 21 Sep 2009 1339 CDT
**History of present illness**
The Patient is a 37 year old male.

REVIEW OF ALTHA RECORDS TO DETERMINE IF SM IS CLEARED/NOT CLEARED TO LEAVE FT SILL IAW NEW DOD DIRECTIVE THAT ALL SM'S WHO PCS WILL BE CLEARED BY BEHAVIORAL HEALTH.

**A/P** Written by CARRUTHERS, CHRISTINE A @ 21 Sep 2009 1340 CDT
**1. visit for: administrative purpose**
Procedure(s): -Psychiatric Evaluation Review of Records and Reports x 1

**Disposition** Written by DOWLING, JAMES E @ 21 Sep 2009 1354 CDT
**Released w/o Limitations**
**Follow up:** in the MENTAL HEALTH clinic.
20 minutes face-to-face/floor time..

**Note** Written by CARRUTHERS, CHRISTINE A @ 21 Sep 2009 1340 CDT
This service member has been seen by CBHS since Aug 08. He is currently assigned to Dr. Dowling last being seen on 19 May 09. According to provider, SM is doing well with no SI/HI/risk. SM further has received services through Family Advocacy and Social Work and is scheduled to see ASAP on 29 Sept 09.

Cleared for PCS. He seems to be deployable upon this review (OTSG/MEDCOM policy memo 09-047 dated 21-SEPT 09).

RISK: Per SM's provider, assessed low; not overtly noted high for imminent risk to himself or others.

Actions needed: None

SM is cleared

Criteria for Community Behavioral Health Service Clearance

1. Are there any behavioral health notes in the ALTHA system? Are there any psychiatric medications listed on their ALTHA notes? If the answer is NO to both, they will be cleared to PCS without any further action.
2. If someone has been seen and it appears that their condition is so severe that they would pose an imminent risk to themselves or others or that it would be unsafe to PCS at this time? Do they need a transfer to the WTU Warrior in Transition Unit or do they require a MEB for a behavioral health problem? If yes to any of the above, they will NOT be cleared.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

21 Sep 2009 1438

lity: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

3. If someone has been seen by behavioral health in the past but they do not clearly meet the criteria for NOT being cleared, the file will be reviewed to include how recent was the last visit, what was the nature of the problem/symptoms/diagnosis, what the outcome was and the stability over time. Are they taking medications currently, and any other clinically significant variables? The service member will not be cleared initially until the service member can be contacted via telephone or in person to discuss the cases to ensure a clear understanding of their current functioning, current needs, and to give them the opportunity for any necessary services. Communication with command will be IAW the DoD Directive on the Release of PHI to commanders.

Signed By DOWLING, JAMES E (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 21 Sep 2009 1505

me/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

000561

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **26 Aug 2009 1000 CDT** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **SOCIAL WORK** Provider: **FINKELSTEIN,ROBERT**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
ejt

**AutoCites** Refreshed by FINKELSTEIN, ROBERT @ 26 Aug 2009 1206 CDT

**Problems**
- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PARTNER RELATIONAL PROBLEM
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**26 Aug 2009 1057**
**ity: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Social Work Provider: FINKELSTEIN, ROBERT**

**Screening** Written by FINKELSTEIN, ROBERT @ 26 Aug 2009 1208 CDT
**Reason(s) For Visit (Chief Complaint):** PARTNER RELATIONAL PROBLEM (Follow-Up) ; POST-TRAUMATIC STRESS DISORDER (Follow-Up) ; DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS) (Follow-Up) ; ALCOHOL ABUSE - IN REMISSION (Follow-Up) ; ALCOHOL ABUSE - EPISODIC (Follow-Up) ; ADJUSTMENT DISORDER WITH DEPRESSED MOOD (Follow-Up) ;

**Vitals**
**Vitals** Written by FINKELSTEIN, ROBERT @ 26 Aug 2009 1208 CDT
Pain Scale: 2/10 Mild, Pain Scale Comments: separation and other stresses.

**SO Note** Written by FINKELSTEIN,ROBERT @ 26 Aug 2009 1209 CDT
**Chief complaint**
The Chief Complaint is: Initial Visit. PT states that him and his wife have been having maritle problems since April 2008 when he got back from Iraq. PT states that he started drinking heavily and was unfaithful to his wife. He states that there was domestic violence and he got a letter of reprimand. They have been seperated for 9 months and now are wanting to fix thier marriage in order to stay married. Initial Visit. PT states that him and his wife have been having maritle problems since April 2008 when he got back from Iraq. PT states that he started drinking heavily and was unfaithful to his wife. He states that there was domestic violence and he got a letter of reprimand. They have been seperated for 9 months and now are wanting to fix thier marriage in order to stay married.
**Referred here**
Self. self.
**History of present illness**
The Patient is a 37 year old male. Source of patient information was patient. Past medical history reviewed: Reviewed Autocite Content : Reviewed Autocite Content.
In the Army for. Currently on active duty. Visit is deployment-related.
No previous suicide attempt.
Background Information -PT is a 37 yo Married Black male Active duty Captain. Background Information -PT is a 37 yo Married Black male Active duty Captain.
**Past medical/surgical history**
**Reported History:**
Past medical history None None.
Medical: Patient reported no PMH.
Surgical / procedural: Surgical / procedural history: Reviewed: None : Reviewed: None.
Reported medications: Medication history: Reviewed Autocite Content : Reviewed Autocite Content. Not taking medication and no over-the-counter medications.
**Diagnosis History:**
Depression Had depression when returning from Iraq. Currently not depressed. Had depression when returning from Iraq. Currently not depressed
**Personal history**
: Reviewed : Reviewed.
Behavioral history: Caffeine use Some Coffee Some Coffee.
Alcohol: Alcohol use 3 Beers a week. 3 Beers a week.
Drug use: Not using drugs.
Antisocial: No history of committing homicide.
Habits: Exercising regularly.
Home environment: No difficulty understanding spoken English and no difficulty reading English.
Abuse / neglect: No abuse/neglect.
Education: Has high school diploma and bachelors degree completed Has masters degree in Business Leadership. Has masters degree in Business Leadership.
Military: Military history CPT, Been in army for 14 years. 1 deployment to Iraq. CPT, Been in army for 14 years. 1 deployment to Iraq.
Financial status: Financial status.
Marital: Currently married. Not previously married. Currently separated Been seperated for 9 months. Been seperated for 9 months.
Family: Family social history Is and only child. Parents never divorced and was raised by both parents. PT states that his relationship with family is good. Is and only child. Parents never divorced and was raised by both parents. PT states that his relationship with family is good.
Functional status: No lack of social support from the community Currently Using [ ]
Recommended to seek [ ] Currently Using [ ]
Recommended to seek [ ].
Developmental HX: Met all developmental milestones on time. Developmental HX: Met all developmental milestones on time.

**ame/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

**26 Aug 2009 1057**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Social Work Provider: FINKELSTEIN, ROBERT**

Family history

: Reviewed in Problem List : Reviewed in Problem List

Alcoholism Had some alcoholism upon returning from Iraq, none currently. Had some alcoholism upon returning from Iraq, none currently.

Review of systems

**Systemic symptoms:** Not feeling tired (fatigue). Recent weight change Gained weight since returning from Iraq. Gained weight since returning from Iraq.

**Neurological symptoms:** No decrease in concentrating ability.

**Psychological symptoms:** No anxiety, no depression, no sleep disturbances, no loss of interest in activities, no increased energy, no violent behavior, no low self-esteem, not feeling guilty, and not being upset by problems at home or work. No disturbing or unusual thoughts, feelings, or sensations, no delusions, and no hallucinations. No interpersonal relationship problems, not regularly taking risks, no inappropriate laughing, joking, punning, not more talkative than usual, and not having an inflated self-esteem.

Physical findings

**General appearance:**

• Not well-appearing. • In acute distress. ° Normal. ° Alert. ° Oriented to time, place, and person. ° Patient did not appear uncomfortable.

**Neurological:**

° No hallucinations. ° Recent memory was not impaired. ° Judgement was not impaired.

Speech: ° Normal. ° Volume was not decreased. ° Volume was not increased. ° Fluent. ° No articulation abnormalities. ° Sufficient eye contact was observed. ° Facial expressions were sufficient.

**Psychiatric Exam:**

• Mood was anxious. ° Appearance was not tired. ° Clothing was appropriate. ° Grooming was normal. ° Appearance was not older than the stated age. ° Appearance was not younger than the stated age. ° No psychomotor retardation. ° Behavior demonstrated no psychomotor restlessness. ° Behavior demonstrated no psychomotor agitation. ° Attitude was not abnormal. ° Attitude was not distractible. ° Attitude was not guarded. ° Attitude was not evasive. ° Attitude was cooperative. ° Attitude was not hostile. ° Attitude was not shy. ° Mood was euthymic. ° Affect was normal. ° Affect was congruent with the mood. ° Thought processes were not impaired. ° Thought content revealed no impairment. ° Insight was intact. ° No obsessions. ° No paranoid ideations. ° No delusions. ° Dangerousness assessment: no suicide ideation. ° Dangerousness assessment: no suicide plan. ° Dangerousness assessment: no suicide intent. ° Dangerousness assessment: no homicide ideation. ° Dangerousness assessment: no homicide plan. ° Dangerousness assessment: no homicide intent.

**Spiritual assessment:**

• Faith provides strength and comfort. ° No concerns about faith were expressed \\\\\\\\ Patient informed how to obtain chaplain services. ° No loss of faith was expressed.

Tests

OQ45 Total Score:
Critical Items Reviewed: 26 Aug. 09
Previous Score: 64.

Therapy

• No psychiatric therapy.

Notes

I saw and evaluated the patient. I discussed the case with the supervisee and agree with the findings and plan as documented.

Practice Management

Care plan oversight services
Patient Strengths: verbal
Barriers to treatment: binge drinking, poor coping skills
Problem(s)
1.marital conflict
2.binge drinking
Objective(s) (by problem # with each objective having an identifiable target date)
1.to resolve issues in 3-6 months
2.to attend ASAP, etc., as scheduled
Interventions (by problem #)
1.couple tx 8-10 sessions
2.attending alcohol program regularly

Date Reviewed or Discussed w Patient. 26 Aug. 09

A/P Written by FINKELSTEIN, ROBERT @ 26 Aug 2009 1216 CDT

**1. PARTNER RELATIONAL PROBLEM**

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

**26 Aug 2009 1057**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Social Work Provider: FINKELSTEIN, ROBERT**

**2. CHRONIC POST-TRAUMATIC STRESS DISORDER**
**3. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**
**4. ALCOHOL ABUSE**
Procedure(s): -Psychiatric Therapy Marital x 1

Disposition Written by FINKELSTEIN, ROBERT @ 26 Aug 2009 1216 CDT
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) for therapy 1 week(s) in the SOCIAL WORK clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

Note Written by FINKELSTEIN, ROBERT @ 26 Aug 2009 1217 CDT
**TX AXIS**

AXISI: PTSD, 305.00, 300.4, v61.10
AXISII: v71.09
AXISIII: Hypertension
AXISIV: marital conflict, childless, PTSD, physical abuse
AXISV: Current: 61

Risk Assessment: low to moderate, with criteria of PTSD, 300.4, physical abuse, marital conflict.
No past or present SI/HI. No current incidents. No safety or weapons issues reported.

**Signed By FINKELSTEIN, ROBERT** (Social Worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 26 Aug 2009 1232

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **21 Aug 2009 0900 CDT** Appt Type: **SPEC**
Treatment Facility: **REYNOLDS ACH** Clinic: **SOCIAL WORK** Provider: **FINKELSTEIN,ROBERT**
Patient Status: **Outpatient**

**Reason for Appointment:** Spec Appt.
**Appointment Comments:**
Its

AutoCites Refreshed by RANDALL, STEVEN A @ 24 Aug 2009 0901 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PARTNER RELATIONAL PROBLEM
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Family History**

- Heart disease

**Allergies**

- No Known Allergies

**me/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**21 Aug 2009 1030**
**ity: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Social Work Provider: FINKELSTEIN, ROBERT**

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

Screening Written by RANDALL, STEVEN A @ 24 Aug 2009 0903 CDT
**Reason(s) For Visit (Chief Complaint):** MARITAL PROBLEM (New) ;

**Vitals**
**Vitals** Written by RANDALL, STEVEN A @ 24 Aug 2009 0903 CDT
Pain Scale: 0 Pain Free

**SO Note** Written by RANDALL,STEVEN A @ 24 Aug 2009 0903 CDT
**Chief complaint**
The Chief Complaint is: Initial Visit. PT states that him and his wife have been having maritle problems since April 2008 when he got back from Iraq. PT states that he started drinking heavily and was unfaithful to his wife. He states that there was domestic violence and he got a letter of reprimand. They have been seperated for 9 months and now are wanting to fix thier marriage in order to stay married.
**Referred here**
Self.
**History of present illness**
The Patient is a 37 year old male.
He reported: Past medical history reviewed: Reviewed Autocite Content.
In the Army for 14 years and visit is deployment-related.
No previous suicide attempt.
Background Information -PT is a 37 yo Married Black male Active duty Captain.
**Past medical/surgical history**
**Reported History:**
Past medical history None.
Medical: Patient reported no PMH.
Surgical / procedural: Surgical / procedural history: Reviewed: None.
Reported medications: Medication history: Reviewed Autocite Content. Not taking medication and no over-the-counter medications.
**Diagnosis History:**
Depression Had depression when returning from Iraq. Currently not depressed
**Personal history**
Developmental HX: Met all developmental milestones on time.
: Reviewed.
Behavioral history: Caffeine use Some Coffee.
Alcohol: Alcohol use 3 Beers a week.
Drug use: Not using drugs.
Antisocial: No history of committing homicide.
Habits: Exercising regularly.
Home environment: No difficulty understanding spoken English and no difficulty reading English.
Abuse / neglect: No abuse/neglect.
Education: Has high school diploma and bachelors degree completed Has masters degree in Business Leadership.
Military: Military history CPT, Been in army for 14 years. 1 deployment to Iraq.
Financial status: Financial status.
Marital: Currently married. Not previously married. Currently separated Been seperated for 9 months.
Family: Family social history Is and only child. Parents never divorced and was raised by both parents. PT states that his relationship with family is good.
Functional status: No lack of social support from the community Currently Using [ ]
Recommended to seek [ ].
**Family history**
: Reviewed in Problem List
Alcoholism Had some alcoholism upon returning from Iraq, none currently.

**ame/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

21 Aug 2009 1030
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Social Work Provider: FINKELSTEIN, ROBERT

Review of systems

Systemic symptoms: Recent weight change Gained weight since returning from Iraq.

Physical findings

General appearance:
° Normal. ° Well-appearing. ° Alert. ° Oriented to time, place, and person. ° In no acute distress. ° Patient did not appear uncomfortable.

Neurological:
° No hallucinations. ° Recent memory was not impaired. ° Judgement was not impaired.
Speech: ° Normal. ° Volume was not decreased. ° Volume was not increased. ° Fluent. ° No articulation abnormalities. ° Sufficient eye contact was observed. ° Facial expressions were sufficient.

Psychiatric Exam:
• Mood was happy. • Affect was broad. • Affect was full-ranging. ° Appearance was not tired. ° Clothing was appropriate. ° Grooming was normal. ° Appearance was not older than the stated age. ° Appearance was not younger than the stated age. ° No psychomotor retardation. ° Behavior demonstrated no psychomotor restlessness. ° Behavior demonstrated no psychomotor agitation. ° Attitude was not abnormal. ° Attitude was not distractible. ° Attitude was not guarded. ° Attitude was not evasive. ° Attitude was cooperative. ° Attitude was not hostile. ° Attitude was not shy. ° Mood was euthymic. ° Mood was calm. ° Affect was normal. ° Affect was congruent with the mood. ° Thought processes were not impaired. ° Thought content revealed no impairment. ° Insight was intact. ° No obsessions. ° No paranoid ideations.. ° No delusions. ° Dangerousness assessment: no suicide ideation. ° Dangerousness assessment: no suicide plan. ° Dangerousness assessment: no suicide intent. ° Dangerousness assessment: no homicide ideation. ° Dangerousness assessment: no homicide plan. ° Dangerousness assessment: no homicide intent.

Spiritual assessment:
• Spiritual assessment Believes in God.

Therapy
• No psychiatric therapy.

SO Note Written by FINKELSTEIN,ROBERT @ 24 Aug 2009 1026 CDT

Chief complaint

The Chief Complaint is: Initial Visit. PT states that him and his wife have been having maritle problems since April 2008 when he got back from Iraq. PT states that he started drinking heavily and was unfaithful to his wife. He states that there was domestic violence and he got a letter of reprimand. They have been seperated for 9 months and now are wanting to fix thier marriage in order to stay married.

Referred here

Self.

History of present illness

The Patient is a 37 year old male.
He reported: Past medical history reviewed: Reviewed Autocite Content.
In the Army for 14 years and visit is deployment-related.
No previous suicide attempt.

Background Information -PT is a 37 yo Married Black male Active duty Captain.

Past medical/surgical history

Reported History:
Past medical history None.
Medical: Patient reported no PMH.
Surgical / procedural: Surgical / procedural history: Reviewed: None.
Reported medications: Medication history: Reviewed Autocite Content. Not taking medication and no over-the-counter medications.

Diagnosis History:
Depression Had depression when returning from Iraq. Currently not depressed

Personal history

Developmental HX: Met all developmental milestones on time.
: Reviewed.
Behavioral history: Caffeine use Some Coffee.
Alcohol: Alcohol use 3 Beers a week.
Drug use: Not using drugs.
Antisocial: No history of committing homicide.
Habits: Exercising regularly.
Home environment: No difficulty understanding spoken English and no difficulty reading English.
Abuse / neglect: No abuse/neglect.
Education: Has high school diploma and bachelors degree completed Has masters degree in Business Leadership.
Military: Military history CPT, Been in army for 14 years. 1 deployment to Iraq.

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

21 Aug 2009 1030

**lity: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Social Work Provider: FINKELSTEIN, ROBERT**

Financial status: Financial status.
Marital: Currently married. Not previously married. Currently separated Been seperated for 9 months.
Family: Family social history Is and only child. Parents never divorced and was raised by both parents. PT states that his relationship with family is good.
Functional status: No lack of social support from the community Currently Using [ ]
Recommended to seek [ ].

**Family history**
: Reviewed in Problem List
Alcoholism Had some alcoholism upon returning from Iraq, none currently.

**Review of systems**
**Systemic symptoms:** Recent weight change Gained weight since returning from Iraq.

**Physical findings**
**General appearance:**
° Normal. ° Well-appearing. ° Alert. ° Oriented to time, place, and person. ° In no acute distress. ° Patient did not appear uncomfortable.

**Neurological:**
° No hallucinations. ° Recent memory was not impaired. ° Judgement was not impaired.
Speech: ° Normal. ° Volume was not decreased. ° Volume was not increased. ° Fluent. ° No articulation abnormalities.
° Sufficient eye contact was observed. ° Facial expressions were sufficient.

**Psychiatric Exam:**
• Mood was happy. • Affect was broad. • Affect was full-ranging. ° Appearance was not tired. ° Clothing was appropriate. ° Grooming was normal. ° Appearance was not older than the stated age. ° Appearance was not younger than the stated age. ° No psychomotor retardation. ° Behavior demonstrated no psychomotor restlessness. ° Behavior demonstrated no psychomotor agitation. ° Attitude was not abnormal. ° Attitude was not distractible. ° Attitude was not guarded. ° Attitude was not evasive. ° Attitude was cooperative. ° Attitude was not hostile. ° Attitude was not shy. ° Mood was euthymic. ° Mood was calm. ° Affect was normal. ° Affect was congruent with the mood. ° Thought processes were not impaired. ° Thought content revealed no impairment. ° Insight was intact. ° No obsessions. ° No paranoid ideations. ° No delusions. ° Dangerousness assessment: no suicide ideation. ° Dangerousness assessment: no suicide plan. ° Dangerousness assessment: no suicide intent. ° Dangerousness assessment: no homicide ideation. ° Dangerousness assessment: no homicide plan. ° Dangerousness assessment: no homicide intent.

**Spiritual assessment:**
• Spiritual assessment Believes in God.

**Therapy**
• No psychiatric therapy.

**Notes**
I saw and evaluated the patient. I discussed the case with the supervisee and agree with the findings and plan as documented.

**A/P** Last updated by FINKELSTEIN, ROBERT @ 24 Aug 2009 1026 CDT
**1. PARTNER RELATIONAL PROBLEM**
Procedure(s): -Psychiatric Evaluation Comprehensive Examination x 1

**Disposition** Last updated by FINKELSTEIN, ROBERT @ 24 Aug 2009 1026 CDT
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) for therapy 3 month(s) in the SOCIAL WORK clinic or sooner if there are problems. - Comments: Dr. Finklestien.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
90 minutes face-to-face/floor time..

**Signed By FINKELSTEIN, ROBERT** (Social Worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 24 Aug 2009 1027

CHANGE HISTORY
*The following Disposition Note Was Overwritten by FINKELSTEIN, ROBERT @ 24 Aug 2009 1026 CDT:*
Disposition section was last updated by FINKELSTEIN, ROBERT @ 24 Aug 2009 1026 CDT - see above.Previous Version of Disposition section was entered/updated by RANDALL, STEVEN A @ 24 Aug 2009 0921 CDT.
**Released w/o Limitations**
**Follow up:** 1 week(s) for therapy 3 month(s) in the SOCIAL WORK clinic or sooner if there are problems. - Comments: Dr. Finklestien.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
90 minutes face-to-face/floor time..
*The following A/P Note Was Overwritten by FINKELSTEIN, ROBERT @ 24 Aug 2009 1026 CDT:*
A/P section was last updated by FINKELSTEIN, ROBERT @ 24 Aug 2009 1026 CDT - see above.Previous Version of A/P section was entered/updated by RANDALL, STEVEN A @ 24 Aug 2009 0920 CDT.

**me/SSN: DANIELS, DERRICK TORAINO/Redacted PII**

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

21 Aug 2009 1030
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Social Work Provider: FINKELSTEIN, ROBERT

1. PARTNER RELATIONAL PROBLEM
Procedure(s): -Psychiatric Evaluation Comprehensive Examination x 1

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **05 May 2009 1429 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **GRP**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:** Anger Management
**Appointment Comments:**
Notes Entered by: BACON, LIZELDA K 05 May 2009 1429

------------------------

lkb

AutoCites Refreshed by MCKEEVER, BRAD E @ 05 May 2009 1532 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |

**me/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINORedacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

05 May 2009 1530
...ility: Reynolds Army Community Hospital Ft. Sill, OK  Clinic: Mental Health  Provider: MCKEEVER, BRAD E

SERTRALINE HCL, 100MG, TABLET, ORAL  Active  TD #30 RF3  3 of 3  24 Feb 2009

SO Note Written by MCKEEVER,BRAD E @ 06 May 2009 1201 CDT
Reason for Visit
Visit for: post deployment symptoms: anger/depression.
History of present illness
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.
Not thinking about suicide noted "never" on Question 8 on OQ45, and no homicidal thoughts noted " rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level improvement from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 06 May 2009 1202 CDT
**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**
**6. AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0):** 65

Disposition Written by MCKEEVER, BRAD E @ 06 May 2009 1203 CDT
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 05 May 2009 1532 CDT
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed The Addiction of Anger, strong focus on adverse and dysfunctional nature of anger reactions. (Cognitive restructuring)

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

...me/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**05 May 2009 1530**
**ility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 06 May 2009 1203

**me/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **04 May 2009 1500 CDT** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:** R/S F/U PER DR DOWLING
**Appointment Comments:**
MMH

AutoCites Refreshed by DOWLING, JAMES E @ 04 May 2009 1538 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD | 3 of 3 | 27 Mar 2009 |

**me/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 . (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

04 May 2009 1601
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

| | | | | |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | #30 RF3 TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by DOWLING,JAMES E @ 05 May 2009 1617 CDT

**Chief complaint**

The Chief Complaint is: Mild depression.

**Reason for Visit**

Visit for: Scheduled followup visit for individual therapy and status monitoring.

**History of present illness**

The Patient is a 36 year old male.

He reported: Encounter Background Information: Service member is still dealing with the effects of disciplinary action taken. He is attempting to appeal to the promotion board to regain his majority. He and his wife are maintaining connections with one another and will explore their relationship once she gets finished with her finals in college. Service member reports the residual effects of depression and anxiety.

Visit is GWOT-related.

Anxiety and depression. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. Being upset by problems at home or work and uncertainty about one's identity. No sexual behavior complaints. Turbulent and damaging interpersonal relationships and marital problems. No behavioral complaints.

**Subjective**

Service member is appealing the promotion board and his wife is finishing her finals in her last semester of college. When these are finished they will focus on their relationship and whether they will remain together or not. Service member feels that by going through the problems he has had recently he has had to engage in extensive self examination and exploration and feels it has been a growth process for him. He is working on developing his self as someone other than a soldier. He recognizes the need to have a social life which he has not had in the past. Discussed the fact that his father may die soon and issues of the family farm which has been in the family far generations. Being land owned by blacks and in the deep South over several generationsis unique and he recognizes the importance of that.

**Physical findings**

**Psychiatric Exam:**

• Mood was dysthymic. • Mood was depressed. • Mood was anxious. • Affect was constricted. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Objective**

SM reports and appears to be doing well at this time. He is working on his promotion appeal and is looking forward to his future. He is not committed to any course with his wife at this time. Will continue to support and monitor.

A/P Written by DOWLING, JAMES E @ 04 May 2009 1540 CDT

1. **ANXIETY DISORDER NOS**: Continue individual therapy
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: GAF 65

Disposition Written by DOWLING, JAMES E @ 04 May 2009 1541 CDT

**Released w/o Limitations**

**Follow up:** 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.

60 minutes face-to-face/floor time..

Signed By **DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 05 May 2009 1621

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| /SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

Patient: **DANIELS, DERRICK TORAINO** Date: **01 May 2009 1309 CDT** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** group
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 01 May 2009 1309

prm

AutoCites Refreshed by MCKEEVER, BRAD E @ 01 May 2009 1406 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN | 3 of 3 | 27 Mar 2009 |

**me/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

000576

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**01 May 2009 1410**

**ility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

| | | | | |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | EMPTY STOMACH, OR UD #30 RF3 TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**SO Note** Written by MCKEEVER,BRAD E @ 01 May 2009 1413 CDT

**Reason for Visit**

Visit for: post deployment symptoms: anger/depression.

**History of present illness**

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.

Visit is GWOT-related.

Not thinking about suicide noted "never" on Question 8 on OQ45, and no homicidal thoughts noted " rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level improvement from our previous sessions.

**A/P** Written by MCKEEVER, BRAD E @ 01 May 2009 1415 CDT

1. **ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
2. **visit for: military services physical**(*POST-DEPLOYMENT EXAMINATION*)
   Procedure(s): -Clinical Social Work Counseling Group x 1
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II**(*OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET*)
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III**(*OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET*)
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**
6. **AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0):** 65

**Disposition** Written by MCKEEVER, BRAD E @ 01 May 2009 1415 CDT

**Released w/o Limitations**

**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

60 minutes face-to-face/floor time..

**Note** Written by MCKEEVER, BRAD E @ 01 May 2009 1407 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed Tips for Sleep Improvement, good interaction, acceptance of tech. (Cognitive restructuring)

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal**

**me/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

01 May 2009 1410
ility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

**actions.**

Signed By MCKEEVER, BRAD E (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 01 May 2009 1415

me/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **28 Apr 2009 1353 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **ACUT**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:** walk in
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 28 Apr 2009 1353

---

prm

**AutoCites** Refreshed by MCKEEVER, BRAD E @ 28 Apr 2009 1608 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN | 3 of 3 | 27 Mar 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**28 Apr 2009 1453**
**ility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E**

| | | | | |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | EMPTY STOMACH, OR UD #30 RF3 TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by MCKEEVER,BRAD E @ 29 Apr 2009 1124 CDT
Reason for Visit
Visit for: post deployment symptoms: anger/depression.
History of present illness
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.
Not thinking about suicide noted "never" on Question 8 on OQ45, and no homicidal thoughts noted " rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level improvement from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 29 Apr 2009 1125 CDT
**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**
**6. AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0):** 65

Disposition Written by MCKEEVER, BRAD E @ 29 Apr 2009 1126 CDT
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 28 Apr 2009 1608 CDT
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality**: Cognitive Behavioral

**Presenting Problem**: Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed the Escalation of Anger, Part II, strong focus on developing and exercising self control, heading off anger at early stages, and adopting the humor alternative. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention,

**me/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**28 Apr 2009 1453**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 29 Apr 2009 1126

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **24 Apr 2009 1300 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:**
**Appointment Comments:**
keb

AutoCites Refreshed by DOWLING, JAMES E @ 24 Apr 2009 1346 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
-
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD | 3 of 3 | 27 Mar 2009 |

**me/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**24 Apr 2009 1357**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | #30 RF3<br>TD #30 RF3 | 3 of 3 | 24 Feb 2009 |
|---|---|---|---|---|

**Vitals**
Vitals Written by DOWLING, JAMES E @ 24 Apr 2009 1346 CDT
Tobacco Use: No, Alcohol Use: No, Pain Scale: 0 Pain Free

**SO Note** Written by DOWLING,JAMES E @ 24 Apr 2009 1349 CDT
**Chief complaint**
The Chief Complaint is: No specific plans but there is uncertainty about his future.
**Reason for Visit**
Visit for: Scheduled followup visit for individual therapy.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Service member has had some marital problems and alcohol abuse issues which led to disciplinary action by the Army. It appears she will be able to remain in the Army and he is now addressing the issue of promotion. He and his wife are also talking and may or may not reconcile. Medication list reviewed No change.
Visit is GWOT-related.
Anxiety. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. Being upset by problems at home or work and concerned about work-related health problems. No sexual behavior complaints. Marital problems. No behavioral complaints.
**Subjective**
Service member discussed his process of growth particularly has has been influenced by the Army. He is exploring what he wants for himself in the future.
**Physical findings**
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was dysthymic. • Mood was anxious. • Affect showed worry. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.
**Spiritual assessment:**
• Spiritual assessment Belief system is important but is not active church.
**Objective**
Service member continues to talk to his wife, he is trying to get enrolled in an upcoming pairs marriage who group. He is continuing the process of self exploration and goal setting. He appears to be coping well and denies any feelings of depression at this time.

**A/P** Written by DOWLING, JAMES E @ 24 Apr 2009 1349 CDT
1. **POST-TRAUMATIC STRESS DISORDER**: Continue individual therapy
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: Marital issues, occupational issues GAF 65

**Disposition** Written by DOWLING, JAMES E @ 24 Apr 2009 1349 CDT
**Released w/o Limitations**
**Follow up:** 2 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

24 Apr 2009 1357
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

60 minutes face-to-face/floor time..

Signed By DOWLING, JAMES E (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 24 Apr 2009 1358

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **21 Apr 2009 1432 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **GRP**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:** Anger Mgmt
**Appointment Comments:**
Notes Entered by: BACA, KERI 21 Apr 2009 1432
----------------------------
keb

AutoCites Refreshed by MCKEEVER, BRAD E @ 22 Apr 2009 1153 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |

me/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**21 Apr 2009 1533**
**...ility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

SERTRALINE HCL, 100MG, TABLET, ORAL Active TD #30 RF3 3 of 3 24 Feb 2009

**SO Note** Written by MCKEEVER,BRAD E @ 22 Apr 2009 1232 CDT
**Reason for Visit**
Visit for: post deployment symptoms: anger/depression.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.
Visit is GWOT-related.
Not thinking about suicide noted "never" on Question 8 on OQ45, and no homicidal thoughts noted " rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level improvement from our previous sessions.

**A/P** Written by MCKEEVER, BRAD E @ 22 Apr 2009 1233 CDT
**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**
**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
Procedure(s): -Clinical Social Work Counseling Group x 1
**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**
**6. AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0):** 65

**Disposition** Written by MCKEEVER, BRAD E @ 22 Apr 2009 1233 CDT
**Released w/o Limitations**
**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
60 minutes face-to-face/floor time..

**Note** Written by MCKEEVER, BRAD E @ 22 Apr 2009 1153 CDT
**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality:** Cognitive Behavioral

**Presenting Problem:** Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed the Escalation of Anger, strong focus on developing and exercising self control, heading off anger at early stages, and adopting the humor alternative. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals:** Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's**

**...me/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

21 Apr 2009 1533
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

**presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 22 Apr 2009 1234

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **17 Apr 2009 1300 CDT** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
prm

**AutoCites** Refreshed by DOWLING, JAMES E @ 17 Apr 2009 1352 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- Inquiry And Counseling: Perpetrator Of Spousal/Partner Abuse
- ADULT PHYSICAL ABUSE
-
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD | 3 of 3 | 27 Mar 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**17 Apr 2009 1355**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | #30 RF3<br>TD #30 RF3 | 3 of 3 | 24 Feb 2009 |
|---|---|---|---|---|

**Vitals**
Vitals Written by DOWLING, JAMES E @ 17 Apr 2009 1402 CDT
Tobacco Use: No, Alcohol Use: No, Pain Scale: 0 Pain Free

**SO Note** Written by DOWLING,JAMES E @ 17 Apr 2009 1354 CDT
**Chief complaint**
The Chief Complaint is: No complaints today.
**Reason for Visit**
Visit for: Scheduled followup visit for individual therapy and risk monitoring.
**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Service member has had marital problems and was facing disciplinary action from the Army. Today he reports he is feeling happy.
Visit is GWOT-related.
Mood was euthymic, no sleep complaints, and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Marital problems Service member continues to have marital problems, he and his wife are talking and may reconcile. They plan to attend the pairs counseling program through the chaplain's office. No behavioral complaints.
**Subjective**
Service member states that he has learned that he is going to be allowed to remain in the Army. His promotion may or may not go through but he will have an opportunity to make an appeal. He is feeling quite happy pleased with the way things turned out after months of waiting. Discussed his future and his relationship with the military structure.
**Physical findings**
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was pleased. • Affect was full-ranging. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Mood was euthymic. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.
**Spiritual assessment:**
• Spiritual assessment Serviceman he states that he has been reading his Bible more frequently. He states that he feels his relationship with God has improved through the trials he has experienced.
**Objective**
Serviceman is quite happy today about his career. We will continue to monitor his status to see that he maintains this mood.

**A/P** Written by DOWLING, JAMES E @ 17 Apr 2009 1354 CDT
1. **DEPRESSION**: Continue individual therapy and risk monitoring
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: GAF 61

**Disposition** Written by DOWLING, JAMES E @ 17 Apr 2009 1354 CDT
**Released w/o Limitations**
**Follow up:** 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**17 Apr 2009 1355**

**F[illegible]y: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 17 Apr 2009 1402

**Name/SSN: DANIELS, DERRICK TORAI**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **13 Apr 2009 0946 CDT** Appt Type: **T-CON***
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Telephone Consult:** Followup

**AutoCites** Refreshed by DOWLING, JAMES E @ 13 Apr 2009 0947 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**13 Apr 2009 1046**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**A/P** Written by DOWLING, JAMES E @ 13 Apr 2009 0948 CDT

**1. ANXIETY DISORDER NOS**

**Disposition** Written by DOWLING, JAMES E @ 13 Apr 2009 0948 CDT

**Note** Written by DOWLING, JAMES E @ 13 Apr 2009 0948 CDT

**Provider Telecon Note**

Called to see if SM had talked with his commander re:discipline. He had not. May talk today, said he would call me when he does. No problems reported, sounded upbeat.

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 13 Apr 2009 0948

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **10 Apr 2009 0830 CDT** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
keb

AutoCites Refreshed by DOWLING, JAMES E @ 10 Apr 2009 1320 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
-
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| /SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| B: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
000593

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**10 Apr 2009 0923**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

SO Note Written by DOWLING,JAMES E @ 10 Apr 2009 1320 CDT

**Chief complaint**

The Chief Complaint is: None stated.

**Reason for Visit**

Visit for: Scheduled followup visit for individual therapy and was monitoring.

**History of present illness**

The Patient is a 36 year old male.

He reported: Encounter Background Information: A service member is being followed for therapy and was monitoring following a suicide attempt. He is facing disciplinary action for inappropriate behaviors. He had no specific complaints today.

Visit is GWOT-related.

Depression. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. Being upset by problems at home or work. No sexual behavior complaints. Turbulent and damaging interpersonal relationships and marital problems. No behavioral complaints.

**Subjective**

Service member statedthat he may need with his commander today about possible disciplinary action but expressed no specific concerns or opinions. Discussed his previous assignments and performance of duties. He stated that he always received good ratings and had never had any disciplinary action in the past. He stated that he and his wife had been talking over the telephone and will be trying to make the relationship work. They have to begin couples counseling. He stated that he has begun keeping a journal of his thoughts and this has transpired him to write a book about his leadership experiences and how they can be applied to small business situations.

**Physical findings**

**General appearance:**

° Normal.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: ° Normal.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Mood was concerned. • Affect was constricted. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Spiritual assessment:**

• Spiritual assessment No change.

**Objective**

Service member appeared to be a bit subdued today. He anticipates speaking with his battalion commander later today concerning the action thatmay be taken against him.

A/P Written by DOWLING, JAMES E @ 10 Apr 2009 1330 CDT

1. **POST-TRAUMATIC STRESS DISORDER**: Continue individual therapy and risk monitoring
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** Marital issues, disciplinary issues GAF 60

Disposition Written by DOWLING, JAMES E @ 10 Apr 2009 1331 CDT

**Released w/o Limitations**

**Follow up:** 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.

60 minutes face-to-face/floor time..

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

10 Apr 2009 0923
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

Signed By DOWLING, JAMES E (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 10 Apr 2009 1331

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ-01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579) UNAUTHORIZED ACCESS Prescribed by GSA and ICMR

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **09 Apr 2009 1323 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **PROC**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:** Risk TPC

AutoCites Refreshed by DOWLING, JAMES E @ 09 Apr 2009 1326 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

me/SSN: DANIELS, DERRICK TORAINO/2Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**09 Apr 2009 1424**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

A/P Written by DOWLING, JAMES E @ 09 Apr 2009 1327 CDT
**1. DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)**
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 20-30 Minutes x 1

Disposition Written by DOWLING, JAMES E @ 09 Apr 2009 1328 CDT
**Released w/o Limitations**
**Follow up:** 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
30 minutes face-to-face/floor time..

Note Written by DOWLING, JAMES E @ 09 Apr 2009 1330 CDT

SM will be taken of the Risk monitoring procedure, he will continue to be followed closely and his status evaluated. He appears to be stable at this time.

1. Case was staffed/discussed in Risk Team Meeting on 9Apr09

2. SM is considered to be at Low risk for dangerousness or impulsively acting out in a disruptive manner post hospitalization post suicide gesture .

6. SM is scheduled to return on: 10Apr09 Last seen 3Apr09

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 09 Apr 2009 1334

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **08 Apr 2009 1503 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **GRP**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:** Group
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 08 Apr 2009 1503

---

prm

AutoCites Refreshed by MCKEEVER, BRAD E @ 08 Apr 2009 1602 CDT

**Problems**
- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579) UNAUTHORIZED ACCESS

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

08 Apr 2009 1604

Facility: Reynolds Army Community Hospital Ft. Sill, OK  Clinic: Mental Health  Provider: MCKEEVER, BRAD E

SERTRALINE HCL, 100MG, TABLET, ORAL  Active  TD #30 RF3  3 of 3  24 Feb 2009

SO Note Written by MCKEEVER,BRAD E @ 08 Apr 2009 1604 CDT

Reason for Visit

Visit for: post deployment symptoms: anger/depression.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.

Visit is GWOT-related.

Not thinking about suicide noted "never" on Question 8 on OQ45, and no homicidal thoughts noted " rarely " on Question 44 of the OQ45, addressing regretable anger, a 1 level improvement from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 08 Apr 2009 1606 CDT

**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**

**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

Procedure(s): -Clinical Social Work Counseling Group x 1

**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**

**6. AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0):** 75

Disposition Written by MCKEEVER, BRAD E @ 08 Apr 2009 1606 CDT

**Released w/o Limitations**

**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 08 Apr 2009 1607 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality**: Cognitive Behavioral

**Presenting Problem**: Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Discussed Inner Strength, strong focus on positive qualities, better perspective, and broadened experience. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was upbeat. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's**

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINORedacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

08 Apr 2009 1604
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKEEVER, BRAD E

presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.

Signed By MCKEEVER, BRAD E (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 08 Apr 2009 1609

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **07 Apr 2009 1420 CDT** Appt Type: **GRP**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **MCKEEVER,BRAD E**
Patient Status: **Outpatient**

**Reason for Appointment:** anger management
**Appointment Comments:**
Notes Entered by: MCQUEEN, PATRICE R 07 Apr 2009 1420
----------------------------
prm

AutoCites Refreshed by MCKEEVER, BRAD E @ 07 Apr 2009 1619 CDT

**Problems**
- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Allergies**
- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

**07 Apr 2009 1521**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKEEVER, BRAD E**

SERTRALINE HCL, 100MG, TABLET, ORAL Active TD #30 RF3 3 of 3 24 Feb 2009

SO Note Written by MCKEEVER,BRAD E @ 07 Apr 2009 1656 CDT

**Reason for Visit**

Visit for: post deployment symptoms: anger/depression.

**History of present illness**

The Patient is a 36 year old male.

He reported: Encounter Background Information: SM came into Post Deployment Clinic, group.

Visit is GWOT-related.

Not thinking about suicide noted "never" on Question 8 on OQ45, despite recent attempt, (see prior notes) and no homicidal thoughts noted " sometimes " on Question 44 of the OQ45, addressing regretable anger, a 2 level decline from our previous sessions.

A/P Written by MCKEEVER, BRAD E @ 07 Apr 2009 1658 CDT

**1. ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD**

**2. visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*

Procedure(s): -Clinical Social Work Counseling Group x 1

**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*

**5. AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**

**6. AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0): 75**

Disposition Written by MCKEEVER, BRAD E @ 07 Apr 2009 1658 CDT

**Released w/o Limitations**

**Follow up:** as needed in 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

60 minutes face-to-face/floor time..

Note Written by MCKEEVER, BRAD E @ 07 Apr 2009 1619 CDT

**Purpose of Visit:** Post Deployment Clinic, Group Session

**Length of Session:** 60 minutes

**Post-deployment Related?** Yes

**Voluntary** Yes

**Therapeutic Modality**: Cognitive Behavioral

**Presenting Problem**: Anger/Depression, Alienation

**Treatment Plan:** Continued group therapy, with brief 1 to 1 follow ups sessions after group if needed.

**Content of the Session:** Group discussed The Anger Continuim, strong focus on self control and belief in thinking can control feelings. (Cognitive restructuring)

**Confidentiality:** Provider explained the basic parameters and limitations of confidentiality per CMHS/RACH policy.

**Progress towards treatment goals**: Good

**Mental Status Exam:** Affect was normal. Speech was normal with regards to rate, tone, and flow. Attention, concentration, and judgment were good. Language was normal with regards to fluency and comprehension. Thought process and content were within normal limits and no evidence of a psychotic process was noted. Mood

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

07 Apr 2009 1521

**Facility:** Reynolds Army Community Hospital Ft. Sill, OK **Clinic:** Mental Health **Provider:** MCKEEVER, BRAD E

was described as "normal". Insight was good. . **No apparent suicidal or homicidal ideation, patient's presentation is of clear, coherent thought process, without plan, intent or target of homicidal or suicidal actions.**

**Signed By MCKEEVER, BRAD E** (licensed clinical social worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 07 Apr 2009 1658

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **03 Apr 2009 1400 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:**
**Appointment Comments:**
prm

AutoCites Refreshed by DOWLING, JAMES E @ 03 Apr 2009 1509 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)
- POST-TRAUMATIC STRESS DISORDER

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD | 3 of 3 | 27 Mar 2009 |

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**03 Apr 2009 1500**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

| | | | | |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | #30 RF3<br>TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**SO Note** Written by DOWLING,JAMES E @ 03 Apr 2009 1512 CDT

**Chief complaint**
The Chief Complaint is: No complaints expressed.

**Reason for Visit**
Visit for: Scheduled followup visit for individual therapy and risk monitoring.

**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information:
Visit is GWOT-related.
Anxiety Mild at this time. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Marital problems. No behavioral complaints.

**Subjective**
Service member discussed his plans to start a journal on the experiences he's been through. Discussed future as a trainer whether in the Army or not. Service member thinks that there maybe work available for him through the VA system if he is out of the Army. Over the weekend serviceman states he plans to go see a movie and havedinner with his wife.

**Physical findings**
**Vital signs:**
• Pain level (0-10) No pain.
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was anxious. • Affect was full-ranging. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

**Objective**
Service member continues to report and display improvement. Discussed the need to continue to abstain from use of alcohol. Service member reports that he and his wife now have a civil relationship and are now able to talk to one another. We'll continue individual therapy and risk monitoring was with an emphasis on reality thinking and problem-solving.

**A/P** Written by DOWLING, JAMES E @ 03 Apr 2009 1512 CDT
1. **POST-TRAUMATIC STRESS DISORDER**: Continue individual therapy and risk monitoring
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical** *(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II** *(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III** *(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: Occupational problems disciplinary action GAF 60

**Disposition** Written by DOWLING, JAMES E @ 03 Apr 2009 1512 CDT
**Released w/o Limitations**
**Follow up:** 5 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 03 Apr 2009 1520

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| : | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

**03 Apr 2009 1500**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

**Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII**

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **02 Apr 2009 1300 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **EST**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:** est. f/u apptmt
**Appointment Comments:**
SLG

AutoCites Refreshed by DOWLING, JAMES E @ 02 Apr 2009 1355 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**02 Apr 2009 1353**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

SO Note Written by DOWLING,JAMES E @ 02 Apr 2009 1411 CDT

**Chief complaint**
The Chief Complaint is: Depression.

**Reason for Visit**
Visit for: Scheduled followup visit for individual therapy.

**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Service member is coping with post combat symptoms and disciplinary issues do to his acting out behavior. Service member continues to complain of experiencing depression.
Visit is GWOT-related.
Depression. No sleep complaints. Anhedonia, social withdrawal, and energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Inability to communicate effectively, turbulent and damaging interpersonal relationships, and marital problems. No behavioral complaints.

**Subjective**
Service member states that he has been in communication with his battalion commander with whom he served in Iraq. Service member states that he had an epiphany, he became aware of the adrenaline high he experienced serving in a combat zone in the after effects of that. He states that he would return to Iraq immediately if offered the chance. He also discussed the difficulties of returning tolife in the United States with family and the adjustment problems that he experienced and continues to experience. He stated that one of the problems was that his wife is not able to understand even when he tried to talk to her about such experiences. This among other things led to a loss of connection with his wife.

**Physical findings**
**Vital signs:**
° Pain level was not reported [*].
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was dysthymic. • Affect was constricted. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.
**Spiritual assessment:**
° Not specified [*].

**Objective**
Service member is actively engaged in self-exploration and growth. Discussed ways that he could maintain newfound insights and make use of them in the future. At this time risk is low. Will continue individual therapy.

A/P Written by DOWLING, JAMES E @ 02 Apr 2009 1410 CDT
1. **POST-TRAUMATIC STRESS DISORDER**: Continue individual therapy continue individual therapy
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: Occupational problems problems financial problems GAF 60

Disposition Written by DOWLING, JAMES E @ 02 Apr 2009 1411 CDT
**Released w/o Limitations**
**Follow up:** 1 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

**Name/SSN: DANIELS, DERRICK TORAINO/**[redacted]

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/[redacted] |
| FMP/SSN: | 20/[redacted] | Tel H: | [redacted] | Rank: | CAPTAIN |
| DOB: | [redacted] | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

02 Apr 2009 1353
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 02 Apr 2009 1420

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO** Date: **30 Mar 2009 0830 CDT** Appt Type: **EST**
Treatment Facility: **REYNOLDS ACH** Clinic: **MENTAL HEALTH** Provider: **DOWLING,JAMES E**
Patient Status: **Outpatient**

**Reason for Appointment:**
**Appointment Comments:**
keb

AutoCites Refreshed by DOWLING, JAMES E @ 30 Mar 2009 0948 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| ZOLPIDEM TARTRATE, 10MG, TABLET, ORAL | Active | T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 | 3 of 3 | 27 Mar 2009 |
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

30 Mar 2009 0938
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

SO Note Written by DOWLING,JAMES E @ 30 Mar 2009 1357 CDT

**Chief complaint**
The Chief Complaint is: No complaints at this time.

**Reason for Visit**
Visit for: Scheduled followup visit for individual therapy and was monitoring.

**History of present illness**
The Patient is a 36 year old male.
He reported: Encounter Background Information: Service members awaiting disciplinary action and made a suicide attempt in the past with hospitalization.
Visit is GWOT-related.
Anxiety. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Marital problems. No behavioral complaints.

**Subjective**
Service member discussed the fact that he had issues from his childhood including inferiority issues and coping with critical parent. Discussed his service in Iraq, he trained an Armor Company prior to deployment and commanded the company for 45 days in country performing infantry type combat missions. His parent battalion commander requested that he take over headquarters Company because he had problems with it. He states that the whole time he had the headquarters battery was high intensity high stress situation. The unit was involved in performing a number of diverse nation building type missions in addition to being exposed to combat situations. He felt as though there was a great deal of pressure on him to see to it that the unit performed and he had no outlet for these stresses so he kept him inside. During his tour he lost 3 soldiers and had to deal with the familys. After 14 months of deployment and in a stressful situation he returns home and begins drinking as his method of coping with the pentup stresses and tensions. This led to a number of problems including marital problems. The service member stated that he feels he had no significant problems until his return from Iraq and assignment at fort sill. He acknowledges having had depression and self-concept issues but he was able to function well and cope with them prior to his deployment.

**Physical findings**
**General appearance:**
° Normal.
**Neurological:**
° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.
Speech: ° Normal.
Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.
**Psychiatric Exam:**
• Mood was dysthymic. • Affect was constricted. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.
**Spiritual assessment:**
• Faith provides strength and comfort.

**Objective**
Service memory continues to appear to be coping well. He is exploring himself he wants for himself. He is open to remaining in the Army are getting out if the disciplinary action goes against him. We'll continue to explore options, provide support and monitor status.

A/P Written by DOWLING, JAMES E @ 30 Mar 2009 1357 CDT
1. **DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS):** Continue individual therapy
Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS:** Disciplinary actions marital problemsGAF65

Disposition Written by DOWLING, JAMES E @ 30 Mar 2009 1357 CDT
**Released w/o Limitations**
**Follow up:** 4 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| /SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

30 Mar 2009 0938

**Facility:** Reynolds Army Community Hospital Ft. Sill, OK **Clinic:** Mental Health **Provider:** DOWLING, JAMES E

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 30 Mar 2009 1403

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| | | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE
STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL 93-579). UNAUTHORIZED ACCESS
000612

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Patient: **DANIELS, DERRICK TORAINO** Date: **27 Mar 2009 1559 CDT** Appt Type: **ACUT**
Treatment Facility: **REYNOLDS ACH** Clinic: **PSYCHIATRY CLINIC** Provider: **TOMLINSON,JACK R.**
Patient Status: **Outpatient**

**Reason for Appointment:** med refill

**AutoCites** Refreshed by TOMLINSON, JACK R @ 27 Mar 2009 1602 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)

**Active Family History**

- Heart disease

**Allergies**

- No Known Allergies

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

FMP/SSN: 20/Redacted PII Sex: M Sponsor/SSN: DANIELS, DERRICK TORAINO/Redacted PII
DOB: Redacted PII Tel H: Redacted PII Rank: CAPTAIN
PCat: A11.1 USA ACTIVE DUTY OFFICER Tel W: 229-518-4204 Unit: WAQNK1 (0003 AR HQ 01 DET K1)
CS: Outpt Rec. Rm: OUTPATIENT RECORD ROOM - AD
MC Status: TRICARE PRIME (ACTIVE DUTY) Status: PCM: SANTORY-ORTIZ,JULIO
Insurance: No Tel. PCM: 912 435-5594

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

27 Mar 2009 1700

Facility: Reynolds Army Community Hospital Ft. Sill, OK   Clinic: Psychiatry Clinic   Provider: TOMLINSON, JACK R

Active Medications

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**SO Note** Written by TOMLINSON,JACK R. @ 27 Mar 2009 1604 CDT

**Reason for Visit**

Visit for: medication refill Service member ran out of Zoloft and Ambien. He is here for a refill.

**History of present illness**

The Patient is a 36 year old male.

He reported: Past medical history reviewed, problem list reviewed, and medication list reviewed with patient.

Military service in the Army, currently on active duty, and visit is GWOT-related.

No systemic symptoms. No head symptoms. No neck symptoms. No eye symptoms. No otolaryngeal symptoms. No breast symptoms. No cardiovascular symptoms. No pulmonary symptoms. No gastrointestinal symptoms. No genitourinary symptoms. No endocrine symptoms. No hematologic symptoms. No musculoskeletal symptoms. No neurological symptoms. No psychological symptoms. No skin symptoms. No allergic/immunologic symptoms.

**Physical findings**

**General appearance:**

• General appearance: • Ill-appearing. • Patient appeared uncomfortable. • Acutely ill. • Chronically ill. • Patient appeared acutely exhausted. • Body odor was abnormal. • Poorly hydrated. ° Well-appearing.

**Neurological:**

° Level of consciousness was normal. ° No decrease in concentrating ability was observed. ° Cognitive functioning was normal. ° Executive functions were not decreased. ° No learning disability was noted.

Speech: ° Normal.

**Psychiatric Exam:**

• Psychiatric Exam: ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Attitude was not abnormal. ° Mood was euthymic. ° Affect was normal. ° Thought processes were not impaired. ° Thought content revealed no impairment. ° No multiple distinct and complex personalities were observed. ° Dangerousness assessment: no suicide risk. ° Dangerousness assessment: no homicide risk. ° Dangerousness assessment: no assault risk. ° Dangerousness assessment: no property damage risk. ° Dangerousness assessment: no self damage risk.

**Spiritual assessment:**

° Not specified.

**A/P** Written by TOMLINSON, JACK R @ 27 Mar 2009 1604 CDT

**1. ADJUSTMENT DISORDER WITH DEPRESSED MOOD:** refill meds zoloft and ambien

Procedure(s): -Psych Ther Indiv Interact Appr 20-30 Min W/ Med Eval Manage x 1
-Psychiatric Evaluation Review of Records and Reports x 1

Medication(s): -ZOLPIDEM-(AMBIEN) 10MG PO TAB (WHITE) - T 1 TAB PO IMMEDIATELY BEFORE BEDTIME ON AN EMPTY STOMACH, OR UD #30 RF3 Qt: 30 Rf: 3

**Disposition** Written by TOMLINSON, JACK R @ 27 Mar 2009 1611 CDT

**Released w/o Limitations**

**Follow up:** as needed in 1 month(s) or sooner if there are problems.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding. - Comments: Service members here for refill of his medications voices no complaints. Return for follow up. No HI SI or risk. Reviewed records and medications.

25 minutes face-to-face/floor time..

**Signed By TOMLINSON, JACK R** (Psychiatrist, Reynolds Army Community Hospital Ft. Sill, OK) @ 27 Mar 2009 1620

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **27 Mar 2009 1507 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **ACUT**
Provider: **DOWLING,JAMES E**

**Reason for Appointment:**
**Appointment Comments:**
Notes Entered by: BACA, KERI 27 Mar 2009 1507

---

keb

AutoCites Refreshed by DOWLING, JAMES E @ 27 Mar 2009 1607 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- 
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)
- AXIS V GLOBAL ASSESS OF FUNCTIONING (GAF) SCALE ___ (100-0)

**Active Medications**

| **Active Medications** | **Status** | **Sig** | **Refills Left** | **Last Filled** |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**27 Mar 2009 1607**

**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DOWLING, JAMES E**

SO Note Written by DOWLING,JAMES E @ 27 Mar 2009 1625 CDT

Chief complaint

The Chief Complaint is: Depression.

Reason for Visit

Visit for: Unscheduled walk-in for individual therapy and responded during.

History of present illness

The Patient is a 36 year old male.

He reported: Encounter Background Information: Soldier is a waiting disciplinary action from higher command.

Visit is GWOT-related.

Depression Mild at this time. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, and no stated intent to commit suicide. A previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no sexual behavior complaints. Turbulent and damaging interpersonal relationships, marital problems, and impulsive behavior resulting in being in physical danger Suicide gesture.

Subjective

Service member feels that he is coping well with the pressures of waiting far the outcome of the disciplinary action. He states that he feels he is prepared and will be able to handle the decision regard less of which way it goes. Service member states that as part of his job he has to supervise student officers working on a war game exercise. He states that he's noticed that doing this exercise his anxiety level increases and he reverts back to the type of behaviors he used in a combat situation in Iraq. He finds himself being more aggressive and assertive louder and confrontive. He states he also has noted that his use of caffeine tends to increase his anxiety and tension level. He states that while he was in Iraq he consumed a great deal of caffeine. Service member states that before going to Iraq there was no significant conflict with his wife. He states that during his tour in Iraq and upon his retum to Germany he felt as though he was under a great deal of stress. He had been placed in charge of the headquarters battery at the request of his battalion commander who felt he could help straighten things out. Service member states that he felt like his transfer from a linebattery to headquarters battery was not something that he desired but that he did when he needed to do to support his commander. He states upon retum from Iraq to Germany there was a great deal of confusion and difficulty in accounting for all of the property that was transported back and forth. He felt as though he were under a lot of pressure to account for everything which is very difficult to do undercircumstances. He states that while he was in Iraq his wife had moved from Germany to fort sill in order to attend school and upon to completion of his tour in Germany he retumed to fort sill also. Service member states that upon arriving at fort sill he still felt as though there was a lot of tension and pressure on him and he had difficulty adjusting to the new requirements.

Physical findings

**General appearance:**

° Normal.

**Neurological:**

° No disorientation was observed. ° No perceptual disturbances were noted. ° An adequate fund of knowledge was demonstrated.

Speech: ° Normal.

Coordination / Cerebellum: ° No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Mood was dysthymic. • Mood was concerned. • Affect was constricted. ° Appearance was normal. ° Behavior demonstrated no abnormalities. ° Behavior demonstrated no psychomotor abnormalities. ° Behavior demonstrated no impulsivity. ° No decreased eye-to-eye contact was observed. ° Attitude was not abnormal. ° Thought processes were not impaired. ° Attention demonstrated no abnormalities. ° Thought content revealed no impairment. ° No suicidal tendency. ° No homicidal tendencies.

Objective

By all indications service member is coping adequately with his situation at this time. He is undergoing a period of intense self-examination and reevaluation of his life and his goals. He appears to be ready to accept whatever outcome the Army he chooses to make concerning his disciplinary action. Risk is felt to be low at this time.

A/P Written by DOWLING, JAMES E @ 27 Mar 2009 1624 CDT

1. **ADJUSTMENT DISORDER WITH DEPRESSED MOOD**: Continue individual therapy and risk monitoring
   Procedure(s): -Psychiat Ther Indiv Interactive Approximately 45-50 Minutes x 1
2. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
3. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
4. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*
5. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**: GAF 61

Disposition Written by DOWLING, JAMES E @ 27 Mar 2009 1625 CDT

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

27 Mar 2009 1607

Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: DOWLING, JAMES E

**Released w/o Limitations**
**Follow up:** 3 day(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.
**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.
60 minutes face-to-face/floor time..

Note Written by DOWLING, JAMES E @ 27 Mar 2009 1612 CDT
Continuation from the subjective section. In addition to adjusting to his new duties he had difficulty readjusting to married life with his wife. She had her interestsand he had difficulty establishing emotional intimacy with her. He turned to alcohol to help relieve his pressures which only caused further problems. He also met a woman who provided another release for him without the responsibilities and obligations of married life. Service member states that at this time his wife says that she would like to try to work on the marriage but he is not sure what he wants to do. He states that he is not even sure he wants to remain in the Army if that option would become available and he is now focusing on trying to figure out his own identity goals and needs. He states that he remains committed to what he sees as his style of leadership in relation to soldiers, he believes that he is able to lead Bysupporting and having positive, respectful relationships with subordinates.

**Signed By DOWLING, JAMES E** (Clinical Psychologist, Reynolds Army Community Hospital Ft. Sill, OK) @ 27 Mar 2009 1630

**Name/SSN: DANIELS, DERRICK TORAINO/**Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

Patient: **DANIELS, DERRICK TORAINO**
Treatment Facility: **REYNOLDS ACH**
Patient Status: **Outpatient**

Date: **27 Mar 2009 1321 CDT**
Clinic: **MENTAL HEALTH**

Appt Type: **GRP**
Provider: **MCKEEVER,BRAD E**

**Reason for Appointment:** Post Deployment Stress Class
**Appointment Comments:**
Notes Entered by: MURIEL, NIXIDA 27 Mar 2009 1321

---

N M

AutoCites Refreshed by MCKEEVER, BRAD E @ 27 Mar 2009 1410 CDT

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE
- ALCOHOL ABUSE - IN REMISSION
- ADJUSTMENT DISORDER WITH DEPRESSED MOOD
- ALCOHOL ABUSE - EPISODIC
- visit for: military services physical
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II
- PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III
- ESSENTIAL HYPERTENSION
- Overweight
- BURNS
- ANXIETY DISORDER NOS
- AXIS IV PROBLEMS PRIMARY SUPPORT GROUP
- ADJUSTMENT DISORDER WITH ANXIETY AND DEPRESSED MOOD
- ADULT PHYSICAL ABUSE
- military deployment
- visit for: administrative purpose
- ADULT MALTREATMENT (VICTIM)
- DEPRESSION
- visit for: military services physical accession
- Conditions influencing health status
- DYSTHYMIC DISORDER (DEPRESSIVE NEUROSIS)

**Allergies**

- No Known Allergies

**Active Medications**

| Active Medications | Status | Sig | Refills Left | Last Filled |
|---|---|---|---|---|
| SERTRALINE HCL, 100MG, TABLET, ORAL | Active | TD #30 RF3 | 3 of 3 | 24 Feb 2009 |

SO Note Written by MCKEEVER,BRAD E @ 27 Mar 2009 1529 CDT

Reason for Visit

Visit for: post deployment symptoms: anger/depression.

History of present illness

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| | | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

Annex M

Progress Notes

Printed On Jan 08, 2013

LOCAL TITLE: PSYCHIATRIST OUTPATIENT NOTE
STANDARD TITLE: PSYCHIATRY OUTPATIENT E & M NOTE
DATE OF NOTE: JAN 08, 2013@10:14 ENTRY DATE: JAN 08, 2013@10:15:05
AUTHOR: SOULE,ARTHUR B III EXP COSIGNER:
URGENCY: STATUS: COMPLETED

Psychiatry
This 40 year old veteran is seen in follow up treatment of PTSD. This brief psychotherapy session includes re-evaluation and management of medication. The current psychiatric regimen consists of [see below].
Current status is that he does have some PTSD from his 3 combat tours in Iraq. Not suicidal at this time. Not presently on medication. He had some difficult times dealing with the death and destruction he witnessed but is doing very well at the present time. He has recurrent intrusive recollections of war and occasional bad dreams of it. Some accentuated startling and hypervigilance are noted. Has made an excellent adjustment to civilian life.
Current medications are: na.
The veteran affirmed that he is on no new medications.
He has no side effects of consequence. He is not suicidal. Alcohol is not reported to be a problem.
On mental status examination the veteran is alert, articulate and appropriate. Mood is anxious but there is no suicidality. Oriented times three. Recent and remote memory intact. Good fund of information. No hallucinations, delusions. Thinking is abstract. Judgment is intact.

Diagnostically, the following is present.
Axis I: PTSD
Axis II: No diagnosis.
Axis V: GAF of 80

The PTSD symptoms which the veteran experiences are scarcely unusual for someone exposed to combat. I do not feel that they have made him unstable in any way and are more a matter of mild occasional discomfort. There is no security clearance issue here-- he is fully competent from a security clearance point of view.

Arthur Soule, M.D.
ACOS/Mental Health

/es/ ARTHUR B SOULE III, MD
MD, PSYCHIATRIST
Signed: 01/08/2013 10:39

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)
DANIELS, DERRICK TORAINO
Redacted PII
Redacted PII

VISTA Electronic Medical Documentation

Printed at TUSKEGEE VAMC

Annex N

Daniels, Derrick T

## You Can Expect Payment

Your payment begins the first day of the month following your effective date. You will receive a payment covering the initial amount due under this award, minus any withholdings. Thereafter, payment will be made at the beginning of each month for the prior month. For example, benefits due for May are paid on or about June 1.

**Your payment will be directed to the financial institution and account number that you specified. To confirm when your payment was deposited, please contact that financial institution.**

***If this account is no longer open,*** please notify us immediately.

## What We Decided

We determined that the following conditions were related to your military service, so service connection has been granted:

| Medical Description | Percent (%) Assigned | Effective Date |
|---|---|---|
| Hypertension with cardiomegaly | 30% | Nov 17, 2012 |
| Anxiety disorder not otherwise specified and major depressive disorder | 30% | Nov 17, 2012 |
| Right elbow strain | 10% | Nov 17, 2012 |
| Degenerative arthritis, left knee | 10% | Nov 17, 2012 |
| Degenerative arthritis, right knee | 10% | Nov 17, 2012 |
| Dermatitis and pseudofolliculitis barbae (claimed as tinea nigra) | 10% | Nov 17, 2012 |
| Degenerative arthritis, left shoulder | 0% | Nov 17, 2012 |
| Ring finger tendon injury status post avulsion fracture, left hand | 0% | Nov 17, 2012 |
| Proximal interphalangeal fracture, middle finger right hand | 0% | Nov 17, 2012 |
| Healed fifth metacarpal fracture, left hand | 0% | Nov 17, 2012 |
| Left ankle, calcaneal spur | 0% | Nov 17, 2012 |
| Burn scar right arm | 0% | Nov 17, 2012 |

An examination will be scheduled at a future date to evaluate the severity of your service connected Hypertension with cardiomegaly.

- Service Treatment Records, from May 15, 1990 through November 9, 2012
- Disability Benefit Questionnaires for: post traumatic stress disorder, hearing loss, hypertension, esophageal, sinusitis, scars, skin, hypertension, heart disease, hand, shoulder, elbow, knee, ankle, and flat foot completed on October 23, 2013, October 21, 2013, and November 20, 2013
- VA examination addendum dated January 27, 2014

**REASONS FOR DECISION**

**1. Service connection for anxiety disorder not otherwise specified and major depressive disorder.**

Service connection for anxiety disorder not otherwise specified and major depressive disorder has been established as directly related to military service.

An evaluation of 30 percent is assigned from November 17, 2012, the day after your release from active duty.

We have assigned a 30 percent evaluation for your anxiety disorder, not otherwise specified based on:
• Difficulty in establishing and maintaining effective work and social relationships
• Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal)
• Anxiety
• Depressed mood
• Mild memory loss

Your Global Assessment of Function (GAF) score is 65. A range of 61-70 indicates some mild symptoms; or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

The overall evidentiary record shows that the severity of your disability most closely approximates the criteria for a 30 percent disability evaluation.

A higher evaluation of 50 percent is not warranted unless there is occupational and social impairment with reduced reliability and productivity due to such symptoms as:
• Flattened affect; circumstantial, circumlocutory, or stereotyped speech;
• Panic attacks more than once a week;
• Difficulty in understanding complex commands;

- Impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks);
- Impaired judgment; impaired abstract thinking;
- Disturbances of motivation and mood;
- Difficulty in establishing and maintaining effective work and social relationships.

**2. Service connection for hypertension with cardiomegaly.**

Service connection for hypertension with cardiomegaly has been established as directly related to military service.

A 30 percent evaluation is assigned from November 17, 2012, the day after your release from active duty. This evaluation is not based on evaluation criteria in the rating schedule for hypertension. The reason this non-schedular evaluation is assigned is because of the presence of cardiomegaly (an enlarged heart/cardiac hypertrophy) that the VA examiner linked directly to your service connected hypertension. As cardiomegaly is not a disease but a symptom of another underlying disease and as the VA examiner link your enlarged heart/cardiac hypertrophy as a direct symptom of your service connected hypertension, a 30 percent is assigned as cardiac hypertrophy is most closely associated with a 30 percent evaluation for other heart diseases in the rating schedule.

A higher evaluation of 40 percent is not warranted unless diastolic pressure is predominantly 120 or more.

Since there is a likelihood of improvement, the assigned evaluation is not considered permanent and is subject to a future review examination.

**3. Service connection for dermatitis and pseudofolliculitis barbae (claimed as tinea nigra).**

Service connection for dermatitis and pseudofolliculitis barbae (claimed as tinea nigra) has been established as directly related to military service.

An evaluation of 10 percent is assigned from November 17, 2012, the day after your release from active duty.

We have assigned a 10 percent evaluation for your dermatitis and pseudofolliculitis barbae (claimed as tinea nigra) based on:

- At least 5 percent, but less than 20 percent, of the entire body affected

Annex O

30 June 2011

Redacted PII

To Whom it may concern:

We are the parents of Derrick Daniels and these are some of the observations noticed about Derrick after his last two tours in Iraq:

We are not sure about the years, we believe from 2003-2004 and from 2007-2008. He seemed jumpy and moving all the time. He was very, very easy to get upset. He would sit and just stare as there were problems he couldn't cope with. He was very depressed at one time he expressed to us his life was over and he didn't want to live.

He developed a drinking problem trying to solve his problems. We believe his drinking problem is better. We believe all his problems can be solved if he continues to get the right medical attention.

Sincerely,

Lauriene Daniels Arthur Daniels

Lauriene Daniels Arthur Daniels

Blanche R. Lewis

My commission expires
March 10, 2015

Annex P

**BOARD PERSONNEL**

| | |
|---|---|
| PRESIDENT | COL Douglas C. Cardinale |
| MEMBER 1 | LTC Stanley P. Fugate |
| MEMBER 2 | LTC Brian K. Hathaway |
| ALTERNATE MEMBER | LTC George E. Lewis |
| RECORDER | CPT Todd Chard |
| REPORTER | SPC Xiara Betancourt |
| LEGAL ADVISOR | CPT Amanda Presson |
| RESPONDENT COUNSEL | CPT Sarah Rykowski |
| RESPONDENT | CPT Derrick T. Daniels<br>Charlie Troop, 5-7th Cavalry Squadron,<br>US Army |

**PROCEEDINGS**

The Board of Inquiry was held at Fort Stewart, Georgia. The Board was called to order at 0940 hours, 18 April 2012.

The Board was appointed by Memorandum of Appointment, Headquarters, 3d Infantry Division, Staff Judge Advocate, dated 21 February 2012. A copy of the Memorandum of Appointment and Notification Memorandum were furnished to each member of the board, to the Respondent and the appointed counsel, and to the Reporter for incorporation as attachments to the record as Enclosures 1 and 2.

The Defense waived the reading of the orders.

All members of the Board were present.

The Legal Advisor, Recorder, Respondent and Respondent's Counsel were all present.

The Reporter was sworn by the Recorder.

The Defense stated that they will not call any member of the Board as a witness in the proceedings.

The Respondent stated his date of rank, 31 October 2010.

The President notified the Respondent of his rights and privileges.

The Defenses stated that the Respondent did not require a complete reading of the rights.

The President asked if there were grounds for challenging.

The Legal Advisor stated there was previous e-mail traffic between LTC Fugate and both Government and Defense.

The Defense stated that they had the email disclosing involvement prior the hearing. The Defense had no objection to LTC Fugate's grounds for challenge. The Defense requested that LTC Fugate's email be included in the board proceedings for filing purposes.

The Government had no challenges.

A voir dire of the members was conducted by the Respondent's Counsel.

The Defense had no objection to any members of the Board.

LTC Lewis, alternate board member, was permanently excused from this Board.

The Respondent's Counsel had no challenges.

The board members were sworn by the Recorder.

The Legal Advisor was sworn by the Recorder.

The Recorder was sworn by the board President.

The Board convened at 1005 hours.

The Government introduced its evidence to Board President for review and its witnesses for argument purposes.

The Defense stated it hadn't seen two pieces of evidence. The Defense had the following objections to the evidence: relevance of the evidence; introducing evidence from a website; to a portion of the regulation introduced; and to Government Exhibit 3.

The President asked the Recorder what was the intent of the evidence.

The Recorder stated that the primarily purpose of Government Exhibit 2 was to outline the definition of Domestic Violence according to AR 600-20.

The Legal Advisor stated that the definition is a regulatory function.

The Recorder presented the second point presented in AR 600-20, para 4-23c(8).

The President stated that AR 600-20, para 4-23c(8) will not be admitted.

The Recorder acknowledged.

The President requested that the Recorder explain the intent of the evidence.

The recorder stated it was to identify the mindset of the Respondent during the course of the adulterous relationship and to rebut his minimization of his recantation.

The Defense stated that the document provided and the Respondent's sworn statement detailed his mindset.

The Defense had no objection to Mrs. Brown's statement.

The Defense stated that the Government Exhibit 1 had no relevance to the case.

The Recorder made a statement.

The President deferred making a decision at this point.

The Recorder made a statement about the Army Weight Control Program in AR 635-200.

The Defense stated the AWCP is in AR 600-9, which applies to both enlisted and officers.

The President admitted the evidence for context purposes.

The Defense stated the discovery issues in getting evidence; the Respondent's intent to move forward with the recording of Detective Peralta; and with the Government's intent to call Detective Peralta as a witness.

The Defense wanted these issues documented for the record. The Defense submitted Defense Exhibit #1: Objections of missing discovery and failure to timely provide access to witness.

The President called a recess at 1030 hours to seek legal advice.

The board reconvened at 1039 hours.

All parties that were present before the board closed were again present.

The Recorder stated he did not intend to call LTC Compton, the 15-6 Investigating Officer, unless the Defense and Board Members desired to speak with him. [LTC Compton was unavailable as a witness due to a change in his working schedule.]

The Defense stated that LTC Compton was not an essential witness and they could make an argument without the witness's testimony.

The Recorder stated that there was an email provided on 11 April 2012 which outlined the witnesses. The Recorder stated that LTC Compton and Dr. Parodi have been available telephonically, they are TDY, and there was no power to subpoena.

The Defense stated that according to regulation, the Defense had 10 days notice of the evidence and witnesses to be presented by the Government.

The Defense stated that they would like the Government to continue efforts to locate the Detective Peralta's recording. CPT Daniels had the opportunity to submit additional matters to the CG and to the Board of Review. If the recording existed and Detective Peralta could get it, Defense wanted the Government to continue to try to get a copy.

The Legal Advisor stated there was nothing prohibiting the Defense from getting the recording if it still existed; the regulation only stated that the Government had to turn in what it had in its possession, and based on the email traffic CPT Chard had done that.

The Defense disagreed with the Legal Advisor's definition of what the Government is; and stated that the Government is United States Government, all state Governments, and all United State's law enforcement. The United States includes county jails, prisons… so the Government is not just CPT Chard.

The Government called Detective Peralta and was duly sworn.

Detective Roberto Peralta, CID, Fort Stewart, Georgia, was called as a witness for the Government, was sworn and testified in substance as follows:

Direct Examination

My name is Roberto Peralta. I am a Sergeant. I was lead patrol at the time. I was a detective at CID. I was involved in CPT Daniels's investigation. I was the primary investigator for the alleged assault that occurred. At that time I wrote a report. The responding officer takes the information. Information was taken from the victim, CPT Daniels' wife. She alleges that she was assaulted by her husband. Mrs. Daniels approached her husband to kiss him and she smelled another woman's vagina on his face and she attacked him. She slapped her husband and I guess his reaction was assaulting her back. I had a chance to speak with CPT Daniels. I did not type the narrative. I did not have the police report at that time. I advised CPT Daniels of his rights/warnings and asked some questions if he assaulted his wife and he said he did. After I did the interview, I went and typed the narrative. I must have gotten the information from one of the two parties. If I typed it in that statement, I got that information from CPT Daniels.

The Defense objected on relevance.

The Legal Advisor stated the Recorder's question was relevant.

The President overruled the objection.

Direct-Examination

I conducted my investigation in a fair and impartial manner. We do not forward it to the state prosecutor for prosecution; this incident was domestic abuse and is a misdemeanor in the state of Oklahoma. The victim has to sign a citizen statement and proceed to obtain charges from the city prosecutor, so it depends upon the victim if she wants to see justice.

No further questions by the Recorder.

Cross-Examination

I am retired from the Army as a First Sergeant. I served 20 years in Field Artillery.

The Recorder objected on relevance.

The President overruled the objection.

Cross-Examination

I retired in 1998 and went to the police academy. I don't investigate adultery, I investigate assault. I was notified on a Friday about this case. I was notified of the incident at approximately eight in the morning. I believe I was in contact with CPT Daniel at his battalion headquarters at about ten thirty to eleven o'clock that morning. The alleged incident occurred on a Sunday, about six days prior reporting. In the state of Oklahoma, if an incident is not reported within 72 hours, is not a requirement that anyone will be arrested. There is no probable cause for arrest if it is older than 72 hours. In the state of Oklahoma, injuries upon the victim must be within 72 hours to establish probable cause. When it is older, the victim has to make an official complaint. Is called a citizen statement and the victim takes that citizen statement to a local prosecutor to defer charges. CPT Daniels admitted he assaulted his wife after she has slapped him. In Oklahoma, we try to establish the person who attacks first or who is the aggressor. The aggressor would be the one apprehended, not both parties. Out of the two, you would have to establish the aggressor. In this case it was Mrs. Daniels who assaulted her husband while he was asleep. I interviewed her later that day. She told me a similar statement. She was informed that she would have to fill in a citizen statement and a family guardian has to be there to assist her. I did not have additional involvement after the interview. If the prosecutor and victim file a charge I would get a subpoena. That was 3 to 4 years ago and I never got a subpoena, so this was never filed or pursued. Based on the prosecution, it is in the case management to put if he stated that he had multiple affairs that may be true. I have no memory of that case. I have not been able to review it yet. As I recall it was one woman. CPT Daniels was extremely cooperative. He could have invoked his right to an attorney and not give a statement, it had no difference, I had nothing against him but he was very cooperative during the investigation. So was his chain of command. I do not recall speaking to LTC Compton. It was recorded, I attempted to find the recording this morning, but I have no knowledge of it or where it could be. Sometimes my office holds onto recordings, but if there is no criminal prosecution then they may go ahead and delete them because of the amount of space that this takes. The first time I heard from CPT Daniels' dismissal from the service was on Monday, two days ago. Yes, it has been four years since that

investigation. If this is based solely on his dismissal upon his service, I think it could be a miscarriage of justice on CPT Daniels. If there was anything else in his record why he should be dismissed I can understand. This is just based solely on this incident that occurred three to four years ago, I think it could be wrong.

No further questions by the Defense.

Questions by LTC Fugate

No, alcohol was not involved.

No further questions by the board members.

Re-direct examination

I was not aware of CPT Daniels' memorandum claiming he assaulted her on two occasions. No, I was not aware of him hitting her one time with a plastic baton in the head and later strangling her. No, my understanding is that he was asleep. I have handled hundreds of domestic violence cases, assault with weapons, murders of children. Yes, but most victims you would have heard sooner. I don't know the victim's motivation was in this case in delaying in going to the law enforcement or the ER. Lots of victims tend to state that they are scared. For some of them that might be true, but we always heard they called the police. I have seen recantation of a spouse who has been a victim of an assault.

The Defense made an objection because the question was not in evidence.

The Legal Advisor said it was an administrative procedure.

Re-direct examination

That might be true (many victim of domestic violence have many different reasons why they might not report or minimize what the report is).

No further questions by the Government.

Re-Cross examination

True and there is also the victim that choses to go forward because they are angry and want to harm the individual's career. Yes, people go forward even when the allegations are not true or exaggerated. There are a lot of reasons for people to choose to go forward or not to go forward. There are many reasons why we can request to delay the reporting. Yes, when the victim showed up to the Reynolds Army Hospital.

No further questions by Defense.

LTC Hathaway

No, all we know is that any victim that shows up to a hospital and show signs of abuse the police is automatically notified. I would not know who called us; that might be between her and the officers.

President

I have done hundreds of domestic violence cases. This case is four years old and I have not had the opportunity to review this case. The reason is I was notified this Monday afternoon, I had the day off; I have not been in my office yet. Yes, the main reason is that this is the first and only case I had of domestic abuse on an army officer on Fort Stewart. I saw a lot of soldiers, but the only commissioned officer I had to investigate of domestic abuse was CPT Daniels case. It was pretty strange that occurred five days before; don't know the motivation to proceed at that time. It stuck out me with the fact that I am a retired first sergeant. I interviewed both CPT Daniels and Mrs. Daniels. At that time she did not wanted to prosecute she said she did not wanted to do anything; however, the family advocacy from Fort Sill was pushing that she files the charge and convinced her to prosecute; if that happened or not I do not know. CPT Daniels was very cooperative. He was not disrespectful at all.

No further questions by the board members.

Re-cross examination

No, I don't believe we discusses if this was the first time of a domestic abuse incident.

No further questions by Defense.

The President stated the witness is excused and not subject to recall.

The Recorder stated that the Government will call Dr. Parodi, who is currently TDY and will not be available until noon.

The Defense stated that they still had three telephonic witnesses and one in person.

The President asked the Defense if she had any evidence to present to build her case.

The Recorder stated that the 15-6 had been included in his packet.

The President asked the Legal Advisor if Defense could go forward because of the Government witness delay.

The Legal Advisor stated the President could proceed if there were no objections.

The President called a recess at 1117 hours.

The board reconvened at 1132 hours.

All parties that were present before the board closed were again present.

The Defense called COL Bennie Williams.

COL Williams was duly sworn in.

COL Bennie Williams, Jr., Retired US Army, was called as a witness for the Defense, was sworn and testified in substance as follows:

Direct examination

My name is Colonel Bennie Williams, Junior. I have been a Colonel since October 2006. I am currently a board member for the Military Review Board within the Army Review Board Agency. I am assigned to the Pentagon with duty in Crystal City. I have been in this duty position since December 2010. My previous duty position was as a Stability Transition Team leader with 1-38 AV at Fort Stewart. I have been in the Army almost twenty years in September. I am an Infantry Officer. The source of my commission is ROTC from South Carolina State University. I deployed in Desert Shield/Storm. I deployed with the STT to Iraq in January 2010 through December 2011. I reported to Fort Stewart in September 2009 in preparation for deployment with the brigade. I know CPT Derrick Daniels. I met Derrick when I reported to Fort Stewart along with 35 other officers. When I met him, like him, I was like many other officers going through training on how to perform my STT duties as well as integrating into the unit. I was able to see his duty performance, mostly within a classroom environment or training environment on post, but nothing outside Fort Stewart at that time. He came to work with me during part of the train up and mostly when we deployed. We deployed in January 2010. We assisted and partnered with the Iraqi police and we were their advisors. We were the link between the unit and the Iraqis. I advised the Iraqi counterparts. We assisted them with their problems and provided some support. My particular team was with the Second Federal Police Division and I had a sub-team. Derrick was in one of the sub-teams within the brigade. During deployment, I had the opportunity to observe Derrick's duty performance. I interacted with Derrick on a daily basis. We were on a FOB with American Forces and the Iraqi Federal Police Force. I saw him on a daily basis. He had daily reporting responsibilities to me, which I had to the brigade. Derrick was in unique circumstances where we were going uncover from his brigade. So all the equipment that we signed for, he pretty much had to turn that in himself while the LTC did his part with the Iraqi's Brigadier General. Derrick was one man making sure all the equipment was turned in. He did that with little to no guidance and that's why we felt confident with him being able to do that. Yes, at some point he left our STT. When we were uncovering the brigade, we started restructuring the unit that we were covering on based on who is forced to leave it. Derrick went away from my team, but not by my choice. I tried to keep him actually. He went to the Academy of Action Center (AAC). He went to work for COL Atcher. I discussed him as well as other officers. COL Atcher wanted to know what kind of guy he was. I told him that were some things that had actually happened in Derrick's past that

were probably threatening his career. However, when you saw him perform his duties you would not know that. Derrick was one of two CPTs and everybody else were MAJs and LTCs, and maybe a handful of COLs. I think the other CPT got promoted, so Derrick was the only CPT and I am pretty sure it generated conversation as to why he was not a MAJ. So, that is why I addressed this with COL Atcher. I checked back with COL Atcher later and he was more than happy with his performance and it was reflected in his evaluation. He was very pleased with Derrick's performance. Derrick's movement was pretty much done by brigade. I think he just got caught in the salami slice. Yes, I am aware of why Derrick is now facing a board. I became aware while we were deployed. Derrick wanted HRC to move his paperwork to the restricted fiche. I wrote a letter in support of that. I could only speak to his performance before me. I don't condone the actions at all, but I think he has learned from it. And I think he has recognized how severe his actions were based on that and what I saw on his performance. I found Derrick could be very forthcoming, honest, and he was a hard worker. I was very surprised of the stuff he would share with me. I remember us sitting down and I said, "Hey, how do you make it from day to day?" He said, "I am a Soldier, just one day at a time." I can say without hesitation that I would work with Derrick again if I had the opportunity. From what I have seen of the Soldier in action in the performance of his duties, I would not have any problem working with Derrick again. My job here, I see a lot of young officers that make mistakes. I see a lot of good young officers. I do think that they have some retainability. I would say Derrick would be one of those. He is one of the people that given the amount of time that he has put into the Army, serving this country, multiple deployments. Again, I don't condone his misconduct, but at the same time I look at the total Soldier in this job. Yes, I would deploy with him again. I would trust him to lead Soldiers. I think that Derrick's multiple commands at the company grade were indicative of his leadership and his commitment. I witnessed his hard work, a Soldier with a lot of integrity, who cared for the job and the mission. I feel Derrick is best fit for any type of operational job. Derrick is a go getter type person. If you witness his performance you would not think that, at least when I met him, that you were looking at an individual that just got pulled off the MAJ's list and had the issues he went through. I would have not bought it until he shared it with me. His promotion potential, if it was based on just judging his performance, I still think he has the potential. But that is not the reality of things. I think his misconduct will likely play into his promotion potential. I think he is retainable, that he is still a value asset to the Army and any team he is on. But I can't speak to a selection board. He may draw a group of guys who will see his case differently. I think he does have leadership potential, he has demonstrated that. He demonstrated how he worked with the Iraqis and guiding them with some of the issues. No, Derrick seemed just like any of the officers there, but I can't think of anything that made me question his ability.

No further questions by Defense.

Cross examination

I could not tell you what Retention Control Point is. Yes, I am aware that he has been in the Army since 1998.

Cross examination

A young officer may request through HRC to get evaluations and GOMORs moved to their restricted fiche or in some cases request for total removal. We also reviewed cases when officers were being eliminated from the Army and when officers resign in lieu of court-martial. We also do grade determination for officers retiring who have some type of misconduct in their files. So, my statement was that I see a lot of incidents where officers of all grades have misconduct in their files. Some of them were young officers making mistakes. I think it negatively impacted CPT Daniels' promotion potential because he was pulled off the promotion list. Derrick requested to have the derogative paperwork moved to the restricted fiche and it was denied if I am not mistaken. I was here when that happened. I was not even selected for that board. I can't speak for what a selection board may do, but I have seen and I am sure the panel has seen crazy things happen with some selection boards. I am a little outdated on the specifics of the domestic altercation that occurred. I do know there was physical contact, that there was pushing and someone got stroked, I do know that. Now that you have said it, now I remember the plastic baton. I may have read about the crying, that was first brought to my attention when we were in Iraq about 2010. Derrick was very forthcoming about what he shared with me, but I have not read anything since then. I don't remember the strangling or that, I do vaguely remember the baton you mentioned. I don't recall reading a police report. I am not saying it did not exist. I know there was some talk of an affair, but I don't recall him admitting having an affair with multiple women. I don't recall reading that. I was not aware he was not in compliance with height and weight since 2008. I can tell you he was in compliance while we were deployed and for the entire time that we were together. While down range, we were required to take a PT test and I don't think there were any issues there, at least at that time. I am not sure about now. I don't recall he stated that was the reason why he was out of compliance. I know through some of the conversations we had that he had some marital problems. I am sure he did state the reason why the assault occurred that night. I remember him talking, perhaps not addressing some issues from deployment, while he was in command. I remember him telling me about times that he did not feel part of the team. He did not feel that certain people appreciated his job and performance and he was dealing with all of that. I can't recall whether or not he stated that made him turn to alcohol. I don't recall if the incident involved alcohol. He had two commands. I don't think life was easy for him.

No further questions by the Government.

No questions by the Defense.

LTC Hathaway asked CPT Daniels how many years of service he had and he answered over 17 years of service.

LTC Hathaway

Sanctuary is something that has not been spoken about. I have not heard anything. We actually have sanctuary guys in the group that went to the STT. CPT Daniel's potential to

stay on active duty actually remains with you guys, or starts with you guys. I think if you guys decide to retain, they can allow him to retire. I think he potentially can get there, but it all depends on what they decide and what the course of action is going to be in terms of reducing the force. I don't have any other information to share with you about Sanctuary.

COL Cardinale

Through the years I came in contact with a lot of people. Even in my shortest time in the job, I came in contact with a lot of people. I think what I remember most about Derrick and will always remember is that even in his challenging times during his career, he was able to put the mission first and himself last. And I know that his past weighs in his mind. I know it was hard for him to be pulled off the MAJ's list and then be surrounded by other people who were going over their careers. But at no time did Derrick let that pull his motivation and I think that is a quality that a lot of people should have in terms of the mission. We put a lot of stuff on him to get the stuff turned in. I talked to LTC Compton and he said he was making it happen and he was blessed to have him. I remember Derrick's commitment and his honesty. Derrick has performed in a manner that proves that he is a valued asset to the Army, the mission and the potential future for increased performance or continued solid performance lies within him. There is no question in my mind that he would not be successful in doing what he has been doing. Then you asked me for promotion potential, but I can't speak for the board. But probably the truth be told that the promotion potential is not that high given of what is going on with the draw down. If I were voting a case, I would take into consideration his service, multiple deployments, the multiple commands. I am not sure when he was told he was going to deploy again, but that was prior to him being pulled of the list.

No further questions by the President or the board members.

No questions by Defense.

No questions by the Government.

The witness was excused and not subject to recall and was duly warned.

The Recorder stated that Dr. Parodi was available and ready to testify.

The President called a five minute recess at 1210 hours to seek legal advice.

The Board reconvened at 1216 hours.

All parties that were present before the Board closed were again present.

The President asked CPT Daniel's when the last time he was in contact with COL Williams.

came to 1-77 Armor where he served as my S1. Then he was Alpha Company commander and then HHC company commander. He arrived to the 1-77 the month before I took command about 21 June 2005. He served as an S1 until December 2005, and then he took command of Alpha Company until January or February 2006. Primarily he was on the order of merit list because of the dedication he showed during the time he was the S1. He was selected to be the Alpha company commander in preparation for deployment. We actually deployed to Kuwait about August 2006. We did all our activities in Kuwait and then we deployed. The battalion cross-attached Alpha company to 1-18 Infantry when deployed in Bagdad. They left Kuwait about the end of September or early October 2006. Yes, I did have the opportunity to observe CPT Daniels' duty performance. In Garrison, he was doing the train up for approximately the entire year of 2006 up until the deployment. We had a training cycle. CPT Daniels was focused, his duty performance was outstanding. I think that was articulated and written in the evaluation report. That led him to be selected to become the Commander of Headquarters Company which was the largest company in the task force. Based on the recommendation to the brigade commander, at that time he was selected in combat and based on his performance in Baghdad, which was where the brigade commander was, he was soon selected as commander of HHC. My assistant battalion commander, which at that time was LTC George Glace, frequently visited me at Ramadi. He also visited me in Baghdad twice during the time Derrick was in command. We discussed his performance and based on his performance, he agreed with my recommendation for him to assume command of HHC, I think in January or February 2007. In Ramadi there was not a day from the time we assumed responsibilities in September/October 2006 until April 2007 that I had combat patrol lead that was not engaged. During that period of time, I lost from my task force a total of 12 Soldiers to IEDs and other forms of combat engagements, so it was very hectic. Understand that during that time, that was pre-search activities, so late 2006 to 2007 was the deadliest time for troops in Iraq to include the Baghdad area because that was the time when the EF PID was introduced in the area. CPT Daniels joined me in Ramadi when he took over HHC in January/February 2007. We deployed about 15 November 2007. I worked with the 8-35 task force while I was in Ramadi, compiled by HHC and Charlie Company. I also had two infantry companies, Bravo Company 1-18 and Bravo Company 1-26, and also Charlie Company, 9th Engineers. He was the company commander of the largest and most diverse company in the task force. That is a difficult job, especially in combat. Our area of operation with the task force was probably 600 square miles because it had everything from west of the bridge in Ramadi up to the west, which is the largest task force area in and around Ramadi. We also managed over 1200 Iraqi police. We were partners with the Iraqi and the army battalion. We all were responsible for the ER forces, that is the emergency forces and also the highway patrol. I left probably January 2008. He was still in command of HHC when I left. As I explained earlier, I had the largest area of operations. I had companies that maintained seven operations. I received the email; I can't exactly remember when it was, probably in 2009 or 2010 from COL Burton that asked me if I knew anything that was going on with Derrick. I said I didn't. He said he received a notification that CPT Daniels was being investigated. I asked him if he wanted me to find out what was going on and he said no. The next thing I heard was actually from Derrick about last summer. He laid out what activities he had been engaged in what was being considered as far as his future.

My understanding of those allegations was that he got into extra marital affairs. It was wrong, he knew it was wrong, I think he admitted that he was wrong. This is the first time I am aware he assaulted his wife when she found out of his extra marital affair. I met her when she was participating at the FRG. I remember during the deployment Derrick said his wife was going back to the Oklahoma area to continue pursue her master's degree. I asked him if there was anything I can do for her. The next time I saw her was after I changed command when my wife and I were home on leave. We saw Wendy in the mall. At that time she said we just missed Derrick. He worked an assignment to go back to Fort Sill at that time. That was the last time I saw Wendy. We just spoke for about 15 minutes. Yes, I did discuss the allegations with him when he called me last year. First, I told him I was very disappointed in him. I asked why didn't contact me earlier when that happened and he told me he was embarrassed. I reminded him to just contact me if he ever needed to talk to me about anything. I scolded Derrick for not calling me. He let me know what was going on with his career and within his life so I could counsel him and mentor him. I told him not to be embarrassed now. He needed to take responsibility for the things he did. There was nothing he could do to change it. The only thing he could do was to move forward and make a commitment to straighten his life out. Yes, I would work with CPT Daniels again. Once again, we all make mistakes. I will judge nobody because we all make mistakes. We are not perfect. I think he does have the capacity to continue his service in the Army. He has learned, he admitted that he did wrong. We have challenges and we are going to have more challenges as we continue to disengage from Afghanistan. I think a leader like Derrick has proven his leadership ability and has also admitted that he did wrong. He pursued to correct those deficiencies and that is the type of leader that we know. He understands what the Soldiers are going through. I think he enrolled in some counseling sessions and support groups that helped him overcome some of the problems he was having with alcohol and the behavior issues he was having. Yes, I would deploy with CPT Daniels again. He is the type of leader that a commander and Soldiers need because he will cover your back and make sure that he understands what the mission task and purpose is. I would recommend him as an advisor during the deployment. I cannot say I recommend him for command, but I would as a staff officer, especially an operational staff officer and training officer because of the stability he exhibited during the train up for deployment. He was phenomenal in that role making sure the Soldiers understood the mission task and purpose, especially during the cultural training. He had the capacity to lead the training to the fullest making sure that Soldiers understood they needed understand the culture going to the Iraqi theater conflict and that was essential to the success that we experienced in Ramadi. Yes, he was a branch transfer from Field Artillery. He adapted aggressively. He had two opportunities in command. During two gunneries, Derrick's company was at the top.

No further questions by Defense.

Cross Examination

His distraction was related to deployment. Logistical support and analysis was his primary role while he was HHC Commander. He and the first sergeant made sure our troops had everything they needed. Sometimes they would leave at 0400 hours and would not get back until over 24 hours later because they had to do a tactical pause during the logistic operation. I can remember one time when they were delivering supplies to a FOB and they were gone for 72 hours. CPT Daniels made sure that the logistical plan was synchronized with the battalion executive officer, making sure that he supported the operational concepts and plans of the battalion. He was responsible for all that activity to include log packs and maintenance, even though all the mechanics were in Baghdad.

The recorder presented the ORB to the board members.

The Legal Advisor stated that a complete packet of CPT Daniels' OMPF had been provided.

Cross Examination

He would make sure the patrol briefs were done and that the rehearsals were executed. HHC had approximately 384 personnel. He made sure that every HHC patrol that left the gate was properly planned, resourced and executed. That was his responsibility as the company commander.

The recorder read one of the bullets from CPT Daniels' memorandum dated 30 June 2006.

Cross Examination

I can tell you exactly were that came from. Baghdad in 2006. At that time, I don't know if any in the room recalls, Sadder was killing Sunni citizens and dumping their bodies on the side of the road. I can remember vividly, and Bravo company was responsible for picking up those bodies identifying them through the proper channels. At that time in Baghdad, there was no acting partnership with the Iraqi police, so if we wanted that to happen and we had to make that happen. He was not on every single patrol. As a company commander, especially in Baghdad, he was out and about with his troops. He was in Ramadi. As a commander you have to be out on the patrols so you are in the game and get a true understanding of the area of operations. He would be out in the area of operation much more in Baghdad than he would in Ramadi. He and the first sergeant spent an exorbitant amount of time in the field. I think I spoke with CPT Daniels about his extra marital affair somewhere between May and June 2011. I can't recall if he mentioned the assault. We did talk about how obsessed she was, but I can't recall discussing the assault with him. I think I do recall a discussion about emails [of him and his mistress] and some of the activities that the mistress actually communicated to the command. I did not know that CPT Daniels destroyed the emails. I was not aware that he strangled her and said that neither of them had to get hurt. I know adultery is wrong and is in the good keeping of the Army, but I am not willing to judge. I think people can learn from their mistakes and they can persevere and overcome their mistakes and they can continue, in this case, to serve our nation because they are committed in serving our nation. Everybody has done something wrong.

I think he can overcome this. Especially when he admitted that he did something wrong. There is a difference when you don't admit to doing something wrong than taking responsibility. I don't recall him admitting committing the assault to me.

No further questions by the Government.

Re-direct Examination

I was only concerned about the assault. One corrective action I would recommend is counseling. I still think he can serve the Army and our nation. He has served 17 plus years in the army. That is a commitment. That commitment should not be taken in light because only one percent of our nation is willing to serve. I think they should be allowed to serve. I knew there was some type of counseling, I just did not know it was family advocacy. Once he has completed a period of observation, he should be allowed to continue his service until his retirement or beyond. His pattern of performance up to this instance was exemplary. And he is taking responsibility. His performance after the incident demonstrated a leader and that he was willing to sacrifice and serve his nation.

No further questions by Defense.

LTC Fugate

Based on the activity, I can't truthfully recommend a promotion to MAJ right now. Maybe if it was wartime, I would reconsider that. But based on that error I cannot truthfully say that I would recommend him for promotion.

COL Cardinale

I did ask other company commanders if they knew what was going on with Derrick. Nobody heard from Derrick. And I did not hear anything from Derrick until I was back in the States, which I think was last spring. I talked to him and asked why he did not talk to me. His answer was that he was embarrassed. In my opinion, Derrick will not make the cutline. Today's percentile is below 50% now I think. I don't think he would make that cut.

No further questions by the board members.

No further questions by the Government.

The witness was permanently excused and duly warned.

The Defense called COL David Atcher.

COL David Atcher, G4, Fort Knox, Kentucky, was called as a witness for the Defense, was sworn and testified in substance as follows:

Direct Examination

I have been in the Army a little over 29 years. I am actually on Permissive TDY. I will start my transitional leave in about two weeks. My retirement day will be 30 June 2012. I have been a COL for about six years. I am currently a logistical officer. I elected to transfer as MAJ where I was a transportation officer. My source of my commission is ROTC. I am a graduate from the University of Kentucky. I have deployed. I had an operational deployment back in the 90s. I deployed in 2009 and 2010 to Iraq with an STT. We were assigned to 1st Brigade, 3ID. Yes, I have helped command before. I commanded as a company commander and I commanded a recruiting unit. I did a battalion command with the 25th Transportation Battalion in Korea from June 2002 to June 2004. I know CPT Daniels. He was a member of our Stability Transition Team. The entire team was about 44 to 48 folks that were attached to the brigade. He was attached to my specific team in about either June or July of 2010. I didn't know him on a personal basis, he was part of a larger group. We trained with the brigade. We did train at Fort Stewart. The environment changed, in some cases the locations where we had teams deployed already had a transition team there or maybe for whatever reason, the commander would decide that we move a team to a new location. Derrick's team was being split because they were going to vacate the location where he was. I think he was with the Federal Police Brigade. So, I gained a couple of officers and he was part of that transition. COL Bennie Williams and I discussed all of the officers that were coming from the Federal Police Unit. We specifically discussed CPT Daniels. I remember that is the first time I became aware there was a background to Derrick's situation and why he had not been promoted. I recall when we all linked up at Fort Stewart, we had four or five junior officers and they were all CPTs and they were all on the promotion list. Derrick was on the promotion list and we all assumed they were all getting promoted before we deployed. I thought the actual requirement was for all to be MAJs before deployment. We discussed the reasons why CPT Daniels was not promoted. There were some issues that happened prior to deployment. I did not know COL Williams before we deployed. During our train up and during our deployment, we both had a professional discussion of what was going on with all the officers I had. CPT Daniels' case was particular. My understanding was he had a DUI and some issues after redeployment. He had some issues adapting after deployment. He had a domestic altercation with his wife. I recall asking COL Williams if this was going to be an issue for CPT Daniels after he came to me. I did not want to take on somebody else's problems. I was concerned about the team. After talking to COL Williams, I felt comfortable that CPT Daniels and I could work together. I did not know him very well when we were at Fort Stewart. I did not think I was going to have any discipline issues when he came to our team. I did not have any discipline issues. I contacted the Armor branch. Derrick came to the location where I was. I don't recall if he had taken his mid-tour leave or if he took it as soon as he got there, but once he got his feet on the ground Derrick got saddled with a bunch of headaches when the previous team departed his location. They got stuck with probably twenty, maybe $30,000 worth property that he was not signed for, but he took responsibility for it. The outgoing team was actually signed for the property. Derrick took responsibility for it, so he was left with the headache of getting that stuff documented and turned in. That's what we were doing with Derrick along with his duties as a transition team member. I discussed what was going on with his promotion with him. That's when

he showed me, I think it was a memorandum. I don't remember if it was from his branch or the Combat Arms Division Chief. Basically it stated that he had been removed from the promotion list and laid out some of the issues as to why. I think they told him the appeal process. He could write a letter of rebuttal or something to that effect. That is when we actually talked about it. He showed me the document. I talked with the Armor Branch Chief just to find out what the appeal process was and what could he do for his rebuttal. I wrote a letter of recommendation. Derrick believed with this deployment and the good job he was doing, he would get reinstated on the promotion list. After talking with the Armor Branch, it became very evident that was not going to take place. I asked why would you deploy him if you knew he was not going to have a chance to move on with his career? That did not make any sense to me. Regardless, I talked with him to try to understand he would not get an opportunity to ever be promoted and probably eventually be dismissed from the Army. I don't recall the Armor Branch answering those questions and that was two years ago. I don't recall an explanation on why they would deploy an officer who they did not think had an opportunity to move forward in the Army. The impression I was left with was they had a requirement to fill and he was an officer who wanted to deploy. I was able to see his duty performance. It was late June or early July when he came to me. He worked for me for the last four or five months that we were deployed. He worked on a daily basis with me. I saw him either in briefings or in briefings with the Iraqi teams who were conducting their own internal meetings. We were also were going missions together, with the Iraqis or occasionally we had to go back to BBC or the Baghdad Operational Center. I saw him in Iraq with the Federal Artillery Battery that provided our security and our support. I would see him during PT on an American compound. I saw him every day at breakfast, lunch, and dinner. He would come to me and let me know how things were going on. Derrick was a great performer. I never had an issue with his duty performance. He was eager. He was willing to take on missions and he was willing to take on those crappy missions that nobody wanted. Things like policing the area and tracking down a Soldier if we had a question for somebody. Derrick would work late at night and get up early in the morning. He worked well with our Iraqi counterparts. He was in a rough spot. He was in a senior headquarters. The people he dealt with on a daily basis were Iraqis and LTCs and COLs. When I talked to COL Williams, my biggest concern was more about morale. He did not complaint about the tasks. If he did not know how to do a specific thing, he would find someone who did. I knew he was going to do a pretty good work. He was with us until we redeployed in December. He worked until the very last day that we deployed. I would work with CPT Daniels again. I won't hesitate. Yes, I would deploy with him, keeping in mind that I am a logistic officer. I think Derrick has combat experience. I think the Army can capitalize on Derrick's good and bad experiences. If we took advantage of that knowledge and maybe use it as a way to explain others the outcome of ones actions and the pitfalls of not seeking help. I think Derrick is good in operations. I think he would make a fine operations officer. You can't spend your whole life being an operations officer, but he has that experience and he is good working with the counterparts. I know he was very remorseful of what happened and he admitted to me he screwed up. The time I was most concerned was after the deployment because he won't have a career or much time left in the Army. We had that conversation in my office, so I kept an eye on him for a couple of days. I was concerned that might create a situation where we were going to have a suicide, but he kept a pretty good attitude about it. He continued to do his

work. He continued to work out. He came to work every day, we did not have to track him down.

No further questions by the Government.

Cross Examination

I understand that he had a DUI and then he had a domestic violence, he either struck or pushed his wife. I don't recall discussing anything else. At that time I did not ask more about it.

The President said he had not seen a DUI in the file.

The Defense stated that might be missing information; Defense had not seen anything about a DUI.

The President asked his Legal Advisor if it was okay to ask CPT Daniels if he had a DUI.

The Legal Advisor stated that the hearing is open.

The President asked CPT Daniels if he ever got a DUI.

The Respondent stated that he never received a DUI.

COL Cardinale

The incident was domestic violence of some sort. I just wanted to know how Derrick got into that situation with regard to future promotion or taken off the promotion list. I thought it was regarding a DUI.

The Defense objected to the Government's question based on relevance.

Objection overruled by the President.

The President asked the Respondent if there was an alcohol related incident, a DUI, or driving while impaired, or anything else that went to court and got pled down, or did not even go to court. Was there a driving alcohol related incident?

The respondent stated no.

Cross Examination

When we talked, he told me there was a domestic violence. When we had that conversation, he was on my transition team. He came over to my headquarters. I was not aware that he pushed her several times, hit her in the head with a plastic baton, destroyed email traffic of an adulterous relationship, or that he strangled her and told her that "stop,

neither one of us needs to get hurt." Whether he had a DUI or domestic violence, the domestic violence spoke for itself. My assumption was that he got violent with his spouse. The nature of it or the amount of the abuse, I don't condone it, but based on my experience with Derrick, he understood he made a mistake and admitted he made a mistake and that is not the behavior he should have exhibited. How you describe the incident would not alter my belief on whether Derrick could continue in the service. I did not know when his commission was. I am 29 years in the Army, so every CPT seems very young to me. I mean junior as in he was a young officer. I don't think those are examples or indicators of what we expect in the office corps.

The Defense objected on the Government question about Derrick's financial difficulties prior deployment.

The President sustained the objection and requested the Government to rephrase the question.

Cross Examination

No, I am not aware that he made that statement. I am not sure about any statement until you mentioned it. As for volunteering for deployment, I don't recall having a conversation on that.

The Defense objected on relevancy.

The Recorder stated its relevant because it was the benchmark if whether or not you can maintain a security clearance or your job.

The Defense stated that there was no evidence that he did not maintain his finances. He still had a security clearance, so he was able to maintain his financial obligations. There is no evidence that his duty performance was affected by his second job.

LTC Fugate asked for the reference to be read.

The Recorder referenced to the appeal that CPT Daniels wrote.

The President called 10 minutes recess at 1517 hours for legal advice.

The Board reconvened at 1539 hours.

All parties that were present before the board closed were again present.

The President stated that Defense's objection was technically sustained, however, the Government needed to make a linkage and to choose the wording carefully.

The Legal Advisor cited AR 600-8-24, paragraph 4-6.

The Defense stated that the questions were irrelevant.

The President agreed, and told the Government there had to be a clearly defined linkage when looking at the actions unbecoming an officer and was financial irresponsibly a part of it.

The President asked CPT Daniels if he still had a security clearance.

The Respondent stated he still had a security clearance.

The President asked the Defense if she was familiar with the security clearance regulation.

The Defense stated she was not familiar with the regulation.

The President asked if anybody has put a derogatory statement in his file.

The Respondent stated that nobody put anything his file specific to his security clearance.

The President stated it is a requirement by regulation that a domestic violence incident, that the derogatory statement goes in the file. It is not up to the local commander to make a determination, it is determined by CCF. They take the preponderance of that evidence and they make a determination on whether the security clearance remains in effect, gets suspended, or gets revoked. There was a step that was missed.

The President stated that the question is relevant, but irrelevant to COL Atcher.

The Government has no further questions for COL Atcher.

No further questions by Defense.

COL Atcher was recalled at 1547 hours.

The Defense objected to the line of questioning (about CPT Daniels' finances).

The President sustained the objection.

LTC Hathaway

I am not aware of any specific incident where a member of his leadership team specifically said to him if he needed help with an issue or anything like that. When you are the commander, you need to know what is happening to your people. Some folks are good at that. When I was the battalion commander, I don't say I knew everything about every single Soldier. I would like to say that I knew quite well about my office first. If I had an officer I thought was not doing well or was having an issue, then I would at least talk to them. In my mind, one of his commanders should have asked him what was going on in his life? Especially if in fact he was having an alcohol related issue and domestic violence.

He had a couple jobs. It seems to me that somebody in his leadership should have talked to him.

LTC Fugate

I can only speak for the time that I worked with CPT Daniels. I think he can serve in the Army as a MAJ. I believe there are some folks that are probably smarter than me of specific niches that CPT Daniels could fill at higher ranks. I think he can serve as a staff officer, working on the division staff. Be a good plans officer or as an operational officer. I think he could do those types of jobs.

COL Cardinale

He did receive an OER from me. I am not at a place where I can go and pull that up.

The President stated that he did not see the OER in CPT Daniels' OMPF packet.

The Respondent stated he received just an end of tour OER.

Yes, that is correct, I would not recommend him for command. I would recommend him for promotion. I think he would be a good staff officer and would do well at the rank of MAJ.

No further questions by the board members.

No further questions by the Government.

Redirect Examination

No, that OER was based on that period of time. My comment was based on what I saw CPT Daniels do and how he performed for me in the combat deployment. Certainly, I heard things during this conversation today and some of them I did not know about. But I don't think that anything that I heard here today would cause me to change my thought from the previous conversation. In my conversation with Derrick, I truly believed that he had remorse and regret for what he did. He knows he let a lot of folks down. During the time he was on my team, he was very professional. He did his job and based on what I saw there, I would not hesitate to recommend him to be promoted to MAJ. Command is a different story, but I think he can serve as a MAJ. I have been a staff officer for a couple of years with the exception of the Transition Team. The last six or seven years of my career, I was a staff officer. But every day I am in front of a Soldier, I am a leader. Every day I am at PT, I am leading. So you don't have to be a commander to be a leader. I have been a staff officer for a couple of years.

No further questions by Defense.

No questions by Government.

The witness was excused not subject to recall and was duly warned.

The Defense presented Defense Exhibit 1, Army Career Book;

Defense Exhibit 2;

Defense Exhibit 3, Pamphlet (work product);

Defense Exhibit 4, medical record.

The Recorder requested time to review the exhibits.

The President asked the Legal Advisor if the recorder should get the opportunity to review the documents before the board members do.

The Legal Advisor stated that he should get the opportunity to see the documents before the board does, in case the Recorder had any objections.

The Government does not object to the medical records.

The Defense presented Defense exhibit 5, conviction of Ms. Brown for fraud.

The Recorder requested to review Defense exhibit 5.

The Government objected because it was not a prior conviction. And Captain Daniels admitted he had an affair with Mrs. Tara Brown.

The President sustained the Government objection. Defense exhibit 6 was submitted, but not admitted.

The President called a recess at 1641 hours to seek legal advice.

The Board reconvened at 1652 hours.

All parties that were present before the Board closed were again present.

The Defense called MAJ Barr as a telephonic witness.

MAJ Terrance Barr, US Army, was called as a witness; was duly sworn in and his statement is as follows:

Direct Examination

Currently I am the executive officer for the 188th Infantry Brigade, Fort Stewart, Georgia. I have been in this duty position since June 2011 for nine months. I have been with the Brigade since April 11, 2009. I have 17 years in the Army, 7 years as an enlisted, 10 as a senior commissioned. My MOS as an enlisted was 54B and 74D, chemical specialist. My current branch is a chemical officer. I have deployed one time in 1995. I went to Kuwait for 12 months. I know CPT Daniels from the S3 shop as the deputy Chief of Operations. I met Derrick in April 2011, almost a year ago. I see him at Fort Stewart five days a week, when he is TDY with the brigade, I see him maybe twice a week. He trains the Army National Guard Unit and Reserve. This is pre-deployment training. His duty performance has been great. He is a senior mentor for the National Guard and Reserve commanders. Derrick is passive-aggressive. He gets their trust and he helps them focus in the right direction. He has a calm demeanor and he gains their trust and shows them ways to make things easier. Derrick always comes to work on time. He is a hard worker. I don't have to worry when he is coming to work. Yes, right now we were planning on putting Derrick back down to the Infantry Battalion. If he is retained, we will put him at the battalion level. The company commanders of the National Guard and Reserve Units at training run a team of about 29 commissioned officers. CPT Daniels is a good trainer-mentor. He helped them understand what they can do better. He assesses their tour. He is always on time. The S3 is his rater, COL Collier, our brigade commander is the senior rater; he just got back from NTC. I was not in NTC, I was acting commander. I am aware that CPT Daniels had allegations of domestic violence for hitting his spouse and hitting another female. He had some issues with alcohol abuse and PTSD. I do know he was receiving treatment for all of those. Prior to this, the only thing I mentioned to CPT Daniels was if he was ready to tell me what really happened, I was willing to listen. I won't judge him based on his performance. I told him to go to counseling and keep his head up.

COL Cardinale

From what I understand, the issue was Derrick had domestic violence for basically hitting his wife at that time and she lost the hearing in one of the ears. Then he also hit another female or was accused of hitting another female. He had an alcohol abuse issues and PTSD.

Redirect Examination

If the board retains Derrick, there is a room for him. We had no issues with Derrick, so if he is retained in the Army, he is a good mentor for our Battalion.

No further questions by the Defense.

Cross Examination

I depart Fort Stewart on 24 June 2012. I have 39 months as a company commander. I am now the battalion XO of logistical support battalion. Yes, I hold officers to higher standard than enlisted personnel. Yes, I have addressed Soldiers who had domestic violence issues before. We did a commander's inquiry first. The spouse was making some accusation of domestic violence just to get more money from the Soldier.

No further questions by the Government.

LTC Fugate

If he is promoted to MAJ and the Army sees he is fit, I won't have any issued with that.

LTC Hathaway

I have not met Wendy to make an opinion about their actual relationship.

No further questions by the Board members.

The witness was permanently excused and was duly warned.

The Defense called CPT Daniels as a witness.

CPT Derrick Daniels was duly sworn in and his statement is as follows:

Direct Examination

I met Mrs. Brown on a website called "onlinebootycall.com." I met Mrs. Brown after my return from Iraq at Fort Sill. I returned from Iraq in May 2008. I contacted Mrs. Brown in July 2008. At that time my wife was going to college. The transition coming back was a hard transition at that time. I had insufficient time for myself for the issues I had. I left a small amount of time to myself for my immediate needs with alcoholism and the adulterous affair that I am not proud of. Instead of giving more time to myself to fix in my situation, I stole a lot of time from my wife. When I returned from my second deployment to Iraq, my wife was at Fort Sill, Oklahoma. I returned to Germany. She came for the initial return, then she left to continue school. There was a reintegration post-deployment procedure after the first deployment and after the second deployment. I was able to take advantage of the program. I arrived at Fort Sill in May 2008. She went back to school. She felt like she supported me through the two tours in Iraq. Now it was her time to go to school. And I was there to support her. I did not have what I thought I needed from my wife and that affected our relationship. I was not there for her. I was hollow, I was not there emotionally. When I lost Soldiers, I felt I was a failure at times and felt I was not able to complete a mission when I returned to Fort Sill. When I came back to Fort Sill, my wife and I were living in the same house. The first time I met Mrs. Brown physically was in Wichita Falls, Texas around the same time I met her online in July 2008. I had an affair with Mrs. Brown. It involved sexual intercourse. I did not have an affair with anyone else. I did not have sexual relationships with anyone other than Mrs. Brown and Mrs. Wendy

Daniels. I was living with my wife the night of the assault. On the night of the assault, I came back from post and I confessed about the relationship with Mrs. Brown. My wife wanted to talk to Mrs. Brown to get the full details of the relationship. After the conversation, Mrs. Brown disclosed some things that were not true; the additional affairs and the issue of impregnating another Soldier's wife. When I came home, my wife confronted me about the conversation. I told her everything that Mrs. Brown was saying was not true. She showed me the email and I told her that Mrs. Brown was telling the truth about my situation. Then she slapped me and when she did, she attempted to block the door. I asked her to move out of the way and she did not. I forced myself through the door towards the vehicle. At that time she was pursuing me. At that point, I picked up a plastic baton and I hit her in the head. She fell to the ground and started crying. I tried to console her, but she got up she asked me why I had nasty emails. When she pushed me, I grabbed her around her neck and start chocking her and I told her this was not worth it. After I released her, we sat down and we talked about the situation. At that point, I made a decision to remove myself from the house. I spent two nights at a hotel. She called me and she asked me if I was with Mrs. Brown and I told her I was not. But she felt I was with Mrs. Brown because I few days later she went to the hospital. That is what started the investigation. I am still married to Mrs. Daniels. I have been married for almost 14 years. I was 26 when we got married. We were in High School together. She is three years younger than me. We start dating after I came home from basic training when I was 18 years old. I did not continue the relationship with Mrs. Brown after the assault. I had stopped seeing her when the assault happened. My wife contacted Mrs. Brown to get details of our relationship. I gave my wife Mrs. Brown's phone number. I had confessed the affair. That was before the assault. My first deployment was with the 1st Infantry Division to Korea in 2003. At that time I was a Division Battle CPT. Then I was moved to 3rd Brigade. I was a Battle CPT again. Then I came home and deployed the second time with COL Johnson. The third time was with COL Williams and COL Atcher's command. During my first deployment as a battle captain of 263rd Armor, COL Chipman at that time wanted us to have the situation awareness. Every week we got combat patrols. On the way back there was a firing. It hit through the driver and it crushed the seat and I was still alive. At that point we did a security roll. We tried to get the door open. We tried to flip the tank around and we could see the Soldier's leg. I tried to call a line medevac. I could not get the task force there. We finally got the door open with an axe. We pulled the Soldier out. When the medevac came, I knew the Soldier was a goner. That was my first deployment. As we travelled north to a check point so we could mark the place so we could tell where we were. Then someone with an AK-47 opened up on the side of my truck. Before my company could react, the lead tank suddenly collapsed and knocked down through the door. The next incident, in the same location, a sniper shot my platoon leader in the shoulder. He survived. In Baghdad, when I arrived as a company commander from HHC, within three days after taking command, an IED exploded my convoy. The next one was several months later on a FOB as we supplied. The Iraqi police were outside doing a check point to enter the FOB. A VAV went off just outside the FOB. The impact was so fierce that it knocked them down the ground. The VAV that exploded killed one Iraqi police officer. The only thing left was his torso. I lost Soldiers, the first two were in S3 PSD; SGT Oaks from Virginia and SGT Gibbs, from Maryland. SPC Ruling was killed from an IED that went off less than 25 meters from our check point. SSG Walls was killed by a

sniper. So between from Baghdad and Ramadi I have seen Soldiers get killed. I received awards during these deployments. For my first deployment I received an Army Commendation Medal. On the second deployment I received a Bronze Star for service in combat and an MSM for my time in command. On the third deployment, with the GOMOR, I did not to get an award. I got flagged because of the GOMOR. I was not in command at the time of the assault. At that time, I was an instructor at Fort Sill. After the incident with my wife, I stayed in that position. My religious background is unique. In my younger years, I grew up in a Baptist church. My parents were married for four years, my mother being a Baptist and my father being an African Methodist Episcopal. As a smaller child, I followed my mother. When I got older I started following my father. So I got a different perspective from both. After the incident with my wife, I got involved in a local church at Fort Sill. At that point I was a little low. I knew I needed help from beyond. I started going to church before the suicide attempt. The work with community access was after the suicide attempt. Based on my behavior at home, I had outbreaks where it was not directed towards my spouse, it was just me being angry and depressed at myself. I was tired. The command at that time did what they were supposed to do. It was for the alleged domestic violence. The multiple affairs were still investigated. The command moved me out of the house to my other home. I had two houses. I had to go to work every day and still performed my duties. I knew about the false allegations from Mrs. Brown. I went to work every day. I knew those rumors went around. My wife was still upset. I felt like there was no light at the end of the tunnel. This was it, I couldn't take it anymore. I wanted my wife to see me when she got to the garage that morning. I went to her house, I opened the garage door. I got on a kitchen table that was in the garage, got on top of the table with the rope tied around my neck. Then I went into a dilemma of pushing myself off of my table. I could not do it because I was not sure. I know I will automatically go to hell. So I got down, went back to my house and called my parents and told them what was going on. It took me months later after getting treatment. I wanted to feel that someone did care about me. She knew I was in the house. I wanted my wife to come and stop me. After that, I was an inpatient at Red River for 10 days. I got physical treatment. No shoe laces, no belt and under supervision. When I went to sleep at night, they did checks on me. I had medication. I had supervision while I ate, while in recreation. In working groups, I found it was very intriguing. There were other Soldiers from Fort Sill. I was the only officer. There was a Lieutenant before me that had just committed suicide during his treatment. At that point I knew that could not be the end of me. I had to come up with a plan. I have been in ASAP before and in behavioral health. After the suicide attempt those services changed. After I was released from Red Rover, I started with the working groups. At that time, Fort Sill was trying to develop a group of officers, but there were not enough officers to set up a group. I was involved in family advocacy. My involvement with family advocacy was with the marriage itself which identify other things between me and my wife. I completed it before PCSing. Being at Red River made me realize some things. I realized the immediate need was not met by my poor decisions. Alcohol was not doing any good. Then the extra marital affair. That led me to look for a job, and there was the strain of maintaining two houses. The job was a full service care provider for three male at home. The duties consisted on feeding, bathing, and changing diapers when necessary. I could see the immediate satisfaction where the immediate need was being met.

I had two households. I was not living with my wife at that time. I continued to support her. I never failed the financial needs of my wife. The financial difficulties did not make me fail my financial obligations. It was the time to reflect, to understand where to go further in my career. There were things in that GOMOR that were unsubstantiated. My plan of action at that time was to try outperforming the GOMOR. I completed my mission and started my first deployment. My previous MOS was Armor. I came in as Field Artillery. I switched because I love tanks. As a tanker, it was the battlefield and the power that it would bring. I wanted to do that as an officer. For the past five years, from the situation with my wife that put me into alcoholism, put me into the extra marital affair, everything was a waste of time. The time that I had in combat was always dedicated to Soldiers and I did not dedicate time for myself. After going to a rehabilitative process on my own, I knew that time was always an issue for combat operations. As a company commander, I have administered a letter of reprimand for adultery to an E7. I have never administered an Article 15. There was an issue with a Soldier and his wife that escalated and we moved the Soldier to the barracks. The Soldier went through a rehabilitative process and reunited with his spouse, but not anything with an Article 15. I don't hold any bad feelings to the officer that gave me the GOMOR. He did the right thing. What I wished at that time was to establish a personal, social relationship with my command like I did before. The previous commanders did not testify because they liked me because I am a good guy. They saw me coming out from austere situations. Going through the process, I see where the Army has got to now. With 14 years in combat, I welcome resiliency programs, recreational, counseling. I would welcome the opportunity to lead Soldiers again. To serve Soldiers to make sure what happened to me does not happen to them. I think this whole process is a testimony of my character, of how I am as an individual. I first enlisted in the Army in 1990. I wanted to get commissioned as an officer. I only enlisted for two years. I was not ready for school. I did not have a real high ASVAB or STT. So I went to apply to the US Army Prep School, but was denied. It hurt my feelings. The problem was I knew I was not smart enough. So I studied at night. I took college courses. I suited ASVAB to raise my ASVAB score. During my time of service, I was not able to go to prep school, so I applied for the scholarship. I wanted to be an Armor officer. It took me five years to get my commission. I made thousands of mistakes, but I also believe that I went on a journey to prove I can still serve and learn from those mistakes. If the board decides to retain me, I have a plan for my career. My plan is to continue and stay in operations. It is my primarily goal. I love operations. I will welcome a field grade. But I also will welcome anything for Soldier services, resiliency, a way ahead. We don't go to war every day. Ten years of war against terrorism is something new. We have to apply a new way to do things. I think I have a way ahead for future operations and Soldiers.

No further questions by the Defense.

Cross Examination

It was not really my wife not giving me what I needed, it was me giving myself what I needed. My love for my wife never changed. My love for the Army never changed. It was taken that time. To continue to lead the Soldiers, I did not have time for myself to face my issues and problems. I did it in a very unbecoming manner in alcoholic abuse and the

adulterous affair. I did not allow myself the proper time to deal with my issues. It was not because of my wife, it was because of me. Mrs. Daniels became angry because of Mrs. Brown's lies. She was upset about the affair with Mrs. Brown. She was also upset about the allegations Mrs. Brown stated about the multiple affairs and the Soldier's wife that was pregnant. I hit her because she was coming towards me, but also because I was angry because she did not believe me. I am not claiming self-defense. I hit her on the right side of the ear. I am not sure if it actually caused a bruise. Sorry, it should be I struck her with my right hand on her left ear. I can't remember a bruise on her face. I am not sure where those scratches were from. I am not sure of the knee bruise.

Cross Examination

My peers were judgmental and that gave me stress. I expressed in the memo an inferiority complex due to race. The optempo gave me stress. The commanders, not my superiors, but the other company commanders gave me stress. There were small things that led me to stress. I did not feel I was cheated out of an award on my third deployment because of the allegations of the domestic violence. The gratification of the people who I worked for is my award. I don't need a medal on my chest. My marital problems led me to noncompliance to AR 600-9. I was not motivated with the thing going on with the investigation. I drank a lot of alcohol. I did not have any problem with the AWCP prior the incident. I was aware of the family advocacy, chaplain, social workers, etc., but I did not utilize the resources prior to assaulting my wife because I am human. Coming from a combat environment where so much is done, you come to realize you sacrifice so much. Sometimes you feel you are immune to a lot of things. Most times the commanders feel those types of programs are not for us, they are for the Soldiers. I am not the only one that feels that way, not being able to come forward, afraid of what people might say or people might do. If I were to command again, I would give an Article 15 for domestic violence or adultery very easy. The situation I have been gone through makes me more fair and impartial to deal with Soldiers with ease. I would be able to give an Article 15 to an E4 or below, where it will make them unable to reenlist with the first domestic violence offense for a lot of MOSs. I think each commander needs to look at each case. You need to look at each individual on a case by case basis. I don't have an issue in doing that. I would have expected an Article 15 if I were an enlisted at that time. But I would hear other circumstances surrounding that as well; what led to the domestic violence? How it impacted the Soldier? When did he join the Army? I understand the three pillars of ROTC: physical, emotional, and psychological. I think the dynamic is different, we talked about Soldiers as an E4. Commanders are held to higher standard because they command E4s. At that time, I did not exhibit emotional stability and that led to the assault. Led to marital problems, which led me to noncompliance with the AWCP. As an officer, you should be physically in compliance with the AWCP. At times we want to judge people based on individual circumstances. When I saw what the problem was, everything fell back in place. I have heard of that I am a Soldier 24/7. My personal life did influence my professional life. It will depend if that Soldier should stay in the Army. It depends if he was given a second chance, how he would work with it? What would be his plan of action? If the Soldier would see me for Article 15s, I will ask them, if you do this, what is the plan of action to overcome the circumstances? I could handle deployment stress again. Each

deployment is different. My command is unique. Now I think I will be more resilient. I did not say the assault was PTSD related. I knew Mrs. Brown was lying when my wife confronted me. I saw the lies in the GOMOR. In my rebuttal, the question was if the allegation was true and my response was yes. I said, "Why fight it?" When I wrote that at that time, I did not address it because I did not want to fight it. I would try to outperform the GOMOR. I don't consider myself a victim.

No further questions by the Government.

Redirect Examination

Before the incident I was in compliance. After that referred OER and since then I have been in compliance with the AWCP. Before that OER, when did not make the height and weight, they did not put me on the AWCP. I was never counseled. I was not referred for examination.

No further questions by Defense.

The President called a recess at 1814 hours.

The Board reconvened at 1819 hours.

All parties that were present before the Board closed were again present.

LTC Hathaway

I did commit adultery with Mrs. Tara Brown from about July until November. We actually had sex about four times. It was not before or after PT. The relationship was not just a physical connection, it was more like emotional relationship. I did strike my wife on or about 17 November. I was not under the effects of alcohol or medication at the time of the incident. I was not impaired by alcohol or medication when I was going to the bootycall.com website. I am not in any federal database for being a domestic violence offender.

[The President clarified the Oklahoma Police Department opened up a police investigation and CPT Daniels was in the database for domestic violence.]

To my knowledge I am not in any database for domestic violence. I don't have any profile that limits the performance of my duties.

[The President stated that Sanctuary Rule is still in effect. If CPT Daniels makes the 18 year mark, HRC will continue Sanctuary and he would be allowed to reach 20 years to retire at that rank that he is at.]

LTC Fugate

The actual relationship with Mrs. Brown lasted from July to October. It was an inappropriate relationship. During the process I wanted to stop, I was tangling and thinking how to cut it off. I felt relief when I confessed to my wife.

No further questions.

COL Cardinale

Yes, I am still married. I currently passed my height and weight. My current weight is 192 pounds. My height is 69 inches. My last allowed table weight is 184 pounds. I did not pass by table weight. I did pass my tape test. My last tape test was in January. My last APFT was with my last OER. I have not taken a PT test since August 2011. The PT test is good for six months. I am almost at a year. They did a height and weight in January. I don't have the body fat sheet. I am at 39 years old. My authorized body fat is 24%. I think I was 21.5% in January. I can get it from my battalion. If I take a PT test tomorrow, I think I would score approximately 260 with my weakest event being the run. I probably would score lower than 278. I think my weakest event would be the sit-ups. Since Iraq, I made table weight. During my ten years in the Army, I might have made table weight or might have not. One time I have not been in compliance with AR 600-9. I was not in compliance probably for about four and half months. I passed the PT test, but failed the table weight and failed the tape test. It was at Fort Sill. It was just a regular PT Test we took. It was not for the OER evaluation. At that point in time, I was waiting for the outcome of the GOMOR investigation. I was still drinking alcohol. I was still having problems with the situation. I was still in mental health and ASAP. It was after the suicide attempt and after Red River. We owned two houses. We own one house now. When I came up on the MAJ list, my wife wanted a bigger house. I made a purchase at that time, before the allegations. When the allegations started, the other house had not been sold. When I talked to the battalion commander, he said I needed to move out of the house and I stayed at the old house. So, at that time I maintained two houses. BAH in Oklahoma at that time was about $1,800.00. I maintained two vehicles, her car and mine. It was a BMW 2002 and a Nissan Altima. I paid around $1,100.00. I did not miss any payments. It was just that the money that was used to maintain both houses and both vehicles was a financial strain. We cashed in our 401k plan to buy the house, but that is what is she wanted. All this was done out of guilt. She did not know I knew something bad was happening. I believe I abused alcohol. I mostly drink at home. It was not social drinking. It was liquor or beer every day after work for at least three months. I drink occasionally. I don't think I still have a drinking problem. I know I am overcoming my challenges. I believe I am still on step seven and a half. I did not allow myself to get what I needed from myself. Mrs. Brown, just as with alcohol, was a bad decision for a temporary fix. The adjustment coming back from a combat environment, I still wanted to allocate time to serve my country and do my job. I allowed my wife to do the things that she wanted to do. I needed more time for myself to fix my situation. On the second deployment, I did not go through the integration training. It was my company that did the integration training. I came back in 2008. I went to some of the integrations classes, but not the ones involving the spouses because my spouse was not with me. I am not currently going through

marriage counseling. My relationship with my wife is a 4 with 5 being good. I have given about three Article 15s in my 10 years in command. I have 24 months as a company commander. I was deployed 15 months down range. The extra job was nothing specific that my counselor told me to do. It came on my own. I wanted a job in a medical field or similar or some type of community service. It happened that there was a job available during the weekend. It did not interfere with my career as an instructor. It put additional money in my pocket. If I was providing service to these individuals during the weekends, I was not drinking. I talked with my S3 about it and told him what my plan was. The S3 is not allowed to authorize me to have another job. I did not think about it at that time. The battalion commander would be the one to authorize that. I did not talk to him. I am not sure if the S3 talked to the battalion commander. I don't know if my chain of command knew, but I knew and did not seek for approval from my chain of command. There were some issues with the other company commanders. It started back in Germany. The previous commander before myself in Alpha Company was African American like me. COL Johnson, the battalion commander, is African American. In that battalion, it was rare to have four to five African American LTCs in the task force. The rumor was the only reason I took command was because LTC Johnson was looking out for me. They saw the time COL Shikovy would say stuff about COL Johnson, rumors that he was incompetent. My wife overheard a rumor from the 1SG of Charlie Company's wife who said that only reason why CPT Miller and CPT Daniels are commanders is because of COL Johnson and his experience that black commanders can't operate as well. The other commanders thought COL Johnson offered me the position based on the color of my skin. There was a MSG I talked to at that time who was as an instructor. He was also an ordained minister. He is the individual I talked to often after duty hours. He went to a different church. I talked to my pastor in two occasions. I was not in ASAP yet. I was not in marriage counseling yet. I was talking to a behavioral health. I played that scenario several times in my mind about going to my wife and telling her about the board recommendation not to be retained. She supports me either way. My plan of action is if HRC retains me, I continue my career in the Armor Branch until I do at least 20 years. I want to serve as a Field Grade Commissioned Officer. I don't really desire the battalion command, but if I make it to LTC... I did not get any other woman other than my wife pregnant. I don't have kids.

The President called a recess at 1911 hours to seek legal advice.

The Board reconvened at 1912 hours.

All parties that were present before the Board closed were again present.

No questions by the Defense.

Cross Examination

Yes, I felt race based prejudice. It was more like cultural biases. We did not have time for that. We were in a combat environment. We needed to lead Soldiers. I had a court date. My wife changed her mind. She said that she did not want to pursue the allegations. The

suicide attempt was around January 2, 2009. I can't remember when the court date was, maybe November.

No further questions by the Government.

No questions by the Board members.

The Defense rested.

The Defense stated that the Respondent had no further evidence to present on his behalf.

The Government had no further evidence to present.

The Government made a closing argument.

The Defense made a closing argument.

The board was closed for deliberation at 1944 hours on 18 April 2012.

The board was called to order at 2033 hours on 18 April 2012.

All partiers that were present before the board closed were again present.

The President ruled some evidence is not admissible, but will be submitted with the record, but not admitted.

FINDINGS

Captain Daniels, it is my duty as President of this Board of Inquiry to inform you that the board, in closed session and on secret ballot, a majority of the members present at the time the vote was taken concurring, has made the following findings and recommendations:

Given the preponderance of the evidence, we conclude that you did in fact commit adultery and you did in fact have an incident of domestic violence in which you assaulted your wife. Therefore, the board of inquiry finds that there is sufficient evidence to prove that Captain Daniels did commit acts of personal misconduct and this board of inquiry finds that there is sufficient evidence to prove that Captain Daniels' action can be considered conduct of unbecoming a commissioned officer.

RECOMMENDATION

Because of this, the board of inquiry recommends that Captain Daniels be involuntarily separated and receive an Honorable Discharge; and all three members of the board, myself, LTC Fugate, and LTC Hathaway have all signed. You are dismissed Captain Daniels.

The board adjourned at 2035 hours.

AUTHENTICATION

______________________________ (PRESIDENT)
COL DOUGLAS C. CARDINALE

______________________________ (MEMBER)
LTC STANLEY P. FUGATE

______________________________ (MEMBER)
LTC BRIAN K. HATHAWAY

______________________________ (RECORDER)
CPT TODD CHARD

DEPARTMENT OF THE ARMY
SUITABILITY EVALUATION BOARD (DASEB)

RECORD OF PROCEEDINGS

IN THE CASE OF: CPT Derrick T. Daniels

BOARD DATE: 13 January 2011

DOCKET NUMBER: AR20100026510

---

**Board Determination and Directed Action**

1. The evidence presented does not provide substantial evidence that the document in question has served its intended purpose and that its transfer would be in the best interest of the Army. Therefore, by unanimous vote, the Department of the Army Suitability Evaluation Board (DASEB) determined the overall merits of this case do not warrant the relief requested.

2. The Board further determined the Board's decision memorandum will be filed in the appellant's Official Military Personnel File (OMPF) and the appeal documentation will be filed in the restricted section of the appellant's OMPF.

Presiding Officer

I certify that herein is recorded the true and complete record of the proceedings of the Department of the Army Suitability Evaluation Board in this case.

THE APPELLANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. Appeal Data:

a. Derogatory data being appealed: An Administrative General Officer Memorandum of Reprimand (GOMOR) while serving in the rank and grade of captain (CPT)/O-3.

b. Date of derogatory document: 29 January 2009

c. Date of appeal: 28 September 2010

d. Army Component: Regular Army

e. Current rank/Date of Rank: CPT/O-3/1 October 2002

2. The appellant requests transfer of an administrative GOMOR to the restricted portion of his Official Military Personnel File (OMPF).

3. The appellant states it is not his intention to foster sympathy for his transgressions, but to explain in full detail how he overcame his challenges after the GOMOR.

a. The appellant states the intent of the GOMOR has been served. He takes full responsibility for his actions and understands the ramifications he put others through from his dastardly behavior.

b. The worst of it all is that he emotionally scarred and humiliated his wife. His promotion was suspended; he embarrassed his entire family, especially his parents who planned on attending his promotion ceremony. He watched in humiliation as his peers enjoyed their promotions without him.

c. He was mortified in the presence of his peers and superiors, and is still bothered by the lack of judgment and the continuous horrible lies that destroyed his personal integrity. He contends he couldn't take reality and didn't admit the truth to his wife and others because he selfishly thought he was missing out on deserved happiness. He blamed his superiors for not appreciating his sacrifice during his deployment and was very unhappy where he was in his personal life.

d. He contends he became an alcoholic and gained a lot of weight, and was two inches "from walking off our old dining room table in hanging myself during the investigation." It was his religious faith that kept him from hanging himself. He was command directed for a psychiatric examination, spending 10 days for attempted suicide in the Red River mental institution, Wichita Falls, Texas.

e. He has not regressed since issuance of the GOMOR. He continued teaching; attended AA meetings; and received mental health care. He is still separated from his wife. He volunteered for a third deployment on an advisory team.

f. He was officially removed from the Fiscal Year (FY) 2008 major (MAJ) board.

4. The appellant provides a self-authored statement, dated 28 September 2010.

5. The appellant provides one supporting statement with his petition.

CONSIDERATION OF EVIDENCE:

1. On 29 January 2009, the Commander, Headquarters, US Army Field Artillery Center and Fort Sill, reprimanded the appellant for domestic assault and battery for beating, choking, and threatening his wife, for ongoing multiple adulterous affairs with women including one married to a deployed Soldier, and for conduct unbecoming an officer and gentleman.

a. On 16 November 2008, he had a sexual encounter with a woman other than his wife, returned home, and went to bed. His wife woke him when she realized he smelled of the other woman. He admitted to his wife that he was having an affair, and had just returned from her, confirmed her previous suspicions based upon e-mail traffic she had read, and then engaged in a fight with his wife. He attacked her by hitting her with his hands, then with a plastic baton, on her face and head to the brink of unconsciousness and leaving her with bruises still visible 5 days later. When she fell, he dragged her across the floor. He choked her, scratching her on her neck. He verbally threatened her to the point that she feared for her life.

b. He later explained to his wife that he met the other woman through an online website.

c. He admitted to the investigating police that he had engaged in affairs with several other women. His wife talked to one of the other women who revealed his other affairs, to include impregnating the wife of a deployed Soldier.

d. He admitted that he was the father of twins with the woman he met on the website, "onlinebootycall.com," and with whom he began a sexual relationship in June 2008 and continued to the present. Initially, he told the woman that he was separated from his wife and going through a divorce. Even after she learned he was still living with his wife, he continued the adulterous sexual relationship on a daily basis and after morning physical training, on lunch breaks, and anytime he did not have to be at work. He admitted to her that he had several other affairs during his marriage including with another woman whom he admitted he also impregnated.

e. The GOMOR was imposed as an administrative measure and not as punishment under Article 15 of the Uniform Code of Military Justice.

f. On 2 February 2009, the appellant acknowledged receipt of the GOMOR and elected to submit a response to the GOMOR. On 5 March 2009, he submitted a rebuttal to the GOMOR. He accepted responsibility for his misconduct.

g. The appellant's chain of command recommended the GOMOR be filed in his OMPF.

h. On 26 March 2009, the Acting Commander, US Army Field Artillery Center and Fort Sill, directed the GOMOR for filing in his OMPF.

2. The Officer Evaluation Report (OER) covering the period the GOMOR was issued (Change of Rater, 20080515-20090331), makes reference to the issues addressed in the GOMOR. It was a referred report. He was assessed as "Unsatisfactory Performance, Do Not Promote" and "Do Not Promote, Below Center of Mass, Retain," by his rater and senior rater (SR), respectively.

3. The appellant received a referred report covering the period 1 April through 30 September 2009. He was assessed as "Satisfactory Performance, Promote" and "Fully Qualified," by his rater and SR respectively.

a. The rater noted that the appellant failed to meet height and weight standards.

b. The SR noted, "[The appellant] has continued treatment for some of his personal challenges and I am confident that if he continues to improve he should be strongly considered for promotion to Major."

4. His last OER covered the period 1 October 2009 through 30 September 2010. He was rated as a Support Stability Transition Team Deputy Chief in Iraq. He was assessed as "Outstanding Performance, Must Promote," and "Best Qualified" by his rater and SR, respectively, with a recommendation for promotion now.

5. There is no other derogatory information in the appellant's official record.

6. The appellant was removed from the FY 2008 MAJ APL. There is no evidence he has been selected for promotion.

7. The appellant provides a supporting statement from his Team Chief (Colonel W), who recommends transfer of the GOMOR. He contends the appellant's performance and conduct as an officer is nothing less than admirable, and that he is highly regarded by his Iraqi counterparts and superiors alike.

8. Army Regulation 600-37 Unfavorable Information, Paragraph 7-2b(1), states that unfavorable documents may be appealed on the basis of proof that their intended purpose has been served and that their transfer would be in the best interest of the Army. The burden of proof rests with the recipient to provide substantial evidence that these conditions have been met.

ANALYST'S DISCUSSION AND RECOMMENDATIONS:

1. The appellant requests transfer of the GOMOR based on intent served. In order to have the GOMOR transferred, the appellant must show by substantial evidence that it has served its intended purpose and that it is in the best interest of the Army to transfer it.

2. The appellant contends the intent of the GOMOR has been served.

a. Less than two years have elapsed since the appellant received the GOMOR.

b. The appellant appears to accept responsibility for his misconduct; however, he presents numerous issues in mitigation of his accountability. To his credit, he has sought assistance for his personal and family issues, and has made some improvements in his personal conduct, which was noted in his last two OERs.

c. He received two OERs since receipt of the GOMOR. One of these OERs was a referred report. Although his performance was evaluated as outstanding on his last OER, insufficient time has elapsed for him to have demonstrated a solid performance over a sustained period of time.

d. His removal from the FY 2008 MAJ APL is noted; however, this result is viewed as the natural consequence of his misconduct. Inasmuch as he also received two referred OERs following the issuance of the GOMOR, the reprimand would only be one of the contributing factors for further non-selection for promotion.

e. While he did not provide a supporting recommendation from the imposing authority, he did provide a statement from his current team chief who attests to his outstanding professional and personal conduct. However, this statement alone does not satisfy the criterion of "intent served."

3. In weighing all the available evidence, it appears there is insufficient evidence to show the intent of the GOMOR has been served and it would not be in the best interest of the Army to transfer it at this time. Therefore, denial of his petition to transfer the GOMOR is recommended.

Legend:
ARNG – Army National Guard BNCOC – Basic Non-Commissioned Officer Course CI – Commander's Inquiry
DUI – Driving Under the Influence EER – Enlisted Evaluation Report GOMOR – General Officer Memorandum of Reprimand
IG - Inspector General LOR – Letter of Reprimand NCO – Non-Commissioned Officer NJP – Non-Judicial Punishment
OER – Officer Evaluation Report ROI – Report of Investigation SCM – Summary Court Martial SPCM – Special Court-Martial
UCMJ – Uniform Code of Military Justice USAR – U.S. Army Reserve

REPLY TO ATTENTION OF:

**DEPARTMENT OF THE ARMY**
United States Division-Central
Kharkh Area Command Advisory Team
APO AE 09348

28 September 2010

DA Stability Evaluation Board

President of the DA Stability Evaluation Board
1901 South Bell Street, 2nd Floor
Arlington, VA 7202-4508

Dear Mr. President of the DASEB,

It is not my intention to foster sympathy since my transgressions. My purpose is to explain in full detail how I overcame my challenges after the General Officer Memorandum of Reprimand filing. It's my desire the board will determine the General Officer Memorandum of Reprimand has served its purpose and it is in the best interest of the Army to transfer it from my performance to restricted file.

I take full responsibility for my actions and understand the ramifications I put others through from my dastardly behavior. The worst of it all is I emotionally scarred and humiliated my wife. My promotion was suspended prior to my 1 December 2008 pin on date. I embarrassed my entire family, especially my parents who planned on attending my promotion ceremony. I watched in humiliation as my peers enjoyed their promotion without me. Daily, I was mortified in the presence of peers and superiors. There is not a day that goes by that I am not bothered by the lack of judgment and the continuous horrible lies that destroyed my personal integrity. I couldn't take reality and didn't admit the truth to my wife and others because I selfishly thought I was missing out on deserved happiness. I blamed my superiors for not appreciating my sacrifice during my deployment and was very unhappy where I was in my personal life. I became an alcoholic and gained a lot of weight, exceeding the AR 600-9 standard. I was two inches from walking off our old dining room table in hanging myself during the investigation. I felt like the

DANIELS, DERRICK, T. Redacted PII Receipt Date: 2010/10/19 AR20100026510

Daniels, Derrick, T. Assigned To: Redacted PII Receipt Date: 2010/09/28 AR20100026119

whole world was against me. I was at my lowest point and felt like no one wanted to hear my story or cared to understand my feelings.

It was my religious faith that kept me from walking off the table, hanging myself. I was command directed for a psyche evaluation, spending ten days for attempted suicide in the Red River mental institution, Wichita Falls, Texas. I met other veterans there from Fort Sill and Fort Hood suffering from depression. Many, like me, recently returning from Iraq. As an officer, I shared my problems, as painful as it was. Coming from back from the fifteen month surge deployment, I thought I was invincible. But nothing was farther from the truth. This time away from the unit allowed me to focus on some deep inner problems that have plagued me for years. We shared each others pains by discussing what lead to some of the decisions that brought us to this point. I learned to communicate better in that hospital better than from any military school or college course.

After the official reprimand filing, I didn't regress. I don't blame my command for anything. I would have done the same thing if I was in their shoes. I am just thankful they saw enough in me not to pursue a court martial. They even allowed me to continue teaching on the platform. I was still impacting the lives of young officers, many getting ready for their first deployment. I continued my progression through A&A meetings, one-on-one sessions with my mental health care provider and weekly post-deployment working groups. These were the best part of my week as I found solace helping others, as well as myself, to cope. In addition, my wife and I were and still now separated. Having already bought a home a few years before, I purchased a new home two months before my expected promotion date. Without the promotion, I still had to maintain two households. So I received additional medical training to work weekends as an in home health care provider for the physically and mentally challenged. Working weekends generated extra money to maintain our bills. I needed to find a way to keep my finances intact

and did. It also kept me from frequenting bars on the weekends and most importantly, allowed me to regain some dignity.

I desperately needed to change my situation in order to continue my redemption. I felt I needed to prove myself more, so I volunteered for a third deployment on an advisory team. Due to my continued progress, the Army cleared me to go back to combat after coming back and I have demonstrated I can serve as a field grade in a very complex, tough mission. I was promotable at the time, placing me as an O-4 deputy team chief. I continue to serve admirably as the only captain on a forty plus team of O-4, O-5, and O-6 field grade officers.

On November 2009, I was officially removed from the 08 Majors board but that didn't falter my motivation. I welcomed it as a challenge and believe I have the ability to create my own destiny. In many aspects, this is the toughest deployment I have endured. The Support Stability Transition Team concept is still new and we are building the airplane as it flies. Establishing and maintaining sound relationships with our Iraqi counterparts despite operational, logistical, intellectual challenges all bind by corruption can often feel insurmountable. But my core principles have not changed on analyzing and solving new problems. Our two-man team was the least resourced. However, it allowed me to foster a very strong partnership bond with my counterparts, more than anyone else in our brigade. Building a partnership is something several field grades here are challenged with. I have developed the ability to take our challenges and exploit them as an advantage to accomplish the intent, involving patience and understanding. I attribute my honed skills with the trials and tribulations I experienced within the last year.

Even now, I still experience the subtle pain of explaining my ordeal with old friends and superiors I come across during my deployment. I witness the surprise in their facial expressions, but I get some comfort in their belief that I can get through this. I love the Army. I have been in the Army since I was seventeen. It has always given me a sense of purpose when I was a

troubled young teen still looking for an identity. So, I humbly ask to continue the momentum. Since the filing, I have displayed a strong character. I am reliable, dependable and most of all committed. I still want to have a solid family of morale character; just like the one I was raised in. Not only have I regained the weight control standards of AR 600-9, but I am in the best shape since fifteen years.

I possess the skills set the Army needs as an advisor to support building strong partnerships in Iraq and as we transition to a more advisory role in Afghanistan. As a commander, I have always giving Soldiers the opportunity for a second chance. I have been a survivor all my life, even when I didn't believe it. Every Soldier that has served under me may not have liked me, but I guarantee they would say I was fair. I am pleading for the same opportunity. I guarantee I will not waste it if granted.

Sincerely,

DERRICK T. DANIELS
CPT, AR
Karkh Area Command Advisory Team

**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 1st BATTALION 30th FIELD ARTILLERY REGIMENT
UNITED STATES ARMY FIELD ARTILLERY SCHOOL
FORT SILL, OKLAHOMA 73503-5000

REPLY TO ATTENTION OF

'R' LOR 29 JAN 09

ATSF-BF 13 JAN 2009

Redacted PII

MEMORANDUM FOR RECORD

SUBJECT: AR 15-6 Investigation of CPT Daniels, Derrick, CAD, 1-30th FA, 428th FAB.

1. Additional background information reference the 15-6 investigation by MAJ Chris Compton:

- CPT Daniels' had two deployments to Iraq - 12 months / 2003-2004 as an Ops Officer in DIV G-3 and Battle CPT for 2-63 AR. Second deployment was 15 months / 2006-2007 as A Co and follow-on as HHC Cdr in 1-77 AR. Both units were out of 1st Infantry Division in Germany.

- Redeployed back NOV 2007 and PCSd to Ft. Sill APR 2008. His wife had already moved to Ft. Sill and they did not go through any reintegration training in Germany.

- June 2008 – Self referral to ASAP (Mr. Fred Jette) for drinking problems. His wife recommended this treatment and he agreed. Has been going to AA meetings since June and after recent issues has transferred to the "Senior Leaders Group" and attending those once a week since NOV. Scheduled treatment will end o/a FEB 2009.

- June 2008 – Additionally sought Mental Health treatments (Mrs. McKenney) for drinking and emotional outbursts (without physical contact with his wife) once a month. He is still in counseling once a month.

- DEC 2009 – Mrs. McKinney, in light of the current issues, has setup CPT Daniels for Psychiatric Evaluation with Dr. Smith on 22 DEC 2008. Additionally, she has enrolled him into the Post Deployment Clinic, with his first counseling session on 29 DEC 2008.

- CPT Daniels has had two meetings with Family Advocacy (Mrs. Barbara Christianson) in DEC 2008. He has also rejoined his Church and attends twice a week (Wednesday – Bible Study and Sunday – Services)

2. The city of Lawton and Comanche County Courts are continuingto prosecute the case against CPT Daniels (even after his wife dropped the charges of Assault) and his Court Hearing is scheduled for 26 JAN 2009. His nocontact order (with his spouse) by both the County and 1-30th Field Artillery Cdr remain in effect.

3. Sworn statement by Ms. Tara Brown who states she is pregnant with CPT Daniels' twins and they have had a physical relationship since June 2008 (see attachment of sworn statement)

4. Recommend that CPT Daniels receive GOMOR and be dismissed from the service.

5. POC for this headquarters is the undersigned at 442-4768.

CHRISTOPHER P. TALCOTT
LTC, FA
Commanding





1ST BN, 30TH FA Regiment

Tara Brown

Redacted PII

Redacted PII cell

Redacted PII hm

(580) 357-7400 wk

truetooyou77@yahoo.com

true tooyou 7773@yahoo.com

**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 1st BATTALION 30th FIELD ARTILLERY REGIMENT
UNITED STATES ARMY FIELD ARTILLERY SCHOOL
FORT SILL, OKLAHOMA 73503-5000

REPLY TO
ATTENTION OF

ATSF-BF 17 DEC 2008

MEMORANDUM FOR RECORD

SUBJECT: AR 15-6 Investigation of CPT Daniels, Derrick, CAD, 1-30th FA, 428th FAB.

1. Additional information reference the investigation:

- CPT Daniels' had two deployments to Iraq - 12 months / 2003-2004 as an Ops Officer in DIV G-3 and Battle CPT for 2-63 AR. Second deployment was 15 months / 2006-2007 as A Co and follow-on as HHC Cdr in 1-77 AR. Both units were out of 1st Infantry Division in Germany.

- Redeployed back NOV 2007 and PCSd to Ft. Sill APR 2008. His wife had already moved to Ft. Sill and they did not go through any reintegration training in Germany.

- June 2008 – Self referral to ASAP (Mr. Fred Jette) for drinking problems. His wife recommended this treatment and he agreed. Has been going to AA meetings since June and after recent issues has transferred to the "Senior Leaders Group" and attending those once a week since NOV. Scheduled treatment will end o/a FEB 2009.

- June 2008 – Additionally sought Mental Health treatments (Mrs. McKinney) for drinking and emotional outbursts (without physical contact with his wife) once a month. He is still in counseling once a month.

- DEC 2009 – Mrs. McKinney, in light of the current issues, has setup CPT Daniels for Psychiatric Evaluation with Dr. Smith on 22 DEC 2008. Additionally, she has enrolled him into the Post Deployment Clinic, with his first counseling session on 29 DEC 2008.

- CPT Daniels has had two meetings with Family Advocacy (Mrs. Barbara Christianson) in DEC 2008. He has also rejoined his Church and attends twice a week (Wednesday – Bible Study and Sunday – Services)

2. The city of Lawton and Comanche County Courts are continuing to prosecute the case against CPT Daniels (even after his wife dropped the charges of Assault) and his Court Hearing is scheduled for 26 JAN 2009. His no-contact order (with his spouse) by both the County and 1-30th Field Artillery Cdr remain in effect.

3. POC for this headquarters is the undersigned at 442-4768.

CHRISTOPHER P. TALCOTT
LTC, FA
Commanding

**AR 15-6 Investigation**

**Table of Contents**

TAB 1:
- *DA Form 1574 Report of Proceedings by Investigating Officer*
- *Findings*
- *Recommendations*

TAB2:
- *Investigating Officer Appointment Orders*
- *Chronology*

TAB 3:
- *Exhibit 1: Statement of Mrs. Wendy Daniels*
- *Exhibit 2: Lawton Police Report (dated 20081126)*
- *Exhibit 3: Photographic Evidence*
- *Exhibit 4: Advise of Rights (Lawton Police Department)*
- *Exhibit 5: Recorded Statements from Mrs. Daniels and CPT Daniels (CD-R)*
- *Exhibit 6: Physical Evidence (Plastic Baton)*
- *Exhibit 7: Statement from Trial Defense Attorney (Invoking Article 31 rights)*
- *Exhibit 8: Interview questions for CPT Daniels (Not answered)*

# REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS

For use of this form, see AR 15-6; the proponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

## SECTION I - APPOINTMENT

Appointed by COL John S. Fant
*(Appointing authority)*

on 24 November 2008 *(Date)* *(Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)*

## SECTION II - SESSIONS

The *(investigation) (board)* commenced at Fort Sill, OK *(Place)* at 0900 *(Time)*

on 26 November 2008 *(Date)* *(If a formal board met for more than one session, check here* ☐ *. Indicate in an inclosure the time each session began and ended, the place, persons present and absent, and explanation of absences, if any.)* The following persons *(members, respondents, counsel)* were present: *(After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*

The following persons *(members, respondents, counsel)* were absent: *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*

The *(investigating officer) (board)* finished gathering/hearing evidence at ________ *(Time)* on ________ *(Date)*

and completed findings and recommendations at ________ *(Time)* on ________ *(Date)*

## SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO 1/ | NA 2/ |
|---|---|---|---|
| 1 Inclosures *(para 3-15, AR 15-6)* Are the following inclosed and numbered consecutively with Roman numerals: *(Attached in order listed)* | | | |
| a. The letter of appointment or a summary of oral appointment data? | ☒ | ☐ | |
| b. Copy of notice to respondent, if any? *(See item 9, below)* | ☐ | ☐ | ☒ |
| c. Other correspondence with respondent or counsel, if any? | ☒ | ☐ | ☐ |
| d. All other written communications to or from the appointing authority? | ☒ | ☐ | ☐ |
| e. Privacy Act Statements *(Certificate, if statement provided orally)*? | ☒ | ☐ | ☐ |
| f. Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered *(e.g., absence of material witnesses)*? | ☐ | ☐ | ☒ |
| g. Information as to sessions of a formal board not included on page 1 of this report? | ☐ | ☐ | ☒ |
| h. Any other significant papers *(other than evidence)* relating to administrative aspects of the investigation or board? | ☐ | ☐ | ☒ |

FOOTNOTES: *1/ Explain all negative answers on an attached sheet.*
*2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.*

| | | YES | NO 1/ | NA 2/ |
|---|---|---|---|---|
| 2 | Exhibits *(para 3-16, AR 15-6)* | | | |
| | *a.* Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | ☒ | ☐ | ☐ |
| | *b.* Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | ☒ | ☐ | ☐ |
| | *c.* Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | ☒ | ☐ | ☐ |
| | *d.* Are copies, descriptions, or depictions *(if substituted for real or documentary evidence)* properly authenticated and is the location of the original evidence indicated? | ☒ | ☐ | ☐ |
| | *e.* Are descriptions or diagrams included of locations visited by the investigating officer or board *(para 3-6b, AR 15-6)?* | ☐ | ☐ | ☒ |
| | *f.* Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | ☒ | ☐ | ☐ |
| | *g.* If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit *(para 3-16d, AR 15-6)?* | ☐ | ☐ | ☒ |
| 3 | Was a quorum present when the board voted on findings and recommendations *(paras 4-1 and 5-2b, AR 15-6)?* | ☐ | ☐ | ☒ |
| B. | COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS *(Chapter 5, AR 15-6)* | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment *(para 5-3b, AR 15-6)?* | ☐ | ☐ | |
| 5 | Was a quorum present at every session of the board *(para 5-2b, AR 15-6)?* | ☐ | ☐ | |
| 6 | Was each absence of any member properly excused *(para 5-2a, AR 15-6)?* | ☐ | ☐ | ☐ |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required *(para 3-1, AR 15-6)?* | ☐ | ☐ | ☐ |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence *(para 5-2d, AR 15-6)?* | ☐ | ☐ | ☐ |
| C. | COMPLETE ONLY IF RESPONDENT WAS DESIGNATED *(Section II, Chapter 5, AR 15-6)* | | | |
| 9 | Notice to respondents *(para 5-5, AR 15-6):* | | | |
| | *a.* Is the method and date of delivery to the respondent indicated on each letter of notification? | ☐ | ☐ | |
| | *b.* Was the date of delivery at least five working days prior to the first session of the board? | ☐ | ☐ | |
| | *c.* Does each letter of notification indicate — | ☐ | ☐ | |
| | (1) the date, hour, and place of the first session of the board concerning that respondent? | ☐ | ☐ | |
| | (2) the matter to be investigated, including specific allegations against the respondent, if any? | ☐ | ☐ | |
| | (3) the respondent's rights with regard to counsel? | ☐ | ☐ | |
| | (4) the name and address of each witness expected to be called by the recorder? | ☐ | ☐ | |
| | (5) the respondent's rights to be present, present evidence, and call witnesses? | ☐ | ☐ | |
| | *d.* Was the respondent provided a copy of all unclassified documents in the case file? | ☐ | ☐ | |
| | *e.* If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | ☐ | ☐ | ☐ |
| 10 | If any respondent was designated after the proceedings began *(or otherwise was absent during part of the proceedings):* | | | |
| | *a.* Was he properly notified *(para 5-5, AR 15-6)?* | ☐ | ☐ | ☐ |
| | *b.* Was record of proceedings and evidence received in his absence made available for examination by him and his counsel *(para 5-4c, AR 15-6)?* | ☐ | ☐ | ☐ |
| 11 | Counsel *(para 5-6, AR 15-6):* | | | |
| | *a.* Was each respondent represented by counsel? | ☐ | ☐ | |
| | Name and business address of counsel: | | | |
| | | | | |
| | *(If counsel is a lawyer, check here* ☐ *)* | | | |
| | *b.* Was respondent's counsel present at all open sessions of the board relating to that respondent? | ☐ | ☐ | ☐ |
| | *c.* If military counsel was requested but not made available, is a copy *(or, if oral, a summary)* of the request and the action taken on it included in the report *(para 5-6b, AR 15-6)?* | ☐ | ☐ | ☐ |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality *(para 5-7, AR 15-6):* | | | |
| | *a.* Was the challenge properly denied and by the appropriate officer? | ☐ | ☐ | ☐ |
| | *b.* Did each member successfully challenged cease to participate in the proceedings? | ☐ | ☐ | ☐ |
| 13 | Was the respondent given an opportunity to *(para 5-8a, AR 15-6):* | | | |
| | *a.* Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | ☐ | ☐ | |
| | *b.* Examine and object to the introduction of real and documentary evidence, including written statements? | ☐ | ☐ | ☐ |
| | *c.* Object to the testimony of witnesses and cross-examine witnesses other than his own? | ☐ | ☐ | ☐ |
| | *d.* Call witnesses and otherwise introduce evidence? | ☐ | ☐ | |
| | *e.* Testify as a witness? | ☐ | ☐ | |
| | *f.* Make or have his counsel make a final statement or argument *(para 5-9, AR 15-6)?* | ☐ | ☐ | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses *(para 5-8b, AR 15-6)?* | ☐ | ☐ | ☐ |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it *(para 5-11, AR 15-6)?* | ☐ | ☐ | ☐ |

FOOTNOTES: *1/ Explain all negative answers on an attached sheet.*
*2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.*

 APD PE v1.30

**SECTION IV - FINDINGS** *(para 3-10, AR 15-6)*

The *(investigating officer) (board)*, having carefully considered the evidence, finds:

See attached memorandum

**SECTION V - RECOMMENDATIONS** *(para 3-11, AR 15-6)*

In view of the above findings, the *(investigating officer) (board)* recommends:

See attached memorandum

**SECTION VI - AUTHENTICATION** *(para 3-17, AR 15-6)*

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)*

| | |
|---|---|
| *(Recorder)* | *(Investigating Officer) (President)* |
| *(Member)* | *(Member)* |
| *(Member)* | *(Member)* |

**SECTION VII - MINORITY REPORT** *(para 3-13, AR 15-6)*

To the extent indicated in Inclosure ______, the undersigned do(es) not concur in the findings and recommendations of the board. *(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

| | |
|---|---|
| *(Member)* | *(Member)* |

**SECTION VIII - ACTION BY APPOINTING AUTHORITY** *(para 2-3, AR 15-6)*

The findings and recommendations of the *(investigating officer) (board)* are *(approved) (disapproved) (approved with following exceptions/ substitutions). (If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

CMT

After reviewing the investigating officer's report and recommendations, I concur with recommending a General Officer reprimand for CPT Daniels. However, in light of his ongoing counseling and medical treatment, I am convinced that him continuing to be active teaching is a good thing. I have seen no degradation in his performance and believe this "outlet" is a positive part for his treatment. So recommend he continue to work and train Lieutenants in BOLC III.

[signature] LTC, FA



1ST BN, 30TH FA Regiment

Tara Brown

Redacted PII

Redacted PII cell

Redacted PII hm

(580) 357-7400 wk

truetooyou77@yahoo.com

true tooyou7773@yahoo.com

REDACT THIS ENTIRE PAGE

## SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| 1st-30th FA HQ, Ft. Sill, OK | [illegible] | 1640hrs | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| Brown Tara M | Redacted PII | Civilian |

8. ORGANIZATION OR ADDRESS

9. I, Tara M. Brown, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

TB I met Captain Derrick Daniels on a website called [redacted] his email address is [redacted]. We talked a few and then started chatting on yahoo @ cyberrogue 9. We [redacted]. We went out and [redacted] Falls, Texas. Derrick initially told me that he was separated going through a divorce and he lived at his address on [illegible] and his wife Wendy Daniels lived in the new residence. I did not find out he was still with his wife until I was relocating to Lawton, OK from Wichita Falls, Tx. We [redacted] when I moved to Lawton, OK. Derrick would be at my residence [redacted] and if he didn't have to be at work he would be at the house. [redacted]. TB

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 3 PAGES |
|---|---|---|
| | TB | TB |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ____ TAKEN AT ____ DATED ____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.*

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF Tara Brown TAKEN AT 1-30th FA UAS DATED 20090107

9. STATEMENT (Continued)

Derrick let me know a few things about his past in [redacted]. He let me know about a relationship he had supposedly prior to ours with a [redacted]. He revealed that she had gotten [redacted] and he took her to have an abortion. He mentioned [redacted]. He informed me that if I was pregnant he would not have nor make or ask me to have an abortion. He stated he loved me and that everything would be okay. I found out I was [redacted]. I informed Derrick, he acknowledged. Our relationship still continued physical we never stopped the relationship. My due date is July 4th 2009.

End of Statement

Q1- On or about what date did you and CPT Derrick Daniels [redacted] in your relationship?

A1- On or about the [redacted].

Q2- When did you find out the CPT Daniels, Derrick was still married?

A2- I [redacted].

INITIALS OF PERSON MAKING STATEMENT [initials] PAGE 2 OF 3 PAGES

STATEMENT OF Tara Brown TAKEN AT 1-30th FA HQ DATED 20070107

9. STATEMENT *(Continued)*

Q3- Are you still seeing CPT Daniels?

A3- Our last physical contact was Dec 31st and I am not sure where things will go. TB

Q4- Does CPT Daniels know that you are pregnant? ~~Are~~ Is he the father?

Yes. ~~Yes~~ he knows I am pregnant. TB.
Yes, ~~he acknowledges he is the father~~, I have text messages from him stating so. TB.

Nothing Follows

AFFIDAVIT

I, Tara Brown, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 3. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

Tara Brown
*(Signature of Person Making Statement)*

WITNESSES: [signature]
GEORDIE E. BEAL
1-30 FA FT SILL OK
ORGANIZATION OR ADDRESS

[signature]
Thomas P. [illegible]
1-30 FA Ft Sill OK
ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 7 day of JAN, 2007 at 1-30th FA HQ Ft. Sill OK 73503

[signature] LTC, FA
*(Signature of Person Administering Oath)*

Christopher F. Talcott
*(Typed Name of Person Administering Oath)*

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT TB

PAGE 3 OF 3 PAGES





**DEPARTMENT OF THE ARMY**
Headquarters, 1st Battalion, 78th Field Artillery
428th Field Artillery Brigade
Fort Sill, Oklahoma 73503-6202
"TEAMWORK"

REPLY TO
ATTENTION OF:

ATSF-KL

15 December 2008

MEMORANDUM FOR RECORD

SUBJECT: AR 15-6 Investigation Report of Findings and Recommendations

1. The following is a report of findings and recommendations by AR 15-6 Investigating Officer, MAJ Christopher D. Compton, assigned to conduct a formal investigation into the facts and circumstances surrounding allegations that CPT Derrick T. Daniels (Senior Instructor/Writer, A Btry, 1-30 FA) assaulted his wife in a domestic dispute and caused injuries while fighting on Sunday, 16 November 2008.

2. I, MAJ Christopher D. Compton, do certify that I have conducted an investigation regarding the facts and circumstances of the allegations against CPT Daniels. I also certify that this report addresses the following requirements directed to me by the appointing authority, COL John S. Fant:

a. Whether there was a violation of Army Regulation or any article governed by the Uniform Code of Military Justice (UCMJ).

b. Whether CPT Daniels is in violation of any civil law outside of military jurisdiction.

c. Recommendations as to what to do in order to prevent this incident from occurring in the future.

d. Recommendations of appropriate actions consistent with my findings.

3. Findings.

a. CPT Daniels violated Article 128 Assault, Article 134 Adultery, and Article 133 Conduct Unbecoming an Officer and a Gentlemen.

1. *Violation of Article 128 Assault is substantiated*: I find that CPT Daniels did commit assault by intentionally inflicting bodily harm to his wife, Mrs. Wendy Daniels on the evening of 16 November 2008. According to statements given to Detective Roberto Peralta of the Lawton Police Department (LPD) by both CPT Daniels and his wife, CPT Daniels did strike his wife in anger during a fight that occurred in their home on 16 November 2008 (see Exhibit 5). In a verbal statement to Detective Peralta, Mrs. Daniels described the incident and stated that her husband struck her and shoved her multiple times during the fight and also used a hard plastic baton (see Exhibit 6) to strike her in anger on her head. Mrs. Daniels described the incident in a manner consistent with her verbal statement in a written sworn statement to MAJ Compton during an interview on 12 December 2008 (see Exhibit 1). CPT Daniels also admitted to striking his wife in anger with the plastic baton during a verbal statement recorded by Detective Peralta (see Exhibit 5). CPT Daniels declined to make a written or verbal statement to MAJ Compton (see Exhibits 7, 8). Photographic evidence from Mrs. Daniels' visit to the emergency room at

Reynolds Army Community Hospital on 21 November 2008 reveals bruises sustained to Mrs. Daniels during the fight with her husband (see Exhibit 3). CPT Daniels inappropriate sexual relationships with other women caused the fight between CPT and Mrs. Daniels. Both parties confirm this in their verbal statements to Detective Peralta (see Exhibit 5) and Mrs. Daniels reiterated it in her written statement (see Exhibit 1).

2. *Violation of Article 134 Adultery is substantiated:* I find that CPT Daniels did, by his own admission, wrongfully have sexually active relationships with other women while he was married at the time. In a verbal statement to Detective Peralta (see Exhibit 5), CPT Daniels admitted to having "sexually active" relationships with other women. CPT Daniels also stated that his wife possessed physical evidence consisting of email and photos that contained content confirming her suspicion that he was having adulterous affairs with other women. Mrs. Daniels declined to provide copies of the photos and emails to the Investigating Officer, but did agree to mention two women that she believes were sexually involved with her husband in a phone conversation with the Investigating Officer. Mrs. Daniels declined to include the following information regarding her husband's adulterous relationships in her sworn statement: Mrs. Daniels stated that she had phone and email contact with Ms. Tara Brown who admitted to having an adulterous relationship with CPT Daniels. During the course of their correspondence Ms. Brown told Mrs. Daniels about another woman with whom CPT Daniels had been sexually involved. Mrs. Daniels referred to her as "Tanisha" but did not know a last name. Mrs. Daniels stated that her husband allegedly impregnated Tanisha while the woman's husband was serving in Iraq and made arrangements for her to get an abortion in Oklahoma City. Again, CPT Daniels declined to make a statement to the Investigating Officer. While no physical evidence is available to confirm these allegations against CPT Daniels, his admission of guilt is sufficient evidence to substantiate the violation of Article 134, in my opinion.

3. *Violation of Article 133 Conduct Unbecoming an Officer and Gentleman is substantiated.* Given that CPT Daniels did violate both Articles 128 and 134 as stated in the paragraphs above, it is clear that he acted in a dishonorable manner and compromised his character as an officer and a gentleman. The Manual for Courts Martial clearly states that an officer who violates other articles of the UCMJ also violates this article.

b. Other findings that affect the Investigation Officer's conclusions.

1. *CPT Daniels does have a history of mental health problems and has been seeking help.* According to Mrs. Daniels sworn statement (see Exhibit 1), CPT Daniels behavior changed significantly after he returned from a deployment to Iraq in the spring of 2008. She stated that he heavily drank and often became angry. Mrs. Daniels asked him to seek help with mental health physicians, which he did in July 2008. She stated that he was referred to the ASAP program. I attempted to ask CPT Daniels about his involvement with CMHS but he declined to comment (see Exhibit 7, 8)

2. *Mrs. Daniels no longer feels her husband is a threat.* In her verbal statement to Detective Peralta (see Exhibit 5), Mrs. Daniels stated that she felt her life was in danger because of the threats made against her by her husband. She stated that he made remarks that referenced using his gun to kill her during their fight on 16 November. However, in her written sworn statement (see Exhibit 1) she stated that she no longer feels threatened and took steps to lift the civilian protective order that was put in place following the incident. A "No Contact Order" remains in place by the authority of the Battalion Commander.

4. Recommendations.

a. CPT Daniels should receive a General Officer Memorandum of Reprimand (GOMOR) for violating Articles 128, 133, and 134 of the UCMJ.

b. CPT Daniels should be immediately removed from any duties involving officer instruction and reassigned to a position of lesser influence.

c. CPT Daniels should continue to seek professional help through CMHS, Family Advocacy, and the Chapel including anger management and marriage counseling.

d. Because Mrs. Daniels no longer feels threatened by her husband (see Exhibit 1) and the civilian protective order has already been removed, I recommend lifting the no contact order between CPT Daniels and his wife.

5. The point of contact for this memorandum is the Investigating Officer, MAJ Christopher D. Compton, at 442.6426 or christopher.compton@conus.army.mil.

CHRISTOPHER D. COMPTON
MAJ, FA
AR 15-6 Investigating Officer

## SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| BLDG 6007, FORT SILL, OK | 20081202 | | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| DANIELS, WENDY LAVELL | Redacted PII | CIV |

8. ORGANIZATION OR ADDRESS
Redacted PII

9.
I, Wendy Daniels, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

1. Did an altercation take place in your home with your husband on Sunday 16 Nov.? [initials]
Yes [initials]

2. Describe what took place during that alteraction. [initials]
Basically My husband Derrick was in bed... as I went to give him a kiss. I could smell sex ~~[struck]~~ around his mouth (WD) area. Prior to this night I had suspicions because of emails that I read. Therefor I began to question him about the smell and my suspicions. Finally he admitted to both. I was so angry ~~[struck]~~ I then slapped him. After I slapped him he basically lost his temper and started to hit me. In the mist of the fight he picked up a plastic batton and hit me. ~~[struck]~~ WD

3. Did you receive injuries from your husband? [initials] Yes, scratches to my neck from being choked. Bruises on my arm and leg. And ~~[struck]~~ some soreness to my neck and head. WD

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 4 PAGES |
|---|---|---|
| 1 | WD | |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ____ TAKEN AT ____ DATED ____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF Wendy Daniels TAKEN AT Fort Sill DATED 2 Dec 08

9. STATEMENT (Continued)

4. As you stated previously, your husband admitted to committing adultery. What do you know about his relationship(s) with other women? From what I learned from Derrick after the fight is that he met this young lady online. He explained that he's felt lost and was Searching for simple pleasures in the wrong places. I took it to mean that it was a "sex thing." Something that gave him short pleasure ~~for a sh~~ because didn't find pleasure in "anything" anymore. Explained that once he came back from Iraq that nothing was going the way he wanted as far as his duties in the military or anything else, meaning his relationship with his family and in his marriage. WD

5. You stated in a statement to Detective Perolta that you spoke to a woman who your husband had a sexual relationship with. What information did you receive from her concerning your husband's infidelity? She expressed or explained that She knew that my husband had gotten a young lady pregnant and that this young lady was married to a solder who apparently was in Iraq at the time. She said he told her the he had taken her to get an abortion. WD

6. Does your husband have a history of violence or infidelity over the course of your marriage? My husband has never been violent toward me over the course of our marriage. We've been married 13 yrs. he has gone to Iraq twice. the 1st time he went to Iraq and returned, I had no issues with violence nor infidelity. However we did have counseling: "Re-intergration" that was coordinated to include the family members. Marriage retreats through the military and Help through the Battalion's chaplain. This time Derrick returned home a totally different person. Therefore I feel that because there wasn't any immediate re-integration ~~that~~ included the family and we were living in separate places didn't help what issues he may have had at the time. WD

INITIALS OF PERSON MAKING STATEMENT WD

PAGE 2 OF 4 PAGES

DA FORM 2823, NOV 2006 APD PE v1.00

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF Wendy Daniels TAKEN AT Fort Sill DATED 2 Dec 08

9. STATEMENT (Continued)

7. Has your husband received any treatment for his different behavior following the most recent deployment? If so, what treatment and when? A: Yes he has and still is. A year prior to his return back from Iraq (which he was stationed in germany) I had moved back to LAWTON to Finish College. He of course was stationed here at Ft Sill 6mths later. Although I could see a difference in him after his return, I could difinately see more of a difference was we were re-united in the same household. Derrick's routine was drink alcohol from sun up to sun down which would sometimes cause him to become more angry. After a incidents of breaking things in the house I adviced him to seek mental help. He started to seek Mental Health treatments around the last part of June or maybe the 1st week of July. Mental Health refered him to go to ASAP and do AA meetings. WD

8. You told Detective Perolta on 21 Nov that you feared for your safety and did not want to have any contact with your husband. Is this still true? A: This is not still true. I feared for my life because I had never gone through anything of this fashion with my husband before. It was a very scary feeling to see the expressions on his face at during the time of his anger. However, Derrick expressed how torn he felt for doing what he did the same night it happened but at that point I was just unsure of what could happen next. Also because I've been with Derrick for so long (dated 7yrs prior to marriage) I am totally aware of the man he was before, fun, loving, and caring. He sent a message to me through a mutual friend asking, "if he turn his life over to God and is able to prove that he could be a better man, the man that he was before would I take him back?" I sent a message back saying that he needed to show me by making the first step and rejoin our old Church. Our friend called and told me that indeed this past Sunday he rejoined the church and that he seemed very sincere and looked like he was going to stick to his word. In that information I feel that my safety is no longer an issue. WD

INITIALS OF PERSON MAKING STATEMENT WD

PAGE 3 OF 4 PAGES

DA FORM 2823, NOV 2006 APD PE v1.00

STATEMENT OF Wendy Daniels TAKEN AT Fort Sill DATED 2 Dec 08

9. STATEMENT (Continued)

9. Was this contact described in the last question the only contact of any form you have had since the incident? ar Yes WD

10. Why did you decide to remove the protective order and drop the charges of assault against your husband? ar Mainly because of ~~my~~ what I described in Question 8. WD

11. Do you have anything else to say in this statement? ar I know that Derrick
has infact broken rules (UCMJ) However, I do believe that the ~~my~~ majority
of his issues resulted from what he endured over in Iraq. In a
Small way I feel that the military failed at providing the proper
help that he may have needed which could have helped him to
cope better after is return. He did take Command twice while
there and I get a sense that ~~[illegible]~~ He just didn't know how
to deal with his issues and was afraid to ask for the help
he needed. Not saying the military or Iraq is to blame but I do
feel a lot of what happened resulted from his last tour in Iraq.
Derrick is a great Guy and has been a great Soldier and I believe
he has served his Country and Army well. WD

WD WD WD

WD NOTHING FOLLOWS WD

## AFFIDAVIT

I, Wendy Daniels, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 4. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

[signature]
(Signature of Person Making Statement)

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 2 day of Dec, 2008 at Bldg 6007, Fort Sill, OK

(Signature of Person Administering Oath)

ORGANIZATION OR ADDRESS

MAJ Christopher D. Compton
(Typed Name of Person Administering Oath)

[signature]
ORGANIZATION OR ADDRESS

(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT

PAGE 4 OF 4 PAGES

Prepared By: 5605
Prepared Date: 11/26/2008

PAGE1

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

*INCIDENT INFORMATION*

Date Reported: 11/21/2008 Time: 0230
Report Officer: 4226 (POLLARD, JEFFERY ALLEN)
Approval Officer: 0700 (CARTER, ERIC MATTHEW)
Invest Officer: 5605 (PERALTA, ROBERTO)
Date Occurred: 11/17/2008 Time: 2100
Location: 5303 SW TYLER Pref: Apt:
City: LAWTON State: OK Zip: 73501-
Latest Poss Date: 11/17/2008 Time: 2200
Rpt District: 32 Beat: 12 Shift: 1
Command Area: 01
Damage Prop: Stolen Property: Stolen Vehicle:
Disposition: REFERRED TO OTHER AGENCY Disposition Date: 11/24/2008

*OFFENSES*

Offense: S21-644.C (ASSAULT/BATTERY ON A SPOUSE)
IBR Code: 01 Att/Comp: C UCR: 0430 UCR Arson:

*VICTIM*

Name Type: VICTIM Name: DANIELS,WENDY L
Address: Redacted PII
Bldg: Apt #:
Phone: Redacted PII SSN: Redacted PII DOB: Redacted PII Sex: F Race: B
DL Number: Redacted PII State: OK Hgt: 5'07 Wgt: 230 Hair: BLK Eyes: BRO
Employer: Phone:
Emp Addr: ,
Bldg: Apt #:

*SUSPECT*

Name Type: SUSPECT Name: DANIELS,DERRICK TORAINO
Address: Redacted PII
Bldg: Apt #:
Phone: Redacted PII SSN: Redacted PII DOB: Redacted PII Sex: M Race: B
DL Number: State: Hgt: 5'09 Wgt: 194 Hair: BLK Eyes: BRO
Employer: US ARMY Phone: Redacted PII
Emp Addr: ,
Bldg: Apt #:

*CASE*

Received Status: OPEN INVESTIGATION Date Assigned: 11/24/2008
Current Status: REFERRED TO OTHER AGENCY Scheduled Review:
Investigators: PERALTA, ROBERTO
Supervisor: LAFRANCE, LAWRENCE R Date Reassigned:

Prepared By: 5605
Prepared Date: 11/26/2008

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

Police Action: FOLLOW UP APPROVED
Police Reason:
Prosecutor Action:
Reason Rejected:
Final Disposition:

Date Pol Action: 11/24/2008

Date Pros Action:
Date Reactivated:

*NARRATIVE*

On 11-21-08 at approx 0213 hrs, Officer Pollard was dispatched on a domestic abuse call that happened Monday 11-17-08 at approx 2100-2200 hrs. Pollard met Wendy Daniels at Reynolds Army Hospital who said her husband Derrick Daniels attacked her. Wendy said she and Derrick were arguing over Derrick's infidelity when Derrick began pushing Wendy and then grabbed a police type thick plastic baton and hit Wendy over the left side of her head. Wendy said she almost became unconscious. Wendy said she went to the ground and Derrick began dragging her across the ground. Wendy sought medical treatment at Reynolds, she signed to press charges was given a witness complaint form and domestic abuse sheet. Wendy was told to follow up at the county courthouse.

Lawton Police records ran a triple I of Derrick Daniels for prior domestic abuse and his records was clear. Pictures was taken of the injuries by Officer Carter.

SW-7000

*CASE MGMT NARRATIVE*

Reference Case 2008-12244, Victim Wendy Daniels, Domestic Abuse and AWDW

On 11-21-2008, Det. Peralta was assigned this case and he immediately went Reynolds Army Hospital to make contact with Mrs. Wendy Daniels however she was discharged prior to my arrival, and she was located at the Fort Sill Advocacy office. I them made contact with Mrs. Daniels and she stated that it was on Sunday and not Monday as previously reported that she was assaulted by her husband. Mrs. Daniels stated that she reached over to give her husband a good night kiss when she smelled another women vagina on his face. Mrs. Daniels awoke her husband Mr. Derrick Daniels and he admitted to be having an affair. Mrs. Daniels then got upset and slapped her husband in the face, and a physical altercation ensued. Mrs. Daniels was showing Mr. Daniels some of the e-mails that she had found on the computer when he got upset and lost his cool and hit Mrs. Daniels several times with a plastic Baton. I then made contact with Mr. Daniels at his battalion headquarters where LTC Talcott assisted us and provided a room to interview Mr. Daniels. Mr. Daniels who is an active duty Captain in the US Army stated after his Miranda warning rights were read that he and his wife are having problems, and that he did lose his cool and assaulted his wife. Mr. Daniels also stated that he has been having an affair with several other women, and his wife "Wendy", is a good women but that he need some time apart. During this investigation I was accompanied by Special Agent David L. Spiegel from the Fort Sill Criminal Investigation Command. Mrs. April Plumley also assisted from the Family advocacy office on Fort Sill. LTC Talcott who is the Battalion Commander from Captain Daniels command stated that he will place a military protective order on Captain Daniel restraining him from visiting his wife. Mrs. Daniels then came to the Lawton Police Department with Mrs. Plumley and was given a citizens statement and instructed on how to

Prepared By: 5605
Prepared Date: 11/26/2008

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

fill it out, and Mrs. Plumley informed me that she escorted Mrs. Daniels to the Comanche County court house and obtained a protective order issued by the judge. This case is a referred to other agency code 62, Detective Roberto Peralta 221/5605, 11-21-2008.
lrl#41

REVIEWED by POLLARD, JEFFERY ALLEN

APPROVED by CARTER, ERIC MATTHEW

# ADVISE OF RIGHTS

POB Redacted PII

**PERSON INTERVIEWED:**

NAME: Derrick Toriano Daniels SSN: Redacted PII Redacted PII

EDUCATION LEVEL: 18 yr ENGLISH LANGUAGE: ✓ YES ___ NO

**INTERVIEW:**

LOCATION: Fort Sill DATE: 11-21-2008

INTERVIEWER: Det. Peralta TIME: 0935 hrs

**YOUR RIGHTS**

DTD ✓ You have the right to remain silent.

DTD ✓ Anything you say can and will be used against you in court.

DTD ✓ You have the right to talk to a lawyer and have him present with you while you are being questioned.

DTD ✓ If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if You wish one.

DTD ✓ If you decide to make a statement, you may stop at any time.

**WAIVER OF RIGHTS**

Do you understand each of the rights I have explained to you? Yes DTD ✓ No ______

Having these rights in mind, do you wish to talk to us now? Yes DTD ✓ No ______

Witness: [signature] Signature: X [signature]

SSN: Redacted PII

Witness: ______ Interviewer: Det. [signature]

SSN: ______ Offense No.: 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

**Compton, Christopher D MAJ MIL USA TRADOC**

**Subject:** FW: Investigation (UNCLASSIFIED)

From: Kees, Duane A CPT MIL USA USARPAC
Sent: Thursday, December 11, 2008 2:47 PM
To: Compton, Christopher D MAJ MIL USA TRADOC
Subject: RE: Investigation (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Sir:

After speaking with CPT Daniels on more that one occasion regarding the events in question and CPT Daniels has decided to assert his Article 31 Rights.

I do apologize for the inconvenience.

Please use this communication as evidence of CPT Daniels assertion of his Article 31 Rights.

Thank you.

CPT Kees





000691

3
4
5
6
7
8
9
10
11

**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
251 18TH STREET SOUTH, THIRD FLOOR
ARLINGTON, VA 22202-3531

ARBA CASE NUMBER: AR20120015382

OCT 3 1 2012

SAMR-RB

MEMORANDUM FOR Commanding General, U.S. Army Human Resources Command, ATTN: AHRC-OPL-R, 1600 Spearhead Division Avenue, Fort Knox, Kentucky 40121

SUBJECT:  Officer Elimination Case
(DANIELS, Derrick T., Redacted PII CPT, AR, RA)

1.  On 18 April 2012, a Board of Inquiry recommended Captain Daniels be Discharged from the United States Army based on misconduct and moral or professional dereliction, with an Honorable Discharge Certificate.

2.  On 23 October 2012, the Department of the Army Board of Review for Eliminations recommended Captain Daniels be eliminated from the United States Army based on misconduct and moral or professional dereliction, with an Honorable characterization of service.

3.  I approve the Boards' recommendations to eliminate Captain Derrick T. Daniels from the United States Army based on misconduct and moral or professional dereliction (AR 600-8-24, paragraph 4-2b), with an Honorable characterization of service.

4.  Recoupment action will be conducted in accordance with Army Regulation 600-8-24, paragraph 1-16, and Title 10 United States Code Section 2005.

BY ORDER OF THE SECRETARY OF THE ARMY:

CATHERINE C. MITRANO
Deputy Assistant Secretary of the Army
(Review Boards)

000696

NAME DANIELS, DERRICK, T. SSN Redacted PII PERIOD COVERED 20080515 - 20090331

## PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

☐ OUTSTANDING PERFORMANCE, MUST PROMOTE ☐ SATISFACTORY PERFORMANCE, PROMOTE ☒ UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE ☐ OTHER (Explain)

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE, REFER TO PART III, DA FORM 67-9 AND PART IVa, b, AND PART Vb, DA FORM 67-9-1.

CPT(P) Daniels work performance as a Combined Arms Division Instructor has been utterly superb. He is an outgoing and energetic instructor who displays exceptional platform manner. He is technically and tactically competent and fully understands both fire support and maneuver doctrine. CPT(P) Daniels truly cares about his students, and routinely uses his personal time to coach and mentor Lieutenants. CPT(P) Daniels also possesses an uncanny ability to cope with stress. Though he has had an extreme amount of personal stress the past few months, it has not affected his duty performance. Unfortunately, his personal conduct does not match his duty performance. During this rating period CPT(P) Daniels received a General Officer Memorandum of Reprimand (GOMOR) for conduct unbecoming an Officer. CPT(P) Daniels failed manage his personal affairs and the GOMOR is the direct result of him not living up to the Army's high personal moral standards. Though his work performance his been superb, it has been overshadowed by his personal misconduct.

c. COMMENT ON POTENTIAL FOR PROMOTION.

CPT(P) Daniel's personal misconduct and disregard for the Army Values have severely limited any further potential for promotion within the Army. Do not promote to Major. Retain as a Captain as an instructor or staff officer.

d. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

## PART VI - INTERMEDIATE RATER

Solid performance training and education new Field Artillery Second Lieutenants in the art of maneuver operations and warfare. CPT(P) Daniels performance was overshadowed with personal misconduct that resulted in a General Officer Memorandum of Reprimand. Do not promote to Major but retain on active duty so CPT(P) Daniels has the opportunity to overcome the personal challenges that afflicted him during this rating period.

## PART VII -SENIOR RATER

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

☐ BEST QUALIFIED ☐ FULLY QUALIFIED ☒ DO NOT PROMOTE ☐ OTHER (Explain below)

I currently senior rate 28 officer(s) in this grade

A completed DA Form 67-9-1 was received with this report and considered in my evaluation and review ☒ YES ☐ NO (Explain in c)

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)

HQDA COMPARISON OF THE SENIOR RATER'S PROFILE AND BOX CHECK AT THE TIME THIS REPORT PROCESSED

*BELOW CENTER OF MASS RETAIN*

RO: CPTP DANIELS DERRICK T
Redacted PII

SR: COL FANT JOHN S
Redacted PII

DATE: 2009 05 28

TOTAL RATINGS: 24

RATINGS THIS OFFICER: 1

c. COMMENT ON PERFORMANCE/POTENTIAL

CPT(P) Daniels received a General Officer Memorandum of Reprimand during this rating period for misconduct as a direct result of challenges in his personal life. However, his work performance was solid and CPT(P) Daniels continued to provide excellent training in developing Field Artillery Second Lieutenants in their maneuver operations skills as part of the Combined Arms Directorate at the Field Artillery School. Retain on Active Duty and allow CPT(P) Daniels to continue to receive medical treatment and overcome the personal challenges that afflicted him during this rating period.

d. LIST THREE FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Instructor, Staff Officer, AC/RC



**DEPARTMENT OF THE ARMY**
Combined Arms Division
Fires Center of Excellence
FT Sill, OK 73503

REPLY TO ATTENTION OF:

AT-F-BFA

21 May 2009

MEMORANDUM FOR Commander, 1st Battalion, 30th Field Artillery Regiment, 428th FA BDE, Fort Sill, OK 73505

SUBJECT: Referral Comments for Officer Evaluation Report (OER) Referral 15MAY08-30MAR09, Derrick T. Daniels, CPT, AR, Redacted PII

1. Sir, it's not my intentions to influence anyone in changing my evaluation of the rating period. The rating reflects by performance accordingly; however I want to detailed certain aspects of my performance and character that was not specifically detailed in my evaluation.

2. During the investigation, I asked to be left on the platform and was. Today its still a daily struggle with uncertainty about my military career, marriage and my financial stability. It would have been too easy in allowing my personal struggles affect the way I coached, mentored and taught our future leaders. My passion in seeing others succeed never died, just like always. Not once did I allow my displeasure or depression degrade our Lieutenants patriotism and service. Whatever your personal convictions were at the time, you believed in me and I didn't fail you in that aspect. In addition, the evaluation does not mention my attempts to seek medical treatment before the personal misconduct nor any diagnosis by my physician based on this rating period.

3. I have always believed my teaching style is unorthodox and despite push back from peers; I started teaching in the scenario-based format before senior Army leaders constituted it necessary in the school house. My Field Artillery and Armor background has given me incite about combined arms relationships more than most. And even though I didn't receive an initial counseling when I came here about my specific duties and responsibilities, I used that as initiative in passing along my experience and expertise. During this period, I bridged the gap in Fire Supporters truly understanding the purpose and significance of supporting maneuver. Often times I wouldn't hesitate in helping Lieutenants with fire Support instruction, especially when we were shorted handed instructors during tests and JCATs. Not part of my duty description, but part of my character. So many students have approached me and thanked me personally. I was able to instill a purpose because my experiences and knowledge is an invaluable asset to your organization.

4. The point of contact for this memorandum is CPT Derrick T. Daniels at DSN 442-1528 or derrick.toraino.daniels@us.army.mil.

DERRICK T. DANIELS
CPT, AR
Senior CAD Instructor/Writer



REPLY TO ATTENTION OF:

**DEPARTMENT OF THE ARMY**
Combined Arms Division
Fires Center of Excellence
FT Sill, OK 73503

AT-F-BFA

5 November 2009

MEMORANDUM FOR Commander, 1ST Battalion, 30TH Field Artillery Regiment, Fort Sill, OK 73503.

SUBJECT: Rebuttal for Officer Evaluation Report for CPT (P) Derrick T. Daniels, Redacted PII from 1 April 2009 to 30 September 2009.

1. HISTORY. I acknowledge and accept responsibility of my failure to maintain my weight standard as a Soldier in the United States Army. I come from an obese family, but during my fifteen years in the Army, it has been a manageable challenge. I have always been taped but able to meet my body fat standard. For the past year, I have battle several things which have contributed my weight gain.

a. Marital Separation. My wife and were separated for almost a year. Our finances were stretched and I became deeply depressed. I withdrew from my peers and would constantly eat alone as a comfort. During most of that time, I lacked the self discipline to cook healthy meals, normally a responsibility of my wife, because I lost my motivation to be competitive.

b. Hospitalization for mental evaluation. The ten days I didn't workout in the Red River Mental Clinic contributed to my lack of motivation. I hated working out with my peers after I returned to my unit because I felt they were judgmental. I became withdrawn from unit events and dreaded going to work.

c. Alcohol Abuse. The increased use of Alcohol from depression since my return from my second deployment also contributed to my weight gain.

2. PROGRESS. For the past six months, I have amended my relationship with my spouse. I have graduated from the ASAP program and I have been making constant progress to get my weight under control. To help with my progress and finances, I worked on weekends as a medical provider to the mental and physically challenged. I also was able to contribute to the team by working as the battalion AS3 for three months to help reestablish my self confidence. I am proud of my accomplishments and continuing my progress. I found new meaning to my life and self worth.

3. The point of contact for this memorandum is CPT Derrick T. Daniels at DSN (912) 767-3660 or derrick.toraino.daniels@us.army.mil.

//ORIGINAL SIGNED//
DERRICK T. DANIELS
CPT, AR
Senior CAD Instructor/Writer

# OFFICER EVALUATION REPORT

For use of this form, see AR 623-3; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO) SEE PRIVACY ACT STATEMENT IN AR 623-3.

## PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK (YYYYMMDD) | e. BRANCH | f. DESIGNATED SPECIALTIES / PMOS (WO) |
|---|---|---|---|---|---|
| DANIELS, DERRICK, T. | Redacted PII | CPTP | 20021001 | AR | 19A |

| g.1. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | g.2. STATUS CODE | h. REASON FOR SUBMISSION |
|---|---|---|
| HSB, 1-30TH FA, FORT SILL, OK 73503, TRADOC | | 03 Change of Rater |

| i. PERIOD COVERED FROM (YYYYMMDD) | THRU (YYYYMMDD) | j. RATED MONTHS | k. NONRATED CODES | l. NO. OF ENCL | m. RATED OFFICER'S AKO EMAIL ADDRESS (.gov or mil) | n. UIC | o. CMD CODE | p. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| 20090401 | 20090930 | 6 | | 1 | derrick.toraino6497@us.army.mil | W2NT02 | TC | TD22 |

## PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)

| | NAME (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|---|---|---|
| a. NAME OF RATER | THOMAS, CELESTER | Redacted PII | MAJ | Battalion S3 | THOMAS.CELESTER Redacted PII | 20090923 |
| b. NAME OF INTERMEDIATE RATER | TALCOTT, CHRISTOPHER P. | Redacted PII | LTC | Battalion Commander | TALCOTT.CHRISTOPHER.PHILL Redacted PII | 20090923 |
| c. NAME OF SENIOR RATER | FANT, JOHN S. | Redacted PII | COL | Brigade Commander | FANT.JOHN.SARRATT Redacted PII | 20090925 |

| SENIOR RATER'S ORGANIZATION | BRANCH | SENIOR RATER TELEPHONE NUMBER | E-MAIL ADDRESS (.gov or .mil) |
|---|---|---|---|
| HQ, 428th Field Artillery Brigade, Fort Sill, OK 73503 | FA | 580-442-4704 | john.fant@us.army.mil |

d. This is a referred report, do you wish to make comments? [X] [X] Yes, comments are attached [ ] No

e. SIGNATURE OF RATED OFFICER: DANIELS.DERRICK.TORAIN Redacted PII — DATE (YYYYMMDD): 20091002

## PART III - DUTY DESCRIPTION

a. PRINCIPAL DUTY TITLE: SENIOR INSTRUCTOR / WRITER

b. POSITION AOC/BR: 19A00

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES. REFER TO PART IVa, DA FORM 67-9-1.

Combined Arms Instructor for the United States Army Field Artillery School (USAFAS), Combined Arms Division. Serve as primary instructor for Army and Marine Corps lieutenants and international officers during the Combined Arms blocks of instruction. Responsible for instructing officers on combined arms organization, capabilities, limitations, tactics, and the employment of Fires Support systems. Responsible for the physical, intellectual, and professional development of Field Artillery lieutenants attending the Basic Officer Course. Reviews, evaluates, and recommends developments in combined arms doctrine, fire support doctrine, training, equipment, and organization of the Field Artillery.

## PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

**CHARACTER** Disposition of the leader: combination of values, attributes, and skills affecting leader actions

**a. ARMY VALUES** (Comments mandatory for all "NO" entries. Use PART Vb.)

| Value | Yes | No |
|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | X | |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | X | |
| 3. COURAGE: Manifests physical and moral bravery | X | |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | X | |
| 5. RESPECT: Promotes dignity, consideration, fairness, & EO | X | |
| 6. SELFLESS-SERVICE: Places Army priorities before self | X | |
| 7. DUTY: Fulfills professional, legal, and moral obligations | X | |

**b. LEADER ATTRIBUTES / SKILLS / ACTIONS:** First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb.

**Comments are mandatory in Part Vb for all "No" entries.**

| Category | Selected | Item | Yes/No |
|---|---|---|---|
| b.1. ATTRIBUTES (Select 1) Fundamental qualities and characteristics | X | 1. MENTAL — Possesses desire, will, initiative, and discipline | YES |
| | | 2. PHYSICAL — Maintains appropriate level of physical fitness and military bearing | YES |
| | | 3. EMOTIONAL — Displays self-control; calm under pressure | YES |
| b.2. SKILLS (Competence) (Select 2) Skill development is part of self-development; prerequisite to action | | 1. CONCEPTUAL — Demonstrates sound judgment, critical/creative thinking, moral reasoning | YES |
| | | 2. INTERPERSONAL — Shows skill with people: coaching, teaching, counseling, motivating and empowering | YES |
| | X | 3. TECHNICAL — Possesses the necessary expertise to accomplish all tasks and functions | YES |
| | X | 4. TACTICAL — Demonstrates proficiency in required professional knowledge, judgment, and warfighting | YES |

b.3. ACTIONS (LEADERSHIP) (Select 3) Major activities leaders perform: influencing, operating, and improving

| Category | Selected | Item | Yes/No |
|---|---|---|---|
| INFLUENCING — Method of reaching goals while operating / improving | X | 1. COMMUNICATING — Displays good oral, written, and listening skills for individuals / groups | YES |
| | | 2. DECISION-MAKING — Employs sound judgment, logical reasoning and uses resources wisely | YES |
| | | 3. MOTIVATING — Inspires, motivates, and guides others toward mission accomplishment | YES |
| OPERATING — Short-term mission accomplishment | | 4. PLANNING — Develops detailed, executable plans that are feasible, acceptable, and suitable | YES |
| | X | 5. EXECUTING — Shows tactical proficiency, meets mission standards, and takes care of people/resources | YES |
| | | 6. ASSESSING — Uses after-action and evaluation tools to facilitate consistent improvement | YES |
| IMPROVING — Long-term improvement in the Army its people and organizations | | 7. DEVELOPING — Invests adequate time and effort to develop individual subordinates as leaders | YES |
| | X | 8. BUILDING — Spends time and resources improving teams, groups and units; fosters ethical climate | YES |
| | | 9. LEARNING — Seeks self-improvement and organizational growth; envisioning, adapting and leading change | YES |

c. APFT: PASS DATE: 20090302 HEIGHT: 69 WEIGHT: 208 NO

d. OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF CPTs, LTs, CW2s, AND WO1s.
WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED? YES

NAME DANIELS, DERRICK, T. SSN Redacted PII PERIOD COVERED 20090401 - 20090930

## PART V - PERFORMANCE AND POTENTIAL EVALUATION *(Rater)*

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

☐ OUTSTANDING PERFORMANCE, MUST PROMOTE ☒ SATISFACTORY PERFORMANCE, PROMOTE ☐ UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE ☐ OTHER *(Explain)*

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE, REFER TO PART III, DA FORM 67-9 AND PART IVa, b, AND PART Vb, DA FORM 67-9-1.

Outstanding performance by a talented officer. CPT Daniels has done exemplary work throughout this rating period. He is a self starter who works well with minimal supervision and displays exceptional initiative. He volunteered to be the Assistant Operations Officer for the battalion, while still teaching Combined Arms classes. His execution of taskings and the battalion's Organization Inspection Program was flawless. In addition, he assisted with the rewrite of several classes in BOLC III. His in-depth understanding of Field Artillery and full spectrum operations proved invaluable to his students. His efforts were a direct result of an improved Program of Instructions for our lieutenants. Track this officer's career carefully. Send him to the resident Command and General Staff College as soon as possible. If we continue to groom him, he will excel. During our last Army Physical Fitness Test, CPT Daniels failed to meet height and weight standards as prescribed in AR 600-9. CPT Daniels performs physical fitness training twice a day. His efforts in physical fitness have resulted in a constant improvement toward meeting Army height and weight standards. I'm confident, that within six months, CPT Daniels will be within height and weight standards.

c. COMMENT ON POTENTIAL FOR PROMOTION.

This officer has potential for promotion to Major; he clearly possesses the skills to operate at the field grade level.

d. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

## PART VI - INTERMEDIATE RATER

Improved performance by CPT Daniels in training and educating new Field Artillery officers in their Basic Officer Leadership Course III Combined Arms Directorate classes. In the past five months, Derrick has handled his personal challenges professionally and continued to provide first class training to our officers at the U.S. Field Artillery School. He has worked very hard on his height/weight challenges and scored 287 on his APFT. Definitely has the potential to work at the field grade level and should be considered for promotion.

## PART VII -SENIOR RATER

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

☐ BEST QUALIFIED ☒ FULLY QUALIFIED ☐ DO NOT PROMOTE ☐ OTHER *(Explain below)*

I currently senior rate 28 officer(s) in this grade

A completed DA Form 67-9-1 was received with this report and considered in my evaluation and review ☒ YES ☐ NO *(Explain in c)*

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)

HQDA COMPARISON OF THE SENIOR RATER'S PROFILE AND BOX CHECK AT THE TIME THIS REPORT PROCESSED

*CENTER OF MASS*

RO: CPTP DANIELS DERRICK T
Redacted PII

SR: COL FANT JOHN S
Redacted PII

DATE: 2009 11 12

TOTAL RATINGS: 43

RATINGS THIS OFFICER: 2

c. COMMENT ON PERFORMANCE/POTENTIAL

CPT Daniels' performance these past five months showed his desire and determination to stay in the Army and be competitive for promotion to Major. Derrick's performance as an instructor and mentor to Field Artillery lieutenants continues to be an area of strength for him. He has done an excellent job retooling our Combined Arms Directorate's courses to increase the knowledge and abilities of FA lieutenants in maneuver warfare and the Army's warfighting functions. CPT Daniels has continued treatment for some of his personal challenges and I am confident that if he continues to improve he should be strongly considered for promotion to Major. Continue to develop and send to ILE.

d. LIST THREE FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Instructor Armor School; AC/RC; MiTT Chief



DEPARTMENT OF THE ARMY
ARMY REVIEW BOARDS AGENCY
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

February 1, 2011

AR20100026510, Daniels, Derrick T.

CPT Derrick T. Daniels
Redacted PII

Dear Captain Daniels:

The Department of the Army Suitability Evaluation Board (DASEB) rendered a decision on your request concerning unfavorable information in your Official Military Personnel File (OMPF). After careful consideration of the facts and evidence in your case, the DASEB determined that there is insufficient evidence to justify removal or transfer of the unfavorable information to the OMPF restricted section.

Enclosed is a copy of the DASEB Record of Proceedings which will provide details of the Board's decision.

Sincerely,

Edgar J. Yanger
Colonel, US Army
President, Department of the Army
Suitability Evaluation Board

Enclosure

Printed on Recycled Paper



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY FIELD ARTILLERY CENTER AND FORT SILL
FORT SILL, OKLAHOMA 73503-5000

REPLY TO
ATTENTION OF

29 JAN 2009

ATZR-C

MEMORANDUM FOR CPT Derrick T. Daniels, Redacted PII A Battery, 1st Battalion, 30th Field Artillery Regiment, 428th Field Artillery Brigade, Fort Sill, OK 73503

SUBJECT: Reprimand

1. You are hereby reprimanded for domestic assault and battery for beating, choking, and threatening your wife, for ongoing multiple adulterous affairs with women including one married to a deployed Soldier, and for conduct unbecoming an officer and gentleman.

2. On Sunday, 16 November 2008, you had a sexual encounter with a woman other than your wife, returned home, and went to bed. Your wife woke you up when she realized you smelled of the other woman. You admitted to your wife that you were having an affair and had just returned from her, confirmed her previous suspicions based upon email traffic she had read, then engaged in a fight with your wife. You attacked her by hitting her with your hands, then with a plastic baton, on her face and head to the brink of unconsciousness and leaving her with bruises still visible 5 days later. When she fell, you dragged her across the floor. You choked her, scratching her on her neck. You verbally threatened her to the point that she feared for her life.

3. You later explained to your wife that you met the other woman through an online website. You admitted to the investigating police that you had engaged in affairs with several other women. Your wife talked to one of the other women who revealed your other affairs, to include impregnating the wife of a deployed Soldier.

4. You have admitted that you are the father of twins with the woman you met on the website "onlinebootycall.com" and with whom you began a sexual relationship in June 2008 and continue until now. Initially you told her that you were separated from your wife and going through a divorce. Even after she learned you were still living with your wife, you continued the adulterous sexual relationship on a daily basis before and after morning physical training, on lunch breaks, and anytime you did not have to be at work. You admitted to her that you had several other affairs during your marriage including with another woman whom you admitted you also impregnated.

5. Your behavior is repugnant. You expect the Officers and Soldiers you train and lead to maintain the highest standards of duty, respect, honor and integrity, and, as such, must hold yourself to these same standards as the example. You violated the Army leader values with your actions over many months. Your actions indicate a lack of judgment in your professional and personal life.

ATZR-C
SUBJECT: Reprimand

6. Officers in the United States Army, especially those who teach and train others, must lead by example and conduct themselves beyond reproach. The young Americans we welcome to our ranks are bound together by their honor, integrity, and trust. They will learn that, in the Army, every Soldier is a leader and responsible for their personal conduct, regardless of rank. You have failed to lead by example.

7. This reprimand is imposed as an administrative measure under the provisions of AR 600-37 and not as punishment under UCMJ, Article 15. I intend to file this reprimand in your Official Military Personnel File (OMPF). You will acknowledge this memorandum by signing the attached endorsement, and return it through your chain of command to me within 15 calendar days, together with any statements or rebuttal on your behalf. I will withhold my decision on imposing and filing this reprimand until I receive and consider your response along with the recommendations of the chain of command.

PETER M. VANGJEL
Major General, USA
Commanding

2 FEB 04

(Office Symbol) (Date)

MEMORANDUM THRU Office of the Staff Judge Advocate, Criminal Law Division, USAFACFS, Fort Sill, Oklahoma 73503

FOR Commander, USAFACFS, Fort Sill, Oklahoma 73503

SUBJECT: Reprimand

1. I acknowledge receipt of the subject memorandum. DTD (Initial)

2. I (wish) ~~(do not wish)~~ to submit matters on my behalf. DTD (Initial)

3. I understand that, should I wish to submit matters, I will be given the opportunity to consult with legal counsel. I understand that I must contact the Legal Assistance Office, OSJA (442-5058/5059) within two working days of receipt of the subject memorandum to make an appointment. DTD (Initial)

4. I understand that if I have already retained legal counsel, my retained counsel must authorize Army counsel to represent me for preparing matters. DTD (Initial)

5. I understand that if I have difficulty making an appointment to consult counsel, I will contact the Chief, Criminal Law Division (442-3900/3533), for assistance. DTD (Initial)

6. I (do) ~~(do not)~~ wish to consult with counsel. DTD (Initial)

[signature]
(Signature)

DERRICK T. DANIEL
(Print Name)

CPT, AR
(Rank, Branch)



**DEPARTMENT OF THE ARMY**
Combined Arms Division
Fires Center of Excellence
FT Sill, OK 73503

REPLY TO ATTENTION OF:

AT-F-BFA

5 March 2009

MEMORANDUM FOR Major General Peter M. Vangjel, Commanding General, United States Fires Center of Excellence, Fort Sill, OK 73503

SUBJECT: Reprimand Rebuttal

1. **Violations of UCMJ.** I accept full responsibility for my actions for the past several months. I have not lived up to the Army's expectations or mine. I did assault my wife and I did have an affair with Tara Brown for several months. I deeply regret the decisions I made but the current picture depicted by the investigation is truly not who I am and the actual events during the assault didn't occur as detailed during the investigation.

2. **The Assault.** On 17 February 2008, I did admit to my wife I was having an affair with Tara Brown after returning from the first day of Red Leg War. This was based on the suspicion and confrontation by her on the previous day. Wendy asked me if I loved her and I said yes. My wife slapped me and I proceeded to push her several times to get her out of my way. We both were in the den and she was blocking the exit, but I just wanted to get away from the situation. As I continued to push her, she caught my thumb in her mouth and bit. I pleaded with her to let me go and she did. As I walked away, she followed me into the bed room still screaming at me about how I had ruined our lives. In the guest room, she went to the closet where she printed off emails of my conversation with Ms. Brown. I told her that I was very sorry and tired of everything, but I just wanted to be left alone. She shouted that she wanted me to see them. I was ashamed, hurt and dismayed about the situation and everything else going on in my life after the deployment. I told Wendy not to approach me but she did. As she came up to me, I notice a plastic baton from her police woman Halloween costume on the floor. I picked up the baton and stuck her on the side of the head once. The force and type of object was not nearly enough to knock her to the ground nor did she ever go into unconsciousness. She went to her knees and began to cry with her head on the bed. She then said "Why don't you just kill me!" I said if you want to die then you know where the gun is at. **I didn't tell her go get the gun and I will shoot you in the fucking head!** My wife had since hidden the weapon from me because I was already seeing mental health. She was the only one who knew its location. I quickly grabbed the emails still in her hands and tore them up. I then left the bed room to throw the torn papers into the garbage can in the kitchen. As I was walking back to the bedroom to see if I had missed any papers, Wendy was sitting in the hallway. She then kicked me between the legs. I then knelt down and grabbed her around the neck, squeezing, and saying, "Stop it! This is not worth both of us getting hurt!!" I then told her I was very sorry and helped her to her feet. At that point we talked a couple hours about the affair and future plans.

3. **Me.** I am the Soldier that joined the Army at seventeen. As an E-1 private, I truly became to love the Army's structure and camaraderie. I was sexually assaulted by my male cousin when I was thirteen years old. I also grew up an only child and isolated in rural South Georgia. My

father was very strict and didn't allow me to participate in any extra curricular activities. Coming from South Georgia, I have a deep inferiority complex, but the Army gave me a chance to prove myself. Despite not being admitted to the West Point prep-school, I enlisted two additional years to get a green-to-gold scholarship. I really believed in the Army's philosophy of building people, giving them a sense of pride and belongingness. Unfortunately, some of my immediate supervisors didn't seem to fully support my goals and I really wanted to change that as a company commander.

4. **My research.** During my Master's Thesis I conducted a comparison and contrast case study on implementing change by Dr. John P. Kotter, a Harvard business professor who authored the Eight-Step Change Model, with the FM 6-22 Army Leadership and found they were the same in aspects of leading change. A fact very few military leaders know and this reconfirmed by desires and beliefs. The study confirmed that Soldiers are our most important resources and we can accomplish the impossible only if we invest properly. I poured my heart and soul in an attempt to make this work.

5. **My OPTEMPO.** The Army has the system to build strong leaders but we rarely make the system operate as it was design. I gave myself completely too every job in an attempt to facilitate this philosophy. But somewhere along the way, I lost who I was. My positions from the past few years included:

a. 1ID Division Battle Captain OIF II: February 2004 to July 2004.

b. 2-63 AR, Battle Captain OIF II: July 2004 to January 2005.

c. 2-63 AR, Battalion Maintenance Officer: February 2005 to August 2005. Due to BRAC relocation, I was tasked with organizing and monitoring equipment turn-in over 337 vehicles within 45 days for the relocation of 3BDE/1ID. This was accomplished with a depleted workforce due to post-OIF II and a daily fifteen hour workday.

d. 1-77 AR, Battalion S1: August 2005 to January 2006. I inherited and resubmitted over 286 awards for Soldiers from the previous deployment while simultaneously preparing to redeploy for 06-08. Several awards had to be rewritten despite several leaders having PCSd and ETSd. Leadership was brand new and companies were already training for deployment, so I rewrote several awards myself.

e. A/1-77 AR Commander: January 2006 to December 2006. All of my lieutenant experience is Field Artillery and I didn't attend a maneuver transition course due to deployment preparation.

1. Tank Gunnery: January 2006 to February 2006. Through hard work and perseverance, I accomplished the best crew score of the entire company commander's with a superior score of 806/1000 points.

2. Hohenfels Mission Readiness Exercise: February 2006 to March 2006. The 2BCT/1ID compressed a 45 day exercise within 30 days. We experienced bitter cold but were able to complete all required training tasks.

3. Tank Gunnery: July 2006 to August 2006. We had to re-qualify several crews due to the change in the deployment dates and new arrivals. We accomplished this within ten days.

4. Deployment: August 2006 to December 2006.

a. Left-seat right seat ride. I attended the COIN academy in Taji. Soon after, I conducted a RECON for two areas of operations because of uncertainly were to implement tanks. We also conducted an accelerated left-seat-right-seat ride within two weeks and signed for equipment from a tank company and FA battery with-in two days.

b. Battle Rhythm. We were half the size of my Infantry Company, but we innovatively operated effective by task organizing down in the platoons. Our missions included conducting deliberate cordon and searches, SOI engagements, project assessments, and daily patrols. It was standard SOP for us to police, myself included, dead bodies from canals and streets. I was also personally involved in two small arm attacks, one involving my platoon leader being shot in his shoulder. We experienced strategic challenges such as OPERATION LION's GATE which was to maintain security by keeping insurgents out of Baghdad with barriers erected outside the city. My tactical challenge was that the local civilians couldn't tend their crops or walk their kids to school. My orders were to stencil Arabic on the barriers warning anyone not to breach these barriers or they would be shot.

5. Command inventories. I gave up command in December to take command of HHC/1-77 AR in Ramadi. I had to work around the other company's battle rhythms to perform my inventories. This was accomplished within three weeks within cities of Baghdad, Taji and Ramadi.

f. HHC/1-77 AR Commander, January 2007 to April 2008.

1. Deployment. The support platoon and HQs platoon was directly under my command and I was responsible for all logistical support for several ISF and coalition outposts across the battalion's footprint.

2. Casualties. The day I took command of over three hundred forty two Soldiers, I lost two junior NCOs. Several months later, two more of my Soldiers suffered gun shot wounds and one became a double amputee below the knees. Two months prior to redeployment, I lost a fine NCO on the TF Commander's PSD. I spoke at the memorial service for all of my Soldiers and I personally consoled family members with a phone call.

2. Administration. I also didn't falter in completing numerous congressionals, article 15s, OERs NCOERs and every deployment, PCS, ETS award in the company, including staff, prior to redeployment.

3. BRAC relocation. After redeployment, we were informed the BDE was moving to Grafenwhoer. Thus preparations were being made to move over 136 designated families within three months. The move was to be completed before the rigorous training in preparation for the next deployment.

4. Property Accountability. Property accountability was a humongous problem due to a very in-experienced supply sergeant and new XO. I would spend several hours monitoring, training and coaching just to maintain the required standard. Due to our tremendous hard work and effort of every leader I influenced, I left both commands without spending a penny.

5. Inferiority. My complex really plagued me during my command. My battalion commander was African American and my predecessor for Headquarters' Company was African American as well. There was a rumor going through our battalion FRG that my battalion commander was showing favoritism. The battalion executive officer and commander didn't have a good relationship and it showed in training meetings. There was always a constant power struggle and I felt that the battalion XO was trying to command my company by giving orders and requirements to my company executive officer daily. The high tension among the staff and myself along with everything else going on in my command affected me deeply. So I worked harder. I worked desperately just to get everyone's approval that I was good despite my color. I never mentioned anything to anybody because I was afraid that I would be labeled as using the race card. My complex worsened when I returned. I became obsessed with the presidential election. I would daily read all the bias comments, blogs and racial slurs about the President on several chat websites. I had a hard time accepting that some people will never accept me no matter how hard I worked and would question my sincerity and patriotism.

6. **Post Deployment.** After command, I became extremely depressed. I worked so hard in trying to maintain a standard, but I didn't accomplish it the way I had envisioned.

a. I felt cheated, I was held responsible for everything my companies did or fail to do, but I wasn't giving any latitude to make any decisions on training based on my assessment. Everything was dictated, and I didn't have the time to work on my mentorship program.

b. So many Soldiers fell by the waste side. Some reasons were that their immediate supervisors are being promoted at an accelerated rate. These subordinate leaders don't know how to counsel, teach and/or mentor. I still had junior NCOs fraternizing with Soldiers. Our Lieutenants were fresh college kids. Our staff was senior lieutenants and junior captains who had yet to go to their career courses. The only thing that helped us get through the deployment was adrenaline and knocking down fifty meter targets. It was never really about me, but I wanted so desperately to be part of the solution. We treat counseling as if it's just PART of what we do, but it needs to be the nucleus of a leader's existence. Everything should steam from this; the problem is most leaders don't see how it would or could work.

c. I became frustrated about where I was in my life and num to everything around me. I began to hate people, especially some of my egotistical peers who bragged about their deployment experiences and I started not to trust my leaders. I felt as if I was taken for granted just to get the job done. Whatever tough crisis, I did it. I didn't ask questions or question my

leaders decisions, I executed. I started drinking heavily after the deployment and would have inappropriate conversations with women online because I enjoyed it. I resented the constant arguments in my marriage and I also began to resent the Army standard. I began to feel it was false, a hoax, just a way to get what they wanted out of you and send you on your way with a badge on your chest damn near everyone received.

7. **Family.** My wife and I have known each other since high school. She was fourteen and I was seventeen when we met.

a. I would constantly drink, yell and break items in the house, thus my wife had me to self admit into mental health and ASAP this past August. I was embarrassed, I felt that I was going to be labeled and I wasn't completely truthful with my counselors about my true problems. My wife Wendy, like me, suffers from depression. We are unable to have any children and we have an extremely hard time finding decent medical insurance because of her heart murmur. She also suffers from carpal tunnel syndrome which limits her ability to work and perform activities in her studies. We constantly have to monitor her mother's medical condition since she lives by herself in Florida.

b. Wendy and I always had problems, but I have never hit her in anger or never had an actual affair until after my second deployment. I wanted to give my wife everything but I had nothing left after command. Trying to deal with my personal guilt, helping my wife deal with her depression, her stress of continuing her education, and financial difficulties became too much for me to bear. I thought I could handle my actions and feelings alone, but I was wrong. I felt horrible about my actions and bought a house, hoping things would get better but they didn't.

c. In an effort to stop the extra martial affair, I told Ms. Brown things about past affairs that were not true in an effort to ease out of the relationship. However, I would continue to see her constantly, especially when I became depressed about my marriage and profession. In addition, I only admitted to CID about one affair, not several as depicted in the investigation.

8. **The future.** I take full responsibility for my actions and expect to be punished.

a. I have recently learned through the post-deployment clinic that post-deployment anger is a form of male depression and I have taken steps to control it. It was never my intentions to strike my wife in anger or cheat; I still love her and this country and hopefully would like to have the opportunity to command again to take care of some unfinished business. I still possess the moral character to make the tough right choices and I undoubtedly have the knowledge and desire.

b. Despite my personal feelings of ineffectiveness, my Armor and FA experience still made me one of the best commanders in the Dagger brigade and my OERs illustrate that. I also accomplished this as the only African American maneuver commander in the brigade, another fact I am proud of. From my recent sessions with my therapist, I have found comfort in knowing that I did affect a few, some Soldiers went OCS, some warrant officers and others went Green-to-Gold. And this was accomplished only by observing my compassion in command.

c. I know I am the right person for my current position and arguably one of the best motivational instructors in this brigade now. I am continuing my treatment in the post-deployment clinic and my presence has helped other Soldiers as well as myself. I am still doing everything to find my way again. I am just asking to have another opportunity to prove myself.

9. The point of contact for this memorandum is CPT Derrick T. Daniels at DSN 442-1528 or derrick.toraino.daniels@us.army.mil.

DERRICK T. DANIELS
CPT, AR
Senior CAD Instructor/Writer

# OFFICER EVALUATION REPORT

For use of this form, see AR 623-3; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO) SEE PRIVACY ACT STATEMENT IN AR 623-3.

## PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK (YYYYMMDD) | e. BRANCH | f. DESIGNATED SPECIALTIES / PMOS (WO) |
|---|---|---|---|---|---|
| DANIELS, DERRICK, T. | Redacted PII | CPTP | 20031001 | AR | 19A |

| g.1. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | g.2. STATUS CODE | h. REASON FOR SUBMISSION |
|---|---|---|
| HSB, 1-30TH FA, FORT SILL, OK 73503, TRADOC | | 03 Change of Rater |

| i. PERIOD COVERED FROM (YYYYMMDD) | THRU (YYYYMMDD) | j. RATED MONTHS | k. NONRATED CODES | l. NO. OF ENCL | m. RATED OFFICER'S AKO EMAIL ADDRESS (.gov or mil) | n. UIC | o. CMD CODE | p. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| 20080515 | 20090331 | 11 | | 1 | derrick.toraino6497@us.army.mil | W2NT02 | TC | TD22 |

## PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)

| | NAME | SSN | RANK | POSITION | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|---|---|---|
| a. NAME OF RATER (Last, First, MI) | ZIVKOVIC, THOMAS D. | Redacted PII | LTC | Director, CAD | ZIVKOVIC.THOMAS.DAN Redacted PII | 20090417 |
| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | TALCOTT, CHRISTOPHER P. | Redacted PII | LTC | Battalion Commander | TALCOTT.CHRISTOPHER.PHILL Redacted PII | 20090420 |
| c. NAME OF SENIOR RATER (Last, First, MI) | FANT, JOHN S. | Redacted PII | COL | Brigade Commander | FANT.JOHN.SARRATT Redacted PII | 20090425 |

SENIOR RATER'S ORGANIZATION: HQ, 428th Field Artillery Brigade, Fort Sill, OK 73503

BRANCH: FA | SENIOR RATER TELEPHONE NUMBER: 580-442-4704 | E-MAIL ADDRESS (.gov or .mil): john.fant2@us.army.mil

d. This is a referred report, do you wish to make comments? [X] [X] Yes, comments are attached [ ] No

e. SIGNATURE OF RATED OFFICER: DANIELS.DERRICK.TORAIN Redacted PII | DATE (YYYYMMDD): 20090511

## PART III - DUTY DESCRIPTION

a. PRINCIPAL DUTY TITLE: SR INSTRUCTOR / WRITER | b. POSITION AOC/BR: 19A00

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES. REFER TO PART IVa, DA FORM 67-9-1.

Combined Arms Instructor for the United States Army Field Artillery School (USAFAS), Combined Arms Division. Serve as primary instructor for Army and Marine Corps lieutenants and international officers during the Combined Arms blocks of instruction. Responsible for instructing officers on combined ar1lms organization, capabilities, limitations, tactics, and the employment of Fires Support systems. Responsible for the physical, intellectual, and professional development of Field Artillery lieutenants attending the Basic Officer Course. Reviews, evaluates, and recommends developments in combined arms doctrine, fire support doctrine, training, equipment, and organization of the Field Artillery.

## PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

**CHARACTER** Disposition of the leader: combination of values, attributes, and skills affecting leader actions

**a. ARMY VALUES** (Comments mandatory for all "NO" entries. Use PART Vb.)

| Value | Yes | No |
|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | | X |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | X | |
| 3. COURAGE: Manifests physical and moral bravery | | X |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | X | |
| 5. RESPECT: Promotes dignity, consideration, fairness, & EO | X | |
| 6. SELFLESS-SERVICE: Places Army priorities before self | X | |
| 7. DUTY: Fulfills professional, legal, and moral obligations | X | |

**b. LEADER ATTRIBUTES / SKILLS / ACTIONS:** First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb.
**Comments are mandatory in Part Vb for all "No" entries.**

**b.1. ATTRIBUTES (Select 1)** Fundamental qualities and characteristics

| Selected | Item | Yes | No |
|---|---|---|---|
| | 1. MENTAL — Possesses desire, will, initiative, and discipline | X | |
| X | 2. PHYSICAL — Maintains appropriate level of physical fitness and military bearing | X | |
| | 3. EMOTIONAL — Displays self-control; calm under pressure | X | |

**b.2 SKILLS (Competence) (Select 2)** Skill development is part of self-development; prerequisite to action

| Selected | Item | Yes | No |
|---|---|---|---|
| | 1. CONCEPTUAL — Demonstrates sound judgment, critical/creative thinking, moral reasoning | X | |
| X | 2. INTERPERSONAL — Shows skill with people: coaching, teaching, counseling, motivating and empowering | X | |
| | 3. TECHNICAL — Possesses the necessary expertise to accomplish all tasks and functions | X | |
| X | 4. TACTICAL — Demonstrates proficiency in required professional knowledge, judgment, and warfighting | X | |

**b.3. ACTIONS (LEADERSHIP) (Select 3)** Major activities leaders perform: influencing, operating, and improving

| Category | Selected | Item | Yes | No |
|---|---|---|---|---|
| INFLUENCING — Method of reaching goals while operating / improving | X | 1. COMMUNICATING — Displays good oral, written, and listening skills for individuals / groups | X | |
| | | 2. DECISION-MAKING — Employs sound judgment, logical reasoning and uses resources wisely | X | |
| | | 3. MOTIVATING — Inspires, motivates, and guides others toward mission accomplishment | X | |
| OPERATING — Short-term mission accomplishment | | 4. PLANNING — Develops detailed, executable plans that are feasible, acceptable, and suitable | X | |
| | X | 5. EXECUTING — Shows tactical proficiency, meets mission standards, and takes care of people/resources | X | |
| | | 6. ASSESSING — Uses after-action and evaluation tools to facilitate consistent improvement | X | |
| IMPROVING — Long-term improvement in the Army its people and organizations | X | 7. DEVELOPING — Invests adequate time and effort to develop individual subordinates as leaders | X | |
| | | 8. BUILDING — Spends time and resources improving teams, groups and units; fosters ethical climate | X | |
| | | 9. LEARNING — Seeks self-improvement and organizational growth; envisioning, adapting and leading change | X | |

c. APFT: PASS DATE: 20090302 HEIGHT: 69 WEIGHT: 208 YES

d. OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF CPTs, LTs, CW2s, AND WO1s.
WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED? YES [ ] NO [ ] [X]

DERRICK.TORAINO.DANIELS@US.ARMY.MIL

# OFFICER RECORD BRIEF

AR600-8-104 CMAAOF- R1

| ORB TYPE | BRIEF DATE | FUNCTIONAL CATEGORY | DESIG DATE | CNTL BRANCH | COMPONENT | AD GRADE-ADOR | SSN | NAME |
|---|---|---|---|---|---|---|---|---|
| 2900 | 20110729 | MANEUVER FIRES AND EFFECTS | 20061026 | AR BR DTL/EXPIRES | RA | CPT 20021001 | Redacted PII | DANIELS DERRICK TORAINO |

## SECTION I - Assignment Information

OVERSEAS / DEPLOYMENT / COMBAT DUTY

| End Date | CT | MO | S | T | NUMBER OF TOURS |
|---|---|---|---|---|---|
| 20071120 | IZ | 15 | 1 | C | Short- 1 Long- 0 |
| 20001114 | KS | 12 | C | | |

| DROS | DEROS |
|---|---|
| 20110408 | NA |

eMILPO Tour Data

CBT- 1 OPN- 0 RES- 0

Dwell Start 20071120

Dwell Mo-Days 44Mo 27D

Date Dependents Arrived OS

Career Field Information - Commissioned/AMEDD/Warrant

| | |
|---|---|
| BR Code/MedMos1/Pmos 19 | Fnctl Area/MedMos2/Smos |
| BRAOC/MedMos3/Pmos Sqi A | Fnctl Aoc/Smos SQI |

Skills 2B 5P

Basic Branch/PMOS ARMOR

Functional Area SMOS

| Career Track | X | Single | | Dual |
|---|---|---|---|---|
| Primacy | X | Branch | | Functional Area |

Prev Branch/MOS 13

Prev Functional Area

Control Career Management Field 19A00

Projected Career Management Field 19Z00

Geographic Orientation

AVIATOR QUALIFICATIONS

ASED TOFDC As Of

| Pilot Status | Aircraft | Qual | Aircraft | Qual | Aircraft | Qual | Aircraft | Qual |
|---|---|---|---|---|---|---|---|---|
| Rating Date | | | | | | | | |

## SECTION II - Security Data

INVEST PD-REINVES-SECRET

DTEINV 20020208 DTPSCG 20020302

CLNC SEC

DLAT 068

## SECTION V - Foreign Language

| Language | L | S | R | YMPTL |
|---|---|---|---|---|
| | | | | |

## SECTION VI - Military Education

CAS3 GRAD

| Course | Year |
|---|---|
| CAS3 | 2003 |
| FIELD ARTY CCC | 2003 |
| FA BOLC | 1999 |
| AIR ASSAULT | 1997 |
| AIRBORNE | 1995 |

## SECTION III - Service Data

| BASD | Current PPN | Ead Current Tour |
|---|---|---|
| 19950120 | D5 | 19990319 |
| Basic Date of Apt 19981212 | Cohort Yr Gp FY1999 | Source of Orig Apt ROTC |
| Mo/Days Afcs 150/12 | Mo/Afs 200 | Type of Orig Apt USAR |
| Curr Svc Agrmt/Expr Date | | Date of Proj/Mand Ret |

| | 2LT-WO1 | 1LT-CW2 | CPT-CW3 | MAJ-CW4 |
|---|---|---|---|---|
| PDOR | 19981212 | 20000919 | 20021001 | |
| | LTC-CW5 | COL | BG | MG |
| PDOR | | | | |
| TDOR | LTG | | GEN | |

## SECTION VII - Civilian Education

LEVEL COMPLETED MASTERS

| | | | | |
|---|---|---|---|---|
| INSTITUTION DISCIPLINE | MO. WEBSTER UNIV LEADERSHIP AND MANAGEMENT | MA | G | YR 2004 |
| INSTITUTION DISCIPLINE | GA. ALBANY STATE UNIV BUSINESS ADM | BS | G | YR 1998 |
| INSTITUTION DISCIPLINE | | | | YR |

## SECTION VIII - Awards and Decorations

| | | | | | |
|---|---|---|---|---|---|
| BSM- | 1 | GWOTE- | 1 | CAB- | 1 |
| MSM- | 1 | GWOTS- | 1 | PRCHTBAD- | |
| ARCOM- | 4 | KDSM- | 1 | | |
| AAM- | 2 | NOPDR- | 1 | | |
| VUA- | 1 | ASR- | 1 | | |
| AGCM- | 1 | OSR- | 1 | | |
| NDSM- | 2 | AIR ASLT- | | | |

## SECTION IV - Personal/Family Data

| | |
|---|---|
| Date of Birth Redacted PII | Birthplace Redacted PII |
| Country of Ctl US | Sex/Race/Eat M /BLACK,NOT HISP |
| No of Dependent Adults/Children 01/00 | Religion METH-CH |
| Marital Status MARRIED | Spouse Birthplace/Cit Redacted PII |
| Pulhes/Date 111111/20081216 | Height/Weight 69/192 |

Home of Record at Ead Redacted PII

Mailing Address

Redacted PII

## SECTION X - Remarks

## SECTION IX-Assignment Information

Date of Last PCS 20110408 | Date of Last OER 20100930 | Org Zip Code 31314

| ASGT | FROM | MO | UNIT NO | ORGANIZATION | STATION | LOC | COMD | DUTY TITLE | DMOS |
|---|---|---|---|---|---|---|---|---|---|
| PROJ | | | | | | | | | |
| Current | 20110629 | | W1S6 | MECHANIZED TASK FORC | FT STEWART | 1 GA | FC | FUTURE USE | 19A000000 |
| 1st Prev | 20110408 | 02 | W1S6 | W1S6 MECHANIZED TASK FORC | FT STEWAR | 1 GA | FC | T/M TEAM CHIEF | 19A003X00 |
| 2nd Prev | 20100801 | 08 | 0003 | INBDE01DET K1 | ARIFJAN | KU | FC | INCOMING PERSONNEL | 19A000000 |
| 3rd Prev | 20091217 | 07 | W6QT | W6QT USA IRAQ TRANS TM TT | ARIFJAN | KU | FC | MTT TEAM (FWD IZ) | 19A000000 |
| 4th Prev | 20091002 | 02 | W2NT | W2NT A BTRY 1-30 FP | FT SILL | 1 OK | TC | KNOWN LOSSES | 19A000000 |
| 5th Prev | 20090101 | 09 | W2NT | W2NT A BTRY 1-30 FP | FT SILL | 1 OK | TC | SR INSTR/WTR | 19A005K00 |
| 6th Prev | 20080517 | 07 | W2NT | W2NT A BTRY 1-30 FP | FT SILL | 1 OK | TC | C COMB ARMS | 11A005K00 |
| 7th Prev | 20080303 | 02 | 0000 | ARBN HHD | SCHWEINFU | GM | E1 | INCOMING PERSONNEL | 19A000000 |
| 8th Prev | 20070213 | 12 | 0077 | ARBN 01HHC | CONN BARR | GM | E5 | COMMANDER | 19A000000 |
| 9th Prev | 20060124 | 12 | 0077 | ARBN 02CO A | CONN BARR | GM | E5 | COMMANDER | 19B000000 |
| 10th Prev | 20050907 | 04 | 0077 | ARBN 01HHC | CONN BARR | GM | E5 | S1 | 19B000000 |
| 11th Prev | 20040714 | 14 | 0063 | ARBN 02BN HHC | S CAMP VI | GM | E5 | BATTALION MAINT OFFICER | 19A000000 |
| 12th Prev | 20030616 | 13 | 0001 | INHHC DIV | LEIGHTON | GM | E5 | OPERATIONS OFFICER | 19A000000 |
| 13th Prev | 20011203 | 11 | 0014 | FABN 01HHS MLRS | FT SILL | 5 OK | FC | BATRY EXECUTIVE OFFICER | 13A000000 |
| 14th Prev | 20010701 | 05 | 0014 | FABN 01A BTRY MLRS | FT SILL | 5 OK | FC | BATRY EXECUTIVE OFFICER | 13A000000 |
| 15th Prev | 20001120 | 07 | 0014 | FABN 01 A BTRY MLRS | FT SILL | 5 OK | FC | PLATOON LEADER | 13A000000 |
| 16th Prev | 20000501 | 08 | 0015 | FABN 01HHB 155MM SP | CP CASEY | KS | P8 | COLT PLATOON LEADER | 13A000000 |
| 17th Prev | 19991114 | 06 | 0015 | FABN 01 A BTRY 155M | CP CASEY | KS | P8 | FIRE DIRECTION OFFICER | 13A000000 |
| 18th Prev | | | | | | | | | |
| 19th Prev | | | | | | | | | |

DA FORM 4037 RECSTA: G PPA: LR CURUPC: 1S601 MPCAD: O PSC-CODE: FS08



**DEPARTMENT OF THE ARMY**
**UNITED STATES ARMY FIELD ARTILLERY CENTER AND FORT SILL**
**FORT SILL, OKLAHOMA 73503-5000**

REPLY TO
ATTENTION OF

26 MAR 2009

ATZR-C

MEMORANDUM FOR Office of the Staff Judge Advocate, Criminal Law Division, USAFACFS, Fort Sill, OK 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII A Battery, 1st Battalion, 30th Field Artillery Regiment, 428th Field Artillery Brigade, Fort Sill, OK 73503

1. I have reviewed the reprimand imposed on 29 January 2009 against CPT Daniels, the matters submitted by CPT Daniels, as well as the recommendations of his chain of command.

2. After due consideration and in accordance with AR 600-37, I direct that the reprimand with appropriate enclosures be:

_[initials]_ Filed in CPT Daniels's Official Military Personnel File (OMPF).

_______ Maintained in the local unit Service Member Information File (SMIF) for a period of 3 years from the date of the reprimand or until CPT Daniels's PCS from Fort Sill.

_______ Returned to CPT Daniels without any filing in his files or records.

GREGORY J. DYEKMAN
COL, FA
Acting Commander

CF:
CPT Daniels
Cdr, 428th FA Bde
Cdr, 1-10 FAR





**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY FIELD ARTILLERY CENTER AND FORT SILL
FORT SILL, OKLAHOMA 73503-5100

REPLY TO
ATTENTION OF:

ATZR-C                                                     26 March 2009

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Assumption of Command

1. By the authority of AR 600-20, para. 2-8, the undersigned assumes command of the United States Army Field Artillery Center and Fort Sill (W2NTAA), Fort Sill, Oklahoma 73503, during the temporary absence and/or voluntary devolvement of the regularly assigned Commander, Major General Peter M. Vangjel, and the Assistant Commandant, Brigadier General, Ross E. Ridge.

2. Effective date time: 24 1330 March 2009 to 27 1020 March 2009.

GREGORY J. DYEKMAN
COL, FA
Chief of Staff

DSITRIBUTION:
HQDA (DAPE-GO)
Cdr, TRADOC (ATPL-AP)
Asst Cmdt, USAFAS
AG (ATZR-O)
SJA

ATZR-J

26 MAR 2009

MEMORANDUM FOR Commander, USAFACFS, Fort Sill, OK 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII A Battery, 1st Battalion, 30th Field Artillery Regiment, 428th Field Artillery Brigade, Fort Sill, OK 73503

1. This is a **DECISION PAPER**. This is no suspense.

2. **Purpose**: To make a filing determination on the subject reprimand.

3. **Facts/Background:**

a. On 29 January 2009, CPT Daniels was issued a reprimand for domestic assault and battery, for ongoing multiple adulterous affairs with women including one married to a deployed Soldier, and for conduct unbecoming an officer and gentleman (Tab A).

b. On 2 February 2009, CPT Daniels acknowledged receipt of the reprimand and indicated that he would submit matters on his behalf. In his matters, CPT Daniels takes full responsibility for his actions. CPT Daniels states that he admits and regrets his actions over the past few months and that his actions do not truly display the type of soldier he really is. (Tab B).

4. **Chain of Command:** The chain of command recommends that it be filed in his OMPF file (Tab C).

5. **Recommendation:** File the reprimand in CPT Daniels's OMPF.

3 Encls
1. Reprimand
2. Acknowledgement
3. Recommendations

STEVEN C. HENRICKS
LTC, JA
Acting Staff Judge Advocate

ATSF-B

14 MAR 09
Date

MEMORANDUM FOR Commander, USAFACFS, Fort Sill, Oklahoma 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII Alpha Battery, 1st Battalion, 30th Field Artillery, Fort Sill, Oklahoma 73503

1. I have reviewed the reprimand imposed on 29 January 2009 against CPT Derrick T. Daniels, Alpha Battery, 1st Battalion, 30th Field Artillery:

2. After due consideration, I hereby recommend that the reprimand with all attachments be:

X Forwarded to be filed in his Official Military Personnel File (OMPF) for the following reason(s):
Unacceptable behavior.

_____ Maintained in the local unit Service Member Information File (SMIF) for a period of 3 years from the date of the reprimand or until the Soldier's PCS form his unit or ETS from the service for the following reason(s):

_____ Returned to the Soldier without any filing in his files or records for the following reason(s):

3. In my opinion, this Soldier (does) (does not) have rehabilitative potential because:
SM has multiple deployments and is being treated for PTSD. He continues to be a fine instructor and provides value to the brigade.

4. The Soldier's actions have caused the following impact on the unit:
embarrassed the officer corps

Encl
Reprimand File

JOHN S. FANT
COL, FA
Commanding

ATSF-BF

2 FEB 09
Date

MEMORANDUM FOR Commander, 428th Field Artillery, Fort Sill, Oklahoma 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII Alpha Battery, 1st Battalion, 30th Field Artillery, Fort Sill, Oklahoma 73503

1. I have reviewed the reprimand imposed on 29 January 2009 against CPT Derrick T. Daniels, Alpha Battery, 1st Battalion, 30th Field Artillery:

2. After due consideration, I hereby recommend that the reprimand with all attachments be:

CPT Forwarded to be filed in his Official Military Personnel File (OMPF) for the following reason(s):
CPT Daniels' behavior is/was absolutely unacceptable for a Senior Captain. His multiple offenses could have easily gone to a Court Martial!

_____ Maintained in the local unit Service Member Information File (SMIF) for a period of 3 years from the date of the reprimand or until the Soldier's PCS form his unit or ETS from the service for the following reason(s):

_____ Returned to the Soldier without any filing in his files or records for the following reason(s):

3. In my opinion, this Soldier ~~(does)~~ (does not) have rehabilitative potential because:
Do not believe CPT Daniels should be promoted and move up in our ranks. He is still accomplishing his mission training Lieutenants.

4. The Soldier's actions have caused the following impact on the unit:
Embarrassing for the Unit and the Officer Corps.

Encl
Reprimand File

CHRISTOPHER P. TALCOTT
LTC, FA
Commanding

**ARMY BOARD OF REVIEW FOR ELIMINATIONS**

TRANSCRIPT OF HEARING

The Board met, pursuant to notice, at 1000 hours, 23 October 2012, in Room 401, Crystal Square Five, Arlington, Virginia.

MEMBERS PRESENT

Archie L. Davis III, Colonel, Infantry (President)
Matthew B. Coleman, Colonel, Infantry
David R. Clonts, Colonel, Infantry

RECORDER

Douglas Huff, Attorney Advisor, Army Review Boards Agency

---

PRESIDENT: The Board will come to order.

RECORDER: This Board is convened to review the action of the Board of Inquiry which recommended elimination of Captain Derrick T. Daniels, Redacted PII Armor, United States Army.

The authority for the hearing before this Board of Review and before the Board of Inquiry is Army Regulation 600-8-24, *Officer Transfers and Discharges*.

The Board, composed of members now sitting, is convened pursuant to Memorandum for Record, Subject: Appointment of Members to the Military Review Boards, from the Department of the Army, Army Review Boards Agency, Attention: SFMR-RBB, dated 23 August 2012.

PRESIDENT: Approved.

RECORDER: Elimination action in this case was initiated by the General Officer Show Cause Authority (GOSCA), Commanding General, Headquarters, United States Army

Human Resources Command, based on AR 600-8-24, paragraph 4-2b, because of misconduct, moral or professional dereliction on the premise that Captain Daniels had a series of derogatory activity resulting in a General Officer Memorandum of Reprimand, dated 29 January 2009 and two referred Officer Evaluation Reports for period 1 April 2009 through 30 September 2009, and 15 May 2008 through 31 March 2009 that was filed in his Official Military Personnel File.

The General Officer Memorandum of Reprimand indicated that Captain Daniels was reprimanded for domestic assault and battery for beating, choking, and threatening his wife, for ongoing multiple adulterous affairs with women including one married to a deployed Soldier and for conduct unbecoming an officer and gentleman. The Officer Evaluation Report for the period 1 April 2009 through 30 September 2009 was referred to Captain Daniels because he failed to meet height and weight standards as prescribed in AR 600-9. The Officer Evaluation Report for the period 15 May 2008 through 31 March 2009, Part IVa contained check blocks in the "No" column for "Honor" and "Courage;" and contained comments related to the misconduct in the General Officer Memorandum of Reprimand.

A Board of Inquiry, appointed by the GOSCA, heard this case on 18 April 2012, and made the following findings:

- Captain Daniels committed adultery,
- Captain Daniels did have an incident of domestic violence in which he assaulted his wife,
- Captain Daniels did commit acts of personal misconduct, and
- Captain Daniels' actions can be considered conduct unbecoming a commissioned officer.

That Board recommended the respondent be discharged from the United States Army with an Honorable Discharge Certificate. Approval of the recommendation of the Board of Inquiry was recommended by Major General Robert B. Abrams (the GOSCA).

The records indicate all members of the Board of Review are senior in grade to the respondent.

I particularly invite the Board's attention to paragraph 4-17b, Army Regulation 600-8-24, which states:

"b. No officer will sit as a member of the Board of Review who:
(1) Has been called as a witness.
(2) Was a member of the selection board for respondent.



Army Board for Review of Eliminations Transcript of Hearing
(DANIELS, Derrick T., Redacted PII CPT, AR, RA)

        (3)  Appeared as a witness before or was a member on any previous Board of Inquiry, Board of Review, or board of officers with respect to the respondent.
        (4)  Was a member or was the reviewing authority in a court-martial before which the respondent was the accused.
        (5)  Previously has recommended or participated in recommending elimination, or REFRAD of the officer concerned.
        (6)  Rendered a derogatory evaluation report on the accused.
        (7)  Otherwise has considered the case of the accused.
        (8)  Does not meet the board membership requirements."

No member of the Board appears to be disqualified from service on this case.  If any member knows of any disqualifying grounds, please so state at this time.

PRESIDENT:  Apparently all members are qualified to serve.

PRESIDENT:  The recorder will now be sworn.  Do you, Mr. Huff, swear to perform the duties of Recorder of this Board to the best of your abilities, so help you God?  Please respond orally.  Let the record reflect an affirmative response.

RECORDER:  The Board will now be sworn.  Will each of you please raise your right hand?  Do you, Colonel Clonts, Colonel Coleman, and Colonel Davis, swear that you will faithfully perform the duties incumbent upon you as a member of this Board of Review, without partiality, favor or affection, so help you God?  Please respond orally. Let the record reflect affirmative responses from all members.

RECORDER:  Captain Daniels is 40 years old and his current Basic Active Service Date (BASD) is 20 January 1995.  He was commissioned on 12 December 1998 by the Reserve Officers Training Corps, and graduated from the Albany State University in 1998 with a BS.  Among other decorations, he is authorized to wear the: Bronze Star Medal; Meritorious Service Medal; Meritorious Service Medal; Joint Service Commendation Service Medal; Army Commendation Medal (4th award); Army Achievement Medal (2nd award); Valorous Unit Award; Army Good Conduct Medal; National Defense Service Medal (2nd award); Global War on Terrorism Expeditionary Medal; Global War on Terrorism Service Medal; Korea Defense Service Medal; Noncommissioned Officers Professional Development Ribbon; Army Service Ribbon; Overseas Service Ribbon; Air Assault Badge; Combat Action Badge; and the Parachutist Badge.

Has each member now present examined the Proceedings of the Board of Inquiry prior to the convening of this Board?  Let the record reflect each member has indicated in the affirmative.

3



Army Board for Review of Eliminations Transcript of Hearing
(DANIELS, Derrick T., Redacted PII CPT, AR, RA)

I now submit for consideration of this Board the report of the proceedings of the Board of Inquiry.

PRESIDENT:  It will be so received.

RECORDER:  The case appears to have been processed regularly and I am aware of no legal problems involved.

The members of this Board are reminded of the provisions of Army Regulation 15-6, to the effect that in the case of a disagreement between members of the Board, a minority report may be submitted, either as to the findings or to the recommendations, or both.  Such report must clearly state the reasons for submission.

PRESIDENT:  Does the Board desire further information from the Recorder? Apparently not.

PRESIDENT:  The Board will now be closed.

(The Board deliberates and votes.)

PRESIDENT:  The Board will come to order.

RECORDER:  Let the record reflect all persons who were present when the Board closed are again present.

PRESIDENT:  As to findings and recommendations:

## FINDINGS

The Army Board of Review for Eliminations, having reviewed the records of this case, in closed session and by secret written ballot, finds:

The Government has established by a preponderance of the evidence that:

- Captain Daniels committed adultery,
- Captain Daniels did have an incident of domestic violence in which he assaulted his wife,
- Captain Daniels did commit acts of personal misconduct, and
- Captain Daniels' actions can be considered conduct unbecoming a commissioned officer.

4

Army Board for Review of Eliminations Transcript of Hearing
(DANIELS, Derrick T., Redacted PII CPT, AR, RA)

## **RECOMMENDATIONS**

The Army Board of Review for Eliminations, in closed session, and by secret written ballot, recommends:

> Captain Daniels be eliminated from the United States Army with an Honorable characterization of service.

PRESIDENT:  The Board is adjourned.  (The Board closed at 1010 hours, 23 October 2012.)

OFFICIAL:

ARCHIE L. DAVIS III
COL, IN
President

MATTHEW B. COLEMAN
COL, IN
Member

DAVID R. CLONTS
COL, IN
Member

DOUGLAS HUFF
Attorney Advisor
Recorder

5

**000723**



**DEPARTMENT OF THE ARMY**
**US ARMY HUMAN RESOURCES COMMAND**
**1600 SPEARHEAD DIVISION AVENUE, DEPARTMENT 280**
**FORT KNOX, KENTUCKY 40122-5208**

REPLY TO ATTENTION OF

AHRC-OPL

1 August 2012

MEMORANDUM FOR Deputy Assistant Secretary of the Army (Review Boards), ATTN: SFMR-RB-LC, 1901 South Bell Street (Room 204), Arlington, VA 22202-4508

SUBJECT: Officer Elimination Case - Board of Inquiry Proceedings

1. The enclosed Board of Inquiry proceedings in the elimination case of CPT Daniels, Derrick T., Redacted PII AR, RA, is forwarded for appropriate action in accordance with AR 600-8-24, chapter 4.

2. Elimination action was initiated by the Commanding General, United States Army Human Resources Command dated 25 May 2010, IAW AR 600-8-24, chapter 4, paragraph 4-2(b), for misconduct, moral or professional dereliction.

3. A Board of Inquiry was conducted on 18 April 2012. The Board of Inquiry recommended CPT Daniels' be separated from the military with an Honorable Conditions characterization of service. The General Officer Show Cause Authority concurs with the board's recommendation.

4. Recoupment is involved (ROTC).

5. Point of contact is Mrs. Teaia M. White at teaia.m.white.civ@mail.mil or phone 502-613-6462.

BAXTER.HILLARY.RAPHAEL Redacted PII

2 Encls
1. ORB
2. Case from the Command

HILLARY R. BAXTER
Chief, Leader Development Division



DEPARTMENT OF THE ARMY
HEADQUARTERS, 3RD INFANTRY DIVISION AND FORT STEWART
942 BEN HALL PLACE, BUILDING HQ001
FORT STEWART, GEORGIA 31314-5000

REPLY TO
ATTENTION OF:

AFZP-CG 12 JUN 2012

MEMORANDUM FOR Commander, US Army Human Resources Command (AHRC-OPZ-X), ATTN: Chief, AHR-OPZ-X, 1600 Spearhead Division Avenue, Fort Knox, KY 40122

SUBJECT: Show Cause Elimination – CPT Derrick T. Daniels, Redacted PII 188th Infantry Brigade, Fort Stewart, Georgia 31314

1. RA The findings that CPT Daniels conduct was unbecoming of an Officer and recommendations of the Board of Inquiry are approved. I recommend that CPT Derrick T. Daniels be separated from the Army and be issued an Honorable Discharge.

2. _____The findings and recommendations of the Board of Inquiry are disapproved.

3. CPT Daniels was furnished with a copy of the Board of Inquiry's report

4. The point of contact for this action is MAJ Grieser, Chief, Military Justice, at (912) 767-4571.

ROBERT B. ABRAMS
Major General, US Army
Commanding



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 2ND HEAVY BRIGADE COMBAT TEAM, 3RD INFANTRY DIVISION
1003 GULICK AVENUE BUILDING 611
FORT STEWART, GA 31314

REPLY TO
ATTENTION OF

AFZP- VB-C 13 March 2012

MEMORANDUM FOR CPT Derrick T. Daniels, Redacted PII Charlie Troop, 5-7th Calvary Squadron, Fort Stewart, Georgia 31314

SUBJECT: Notification of Board of Inquiry

1. Under the provisions of AR 600-8-24, notice is hereby given that a Board of Officers appointed by memorandum, from Headquarters, 3rd Infantry division and Fort Stewart, Georgia, dated 21 February 2012, will hold a hearing at the HQs, 2nd Heavy Brigade Combat Team, located at Building 615, Fort Stewart, Georgia 31314. The hearing will begin on 18 April 2012 at 0900 hours and continue until concluded.

2. This hearing will determine whether you should be retained or involuntarily separated from the Army. If you willingly absent yourself from the board, you will be represented by counsel and the board will proceed in your absence; you may be discharged from or retained in the service by the discharge authority without personal appearance before the board. The uniform for the proceeding will be ACUs. You or your counsel should inform the Recorder, at the OSJA, 1791 Gulick Avenue, Fort Stewart, GA 31314, Bldg 709, as soon as possible of any witnesses you wish to call to the hearing so that their presence can be requested. The Government may call witnesses to testify. If the Government chooses to call any person to testify, you will be provided with a witness list by separate memorandum.

3. If have any questions you may contact SPC Betancourt, 3rd Infantry Division Legal Office, Fort Stewart, Georgia, at 767-7902.

DOUGLAS C. CARDINALE
COL, IN
Board President

# REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS

For use of this form, see AR 15-6; the proponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

## SECTION I - APPOINTMENT

Appointed by MG Robert B. Abrams, Cdr, HQ, 3rd ID and Fort Stewart, Fort Stewart, Georgia 31314-5046
*(Appointing authority)*

on 21 February 2012 *(Date)* *(Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)*

## SECTION II - SESSIONS

The *(investigation) (board)* commenced at HQs, 2nd HBCT, Building 615, Fort Stewart, Georgia 31314 *(Place)* at 0900 hours *(Time)*

on 18 April 2012 *(Date)* *(If a formal board met for more than one session, check here* ☐ *. Indicate in an inclosure the time each session began and ended, the place, persons present and absent, and explanation of absences, if any.)* The following persons *(members, respondents, counsel)* were present: *(After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*

COL Douglas C. Cardinale, Board President
LTC Stanley P. Fugate, Board Member
LTC Brian K. Hathaway, Board Member
CPT Todd Chard, Recorder
CPT Amanda Presson, Legal Advisor
CPT Sarah Rykowski, Respondent's Detail Counsel
CPT Derrick T. Daniels , Respondent
PFC Xiara Betancourt, Reporter

The following persons *(members, respondents, counsel)* were absent: *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*

None.

The *(investigating officer) (board)* finished gathering/hearing evidence at 1944 hours *(Time)* on 18 April 2012 *(Date)*

and completed findings and recommendations at 2035 hours *(Time)* on 18 April 2012 *(Date)*

## SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO[1] | NA[2] |
|---|---|---|---|
| 1 Inclosures *(para 3-15, AR 15-6)* Are the following inclosed and numbered consecutively with Roman numerals: *(Attached in order listed)* | | | |
| a. The letter of appointment or a summary of oral appointment data? | ✓ | | |
| b. Copy of notice to respondent, if any? *(See item 9, below)* | ✓ | | |
| c. Other correspondence with respondent or counsel, if any? | ✓ | | |
| d. All other written communications to or from the appointing authority? | ✓ | | |
| e. Privacy Act Statements *(Certificate, if statement provided orally)*? | ✓ | | |
| f. Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered *(e.g., absence of material witnesses)*? | | | ✓ |
| g. Information as to sessions of a formal board not included on page 1 of this report? | | | ✓ |
| h. Any other significant papers *(other than evidence)* relating to administrative aspects of the investigation or board? | ✓ | | |

FOOTNOTES: 1/ *Explain all negative answers on an attached sheet.*
2/ *Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.*

| | | YES | NO 1/ | NA 2/ |
|---|---|---|---|---|
| 2 | Exhibits *(para 3-16, AR 15-6)* | | | |
| | a. Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | ✓ | | |
| | *b.* Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | | | ✓ |
| | c. Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | ✓ | | |
| | *d.* Are copies, descriptions, or depictions *(If substituted for real or documentary evidence)* properly authenticated and is the location of the original evidence indicated? | | | ✓ |
| | e. Are descriptions or diagrams included of locations visited by the investigating officer or board *(para 3-6b, AR 15-6)?* | | | ✓ |
| | *f.* Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | | | ✓ |
| | *g.* If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit *(para 3-16d, AR 15-6)?* | ✓ | | |
| 3 | Was a quorum present when the board voted on findings and recommendations *(paras 4-1 and 5-2b, AR 15-6)?* | ✓ | | |
| **B. COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS** *(Chapter 5, AR 15-6)* | | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment *(para 5-3b, AR 15-6)?* | ✓ | | |
| 5 | Was a quorum present at every session of the board *(para 5-2b, AR 15-6)?* | ✓ | | |
| 6 | Was each absence of any member properly excused *(para 5-2a, AR 15-6)?* | | | ✓ |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required *(para 3-1, AR 15-6)?* | ✓ | | |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence *(para 5-2d, AR 15-6)?* | | | ✓ |
| **C. COMPLETE ONLY IF RESPONDENT WAS DESIGNATED** *(Section II, Chapter 5, AR 15-6)* | | | | |
| 9 | Notice to respondents *(para 5-5, AR 15-6):* | | | |
| | a. Is the method and date of delivery to the respondent indicated on each letter of notification? | ✓ | | |
| | *b.* Was the date of delivery at least five working days prior to the first session of the board? | ✓ | | |
| | *c.* Does each letter of notification indicate — | | | |
| | (1) the date, hour, and place of the first session of the board concerning that respondent? | ✓ | | |
| | (2) the matter to be investigated, including specific allegations against the respondent, if any? | ✓ | | |
| | (3) the respondent's rights with regard to counsel? | ✓ | | |
| | (4) the name and address of each witness expected to be called by the recorder? | ✓ | | |
| | (5) the respondent's rights to be present, present evidence, and call witnesses? | ✓ | | |
| | *d.* Was the respondent provided a copy of all unclassified documents in the case file? | ✓ | | |
| | e. If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | | | ✓ |
| 10 | If any respondent was designated after the proceedings began *(or otherwise was absent during part of the proceedings):* | | | |
| | a. Was he properly notified *(para 5-5, AR 15-6)?* | | | ✓ |
| | *b.* Was record of proceedings and evidence received in his absence made available for examination by him and his counsel *(para 5-4c, AR 15-6)?* | | | ✓ |
| 11 | Counsel *(para 5-6, AR 15-6):* | | | |
| | a. Was each respondent represented by counsel? | ✓ | | |
| | Name and business address of counsel: CPT Sarah Rykowski, Trial Defense Service, Building 621, Fort Stewart, Georgia 31314 | | | |
| | | | | |
| | *(If counsel is a lawyer, check here* ✓ *)* | | | |
| | *b.* Was respondent's counsel present at all open sessions of the board relating to that respondent? | ✓ | | |
| | c. If military counsel was requested but not made available, is a copy *(or, if oral, a summary)* of the request and the action taken on it included in the report *(para 5-6b, AR 15-6)?* | | | ✓ |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality *(para 5-7, AR 15-6):* | | | |
| | a. Was the challenge properly denied and by the appropriate officer? | | | ✓ |
| | *b.* Did each member successfully challenged cease to participate in the proceedings? | | | ✓ |
| 13 | Was the respondent given an opportunity to *(para 5-8a, AR 15-6):* | | | |
| | a. Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | ✓ | | |
| | *b.* Examine and object to the introduction of real and documentary evidence, including written statements? | ✓ | | |
| | *c.* Object to the testimony of witnesses and cross-examine witnesses other than his own? | ✓ | | |
| | *d.* Call witnesses and otherwise introduce evidence? | ✓ | | |
| | e. Testify as a witness? | ✓ | | |
| | *f.* Make or have his counsel make a final statement or argument *(para 5-9, AR 15-6)?* | ✓ | | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses *(para 5-8b, AR 15-6)?* | ✓ | | |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it *(para 5-11, AR 15-6)?* | ✓ | | |

*FOOTNOTES:* 1/ *Explain all negative answers on an attached sheet.*
2/ *Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.*

APD PE v1.30

**SECTION IV - FINDINGS** *(para 3-10, AR 15-6)*

The *(investigating officer) (board)* , having carefully considered the evidence, finds:

That the allegation in the notice of Board of Inquiry IAW AR 600-8-24, Chapter 4, is (supported) ~~(unsupported)~~ by preponderance of the evidence.

**SECTION V - RECOMMENDATIONS** *(para 3-11, AR 15-6)*

In view of the above findings, the *(investigating officer) (board)* recommends:

That CPT Derrick T. Daniels, be:

( ) retained on Active Duty, and

( ) will be reassigned.

( ) will not be reassigned.

(X) involuntarily separated and receive

(X) an Honorable Discharge,

( ) a General (Under Honorable Conditions) Discharge, or

( ) an Under Other Than Honorable Conditions Discharge.

**SECTION VI - AUTHENTICATION** *(para 3-17, AR 15-6)*

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.*

CPT TODD CHARD
*(Recorder)*

COL DOUGLAS C. CARDINALE
*(Investigating Officer) (President)*

LTC STANLEY P. FUGATE
*(Member)*

LTC BRIAN K. HATHAWAY
*(Member)*

*(Member)*

*(Member)*

**SECTION VII - MINORITY REPORT** *(para 3-13, AR 15-6)*

To the extent indicated in Inclosure __________, the undersigned do(es) not concur in the findings and recommendations of the board. *(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

*(Member)*

*(Member)*

**SECTION VIII - ACTION BY APPOINTING AUTHORITY** *(para 2-3, AR 15-6)*

The findings and recommendations of the *(investigating officer) (board)* are *(approved) (disapproved) (approved with following exceptions/ substitutions). (If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

ROBERT B. ABRAMS
Major General, USA
Commanding

**BOARD OF INQUIRY**
**CPT Derrick T. Daniels**
Redacted PII
**C Troop, 57th Cavalry**

**FINDINGS AND RECOMMENDATION WORKSHEET**

IN COMPLETEING THE WORKSHEET, LINE THROUGH ALL INAPPLICABLE PARENTHETICALS:

1. This Board of Inquiry finds that there (is) ~~(is not)~~ sufficient evidence to prove that CPT Daniels did commit acts of personal misconduct.

2. This Board of Inquiry finds that there (is) ~~(is not)~~ sufficient evidence to prove that CPT Daniels's actions can be considered Conduct Unbecoming a Commissioned Officer.

IF YOU FIND THAT BOTH ABOVE ALLEGATIONS ARE UNSUPPORTED BY A PREPONDERANCE OF THE EVIDENCE, STOP HERE. OTHERWISE, CHOOSE ONE OF THE FOLLOWING RECOMMENDATIONS. CIRCLE THE ONE YOU CHOOSE AND LINE THROUGH THE OTHER.

( ) The Board of Inquiry recommends that CPT Daniels be retained on Active Duty, and

( ) will be reassigned.

( ) will not be reassigned.

(X) The Board of Inquiry recommends that CPT Daniels be involuntarily separated and receive

(X) an Honorable Discharge,

( ) a General (Under Honorable Conditions) Discharge, or

( ) an Under Other Than Honorable Conditions Discharge.

| | | |
|---|---|---|
| DOUGLAS C. CARDINALE | STANLEY P. FUGATE | BRIAN K. HATHAWAY |
| COL, | LTC, | LTC, |
| Board President | Board Member | Board Member |

Record of Board Proceedings
Proper
Daniels, Derrick T., Redacted PII
By
Board of Inquiry
Appointed by MG Robert B. Abrams
Held at Fort Stewart, Georgia on 18 April 2012

**TESTIMONY**

FOR GOVERNMENT: Detective Roberto Peralta
Dr. Ann L. Parodi

FOR RESPONDENT: COL Bennie Williams, Jr.
COL (Retired) Daniel Atcher
COL Miciotto Johnson
MAJ Terrance Barr
CPT Derrick T. Daniels

**EXHIBITS SUBMITTED IN EVIDENCE**

| | |
|---|---|
| GE1 | AR 635-200, Chapter 18 (Admitted for context) |
| GE2 | Booty Call Commandments (Not admitted, deferred) |
| GE3 | AR 600-20, dtd 18 March 2008, para 4-23 (Not admitted) |
| DE1 | Objections: Missing Discovery and Failure to timely provide access to witness (Admitted) |
| DE2 | Army Career Book (Admitted) |
| DE3 | Tactical Design (Admitted) |
| DE4 | Medical Records (Admitted) |
| DE5 | Prior Convictions (Not admitted but attached to the record) |
| DE6 | Excerpt: Army Times (Not admitted but attached to the record) |

**COPIES OF RECORD**

One copy furnished to the Respondent.

3 copies of the record forwarded herewith.

The Legal Advisor stated there was previous e-mail traffic between LTC Fugate and both Government and Defense.

The Defense stated that they had the email disclosing involvement prior the hearing. The Defense had no objection to LTC Fugate's grounds for challenge. The Defense requested that LTC Fugate's email be included in the Board proceedings for filing purposes.

The Government had no challenges.

A voir dire of the members was conducted by the Respondent's Counsel.

The Defense had no objection to any members of the Board.

LTC Lewis, alternate Board member, was permanently excused from this Board.

The Respondent's Counsel had no challenges.

The Board members were sworn by the Recorder.

The Legal Advisor was sworn by the Recorder.

The Recorder was sworn by the Board President.

The Board convened at 1005 hours.

The Government introduced its evidence to Board President for review and its witnesses for argument purposes.

The Defense stated it hadn't seen two pieces of evidence. The Defense had the following objections to the evidence: relevance of the evidence; introducing evidence from a website; to a portion of the regulation introduced; and to Government Exhibit 3.

The President asked the Recorder what was the intent of the evidence.

The Recorder stated that the primarily purpose of Government Exhibit 3 was to outline the definition of Domestic Violence according to AR 600-20.

The Legal Advisor stated that the definition is a regulatory function.

The Recorder presented the second point presented in AR 600-20, para 4-23c(8).

The President stated that AR 600-20, para 4-23c(8) will not be admitted.

The Recorder acknowledged.

The President requested that the Recorder explain the intent of the evidence.

The Defense stated that according to regulation, the Defense is entitled to 10 days notice of the evidence and witnesses to be presented by the Government.

The Defense stated that they would like the Government to continue efforts to locate the Detective Peralta's recording. CPT Daniels had the opportunity to submit additional matters to the CG and to the Board of Review. If the recording existed and Detective Peralta could get it, Defense wanted the Government to continue to try to get a copy.

The Legal Advisor stated there was nothing prohibiting the Defense from getting the recording if it still existed; the regulation only stated that the Government had to turn in what it had in its possession, and based on the email traffic, CPT Chard had done that.

The Defense disagreed with the Legal Advisor's definition of what the Government is and stated that the Government is United States Government, all state Governments, and all United States law enforcement. The United States includes county jails, prisons... so the Government is not just CPT Chard.

The Government called Detective Peralta and was duly sworn.

Detective Roberto Peralta, CID, Fort Stewart, Georgia, was called as a witness for the Government, was sworn and testified in substance as follows:

**Direct Examination**

My name is Roberto Peralta. I am a Sergeant. I was lead patrol at the time. I was a detective at CID. I was involved in CPT Daniels's investigation. I was the primary investigator for the alleged assault that occurred. At that time I wrote a report. The responding officer takes the information. Information was taken from the victim, CPT Daniels' wife. She alleges she was assaulted by her husband. Mrs. Daniels approached her husband to kiss him and she smelled another woman's vagina on his face and she attacked him. She slapped her husband and I guess his reaction was assaulting her back. I had a chance to speak with CPT Daniels. I did not type the narrative. I did not have the police report at that time. I advised CPT Daniels of his rights/warnings and asked if he assaulted his wife and he said he did. After I did the interview, I went and typed the narrative. I must have gotten the information from one of the two parties. If I typed it in that statement, I got that information from CPT Daniels.

The Defense objected on relevance.

The Legal Advisor stated the Recorder's question was relevant.

The President overruled the objection.

The first time I heard from CPT Daniels' dismissal from the service was on Monday, two days ago. Yes, it has been four years since that investigation. If this is based solely on his dismissal upon his service, I think it could be a miscarriage of justice on CPT Daniels. If there was anything else in his record why he should be dismissed I can understand. This is just based solely on this incident that occurred three to four years ago, I think it could be wrong.

No further questions by the Defense.

**Questions by LTC Fugate**

No, alcohol was not involved.

No further questions by the Board members.

**Re-direct examination**

I was not aware of CPT Daniels' memorandum claiming he assaulted her on two occasions. I was not aware of him hitting her one time with a plastic baton in the head and later strangling her. My understanding is that he was asleep. I have handled hundreds of domestic violence cases, assault with weapons, murders of children. Most victims you would have heard sooner. I don't know what the victim's motivation was in this case in delaying in going to the law enforcement or the ER. Lots of victims tend to state they are scared. For some of them that might be true, but we always heard they called the police. I have seen recantation of a spouse who has been a victim of an assault.

The Defense objected because the question was not in evidence.

The Legal Advisor said it was an administrative procedure.

**Re-direct examination**

That might be true that many victims of domestic violence have many different reasons why they might not report or minimize what the report is.

No further questions by the Government.

**Re-Cross examination**

True and there is also the victim that choses to go forward because they are angry and want to harm the individual's career. Yes, people go forward even when the allegations are not true or exaggerated. There are a lot of reasons for people to choose to go forward or not to go forward. There are many reasons why we can request to delay the reporting. Yes, when the victim showed up to the Reynolds Army Hospital.

No further questions by Defense.

The Board reconvened at 1132 hours.

All parties that were present before the Board closed were again present.

The Defense called COL Bennie Williams.

COL Williams was duly sworn in.

COL Bennie Williams, Jr., Retired US Army, was called as a witness for the Defense, was sworn and testified in substance as follows:

**Direct examination**

My name is COL Bennie Williams, Junior. I have been a COL since October 2006. I am currently a board member for the Military Review Board within the Army Review Board Agency. I am assigned to the Pentagon with duty in Crystal City. I have been in this duty position since December 2010. My previous duty position was as a Stability Transition Team leader with 1-38 AV at Fort Stewart. I have been in the Army almost twenty years in September. I am an Infantry Officer. The source of my commission is ROTC from South Carolina State University. I deployed in Desert Shield/Storm. I deployed with the STT to Iraq in January 2010 through December 2011. I reported to Fort Stewart in September 2009 in preparation for deployment with the brigade. I know CPT Derrick Daniels. I met Derrick when I reported to Fort Stewart along with 35 other officers. When I met him, like him, I was like many other officers going through training on how to perform my STT duties as well as integrating into the unit. I was able to see his duty performance, mostly within a classroom environment or training environment on post, but nothing outside Fort Stewart at that time. He came to work with me during part of the train up and mostly when we deployed. We deployed in January 2010. We assisted and partnered with the Iraqi police and we were their advisors. We were the link between the unit and the Iraqis. I advised the Iraqi counterparts. We assisted them with their problems and provided some support. My particular team was with the Second Federal Police Division and I had a sub-team. Derrick was in one of the sub-teams within the brigade. During deployment, I had the opportunity to observe Derrick's duty performance. I interacted with Derrick on a daily basis. We were on a FOB with American Forces and the Iraqi Federal Police Force. I saw him on a daily basis. He had daily reporting responsibilities to me, which I had to the brigade. Derrick had unique circumstances where we were going to uncover from his brigade. So all the equipment that we signed for, he pretty much had to turn that in himself while the LTC did his part with the Iraqi's Brigadier General. Derrick was one man making sure all the equipment was turned in. He did that with little to no guidance and that's why we felt confident with him being able to do that. Yes, at some point he left our STT. When we were uncovering the brigade, we started restructuring the unit that we were covering on based on who is forced to leave it. Derrick went away from my team, but not by my choice. I tried to keep him actually. He went to the Academy of Action Center (AAC). He went to work for COL Atcher. I discussed him as well as other officers. COL Atcher wanted to know what kind of guy he was. I told him that were some things that had actually happened in Derrick's past that were probably threatening his career.

resign in lieu of court-martial. We also do grade determination for officers retiring who have some type of misconduct in their files. So, my statement was that I see a lot of incidents where officers of all grades have misconduct in their files. Some of them were young officers making mistakes. I think it negatively impacted CPT Daniels' promotion potential because he was pulled off the promotion list. Derrick requested to have the derogative paperwork moved to the restricted fiche and it was denied if I am not mistaken. I was here when that happened. I was not even selected for that Board. I can't speak for what a selection Board may do, but I have seen and I am sure the panel has seen crazy things happen with some selection Boards. I am a little outdated on the specifics of the domestic altercation that occurred. I do know there was physical contact, that there was pushing and someone got struck, I do know that. Now that you have said it, now I remember the plastic baton. I may have read about the crying, that was first brought to my attention when we were in Iraq about 2010. Derrick was very forthcoming about what he shared with me, but I have not read anything since then. I don't remember the strangling, I do vaguely remember the baton you mentioned. I don't recall reading a police report. I am not saying it did not exist. I know there was some talk of an affair, but I don't recall him admitting having an affair with multiple women. I don't recall reading that. I was not aware he was not in compliance with height and weight since 2008. I can tell you he was in compliance while we were deployed and for the entire time that we were together. While down range, we were required to take a PT test and I don't think there were any issues there, at least at that time. I am not sure about now. I don't recall he stated that was the reason why he was out of compliance. I know through some of the conversations we had that he had some marital problems. I am sure he did state the reason why the assault occurred that night. I remember him talking, perhaps not addressing some issues from deployment, while he was in command. I remember him telling me about times that he did not feel part of the team. He did not feel that certain people appreciated his job and performance and he was dealing with all of that. I can't recall whether or not he stated that made him turn to alcohol. I don't recall if the incident involved alcohol. He had two commands. I don't think life was easy for him.

No further questions by the Government.

No questions by the Defense.

LTC Hathaway asked CPT Daniels how many years of service he had and he answered over 17 years of service.

**Questions by LTC Hathaway**

Sanctuary is something that has not been spoken about. I have not heard anything. We actually have sanctuary guys in the group that went to the STT. CPT Daniel's potential to stay on active duty actually remains with you guys, or starts with you guys. I think if you guys decide to retain, they can allow him to retire. I think he potentially can get there, but it all depends on what they decide and what the course of action is going to be in terms of reducing the force. I don't have any other information to share with you about Sanctuary.

The Defense stated that his elimination was initiated when he got back from deployment and was assigned to Fort Stewart.

The President requested a time frame.

The Defense stated that the elimination action was initiated in 2011.

The Government called Dr. Parodi.

Dr. Parodi was duly sworn in.

Dr. Ana L. Parodi, MD, Retired COL, US Army, was called as a witness for the Government, was sworn and testified in substance as follows:

**Direct Examination**

My name is Dr. Ana L. Parodi, MD, Retired COL. My duty position is Chief of MEB-Behavioral Health. I completed medical school. I did an internship, then I did my residency for four years and additional years in psychiatry. Then I went to the military for 20 years. I retired in 2010. I have evaluated and treated Soldiers that need to be cleared for deployment. I have been involved in that and in the SRC process. In 2003, I was involved in doing fitness for duty, MEBs, and chapter evaluations. I am currently in a position where I provide the same process for the Medical Boards. Yes, I have reviewed CPT Daniels' medical records. I don't have them in front of me. But I reviewed the packet that you provided me and I also reviewed the electronic record. Individuals who have PTSD often have other conditions. I am not saying this Soldier does. Individuals who have behavioral health conditions, especially if they have more than one condition, have the risk of having aggressive acts. Violence is different from being aggressive. Those who are violent happen to have behavioral health conditions. Generally, what we are looking at is personality style on how you are going to respond to different stressors. Generally that is shaped by your childhood. I don't know the technical definition of violence from a behavioral health point of view. From a behavioral health point of view, I called that I violent act because of the intensity, the emotions involved, and the physical contact. I would consider this violent act more of a personality style than PTSD. And it does not have to be PTSD. It can be a significant depression, or an anxiety disorder, that is going to have the same answer. Mainly, if he were to describe what is called associative episodes or flash backs, then I might consider he was not responsible for what was going on. He is not describing that, so that makes me think this is more of a personality trait than an emotional condition at that moment.

No further questions by the Government.

**Cross Examination**

The Electronic Medical Record is not a hard copy. I can print a hard copy of it. Yes, a print out of the medical record would be a print out of the electronic record. I have not

don't remember if he was on any medication. He was diagnosed with alcohol abuse. Alcohol stays in your body neurologically six to twelve months afterwards.

The Recorder stated that Dr. Parodi reviewed the medical records, the memorandum CPT Daniels wrote, and both sworn statements from Tara Brown and from CPT Daniel's wife.

**Questions by COL Cardinale**

My statement is based on the record review. Yes, I had his additional statement and reaction to the misconduct. He does not describe the flashback and the dissociative episodes. He does not describe that. He is describing very well what happened, step by step and is very logical. You would not find that in a flashback or in a dissociative episode. A definition of a flashback is reliving the event again and again, I don't know what his stressor was or what his traumatic event was, so I don't know what he would have been living. Did he go out there and have hand to hand combat? His rebuttal describes a very stressful command environment. I don't know what his flashback could be. And in a dissociative episode event, you are not aware of what you is going on. In a dissociative episode you cannot give an explanation of what happened. Your Soldier is not describing either occurrence. He describes very logically and systematically what occurred. A result of the trigger was his wife's slapping. An example of a flashback would have been somebody was talking and I heard a boom and I thought I was back in Iraq and I had to run for cover or get underneath something; that is a flashback. He does not describe that at all.

**Cross examination**

Yes, I reviewed his record after the alleged assault had occurred and his behavioral health record in 2008. I don't have the record in front of me but I think it was August 2008 to the present. The last visit was in June 2011. There is not much information there, but I started from the end to the beginning. No, I did not talk to the physician involved in the diagnosis and treatment, they were at Fort Sill. There was one physician who provided that diagnosis. There was also a social worker. Again nobody documented what the traumatic event was. Just that I have been exposed to something that was scary or traumatic does not mean it is going to lead to PTSD. It is how you are dealing and coping with what you have experienced. Yes, those individuals who made that diagnosis had the opportunity to meet with CPT Daniels and evaluate him.

No further questions by Defense.

**Re-direct Examination**

I know there was a social worker and his area of expertise was marital problems. He worked in family advocacy. Why he went and diagnosed PTSD, I don't know. He did not give an explanation. I don't know his experience because social workers don't have the training most of the time to make diagnosis. The documentation is not clear. The title does not mean you have the experience to make a diagnosis. No, my idea is that if he has any PTSD, it is from his childhood. All I have to do is read what the abuse was and if he never

then we deployed. The battalion cross-attached Alpha company to 1-18 Infantry when deployed in Bagdad. They left Kuwait about the end of September or early October 2006. Yes, I did have the opportunity to observe CPT Daniels' duty performance. In Garrison, he was doing the train up for approximately the entire year of 2006 up until the deployment. We had a training cycle. CPT Daniels was focused, his duty performance was outstanding. I think that was articulated and written in the evaluation report. That led him to be selected to become the Commander of Headquarters Company which was the largest company in the task force. Based on the recommendation to the brigade commander, at that time he was selected in combat and based on his performance in Baghdad, which was where the brigade commander was, he was soon selected as commander of HHC. My assistant battalion commander, which at that time was LTC George Glace, frequently visited me at Ramadi. He also visited me in Baghdad twice during the time Derrick was in command. We discussed his performance and based on his performance, he agreed with my recommendation for him to assume command of HHC, I think in January or February 2007. In Ramadi there was not a day from the time we assumed responsibilities in September/October 2006 until April 2007 that I had combat patrol lead that was not engaged. During that period of time, I lost from my task force a total of 12 Soldiers to IEDs and other forms of combat engagements, so it was very hectic. Understand that during that time, that was pre-search activities, so late 2006 to 2007 was the deadliest time for troops in Iraq to include the Baghdad area because that was the time when the EF PID was introduced in the area. CPT Daniels joined me in Ramadi when he took over HHC in January/February 2007. We deployed about 15 November 2007. I worked with the 8-35 task force while I was in Ramadi, compiled by HHC and Charlie Company. I also had two infantry companies, Bravo Company 1-18 and Bravo Company 1-26, and also Charlie Company, 9th Engineers. He was the company commander of the largest and most diverse company in the task force. That is a difficult job, especially in combat. Our area of operation with the task force was probably 600 square miles because it had everything from west of the bridge in Ramadi up to the west, which is the largest task force area in and around Ramadi. We also managed over 1200 Iraqi police. We were partners with the Iraqi and the army battalion. We all were responsible for the ER forces, that is the emergency forces and also the highway patrol. I left probably January 2008. He was still in command of HHC when I left. As I explained earlier, I had the largest area of operations. I had companies that maintained seven operations. I received the email; I can't exactly remember when it was, probably in 2009 or 2010 from COL Burton that asked me if I knew anything that was going on with Derrick. I said I didn't. He said he received a notification that CPT Daniels was being investigated. I asked him if he wanted me to find out what was going on and he said no. The next thing I heard was actually from Derrick about last summer. He laid out what activities he had been engaged in what was being considered as far as his future.

My understanding of those allegations was that he got into extra marital affairs. It was wrong, he knew it was wrong, I think he admitted that he was wrong. This is the first time I am aware he assaulted his wife when she found out of his extra marital affair. I met her when she was participating at the FRG. I remember during the deployment Derrick said his wife was going back to the Oklahoma area to continue pursue her master's degree. I asked him if there was anything I can do for her. The next time I saw her was after I

The recorder presented the ORB to the Board members.

The Legal Advisor stated that a complete packet of CPT Daniels' OMPF had been provided.

**Cross Examination**

He would make sure the patrol briefs were done and that the rehearsals were executed. HHC had approximately 384 personnel. He made sure that every HHC patrol that left the gate was properly planned, resourced and executed. That was his responsibility as the company commander.

The recorder read one of the bullets from CPT Daniels' memorandum dated 30 June 2006.

**Cross Examination**

I can tell you exactly were that came from. Baghdad in 2006. At that time, I don't know if any in the room recalls, Sadder was killing Sunni citizens and dumping their bodies on the side of the road. I can remember vividly, and Bravo company was responsible for picking up those bodies identifying them through the proper channels. At that time in Baghdad, there was no acting partnership with the Iraqi police, so if we wanted that to happen and we had to make that happen. He was not on every single patrol. As a company commander, especially in Baghdad, he was out and about with his troops. He was in Ramadi. As a commander you have to be out on the patrols so you are in the game and get a true understanding of the area of operations. He would be out in the area of operation much more in Baghdad than he would in Ramadi. He and the first sergeant spent an exorbitant amount of time in the field. I think I spoke with CPT Daniels about his extra marital affair somewhere between May and June 2011. I can't recall if he mentioned the assault. We did talk about how obsessed she was, but I can't recall discussing the assault with him. I think I do recall a discussion about emails [of him and his mistress] and some of the activities that the mistress actually communicated to the command. I did not know that CPT Daniels destroyed the emails. I was not aware that he strangled her and said that neither of them had to get hurt. I know adultery is wrong and is in the good keeping of the Army, but I am not willing to judge. I think people can learn from their mistakes and they can persevere and overcome their mistakes and they can continue, in this case, to serve our nation because they are committed in serving our nation. Everybody has done something wrong. I think he can overcome this. Especially when he admitted that he did something wrong. There is a difference when you don't admit to doing something wrong than taking responsibility. I don't recall him admitting committing the assault to me.

No further questions by the Government.

**Re-direct Examination**

I was only concerned about the assault. One corrective action I would recommend is counseling. I still think he can serve the Army and our nation. He has served 17 plus years

with the 25th Transportation Battalion in Korea from June 2002 to June 2004. I know CPT Daniels. He was a member of our Stability Transition Team. The entire team was about 44 to 48 folks that were attached to the brigade. He was attached to my specific team in about either June or July of 2010. I didn't know him on a personal basis, he was part of a larger group. We trained with the brigade. We did train at Fort Stewart. The environment changed, in some cases the locations where we had teams deployed already had a transition team there or maybe for whatever reason, the commander would decide that we move a team to a new location. Derrick's team was being split because they were going to vacate the location where he was. I think he was with the Federal Police Brigade. So, I gained a couple of officers and he was part of that transition. COL Bennie Williams and I discussed all of the officers that were coming from the Federal Police Unit. We specifically discussed CPT Daniels. I remember that is the first time I became aware there was a background to Derrick's situation and why he had not been promoted. I recall when we all linked up at Fort Stewart, we had four or five junior officers and they were all CPTs and they were all on the promotion list. Derrick was on the promotion list and we all assumed they were all getting promoted before we deployed. I thought the actual requirement was for all to be MAJs before deployment. We discussed the reasons why CPT Daniels was not promoted. There were some issues that happened prior to deployment. I did not know COL Williams before we deployed. During our train up and during our deployment, we both had a professional discussion of what was going on with all the officers I had. CPT Daniels' case was particular. My understanding was he had a DUI and some issues after redeployment. He had some issues adapting after deployment. He had a domestic altercation with his wife. I recall asking COL Williams if this was going to be an issue for CPT Daniels after he came to me. I did not want to take on somebody else's problems. I was concerned about the team. After talking to COL Williams, I felt comfortable that CPT Daniels and I could work together. I did not know him very well when we were at Fort Stewart. I did not think I was going to have any discipline issues when he came to our team. I did not have any discipline issues. I contacted the Armor branch. Derrick came to the location where I was. I don't recall if he had taken his mid-tour leave or if he took it as soon as he got there, but once he got his feet on the ground Derrick got saddled with a bunch of headaches when the previous team departed his location. They got stuck with probably twenty, maybe $30,000 worth property that he was not signed for, but he took responsibility for it. The outgoing team was actually signed for the property. Derrick took responsibility for it, so he was left with the headache of getting that stuff documented and turned in. That's what we were doing with Derrick along with his duties as a transition team member. I discussed what was going on with his promotion with him. That's when he showed me, I think it was a memorandum. I don't remember if it was from his branch or the Combat Arms Division Chief. Basically it stated that he had been removed from the promotion list and laid out some of the issues as to why. I think they told him the appeal process. He could write a letter of rebuttal or something to that effect. That is when we actually talked about it. He showed me the document. I talked with the Armor Branch Chief just to find out what the appeal process was and what could he do for his rebuttal. I wrote a letter of recommendation. Derrick believed with this deployment and the good job he was doing, he would get reinstated on the promotion list. After talking with the Armor Branch, it became very evident that was not going to take place. I asked why would you deploy him if you knew he was not going to have a chance to move on with his career?

The President said he had not seen a DUI in the file.

The Defense stated that might be missing information; Defense had not seen anything about a DUI.

The President asked his Legal Advisor if it was okay to ask CPT Daniels if he had a DUI.

The Legal Advisor stated that the hearing is open.

The President asked CPT Daniels if he ever got a DUI.

The Respondent stated that he never received a DUI.

**Questions by COL Cardinale**

The incident was domestic violence of some sort. I just wanted to know how Derrick got into that situation with regard to future promotion or taken off the promotion list. I thought it was regarding a DUI.

The Defense objected to the Government's question based on relevance.

Objection overruled by the President.

The President asked the Respondent if there was an alcohol related incident, a DUI, or driving while impaired, or anything else that went to court and got pled down, or did not even go to court. Was there a driving alcohol related incident?

The Respondent stated no.

**Cross Examination**

When we talked, he told me there was a domestic violence. When we had that conversation, he was on my transition team. He came over to my headquarters. I was not aware that he pushed her several times, hit her in the head with a plastic baton, destroyed email traffic of an adulterous relationship, or that he strangled her and told her that "stop, neither one of us needs to get hurt." Whether he had a DUI or domestic violence, the domestic violence spoke for itself. My assumption was that he got violent with his spouse. The nature of it or the amount of the abuse, I don't condone it, but based on my experience with Derrick, he understood he made a mistake and admitted he made a mistake and that is not the behavior he should have exhibited. How you describe the incident would not alter my belief on whether Derrick could continue in the service. I did not know when his commission was. I am 29 years in the Army, so every CPT seems very young to me. I mean junior as in he was a young officer. I don't think those are examples or indicators of what we expect in the office corps.

The President asked the Defense if she was familiar with the security clearance regulation.

The Defense stated she was not familiar with the regulation.

The President asked if anybody has put a derogatory statement in his file.

The Respondent stated that nobody put anything his file specific to his security clearance.

The President stated it is a requirement by regulation that a domestic violence incident, that the derogatory statement goes in the file. It is not up to the local commander to make a determination, it is determined by CCF. They take the preponderance of that evidence and they make a determination on whether the security clearance remains in effect, gets suspended, or gets revoked. There was a step that was missed.

The President stated that the question is relevant, but irrelevant to COL Atcher.

The Government has no further questions for COL Atcher.

No further questions by Defense.

COL Atcher was recalled at 1547 hours.

The Defense objected to the line of questioning (about CPT Daniels' finances).

The President sustained the objection.

**Questions by LTC Hathaway**

I am not aware of any specific incident where a member of his leadership team specifically said to him if he needed help with an issue or anything like that. When you are the commander, you need to know what is happening to your people. Some folks are good at that. When I was the battalion commander, I don't say I knew everything about every single Soldier. I would like to say that I knew quite well about my office first. If I had an officer I thought was not doing well or was having an issue, then I would at least talk to them. In my mind, one of his commanders should have asked him what was going on in his life? Especially if in fact he was having an alcohol related issue and domestic violence. He had a couple jobs. It seems to me that somebody in his leadership should have talked to him.

**Questions by LTC Fugate**

I can only speak for the time that I worked with CPT Daniels. I think he can serve in the Army as a MAJ. I believe there are some folks that are probably smarter than me of specific niches that CPT Daniels could fill at higher ranks. I think he can serve as a staff officer, working on the division staff. Be a good plans officer or as an operational officer. I think he could do those types of jobs.

The Legal Advisor stated that he should get the opportunity to see the documents before the Board does, in case the Recorder had any objections.

The Government does not object to the medical records.

The Defense presented Defense Exhibit 5, Prior conviction of Ms. Brown for fraud.

The Recorder requested to review Defense exhibit 5.

The Government objected because it was not a prior conviction. And Captain Daniels admitted he had an affair with Mrs. Tara Brown.

The President sustained the Government objection. Defense Exhibit 6 was submitted, but not admitted.

The President called a recess at 1641 hours to seek legal advice.

The Board reconvened at 1652 hours.

All parties that were present before the Board closed were again present.

The Defense called MAJ Barr as a telephonic witness.

MAJ Terrance Barr, US Army, was called as a witness; was duly sworn in and his statement is as follows:

**Direct Examination**

Currently I am the executive officer for the 188th Infantry Brigade, Fort Stewart, Georgia. I have been in this duty position since June 2011 for nine months. I have been with the Brigade since April 11, 2009. I have 17 years in the Army, 7 years as an enlisted, 10 as a senior commissioned. My MOS as an enlisted was 54B and 74D, chemical specialist. My current branch is a chemical officer. I have deployed one time in 1995. I went to Kuwait for 12 months. I know CPT Daniels from the S3 shop as the deputy Chief of Operations. I met Derrick in April 2011, almost a year ago. I see him at Fort Stewart five days a week, when he is TDY with the brigade, I see him maybe twice a week. He trains the Army National Guard Unit and Reserve. This is pre-deployment training. His duty performance has been great. He is a senior mentor for the National Guard and Reserve commanders. Derrick is passive-aggressive. He gets their trust and he helps them focus in the right direction. He has a calm demeanor and he gains their trust and shows them ways to make things easier. Derrick always comes to work on time. He is a hard worker. I don't have to worry when he is coming to work. Yes, right now we were planning on putting Derrick back down to the Infantry Battalion. If he is retained, we will put him at the battalion level. The company commanders of the National Guard and Reserve Units at training run a team of about 29 commissioned officers. CPT Daniels is a good trainer-mentor. He helped them understand what they can do better. He assesses their tour. He is always on time. The S3

CPT Derrick Daniels was duly sworn in and his statement is as follows:

**Direct Examination**

I met Mrs. Brown on a website called "onlinebootycall.com." I met Mrs. Brown after my return from Iraq at Fort Sill. I returned from Iraq in May 2008. I contacted Mrs. Brown in July 2008. At that time my wife was going to college. The transition coming back was a hard transition at that time. I had insufficient time for myself for the issues I had. I left a small amount of time to myself for my immediate needs with alcoholism and the adulterous affair that I am not proud of. Instead of giving more time to myself to fix in my situation, I stole a lot of time from my wife. When I returned from my second deployment to Iraq, my wife was at Fort Sill, Oklahoma. I returned to Germany. She came for the initial return, then she left to continue school. There was a reintegration post-deployment procedure after the first deployment and after the second deployment. I was able to take advantage of the program. I arrived at Fort Sill in May 2008. She went back to school. She felt like she supported me through the two tours in Iraq. Now it was her time to go to school. And I was there to support her. I did not have what I thought I needed from my wife and that affected our relationship. I was not there for her. I was hollow, I was not there emotionally. When I lost Soldiers, I felt I was a failure at times and felt I was not able to complete a mission when I returned to Fort Sill. When I came back to Fort Sill, my wife and I were living in the same house. The first time I met Mrs. Brown physically was in Wichita Falls, Texas around the same time I met her online in July 2008. I had an affair with Mrs. Brown. It involved sexual intercourse. I did not have an affair with anyone else. I did not have sexual relationships with anyone other than Mrs. Brown and Mrs. Wendy Daniels. I was living with my wife the night of the assault. On the night of the assault, I came back from post and I confessed about the relationship with Mrs. Brown. My wife wanted to talk to Mrs. Brown to get the full details of the relationship. After the conversation, Mrs. Brown disclosed some things that were not true; the additional affairs and the issue of impregnating another Soldier's wife. When I came home, my wife confronted me about the conversation. I told her everything that Mrs. Brown was saying was not true. She showed me the email and I told her that Mrs. Brown was telling the truth about my situation. Then she slapped me and when she did, she attempted to block the door. I asked her to move out of the way and she did not. I forced myself through the door towards the vehicle. At that time she was pursuing me. At that point, I picked up a plastic baton and I hit her in the head. She fell to the ground and started crying. I tried to console her, but she got up she asked me why I had nasty emails. When she pushed me, I grabbed her around her neck and start chocking her and I told her this was not worth it. After I released her, we sat down and we talked about the situation. At that point, I made a decision to remove myself from the house. I spent two nights at a hotel. She called me and she asked me if I was with Mrs. Brown and I told her I was not. But she felt I was with Mrs. Brown because I few days later she went to the hospital. That is what started the investigation. I am still married to Mrs. Daniels. I have been married for almost 14 years. I was 26 when we got married. We were in High School together. She is three years younger than me. We start dating after I came home from basic training when I was 18 years old. I did not continue the relationship with Mrs. Brown after the assault. I had

wanted my wife to see me when she got to the garage that morning. I went to her house, I opened the garage door. I got on a kitchen table that was in the garage, got on top of the table with the rope tied around my neck. Then I went into a dilemma of pushing myself off of my table. I could not do it because I was not sure. I know I will automatically go to hell. So I got down, went back to my house and called my parents and told them what was going on. It took me months later after getting treatment. I wanted to feel that someone did care about me. She knew I was in the house. I wanted my wife to come and stop me. After that, I was an inpatient at Red River for 10 days. I got physical treatment. No shoe laces, no belt and under supervision. When I went to sleep at night, they did checks on me. I had medication. I had supervision while I ate, while in recreation. In working groups, I found it was very intriguing. There were other Soldiers from Fort Sill. I was the only officer. There was a Lieutenant before me that had just committed suicide during his treatment. At that point I knew that could not be the end of me. I had to come up with a plan. I have been in ASAP before and in behavioral health. After the suicide attempt those services changed. After I was released from Red Rover, I started with the working groups. At that time, Fort Sill was trying to develop a group of officers, but there were not enough officers to set up a group. I was involved in family advocacy. My involvement with family advocacy was with the marriage itself which identify other things between me and my wife. I completed it before PCSing. Being at Red River made me realize some things. I realized the immediate need was not met by my poor decisions. Alcohol was not doing any good. Then the extra marital affair. That led me to look for a job, and there was the strain of maintaining two houses. The job was a full service care provider for three male at home. The duties consisted on feeding, bathing, and changing diapers when necessary. I could see the immediate satisfaction where the immediate need was being met.

I had two households. I was not living with my wife at that time. I continued to support her. I never failed the financial needs of my wife. The financial difficulties did not make me fail my financial obligations. It was the time to reflect, to understand where to go further in my career. There were things in that GOMOR that were unsubstantiated. My plan of action at that time was to try outperforming the GOMOR. I completed my mission and started my first deployment. My previous MOS was Armor. I came in as Field Artillery. I switched because I love tanks. As a tanker, it was the battlefield and the power that it would bring. I wanted to do that as an officer. For the past five years, from the situation with my wife that put me into alcoholism, put me into the extra marital affair, everything was a waste of time. The time that I had in combat was always dedicated to Soldiers and I did not dedicate time for myself. After going to a rehabilitative process on my own, I knew that time was always an issue for combat operations. As a company commander, I have administered a letter of reprimand for adultery to an E7. I have never administered an Article 15. There was an issue with a Soldier and his wife that escalated and we moved the Soldier to the barracks. The Soldier went through a rehabilitative process and reunited with his spouse, but not anything with an Article 15. I don't hold any bad feelings to the officer that gave me the GOMOR. He did the right thing. What I wished at that time was to establish a personal, social relationship with my command like I did before. The previous commanders did not testify because they liked me because I am a good guy. They saw me coming out from austere situations. Going through the process, I see where the Army has got to now. With 14 years in combat, I welcome resiliency

combat environment where so much is done, you come to realize you sacrifice so much. Sometimes you feel you are immune to a lot of things. Most times the commanders feel those types of programs are not for us, they are for the Soldiers. I am not the only one that feels that way, not being able to come forward, afraid of what people might say or people might do. If I were to command again, I would give an Article 15 for domestic violence or adultery very easy. The situation I have been gone through makes me more fair and impartial to deal with Soldiers with ease. I would be able to give an Article 15 to an E4 or below, where it will make them unable to reenlist with the first domestic violence offense for a lot of MOSs. I think each commander needs to look at each case. You need to look at each individual on a case by case basis. I don't have an issue in doing that. I would have expected an Article 15 if I were an enlisted at that time. But I would hear other circumstances surrounding that as well; what led to the domestic violence? How it impacted the Soldier? When did he join the Army? I understand the three pillars of ROTC: physical, emotional, and psychological. I think the dynamic is different, we talked about Soldiers as an E4. Commanders are held to higher standard because they command E4s. At that time, I did not exhibit emotional stability and that led to the assault. Led to marital problems, which led me to noncompliance with the AWCP. As an officer, you should be physically in compliance with the AWCP. At times we want to judge people based on individual circumstances. When I saw what the problem was, everything fell back in place. I have heard of that I am a Soldier 24/7. My personal life did influence my professional life. It will depend if that Soldier should stay in the Army. It depends if he was given a second chance, how he would work with it? What would be his plan of action? If the Soldier would see me for Article 15s, I will ask them, if you do this, what is the plan of action to overcome the circumstances? I could handle deployment stress again. Each deployment is different. My command is unique. Now I think I will be more resilient. I did not say the assault was PTSD related. I knew Mrs. Brown was lying when my wife confronted me. I saw the lies in the GOMOR. In my rebuttal, the question was if the allegation was true and my response was yes. I said, "Why fight it?" When I wrote that at that time, I did not address it because I did not want to fight it. I would try to outperform the GOMOR. I don't consider myself a victim.

No further questions by the Government.

**Redirect Examination**

Before the incident I was in compliance. After that referred OER and since then I have been in compliance with the AWCP. Before that OER, when did not make the height and weight, they did not put me on the AWCP. I was never counseled. I was not referred for examination.

No further questions by Defense.

The President called a recess at 1814 hours.

The Board reconvened at 1819 hours.

outcome of the GOMOR investigation. I was still drinking alcohol. I was still having problems with the situation. I was still in mental health and ASAP. It was after the suicide attempt and after Red River. We owned two houses. We own one house now. When I came up on the MAJ list, my wife wanted a bigger house. I made a purchase at that time, before the allegations. When the allegations started, the other house had not been sold. When I talked to the battalion commander, he said I needed to move out of the house and I stayed at the old house. So, at that time I maintained two houses. BAH in Oklahoma at that time was about $1,800.00. I maintained two vehicles, her car and mine. It was a BMW 2002 and a Nissan Altima. I paid around $1,100.00. I did not miss any payments. It was just that the money that was used to maintain both houses and both vehicles was a financial strain. We cashed in our 401k plan to buy the house, but that is what is she wanted. All this was done out of guilt. She did not know I knew something bad was happening. I believe I abused alcohol. I mostly drink at home. It was not social drinking. It was liquor or beer every day after work for at least three months. I drink occasionally. I don't think I still have a drinking problem. I know I am overcoming my challenges. I believe I am still on step seven and a half. I did not allow myself to get what I needed from myself. Mrs. Brown, just as with alcohol, was a bad decision for a temporary fix. The adjustment coming back from a combat environment, I still wanted to allocate time to serve my country and do my job. I allowed my wife to do the things that she wanted to do. I needed more time for myself to fix my situation. On the second deployment, I did not go through the integration training. It was my company that did the integration training. I came back in 2008. I went to some of the integrations classes, but not the ones involving the spouses because my spouse was not with me. I am not currently going through marriage counseling. My relationship with my wife is a 4 with 5 being good. I have given about three Article 15s in my 10 years in command. I have 24 months as a company commander. I was deployed 15 months down range. The extra job was nothing specific that my counselor told me to do. It came on my own. I wanted a job in a medical field or similar or some type of community service. It happened that there was a job available during the weekend. It did not interfere with my career as an instructor. It put additional money in my pocket. If I was providing service to these individuals during the weekends, I was not drinking. I talked with my S3 about it and told him what my plan was. The S3 is not allowed to authorize me to have another job. I did not think about it at that time. The battalion commander would be the one to authorize that. I did not talk to him. I am not sure if the S3 talked to the battalion commander. I don't know if my chain of command knew, but I knew and did not seek for approval from my chain of command. There were some issues with the other company commanders. It started back in Germany. The previous commander before myself in Alpha Company was African American like me. COL Johnson, the battalion commander, is African American. In that battalion, it was rare to have four to five African American LTCs in the task force. The rumor was the only reason I took command was because LTC Johnson was looking out for me. They saw the time COL Shikovy would say stuff about COL Johnson, rumors that he was incompetent. My wife overheard a rumor from the 1SG of Charlie Company's wife who said that only reason why CPT Miller and CPT Daniels are commanders is because of COL Johnson and his experience that black commanders can't operate as well. The other commanders thought COL Johnson offered me the position based on the color of my skin. There was a MSG I talked to at that time who was as an instructor. He was also an ordained minister.

**FINDINGS**

Captain Daniels, it is my duty as President of this Board of Inquiry to inform you that the Board, in closed session and on secret ballot, a majority of the members present at the time the vote was taken concurring, has made the following findings and recommendations:

Given the preponderance of the evidence, we conclude that you did in fact commit adultery and you did in fact have an incident of domestic violence in which you assaulted your wife. Therefore, the Board of inquiry finds that there is sufficient evidence to prove that Captain Daniels did commit acts of personal misconduct and this Board of inquiry finds that there is sufficient evidence to prove that Captain Daniels' action can be considered conduct of unbecoming a commissioned officer.

**RECOMMENDATION**

Because of this, the Board of inquiry recommends that Captain Daniels be involuntarily separated and receive an Honorable Discharge; and all three members of the Board, myself, LTC Fugate, and LTC Hathaway have all signed. You are dismissed Captain Daniels.

The Board adjourned at 2035 hours.

**AUTHENTICATION**

COL DOUGLAS C. CARDINALE (PRESIDENT)

LTC STANLEY P. FUGATE (MEMBER)

LTC BRIAN K. HATHAWAY (MEMBER)

CPT TODD CHARD (RECORDER)



DEPARTMENT OF THE ARMY
TRIAL DEFENSE SERVICE, REGION SOUTHEAST
37 NORTH SCHMIDT STREET, SUITE 100
HUNTER ARMY AIRFIELD, GA 31409

REPLY TO
ATTENTION OF

AFZP-JA-TDS 13 April 2012

MEMORANDUM FOR Board President, Board of Inquiry – Captain Derrick T. Daniels, Redacted PII Redacted PII 1-306th Infantry Regiment, 188th Infantry Brigade, Fort Stewart, Georgia, 31314

SUBJECT: Reply to Recorder's Response to Respondent's Supplemental Request for Discovery

1. The government waited until 11 April 2012 to request the AR 15-6 investigation in this case, and did not supply it to the Respondent until after COB on 12 April 2012, almost two weeks after Respondent filed a Request for Discovery.

2. Respondent has reason to believe that these recordings contain exculpatory material. Whether they do or not, to permit witnesses to comment on their contents without production of the contents and the opportunity to study their contents prevents the Respondent from fully developing a defense and cross-examination regarding the contents, as the witnesses, four years after the fact, may only remember the allegedly inculpatory contents.

3. The Recorder misstates Respondent's suggested remedy. Respondent is not asking the members of the board to disregard the entire 15-6. Respondent is simply asking that the members of the board not consider the alleged contents of the recordings, and that witnesses not be allowed to testify regarding the contents of the recordings, as without the recordings themselves, Respondent is powerless to rebut these statements.

4. If this were a court-martial, a military judge would not permit inclusion of this evidence. Military Rule of Evidence 106 requires that "when a writing or recorded statement or part thereof is introduced by a party, an adverse party may require that party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." In this case, if the board intends to consider the testimony of witnesses regarding the contents of recording, both the rules of evidence and principles of fairness and due process require an opportunity for the Respondent to review the recording itself and prepare cross-examination.

5. "If the government fails to disclose or preserve material that could be exculpatory in nature, or favorable to an accused when material to guilt or punishment, good or bad faith of the prosecution is no longer at issue, but rather a due process violation is at issue. The government's duty [to disclose] 'covers not only exculpatory material but also information that could be used to impeach a key government witness.'" 219 F.Supp.2d 242, 249 (N.D.N.Y 2006). *United States v. Yevakpor*, a federal case applied multiple times in this jurisdiction by Fort Stewart's sitting military judge. In *Yevakpor* and in military courts-martial here at Fort Stewart, the court has held exclusion of the evidence in question and any mention of its contents is the appropriate remedy, where the evidence is no longer available due to the government's deliberate destruction of evidence, "in light of its knowledge that the evidence could have been used in prosecution or defense." 419 F.Supp. at 252. Respondent has no objection to the board considering the remainder of the AR 15-6, including other statements and comments from the investigating officer, if the board considers such comments relevant.

6. In the alternative, Respondent requests a delay until the Recorder can ascertain whether the recordings are available, provide them to Respondent's counsel, and permit Respondent and respondent's counsel have adequate time to prepare to defend against the recordings, and potentially present exculpatory material contained within these recordings. The tardiness of the government's response to Respondent's request for discovery, leaving only three duty days to study this evidence and prepare for this hearing, including duty days when Respondent's counsel is out of the office, especially when the Recorder was able to easily obtain a copy of the AR 15-6 investigation in this case, already places Respondent at a disadvantage. Respondent simply asks that the board president level the battlefield by excluding the recordings and any mention of their contents, exculpatory, inculpatory, or otherwise.

7. I certify that on 12 April 2012 the foregoing Reply to Recorder's Response to Respondent's Request for Discovery was served on Recorder, OSJA, and the President, COL Cardinale. I request that this document be included in the record and forwarded for any disposition of this matter.

*//original signed//*

SARAH J. RYKOWSKI
CPT, JA
Defense Counsel



DEPARTMENT OF THE ARMY
TRIAL DEFENSE SERVICE, REGION SOUTHEAST
37 NORTH SCHMIDT STREET, SUITE 100
HUNTER ARMY AIRFIELD, GA 31409

REPLY TO ATTENTION OF

AFZP-JA-TDS

12 April 2012

MEMORANDUM FOR Recorder, Board of Inquiry – Captain Derrick T. Daniels Redacted PII Redacted PII 1-306th Infantry Regiment, 188th Infantry Brigade, Fort Stewart, Georgia, 31314

SUBJECT: Respondent's Request for Witnesses

1. The Respondent, through counsel, requests that the Recorder/Government produce the following witnesses telephonically:

a. COL Bennie Williams, Office (703) 607-1770/1887; bennie.williams@us.army.mil. COL Williams was CPT Daniels' commander in Iraq in 2010 for several months, and took him on with full knowledge of the allegations with which this board is confronted. He will testify regarding CPT Daniels' good duty performance both at Fort Stewart and in Iraq, and CPT Daniels' rehabilitative potential.

b. COL (Retired) Daniel Atcher, (270) 823-3549; david.atcher@us.army.mil. COL Atcher was CPT Daniels' commander in Iraq in 2009-2010, and took him on with full knowledge of the allegations against CPT Daniels with which this board is confronted. He will testify regarding CPT Daniels' good duty performance both at Fort Stewart and in Iraq, and CPT Daniels' rehabilitative potential.

c. COL Miciotto Johnson, (913) 290-0556; miciotto.johnson@us.army.mil. COL Johnson was CPT Daniels' battalion commander for his second deployment to Iraq. CPT Daniels held two company commands during this deployment, and COL Johnson will testify regarding CPT Daniels' good duty performance in garrison and during the deployment, as well as his rehabilitative potential.

2. I certify that on 12 April 2012 the foregoing amended Respondent's Request for Witnesses was served on Recorder, OSJA, and the President, COL Cardinale.

SARAH J. RYKOWSKI
CPT, JA
Defense Counsel



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 3RD INFANTRY DIVISION AND FORT STEWART
OFFICE OF THE STAFF JUDGE ADVOCATE
1791 GULICK AVENUE, BUILDING 709
FORT STEWART, GEORGIA 31314-5100

REPLY TO
ATTENTION OF

AFZP-JA-MJ 12 April 2012

MEMORANDUM FOR COL Douglas Cardinale, Board President, 2nd Heavy Brigade Combat Team, 3rd Infantry Division, Fort Stewart, Georgia, 31314

SUBJECT: Respondent's Initial and Supplemental Request for Discovery

1. This memorandum is in response to the respondent's initial request for discovery dated 3 April 2012, and the respondent's supplemental request for discovery on 12 April 2012.

2. Government responded to the initial request for discovery through email dated 11 April 2012 (enclosed). The OMPF for the respondent is scheduled for hand delivery to the Fort Stewart Trial Defense Office on 13 April 2012. We believe all other aspects of the discovery request are met, however we understand that discovery is an ongoing process, and encourage the respondent to request production of any specific documents they believe are in the Government's possession.

3. Respondent requested production of two recordings that are referenced in the January 2009 15-6 investigation table of exhibits previously provided. We will conduct a thorough search for these recordings, but believe they will not be discoverable. The respondent asserts that failure to produce these recordings somehow invalidates the entire 15-6 investigation, as well as testimony from the 15-6 investigating officer. This is not so. AR 600-8-24 ("Officer Transfers and Discharges"), paragraph 4-6(a) states that boards of inquiry are administrative investigations, and will be conducted under AR 15-6 ("Procedures for Investigating Officers and Boards of Officers"), and AR 600-8-24. AR 15-6, paragraph 3-7 states "[A]n investigating officer or Board of officers is not bound by the rules of evidence for trials by courts–martial ... anything that in the minds of reasonable persons is relevant and material to an issue may be accepted as evidence". The 15-6 investigation and testimony from the investigating officer is admissible, regardless of production of two exhibits that were used by the investigating officer to complete the investigation. This is especially true, since the 15-6 report makes no mention of exculpatory evidence within the recordings, and both witnesses gave written statements in addition to the recordings during the course of that investigation, which have been provided to the defense.

4. Point of contact for this memorandum is the undersigned at todd.chard@us.army.mil or (912) 767-6585.

///ORIGINAL SIGNED///

Encl
as

TODD M. CHARD
CPT, JA
Recorder

**Betancourt, Xiara G SPC MIL USA FORSCOM**

| | |
|---|---|
| **From:** | Fugate, Stanley P LTC MIL USA FORSCOM |
| **Sent:** | Monday, April 16, 2012 11:06 AM |
| **To:** | Cardinale, Douglas C COL MIL USA FORSCOM; Hathaway, Brian K LTC MIL USA FORSCOM; Chard, Todd M CPT MIL USA FORSCOM; Presson, Amanda G CPT MIL USA FORSCOM; Rykowski, Sarah J CPT MIL USA IMCOM |
| **Cc:** | Betancourt, Xiara G SPC MIL USA FORSCOM; Quintas, Leopoldo A COL MIL USA FORSCOM |
| **Subject:** | Board of Inquiry - Former Member of the Chain of Command |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

COL Cardinale
Board Members
Attorneys

Sir/All,

After reviewing the Board of Inquiry file concerning CPT Derrick Daniels, in the interest of full disclosure, I am notifying Government and Defense Counsel as well as the Board of the following facts:

1. In 2009-2010, I was the Deputy Commanding Officer (DCO) of the Brigade (1HBCT Advise and Assist Brigade, 3rd ID USD-C Baghdad, Iraq) that CPT Daniels was a part of.

2. I oversaw 46 Stability and Transition Teams (STTs), and from the case file, it was determined that CPT Daniels was one of the Assistant Team Leaders of an STT. However, I did not rate CPT Daniels on any OERs.

3. I dealt with CPT Daniels' supervisors, LTC Darren Klemens and COL David Atcher, concerning the STTs. Both of these supervisors have provided recommendation letters in the case file provided to all board members, Government counsel, and Defense counsel.

4. I recall one conversation concerning why CPT Daniels was a CPT(P) for such a long time. The individual I was discussing this with did not get into an in-depth discussion of the details surrounding the conduct stated in the current case file.

Despite these facts, I maintain that I am an impartial board member due to the fact that I had no personal dealings with CPT Daniels and did not know about the details surrounding this board of inquiry. If either Government or Defense Counsel has any objections to me being a Board Member, please email your objections so that the Board President as well as the legal advisor may be fully aware of those objections.

V/r

LTC Stan P. Fugate
3rd ID Deputy Chief of Staff
Office: (912)435-9958
BB: (912)432-0502



DEPARTMENT OF THE ARMY

HEADQUARTERS, 1st BATTALION 30th FIELD ARTILLERY REGIMENT
UNITED STATES ARMY FIELD ARTILLERY SCHOOL
FORT SILL, OKLAHOMA 73503-5000

REPLY TO
ATTENTION OF

ATSF-BF 13 JAN 2009

MEMORANDUM FOR RECORD

SUBJECT: AR 15-6 Investigation of CPT Daniels, Derrick, CAD, 1-30th FA, 428th FAB.

1. Additional background information reference the 15-6 investigation by MAJ Chris Compton:

- CPT Daniels' had two deployments to Iraq - 12 months / 2003-2004 as an Ops Officer in DIV G-3 and Battle CPT for 2-63 AR. Second deployment was 15 months / 2006-2007 as A Co and follow-on as HHC Cdr in 1-77 AR. Both units were out of 1st Infantry Division in Germany.

- Redeployed back NOV 2007 and PCSd to Ft. Sill APR 2008. His wife had already moved to Ft. Sill and they did not go through any reintegration training in Germany.

- June 2008 – Self referral to ASAP (Mr. Fred Jette) for drinking problems. His wife recommended this treatment and he agreed. Has been going to AA meetings since June and after recent issues has transferred to the "Senior Leaders Group" and attending those once a week since NOV. Scheduled treatment will end o/a FEB 2009.

- June 2008 – Additionally sought Mental Health treatments (Mrs. McKenney) for drinking and emotional outbursts (without physical contact with his wife) once a month. He is still in counseling once a month.

- DEC 2009 – Mrs. McKinney, in light of the current issues, has setup CPT Daniels for Psychiatric Evaluation with Dr. Smith on 22 DEC 2008. Additionally, she has enrolled him into the Post Deployment Clinic, with his first counseling session on 29 DEC 2008.

- CPT Daniels has had two meetings with Family Advocacy (Mrs. Barbara Christianson) in DEC 2008. He has also rejoined his Church and attends twice a week (Wednesday – Bible Study and Sunday – Services)

2. The city of Lawton and Comanche County Courts are continuingto prosecute the case against CPT Daniels (even after his wife dropped the charges of Assault) and his Court Hearing is scheduled for 26 JAN 2009. His nocontact order (with his spouse) by both the County and 1-30th Field Artillery Cdr remain in effect.

3. Sworn statement by Ms. Tara Brown who states she is pregnant with CPT Daniels' twins and they have had a physical relationship since June 2008 (see attachment of sworn statement).

4. Recommend that CPT Daniels receive GOMOR and be dismissed from the service.

5. POC for this headquarters is the undersigned at 442-4768.

CHRISTOPHER P. TALCOTT
LTC, FA
Commanding

 1ST BN, 30TH FA Regiment

Tara Brown

Redacted PII

Redacted PII cell

Redacted PII hm

(580) 357-7400 wk

truetooyou77@yahoo.com

true tooyou7773@yahoo.com



DEPARTMENT OF THE ARMY
HEADQUARTERS, 1st BATTALION 30th FIELD ARTILLERY REGIMENT
UNITED STATES ARMY FIELD ARTILLERY SCHOOL
FORT SILL, OKLAHOMA 73503-5000

REPLY TO
ATTENTION OF

ATSF-BF

17 DEC 2008

MEMORANDUM FOR RECORD

SUBJECT: AR 15-6 Investigation of CPT Daniels, Derrick, CAD, 1-30th FA, 428th FAB.

1. Additional information reference the investigation:

- CPT Daniels' had two deployments to Iraq - 12 months / 2003-2004 as an Ops Officer in DIV G-3 and Battle CPT for 2-63 AR. Second deployment was 15 months / 2006-2007 as A Co and follow-on as HHC Cdr in 1-77 AR. Both units were out of 1st Infantry Division in Germany.

- Redeployed back NOV 2007 and PCSd to Ft. Sill APR 2008. His wife had already moved to Ft. Sill and they did not go through any reintegration training in Germany.

- June 2008 – Self referral to ASAP (Mr. Fred Jette) for drinking problems. His wife recommended this treatment and he agreed. Has been going to AA meetings since June and after recent issues has transferred to the "Senior Leaders Group" and attending those once a week since NOV. Scheduled treatment will end o/a FEB 2009.

- June 2008 – Additionally sought Mental Health treatments (Mrs. McKinney) for drinking and emotional outbursts (without physical contact with his wife) once a month. He is still in counseling once a month.

- DEC 2009 – Mrs. McKinney, in light of the current issues, has setup CPT Daniels for Psychiatric Evaluation with Dr. Smith on 22 DEC 2008. Additionally, she has enrolled him into the Post Deployment Clinic, with his first counseling session on 29 DEC 2008.

- CPT Daniels has had two meetings with Family Advocacy (Mrs. Barbara Christianson) in DEC 2008. He has also rejoined his Church and attends twice a week (Wednesday – Bible Study and Sunday – Services)

2. The city of Lawton and Comanche County Courts are continuing to prosecute the case against CPT Daniels (even after his wife dropped the charges of Assault) and his Court Hearing is scheduled for 26 JAN 2009. His no-contact order (with his spouse) by both the County and 1-30th Field Artillery Cdr remain in effect.

3. POC for this headquarters is the undersigned at 442-4768.

CHRISTOPHER P. TALCOTT
LTC, FA
Commanding

**AR 15-6 Investigation**

**Table of Contents**

TAB 1:
- *DA Form 1574 Report of Proceedings by Investigating Officer*
- *Findings*
- *Recommendations*

TAB2:
- *Investigating Officer Appointment Orders*
- *Chronology*

TAB 3:
- *Exhibit 1: Statement of Mrs. Wendy Daniels*
- *Exhibit 2: Lawton Police Report (dated 20081126)*
- *Exhibit 3: Photographic Evidence*
- *Exhibit 4: Advise of Rights (Lawton Police Department)*
- *Exhibit 5: Recorded Statements from Mrs. Daniels and CPT Daniels (CD-R)*
- *Exhibit 6: Physical Evidence (Plastic Baton)*
- *Exhibit 7: Statement from Trial Defense Attorney (Invoking Article 31 rights)*
- *Exhibit 8: Interview questions for CPT Daniels (Not answered)*

# REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS

For use of this form, see AR 15-6; the proponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

## SECTION I - APPOINTMENT

Appointed by COL John S. Fant *(Appointing authority)*

on 24 November 2008 *(Date)* *(Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)*

## SECTION II - SESSIONS

The *(investigation) (board)* commenced at Fort Sill, OK *(Place)* at 0900 *(Time)*

on 26 November 2008 *(Date)* *(If a formal board met for more than one session, check here ☐. Indicate in an inclosure the time each session began and ended, the place, persons present and absent, and explanation of absences, if any.)* The following persons *(members, respondents, counsel)* were present: *(After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*

The following persons *(members, respondents, counsel)* were absent: *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*

The *(investigating officer) (board)* finished gathering/hearing evidence at ______ *(Time)* on ______ *(Date)*

and completed findings and recommendations at ______ *(Time)* on ______ *(Date)*

## SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO 1/ | NA 2/ |
|---|---|---|---|
| 1 Inclosures *(para 3-15, AR 15-6)* Are the following inclosed and numbered consecutively with Roman numerals: *(Attached in order listed)* | | | |
| a. The letter of appointment or a summary of oral appointment data? | X | | |
| b. Copy of notice to respondent, if any? *(See item 9, below)* | | | X |
| c. Other correspondence with respondent or counsel, if any? | X | | |
| d. All other written communications to or from the appointing authority? | X | | |
| e. Privacy Act Statements *(Certificate, if statement provided orally)*? | X | | |
| f. Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered *(e.g., absence of material witnesses)*? | | | X |
| g. Information as to sessions of a formal board not included on page 1 of this report? | | | X |
| h. Any other significant papers *(other than evidence)* relating to administrative aspects of the investigation or board? | | | X |

FOOTNOTES: 1/ *Explain all negative answers on an attached sheet.*
2/ *Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.*

| | | YES | NO 1/ | NA 2/ |
|---|---|---|---|---|
| 2 | Exhibits *(para 3-16, AR 15-6)* | | | |
| | *a.* Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | X | | |
| | *b.* Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | X | | |
| | *c.* Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | X | | |
| | *d.* Are copies, descriptions, or depictions *(if substituted for real or documentary evidence)* properly authenticated and is the location of the original evidence indicated? | X | | |
| | *e.* Are descriptions or diagrams included of locations visited by the investigating officer or board *(para 3-6b, AR 15-6)*? | | | X |
| | *f.* Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | X | | |
| | *g.* If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit *(para 3-16d, AR 15-6)*? | | | X |
| 3 | Was a quorum present when the board voted on findings and recommendations *(paras 4-1 and 5-2b, AR 15-6)*? | | | X |
| B. | COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS *(Chapter 5, AR 15-6)* | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment *(para 5-3b, AR 15-6)*? | | | |
| 5 | Was a quorum present at every session of the board *(para 5-2b, AR 15-6)*? | | | |
| 6 | Was each absence of any member properly excused *(para 5-2a, AR 15-6)*? | | | |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required *(para 3-1, AR 15-6)*? | | | |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence *(para 5-2d, AR 15-6)*? | | | |
| C. | COMPLETE ONLY IF RESPONDENT WAS DESIGNATED *(Section II, Chapter 5, AR 15-6)* | | | |
| 9 | Notice to respondents *(para 5-5, AR 15-6)*: | | | |
| | *a.* Is the method and date of delivery to the respondent indicated on each letter of notification? | | | |
| | *b.* Was the date of delivery at least five working days prior to the first session of the board? | | | |
| | *c.* Does each letter of notification indicate — | | | |
| | (1) the date, hour, and place of the first session of the board concerning that respondent? | | | |
| | (2) the matter to be investigated, including specific allegations against the respondent, if any? | | | |
| | (3) the respondent's rights with regard to counsel? | | | |
| | (4) the name and address of each witness expected to be called by the recorder? | | | |
| | (5) the respondent's rights to be present, present evidence, and call witnesses? | | | |
| | *d.* Was the respondent provided a copy of all unclassified documents in the case file? | | | |
| | *e.* If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | | | |
| 10 | If any respondent was designated after the proceedings began *(or otherwise was absent during part of the proceedings)*: | | | |
| | *a.* Was he properly notified *(para 5-5, AR 15-6)*? | | | |
| | *b.* Was record of proceedings and evidence received in his absence made available for examination by him and his counsel *(para 5-4c, AR 15-6)*? | | | |
| 11 | Counsel *(para 5-6, AR 15-6)*: | | | |
| | *a.* Was each respondent represented by counsel? | | | |
| | Name and business address of counsel: | | | |
| | | | | |
| | *(If counsel is a lawyer, check here ☐ )* | | | |
| | *b.* Was respondent's counsel present at all open sessions of the board relating to that respondent? | | | |
| | *c.* If military counsel was requested but not made available, is a copy *(or, if oral, a summary)* of the request and the action taken on it included in the report *(para 5-6b, AR 15-6)*? | | | |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality *(para 5-7, AR 15-6)*: | | | |
| | *a.* Was the challenge properly denied and by the appropriate officer? | | | |
| | *b.* Did each member successfully challenged cease to participate in the proceedings? | | | |
| 13 | Was the respondent given an opportunity to *(para 5-8a, AR 15-6)*: | | | |
| | *a.* Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | | | |
| | *b.* Examine and object to the introduction of real and documentary evidence, including written statements? | | | |
| | *c.* Object to the testimony of witnesses and cross-examine witnesses other than his own? | | | |
| | *d.* Call witnesses and otherwise introduce evidence? | | | |
| | *e.* Testify as a witness? | | | |
| | *f.* Make or have his counsel make a final statement or argument *(para 5-9, AR 15-6)*? | | | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses *(para 5-8b, AR 15-6)*? | | | |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it *(para 5-11, AR 15-6)*? | | | |

FOOTNOTES: *1/ Explain all negative answers on an attached sheet.*
*2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.*

**SECTION IV - FINDINGS** *(para 3-10, AR 15-6)*

The *(investigating officer) (board)* , having carefully considered the evidence, finds:

See attached memorandum

**SECTION V - RECOMMENDATIONS** *(para 3-11, AR 15-6)*

In view of the above findings, the *(investigating officer) (board)* recommends:

See attached memorandum

*Page 3 of 4 pages, DA Form 1574, Mar 1983*

APD PE v1.30

000762

**SECTION VI - AUTHENTICATION** *(para 3-17, AR 15-6)*

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)*

*(Recorder)* *(Investigating Officer) (President)*

*(Member)* *(Member)*

*(Member)* *(Member)*

**SECTION VII - MINORITY REPORT** *(para 3-13, AR 15-6)*

To the extent indicated in Inclosure __________, the undersigned do(es) not concur in the findings and recommendations of the board. *(In the Inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

*(Member)* *(Member)*

**SECTION VIII - ACTION BY APPOINTING AUTHORITY** *(para 2-3, AR 15-6)*

The findings and recommendations of the (investigating officer) (board) are (approved) (disapproved) (approved with following exceptions/ substitutions). *(If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

After reviewing the investigating officer's report and recommendations, I concur with recommending a General Officer reprimand for CPT Daniels. However, in light of his on-going counseling and medical treatment, I am convinced that him continuing to be active teaching is a good thing. I have seen no degradation in his performance and believe this "outlet" is a positive part for his treatment. So recommend he continue to work and train Lieutenants in BOLC III.

[signature] LTC, FA

 1ST BN, 30TH FA Regiment

Tara Brown

Redacted PII

Redacted PII cell

Redacted PII hm

(580) 357-7400 wk

truetooyou77@yahoo.com

true tooyou7773@yahoo.com

REDACT THIS ENTIRE PAGE

**SWORN STATEMENT**

For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| 1st - 30th FA HQs Ft. Sill OK | [illegible] | 1600 hrs | |
| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | | 7. GRADE/STATUS |
| Brown Tara M | Redacted PII | | Civilian |
| 8. ORGANIZATION OR ADDRESS | | | |

9. I, Tara M Brown, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

TB I met Captain Derrick Daniels on a website called [redacted] his email address is [redacted] (screenname). We talked a few and then started chatting on yahoo @ cyberlogue 9. We met [redacted]. We went out and [redacted]. Derrick initially told me that he was separated going through a divorce and he he lived at his address on [illegible] and his wife Wendy Daniels lived in the new residence. I did not find out he was still with his wife until I was relocating to Lawton, OK from Wichita Falls, Tx. We [redacted] when I moved to Lawton, OK. ~~He~~ Derrick would be at my residence [redacted] before PT, after ~~PT~~ during lunch and if he didn't have to be at work he would be at the house. [redacted]. TB

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 3 PAGES |
|---|---|---|
| | TB | TB |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ___ TAKEN AT ___ DATED ___

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

DA FORM 2823, NOV 2006 DA FORM 2823, DEC 1998, IS OBSOLETE APD V1.00

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF Tara Brown TAKEN AT 1-5th FA UAL DATED 20090107

9. STATEMENT (Continued)

TB Derrick let me know a few things about his past in October. He let me know about a relationship he had supposedly prior to ours with a young lady named [illegible]. He revealed that she had gotten pregnant and he took her to have an abortion. He mentioned several other affairs he had during his marriage. He informed me that if I was pregnant he would not leave nor make or ask me to have an abortion. He stated he loved me and that everything would be okay. I found out I was pregnant November 12, 2008. I informed Derrick, he acknowledged. Our relationship still continued physical we never stopped the relationship. My due date is July 4th 2009. TB

End of Statement

Q1- On or about what date did you and CPT Derrick Daniels become physical in your relationship?

A1- On or about the end of June. TB

Q2- When did you find out the CPT Daniels, Derrick was still married?

A2- I found out Capt Daniels was still married in Sept. TB

INITIALS OF PERSON MAKING STATEMENT TB

PAGE 2 OF 3 PAGES TB

DA FORM 2823, NOV 2006 APD V1.00

STATEMENT OF Tara Brown TAKEN AT 1-30th FA HQ DATED 20090107

9. STATEMENT (Continued)

Q3- Are you still seeing CPT Daniels?

A3- Our last physical contact was Dec 31st and I am not sure where things will go. TB

Q4- Does CPT Daniels know that you are pregnant? Is he the father?

Yes. ~~Yes~~ he knows I am pregnant. TB. Yes, he acknowledges he is the father, I have text messages from him stating so. TB.

Nothing follows

AFFIDAVIT

I, Tara Brown, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 3. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

[signature] Tara Brown
(Signature of Person Making Statement)

WITNESSES: [signature]

GEORDIE E. BEAL
1-30 FA FT SILL OK

ORGANIZATION OR ADDRESS

[signature]
Thomas P. Pinkston
1-30 FA Ft Sill OK

ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 7 day of JAN, 2009 at 1-30th FA HQ Ft. Sill OK 73503

[signature] 1LT, FA
(Signature of Person Administering Oath)

Christopher P. Tolbert
(Typed Name of Person Administering Oath)

(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT TB

PAGE 3 OF 3 PAGES



**DEPARTMENT OF THE ARMY**
Headquarters, 1st Battalion, 78th Field Artillery
428th Field Artillery Brigade
Fort Sill, Oklahoma 73503-6202
"TEAMWORK"

REPLY TO
ATTENTION OF:

ATSF-KL 15 December 2008

MEMORANDUM FOR RECORD

SUBJECT: AR 15-6 Investigation Report of Findings and Recommendations

1. The following is a report of findings and recommendations by AR 15-6 Investigating Officer, MAJ Christopher D. Compton, assigned to conduct a formal investigation into the facts and circumstances surrounding allegations that CPT Derrick T. Daniels (Senior Instructor/Writer, A Btry, 1-30 FA) assaulted his wife in a domestic dispute and caused injuries while fighting on Sunday, 16 November 2008.

2. I, MAJ Christopher D. Compton, do certify that I have conducted an investigation regarding the facts and circumstances of the allegations against CPT Daniels. I also certify that this report addresses the following requirements directed to me by the appointing authority, COL John S. Fant:

a. Whether there was a violation of Army Regulation or any article governed by the Uniform Code of Military Justice (UCMJ).

b. Whether CPT Daniels is in violation of any civil law outside of military jurisdiction.

c. Recommendations as to what to do in order to prevent this incident from occurring in the future.

d. Recommendations of appropriate actions consistent with my findings.

3. Findings.

a. CPT Daniels violated Article 128 Assault, Article 134 Adultery, and Article 133 Conduct Unbecoming an Officer and a Gentlemen.

1. *Violation of Article 128 Assault is substantiated*: I find that CPT Daniels did commit assault by intentionally inflicting bodily harm to his wife, Mrs. Wendy Daniels, on the evening of 16 November 2008. According to statements given to Detective Roberto Peralta of the Lawton Police Department (LPD) by both CPT Daniels and his wife, CPT Daniels did strike his wife in anger during a fight that occurred in their home on 16 November 2008 (see Exhibit 5). In a verbal statement to Detective Peralta, Mrs. Daniels described the incident and stated that her husband struck her and shoved her multiple times during the fight and also used a hard plastic baton (see Exhibit 6) to strike her in anger on her head. Mrs. Daniels described the incident in a manner consistent with her verbal statement in a written sworn statement to MAJ Compton during an interview on 12 December 2008 (see Exhibit 1). CPT Daniels also admitted to striking his wife in anger with the plastic baton during a verbal statement recorded by Detective Peralta (see Exhibit 5). CPT Daniels declined to make a written or verbal statement to MAJ Compton (see Exhibits 7, 8). Photographic evidence from Mrs. Daniels' visit to the emergency room at

Reynolds Army Community Hospital on 21 November 2008 reveals bruises sustained to Mrs. Daniels during the fight with her husband (see Exhibit 3). CPT Daniels' inappropriate sexual relationships with other women caused the fight between CPT and Mrs. Daniels. Both parties confirm this in their verbal statements to Detective Peralta (see Exhibit 5) and Mrs. Daniels reiterated it in her written statement (see Exhibit 1).

2. *Violation of Article 134 Adultery is substantiated.* I find that CPT Daniels did, by his own admission, wrongfully have sexually active relationships with other women while he was married at the time. In a verbal statement to Detective Peralta (see Exhibit 5), CPT Daniels admitted to having "sexually active" relationships with other women. CPT Daniels also stated that his wife possessed physical evidence consisting of email and photos that contained content confirming her suspicion that he was having adulterous affairs with other women. Mrs. Daniels declined to provide copies of the photos and emails to the Investigating Officer, but did agree to mention two women that she believes were sexually involved with her husband in a phone conversation with the Investigating Officer. Mrs. Daniels declined to include the following information regarding her husband's adulterous relationships in her sworn statement: Mrs. Daniels stated that she had phone and email contact with Ms. Tara Brown who admitted to having an adulterous relationship with CPT Daniels. During the course of their correspondence Ms. Brown told Mrs. Daniels about another woman with whom CPT Daniels had been sexually involved. Mrs. Daniels referred to her as "Tanisha" but did not know a last name. Mrs. Daniels stated that her husband allegedly impregnated Tanisha while the woman's husband was serving in Iraq and made arrangements for her to get an abortion in Oklahoma City. Again, CPT Daniels declined to make a statement to the Investigating Officer. While no physical evidence is available to confirm these allegations against CPT Daniels, his admission of guilt is sufficient evidence to substantiate the violation of Article 134, in my opinion.

3. *Violation of Article 133 Conduct Unbecoming an Officer and Gentleman is substantiated.* Given that CPT Daniels did violate both Articles 128 and 134 as stated in the paragraphs above, it is clear that he acted in a dishonorable manner and compromised his character as an officer and a gentleman. The Manual for Courts Martial clearly states that an officer who violates other articles of the UCMJ also violates this article.

b. Other findings that affect the Investigation Officer's conclusions.

1. *CPT Daniels does have a history of mental health problems and has been seeking help.* According to Mrs. Daniels sworn statement (see Exhibit 1), CPT Daniels behavior changed significantly after he returned from a deployment to Iraq in the spring of 2008. She stated that he heavily drank and often became angry. Mrs. Daniels asked him to seek help with mental health physicians, which he did in July 2008. She stated that he was referred to the ASAP program. I attempted to ask CPT Daniels about his involvement with CMHS but he declined to comment (see Exhibit 7, 8)

2. *Mrs. Daniels no longer feels her husband is a threat.* In her verbal statement to Detective Peralta (see Exhibit 5), Mrs. Daniels stated that she felt her life was in danger because of the threats made against her by her husband. She stated that he made remarks that referenced using his gun to kill her during their fight on 16 November. However, in her written sworn statement (see Exhibit 1) she stated that she no longer feels threatened and took steps to lift the civilian protective order that was put in place following the incident. A "No Contact Order" remains in place by the authority of the Battalion Commander.

4. Recommendations.

a. CPT Daniels should receive a General Officer Memorandum of Reprimand (GOMOR) for violating Articles 128, 133, and 134 of the UCMJ.

b. CPT Daniels should be immediately removed from any duties involving officer instruction and reassigned to a position of lesser influence.

c. CPT Daniels should continue to seek professional help through CMHS, Family Advocacy, and the Chapel including anger management and marriage counseling.

d. Because Mrs. Daniels no longer feels threatened by her husband (see Exhibit 1) and the civilian protective order has already been removed, I recommend lifting the no contact order between CPT Daniels and his wife.

5. The point of contact for this memorandum is the Investigating Officer, MAJ Christopher D. Compton, at 442.6426 or christopher.compton@conus.army.mil.

CHRISTOPHER D. COMPTON
MAJ, FA
AR 15-6 Investigating Officer

## SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| BLDG 6007, FORT SILL, OK | 20081202 | | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| DANIELS, WENDY LAVELL | Redacted PII | CIV |

8. ORGANIZATION OR ADDRESS

Redacted PII

9.

I, Wendy Daniels, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

1. Did an altercation take place in your home with your husband on Sunday, 16 Nov.? [initials]
Yes WD

2. Describe what took place during that altercation. [initials]
Basically My husband Derrick was in bed... as I went to
give him a kiss. I could smell sex ~~[struck]~~ around his mouth
area. Prior to this night I had suspicions because of emails (his)
that I read. Therefor I began to question him about
the smell and my suspicions. Finally he admitted to both. I
was so angry ~~[struck]~~ I then slapped him. After I slapped him
he basically lost his temper and started to hit me.
In the midst of the fight he picked up a plastic bottom and
hit me. ~~[struck]~~ WD

3. Did you receive injuries from your husband? [initials] Yes, scratches to my neck
from being (choked) Bruises on my arm and leg. And ~~[struck]~~ some soreness to
my neck and head. WD

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 4 PAGES |
|---|---|---|
| 1 | WD | |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ______ TAKEN AT ______ DATED ______

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

DA FORM 2823, NOV 2006 DA FORM 2823, DEC 1998, IS OBSOLETE APD PE v1.00

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF Wendy Daniels TAKEN AT Fort Sill DATED 2 Dec 08

9. STATEMENT (Continued)

4. As you stated previously, your husband admitted to commiting adultery. What do you know about his relationship(s) with other women? [?]A From what I learned from Derrick after the fight is that he met this young lady online. He explained that he's felt lost and was searching for simple pleasures in the wrong places. I took it to mean that it was a "sex thing." Something that gave him short pleasure ~~for a sh~~ because didn't find pleasure in "anything" anymore. Explained that once he came back from Iraq that nothing was going the way he wanted as far as his duties in the military or anything else, meaning his relationship with his family and in his marriage. WD

5. You stated in ~~an~~ statement to Detective Perolta that you spoke to a woman who your husband had a sexual relationship with. What information did you receive from her concerning your husband's infidelity? [?]A She expressed or explained that she knew that my husband had gotten a young lady pregnant and that this young lady was married to a soldier who apparently was in iraq at the time. She said he told her the he had taken her to get an abortion. WD

6. Does your husband have a history of violence or infidelity over the course of your marriage? [?]A My husband has never been violent toward me over the course of our marriage. We've been married 4½ yrs, he has gone to Iraq twice. the 1st time he went to Iraq and returned, I had no issues with violence nor infidelity. However we did have counseling. "Re-integration" that was coordinated to include the family members. Marriage retreats through the military and Help through the Battalion's chaplain. This time Derrick returned home a totally different person. Therefore I feel that because there wasn't any immediate re-integration that included the family and we were living in separate places didn't help what issues he may have had at the time. WD

INITIALS OF PERSON MAKING STATEMENT WD

PAGE 2 OF 4 PAGES

DA FORM 2823, NOV 2006 APD PE v1.00

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF Wendy Daniels TAKEN AT Fort Sill DATED 2 Dec 08

9. STATEMENT (Continued)

7. Has your husband received any treatment for his different behavior following the
most recent deployment? If so, what treatment and when? A: Yes he has and still
is. A year prior to his return back from Iraq (which he was stationed
in Germany) I had moved back to Lawton to Finish College. He
of course was stationed here at Ft Sill 6mths later. Although
I could see a difference in him after his return, I could
diffinately see more of a difference was we were re-united in
the Same household. Derrick's routine was drink alcohol from
sun up to sun down which would sometimes cause him
to become more angry. After a coupl incedents of breaking
things in the house I advised him to seek mental help.
He started to seek Mental Health treatments around the last part of
June or maybe the 1st week of July. Mental Health refered him
to go to ASAP and do AA meetings. WD

8. You told Detective Perolta on 21 Nov that you feared for your safety and did not
want to have any contact with your husband. Is this still true? A: This
is not still true. I feared for my life because I had never gone
through anything of this fashion with my husband before. It was a very
scary feeling to see the expressions on his face at during the time of
his anger. However, Derrick expressed how torn he felt for doing
what he did the same night it happened but at that point I
was just unsure of what could happen next. Also because I've been
with Derrick for so long (dated 7yrs prior to marriage) I am totally aware
of the man he was before, fun, loving, and caring. He sent a message
to me through a mutual friend asking, "if he turn his life over
to God and is able to prove that he could be a better man, the man
that he was before would I take him back?" I sent a message back
saying that he needed to show me by making the first step and rejoin
our old Church. Our friend called and told me that indeed this past
Sunday he rejoined the churched and that he seemed very sincere
and looked like he was going to stick to his word. In that information
I feel that my safety is no longer an issue. WD

INITIALS OF PERSON MAKING STATEMENT WD

PAGE 3 OF 4 PAGES

DA FORM 2823, NOV 2006 APD PE v1.00

STATEMENT OF Wendy Daniels TAKEN AT Fort Sill DATED 2 Dec 08

9. STATEMENT (Continued)

9. Was this contact described in the last question the only contact of any form you have had since the incident? WD Yes WD

10. Why did you decide to remove the protective order and drop the charges of assault against your husband? WD Mainly because of ~~my~~ what I described in Question 8. WD

11. Do you have anything else to say in this statement? WD I know that Derrick has infact broken rules (UCMJ) However I do believe that the ~~any~~ majority of his issues resulted from what he endured over in Iraq. In a small way I feel that the military failed at providing the proper help that he may have needed which could have helped him to cope better after is return. He did take command twice while there and I get a sense that ~~[illegible]~~ He just didn't know how to deal with his issues and was afraid to ask for the help he needed. Not saying the military or Iraq is to blame but I do feel a lot of what happened resulted from his last tour in Iraq. Derrick is a great Guy and has been a great Soldier and I believe he has served his Country and Army well. WD WD

WD

WD

WD NOTHING FOLLOWS

WD

AFFIDAVIT

I, Wendy Daniels, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 4. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

[signature]
(Signature of Person Making Statement)

WITNESSES:

ORGANIZATION OR ADDRESS

ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 2 day of Dec, 2008 at Bldg 6007, Fort Sill, OK

(Signature of Person Administering Oath)

MAJ Christopher D. Compton
(Typed Name of Person Administering Oath)

[signature]
(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT

PAGE 4 OF 4 PAGES

DA FORM 2823, NOV 2006 APD PE v1.00

Prepared By: 5605
Prepared Date: 11/26/2008

PAGE1

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

*INCIDENT INFORMATION*

Date Reported: 11/21/2008 Time: 0230
Report Officer: 4226 (POLLARD, JEFFERY ALLEN)
Approval Officer: 0700 (CARTER, ERIC MATTHEW)
Invest Officer: 5605 (PERALTA, ROBERTO)
Date Occurred: 11/17/2008 Time: 2100
Location: 5303 SW TYLER Pref: Apt:
City: LAWTON State: OK Zip: 73501-
Latest Poss Date: 11/17/2008 Time: 2200
Rpt District: 32 Beat: 12 Shift: 1
Command Area: 01
Damage Prop: Stolen Property: Stolen Vehicle:
Disposition: REFERRED TO OTHER AGENCY Disposition Date: 11/24/2008

*OFFENSES*

Offense: S21-644.C (ASSAULT/BATTERY ON A SPOUSE)
IBR Code: 01 Att/Comp: C UCR: 0430 UCR Arson:

*VICTIM*

Name Type: VICTIM Name: DANIELS, WENDY L
Address: Redacted PII
Bldg: Apt #:
Phone: Redacted PII SSN: Redacted PII DOB: Redacted PII Sex: F Race: B
DL Number: Redacted PII State: OK Hgt: 5'07 Wgt: 230 Hair: BLK Eyes: BRO
Employer: Phone:
Emp Addr: ,
Bldg: Apt #:

*SUSPECT*

Name Type: SUSPECT Name: DANIELS, DERRICK TORAINO
Address: Redacted PII
Bldg: Apt #:
Phone: Redacted PII SSN: Redacted PII DOB: Redacted PII Sex: M Race: B
DL Number: State: Hgt: 5'09 Wgt: 194 Hair: BLK Eyes: BRO
Employer: US ARMY Phone: Redacted PII
Emp Addr: ,
Bldg: Apt #:

*CASE*

Received Status: OPEN INVESTIGATION Date Assigned: 11/24/2008
Current Status: REFERRED TO OTHER AGENCY Scheduled Review:
Investigators: PERALTA, ROBERTO
Supervisor: LAFRANCE, LAWRENCE R Date Reassigned:

EXHIBIT 2

Prepared By: 5605
Prepared Date: 11/26/2008

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

Police Action: FOLLOW UP APPROVED
Police Reason:
Prosecutor Action:
Reason Rejected:
Final Disposition:

Date Pol Action: 11/24/2008

Date Pros Action:
Date Reactivated:

***NARRATIVE***

On 11-21-08 at approx 0213 hrs, Officer Pollard was dispatched on a domestic abuse call that happened Monday 11-17-08 at approx 2100-2200 hrs. Pollard met Wendy Daniels at Reynolds Army Hospital who said her husband Derrick Daniels attacked her. Wendy said she and Derrick were arguing over Derricks infidelity when Derrick began pushing Wendy and then grabbed a police type thick plastic baton and hit Wendy over the left side of her head. Wendy said she almost became unconscious. Wendy said she went to the ground and Derrick began dragging her across the ground. Wendy sought medical treatment at Reynolds, she signed to press charges was given a witness complaint form and domestic abuse sheet. Wendy was told to follow up at the county courthouse.

Lawton Police records ran a triple I of Derrick Daniels for prior domestic abuse and his records was clear. Pictures was taken of the injuries by Officer Carter.

SW-7000

***CASE MGMT NARRATIVE***

Reference Case 2008-12244, Victim Wendy Daniels, Domestic Abuse and AWDW

On 11-21-2008, Det. Peralta was assigned this case and he immediately went Reynolds Army Hospital to make contact with Mrs. Wendy Daniels however she was discharged prior to my arrival, and she was located at the Fort Sill Advocacy office. I them made contact with Mrs. Daniels and she stated that it was on Sunday and not Monday as previously reported that she was assaulted by her husband. Mrs. Daniels stated that she reached over to give her husband a good night kiss when she smelled another women vagina on his face. Mrs. Daniels awoke her husband Mr. Derrick Daniels and he admitted to be having an affair. Mrs. Daniels then got upset and slapped her husband in the face, and a physical altercation ensued. Mrs. Daniels was showing Mr. Daniels some of the e-mails that she had found on the computer when he got upset and lost his cool and hit Mrs. Daniels several times with a plastic Baton. I then made contact with Mr. Daniels at his battalion headquarters where LTC Talcott assisted us and provided a room to interview Mr. Daniels. Mr. Daniels who is an active duty Captain in the US Army stated after his Miranda warning rights were read that he and his wife are having problems, and that he did lose his cool and assaulted his wife. Mr. Daniels also stated that he has been having an affair with several other women and his wife "Wendy", is a good women but that he need some time apart. During this investigation I was accompanied by Special Agent David L. Spiegel from the Fort Sill Criminal Investigation Command. Mrs. April Plumley also assisted from the Family advocacy office on Fort Sill. LTC Talcott who is the Battalion Commander from Captain Daniels command stated that he will place a military protective order on Captain Daniel restraining him from visiting his wife. Mrs. Daniels then came to the Lawton Police Department with Mrs. Plumley and was given a citizens statement and instructed on how to

Prepared By: 5605
Prepared Date: 11/26/2008

LAWTON POLICE DEPARTMENT
Offense Report
INCIDENT NUMBER: 200812244-00

fill it out, and Mrs. Plumley informed me that she escorted Mrs. Daniels to the Comanche County court house and obtained a protective order issued by the judge. This case is a referred to other agency code 62, Detective Roberto Peralta 221/5605, 11-21-2008.
lrl#41

REVIEWED by POLLARD, JEFFERY ALLEN

APPROVED by CARTER, ERIC MATTHEW

# ADVISE OF RIGHTS

POB Redacted PII

**PERSON INTERVIEWED:**

NAME: Derrick Toriano Daniels SSN: Redacted PII Redacted PII

EDUCATION LEVEL: 18 yr ENGLISH LANGUAGE: ✓ YES ___ NO

**INTERVIEW:**

LOCATION: Fort Sill DATE: 11-21-2008

INTERVIEWER: Det. Peralta TIME: 0935 hrs

**YOUR RIGHTS**

DTD ✓ You have the right to remain silent.

DTD ✓ Anything you say can and will be used against you in court.

DTD ✓ You have the right to talk to a lawyer and have him present with you while you are being questioned.

DTD ✓ If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if You wish one.

DTD ✓ If you decide to make a statement, you may stop at any time.

**WAIVER OF RIGHTS**

Do you understand each of the rights I have explained to you? Yes DTD ✓ No ______

Having these rights in mind, do you wish to talk to us now? Yes DTD ✓ No ______

Witness: [signature] Signature: X [signature]

SSN: Redacted PII

Witness: ______ Interviewer: Det. [signature]

SSN: ______ Offense No.: 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

EXHIBIT 4

**Compton, Christopher D MAJ MIL USA TRADOC**

---

**Subject:** FW: Investigation (UNCLASSIFIED)

From: Kees, Duane A CPT MIL USA USARPAC
Sent: Thursday, December 11, 2008 2:47 PM
To: Compton, Christopher D MAJ MIL USA TRADOC
Subject: RE: Investigation (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Sir:

After speaking with CPT Daniels on more that one occasion regarding the events in question and CPT Daniels has decided to assert his Article 31 Rights.

I do apologize for the inconvenience.

Please use this communication as evidence of CPT Daniels assertion of his Article 31 Rights.

Thank you.

CPT Kees







3
4
5
6
7
8
9
10
11





000782





000783



000784

US ARMY ADVANCED EDUCATION FINANCIAL ASSISTANCE RECORD
FOR USE OF THIS FORM, SEE DA CIR 600-87-1; THE PROPONENT IS DCSPER.

EDUCATIONAL PROGRAM ACCOUNTANT
US ARMY CADET COMMAND

SECTION A - General Data (mandatory completion for all educational programs)

1. NAME OF STUDENT: DANIELS, DERRICK T
2. Social Security #: Redacted PII
3. RANK: N/A
4. Ed Program: SROTC
5. SM CMF/Branch:
6. Date Svc Oblig Begins: 12/12/1998
7. Date Svc Oblig Ends: 12/09/2006
8. Total Amt ($) Ed Asst: See Table
9. Host FICE: 001566
10. Name of Civ or Mil School: FORT VALLEY STATE UNIVERSITY

SECTION B - School/Scholarship Data (Completed on SROTC students only)

11. School Attended Code: 001544
12. School Attended Name: ALBANY STATE UNIVERSITY
13. Scholarship Type: 4 Year
14. Contract Date: 11/10/1994
15. Acad Major: BAX
16. School Term: Semester

SECTION C - Education Assistance Payment Data

| LINE | Date of Payment (A) | DOV # (B) | DSSN (C) | MS Class Enrld (D) | Tuition-Fees/Room-Board Books Supplies (E/F) | TDY Cost (G) | Thes/Diss or Misc (H) | Refund/ Adjust (I) | School Term (J) | Line Total (K) |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 950118 | 220776 | 5072 | 1 | $606.00 | | | $0.00 | FL 1994 | $606.00 |
| 2 | 941222 | 941222 | 5072 | 1 | $150.00 | | | $0.00 | FL 1994 | $150.00 |
| 3 | 950518 | 240727 | 5072 | 1 | $606.00 | | | $0.00 | SP 1995 | $606.00 |
| 4 | 950323 | 950323 | 5072 | 1 | $150.00 | | | $0.00 | SP 1995 | $150.00 |
| 5 | 951211 | 209889 | 5072 | 2 | $633.00 | | | $0.00 | FL 1995 | $633.00 |
| 6 | 941223 | 941223 | 5072 | 2 | $150.00 | | | $0.00 | FL 1995 | $150.00 |
| 7 | 950428 | 237329 | 5072 | 2 | $606.00 | | | $0.00 | WR 1995 | $606.00 |
| 8 | 960110 | 960110 | 5072 | 2 | $150.00 | | | $0.00 | WR 1995 | $150.00 |
| 9 | 960621 | 229008 | 5072 | 2 | $633.00 | | | $0.00 | SP 1996 | $633.00 |
| 10 | 960329 | 960329 | 5072 | 2 | $150.00 | | | $0.00 | SP 1996 | $150.00 |
| 11 | 960401 | 220806 | 5072 | 3 | $633.00 | | | $0.00 | FL 1996 | $633.00 |
| 12 | 960922 | 960922 | 5072 | 3 | $150.00 | | | $0.00 | FL 1996 | $150.00 |
| 13 | 970324 | 215888 | 5072 | 3 | $668.00 | | | $0.00 | WR 1996 | $668.00 |
| 14 | 961222 | 961222 | 5072 | 3 | $150.00 | | | $0.00 | WR 1996 | $150.00 |
| 15 | 970605 | 222569 | 5072 | 3 | $668.00 | | | $0.00 | SP 1997 | $668.00 |
| 16 | 970422 | 970422 | 5072 | 3 | $150.00 | | | $0.00 | SP 1997 | $150.00 |
| 17 | 970922 | 970922 | 5072 | 4 | $150.00 | | | $0.00 | FL 1997 | $150.00 |
| 18 | 980122 | 980122 | 5072 | 4 | $150.00 | | | $0.00 | WR 1997 | $150.00 |
| 19 | 980223 | 213103 | 5072 | 4 | $708.00 | | | $0.00 | SP 1998 | $708.00 |
| 20 | 980322 | 980322 | 5072 | 4 | $150.00 | | | $0.00 | SP 1998 | $150.00 |
| | | | | | | | | | Total Army ROTC Scholarship Benefits Paid | $7,411.00 |

As Of: 09/22/2011 from records of Pay Operations Division, HQ's CC

(ATCC-RP) Fort Monroe, VA 23651-1070 (COM) 757-788-2568/2573/3679 OR (DSN) 680-2568/2573/3679

Certified Correct: Marcie V. McChesney 22 Sept 2011

Accession Order Number: Accession Date:

NOTE: This document must be filed as follows:

A. Officers - Official master personnel file (OMPF) on service fiche and Officer Record Brief.

B. Enlisted - Official personnel record and DA Form 2-1 (Permanent Entry)

Auth: Para 8A(4) DA CIRC 600-87-1 as modified by message DAPE-MBB-C/DAPC-PDO 211500Z JUNE 89.

Admitted

**DEPARTMENT OF THE ARMY**
TRIAL DEFENSE SERVICE, REGION SOUTHEAST
37 NORTH SCHMIDT STREET, SUITE 100
HUNTER ARMY AIRFIELD, GA 31409

REPLY TO ATTENTION OF

AFZP-JA-TDS

18 April 2012

MEMORANDUM FOR Board President, Board of Inquiry – Captain Derrick T. Daniels, Redacted PII Redacted PII 1-306th Infantry Regiment, 188th Infantry Brigade, Fort Stewart, Georgia, 31314

SUBJECT: Objections: Missing Discovery and Failure to Timely Provide Access to Witnesses

1. The following illustrates the Recorder's failure to promptly provide both access to witnesses and evidence promised by AR 600-8-24:

a. AR 15-6 investigation. The government waited until 11 April 2012 to request the AR 15-6 investigation in this case, and did not supply it to the Respondent until after COB on 12 April 2012, almost two weeks after Respondent filed a Request for Discovery. (Enclosures 1-3).

b. Recording. Now that, as of 2000 hours on 17 April 2012, the Defense had the opportunity to speak with the government's witness, Det Peralta, the Defense is positive a recording of an interview with Respondent exists. Had Det. Peralta been contacted at the time of the Defense request for discovery, the Defense has no doubt Det. Peralta would have been able to supply a copy of the recording without delaying the board. Respondent has reason to believe that this recording contain exculpatory material. Whether they do or not, to permit witnesses to comment on their contents without production of the contents and the opportunity to study their contents prevents the Respondent from fully developing a defense and cross-examination regarding the contents, as the witnesses, four years after the fact, may only remember the allegedly inculpatory contents. In lieu of delay, and due to government delay, this remedy is appropriate because of the manner in which the Respondent's case has been limited. AR 600-8-24 requires the government to allow Respondent access to records reasonably necessary to prepare his case. para. 4-9. The government has utterly failed to produce the recording, which was apparently releasable to the unit as it is referenced by the AR 15-6 investigation. Respondent has and had no objection to consideration of the remainder of the AR 15-6 investigation by the board. The remainder of the Defense argument in this vein is contained in an attachment of the original memorandum requesting this remedy, filed on 12 April 2012, attached as Enclosure 4. The board president's denial of this request is attached as Enclosure 5 to this memorandum.

c. Government witnesses. Until 1630 hours on 17 April 2012, the government failed to provide contact information and make government witnesses available to the Defense for pre-hearing interviews and board preparation. Per AR 600-8-24, para 4-11, Respondent is entitled to reasonable time to prepare his case, which includes access to those witnesses who intend to present evidence against him. Less than twenty-four hours prior to the board is hardly a "reasonable time." (Enclosures 6-7).

d. Additional evidence. The Defense objects to admission or consideration of any additional evidence not previously noticed or provided to the Respondent for review and preparation. (Enclosure 8).

DEF Exh. #1

AFZP-JA-TDS
SUBJECT: SUBJECT: Objections: Missing Discovery and Failure to Timely Provide Access to Witnesses

2. I certify that on 18 April 2012 the foregoing Objections were served on Recorder, OSJA, and the President, COL Cardinale. I request that this document and its six enclosures be included in the record and forwarded for any disposition of this matter.

SARAH J. RYKOWSKI
CPT, JA
Defense Counsel

Enc(6):
1. Requests for Discovery
2. Email traffic (AR 15-6)
3. Recorder's Response (Discovery)
4. Reply to Recorder's Response (recording)
5. Board President's Ruling (recording)
6. Email traffic (witnesses)
7. Board President's Ruling (Evidence)
8. Email traffic (additional evidence)

C. DERRICK T. DANIELS: BOARD OF . ..QUIRY
OBJECTIONS

# ENCLOSURE 1

000789



DEPARTMENT OF THE ARMY
TRIAL DEFENSE SERVICE, REGION SOUTHEAST
57 NORTH SCHMIDT STREET, SUITE 100
HUNTER ARMY AIRFIELD, GA 31409

REPLY TO
ATTENTION OF

AFZP-JA-TDS 3 April 2012

MEMORANDUM FOR Recorder, Board of Inquiry – Captain Derrick T. Daniels, Redacted PII
Redacted PII 1-306th Infantry Regiment, 188th Infantry Brigade, Fort Stewart, Georgia 31314

SUBJECT: Respondent's Discovery Request

1. The Respondent, through counsel, requests that the Recorder/Government produce the following:

a. All documents that will be sent to the separation authority supporting the proposed separation. Authority: AR 600-8-24, para 4-9(d)(2).

b. Any and all laboratory documents generated by any testing laboratory which conducted any testing or analysis of any kind in this case. Authority: AR 600-8-24, paras. 4-9(d)(2) and 4-12(e).

c. A complete copy of the case file, including all statements, affidavits and depositions of witnesses unable to appear in person at the board hearing. Authority: AR 600-8-24, paras. 2-9(d)(2) and 4-12(e); AR 15-6, para. 5-5.

d. Any and all documentary and real evidence the Recorder intends to introduce at the board proceeding, including written statements. Authority: AR 15-6, para. 5-8b.

e. A legible copy of the elimination notification and all accompanying documents, including recommendations by intermediate commanders making disposition recommendations.

f. Orders convening the board. This should include a list of the board members and alternate members.

g. The Convening Authority's memorandum directing referral of this chapter to the board.

h. The name, unit/address, and phone number of all witnesses the government intends to call in all phases of the hearing.

i. A copy of the Respondent's OMPF.

k. Copies of any and all documentary evidence the government intends to introduce in all phases of the hearing.

l. Any questionnaires completed by board members.

m. Copies of any prior statements made by any government witness. If a witness made oral statements, the defense requests notice of the content of the statements.

n. Copies of all scientific reports in the government's possession relating to the Respondent.

o. The curriculum vitae of any expert witness the government intends to call.

p. Copies of any and all reports of investigation (MP, MPI, CID, IG, AR 15-6, or R.C.M. 303) relating to the Respondent.

q. Any and all evidence which may negate the guilt of the Respondent, reduce the guilt of the Respondent, or reduce the likelihood of discharge or a less than honorable discharge, whether in the personal possession, custody or control of the Recorder or of other military authorities. This request includes the disclosure of any and all evidence affecting the credibility of government witnesses.

r. Any and all records of prior civilian or court-martial convictions, non-judicial punishment, and reprimands of the Respondent, if any, which may be offered for any purpose, including the merits of separation, impeachment of any witness, or for characterization of service.

s. The counseling file of the Respondent.

t. The counseling file of any witnesses the Recorder or Board intends to call.

2. This request for production of documents is a continuing request - (i.e., if subsequent documents become available to the Recorder/Government after receipt of this memorandum then Respondent and Respondent's Counsel also request production of those documents). In addition, Respondent and Respondent's Counsel requests notification within 3 days of any and all information provided which the Recorder/Government does not intend to produce.

I certify that on 3 April 2012 the foregoing Respondent's Discovery Request was served on Recorder, OSJA.

SARAH J. RYKOWSKI
CPT, JA
Defense Counsel



DEPARTMENT OF THE ARMY
TRIAL DEFENSE SERVICE, REGION SOUTHEAST
37 NORTH SCHMIDT STREET, SUITE 100
HUNTER ARMY AIRFIELD, GA 31409

REPLY TO
ATTENTION OF

AFZP-JA-TDS 12 April 2012

MEMORANDUM FOR Recorder, Board of Inquiry – Captain Derrick T. Daniels, Redacted PII Redacted PII 1-306th Infantry Regiment, 188th Infantry Brigade, Fort Stewart, Georgia, 31314

SUBJECT: Respondent's Supplemental Request for Discovery

1. The Respondent, through counsel, requests that the Recorder/Government produce the following evidence: The AR 15-6 investigation provided to the Defense late on 11 April 2012 references recordings of interviews of CPT and Ms. Daniels. No recordings have yet been provided. The Defense requires the opportunity to review these recordings if the board intends to consider the 15-6 investigation. These recordings contain exculpatory information necessary for the Defense to prepare to defend Respondent. Should these recordings not be provided, the Defense asks the Board president to limit the testimony of witnesses and not allow testimony or evidence regarding the content of these recordings, without first permitting the Defense to review the recordings and otherwise have a fair opportunity to rebut any allegations made about them, as well as present any exculpatory material within the recordings.

2. I certify that on 12 April 2012 the foregoing amended Respondent's Request for Discovery was served on Recorder, OSJA, and the President, COL Cardinale. I request that this document be included in the record and forwarded for any disposition of this matter.

SARAH J. RYKOWSKI
CPT, JA
Defense Counsel

*C[illegible] DERRICK T. DANIELS: BOARD OF [illegible]QUIRY*
OBJECTIONS

# ENCLOSURE 2

000793

Subject: Re: CPT Daniels Recordings (UNCLASSIFIED)
To: "Chard, Todd M CPT MIL USA FORSCOM" <todd.chard@us.army.mil>, "Rykowski, Sarah J CPT MIL USA IMCOM" <sarah.rykowski@us.army.mil>
Cc: "Presson, Amanda G CPT MIL USA FORSCOM" <amanda.g.presson@us.army.mil>, "Cardinale, Douglas C COL MIL USA FORSCOM" <douglas.cardinale@us.army.mil>, "'Betancourtnieves, Xiara G CPL USARMY (US)'" <x.betancourtnieves@us.army.mil>, "'Gomezmartinez, Victoria G SSG USARMY (US)'" <victoria.gomez@us.army.mil>, "'Castorina, Susan A MAJ USARMY (US)'" <susan.a.castorina@us.army.mil>

Date: 04/14/12 21:18
From: Sarah Rykowski <sonnydee79@yahoo.com>

---

CPT Chard,

Have you inquired as to whether the law enforcement witness or his agency has the recording? As I understand it, they are the ones who took the recording. As I have not yet been successful in reaching this witness, I have not been able to make such an inquiry.

I have still not managed to get in touch with most of your witnesses. Please ensure they are available on Monday or Tuesday at the numbers you have supplied, and if they are not going to be available at these numbers, please provide numbers where they will be available.

In addition, I would appreciate it if you would let me know if you no longer intend to call certain witnesses. This will save time in preparation.

v/r,

CPT Rykowski

---

From: "Chard, Todd M CPT MIL USA FORSCOM" <todd.chard@us.army.mil>
To: "Rykowski, Sarah J CPT MIL USA IMCOM" <sarah.rykowski@us.army.mil>; sonnydee79@yahoo.com
Cc: "Presson, Amanda G CPT MIL USA FORSCOM" <amanda.g.presson@us.army.mil>; "Cardinale, Douglas C COL MIL USA FORSCOM" <Douglas.Cardinale@us.army.mil>; "'Betancourtnieves, Xiara G CPL USARMY (US)'" <x.betancourtnieves@us.army.mil>; "'Gomezmartinez, Victoria G SSG USARMY (US)'" <victoria.gomez@us.army.mil>; "'Castorina, Susan A MAJ USARMY (US)'" <susan.a.castorina@us.army.mil>
Sent: Friday, April 13, 2012 8:15 PM
Subject: CPT Daniels Recordings (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

CPT Rykowski,

Please see the email below. The Fort Sill OSJA, as well as the IO no longer have the recordings on file.

Respectfully,

Todd Chard
CPT, JA
Trial Counsel
Special Assistant US Attorney
Ph: (912) 767-6585
Cell: (518) 334-0064
Fx: (912) 767-9105
Email: todd.chard@conus.army.mil

-----Original Message-----
From: Bain, David A SPC USARMY (US) [mailto:david.a.bain2.mil@mail.mil]

Sent: Friday, April 13, 2012 10:22 AM
To: Chard, Todd M CPT USARMY (US)
Subject: RE: Daniels (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

CPT Chard,
Sir,

No we do not have any recordings on the file. Sorry.

V/R,
SPC Bain, David A.
Paralegal Specialist
Criminal Law Division, Fort Sill, OK
Office of the Staff Judge Advocate
(580)442-3900
EMAIL: david.a.bain2.mil@mail.mil
AKO: david.bain2@us.army.mil

-----Original Message-----
From: Chard, Todd M CPT MIL USA FORSCOM [mailto:todd.chard@us.army.mil]
Sent: Thursday, April 12, 2012 7:26 PM
To: Bain, David A SPC USARMY (US)
Cc: Brinkley, Crystal T CPL USARMY (US); Presson, Amanda G CPT USARMY (US); Rykowski, Sarah J CPT USARMY (US)
Subject: RE: Daniels (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

SPC Bain,

Thank you for providing the CPT Daniels 15-6. Do you have the recorded statements from Mrs. Daniels and CPT Daniels that are referenced as exhibit 5 in this 15-6? If so, I need them ASAP - please let me know.

Thanks,

Todd Chard
CPT, JA
Trial Counsel
Special Assistant US Attorney
Ph: (912) 767-6585
Cell: (518) 334-0064
Fx: (912) 767-9105
Email: todd.chard@conus.army.mil

-----Original Message-----
From: Brinkley, Crystal T CPL USARMY (US)
[mailto:crystal.t.brinkley2.mil@mail.mil]
Sent: Wednesday, April 11, 2012 11:25 AM
To: Chard, Todd M CPT USARMY (US)
Cc: Bain, David A SPC USARMY (US)
Subject: Daniels (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Good morning Sir,

Attached is the 15-6 investigation you requested earlier today.  Please let
our office know if there is anything else we can assist you with.  Thank you
and have a great day, sir.

Very Respectfully,

Crystal T. Brinkley
SPC, USA
Criminal Law
Fort Sill, Oklahoma
(580) 442-3900
crystal.t.brinkley2.mil@mail.mil

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Subject: CPT Daniels Recordings (UNCLASSIFIED)
To: "Rykowski, Sarah J CPT MIL USA IMCOM" <sarah.rykowski@us.army.mil>, sonnydee79@yahoo.com
Cc: "Presson, Amanda G CPT MIL USA FORSCOM" <amanda.g.presson@us.army.mil>, "Cardinale, Douglas C COL MIL USA FORSCOM" <douglas.cardinale@us.army.mil>, "Betancourtnieves, Xiara G CPL USARMY (US)" <x.betancourtnieves@us.army.mil>, "Gomezmartinez, Victoria G SSG USARMY (US)" <victoria.gomez@us.army.mil>, "Castorina, Susan A MAJ USARMY (US)" <susan.a.castorina@us.army.mil>

Date: 04/13/12 20:15
From: "Chard, Todd M CPT MIL USA FORSCOM" <todd.chard@us.army.mil>

---

Classification: UNCLASSIFIED
Caveats: NONE

CPT Rykowski,

Please see the email below. The Fort Sill OSJA, as well as the IO no longer have the recordings on file.

Respectfully,

Todd Chard
CPT, JA
Trial Counsel
Special Assistant US Attorney
Ph: (912) 767-6585
Cell: (518) 334-0064
Fx: (912) 767-9105
Email: todd.chard@conus.army.mil

-----Original Message-----
From: Bain, David A SPC USARMY (US) [mailto:david.a.bain2.mil@mail.mil]
Sent: Friday, April 13, 2012 10:22 AM
To: Chard, Todd M CPT USARMY (US)
Subject: RE: Daniels (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

CPT Chard,
Sir,

No we do not have any recordings on the file. Sorry.

V/R,
SPC Bain, David A.
Paralegal Specialist
Criminal Law Division, Fort Sill, OK
Office of the Staff Judge Advocate
(580)442-3900
EMAIL: david.a.bain2.mil@mail.mil
AKO: david.bain2@us.army.mil

-----Original Message-----
From: Chard, Todd M CPT MIL USA FORSCOM [mailto:todd.chard@us.army.mil]
Sent: Thursday, April 12, 2012 7:26 PM
To: Bain, David A SPC USARMY (US)
Cc: Brinkley, Crystal T CPL USARMY (US); Presson, Amanda G CPT USARMY (US); Rykowski, Sarah J CPT USARMY (US)
Subject: RE: Daniels (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

SPC Bain,

Thank you for providing the CPT Daniels 15-6. Do you have the recorded statements from Mrs. Daniels and CPT Daniels that are referenced as exhibit 5 in this 15-6? If so, I need them ASAP - please let me know.

Thanks,

Todd Chard
CPT, JA
Trial Counsel
Special Assistant US Attorney
Ph: (912) 767-6585
Cell: (518) 334-0064
Fx: (912) 767-9105
Email: todd.chard@conus.army.mil

-----Original Message-----
From: Brinkley, Crystal T CPL USARMY (US)
[mailto:crystal.t.brinkley2.mil@mail.mil]
Sent: Wednesday, April 11, 2012 11:25 AM
To: Chard, Todd M CPT USARMY (US)
Cc: Bain, David A SPC USARMY (US)
Subject: Daniels (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Good morning Sir,

Attached is the 15-6 investigation you requested earlier today.  Please let
our office know if there is anything else we can assist you with.  Thank you
and have a great day, sir.

Very Respectfully,

Crystal T. Brinkley
SPC, USA
Criminal Law
Fort Sill, Oklahoma
(580) 442-3900
crystal.t.brinkley2.mil@mail.mil

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

*CPT DERRICK T. DANIELS: BOARD OF INQUIRY*
OBJECTIONS

# ENCLOSURE 3

000799



DEPARTMENT OF THE ARMY
HEADQUARTERS, 3RD INFANTRY DIVISION AND FORT STEWART
OFFICE OF THE STAFF JUDGE ADVOCATE
1791 GULICK AVENUE, BUILDING 709
FORT STEWART, GEORGIA 31314-5100

REPLY TO
ATTENTION OF

AFZP-JA-MJ

12 April 2012

MEMORANDUM FOR COL Douglas Cardinale, Board President, 2nd Heavy Brigade Combat Team, 3rd Infantry Division, Fort Stewart, Georgia, 31314

SUBJECT: Respondent's Initial and Supplemental Request for Discovery

1. This memorandum is in response to the respondent's initial request for discovery dated 3 April 2012, and the respondent's supplemental request for discovery on 12 April 2012.

2. Government responded to the initial request for discovery through email dated 11 April 2012 (enclosed). The OMPF for the respondent is scheduled for hand delivery to the Fort Stewart Trial Defense Office on 13 April 2012. We believe all other aspects of the discovery request are met, however we understand that discovery is an ongoing process, and encourage the respondent to request production of any specific documents they believe are in the Government's possession.

3. Respondent requested production of two recordings that are referenced in the January 2009 15-6 investigation table of exhibits previously provided. We will conduct a thorough search for these recordings, but believe they will not be discoverable. The respondent asserts that failure to produce these recordings somehow invalidates the entire 15-6 investigation, as well as testimony from the 15-6 investigating officer. This is not so. AR 600-8-24 ("Officer Transfers and Discharges"), paragraph 4-6(a) states that boards of inquiry are administrative investigations, and will be conducted under AR 15-6 ("Procedures for Investigating Officers and Boards of Officers"), and AR 600-8-24. AR 15-6, paragraph 3-7 states "[A]n investigating officer or Board of officers is not bound by the rules of evidence for trials by courts–martial … anything that in the minds of reasonable persons is relevant and material to an issue may be accepted as evidence". The 15-6 investigation and testimony from the investigating officer is admissible, regardless of production of two exhibits that were used by the investigating officer to complete the investigation. This is especially true, since the 15-6 report makes no mention of exculpatory evidence within the recordings, and both witnesses gave written statements in addition to the recordings during the course of that investigation, which have been provided to the defense.

4. Point of contact for this memorandum is the undersigned at todd.chard@us.army.mil or (912) 767-6585.

///ORIGINAL SIGNED///

Encl
as

TODD M. CHARD
CPT, JA
Recorder

*CPT DERRICK T. DANIELS: BOARD OF INQUIRY*
OBJECTIONS

# ENCLOSURE 4

000801



**DEPARTMENT OF THE ARMY**
TRIAL DEFENSE SERVICE, REGION SOUTHEAST
37 NORTH SCHMIDT STREET, SUITE 100
HUNTER ARMY AIRFIELD, GA 31409

REPLY TO
ATTENTION OF



AFZP-JA-TDS                                                      17 April 2012

MEMORANDUM FOR Board President, Board of Inquiry – Captain Derrick T. Daniels, [Redacted PII]
[Redacted PII] 1-306th Infantry Regiment, 188th Infantry Brigade, Fort Stewart, Georgia, 31314

SUBJECT: Reply to Recorder's Response to Respondent's Supplemental Request for Discovery

1. The government waited until 11 April 2012 to request the AR 15-6 investigation in this case, and did not supply it to the Respondent until after COB on 12 April 2012, almost two weeks after Respondent filed a Request for Discovery.

2. Respondent has reason to believe that these recordings contain exculpatory material. Whether they do or not, to permit witnesses to comment on their contents without production of the contents and the opportunity to study their contents prevents the Respondent from fully developing a defense and cross-examination regarding the contents, as the witnesses, four years after the fact, may only remember the allegedly inculpatory contents.

3. The Recorder misstates Respondent's suggested remedy. Respondent is not asking the members of the board to disregard the entire 15-6. Respondent is simply asking that the members of the board not consider the alleged contents of the recordings, and that witnesses not be allowed to testify regarding the contents of the recordings, as without the recordings themselves, Respondent is powerless to rebut these statements.

4. If this were a court-martial, a military judge would not permit inclusion of this evidence. Military Rule of Evidence 106 requires that "when a writing or recorded statement or part thereof is introduced by a party, an adverse party may require that party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." In this case, if the board intends to consider the testimony of witnesses regarding the contents of recording, both the rules of evidence and principles of fairness and due process require an opportunity for the Respondent to review the recording itself and prepare cross-examination.

5. "If the government fails to disclose or preserve material that could be exculpatory in nature, or favorable to an accused when material to guilt or punishment, good or bad faith of the prosecution is no longer at issue, but rather a due process violation is at issue. The government's duty [to disclose] 'covers not only exculpatory material but also information that could be used to impeach a key government witness.'" 219 F.Supp.2d 242, 249 (N.D.N.Y 2006). *United States v. Yevakpor,* a federal case applied multiple times in this jurisdiction by Fort Stewart's sitting military judge. In *Yevakpor* and in military courts-martial here at Fort Stewart, the court has held exclusion of the evidence in question and any mention of its contents is the appropriate remedy, where the evidence is no longer available due to the government's deliberate destruction of evidence, "in light of its knowledge that the evidence could have been used in prosecution or defense." 419 F.Supp. at 252. Respondent has no objection to the board considering the remainder of the AR 15-6, including other statements and comments from the investigating officer, if the board considers such comments relevant.

1

AFZP-JA-TDS
SUBJECT:  Reply to Recorder's Response to Respondent's Supplemental Request for Discovery

6.  In the alternative, Respondent requests a delay until the Recorder can ascertain whether the recordings are available, provide them to Respondent's counsel, and permit Respondent and respondent's counsel have adequate time to prepare to defend against the recordings, and potentially present exculpatory material contained within these recordings.  The tardiness of the government's response to Respondent's request for discovery, leaving only three duty days to study this evidence and prepare for this hearing, including duty days when Respondent's counsel is out of the office, especially when the Recorder was able to easily obtain a copy of the AR 15-6 investigation in this case, already places Respondent at a disadvantage.  Respondent simply asks that the board president level the battlefield by excluding the recordings and any mention of their contents, exculpatory, inculpatory, or otherwise.

7.  I certify that on 12 April 2012 the foregoing Reply to Recorder's Response to Respondent's Request for Discovery was served on Recorder, OSJA, and the President, COL Cardinale.  I request that this document be included in the record and forwarded for any disposition of this matter.

*//original signed//*

SARAH J. RYKOWSKI
CPT, JA
Defense Counsel

*C. DERRICK T. DANIELS: BOARD OF QUIRY*
**OBJECTIONS**

# ENCLOSURE 5

**Rykowski, Sarah J CPT MIL USA IMCOM**

| | |
|---|---|
| **From:** | Cardinale, Douglas C COL MIL USA FORSCOM |
| **Sent:** | Friday, April 13, 2012 12:39 PM |
| **To:** | Rykowski, Sarah J CPT MIL USA IMCOM; Sarah Rykowski; Chard, Todd M CPT MIL USA FORSCOM |
| **Cc:** | Presson, Amanda G CPT MIL USA FORSCOM; 'Betancourtnieves, Xiara G CPL USARMY (US)' |
| **Subject:** | RE: FW: Daniels (UNCLASSIFIED) |
| **Signed By:** | douglas.cardinale@us.army.mil |

Classification: UNCLASSIFIED
Caveats: NONE

CPT Rykowski,

After consultation with my legal advisor, the following has been determined:

1. Tape Recordings: If the Government is in possession of these recordings, they should be turned over in accordance with AR 15-6, paragraph 5-8(b)(1). This paragraph states that "the recorder will assist the respondent in obtaining documentary and real evidence in possession of the Government and in arranging for the presence of witnesses for the respondent." From CPT Chard's memo dated 12 April, he indicates that "We will conduct a thorough search for these recordings, but believe they will not be discoverable." Thus, it appears that he is not currently in possession of the recordings. If he receives these recordings before the board, the recordings will be given to CPT Rykowski. However, even if these recordings are not received, the Board of Inquiry will continue as scheduled.

2. Response to Defense Counsel's request to limit the testimony of witnesses and not allow testimony or evidence regarding the content of these recordings: This request to limit testimony is denied. A Board of Inquiry is an administrative proceeding governed by AR 15-6. AR 15-6 states under paragraph 3-7(a) that proceedings under this regulation are administrative, not judicial. Therefore, the board is not bound by the rules of evidence for trials by courts-martial. Thus, the witness will be able to testify to the recordings. Defense counsel has been provided the contact information for the witnesses involved with the tape recordings. If exculpatory information beneficial to the Respondent was on those tapes, Defense Counsel can ask those questions at the Board to illicit this testimony. Defense Counsel should continue to make contact with these individuals.

3. As long as Defense Counsel is able to question the witnesses before the Board begins, there is no reason to delay; hence the request for a delay is denied.

Douglas C. Cardinale
COL, IN
Commanding

ROCK OF THE MARNE!
SEND ME!

-----Original Message-----
From: Sarah Rykowski [mailto:sonnydee79@yahoo.com]

Sent: Friday, April 13, 20__ 00:35
To: Chard, Todd M CPT MIL USA FORSCOM; Cardinale, Douglas C COL MIL USA FORSCOM
Cc: Presson, Amanda G CPT MIL USA FORSCOM; Rykowski, Sarah J CPT MIL USA IMCOM; 'Betancourtnieves, Xiara G CPL USARMY (US)'
Subject: Re: FW: Daniels (UNCLASSIFIED)

Sir,

Attached find Respondent's reply to the Recorder's assertions. I respectfully request that you speak to your legal advisor regarding the issues raised by both parties.

Incidentally, I have not been able to get in touch with any of the government's witnesses, save one. Should this continue to be the case through Monday, I will, on behalf of my client, have no choice but to submit a formal request for delay if the government still intends to call any of these witnesses.

v/r,

CPT Rykowski

Classification: UNCLASSIFIED
Caveats: NONE

CPT DERRICK T. DANIELS: BOARD OF INQUIRY
OBJECTIONS

# ENCLOSURE 6

000807

**Rykowski, Sarah J CPT MIL USA IMCOM**

**From:** Chard, Todd M CPT MIL USA FORSCOM
**Sent:** Tuesday, April 17, 2012 5:59 PM
**To:** Rykowski, Sarah J CPT MIL USA IMCOM
**Cc:** Presson, Amanda G CPT MIL USA FORSCOM
**Subject:** RE: CPT Daniels Gov Witness list (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

CPT Rykowski,

Correction - he is available to testify tomorrow morning.

Respectfully,

Todd Chard
CPT, JA
Trial Counsel
Special Assistant US Attorney
Ph: (912) 767-6585
Cell: (518) 334-0064
Fx: (912) 767-9105
Email: todd.chard@conus.army.mil

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Tuesday, April 17, 2012 5:54 PM
To: Chard, Todd M CPT MIL USA FORSCOM
Cc: Presson, Amanda G CPT MIL USA FORSCOM
Subject: RE: CPT Daniels Gov Witness list (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

CPT Chard,

I thought you said Det Peralta would not be available until after 1630 today.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Chard, Todd M CPT MIL USA FORSCOM
Sent: Tuesday, April 17, 2012 5:52 PM
To: Rykowski, Sarah J CPT MIL USA IMCOM
Cc: Presson, Amanda G CPT MIL USA FORSCOM
Subject: CPT Daniels Gov Witness list (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

CPT Rykowski,

(912-655-0919) - Dr. Parodi is available for your call. She will be available during the noon hour for testimony.

(580-695-4432) - Detective Peralta remains available. I'm tracking you haven't contacted him yet. He will not available to testify during the noon hour.

(580-695-4432) - LTC Chris Compton remains available. I'm tracking you haven't contacted him yet. He will not be available to testify during the noon hour as well.

Respectfully,

Todd Chard

CPT, JA

Trial Counsel

Special Assistant US Attorney

Ph: (912) 767-6585

Cell: (518) 334-0064

Fx: (912) 767-9105

Email: todd.chard@conus.army.mil

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

**Rykowski, Sarah J CPT MIL USA IMCOM**

**From:** Presson, Amanda G CPT MIL USA FORSCOM
**Sent:** Tuesday, April 17, 2012 5:05 PM
**To:** Rykowski, Sarah J CPT MIL USA IMCOM
**Cc:** Chard, Todd M CPT MIL USA FORSCOM
**Subject:** RE: CPT Daniels case (UNCLASSIFIED)
**Signed By:** amanda.g.presson@us.army.mil

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Rykowski,

I tried to call COL Cardinale about 15 minutes ago, and he is in a meeting. I will ask him what he wants to do concerning Dr. Parodi and any other replacement. I've provided you with the number to Dr. Sanjana Karim, one of Capt. McRae's colleagues. Again, her office number is 767-8921. I have emailed her to call me and left a voicemail, but I have not had any luck. I called Capt. McRae, and he stated that he was going to give her my phone number and forward the message to her. In the event that she calls my phone, I will give her your cell phone number (if that's okay).

Respectfully,

Amanda G. Presson
CPT, JA
Administrative Law Attorney
Office of the Staff Judge Advocate
3rd Infantry Division, Fort Stewart, Georgia
Office: (912) 767-7717
amanda.g.presson@conus.army.mil

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Tuesday, April 17, 2012 4:24 PM
To: Presson, Amanda G CPT MIL USA FORSCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Presson,

I have not been able to get in touch with Dr. Parodi. To that end, I am not sure whether she will be available or not. If the board's replacement is CPT McRae, please let me know, as well as a good contact #. I really don't want to request to delay this board - but at this point I don't know who is calling who or what is going on with the doctors.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Presson, Amanda G CPT MIL USA FORSCOM
Sent: Tuesday, April 17, 2012 10:00 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Rykowski,

MAJ Czech is unavailable to testify. I have emailed Capt. McRae (Chief of Behavioral Health) to get his contact information. However, COL Cardinale indicated to me that if Dr. Parodi is able to testify about PTSD then this will suffice. If I get an answer back from Capt. McRae concerning his number, I will forward that to both Government and Defense. However, there is a likelihood that he won't be called at all if Dr. Parodi is able to answer the Board's questions concerning PTSD.

Also, just as a reminder, the Board of Inquiry is in the Command Conference Room at the 2nd Brigade Headquarters Building (Building 615). The uniform is ACUs.

Respectfully,

Amanda G. Presson
CPT, JA
Administrative Law Attorney
Office of the Staff Judge Advocate
3rd Infantry Division, Fort Stewart, Georgia
Office: (912) 767-7717
amanda.g.presson@conus.army.mil

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Tuesday, April 17, 2012 9:43 AM
To: Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM; Presson, Amanda G CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

SPC Betancourt,

I have tried, via email and phone, to get in contact with MAJ Czech. If you have better contact information than the number on global and his email, I really need to get in touch with him this morning.

I may object to his participation tomorrow in the event I am not able to get

in contact with him.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Betancourt, Xiara G SPC MIL USA FORSCOM
Sent: Wednesday, April 11, 2012 11:05 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM
Cc: Cardinale, Douglas C COL MIL USA FORSCOM; Chard, Todd M CPT MIL USA FORSCOM; Presson, Amanda G CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Ma'am,

MAJ Robert Czech contact phone number: 435-9582, you can find him on global as well.

Also, CPT Chard will have his witness list by COB today.

V/R,

Xiara G. Betancourt, SPC
Pre Trial Paralegal
Office of the Staff Judge Advocate
Military Justice Section
1791 Gulick Avenue, Bldg 709 (2nd floor) Fort Stewart, Georgia 31314
OFFICE: 912.767.7902

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Wednesday, April 11, 2012 10:49 AM
To: Betancourt, Xiara G SPC MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

SPC Betancourt,

You will have a list by COB today. I still have not received a response to my discovery request which I sent to CPT Chard. I need to know if the government is going to call witnesses and I need their contact information today, as I will be out of the office Friday through Monday.

Please send me MAJ Czech's contact information - I'd like to talk to him today to determine if I need another psychiatrist.

v/r,

Sarah J. Rykowski

CPT, JA

-----Original Message-----
From: Betancourt, Xiara G SPC MIL USA FORSCOM
Sent: Wednesday, April 11, 2012 10:11 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM
Subject: CPT Daniels case

Ma'am,

Per COL Cardinale request please send me a copy of the witness list that you intend to call on CPT Daniels BOI.
Also, please let me know if you intend to call a doctor specialized in PTSD, if not COL Cardinale will like to request MAJ Czech, Division Psychiatrist to testify.

Thank you.

V/R,

Xiara G. Betancourt, SPC
Pre Trial Paralegal
Office of the Staff Judge Advocate
Military Justice Section
1791 Gulick Avenue, Bldg 709 (2nd floor) Fort Stewart, Georgia 31314
OFFICE: 912.767.7902

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

**Rykowski, Sarah J CPT MIL USA IMCOM**

**From:** Chard, Todd M CPT MIL USA FORSCOM
**Sent:** Tuesday, April 17, 2012 2:09 PM
**To:** Rykowski, Sarah J CPT MIL USA IMCOM
**Cc:** Presson, Amanda G CPT MIL USA FORSCOM
**Subject:** CPT Daniels Government Witnesses (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

CPT Rykowski,

Detective Peralta, Dr. Parodi, and LTC Compton are really the only three witnesses that I would prefer to call.

- Detective Peralta will be ready to take your call at 1630 hours today. His personal cell is 580-695-4432. He is available at any time tomorrow as well. I expect Detective Peralta will walk us through his involvement on the case … nothing much beyond what is in the report. I primarily want him available to the board for questions, if any.

- Dr. Parodi is TDY right now. She is not authorized to bring her phone into the classroom, but I'm hoping to speak with her during a break, or directly after class. I will point her your direction as soon as possible. She will be available from about 1200-1240 tomorrow. Dr. Parodi will talk about PTSD, recantations, and domestic violence. She has reviewed his medical history, and the case file. She has no other connection with the case.

- LTC Chris Compton is also TDY. He is usually available anytime after 1600. (580-442-5125). He will be available from about 1140-1230 tomorrow. I expect LTC Compton will walk us through his involvement in the 15-6… same thing - want him available in case the board has questions.

As I mentioned before, I do not have accurate contact information for Ms. Brown, so will not call her.

Ms. Christenson, and Ms. McKinney have very little to offer so I do not need to call them.

Respectfully,

Todd Chard

CPT, JA

Trial Counsel

Special Assistant US Attorney

Ph: (912) 767-6585

Cell: (518) 334-0064

Fx: (912) 767-9105

Email: todd.chard@conus.army.mil <mailto:todd.chard@conus.army.mil>

Classification: UNCLASSIFIED
Caveats: NONE

**Rykowski, Sarah J CPT MIL USA IMCOM**

**From:** Presson, Amanda G CPT MIL USA FORSCOM
**Sent:** Tuesday, April 17, 2012 10:49 AM
**To:** Rykowski, Sarah J CPT MIL USA IMCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
**Cc:** Chard, Todd M CPT MIL USA FORSCOM
**Subject:** RE: CPT Daniels case (UNCLASSIFIED)
**Signed By:** amanda.g.presson@us.army.mil

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Rykowski,

The Board wants someone present to testify concerning PTSD since none of the Board members are doctors. I am not sure what the Government witness, Dr. Parodi, is going to testify to as I am not involved in the Government's case. I know that she is merely a medical doctor. As a result, I am giving you the contact information for someone that the Board might call as a witness to ask about PTSD. That is the extent of my involvement.

The numbers given for Dr. Karim specify that her office number is 767-8921 and if it is during lunch, to call the front desk at 767-7301. Those are the numbers for any day, today and tomorrow. As I stated before, I have not spoken to Dr. Karim (only left a voicemail that Government and Defense Counsel might be calling), but you have her contact information in case she is called by the Board to ask general questions about PTSD. That decision will ultimately be the Board's decision whether or not they actually call Dr. Karim or not after hearing testimony from Dr. Parodi.

Respectfully,

Amanda G. Presson
CPT, JA
Administrative Law Attorney
Office of the Staff Judge Advocate
3rd Infantry Division, Fort Stewart, Georgia
Office: (912) 767-7717
amanda.g.presson@conus.army.mil

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Tuesday, April 17, 2012 10:32 AM
To: Presson, Amanda G CPT MIL USA FORSCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Presson,

Why are you the one locati.. witnesses?

Are the times you gave for Dr. Karim times she would be available today or times tomorrow?

I need to know, once and for all, what witnesses are going to be called. Please ensure I have all names/contact information. If it's Dr. Karim, that's fine - just let me know.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Presson, Amanda G CPT MIL USA FORSCOM
Sent: Tuesday, April 17, 2012 10:28 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

All,

Capt. McRae (Chief of Behavioral Health) gave me the name of Dr. Sanjana Karim to testify concerning PTSD if the Board needed more information on PTSD. She is a Psychiatrist in the Division Behavioral Health Clinic and would be available during the Board. If it is before 1200 or after 1300, the best number would be 767-8921. If it is between 1200 and 1300, the front desk of the clinic (767-7301) will know her number if it is different.

I just tried to call her; however, I got voicemail. I did leave her a message that both of you might be calling her.

Respectfully,

Amanda G. Presson
CPT, JA
Administrative Law Attorney
Office of the Staff Judge Advocate
3rd Infantry Division, Fort Stewart, Georgia
Office: (912) 767-7717
amanda.g.presson@conus.army.mil

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Tuesday, April 17, 2012 10:02 AM
To: Presson, Amanda G CPT MIL USA FORSCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM

Subject: RE: CPT Daniels ca.. (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Presson,

Thanks for the information. I am still trying to contact Dr. Parodi, so if anyone has been successful, please let me know. I am severely handicapped by the inability to get in touch with both the government's witnesses and the board's, and today is our busiest day at HAAF TDS.

I will object to the testimony of any witness with whom I have not had a prior opportunity to speak - and I need to do that ASAP in the event that that individual's testimony requires testimony from additional witnesses or evidence that I need to track down in response to their expected testimony.

Please let me know if there are any further changes.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Presson, Amanda G CPT MIL USA FORSCOM
Sent: Tuesday, April 17, 2012 10:00 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Rykowski,

MAJ Czech is unavailable to testify. I have emailed Capt. McRae (Chief of Behavioral Health) to get his contact information. However, COL Cardinale indicated to me that if Dr. Parodi is able to testify about PTSD then this will suffice. If I get an answer back from Capt. McRae concerning his number, I will forward that to both Government and Defense. However, there is a likelihood that he won't be called at all if Dr. Parodi is able to answer the Board's questions concerning PTSD.

Also, just as a reminder, the Board of Inquiry is in the Command Conference Room at the 2nd Brigade Headquarters Building (Building 615). The uniform is ACUs.

Respectfully,

Amanda G. Presson
CPT, JA
Administrative Law Attorney
Office of the Staff Judge Advocate
3rd Infantry Division, Fort Stewart, Georgia

Office: (912) 767-7717
amanda.g.presson@conus.army.mil

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Tuesday, April 17, 2012 9:43 AM
To: Betancourt, Xiara G SPC MIL USA FORSCOM
Cc: Chard, Todd M CPT MIL USA FORSCOM; Presson, Amanda G CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

SPC Betancourt,

I have tried, via email and phone, to get in contact with MAJ Czech. If you have better contact information than the number on global and his email, I really need to get in touch with him this morning.

I may object to his participation tomorrow in the event I am not able to get in contact with him.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Betancourt, Xiara G SPC MIL USA FORSCOM
Sent: Wednesday, April 11, 2012 11:05 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM
Cc: Cardinale, Douglas C COL MIL USA FORSCOM; Chard, Todd M CPT MIL USA FORSCOM; Presson, Amanda G CPT MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Ma'am,

MAJ Robert Czech contact phone number: 435-9582, you can find him on global as well.

Also, CPT Chard will have his witness list by COB today.

V/R,

Xiara G. Betancourt, SPC
Pre Trial Paralegal
Office of the Staff Judge Advocate
Military Justice Section
1791 Gulick Avenue, Bldg 709 (2nd floor) Fort Stewart, Georgia 31314
OFFICE: 912.767.7902

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Wednesday, April 11, 2012 10:49 AM
To: Betancourt, Xiara G SPC MIL USA FORSCOM
Subject: RE: CPT Daniels case (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

SPC Betancourt,

You will have a list by COB today. I still have not received a response to my discovery request which I sent to CPT Chard. I need to know if the government is going to call witnesses and I need their contact information today, as I will be out of the office Friday through Monday.

Please send me MAJ Czech's contact information - I'd like to talk to him today to determine if I need another psychiatrist.

v/r,

Sarah J. Rykowski
CPT, JA

-----Original Message-----
From: Betancourt, Xiara G SPC MIL USA FORSCOM
Sent: Wednesday, April 11, 2012 10:11 AM
To: Rykowski, Sarah J CPT MIL USA IMCOM
Subject: CPT Daniels case

Ma'am,

Per COL Cardinale request please send me a copy of the witness list that you intend to call on CPT Daniels BOI.
Also, please let me know if you intend to call a doctor specialized in PTSD, if not COL Cardinale will like to request MAJ Czech, Division Psychiatrist to testify.

Thank you.

V/R,

Xiara G. Betancourt, SPC
Pre Trial Paralegal
Office of the Staff Judge Advocate
Military Justice Section
1791 Gulick Avenue, Bldg 709 (2nd floor) Fort Stewart, Georgia 31314
OFFICE: 912.767.7902

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

*C. DERRICK T. DANIELS: BOARD OF ... QUIRY*
OBJECTIONS

# ENCLOSURE 7

000822

**Rykowski, Sarah J CPT MIL USA IMCOM**

**From:** Presson, Amanda G CPT MIL USA FORSCOM
**Sent:** Tuesday, April 17, 2012 6:22 PM
**To:** Rykowski, Sarah J CPT MIL USA IMCOM; Chard, Todd M CPT MIL USA FORSCOM
**Cc:** Cardinale, Douglas C COL MIL USA FORSCOM
**Subject:** RE: CPT Daniels BOI (UNCLASSIFIED)
**Signed By:** amanda.g.presson@us.army.mil

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Rykowski and CPT Chard,

I just spoke with COL Cardinale. After discussing your objections with him, he asked that I send this email noting the things that we discussed due to the fact that he was attending a ceremony tonight for deploying Soldiers. However, he did not want to delay in sending you a response back. We will still begin at 0900 tomorrow in the Command Conference Room of 2nd Brigade Headquarters. See below for the things that we discussed.

1. Your objections will be noted tomorrow on the record concerning Detective Peralta and Dr. Parodi. Based upon Government's email at 1752, all 3 witnesses (Dr. Parodi, LTC Compton, and Detective Peralta) are available tonight for your phone call. Thus, you have an opportunity to discuss your questions with these witnesses. If Defense has not had a chance to discuss with Dr. Parodi prior to the Board tomorrow, Defense can have the opportunity from 1200 to 1220 as a time to discuss with Dr. Parodi any questions you might have. We can then resume the board and then Dr. Parodi can testify between 1220 to 1240. The same goes for LTC Compton.

2. Review of Medical History: Concerning review of the Respondent's medical history, this is permissible by Dr. Parodi. Under AR 40-66, paragraph 2-4(a)(1)(a)(19)(e), disclosure of medical records without the consent of the patient can be done for judicial or administrative proceedings. Moreover, under AR 15-6, paragraph 3-7(a), medical records, counseling statements, police reports, and other records may be considered regardless of whether the preparer of the record is available to give a statement or testify in person. As a result, Dr. Parodi's review of the medical file was permissible.

3. Written Ruling: In regards to the Defense's request for a ruling on the record concerning the witnesses testifying and giving evidence, an attachment to the record of proceedings (DA Form 1574) will contain the objections and supported reasons as required by AR 15-6, paragraph 3-16(e).

If either side has any more objections, you may make those tomorrow morning at the Board.

Respectfully,

Amanda G. Presson
CPT, JA
Administrative Law Attorney
Office of the Staff Judge Advocate
3rd Infantry Division, Fort Stewart, Georgia
Office: (912) 767-7717

amanda.g.presson@conus.army.mil

-----Original Message-----
From: Rykowski, Sarah J CPT MIL USA IMCOM
Sent: Tuesday, April 17, 2012 2:18 PM
To: Cardinale, Douglas C COL MIL USA FORSCOM
Cc: Presson, Amanda G CPT MIL USA FORSCOM; Chard, Todd M CPT MIL USA FORSCOM
Subject: CPT Daniels BOI (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

Sir,

The Defense hereby gives notice that it intends to object to the testimony of Det Peralta and Dr. Parodi, as the government has failed to make these witnesses available for the Defense to interview and prepare, and has not provided adequate contact information. According to the government, Det Peralta will not even be available for government consultation until 1630 today, leaving no time during the duty day for the Defense to interview this witness much less prepare for cross-examination or seek out other evidence to mitigate or defend against whatever it is Det Peralta might say.

With respect to Dr. Parodi, the Defense is at a loss why her testimony is necessary. The government alleges she will discuss recantation and some other general topics, but she will not be available for consultation today due to being in a class, and will only be available for a small window of time tomorrow. She has also apparently reviewed my client's medical records, and the government has supplied no justification for her to be able to do so, as the rules for disclosure of medical information are quite different and more restrictive for administrative separation boards than they are for courts-martial.

I am not aware that there was a recantation in the case of any kind, and therefore cannot see the relevance of her testimony. If I am missing something, perhaps it is that I have not been provided the same access to information and witnesses that the government has.

The Defense will request a ruling by you on the record as to whether these witnesses should be permitted to testify and give evidence, and will ask that you place your ruling in writing, supplying copies to all parties.

The Defense has also not b .ı provided the opportunity to sp. .k with LTC Compton although several attempts have been made both last week and today.

v/r,

CPT Rykowski

Sarah J. Rykowski

CPT, JA

Defense Counsel

Trial Defense Service

Region Southeast

37 N. Schmidt Street

Bldg 1211, Suite 100

Hunter Army Airfield, GA 31409

(w) (912) 315-5436

(f) (912) 315-3726

sarah.rykowski@us.army.mil

ATTORNEY CONFIDENTIALITY NOTICE - FOR OFFICIAL USE ONLY: The information contained in this e-mail and any corresponding documents may constitute attorney work product and/or client advice, which are legally privileged. This information is for official use only. It should not be released to unauthorized persons, and should be maintained in a separate file. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action or reliance on this information is strictly prohibited. If you receive this e-mail in error, please notify the sender immediately by return e-mail or by calling (912) 767-4398.

Classification: UNCLASSIFIED
Caveats: FOUO

Classification: UNCLASSIFIED
Caveats: FOUO

*CI .. DERRICK T. DANIELS: BOARD OF .. QUIRY*
OBJECTIONS

# ENCLOSURE 8

000826

**Rykowski, Sarah J CPT MIL USA IMCOM**

**From:** Rykowski, Sarah J CPT MIL USA IMCOM
**Sent:** Tuesday, April 17, 2012 5:11 PM
**To:** Chard, Todd M CPT MIL USA FORSCOM
**Cc:** Presson, Amanda G CPT MIL USA FORSCOM; Betancourt, Xiara G SPC MIL USA FORSCOM
**Subject:** Additional evidence (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

CPT Chard,

In your email to COL Cardinale, you referenced evidence from a website - onlinebootycall.com, or something of that sort. I have not yet had the opportunity to examine this evidence and will object to its inclusion in the hearing tomorrow.

v/r,

CPT Rykowski

Sarah J. Rykowski

CPT, JA

Defense Counsel

Trial Defense Service

Region Southeast

37 N. Schmidt Street

Bldg 1211, Suite 100

Hunter Army Airfield, GA 31409

(w) (912) 315-5436

(f) (912) 315-3726

sarah.rykowski@us.army.mil

ATTORNEY CONFIDENTIALITY N( CE - FOR OFFICIAL USE ONLY: The .nformation contained in this e-mail and any corresponding documents may constitute attorney work product and/or client advice, which are legally privileged. This information is for official use only. It should not be released to unauthorized persons, and should be maintained in a separate file. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action or reliance on this information is strictly prohibited. If you receive this e-mail in error, please notify the sender immediately by return e-mail or by calling (912) 767-4398.

Classification: UNCLASSIFIED
Caveats: FOUO

TABLE OF CONTENTS

ACKNOWLEDGEMENT MEMORANDUM

SECTION 1

REBUTTAL MEMORANDUM

SECTION 2 (ENCLOSURES 1-4)

PERSONAL AND BUSINESS LETTERS

SECTION 3 (ENCLOSURES 5-9)

MENTAL HEATH RECORDS

SECTION 4 (ENCLOSURES 10-15)

MEMORANDUMS/LETTER OF RECOMMENDATION

AHRC-OPL-R
SUBJECT: Initiation of Elimination

5. In accordance with AR 600-8-24, Paragraph 4-24, you may:

a. Submit a rebuttal with all supporting documentation to show how you have either successfully overcome the reason for the Show Cause Proceeding or a statement explaining your past actions/behavior.

b. Submit your resignation in lieu of elimination according to AR 600-8-24, Chapter 4. The request may not include an effective date since the effective date will be determined IAW AR 600-8-24, Paragraph 4-5.

c. Submit a declination statement and request appearance before a Field Board Of Inquiry (FBOI) in place of above-mentioned resignation or discharge options.

6. You must acknowledge receipt of this notice in writing and exercise one of the available options in preceding Paragraph 5 no later than 30 days from receipt of this action.

7. Your acknowledgement should be in the format provided in AR 600-8-24, Figure 2-4 (Encl 3). You will include your respective election from paragraph 5 above as an enclosure to your acknowledgment. Either of the options pursued must be staffed through your chain of command and endorsed by your respective GOSCA prior to staffing to the Human Resources Command (AHRC-OPL-R) for final processing.

8. If you are eliminated for substandard performance of duty only, you will receive an Honorable Discharge. If you are eliminated for misconduct, moral or professional dereliction, the least favorable discharge you may receive is an Under Other Than Honorable Conduction Discharge. If you do not submit a resignation in lieu of elimination your case must be referred to a Board of Inquiry. In such an instance, you may not waive a Board of Inquiry, though your presence at the proceeding is optional. The final decision on the type of discharge will be determined by HQDA.

3 Encls
as

SEAN J. BYRNE
Major General, USA
Commanding



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY FIELD ARTILLERY CENTER AND FORT SILL
FORT SILL, OKLAHOMA 73503-5000

REPLY TO
ATTENTION OF

29 JAN 2009

ATZR-C

MEMORANDUM FOR CPT Derrick T. Daniels, Redacted PII, A Battery, 1st Battalion, 30th Field Artillery Regiment, 428th Field Artillery Brigade, Fort Sill, OK 73503

SUBJECT: Reprimand

1. You are hereby reprimanded for domestic assault and battery for beating, choking, and threatening your wife, for ongoing multiple adulterous affairs with women including one married to a deployed Soldier, and for conduct unbecoming an officer and gentleman.

2. On Sunday, 16 November 2008, you had a sexual encounter with a woman other than your wife, returned home, and went to bed. Your wife woke you up when she realized you smelled of the other woman. You admitted to your wife that you were having an affair and had just returned from her, confirmed her previous suspicions based upon email traffic she had read, then engaged in a fight with your wife. You attacked her by hitting her with your hands, then with a plastic baton, on her face and head to the brink of unconsciousness and leaving her with bruises still visible 5 days later. When she fell, you dragged her across the floor. You choked her, scratching her on her neck. You verbally threatened her to the point that she feared for her life.

3. You later explained to your wife that you met the other woman through an online website. You admitted to the investigating police that you had engaged in affairs with several other women. Your wife talked to one of the other women who revealed your other affairs, to include impregnating the wife of a deployed Soldier.

4. You have admitted that you are the father of twins with the woman you met on the website "onlinebootycall.com" and with whom you began a sexual relationship in June 2008 and continue until now. Initially you told her that you were separated from your wife and going through a divorce. Even after she learned you were still living with your wife, you continued the adulterous sexual relationship on a daily basis before and after morning physical training, on lunch breaks, and anytime you did not have to be at work. You admitted to her that you had several other affairs during your marriage including with another woman whom you admitted you also impregnated.

5. Your behavior is repugnant. You expect the Officers and Soldiers you train and lead to maintain the highest standards of duty, respect, honor and integrity, and, as such, must hold yourself to these same standards as the example. You violated the Army leader values with your actions over many months. Your actions indicate a lack of judgment in your professional and personal life.

ATZR-C
SUBJECT: Reprimand

6. Officers in the United States Army, especially those who teach and train others, must lead by example and conduct themselves beyond reproach. The young Americans we welcome to our ranks are bound together by their honor, integrity, and trust. They will learn that, in the Army, every Soldier is a leader and responsible for their personal conduct, regardless of rank. You have failed to lead by example.

7. This reprimand is imposed as an administrative measure under the provisions of AR 600-37 and not as punishment under UCMJ, Article 15. I intend to file this reprimand in your Official Military Personnel File (OMPF). You will acknowledge this memorandum by signing the attached endorsement, and return it through your chain of command to me within 15 calendar days, together with any statements or rebuttal on your behalf. I will withhold my decision on imposing and filing this reprimand until I receive and consider your response along with the recommendations of the chain of command.

PETER M. VANGJEL
Major General, USA
Commanding



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY FIELD ARTILLERY CENTER AND FORT SILL
FORT SILL, OKLAHOMA 73503-5100

REPLY TO
ATTENTION OF:

ATZR-C                                                            26 March 2009

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Assumption of Command

1. By the authority of AR 600-20, para. 2-8, the undersigned assumes command of the United States Army Field Artillery Center and Fort Sill (W2NTAA), Fort Sill, Oklahoma 73503, during the temporary absence and/or voluntary devolvement of the regularly assigned Commander, Major General Peter M. Vangjel, and the Assistant Commandant, Brigadier General, Ross E. Ridge.

2. Effective date time: 24 1330 March 2009 to 27 1020 March 2009.

GREGORY J. DYEKMAN
COL, FA
Chief of Staff

DSITRIBUTION:
HQDA (DAPE-GO)
Cdr, TRADOC (ATPL-AP)
Asst Cmdt, USAFAS
AG (ATZR-O)
SJA



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY FIELD ARTILLERY CENTER AND FORT SILL
FORT SILL, OKLAHOMA 73503-5000

REPLY TO
ATTENTION OF

26 MAR 2009

ATZR-C

MEMORANDUM FOR Office of the Staff Judge Advocate, Criminal Law Division, USAFACFS, Fort Sill, OK 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII A Battery, 1st Battalion, 30th Field Artillery Regiment, 428th Field Artillery Brigade, Fort Sill, OK 73503

1. I have reviewed the reprimand imposed on 29 January 2009 against CPT Daniels, the matters submitted by CPT Daniels, as well as the recommendations of his chain of command.

2. After due consideration and in accordance with AR 600-37, I direct that the reprimand with appropriate enclosures be:

__GJD__ Filed in CPT Daniels's Official Military Personnel File (OMPF).

______ Maintained in the local unit Service Member Information File (SMIF) for a period of 3 years from the date of the reprimand or until CPT Daniels's PCS from Fort Sill.

______ Returned to CPT Daniels without any filing in his files or records.

GREGORY J. DYEKMAN
COL, FA
Acting Commander

CF:
CPT Daniels
Cdr, 428th FA Bde
Cdr, 1-10 FAR



ATSF-B

14 MAR 09
Date

MEMORANDUM FOR Commander, USAFACFS, Fort Sill, Oklahoma 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII Alpha Battery, 1st Battalion, 30th Field Artillery, Fort Sill, Oklahoma 73503

1. I have reviewed the reprimand imposed on 29 January 2009 against CPT Derrick T. Daniels, Alpha Battery, 1st Battalion, 30th Field Artillery:

2. After due consideration, I hereby recommend that the reprimand with all attachments be:

X Forwarded to be filed in his Official Military Personnel File (OMPF) for the following reason(s):
Unacceptable behavior.

_____ Maintained in the local unit Service Member Information File (SMIF) for a period of 3 years from the date of the reprimand or until the Soldier's PCS form his unit or ETS from the service for the following reason(s):

_____ Returned to the Soldier without any filing in his files or records for the following reason(s):

3. In my opinion, this Soldier (does) (does not) have rehabilitative potential because:
SM has multiple deployments and is being treated for PTSD. He continues to be a fine instructor and provides value to the brigade.

4. The Soldier's actions have caused the following impact on the unit:
embarrassed the officer corps

Encl
Reprimand File

JOHN S. FANT
COL, FA
Commanding

ATSF-BF

2 FEB 09
Date

MEMORANDUM FOR Commander, 428th Field Artillery, Fort Sill, Oklahoma 73503

SUBJECT: Reprimand Filing Determination – CPT Derrick T. Daniels, Redacted PII Alpha Battery, 1st Battalion, 30th Field Artillery, Fort Sill, Oklahoma 73503

1. I have reviewed the reprimand imposed on 29 January 2009 against CPT Derrick T. Daniels, Alpha Battery, 1st Battalion, 30th Field Artillery:

2. After due consideration, I hereby recommend that the reprimand with all attachments be:

CPT Forwarded to be filed in his Official Military Personnel File (OMPF) for the following reason(s):
CPT Daniels' behavior is/was absolutely unacceptable for a Senior Captain. His multiple offenses could have easily gone to a Court Martial!

_____ Maintained in the local unit Service Member Information File (SMIF) for a period of 3 years from the date of the reprimand or until the Soldier's PCS form his unit or ETS from the service for the following reason(s):

_____ Returned to the Soldier without any filing in his files or records for the following reason(s):

3. In my opinion, this Soldier ~~(does)~~ (does not) have rehabilitative potential because:
Do not believe CPT Daniels should be promoted and move up in our ranks. He is still accomplishing his mission training Lieutenants.

4. The Soldier's actions have caused the following impact on the unit:
Embarrassing for the unit and the Officer Corps.

Encl
Reprimand File

CHRISTOPHER P. TALCOTT
LTC, FA
Commanding

(Office Symbol) 2 FEB 07 (Date)

MEMORANDUM THRU Office of the Staff Judge Advocate, Criminal Law Division, USAFACFS, Fort Sill, Oklahoma 73503

FOR Commander, USAFACFS, Fort Sill, Oklahoma 73503

SUBJECT: Reprimand

1. I acknowledge receipt of the subject memorandum. DTD (Initial)

2. I (wish) ~~(do not wish)~~ to submit matters on my behalf. DTD (Initial)

3. I understand that, should I wish to submit matters, I will be given the opportunity to consult with legal counsel. I understand that I must contact the Legal Assistance Office, OSJA (442-5058/5059) within two working days of receipt of the subject memorandum to make an appointment. DTD (Initial)

4. I understand that if I have already retained legal counsel, my retained counsel must authorize Army counsel to represent me for preparing matters. DTD (Initial)

5. I understand that if I have difficulty making an appointment to consult counsel, I will contact the Chief, Criminal Law Division (442-3900/3533), for assistance. DTD (Initial)

6. I (do) ~~(do not)~~ wish to consult with counsel. DTD (Initial)

(Signature)

DERRICK T. DANIELS
(Print Name)

CPT, AR
(Rank, Branch)



REPLY TO ATTENTION OF:

**DEPARTMENT OF THE ARMY**
Combined Arms Division
Fires Center of Excellence
FT Sill, OK 73503

AT-F-BFA 5 March 2009

MEMORANDUM FOR Major General Peter M. Vangjel, Commanding General, United States Fires Center of Excellence, Fort Sill, OK 73503

SUBJECT: Reprimand Rebuttal

1. **Violations of UCMJ.** I accept full responsibility for my actions for the past several months. I have not lived up to the Army's expectations or mine. I did assault my wife and I did have an affair with Tara Brown for several months. I deeply regret the decisions I made but the current picture depicted by the investigation is truly not who I am and the actual events during the assault didn't occur as detailed during the investigation.

2. **The Assault.** On 17 February 2008, I did admit to my wife I was having an affair with Tara Brown after returning from the first day of Red Leg War. This was based on the suspicion and confrontation by her on the previous day. Wendy asked me if I loved her and I said yes. My wife slapped me and I proceeded to push her several times to get her out of my way. We both were in the den and she was blocking the exit, but I just wanted to get away from the situation. As I continued to push her, she caught my thumb in her mouth and bit. I pleaded with her to let me go and she did. As I walked away, she followed me into the bed room still screaming at me about how I had ruined our lives. In the guest room, she went to the closet where she printed off emails of my conversation with Ms. Brown. I told her that I was very sorry and tired of everything, but I just wanted to be left alone. She shouted that she wanted me to see them. I was ashamed, hurt and dismayed about the situation and everything else going on in my life after the deployment. I told Wendy not to approach me but she did. As she came up to me, I notice a plastic baton from her police woman Halloween costume on the floor. I picked up the baton and stuck her on the side of the head once. The force and type of object was not nearly enough to knock her to the ground nor did she ever go into unconsciousness. She went to her knees and began to cry with her head on the bed. She then said "Why don't you just kill me!" I said if you want to die then you know where the gun is at. **I didn't tell her go get the gun and I will shoot you in the fucking head!** My wife had since hidden the weapon from me because I was already seeing mental health. She was the only one who knew its location. I quickly grabbed the emails still in her hands and tore them up. I then left the bed room to throw the torn papers into the garbage can in the kitchen. As I was walking back to the bedroom to see if I had missed any papers, Wendy was sitting in the hallway. She then kicked me between the legs. I then knelt down and grabbed her around the neck, squeezing, and saying, "Stop it! This is not worth both of us getting hurt!!" I then told her I was very sorry and helped her to her feet. At that point we talked a couple hours about the affair and future plans.

3. **Me.** I am the Soldier that joined the Army at seventeen. As an E-1 private, I truly became to love the Army's structure and camaraderie. I was sexually assaulted by my male cousin when I was thirteen years old. I also grew up an only child and isolated in rural South Georgia. My

father was very strict and didn't allow me to participate in any extra curricular activities. Coming from South Georgia, I have a deep inferiority complex, but the Army gave me a chance to prove myself. Despite not being admitted to the West Point prep-school, I enlisted two additional years to get a green-to-gold scholarship. I really believed in the Army's philosophy of building people, giving them a sense of pride and belongingness. Unfortunately, some of my immediate supervisors didn't seem to fully support my goals and I really wanted to change that as a company commander.

4. **My research.** During my Master's Thesis I conducted a comparison and contrast case study on implementing change by Dr. John P. Kotter, a Harvard business professor who authored the Eight-Step Change Model, with the FM 6-22 Army Leadership and found they were the same in aspects of leading change. A fact very few military leaders know and this reconfirmed by desires and beliefs. The study confirmed that Soldiers are our most important resources and we can accomplish the impossible only if we invest properly. I poured my heart and soul in an attempt to make this work.

5. **My OPTEMPO.** The Army has the system to build strong leaders but we rarely make the system operate as it was design. I gave myself completely too every job in an attempt to facilitate this philosophy. But somewhere along the way, I lost who I was. My positions from the past few years included:

a. 1ID Division Battle Captain OIF II: February 2004 to July 2004.

b. 2-63 AR, Battle Captain OIF II: July 2004 to January 2005.

c. 2-63 AR, Battalion Maintenance Officer: February 2005 to August 2005. Due to BRAC relocation, I was tasked with organizing and monitoring equipment turn-in over 337 vehicles within 45 days for the relocation of 3BDE/1ID. This was accomplished with a depleted workforce due to post-OIF II and a daily fifteen hour workday.

d. 1-77 AR, Battalion S1: August 2005 to January 2006. I inherited and resubmitted over 286 awards for Soldiers from the previous deployment while simultaneously preparing to redeploy for 06-08. Several awards had to be rewritten despite several leaders having PCSd and ETSd. Leadership was brand new and companies were already training for deployment, so I rewrote several awards myself.

e. A/1-77 AR Commander: January 2006 to December 2006. All of my lieutenant experience is Field Artillery and I didn't attend a maneuver transition course due to deployment preparation.

1. Tank Gunnery: January 2006 to February 2006. Through hard work and perseverance, I accomplished the best crew score of the entire company commander's with a superior score of 806/1000 points.

AT-F-BFA

2. Hohenfels Mission Readiness Exercise: February 2006 to March 2006. The 2BCT/1ID compressed a 45 day exercise within 30 days. We experienced bitter cold but were able to complete all required training tasks.

3. Tank Gunnery: July 2006 to August 2006. We had to re-qualify several crews due to the change in the deployment dates and new arrivals. We accomplished this within ten days.

4. Deployment: August 2006 to December 2006.

a. Left-seat right seat ride. I attended the COIN academy in Taji. Soon after, I conducted a RECON for two areas of operations because of uncertainly were to implement tanks. We also conducted an accelerated left-seat-right-seat ride within two weeks and signed for equipment from a tank company and FA battery with-in two days.

b. Battle Rhythm. We were half the size of my Infantry Company, but we innovatively operated effective by task organizing down in the platoons. Our missions included conducting deliberate cordon and searches, SOI engagements, project assessments, and daily patrols. It was standard SOP for us to police, myself included, dead bodies from canals and streets. I was also personally involved in two small arm attacks, one involving my platoon leader being shot in his shoulder. We experienced strategic challenges such as OPERATION LION's GATE which was to maintain security by keeping insurgents out of Baghdad with barriers erected outside the city. My tactical challenge was that the local civilians couldn't tend their crops or walk their kids to school. My orders were to stencil Arabic on the barriers warning anyone not to breach these barriers or they would be shot.

5. Command inventories. I gave up command in December to take command of HHC/1-77 AR in Ramadi. I had to work around the other company's battle rhythms to perform my inventories. This was accomplished within three weeks within cities of Baghdad, Taji and Ramadi.

f. HHC/1-77 AR Commander, January 2007 to April 2008.

1. Deployment. The support platoon and HQs platoon was directly under my command and I was responsible for all logistical support for several ISF and coalition outposts across the battalion's footprint.

2. Casualties. The day I took command of over three hundred forty two Soldiers, I lost two junior NCOs. Several months later, two more of my Soldiers suffered gun shot wounds and one became a double amputee below the knees. Two months prior to redeployment, I lost a fine NCO on the TF Commander's PSD. I spoke at the memorial service for all of my Soldiers and I personally consoled family members with a phone call.

2. Administration. I also didn't falter in completing numerous congressionals, article 15s, OERs NCOERs and every deployment, PCS, ETS award in the company, including staff, prior to redeployment.

3. BRAC relocation. After redeployment, we were informed the BDE was moving to Grafenwhoer. Thus preparations were being made to move over 136 designated families within three months. The move was to be completed before the rigorous training in preparation for the next deployment.

4. Property Accountability. Property accountability was a humongous problem due to a very in-experienced supply sergeant and new XO. I would spend several hours monitoring, training and coaching just to maintain the required standard. Due to our tremendous hard work and effort of every leader I influenced, I left both commands without spending a penny.

5. Inferiority. My complex really plagued me during my command. My battalion commander was African American and my predecessor for Headquarters' Company was African American as well. There was a rumor going through our battalion FRG that my battalion commander was showing favoritism. The battalion executive officer and commander didn't have a good relationship and it showed in training meetings. There was always a constant power struggle and I felt that the battalion XO was trying to command my company by giving orders and requirements to my company executive officer daily. The high tension among the staff and myself along with everything else going on in my command affected me deeply. So I worked harder. I worked desperately just to get everyone's approval that I was good despite my color. I never mentioned anything to anybody because I was afraid that I would be labeled as using the race card. My complex worsened when I returned. I became obsessed with the presidential election. I would daily read all the bias comments, blogs and racial slurs about the President on several chat websites. I had a hard time accepting that some people will never accept me no matter how hard I worked and would question my sincerity and patriotism.

6. **Post Deployment.** After command, I became extremely depressed. I worked so hard in trying to maintain a standard, but I didn't accomplish it the way I had envisioned.

a. I felt cheated, I was held responsible for everything my companies did or fail to do, but I wasn't giving any latitude to make any decisions on training based on my assessment. Everything was dictated, and I didn't have the time to work on my mentorship program.

b. So many Soldiers fell by the waste side. Some reasons were that their immediate supervisors are being promoted at an accelerated rate. These subordinate leaders don't know how to counsel, teach and/or mentor. I still had junior NCOs fraternizing with Soldiers. Our Lieutenants were fresh college kids. Our staff was senior lieutenants and junior captains who had yet to go to their career courses. The only thing that helped us get through the deployment was adrenaline and knocking down fifty meter targets. It was never really about me, but I wanted so desperately to be part of the solution. We treat counseling as if it's just PART of what we do, but it needs to be the nucleus of a leader's existence. Everything should steam from this; the problem is most leaders don't see how it would or could work.

c. I became frustrated about where I was in my life and num to everything around me. I began to hate people, especially some of my egotistical peers who bragged about their deployment experiences and I started not to trust my leaders. I felt as if I was taken for granted just to get the job done. Whatever tough crisis, I did it. I didn't ask questions or question my

leaders decisions, I executed. I started drinking heavily after the deployment and would have inappropriate conversations with women online because I enjoyed it. I resented the constant arguments in my marriage and I also began to resent the Army standard. I began to feel it was false, a hoax, just a way to get what they wanted out of you and send you on your way with a badge on your chest damn near everyone received.

7. **Family.** My wife and I have known each other since high school. She was fourteen and I was seventeen when we met.

a. I would constantly drink, yell and break items in the house, thus my wife had me to self admit into mental health and ASAP this past August. I was embarrassed, I felt that I was going to be labeled and I wasn't completely truthful with my counselors about my true problems. My wife Wendy, like me, suffers from depression. We are unable to have any children and we have an extremely hard time finding decent medical insurance because of her heart murmur. She also suffers from carpal tunnel syndrome which limits her ability to work and perform activities in her studies. We constantly have to monitor her mother's medical condition since she lives by herself in Florida.

b. Wendy and I always had problems, but I have never hit her in anger or never had an actual affair until after my second deployment. I wanted to give my wife everything but I had nothing left after command. Trying to deal with my personal guilt, helping my wife deal with her depression, her stress of continuing her education, and financial difficulties became too much for me to bear. I thought I could handle my actions and feelings alone, but I was wrong. I felt horrible about my actions and bought a house, hoping things would get better but they didn't.

c. In an effort to stop the extra martial affair, I told Ms. Brown things about past affairs that were not true in an effort to ease out of the relationship. However, I would continue to see her constantly, especially when I became depressed about my marriage and profession. In addition, I only admitted to CID about one affair, not several as depicted in the investigation.

8. **The future.** I take full responsibility for my actions and expect to be punished.

a. I have recently learned through the post-deployment clinic that post-deployment anger is a form of male depression and I have taken steps to control it. It was never my intentions to strike my wife in anger or cheat; I still love her and this country and hopefully would like to have the opportunity to command again to take care of some unfinished business. I still possess the moral character to make the tough right choices and I undoubtedly have the knowledge and desire.

b. Despite my personal feelings of ineffectiveness, my Armor and FA experience still made me one of the best commanders in the Dagger brigade and my OERs illustrate that. I also accomplished this as the only African American maneuver commander in the brigade, another fact I am proud of. From my recent sessions with my therapist, I have found comfort in knowing that I did affect a few, some Soldiers went OCS, some warrant officers and others went Green-to-Gold. And this was accomplished only by observing my compassion in command.

AT-F-BFA

c. I know I am the right person for my current position and arguably one of the best motivational instructors in this brigade now. I am continuing my treatment in the post-deployment clinic and my presence has helped other Soldiers as well as myself. I am still doing everything to find my way again. I am just asking to have another opportunity to prove myself.

9. The point of contact for this memorandum is CPT Derrick T. Daniels at DSN 442-1528 or derrick.toraino.daniels@us.army.mil.

DERRICK T. DANIELS
CPT, AR
Senior CAD Instructor/Writer

04488339

# OFFICER EVALUATION REPORT

For use of this form, see AR 623-3; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO) SEE PRIVACY ACT STATEMENT IN AR 623-3

## PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK (YYYYMMDD) | e. BRANCH | f. DESIGNATED/SPECIALTIES/PMOS (WO) |
|---|---|---|---|---|---|
| DANIELS, DERRICK, T. | Redacted PII | CPTP | 20021001 | AR | 19A |

| g.1. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | g.2. STATUS CODE | h. REASON FOR SUBMISSION |
|---|---|---|
| HSB, 1-30TH FA, FORT SILL, OK 73503, TRADOC | 03 | Change of Rater |

| i. PERIOD COVERED FROM (YYYYMMDD) | THRU (YYYYMMDD) | j. RATED MONTHS | k. NONRATED CODES | l. NO. OF ENCL | m. RATED OFFICER'S AKO EMAIL ADDRESS (.gov or .mil) | n. UIC | o. CMD CODE | p. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| 20090401 | 20090930 | 6 | | 1 | derrick.toraino6497@us.army.mil | W2NT02 | TC | TD22 |

## PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)

| | NAME | SSN | RANK | POSITION | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|---|---|---|
| a. NAME OF RATER (Last, First, MI) | THOMAS, CELESTER | Redacted PII | MAJ | Battalion S3 | THOMAS.CELESTER Redacted PII | 20090923 |
| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | TALCOTT, CHRISTOPHER P. | Redacted PII | LTC | Battalion Commander | TALCOTT.CHRISTOPHER.P Redacted PII | 20090923 |
| c. NAME OF SENIOR RATER (Last, First, MI) | FANT, JOHN S. | Redacted PII | COL | Brigade Commander | FANT.JOHN.SAMUEL Redacted PII | 20090925 |

SENIOR RATER'S ORGANIZATION: HQ, 428th Field Artillery Brigade, Fort Sill, OK 73503

BRANCH: FA | SENIOR RATER TELEPHONE NUMBER: 580-442-4704 | E-MAIL ADDRESS (.gov or .mil): john.fant@us.army.mil

d. This is a referred report, do you wish to make comments? [X] [X] Yes, comments are attached [ ] No

e. SIGNATURE OF RATED OFFICER: DANIELS.DERRICK.TORAINO Redacted PII | DATE (YYYYMMDD): 20091002

## PART III - DUTY DESCRIPTION

a. PRINCIPAL DUTY TITLE: SENIOR INSTRUCTOR / WRITER | b. POSITION AOC/BR: 19A00

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES. REFER TO PART IVa, DA FORM 67-9-1.

Combined Arms Instructor for the United States Army Field Artillery School (USAFAS), Combined Arms Division. Serve as primary instructor for Army and Marine Corps lieutenants and international officers during the Combined Arms blocks of instruction. Responsible for instructing officers on combined arms organization, capabilities, limitations, tactics, and the employment of Fires Support systems. Responsible for the physical, intellectual, and professional development of Field Artillery lieutenants attending the Basic Officer Course. Reviews, evaluates, and recommends developments in combined arms doctrine, fire support doctrine, training, equipment, and organization of the Field Artillery.

## PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

CHARACTER Disposition of the leader: combination of values, attributes, and skills affecting leader actions

a. ARMY VALUES (Comments mandatory for all "NO" entries. Use PART Vb.)

| Value | Yes | No | Value | Yes | No |
|---|---|---|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | X | | 5. RESPECT: Promotes dignity, consideration, fairness, & EO | X | |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | X | | 6. SELFLESS-SERVICE: Places Army priorities before self | X | |
| 3. COURAGE: Manifests physical and moral bravery | X | | 7. DUTY: Fulfills professional, legal, and moral obligations | X | |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | | | | X | |

b. LEADER ATTRIBUTES / SKILLS / ACTIONS: First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb. **Comments are mandatory in Part Vb for all "No" entries.**

| | | | |
|---|---|---|---|
| b.1. ATTRIBUTES (Select 1) Fundamental qualities and characteristics | [X] 1. MENTAL — YES — Possesses desire, will, initiative, and discipline | [ ] 2. PHYSICAL — YES — Maintains appropriate level of physical fitness and military bearing | [ ] 3. EMOTIONAL — YES — Displays self-control; calm under pressure |
| b.2. SKILLS (Competence) (Select 2) Skill development is part of self-development; prerequisite to action | [ ] 1. CONCEPTUAL — YES — Demonstrates sound judgment, critical/creative thinking, moral reasoning | [ ] 2. INTERPERSONAL — YES — Shows skill with people: coaching, teaching, counseling, motivating and empowering | [X] 3. TECHNICAL — YES — Possesses the necessary expertise to accomplish all tasks and functions |
| | [X] 4. TACTICAL — YES — Demonstrates proficiency in required professional knowledge, judgment, and warfighting | | |

b.3. ACTIONS (LEADERSHIP) (Select 3) Major activities leaders perform: influencing, operating, and improving

| | | | |
|---|---|---|---|
| INFLUENCING Method of reaching goals while operating / improving | [X] 1. COMMUNICATING — YES — Displays good oral, written, and listening skills for individuals / groups | [ ] 2. DECISION-MAKING — YES — Employs sound judgment, logical reasoning and uses resources wisely | [ ] 3. MOTIVATING — YES — Inspires, motivates, and guides others toward mission accomplishment |
| OPERATING Short-term mission accomplishment | [ ] 4. PLANNING — YES — Develops detailed, executable plans that are feasible, acceptable, and suitable | [X] 5. EXECUTING — YES — Shows tactical proficiency, meets mission standards, and takes care of people/resources | [ ] 6. ASSESSING — YES — Uses after-action and evaluation tools to facilitate consistent improvement |
| IMPROVING Long-term improvement in the Army its people and organizations | [ ] 7. DEVELOPING — YES — Invests adequate time and effort to develop individual subordinates as leaders | [X] 8. BUILDING — YES — Spends time and resources improving teams, groups and units; fosters ethical climate | [ ] 9. LEARNING — YES — Seeks self-improvement and organizational growth; envisioning, adapting and leading change |

c. APFT: PASS DATE: 20090302 HEIGHT: 69 WEIGHT: 208 NO

d. OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF CPTs, LTs, CW2s, AND WO1s. WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED? YES NO N/A

NAME DANIELS, DERRICK, T. SSN Redacted PII PERIOD COVERED 20090401 - 20090930

## PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

☐ OUTSTANDING PERFORMANCE, MUST PROMOTE ☒ SATISFACTORY PERFORMANCE, PROMOTE ☐ UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE ☐ OTHER (Explain)

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-9 AND PART IVa, b, AND PART Vb, DA FORM 67-9-1.

Outstanding performance by a talented officer. CPT Daniels has done exemplary work throughout this rating period. He is a self starter who works well with minimal supervision and displays exceptional initiative. He volunteered to be the Assistant Operations Officer for the battalion, while still teaching Combined Arms classes. His execution of taskings and the battalion's Organization Inspection Program was flawless. In addition, he assisted with the rewrite of several classes in BOLC III. His in-depth understanding of Field Artillery and full spectrum operations proved invaluable to his students. His efforts were a direct result of an improved Program of Instructions for our lieutenants. Track this officer's career carefully. Send him to the resident Command and General Staff College as soon as possible. If we continue to groom him, he will excel. During our last Army Physical Fitness Test, CPT Daniels failed to meet height and weight standards as prescribed in AR 600-9. CPT Daniels performs physical fitness training twice a day. His efforts in physical fitness have resulted in a constant improvement toward meeting Army height and weight standards. I'm confident, that within six months, CPT Daniels will be within height and weight standards.

c. COMMENT ON POTENTIAL FOR PROMOTION.

This officer has potential for promotion to Major; he clearly possesses the skills to operate at the field grade level.

d. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

## PART VI - INTERMEDIATE RATER

Improved performance by CPT Daniels in training and educating new Field Artillery officers in their Basic Officer Leadership Course III Combined Arms Directorate classes. In the past five months, Derrick has handled his personal challenges professionally and continued to provide first class training to our officers at the U.S. Field Artillery School. He has worked very hard on his height/weight challenges and scored 287 on his APFT. Definitely has the potential to work at the field grade level and should be considered for promotion.

## PART VII - SENIOR RATER

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

☐ BEST QUALIFIED ☒ FULLY QUALIFIED ☐ DO NOT PROMOTE ☐ OTHER (Explain below)

I currently senior rate 28 officer(s) in this grade

A completed DA Form 67-9-1 was received with this report and considered in my evaluation and review ☒ YES ☐ NO (Explain in c)

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)

HQDA COMPARISON OF THE SENIOR RATER'S PROFILE AND BOX CHECK AT THE TIME THIS REPORT PROCESSED

CENTER OF MASS

RO: CPTP DANIELS DERRICK T
Redacted PII

SR: COL FANT JOHN S
Redacted PII

DATE: 2009 11 12

TOTAL RATINGS: 43

RATINGS THIS OFFICER: 2

c. COMMENT ON PERFORMANCE/POTENTIAL

CPT Daniels' performance these past five months showed his desire and determination to stay in the Army and be competitive for promotion to Major. Derrick's performance as an instructor and mentor to Field Artillery lieutenants continues to be an area of strength for him. He has done an excellent job retooling our Combined Arms Directorate's courses to increase the knowledge and abilities of FA lieutenants in maneuver warfare and the Army's warfighting functions. CPT Daniels has continued treatment for some of his personal challenges and I am confident that if he continues to improve he should be strongly considered for promotion to Major. Continue to develop and send to ILE.

d. LIST THREE FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Instructor Armor School; AC/RC; MiTT Chief



REPLY TO
ATTENTION OF:

**DEPARTMENT OF THE ARMY**
**HEADQUARTERS, 3RD INFANTRY DIVISION AND FORT STEWART**
**OFFICE OF THE STAFF JUDGE ADVOCATE**
**1791 GULLICK ROAD**
**FORT STEWART, GEORGIA 31314-5039**

AFZP-JA

MEMORANDUM FOR CPT Derrick T. Daniels, Redacted PII Charlie Troop, 57th Cavalry, Fort Stewart, Georgia 31314

SUBJECT: Acknowledgment of Receipt Board of Inquiry Proceedings

I received a copy of the Board of Inquiry report of proceedings, Findings and Recommendation Worksheet, and Transcript.

I have the right to submit to the GOSCA a statement or brief within 7 calendar days after receipt of the Board of Inquiry report of proceedings.

DERRICK T. DANIELS
CPT, U.S. Army
Respondent

22 MAY 2012
DATE



REPLY TO
ATTENTION OF:

**DEPARTMENT OF THE ARMY**
Combined Arms Division
Fires Center of Excellence
FT Sill, OK 73503

AT-F-BFA

5 November 2009

MEMORANDUM FOR Commander, 1ST Battalion, 30TH Field Artillery Regiment, Fort Sill, OK 73503.

SUBJECT: Rebuttal for Officer Evaluation Report for CPT (P) Derrick T. Daniels, Redacted PII, from 1 April 2009 to 30 September 2009.

1. HISTORY. I acknowledge and accept responsibility of my failure to maintain my weight standard as a Soldier in the United States Army. I come from an obese family, but during my fifteen years in the Army, it has been a manageable challenge. I have always been taped but able to meet my body fat standard. For the past year, I have battle several things which have contributed my weight gain.

a. Marital Separation. My wife and were separated for almost a year. Our finances were stretched and I became deeply depressed. I withdrew from my peers and would constantly eat alone as a comfort. During most of that time, I lacked the self discipline to cook healthy meals, normally a responsibility of my wife, because I lost my motivation to be competitive.

b. Hospitalization for mental evaluation. The ten days I didn't workout in the Red River Mental Clinic contributed to my lack of motivation. I hated working out with my peers after I returned to my unit because I felt they were judgmental. I became withdrawn from unit events and dreaded going to work.

c. Alcohol Abuse. The increased use of Alcohol from depression since my return from my second deployment also contributed to my weight gain.

2. PROGRESS. For the past six months, I have amended my relationship with my spouse. I have graduated from the ASAP program and I have been making constant progress to get my weight under control. To help with my progress and finances, I worked on weekends as a medical provider to the mental and physically challenged. I also was able to contribute to the team by working as the battalion AS3 for three months to help reestablish my self confidence. I am proud of my accomplishments and continuing my progress. I found new meaning to my life and self worth.

3. The point of contact for this memorandum is CPT Derrick T. Daniels at DSN (912) 767-3660 or derrick.toraino.daniels@us.army.mil.

//ORIGINAL SIGNED//
DERRICK T. DANIELS
CPT, AR
Senior CAD Instructor/Writer

04231608

# OFFICER EVALUATION REPORT

For use of this form, see AR 623-3; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO) SEE PRIVACY ACT STATEMENT IN AR 623-3

## PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK (YYYYMMDD) | e. BRANCH | f. DESIGNATED SPECIALTIES/PMOS (WO) |
|---|---|---|---|---|---|
| DANIELS, DERRICK, T. | Redacted PII | CPTP | 20031001 | AR | 19A |

| g.1. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | g.2. STATUS CODE | h. REASON FOR SUBMISSION |
|---|---|---|
| HSB, 1-30TH FA, FORT SILL, OK 73503, TRADOC | 03 | Change of Rater |

| i. PERIOD COVERED FROM (YYYYMMDD) | THRU (YYYYMMDD) | j. RATED MONTHS | k. NONRATED CODES | l. NO. OF ENCL | m. RATED OFFICER'S AKO EMAIL ADDRESS (.gov or .mil) | n. UIC | o. CMD CODE | p. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| 20080515 | 20090331 | 11 | | 1 | derrick.toraino6497@us.army.mil | W2NT02 | TC | TD22 |

## PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)

| | NAME | SSN | RANK | POSITION | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|---|---|---|
| a. NAME OF RATER (Last, First, MI) | ZIVKOVIC, THOMAS D. | Redacted PII | LTC | Director, CAD | ZIVKOVIC.THOMAS.D... Redacted PII | 20090417 |
| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | TALCOTT, CHRISTOPHER P. | Redacted PII | LTC | Battalion Commander | TALCOTT.CHRISTOPHER.P... Redacted PII | 20090420 |
| c. NAME OF SENIOR RATER (Last, First, MI) | FANT, JOHN S. | Redacted PII | COL | Brigade Commander | FANT.JOHN.S... Redacted PII | 20090425 |

SENIOR RATER'S ORGANIZATION: HQ, 428th Field Artillery Brigade, Fort Sill, OK 73503

BRANCH: FA

SENIOR RATER TELEPHONE NUMBER: 580-442-4704

E-MAIL ADDRESS (.gov or .mil): john.fant2@us.army.mil

d. This is a referred report, do you wish to make comments? [X] [X] Yes, comments are attached [ ] No

e. SIGNATURE OF RATED OFFICER: DANIELS.DERRICK.TORAINO... Redacted PII — DATE (YYYYMMDD): 20090511

## PART III - DUTY DESCRIPTION

a. PRINCIPAL DUTY TITLE: SR INSTRUCTOR / WRITER

b. POSITION AOC/BR: 19A00

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES. REFER TO PART IVa, DA FORM 67-9-1.

Combined Arms Instructor for the United States Army Field Artillery School (USAFAS), Combined Arms Division. Serve as primary instructor for Army and Marine Corps lieutenants and international officers during the Combined Arms blocks of instruction. Responsible for instructing officers on combined ar1 lms organization, capabilities, limitations, tactics, and the employment of Fires Support systems. Responsible for the physical, intellectual, and professional development of Field Artillery lieutenants attending the Basic Officer Course. Reviews, evaluates, and recommends developments in combined arms doctrine, fire support doctrine, training, equipment, and organization of the Field Artillery.

## PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

**CHARACTER** Disposition of the leader: combination of values, attributes, and skills affecting leader actions

**a. ARMY VALUES** (Comments mandatory for all "NO" entries. Use PART Va.)

| | Yes | No |
|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | | X |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | X | |
| 3. COURAGE: Manifests physical and moral bravery | | X |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | X | |
| 5. RESPECT: Promotes dignity, consideration, fairness, & EO | X | |
| 6. SELFLESS-SERVICE: Places Army priorities before self | X | |
| 7. DUTY: Fulfills professional, legal, and moral obligations | X | |

**b. LEADER ATTRIBUTES / SKILLS / ACTIONS:** First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb. **Comments are mandatory in Part Vb for all "No" entries.**

**b.1. ATTRIBUTES (Select 1)** Fundamental qualities and characteristics

- [ ] 1. MENTAL — Possesses desire, will, initiative, and discipline — YES
- [X] 2. PHYSICAL — Maintains appropriate level of physical fitness and military bearing — YES
- [ ] 3. EMOTIONAL — Displays self-control; calm under pressure — YES

**b.2. SKILLS (Competence) (Select 2)** Skill development is part of self-development; prerequisite to action

- [ ] 1. CONCEPTUAL — Demonstrates sound judgment, critical/creative thinking, moral reasoning — YES
- [X] 2. INTERPERSONAL — Shows skill with people: coaching, teaching, counseling, motivating and empowering — YES
- [ ] 3. TECHNICAL — Possesses the necessary expertise to accomplish all tasks and functions — YES
- [X] 4. TACTICAL — Demonstrates proficiency in required professional knowledge, judgment, and warfighting — YES

**b.3. ACTIONS (LEADERSHIP) (Select 3)** Major activities leaders perform: influencing, operating, and improving

INFLUENCING — Method of reaching goals while operating / improving

- [X] 1. COMMUNICATING — Displays good oral, written, and listening skills for individuals / groups — YES
- [ ] 2. DECISION-MAKING — Employs sound judgment, logical reasoning and uses resources wisely — YES
- [ ] 3. MOTIVATING — Inspires, motivates, and guides others toward mission accomplishment — YES

OPERATING — Short-term mission accomplishment

- [ ] 4. PLANNING — Develops detailed, executable plans that are feasible, acceptable, and suitable — YES
- [X] 5. EXECUTING — Shows tactical proficiency, meets mission standards, and takes care of people/resources — YES
- [ ] 6. ASSESSING — Uses after-action and evaluation tools to facilitate consistent improvement — YES

IMPROVING — Long-term improvement in the Army its people and organizations

- [X] 7. DEVELOPING — Invests adequate time and effort to develop individual subordinates as leaders — YES
- [ ] 8. BUILDING — Spends time and resources improving teams, groups and units; fosters ethical climate — YES
- [ ] 9. LEARNING — Seeks self-improvement and organizational growth; envisioning, adapting and leading change — YES

c. APFT: PASS DATE: 20090302 HEIGHT: 69 WEIGHT: 208 YES

d. OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF CPTs, LTs, CW2s, AND WO1s. WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED? YES NO [X]

NAME DANIELS, DERRICK, T. SSN Redacted PII PERIOD COVERED 20080515 - 20090331

**PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

☐ OUTSTANDING PERFORMANCE, MUST PROMOTE ☐ SATISFACTORY PERFORMANCE, PROMOTE ☒ UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE ☐ OTHER (Explain)

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-9 AND PART IVa, b, AND PART Vb, DA FORM 67-9-1.

CPT(P) Daniels work performance as a Combined Arms Division Instructor has been utterly superb. He is an outgoing and energetic instructor who displays exceptional platform manner. He is technically and tactically competent and fully understands both fire support and maneuver doctrine. CPT(P) Daniels truly cares about his students, and routinely uses his personal time to coach and mentor Lieutenants. CPT(P) Daniels also possesses an uncanny ability to cope with stress. Though he has had an extreme amount of personal stress the past few months, it has not affected his duty performance. Unfortunately, his personal conduct does not match his duty performance. During this rating period CPT(P) Daniels received a General Officer Memorandum of Reprimand (GOMOR) for conduct unbecoming an Officer. CPT(P) Daniels failed manage his personal affairs and the GOMOR is the direct result of him not living up to the Army's high personal moral standards. Though his work performance his been superb, it has been overshadowed by his personal misconduct.

c. COMMENT ON POTENTIAL FOR PROMOTION.

CPT(P) Daniel's personal misconduct and disregard for the Army Values have severely limited any further potential for promotion within the Army. Do not promote to Major. Retain as a Captain as an instructor or staff officer.

d. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

**PART VI - INTERMEDIATE RATER**

Solid performance training and education new Field Artillery Second Lieutenants in the art of maneuver operations and warfare. CPT(P) Daniels performance was overshadowed with personal misconduct that resulted in a General Officer Memorandum of Reprimand. Do not promote to Major but retain on active duty so CPT(P) Daniels has the opportunity to overcome the personal challenges that afflicted him during this rating period.

**PART VII - SENIOR RATER**

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

☐ BEST QUALIFIED ☐ FULLY QUALIFIED ☒ DO NOT PROMOTE ☐ OTHER (Explain below)

I currently senior rate 28 officer(s) in this grade

A completed DA Form 67-9-1 was received with this report and considered in my evaluation and review ☒ YES ☐ NO (Explain in c)

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)

HQDA COMPARISON OF THE SENIOR RATER'S PROFILE AND BOX CHECK AT THE TIME THIS REPORT PROCESSED

*BELOW CENTER OF MASS RETAIN*

RO: CPTP DANIELS DERRICK T
Redacted PII

SR: COL FANT JOHN S
Redacted PII

DATE: 2009 05 28

TOTAL RATINGS: 24

RATINGS THIS OFFICER: 1

c. COMMENT ON PERFORMANCE/POTENTIAL

CPT(P) Daniels received a General Officer Memorandum of Reprimand during this rating period for misconduct as a direct result of challenges in his personal life. However, his work performance was solid and CPT(P) Daniels continued to provide excellent training in developing Field Artillery Second Lieutenants in their maneuver operations skills as part of the Combined Arms Directorate at the Field Artillery School. Retain on Active Duty and allow CPT(P) Daniels to continue to receive medical treatment and overcome the personal challenges that afflicted him during this rating period.

d. LIST THREE FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Instructor, Staff Officer, AC/RC



REPLY TO ATTENTION OF:

**DEPARTMENT OF THE ARMY**
Combined Arms Division
Fires Center of Excellence
FT Sill, OK 73503

AT-F-BFA

21 May 2009

MEMORANDUM FOR Commander, 1st Battalion, 30th Field Artillery Regiment, 428th FA BDE, Fort Sill, OK 73505

SUBJECT: Referral Comments for Officer Evaluation Report (OER) Referral 15MAY08-30MAR09, Derrick T. Daniels, CPT, AR, Redacted PII

1. Sir, it's not my intentions to influence anyone in changing my evaluation of the rating period. The rating reflects by performance accordingly; however I want to detailed certain aspects of my performance and character that was not specifically detailed in my evaluation.

2. During the investigation, I asked to be left on the platform and was. Today its still a daily struggle with uncertainty about my military career, marriage and my financial stability. It would have been too easy in allowing my personal struggles affect the way I coached, mentored and taught our future leaders. My passion in seeing others succeed never died, just like always. Not once did I allow my displeasure or depression degrade our Lieutenants patriotism and service. Whatever your personal convictions were at the time, you believed in me and I didn't fail you in that aspect. In addition, the evaluation does not mention my attempts to seek medical treatment before the personal misconduct nor any diagnosis by my physician based on this rating period.

3. I have always believed my teaching style is unorthodox and despite push back from peers; I started teaching in the scenario-based format before senior Army leaders constituted it necessary in the school house. My Field Artillery and Armor background has given me incite about combined arms relationships more than most. And even though I didn't receive an initial counseling when I came here about my specific duties and responsibilities, I used that as initiative in passing along my experience and expertise. During this period, I bridged the gap in Fire Supporters truly understanding the purpose and significance of supporting maneuver. Often times I wouldn't hesitate in helping Lieutenants with fire Support instruction, especially when we were shorted handed instructors during tests and JCATs. Not part of my duty description, but part of my character. So many students have approached me and thanked me personally. I was able to instill a purpose because my experiences and knowledge is an invaluable asset to your organization.

4. The point of contact for this memorandum is CPT Derrick T. Daniels at DSN 442-1528 or derrick.toraino.daniels@us.army.mil.

DERRICK T. DANIELS
CPT, AR
Senior CAD Instructor/Writer

# REPORT TO SUSPEND FAVORABLE PERSONNEL ACTIONS (FLAG)

For use of this form, see AR 600-8-2; the proponent agency is MILPERCEN.

## SECTION I - ADMINISTRATIVE DATA

| 1. NAME *(Last, First, MI)* | 2. SSN | 3. RANK |
|---|---|---|
| DERRICK, DANIELS T. | Redacted PII | CPT |

4. [X] On active duty [ ] Not on active duty [ ] On ADT

5. ETS/ESA/MRD

6. UNIT ASSIGNED AND ARMY MAJOR COMMAND: Charle Troop, 57th Cav, 1218 William H. Wilson Ave

7. STATION *(Geographical location)*: Fort Stewart, Georgia 31314

8. PSC CONTROLLING FLAGGING ACTION AND TELEPHONE NUMBER

9. THIS ACTION IS TO:

[X] Initiate a flag *(Sections II and V only)*

[ ] Transfer a flag *(Sections III and V only)*

[ ] Remove flag *(Sections IV and V only)*

## SECTION II - INITIATE A FLAG

10. [X] A FLAG IS INITIATED, EFFECTIVE 20100525 FOR THE FOLLOWING REASON:

NON-TRANSFERABLE

[ ] Adverse action (A)

[ ] Elimination - field initiated (B)

[ ] Removal from selection list - field initiated (C)

[ ] Referred OER (D)

[ ] Security violation (E)

[X] HQDA use only - elimination or removal from selection list (F)

TRANSFERABLE

[ ] APFT failure (J)

[ ] Weight control program (K)

## SECTION III - TRANSFER A FLAG

11. [ ] A FLAG IS TRANSFERED FOR THE FOLLOWING REASON:

[ ] Adverse action - HQDA directed reassignment (G)

[ ] Adverse action - punishment phase (H)

[ ] APFT failure (J)

[ ] Weight control program (K)

[ ] Supporting documents attached? [ ] Yes [ ] No

## SECTION IV - REMOVE A FLAG

12. [ ] A FLAG IS REMOVED, EFFECTIVE ______ FOR THE FOLLOWING REASON:

[ ] Case closed favorably (C)

[ ] Disciplinary action taken (D)

[ ] Soldier transferred to a different Army component or discharged while case in process *(destroy case file)* (E)

[ ] Other final action (E)

## SECTION V - AUTHENTICATION

DISTRIBUTION

1 - Unit Commander
1 - PSC
1 - F&AO
1 - Commander, gaining unit *(transfer flag only)*

| NAME, RANK, TITLE, AND ORGANIZATION | SIGNATURE | DATE |
|---|---|---|
| Ann Nollett, Chief, Officer Retirements and Separations | for [signature], LTC | 20100525 |

DA FORM 268, JUN 87 EDITION OF 1 JAN 80 IS OBSOLETE USAPPC V1.00

FOR: Commander, Headquarters, U.S. Army Human Resources Command, ATTN: AHRC-OPL-R, 1600 Spearhead Division Avenue, Fort Knox, Kentucky 40122

SUBJECT: Acknowledgment of receipt of Officer Elimination Initiation Memorandum

1. I have read, understand and acknowledge receipt of the officer Elimination Initiation Memorandum recommending my involuntary separation from active duty on 1 June 2011.
(Date)

2. I understand that I have thirty (30) calendar days from the above date to submit matters in rebuttal to this memorandum. If I fail to submit matters within the prescribed time, my rights will be forfeited.

3. I elect the following (initial one):

a. DTD I elect to submit a statement or document in my behalf.

b. ______ I elect not to submit a statement in my behalf.

c. ______ I elect to submit a resignation (non-probationary only)

d. ______ I elect to submit a request for a Board of Inquiry(BOI) (non-probationary only)

e. ______ I elect to submit a retirement (must have at least 19 years 6 months)

Signature: [signature]
Name (Print): DERRICK T. DANIELS
Rank: CPT Branch: AR
SSN: Redacted PII



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 3RD INFANTRY DIVISION AND FORT STEWART
OFFICE OF THE STAFF JUDGE ADVOCATE
1791 GULICK AVE, BLDG 709
FORT STEWART, GEORGIA 31314-5039

REPLY TO
ATTENTION OF:

AFZP-JA

MEMORANDUM FROM Staff Judge Advocate, 3rd Infantry Division and Fort Stewart, Fort Stewart, Georgia 31314

FOR See Distribution

SUBJECT: Appointment of Board of Inquiry – CPT Derrick T. Daniels, Redacted PII

1. Pursuant to the 21 February 2012 memorandum, MG Abrams has appointed a formal board of inquiry under the provisions of AR 600-8-24, Chapter 4, to consider whether CPT Derrick T. Daniels, Charlie Troop, 57th Calvary, Fort Stewart, Georgia 31314 should be retained or involuntarily separated from the Army.

2. The board is subject to the call of the president and will consist of members in positions indicated:

    a. COL Douglas Cardinale, President

    b. LTC Stanley Fugate, Member

    c. LTC Bryan Hathaway, Member

    d. CPT Todd Chard, Recorder

    e. CPT Lesley Cruce, Legal Advisor

3. This board of inquiry will be governed by applicable provisions of AR 15-6 and AR 600-8-24, Chapter 4, and convene at Fort Stewart, Georgia. The findings and recommendations will be made in accordance with AR 600-8-24, paragraph 4-15.

4. A board of inquiry takes priority over all other duties, unless a member is properly excused by the appointing authority. The board president will ensure the respondent is granted the time, as is reasonably necessary, to prepare and present the case. Undue delay will not be permitted and the case will be conducted as expeditiously as possible. Additionally, the board president is responsible for determining the location, time, duty uniform, and date for the board.

5. The respondent will be referred to the board by separate correspondence. The board recorder will notify the respondent in writing of the time and place that the board of inquiry will convene. This notice will be given not less than 30 calendar days prior to the date established by the president for the board to convene.

AFZP-JA
SUBJECT: Appointment of Board of Inquiry – CPT Derrick T. Daniels

6. Prior to performing board duties, the president will arrange for a legal briefing by the Office of the Staff Judge Advocate (OSJA), Administrative Law Division. An appointment for the briefing may be obtained by contacting Mr. Wes Stephens at 912-767-2953.

7. Board members should not plan any absences without first contacting the board president. Once notified of a pending board date, board members requesting excusal must do so in writing, as soon as possible. Requests will be submitted through the board president to the Appointing Authority. Upon notification by the board president of a pending excusal, the Staff Judge Advocate, will act on the approval and appoint an alternate board member, if required.

8. Reports of proceedings will be summarized, prepared insofar as practicable, according to the general instructions set forth in AR 15-6, Chapter 3, Section III and AR 600-8-24, paragraph 4-15c and Figures 4-1 and 4-2. Reports will be submitted to the Criminal Law Division, OSJA, Building 709, 912-767-2952.

9. POC is SGT Rodolfo Campos, Pre-Trial NCO, at 767-2952.

FOR THE COMMANDER:

RANDALL J. BAGWELL
COL, JA
Staff Judge Advocate

DISTRIBUTION:
COL William Finley
LTC Lance Curtis
LTC Gary Gillon Jr.
CPT Stephen Cincotta
CPT Lesley Cruce



REPLY TO
ATTENTION OF:

DEPARTMENT OF THE ARMY
HEADQUARTERS, 3RD INFANTRY DIVISION AND FORT STEWART
OFFICE OF THE STAFF JUDGE ADVOCATE
1791 GULICK AVE, BLDG 709
FORT STEWART, GEORGIA 31314-5000

AFZP-JA

FEB 21 2012

MEMORANDUM FOR Commander, 3rd Infantry Division and Fort Stewart, Fort Stewart, Georgia 31314

SUBJECT: Selection of Board of Inquiry Members- CPT Derrick T. Daniels, Redacted PII

1. PURPOSE. To select personnel to serve as members of a Board of Inquiry in the case of CPT Daniels T. Derrick, Redacted PII Charlie Troop, 57th Cavalry, Fort Stewart, Georgia 31314.

2. DISCUSSION.

a. On 25 May 2011, the Human Resources Commander, MG Sean J. Byrne, initiated officer elimination proceedings against CPT Derrick T. Daniels (encl 1). CPT Daniels acknowledged receipt on 1 June 2011 and elected to submit a statement or document on his behalf (encl 2). CPT Daniels' chain of command recommends that he be subject to a Show Cause Board based on his display of poor judgment and credibility as an Officer (encl 3).

b. Pursuant to paragraph 4-6(b), AR 600-8-24, you, as the General Court-Martial Convening Authority, are authorized to convene Boards of Inquiry. Paragraph 4-7, AR 600-8-24, provides that a Board of Inquiry will consist of at least three voting officers. The president of the board will be the grade of Colonel or above and senior to the respondent. Other voting members will be RA officers on AD in the grade of Lieutenant Colonel or above and senior in grade and rank to the respondent. The board will be composed of experienced, unbiased officers.

c. At Enclosure 4 is a list of available Colonels and Lieutenant Colonels within your command that meet the criteria set out above. You are not bound to select board members from the list submitted, and may select any member of this command meeting the requirements of AR 600-8-24 to serve as a member of a Board of Inquiry.

d. Pursuant to AR 15-6, paragraph 5-2, you or your delegate may, without showing cause, excuse board members before the board is assembled.

3. RECOMMENDATIONS.

a. That you select one board of inquiry, consisting of three members. That you select three alternate members for the board.

AFZP-JA
SUBJECT: Selection of Board of Inquiry Members- CPT Derrick T. Daniels, Redacted PII

b. That you delegate to the Staff Judge Advocate or, in his absence or unavailability, the Acting Staff Judge Advocate, the authority to excuse individual members before the board is assembled. That you delegate to the Staff Judge Advocate, or, in his absence or unavailability, the Acting Staff Judge Advocate, the authority to detail alternate board members.

4. SELECTION PROCEDURES.

a. Indicate on Enclosure 4 your selection of this board by placing "1, 2, and 3," next to the names of the three members selected to sit on the board.

b. Indicate your selection of the 3 alternate members, one O-6 and two 0-5's, for this board by placing "A1, A2, A3" next to the alternate members.

RANDALL J. BAGWELL
COL, JA
Staff Judge Advocate

4 Encls
1. Initiation of Elimination
2. Acknowledgment and Rebuttal Matters
3. Chain of Command Recommendations
4. List

ACTION BY THE COMMANDING GENERAL:

1. The recommendations of the Staff Judge Advocate are approved.

2. I have indicated my selection of the Board of Inquiry members and alternate members for the board of CPT Daniels.

3. I specifically delegate the detailing and excusal procedures stated in paragraph 3b of the basic memorandum to the Staff Judge Advocate, or, in his absence or unavailability, the Acting Staff Judge Advocate. The Staff Judge Advocate or his designee shall appoint a recorder and legal advisor to the board. The Staff Judge Advocate or his designee will inform me as soon as practicable of any deficiencies or other issues regarding board membership.

ROBERT B. ABRAMS
Major General, US Army
Commanding



REPLY TO
ATTENTION OF:

**DEPARTMENT OF THE ARMY**
**HEADQUARTERS, 3RD INFANTRY DIVISION AND FORT STEWART**
**942 DR BEN HALL PLACE, BUILDING HQ001**
**FORT STEWART, GEORGIA 31314-5000**

AFZP-CG

AUG 2 2 2011

MEMORANDUM FOR Commander, Headquarters, U.S. Army Human Resources Command, ATTN: AHRC-OPL-R, 1600 Spearhead Division Avenue, Fort Knox, KY 40122

SUBJECT: Officer Initiation of Elimination Recommendation

1. I recommend a board of inquiry be initiated against CPT Derrick T. Daniels to determine whether he should remain in the Army.

2. I have reviewed the 25 May 2010 initiation of elimination memorandum and its enclosures, as well as the chain of command recommendations and the rebuttal matters submitted by CPT Daniels.

3. The point of contact for this memorandum is CPT Todd Chard, 912-767-6585, or todd.chard@us.army.mil.

ROBERT B. ABRAMS
Major General, US Army
Commanding

SUBJECT: Elimination Recommendation

I have reviewed the allied documents and recommend:

**Company Commander** (Name/Rank)

(Signature)

(Date)

---

I have reviewed the allied documents and recommend:

I recommend that we (the Army) conduct the Show Cause Board to determine the disposition of CPT Derek Daniels case. The seriousness of the allegations is such that he ought not to be in the position of leading soldiers. By default that effectively ends his Army Career. I would ask the board to carefully consider the characterization of service and the impact it will have on the rest of life.

**Battalion Commander** (Name/Rank) LTC Timothy J. Gauther

(Signature) [signature]

(Date) 15 July 2011

---

I have reviewed the allied documents and recommend:

Proceeding with the Show Cause Process by conducting a Board of Inquiry at HQDA. The Board is appropriate to consider the officer's rebuttal matters and potential PTSD related issues in their decision.

**Brigade Commander** (Name/Rank) COL KEVIN C. COYER

(Signature) [signature]

(Date) 18 July 2011



DEPARTMENT OF THE ARMY
U.S. ARMY HUMAN RESOURCES COMMAND
1600 SPEARHEAD DIVISION AVENUE, DEPARTMENT 100
FORT KNOX, KY 40122-5100

REPLY TO
ATTENTION OF:

AHRC-ZA

FEB 03 2012

MEMORANDUM THRU Commanding General, 3d Infantry Division (Mechanized) Fort Stewart, Georgia 31314

FOR CPT Daniels, Derrick T., Redacted PII, AR, RA, Charlie Troop, 57th Cavalry, Fort Stewart, Georgia 31314

SUBJECT: Initiation of Elimination Processing

1. After careful consideration, I have decided to continue with the initiation of elimination processing in your case. Prior to this determination, I reviewed your rebuttal and all relevant documentation, including the recommendation of your chain of command.

2. This case will be returned to the General Officer Show Cause Authority for a Board of Inquiry to be conducted in accordance with Army Regulation 600-8-24, Officer Transfers and Discharges, chapter 4.

3. Point of contact for this action is Mrs. Teaia White at teaia.white@conus.army.mil or (502) 613-6462.

GINA S. FARRISEE
Major General, USA
Commanding



**DEPARTMENT OF THE ARMY**
1-306TH INF BN, 188TH INF BDE
1239 HARMON AVE, BLDG 9592
FORT STEWART, GA 31314-5637

AFKA-DVE-GA 30 JUNE 2011

MEMORANDUM THRU Commanding General, 3rd Infantry Division, BLDG #1, Fort Stewart, Georgia 31314

MEMORANDUM TO Major General Sean Byrne, Commander, U.S. Army Human Resources Command, 200 Stovall Street, Alexandria, Virginia 22332-0478

SUBJECT: Rebuttal for elimination

1. It is my intention to present migrating and extenuating circumstances to evidence that contradicts why I should not be retained on active duty status. The GOMOR filed in my official records contains allegations that are simply untrue.

2. Here are the accurate facts:

a. I did not have more than one extramarital relationship. I did not impregnate a deployed Soldier's wife. The only evidence of any impregnation came from a statement by Ms. Tara Brown, who has now recanted her story. (Enclosure 1)

b. I never admitted to having more than one affair to Fort Sill, CID. I request the government to review the recorded conversation reference to the domestic violence case involving CPT Derrick Daniels and Mrs. Wendy Daniels.

c. I was never arrested for or convicted of domestic violence in a civilian court. The reported incident was past 72 hours, not the night after a sexual encounter as implied by the reprimand. The domestic violence occurred after the conversation between my wife and Ms. Brown. I request the government contact the Lawton district attorney and the Fort Sill CID for verification.

d. Both referred OERS are tied to the GOMOR, directly and indirectly. The first was for receiving the GOMOR. The second was based on not meeting height and weight standards due to my heavy drinking, depression and lack of motivation. Despite my transgressions, I was never relieved of duty based on my knowledge and experience. I request the government reference the attached rebuttals on both referred reports.

3. Without Ms. Brown's false statement, my reprimand may have been filed in my local file, or restricted fiche. The GOMOR was administered prior to a full medical evaluation of my mental condition.



**DEPARTMENT OF THE ARMY**
1-306TH INF BN, 188TH INF BDE
1239 HARMON AVE, BLDG 9592
FORT STEWART, GA 31314-5637

AFKA-DVE-GA 30 JUNE 2011

MEMORANDUM THRU Commanding General, 3rd Infantry Division, BLDG #1, Fort Stewart, Georgia 31314

MEMORANDUM TO Major General Sean Byrne, Commander, U.S. Army Human Resources Command, 200 Stovall Street, Alexandria, Virginia 22332-0478

SUBJECT: Rebuttal for elimination

1. It is my intention to present migrating and extenuating circumstances to evidence that contradicts why I should not be retained on active duty status. The GOMOR filed in my official records contains allegations that are simply untrue.

2. Here are the accurate facts:

a. I did not have more than one extramarital relationship. I did not impregnate a deployed Soldier's wife. The only evidence of any impregnation came from a statement by Ms. Tara Brown, who has now recanted her story. (Enclosure 1)

b. I never admitted to having more than one affair to Fort Sill, CID. I request the government to review the recorded conversation reference to the domestic violence case involving CPT Derrick Daniels and Mrs. Wendy Daniels.

c. I was never arrested for or convicted of domestic violence in a civilian court. The reported incident was past 72 hours, not the night after a sexual encounter as implied by the reprimand. The domestic violence occurred after the conversation between my wife and Ms. Brown. I request the government contact the Lawton district attorney and the Fort Sill CID for verification.

d. Both referred OERS are tied to the GOMOR, directly and indirectly. The first was for receiving the GOMOR. The second was based on not meeting height and weight standards due to my heavy drinking, depression and lack of motivation. Despite my transgressions, I was never relieved of duty based on my knowledge and experience. I request the government reference the attached rebuttals on both referred reports.

3. Without Ms. Brown's false statement, my reprimand may have been filed in my local file, or restricted fiche. The GOMOR was administered prior to a full medical evaluation of my mental condition.

4. While my actions are my responsibility, please consider the circumstances under which I was operating at the time:

a. I was the only commander in my Brigade that took a tank company to combat only to give up command of that company within three months in order take command of a headquarters company three times the size in a completely different operational environment during the surge (Enclosure 13).

b. I was under constant duress as the tank company commander not knowing our area of operation until after boots on the ground in Kuwait. Understanding my area of operation was extremely important to me, especially being attached to an infantry battalion. We were half the size of an Infantry company. Firepower, speed, audacity and the elements of surprise are our tenants. My company trained on HMMWVs, giving us dual abilities, however, not having a clue about the terrain, enemy and civilian capacity made mission planning virtually impossible. I was under constant pressure, I felt like I was in a helpless situation and Soldiers were going to die needlessly. I had to constantly think outside the box and make a lot of assumptions in order to fill in the information gaps.

c. I was part of the last legacy combat brigade. The majority of our training was conducted with my organic tank battalion until two months prior to deployment. We had to establish new relationships and learn different techniques, tactics and procedures under the Infantry battalion. Company cross attachments should have taken place several months before deployment.

d. In Kuwait, we discovered we were going to be attached to another brigade headquarters. We now had new expectations and a late start on learning the external environment. This was very oppressive in developing battlefield visualization.

e. Policing up dead bodies during the height of the sectarian violence became part of our daily battle rhythm. My Soldiers were completely unprepared, but we adapted to the new challenge. On several occasions, my patrol would fish the decaying, mutilated bodies from the canals and ditches so family members could identify their loved ones. Eighty percent of our training focused on kinetic operations. I didn't have a problem killing combatants, but it was the sheer disregard for and brutality on human life that really affected me.

f. Operation Lion's Gate: This was a complete failure in respects to south Baghdad. If the concept was effective, then there wouldn't be any need for the surge. The intent of this operation was the hold phase of the clear, hold, then builds strategy. This defensive strategy used Texas barriers as blocking positions in order to keep the "insurgents" from entering the city through uncontrolled access. My area of operation was comprised majority Sunni in southern rural Baghdad. The barriers would channel people through checkpoints in which they were searched by the Iraqi Police. My tactical problem was the IPs, mostly Shi'a, were suspected of carrying out a lot of the sectarian violence and extortion at these very checkpoints. In addition, the locals expressed they just wanted to farm their fields and escort their children to some of the very few schools in the area. These barriers would force them to travel additional miles plus they were frighten. I talked to my operations officer about this on several occasions. "Derrick, this is a

high visibility mission. If we continue to have violators, then paint instructions in Arabic on the barriers. Give them fair warning, then if you must, use escalation of force." "Sir, Are you serious? You want us to shoot these people?" I was caught off guard and extremely perplexed. What would be the engagement criteria? What demographic of people, military age males? You want me to develop this at the company level? I talked to these people on several occasions. I had dinner and hot tea with the local officials regularly and couldn't fathom my next KLE. "Hey, I know you are challenged with getting to the markets, work in your fields and take your children to school. We are going to still help you, but let your people know if any of my Soldiers catch anyone slipping past or removing the barriers, we will shoot them." I didn't know what to do; I didn't know what to tell them. Unlike my higher headquarters, I experienced firsthand the brutality of intimidation. So how are we any different? Leaders' echelons above were far from reality. I constantly thought about the men we found with their hands bound and heads with bullet holes. How their mothers, while crying, would beat and scratch themselves violently out of frustration. Sometimes we found their bodies piled like corkwood near intersections just several feet away from police checkpoints. That helpless feeling continued to nag at me. But there were the second and third order effects I worried about and had to consider. Are we going to lose the neutral populace in harboring Sunni insurgents? Are we going to experience an increase of IEDs? How is this going to impact my main mission of protecting the Baghdad International Airport (BIAP)? The perception was we ultimately support the Shi'a people and want them to control the city and eventually the government. I felt isolated...on an island. I was the buffer and no one else had to deal with this matter. I had made up my mind I would give up the guidon if need be, but I was also conflicted about the lasting impression on my Soldiers. After very little debate with my First Sergeant, I decided not to give the order. I did not want to put my Soldiers in such a grey situation. But I was constantly afraid of higher command using AEROSTAT reporting my AO being infiltrated through the blocking positions. This was CCIR for the Division. It burdened me that I could possibly get relieved over something I just didn't believe in or couldn't control and I felt useless about not providing any logical explanation that the people could understand.

g. It was very exhausting supporting the "Put an Iraqi Face on Everything" concept. We worked endlessly with our counterparts we hardly knew and trust. It was demoralizing, at times, giving them credit for things they didn't earn. We understood the strategic requirements, but it was hard supporting things far removed from the truth. I was on a combat patrol in southern Baghdad once when a sniper shot my Platoon Leader. The calculated location from the attack was a Shi'a Mosque. My battalion headquarters wanted to make this an opportunity for a good Iraqi news campaign. The tactical sacrifice for this strategic intent resulted in a four-hour wait in requesting and receiving host nation support to clear the Mosque. Once the Iraqi Police arrived, it took them less than five minutes to clear the building; obviously the sniper that shot my Lieutenant was gone.

h. My combat patrol was attacked with small arms in southern Bagdad, DEC 2007.

i. In my second command, I had constant leadership challenges and clashes with the battalion staff. I suffered on several occasions with certain officers tasking my support platoon without my knowledge. They fail to understand my insight and didn't trust my leadership style. I felt

marginalized at times about my knowledge and expertise. Someone was even making racial statements about my battalion commander and me in the porta-johns. In our culture we learn that the boss is the man. It's up to us to adapt to his leadership style. After all, the Army placed him in that position for a reason. So African American Officers learn our leadership style from past commanders just like everyone else. It's no different for us; we don't wake up one day and say I am going to try something different. But ironically, we are deemed arrogant, loud, unreasonable, and can't make decisions under pressure. But this is the norm right? Something African American officers just need to accept. It is reality, just get over it. These were the things I kept telling myself constantly. This was still extremely belittling, causing me to feel guilty for doing what I knew was right. Regardless, they were putting my men lives in jeopardy by not allowing them time to conduct mission planning and rehearsals. Everyone wanted the glory but I was the one responsible.

j. My combat patrol was attacked with an IED in Western Ramadi, JAN 2008.

k. My logistical support mission in Ramadi. Major end items of my theater property were under Iraqi control. After a much heartfelt concern to my battalion commander, I was ordered to do this. Sustainment of all Iraqi outposts was my main effort. But as a company commander, I am also responsible for serviceability and accountability of all equipment. I was constantly frustrated during my inventories and inspections. How can I hold an Iraqi police official accountable when they are not in the Army? How much of this dilemma is visible above the battalion level? This was another leadership challenge for me trying to sustain a strategic problem. The Iraqis are culturally deficient in understanding logistical sustainment and a frail government simply couldn't support it. The Iraqi Police used my M113s as entry control point vehicles at various outposts. My Mortars were constantly dispatched every time a generator and/or a M113 became inoperable, most times due to lack of maintenance. We often found the Iraqis had urinated and defecated in the engine compartment, access panels and floor boards only because they didn't want to exit the vehicles. My mechanics had to crawl through this in triple digit heat. I was furious. But the station commanders didn't care. They felt like we were their servants. The generators running the Iraqi Police stations were not in US nor Iraqi inventories. Retrieving parts was almost impossible and contract generator mechanics couldn't go outside the wire. So we were on a constant mission of "quick fixes". We also maintained a high and needless up-tempo due to fuel being sold on the black market. After a careful mission analysis, we determined we can sustain Iraqi military operations with two fuel runs a week. Within 48 hours of refueling operations however, we would receive requests for fuel drops. This fuel consumption was virtually impossible. Even with a steady state of continued operations; the rate of consumption should have never been black in that period of time. As the Iraqi Police expanded their area of operations south, so did my logistical support requirement. I suffered from many sleepless nights. Corruption was the indirect driving factor for several of my operations.

l. An Iraqi Police outpost was attacked with a VBIED while I was checking troops in Western Ramadi, JULY 2008.

AFKA-DVE-GA
SUBJECT: Rebuttal for elimination

m. I lost three Soldiers, SGT Aultz, SGT Gist and SSG Ruoff. I spoke at memorials and talked to the families personally. They asked questions about information I couldn't give them pending complete investigations. I remember the pain in their voices, the anguish as my mind reverted back to our mission readiness. One young Soldier, CPL Rooney, is a double amputee below the knees. CPL Rooney was a great kid. He was a 19D problem child the First Sergeant put under his wing by making him his driver. After proper rehabilitation, he was placed in the Mortars and became a section leader. His patrol was attacked with an IED just several feet away of an Iraqi checkpoint. The policemen were all sleeping inside during the attack. CPL Rooney was back from R&R less than a week and was a newlywed. I was emotionally drained at this point of the deployment. I became almost hollow and felt like a failure. We pushed so hard to establishing the perception the Iraqi Police were ready to take the helm. We bought into it, but now my Soldier's life is altered forever because of this.

n. I was under a FLIPL investigation for two months after my command for organic property I signed for in Iraq. During my second command, I traveled to three locations in order to inventory all my equipment. Some property was still in the rear, Soldiers were on R&R and I didn't have the company XO or supply sergeant for assistance. I worked countless hours inventorying and re-inventorying equipment to the best of my knowledge, even having the rear detachment commander scurry through connexs at home station looking for property. If items were found, I would have him photo the item with a current "Stars and Strips" as proof of inventory. Despite my best efforts, I never achieved one hundred percent accountability. This gnawed at my soul through the duration of the deployment. I was under investigation for over $8,000 of lost property.

o. Our deployment didn't stop the BRAC movement. Within weeks after returning to Germany from our fifteen-month deployment, were informed that our brigade was responsible for moving personnel and equipment to Grafenwoehr, Germany before the new training cycle.

5. I was finally diagnosed recently with chronic PTSD (Enclosure 9). Over the course of the past three years, the Army has made an assertive effort in diagnosing and understanding PTSD. There are several documented cases with Soldiers affected by this mental disease indulging in high risk behavior including excessive alcohol consumption, drug use and extra-marital affairs. It's also higher among minority Soldiers. After my command, I was distant, uncaring and violent due to inadequacy, self-pity, unworthiness and hopelessness. (Enclosure 5) I found it hard trusting anyone from my command experiences. I felt unappreciated for the countless hours studying the external and internal environment, filling the gaps due to the unconventional situation we were in. We were successful, but it came at a personal high cost. It was my duty to appear strong for my Soldiers in every situation despite how I was feeling internally. As I absorbed myself more into my problems, I drank to further my numbness and engaged in an extra marital affair in order to develop trust and establish adequacy. I desired someone who I thought could really appreciate me by admiring who I was and what I had done. In a blink of an eye, I was in a new job with new requirements. No one cared about my deployment. I was required to perform at a high standard in another capacity. My wife was tired of me being deployed, especially for fifteen months. She felt like I should just forget everything and it was my time to support her goals and dreams.

6. I have never experienced feelings like this before. I could exercise battle drills in my sleep but this was new. In my mind, mental health was for weaker lesser-prepared Soldiers who couldn't handle pressure. That thought process was already established as part of the command climate during my second command. My new First Sergeant didn't hold any punches ridiculing Soldiers for seeing a health specialist. They were openly called weak and cowards. Unfortunately, I bought into it myself, one of the biggest mistakes in my command. But I knew I was wrong for the outbursts at home and the secret affair, so I reluctantly sought help. I sought this help well before all the allegations took place (Enclosure 5), unfortunately things got a lot worse before they got better. I felt embarrassed going into the clinic and I had a hard time opening up due to trust. Being on Fort Sill in the Combined Arms Division, I was the only post combat arms maneuver commander on post. Fort Sill's Behavioral Health clinic was new and developing. Fort Sill doesn't have any maneuver divisions, thus, it was not established at that time to help masses of units from redeployment. I often pretended things were ok when they were not (Enclosure 7). My feeling of hopeless came full circle after knowledge of the false statement by Ms. Brown. In my mind, that was the ultimate betrayal, so I attempted suicide.

7. During my stay at Red River Mental Institute, Wichita Falls, Texas, I realized the only person responsible for getting myself better was me. It wasn't my leadership, my wife nor friends. No such magic pill existed at the mental hospital to make me whole again. One officer was successful in taking his life there a week before I arrived. I saw the hurt and feelings of hopelessness on fellow Soldiers and made a determination at that time I was going to be a success story. There was no formal manual on getting myself mentally fit and most post deployment session groups didn't have many officers, so I developed my own action plan:

a. I successfully completed the Fort Sill ASAP program in order to control my alcohol consumption. I openly told my story to other Soldiers about my ordeal. They could see I openly cared for the men I took into combat. They witnessed I share some of the same anguish and frustration as an officer. They now knew they were not alone. I feel proud knowing I still contributed to helping fellow Soldiers in dire situation even after command.

b. I acquired a second job at Community Assess in Lawton, OK (Enclosure 4), providing in home health care to the physically and mentally challenged. This allowed me to feel wanted in other ways besides irresponsible relationships and kept me from frequenting bars on the weekend.

c. I continued individual, as well as group, mental health sessions until I was capable to volunteer and complete a third tour, following the example of COL Charles Young. COL Young rode his horse from Wilberforce Ohio to Washington D.C. in order to prove he was physically fit for duties in Africa. I was extremely successful during my third tour in Iraq. The level of stress was not nearly as demanding as before, but the training challenges were still there. Under my new capacity, I was able to focus my efforts in training our counterparts. I used my pass experiences as a springboard in solidifying stronger bonds. I told the stories of my Soldiers sacrifices to younger Iraqi officials, those not yet molded by corruption. It formulated a new since of purpose and hope for their country (Enclosure 15). But most importantly, I am happy again. I stop allowing others to framework and marginalize who I am. As a company

commander, I arguably accomplished the most, if not more, than any other company commander during the height of the surge. And based on my past two deployments, I have touched countless lives.

8. Every commander that deploys into the theater of operations has different responsibilities according to the external environment. Commanders in a counter insurgency fight have unique new responsibilities, often times with vague mission requirements, far different than the METL tasks in a traditional force-on-force conflict. At times the pressure for success is overwhelming, especially with un-measureable, unclear goal pathways. Not only were both of my commands tough and extremely challenging, my individual plight in transitioning from one command to the next often times felt insurmountable.

9. I have never place blame on anyone but myself, but an interview with a civilian overcome with emotion and utilizing false information is about to destroy my seventeen-year career. I am a firm believer in making the best out of a bad situation. I refuse to allow this to solely dictate my future in the Army. I accept the GOMOR. It's a forcing function that drives me to do a self-evaluation and improve myself physically, mentally and spiritually. I know me and my self-worth. I accepted responsibility, took authority and gained knowledge on how to make my personal and professional life as a Soldier better. This daunting process is just another example of who I am and what I am capable of. I have always analyzed the situation and took charge to maximize the outcome. This situation is no different and should be evident through the character letters provided by some very extraordinary officers. These gentlemen know me as commander and a transition team member before and after my transgressions. The battalion executive officer of 2-7 Infantry is a very capable amputee who I recently had the pleasure of deploying with. I am sure he went through a rehabilitation process in order to show he was physically fit to continue his career progression. Despite my scars not being as visible, I am and continually be allowed the same opportunity.

10. I was in the process of collecting new evidence for the DA Stability Evaluation Board when I acknowledged receipt of the memorandum for elimination. But I know I serve the best Army in the world and still believe in the Army's system. I am confident this command now understands I am physically, mentally and most of all morally competent in continuing my service to my country on active duty.

11. I further request the new evidence and the letters of recommendations be forwarded to the President of the DA Stability Evaluation Board to have the GOMOR rewritten to reflect adequate information and placed in my restrictive file. If found adequate, I further request the DASEB direct a promotion board re-evaluation of my promotable status for the FY 2008 Major's board.

DERRICK T. DANIELS
CPT, AR
S-3 CHOPS, 188TH IN BDE

15 Encls
1. Statement by Ms Brown
2. Statement by Mrs. W. Daniels

AFKA-DVE-GA
SUBJECT: Rebuttal for elimination

3. Statement by Mr and Mrs. Daniels
4. Community Access Letter
5. Initial Medical Visit 18 Aug 2008
6. Medical Visit 12 Sept 2008
7. Medical Visit 21 Nov 2008
8. Medical Visit 24 Nov2008
9. Medical Evaluation 2 June 2011
10. Memo of Support BG Burton
11. Memo of Support COL Atcher
12. Memo of Support COL Williams
13. Memo of Support COL Johnson
14. Memo of Support LTC Klemens
15. Last OER

**Enclosure** 1

STATEMENT FOR CPT DANIELS GENERAL OFFICER LETTER OF REPRIMAND JANUARY 2009

To whom it may concern

I was never impregnated by CPT Daniels. First he said he met someone else. To get him back I said I was pregnant. He then told me he didn't have another woman, he felt guilty about being with me. The second time we broke off the relationship, he said he wanted to work things out with his wife and he would support me with the pregnancy.

After he confessed to his wife about our relationship, she called me. I told her CPT Daniels has had several affairs on her and has a woman pregnant named Tenisha (one of my friend's name) in Lawton as well as me. I told her these things to damage their relationship. CPT Daniels asked me to tell his wife the truth, but I told him I would only do it if we could keep our relationship going. When he refused to come back to me, I went to his commander to get him in trouble. I wrote in a statement that I was pregnant with twins and he had several affairs throughout his marriage. I also used the Tenisha story to reinforce this. I also added that Tenisha was married to a soldier who was deployed. All of these things are untrue.

After the second breakup, CPT Daniels only contacted me to ask about the pregnancy. I told him if he couldn't be with me, he couldn't have anything to do with the process. When it came close to the due date, I told him I had a miscarriage. I never produced any documentation to prove the pregnancy, doctor appointments or medical records to CPT Daniels.

Tara Brown

Tara Brown
Redacted PII
Redacted PII

Signed before me notary public on April 4th 2011

TONI RAE WARD
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 6-28-2014

**Enclosure 2**

31 May 2011

To whom it may concern:

I am writing this letter on behalf of my husband, CPT Derrick T. Daniels. There has been an ongoing investigation since the year 2009 because of a confrontation between him and me due to an affair he entered with a young lady by the name of Tara Brown. Five to six months prior to learning about this affair, Derrick had just come from an 18 month tour in Iraq (which was actually his second time serving in Iraq) where he served as his company's commander. Not long after that tour I began to notice changes in him. He seemed to be very short tempered much like someone who is bipolar, one minute he was calm, soft spoken and the next very hostile and raising his voice. I also notice that he was paranoid of his surroundings and also drank heavily, from about 5 a.m. throughout the rest of the day. As I questioned Derrick about his behavior he would say that I wouldn't and couldn't understand and that it was hard for him to explain his actions. However, he did admit to needing help. As time went by (few months from leaving Iraq) his behavior worsened. Through 9 yrs of marriage(at that time), Derrick had been highly responsible when drinking alcohol (never drinking too much or calling me to pick him up if he had consumed too much) and it was a lesson that I witnessed him give to his soldiers. I was confused of his actions after he had drank too much, drove himself home and had a huge outburst (breaking things such as house furniture). He had another outburst much like this one; it was then that I knew he needed serious help. The next morning after the second outburst I accompanied my husband to a mental health center on post (Ft. Sill, OK) as he enrolled to receive help for his drinking and fit of rages. As he attended AA classes, he would complain that he felt uncomfortable because other soldiers (none who were his peers) were a distraction because they were young and not taking the class seriously. I could see that he was suffering and badly wanted to get help, however he seems to be embarrassed, of first having to admit he was having issues and needed help, then second seeking help with those he was supposed to be leaders to (privates).

During conversations Derrick expressed that the help he was receiving wasn't adequate enough for him and he didn't know what to do about it. I recall him saying things like "in the military you are just a number,"nobody truly cares, they do just enough in the allotted time then on to the next one." As a wife my heart hurt for him because I could see that nothing was truly working for him. It seemed that the more questions I asked to be of some help to him wasn't working; he began to pull away from me and some of his closest friends. I believe this is when he went outside of our marriage and turned to Tara Brown.

What I want to say in general is that Derrick and I both understand that his actions were wrong, however, I don't believe that he received the proper treatment that he needed to cope with the trauma he experienced while in Iraq. Immediately after Derrick came from Iraq the first time he

went through reintegration and the families were invited to attend. One segment of the reintegration was a counseling session. Soldiers were put in sections according to their rank, single or marital status in order to receive proper coping skills in an adequate amount of time. After coming from Iraq a second time the reintegration was not set up this way and I remember specifically Derrick being upset about it because he was looking forward to the counseling session. My point is, there came a time during this ordeal (after the affair) that my husband tried to commit suicide in which he was institutionalized in a psychiatric hospital as a result. I think if he had received the proper treatment early on all of these negative events could have been avoided. While we were together I witnessed him be an awesome man, soldier and leader. He volunteered to go back to Iraq a third time to prove to be the soldier that you trained him to be. I hope that through his work you can see that he deserves a chance to finish out his career in an organization that he so dearly love, the US Army.

Sincerely,

[signature]

Wendy Daniels

SWORN TO ME, SHANNON DICK, BY WENDY L. DANIELS ON THIS 31ST DAY OF MAY, 2011.

[signature] Shannon Dick

COMMISSION# 08005970
EXPIRES: JUNE 10, 2012

SHANNON DICK
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES JUNE 10, 2012
COMMISSION # 08005970

**Enclosure** 3

30 June 2011

Redacted PII

To Whom it may concern:

We are the parents of Derrick Daniels and these are some of the observations noticed about Derrick after his last two tours in Iraq:

We are not sure about the years, we believe from 2003-2004 and from 2007-2008. He seemed jumpy and moving all the time. He was very, very easy to get upset. He would sit and just stare as there were problems he couldn't cope with. He was very depressed at one time he expressed to us his life was over and he didn't want to live.

He developed a drinking problem trying to solve his problems. We believe his drinking problem is better. We believe all his problems can be solved if he continues to get the right medical attention.

Sincerely,

Lauriene Daniels Lauriene Daniels

Arthur Daniels Arthur Daniels

Blanche R. Lewis

My commission expires
March 10, 2015

FROM COMMUNITY ACCESS LAWTON (FRI)JUN 24 2011 11:34/ST. 11:34/No. 7820415790 P 2

Enclosure 4

Community Access Inc.
Accessing the community through specialized services.

June 24, 2011

To Whom It May Concern:

Mr. Derrick Daniels was employed with Community Access, Inc. from July 9, 2009 until September 28, 2009.

If you need additional information, please let me know.

Sincerely,

Deborah Whitehead
Bookkeeper

P.O. Box 154 · Lawton, OK 73502 · T: (580) 353-2045 · F: (580) 353-6470

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Enclosure 5

Patient: DANIELS, DERRICK TORAINO
Treatment Facility: REYNOLDS ACH
Patient Status: Outpatient

Date: 18 Aug 2008 0835 CDT
Clinic: MENTAL HEALTH

Appt Type: ACUT
Provider: DODD,DAVID S

Reason for Appointment: sod walk in

AutoCites Refreshed by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT

**Problems**

- BURSITIS OLECRANON
- DERMATOMYCOSIS TINEA NIGRA
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA

**Active Family History**

No Active Family History Found.

**Allergies**

- No Known Allergies

**Active Medications**

No Active Medications Found.

Vitals

Vitals Written by GROVE, SHERRY L @ 18 Aug 2008 1010 CDT

Tobacco Use: Yes, Alcohol Use: Yes, Pain Scale: 0 Pain Free

SO Note Written by GROVE,SHERRY L @ 18 Aug 2008 1010 CDT

History of present illness

The Patient is a 35 year old male.

He reported: Encounter Background Information: This is a 35 year old African American, married male Active Duty Army CPT who walked in to CMHS this morning accompanied by his wife to see the SOD. SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. SM & wife report that since his return he has had an increase in drinking (2 beers or 2 liquor shots every night). He also reports depressive symptoms, irritability, uncomfortableness in crowds, lack of motivation, inpatience, fatigue, problems relaxing, and erectile dysfunction. SM stated that he wanted to get help several months ago, but he never followed through. SM relayed that his wife told him today that if he didn't come to CMHS, she would go to his Commander & tell him about SM's problems.

Psychological symptoms SM appeared neatly dressed and groomed in ACU's, appeared alert, oriented, & in no acute distress. SM denies SI/HI, denies perceptual distortions, denies psychotic symptoms. SM's wife relayed that SM has mentioned wanting to kill himself. Wife relayed that SM bought her a gun for her protection while he was deployed. Wife says when SM drinks, he'll say stuff like "Where's the gun-I'll blow my brains out right now". SM's speech appeared normal with regards to rate, tone, & flow. SM's mood appeared depressed with affect congruent. Risk issues appear minimal to moderate @ this time. SM informed of CMHS & RACH emergency protocol procedures should he become acutely distressed or decompensate.

Subjective

Will staff case with Dr. Dodd. R/O Depressive D/O NOS, R/O Alcohol Abuse. SM may benefit from medications, & he is amenable to taking them. SM is not amenable to groups, & he would prefer 1:1 therapy for post deployment related issues. Also, SM & his wife are interested in Marital counseling, & may need a referral to Social Work Services. SM & wife were informed of CMHS & RACH emergency protocol procedures should they become acutely distressed or decompensate. Taught SM & wife some breathing techniques & progressive muscle relaxation exercises, which they engaged in. They were encouraged to engage in the exercises @ home also. SM & wife will f/u as needed and scheduled with their primary providers.

A/P Written by DODD, DAVID S @ 19 Aug 2008 0659 CDT

1. ALCOHOL ABUSE

Procedure(s): -Psychiatric Therapy Individual Approximately 45-50 Minutes x 1

Disposition Written by DODD, DAVID S @ 19 Aug 2008 0700 CDT

Released w/o Limitations

Follow up: as needed . - Comments: sm agreed to go to the ASAP program. Also set up appt for intake. clarified emergency

Name/SSN: DANIELS, DERRICK TORAINO/Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO/Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNKJ (0003 AR HQ 01 DET KI) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE

STANDARD FORM 600 (REV. 5) Prescribed by GSA and ICMR

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**18 Aug 2008 0936**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: DODD, DAVID S**

services and how to access them. discussed need to dispose of weapon for a while until his mood and alcohol use stabilize/improve. Wife will help with this treatment plan implementation.

50 minutes face-to-face/floor time..

Signed By DODD, DAVID S (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 19 Aug 2008 0701

**Name/SSN: DANIELS, DERRICK** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Enclosure 6

Patient: DANIELS, DERRICK TORAINO
Treatment Facility: REYNOLDS ACH
Patient Status: Outpatient

Date: 12 Sep 2008 1300 CDT
Clinic: MENTAL HEALTH

Appt Type: SPEC
Provider: MCKENNEY,SHEELA R

**Reason for Appointment:**
**Appointment Comments:**
als

AutoCites Refreshed by MCKENNEY, SHEELA R @ 12 Sep 2008 1304 CDT

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE

**Active Family History**
No Active Family History Found.

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

Screening Written by MCKENNEY, SHEELA R @ 12 Sep 2008 1305 CDT
**Reason(s) For Visit (Chief Complaint):** ALCOHOL ABUSE (Follow-Up);

Vitals
Vitals Written by MCKENNEY, SHEELA R @ 12 Sep 2008 1305 CDT
Tobacco Use: No, Alcohol Use: Yes, Alcohol Comments: limited. SM is going through AA and ASAP and ADAP. He reports drinking 1 beer a week., Pain Scale: 0 Pain Free

SO Note Written by MCKENNEY,SHEELA R @ 12 Sep 2008 1402 CDT
**Reason for Visit**
Visit for: intake.
**History of present illness**
The Patient is a 36 year old male. Source of patient information was patient.
Visit is GWOT-related SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. He was a combat commander.
Mood was euthymic, no fear, no high irritability, no hostility, not grieving, no hypersensitivity, no emotional lability, and no loneliness. Depression comes and goes. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, no stated intent to commit suicide, and no previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported and no interpersonal relationship problems. No behavioral complaints.
Patient not accompanied.
**Personal history**
SM reports that most of his friends have children so that typically his wife and he go places by themselves. His wife is currently attending Cameron to complete her degree in Art. SM is being supportive of her now and has had to make some sacrifices in order for her to be able to achieve her goals. He reports that she supported him when he was more actively involved in the military and he is willing to make this sacrifice for her. SM reports a feeling of less importance when he transitioned from combat commander to instructor. He feels most of his depression comes from that job change and his feeling of being somewhat unimportant and limited in abilities to access quality resources to do his current duty as well as he would like.
Behavioral history: Not under stress at this time. SM reported that when he came into clinic on SOD he had been experiencing multiple stressors. Some of those stressors have resolved and SM and his wife are getting more sleep and exercising more as a substitute to drinking. This results in SM feeling better, no tobacco use, and no self-damaging behavior.
Alcohol: Not using alcohol.
Drug use: Not using drugs.
Antisocial: No legal problems or arrests.
Habits: Sleep habits. No lack of adequate sleep SM is getting between 7-8 hours per night.
Home environment: Owns home SM is closing on a brand new home today. He reports that both his wife and he are going to

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**12 Sep 2008 1402**
**Facility: Reynolds Army Community Hospital Ft. Sill, OK** **Clinic: Mental Health** **Provider: MCKENNEY, SHEELA R**

spend the weekend moving in. They are excited about fixing it up the way they want. SM has plans regarding the yard and privacy fence. The living environment is satisfactory. Guns in the home SM reports having a 9 mm automatic somewhere. He says his wife has it somewhere. The racial background is black SM reports that he was an only child and that his wife is significantly younger than her siblings. They have been married 9 years with no children. Parents of both are in Georgia.

Abuse / neglect: No abuse/neglect.
Activities: Watching movies.
Functional status: No lack of social support.

**Review of systems**

**Systemic symptoms:** General overall feeling. Feeling fine and not feeling tired (fatigue).
**Neurological symptoms:** No neurological symptoms.

**Physical findings**

**General appearance:**

• General appearance: • Well-appearing. • Awake. • Alert. • Oriented to time, place, and person. • Well developed. • Well nourished. • Well hydrated. • Active. • In no acute distress.

**Neurological:**

• No disorientation was observed. • No perceptual disturbances were noted. • An adequate fund of knowledge was demonstrated.

Speech: • Normal.
Coordination / Cerebellum: • No coordination/cerebellum abnormalities were noted.

**Psychiatric Exam:**

• Appearance was normal. • Behavior demonstrated no abnormalities. • Behavior demonstrated no psychomotor abnormalities. • Behavior demonstrated no impulsivity. • No decreased eye-to-eye contact was observed. • Attitude was not abnormal. • Mood was euthymic. • Affect was normal. • Thought processes were not impaired. • Attention demonstrated no abnormalities. • Thought content revealed no impairment. • No suicidal tendency. • No homicidal tendencies.

**Objective**

SM finds that talking to someone else has proven helpful to him. He has benefited from the classes as ASAP and believes that talking to someone else gives him some object insight and some new ideas. He requested follow up visits. SM did report that today was a good day and not all days are as good.

A/P Written by MCKENNEY, SHEELA R @ 12 Sep 2008 1408 CDT

**1. ADJUSTMENT DISORDER WITH DEPRESSED MOOD**
Procedure(s): -Social Work Individual Outpatient Counseling 75-80 Minutes x 1
**2. ALCOHOL ABUSE - IN REMISSION**
**3. visit for: military services physical***(OCCUPATIONAL EXAMINATION)*
**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**5. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
**6. AXIS IV PROBLEMS OCCUPATIONAL: AXIS V: GAF - 85**

Disposition Written by MCKENNEY, SHEELA R @ 12 Sep 2008 1411 CDT

**Released w/o Limitations**
**Follow up:** as needed in 2 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems. - **Comments:** SM to return for follow up on Friday 26 September 2008 @ 1000.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding. 75 minutes face-to-face/floor time..

**Signed By MCKENNEY, SHEELA R** (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 12 Sep 2008 1411

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/ Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Enclosure 7

Patient: DANIELS, DERRICK TORAINO
Treatment Facility: REYNOLDS ACH
Patient Status: Outpatient

Date: 21 Nov 2008 1046 CST
Clinic: MENTAL HEALTH

Appt Type: ACUT
Provider: BELL,KEVIN T

**Reason for Appointment:** SOD
**Appointment Comments:**
Notes Entered by: BACA, KERI 21 Nov 2008 1046

keb

AutoCites Refreshed by BELL, KEVIN T @ 24 Nov 2008 1338 CST

**Problems**
- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE

**Allergies**
- No Known Allergies

**Active Medications**
No Active Medications Found.

Questionnaire AutoCites Refreshed by BELL, KEVIN T @ 24 Nov 2008 1338 CST
**Questionnaires**
No Questionnaires Found.

SO Note Written by BELL,KEVIN T @ 24 Nov 2008 1338 CST
**Reason for Visit**
Visit for: SoD contact. Thre patient was seen today as a walk-in on the recommendation of his commander. He reportedly had a domestic Violence inscident last night where there was a physical altercation between the patient and his wife. He had reportedly struck her on the side fo her head with a plastic Baton. She is complaining of some ringing in her ears and numbness. Pt complains of increased drinking, increased irritability, pt is also reportedly struggling to find a sense of purpose in his current position. He reports he and his wife are officialy separated, with both living in separate homes. No weapons reported.
**Referred here**
Commander.
**History of present illness**
The Patient is a 36 year old male. Source of patient information was patient.
High irritability and hostility toward authority figures. No sleep complaints and normal enjoyment of activities. Energy: normal. Not wishing to be dead, not thinking about suicide, not having a suicide plan, no stated intent to commit suicide, and no previous suicide attempt. No homicidal thoughts. No abnormal thoughts reported. Turbulent and damaging interpersonal relationships and marital problems. No behavioral complaints. Impulsive behavior.
Patient not accompanied. Visit is not GWOT-related.
**Review of systems**
**Systemic symptoms:** General overall feeling. Feeling fine and not feeling tired (fatigue). No recent weight change and no dissatisfaction with body weight.
**Head symptoms:** No headache.
**Cardiovascular symptoms:** No chest pain or discomfort and no palpitations.
**Pulmonary symptoms:** No dyspnea and no rapid breathing.
**Gastrointestinal symptoms:** Appetite. Normal appetite. No nausea, no diarrhea, and no constipation.
**Neurological symptoms:** No neurological symptoms.
**Physical findings**
**Vital signs:**
• Pain level was not reported [*].
**Standard Measurements:**
• Weight was normal. • Height was normal.

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/ Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNKI (0003 AR HQ 01 DET KI) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW ...

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Enclosure 8

Patient: DANIELS, DERRICK TORAINO
Treatment Facility: REYNOLDS ACH
Patient Status: Outpatient

Date: 24 Nov 2008 0906 CST
Clinic: MENTAL HEALTH

Appt Type: ACUT
Provider: MCKENNEY,SHEELA R

**Reason for Appointment:**

AutoCites Refreshed by MCKENNEY, SHEELA R @ 24 Nov 2008 1015 CST

**Problems**

- DERMATOMYCOSIS TINEA NIGRA
- BURSITIS OLECRANON
- ANOMALIES OF HAIR
- ASTIGMATISM
- ASSESSMENT OF PATIENT CONDITION WORK-RELATED
- joint pain, localized in the knee
- joint pain, localized in the shoulder
- ASTIGMATISM - REGULAR
- REFRACTIVE ERROR - HYPERMETROPIA
- ALCOHOL ABUSE

**Active Family History**

No Active Family History Found.

**Allergies**

- No Known Allergies

**Active Medications**

No Active Medications Found.

SO Note Written by MCKENNEY,SHEELA R @ 25 Nov 2008 1600 CST

**Reason for Visit**

Visit for: SOD.

**History of present illness**

The Patient is a 36 year old male. Source of patient information was patient.

Visit is GWOT-related SM reports 2 previous deployments to Iraq, 1st from Feb. 2004-Feb. 2005 & 2nd from Aug. 2006-Nov. 2007. He was a combat commander.

Patient not accompanied. Not thinking about suicide and no homicidal thoughts.

SM admitted that he had not been honest in therapy. He had been having an affair and he reports that there was altercations that ended up with him staying in his old house and a no contact order being issued. He thought his wife was staying in a shelter instead of their new home because she was fearful of him. He denied that she had anything to fear but commented that it might be her perception that she did. He is connected with SWS and will make follow up appointment. He committed to being open and honest in future sessions.

A/P Written by MCKENNEY, SHEELA R @ 24 Nov 2008 1018 CST

1. **PARTNER RELATIONAL PROBLEM**: risk: Low
   Procedure(s): -Social Work Individual Outpatient Counseling 20-30 Minutes x 1
2. **ADJUSTMENT DISORDER WITH DEPRESSED MOOD**
3. **ALCOHOL ABUSE - EPISODIC**
4. **visit for: military services physical***(POST-DEPLOYMENT EXAMINATION)*
5. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
6. **PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, PERSIAN GULF WAR VET)*
7. **AXIS IV PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS**

Disposition Written by MCKENNEY, SHEELA R @ 25 Nov 2008 1605 CST

**Released w/o Limitations**

**Follow up:** as needed with PCM and/or in the MENTAL HEALTH clinic. - Comments: follow up appointment scheduled with MsMcKenney for 5 December 2008 at 1100.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding. 20 minutes face-to-face/floor time..

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW...

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

21 Nov 2008 1147
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: BELL, KEVIN T

**General appearance:**
- General appearance: * Well-appearing. * Patient did not appear uncomfortable. * Not acutely ill.

**Neurological:**
* No disorientation was observed. * No perceptual disturbances were noted. * An adequate fund of knowledge was demonstrated.

Speech: * Normal.

**Psychiatric Exam:**
- Attitude was abnormal. • Attitude was indifferent. • Attitude was guarded. • Mood was dysthymic. • Mood was unhappy. • Mood was irritable. • Affect was abnormal. • Affect showed irritability. • Thought content revealed impairment. • Impaired insight. * Appearance was normal. * Appearance was not tired. * Clothing was appropriate. * Grooming was normal. * Behavior demonstrated no abnormalities. * Behavior demonstrated no psychomotor abnormalities. * Behavior demonstrated no impulsivity. * No decreased eye-to-eye contact was observed. * Thought processes were not impaired. * Attention demonstrated no abnormalities. * No suicidal tendency. * No suicidal ideation. * No suicidal plans. * No suicidal intent. * No homicidal tendencies. * No homicidal ideations. * No homicidal plans. * No homicidal intent.

Objective

Plan. The patient will follow-up with Ms. McKenney next week. Issues highlighted include working through the divorce process. The SM displayed no remorse for his actions including his history of infidelity. Pt is not in any current emotional distress.

A/P Written by BELL, KEVIN T @ 24 Nov 2008 1353 CST

**1. PARTNER RELATIONAL PROBLEM**

Procedure(s): -Social Work Individual Outpatient Counseling 20-30 Minutes x 1

**2. ALCOHOL ABUSE**

**3. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS II***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*

**4. PSYCHIATRIC DIAGNOSIS OR CONDITION DEFERRED ON AXIS III***(OTHER UNKNOWN AND UNSPECIFIED CAUSES OF MORBIDITY AND MORTALITY, NOT PGW SYNDROME)*

Disposition Written by BELL, KEVIN T @ 24 Nov 2008 1353 CST

**Released w/o Limitations**

**Follow up:** 1 week(s) with PCM and/or in the MENTAL HEALTH clinic or sooner if there are problems.

**Discussed:** Diagnosis, Medication(s)/Treatment(s), Alternatives, Potential Side Effects with Patient who indicated understanding.

30 minutes face-to-face/floor time..

Note Written by BELL, KEVIN T @ 24 Nov 2008 1353 CST

30 minutes was spent on this encounter. Pt risk level is assessed as low. pt is in no emotional distress and is reportedly in control of his situation. Pt will be seen next wek by Ms. McKenney.

**Signed By** BELL, KEVIN T (Clinical Social Worker, Reynolds Army Community Hospital Ft. Sill, OK) @ 24 Nov 2008 1357

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20 Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR

**HEALTH RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

24 Nov 2008 1007
Facility: Reynolds Army Community Hospital Ft. Sill, OK Clinic: Mental Health Provider: MCKENNEY, SHEELA R

Signed By MCKENNEY, SHEELA R (Physician/Workstation, Reynolds Army Community Hospital Ft. Sill, OK) @ 25 Nov 2008 1606

Name/SSN: DANIELS, DERRICK TORAINO Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| | | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| FMP/SSN: | 20/Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| DOB: | Redacted PII | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| Insurance: | No | | | Tel. PCM: | 912 435-5594 |

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED

HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

Enclosure 9

Patient: DANIELS, DERRICK TORAINO
Treatment Facility: WINN ACH
Patient Status: Outpatient

Date: 02 Jun 2011 1318 EDT
Clinic: WRC/TBI PSYCHOLOGY CLINIC

Appt Type: SPEC
Provider: AVILES-SALGADO,MARIA D

**Reason for Appointment:** W/I PER LTC GAUTHIER

AutoCites Refreshed by AVILES-SALGADO,MARIA D @ 22 Jun 2011 1723 EDT

**Problems**

**Chronic:**

- Chronic post-traumatic stress disorder
- Post-traumatic stress disorder
- Axis V global assessment of functioning (GAF) scale
- Dysthymic disorder
- Conditions influencing health status
- Visit for: military services physical for accession
- Depression
- Military deployment
- Adult physical abuse
- Adjustment disorder with anxiety and depressed mood
- Primary support group problems
- Anxiety disorder NOS
- Burns
- The patient was overweight
- Essential hypertension
- Visit for: ears/hearing exam
- Psychiatric diagnosis or condition deferred on axis III
- Psychiatric diagnosis or condition deferred on axis II
- Visit for: military services physical
- Alcohol abuse - episodic
- Adjustment disorder with depressed mood
- Alcohol abuse - in remission
- Alcohol abuse
- Hypermetropia
- Regular astigmatism
- Shoulder joint pain
- Knee joint pain
- Condition was work-related
- Astigmatism
- Anomalies of hair
- Tinea nigra
- Olecranon bursitis

**Family History**

- Of heart disease

**Allergies**

- No Known Allergies

**Active Medications**

No Active Medications Found.

**Vitals**

Vitals Written by AVILES-SALGADO,MARIA D @ 02 Jun 2011 1723 EDT

Pain Scale: 0 Pain Free

SO Note Written by AVILES-SALGADO,MARIA D @ 22 Jun 2011 1723 EDT

**History of present illness**

The Patient is a 38 year old male.

The patient denied any SI, HI, Hal or Del. He was seen for consult to re-establish care. he isndergoing administrative evaluation and under significant stress.

**Subjective**

**Name/SSN: DANIELS, DERRICK TORAINO** Redacted PII

| | | | | | |
|---|---|---|---|---|---|
| FMP/SSN: | 20/Redacted PII | Sex: | M | Sponsor/SSN: | DANIELS, DERRICK TORAINO Redacted PII |
| DOB: | Redacted PII | Tel H: | Redacted PII | Rank: | CAPTAIN |
| PCat: | A11.1 USA ACTIVE DUTY OFFICER | Tel W: | 229-518-4204 | Unit: | WAQNK1 (0003 AR HQ 01 DET K1) |
| MC Status: | TRICARE PRIME (ACTIVE DUTY) | CS: | | Outpt Rec. Rm: | OUTPATIENT RECORD ROOM - AD |
| Insurance: | No | Status: | | PCM: | SANTORY-ORTIZ,JULIO |
| | | | | Tel. PCM: | 912 435-5594 |

CHRONOLOGICAL RECORD OF MEDICAL CARE

THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS TO THIS INFORMATION IS A VIOLATION OF FEDERAL LAW. VIOLATORS WILL BE PROSECUTED.

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505

Enclosure 10

BG JB BURTON
Deputy Director for Operations, J3
The Joint Staff
Washington, DC 20318

29 June 2011

MEMORANDUM TO Major General Sean Byrne, Commander, U.S. Army Human Resources Command, 200 Stovall Street, Alexandria, Virginia 22332-0478

SUBJECT: Memorandum of Recommendation for retaining CPT Derrick Daniels

I strongly encourage the continued retention of CPT Derrick Daniels. Derrick is a talented and tireless leader who is well-respected by seniors, peers and subordinates. Derrick has made some poor choices but has overcome those missteps and has delivered a continued series of magnificent performances as evidenced by leadership reports since he left my command.

Derrick served as a Company Commander for a Tank Company and Headquarters Company within the 2nd Brigade Combat Team (Dagger BCT) of the 1st Infantry Division. Given Derrick's performance, maturity and leadership skills as a Combined Arms Team Commander, I selected Derrick to command a second time as Headquarters and Headquarters Company Commander in order to deliver additional 'Field Grade Officer-level' talent to the 1st Battalion, 77th Armor while they were detached from the BCT and operating in Ramadi, Iraq during OIF 06-08. Derrick delivered on all counts, professionally filling a necessary leadership role as his Task Force expanded operations across Anbar Province, Iraq.

Derrick made some very poor and unprofessional decisions upon his departure from the Dagger BCT. The reasons behind those choices are known by him and those he has spoken with, and fall squarely on his shoulders for accountability. By all accounts, Derrick has moved on and continues to deliver a top-flight performance wherever he is assigned.

I strongly recommend that we retain this Soldier and leader. Derrick understands and accepts that advancements in rank or further command opportunities may not be part of his military future. I personally feel that Derrick's own professional and personal life lessons along with his demonstrated competencies and tremendous commitment to Soldiers and Families can be effectively leveraged for the well-being of the force as a whole.

4. Please feel free to contact me with any questions or concerns at 703-380-0481 or at jb.burton@us.army.mil.

JB Burton
BG, USA
Deputy Director for Operations, J3
The Joint Staff





**DEPARTMENT OF THE ARMY**
HEADQUARTERS, UNITED STATES ARMY CADET COMMAND
FORT KNOX, KENTUCKY 40121-2725

REPLY TO ATTENTION OF

ATCC-LM 24 June 2011

MEMORANDUM THRU Commanding General, 3rd Infantry Division, BLDG #1, Fort Stewart, Georgia 31314

MEMORANDUM TO Major General Sean Byrne, Commander, U.S. Army Human Resources Command, 200 Stovall Street, Alexandria, Virginia 22332-0478

SUBJECT: Memorandum of Recommendation for CPT Derrick Daniels

1. I would like to take a moment to provide my insight into the character and abilities of CPT Derrick Daniels. I recently had the opportunity to spend over 16 months working with Derrick as we prepared and trained for deployment and then worked together during the deployment to Iraq in support of 1st Advise and Assist Brigade, 3rd ID, USD-C. During that time I found CPT Daniels to be a dedicated officer who always put the mission first and performed admirably throughout our time together.

2. During the last six months of our deployment, Derrick worked as a member of my Stability Transition Team and I had the chance to observe him from a closer level. At no time during our mission did CPT Daniels give me a reason to doubt his character or personal ethic. In fact, when faced with the most stressful events, he remained calm and in control and totally mission focused. I found him to be a man of integrity and a good role model and mentor to many of the junior Soldiers on our compound. Derrick was one of our key assets when dealing with our Iraqi counterparts and represented the US Army very well with our allies.

3. I believe it would be counter-productive to remove this officer from the military when he clearly has worked hard to overcome any previous mistakes and has such high potential for continued growth and service for the Army. We need his leadership abilities and experience as we move into the future. I strongly encourage that we retain this fine officer in our Army.

4. The POC for this action is the undersigned. I can be reached at DSN 464-1737 or via email at david.atcher@us.army.mil .

DAVID A. ATCHER
COL, LG
US Army Cadet Command DCS G-4

 Enclosure 12

DEPARTMENT OF THE ARMY
ARMY DISCHARGE REVIEW BOARD
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

29 JUNE 2011

MEMORANDUM THRU Commanding General, 3rd Infantry Division, BLDG #1, Fort Stewart, Georgia 31314

MEMORANDUM TO Major General Sean Byrne, Commander, U.S. Army Human Resources Command, 200 Stovall Street, Alexandria, Virginia 22332-0478

SUBJECT: Memorandum of Recommendation for CPT Derrick Daniels

1. I would like to take this opportunity to provide my perspective of CPT Derrick Daniels' character, abilities, and potential. During the period of 9 Sep 09 to 4 Dec 10, I had the opportunity to work with Derrick as we prepared and trained for deployment. We deployed as advisors in support of 1st Advise and Assist Brigade, 3rd ID, USD-C. My observations were that Derrick is a very devoted, honest, and loyal officer who was always mission focused with the steadfast intent to perform his duties at the highest level possible.

2. For the first half of the deployment, Derrick was a member of my division level Stability Transition Team. I had a firsthand look at CPT Daniels on a daily basis which enabled me to keenly observe his behavior, ethics, and assess his personal character. I would routinely receive very positive comments on his performance from his Team Chief. CPT Daniels was on a two-man team that replaced a ten-man team, and had it not been for Derrick's mission focused dedication they would not have been successful. I can without hesitation say that Derrick never gave me any reason to question his integrity, morals, or professionalism. I found this officer to always possess a demeanor that allowed him to make sound decisions and exercise superb judgment.

3. In my professional opinion, it would without a doubt be a loss to the officer corps to lose this dedicated Soldier. While I don't condone what he did, CPT Daniels has proven that he still is value added to our Army and has learned from his past mistakes. Despite the repercussions of his actions, he has continued to perform at levels above his current grade. I highly recommend that he be retained on active duty. He will continue to perform at high levels and the Army as a whole will benefit from his hard work and dedication.

4. The POC for this is the undersigned. I can be reached at (703) 607-1977 or email at bennie.williams@us.army.mil .

BENNIE WILLIAMS, JR.
COL, IN
Board Member

Printed on Recycled Paper



Enclosure 13

DEPARTMENT OF THE ARMY
TRADOC Capabilities Manager for the Virtual Training Environment
410 Kearny Ave., Bldg. 45
Fort Leavenworth, Kansas 66027

REPLY TO ATTENTION OF:

27 June 2011

MEMORANDUM THRU Commanding General, 3rd Infantry Division, BLDG #1, Fort Stewart, Georgia 31314

MEMORANDUM TO Major General Sean Byrne, Commander, U.S. Army Human Resources Command, 200 Stovall Street, Alexandria, Virginia 22332-0478

SUBJECT: Memorandum of Recommendation for CPT Derrick Daniels

1. I unconditionally recommend CPT Daniels' retention on active duty, and take pleasure in being afforded the opportunity to offer my perspective as to his character and abilities. Derrick served as both my Alpha, and Headquarters and Headquarters Company Commander over a period of two years. This included a 15-month deployment to Ar Ramadi, Iraq, where he continuously demonstrated unblemished character and an inherent ability to lead from the front, focusing on a myriad of tasks while mitigating distractions and personal comforts. During our deployment, Derrick flawlessly planned, resourced, and supervised logistical support for our 1000 man task force (Army, Navy, Air Force, Marines and MiTT). His tenacity and enthusiasm are contagious; Soldiers who worked for him understood that he set high standards and expected extraordinary results from his team.

2. Derrick's drive and dedication were evident in every mission his Company executed during combat operations in Iraq. He personally synchronized logistical support for our Military Transition Team, two Police Transition Teams, six Iraqi Police Stations, two Joint Security Stations, four fixed site security builds and humanitarian support for over 5,000 western Ramadi citizens. This feat was nothing less than astounding as his company operated over our 600 square km AOR. CPT Daniels always took care of his Soldiers and his willingness to fight for their rights has won him the loyalty and admiration of many throughout the Brigade Combat Team. His integrity was always above reproach and his analytical faculties unsurpassed. Derrick is a dedicated leader who challenges his Soldiers to achieve excellence, and his doctrinal knowledge coupled with his professional intuition mark him as a premier tactical technician and trainer.

3. Derrick is an intellectual who understands the complexities of the Contemporary Operating Environment. In this milieu, Derrick thrived and flawlessly demonstrated the skills required to lead and motivate Soldiers under pressure. He must be afforded the opportunity to continue to serve in the military. CPT Daniels has acknowledged his transgressions, accepted responsibility, and instituted corrective actions. Derrick has demonstrated his aptitude to overcome adversity; he can now coach and mentor our Soldiers based on a personal frame of reference. Derrick's leadership abilities and broad experience base are an huge asset which must be exploited. Again, I unconditionally endorse his retention in our Army. It was an honor to serve with Derrick, and I would relish the opportunity to serve again with such a professional.

4. Point of contact for this memorandum is the undersigned, at 913-290-0556, or miciotto.johnson@us.army.mil.

MICIOTTO O. JOHNSON
COL, AR
TRADOC Capabilities Manager for the Virtual Training Environment

Enclosure 14

DEPARTMENT OF DEFENSE
JOINT TASK FORCE NORTH
FORT BLISS, TEXAS 79918-0058

REPLY TO
ATTENTION OF

J3-EN 27 June 2011

MEMORANDUM THRU Commanding General, 3rd Infantry Division, Building #1, Fort Stewart, GA 31314

MEMORANDUM TO Major General Sean Byrne, Commander, U.S. Army Human Resources Command, 200 Stovall Street, Alexandria, VA 22332-0478

SUBJECT: Memorandum of Recommendation for Captain Derrick Daniels

1. I was Captain Derrick Daniels first line supervisor for nine months, from October 2009 to June 2010. He served as my Deputy Transition Team Leader while we worked in support of the 1st Advise and Assist Brigade, 3rd Infantry Division, under United States Division-Central in Baghdad, Iraq. During this demanding operation, bridging from Operation Iraqi Freedom to Operation New Dawn, Derrick worked tirelessly to advise and grow the Iraqi Federal Police whom we worked with and also completed the turn-in of over $4 million worth of Theater-Provided Equipment (TPE) from the team which we replaced. In short, CPT Daniels performed combat advisor and primary logistician duties admirably and concurrently. I had high confidence that he could complete any assigned task with minimal supervision.

2. I believe that CPT Daniels' dedication to service and selfless commitment to accomplishing the Army's campaign objectives speak for themselves. He has completed three combat tours of Iraq with distinction; this should override the personal shortcomings which he demonstrated during one stressful time in his life. I am proud to have served with Derrick Daniels and would gladly do so again. The Army must retain CPT Daniels and permit him to complete his overwhelmingly honorable career.

3. POC for this memorandum is the undersigned. My office phone number is (915)313-7699 (DSN 666-) or email at Darren.klemens@us.army.mil .

DARREN J. KLEMENS
LTC, EN
JTF-N Engineer Division Chief

Enclosure 15

# OFFICER EVALUATION REPORT

For use of this form, see AR 623-3; the proponent agency is DCS, G-1.

SEE PRIVACY ACT STATEMENT IN AR 623-3

## PART I - ADMINISTRATIVE DATA

| a. NAME | b. SSN | c. RANK | d. DATE OF RANK | e. BRANCH | f. DESIGNATED SPECIALTY / PMOS |
|---|---|---|---|---|---|
| DANIELS, DERRICK T. | Redacted PII | CPT | 20021001 | AR | 19A00 |

| g.1. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | g.2. STATUS CODE | h. REASON FOR SUBMISSION |
|---|---|---|
| TRANS TM TT, JSS Salaam, Iraq, APO AE 09348 CENTCOM | 02 | Annual |

| i. PERIOD COVERED FROM | THRU | j. RATED MONTHS | k. NONRATED CODES | l. NO. OF ENCL | m. RATED OFFICER'S AKO EMAIL ADDRESS | n. UIC | o. CMD CODE | p. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| 20091001 | 20100930 | 12 | | 0 | derrick.torajno.daniels@us.army.mil | W6QTK1 | FC | UA28 |

## PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)

| | NAME | SSN | RANK | POSITION | SIGNATURE | DATE |
|---|---|---|---|---|---|---|
| a. RATER | RAMSEY, PAUL J. | Redacted PII | LTC | Brigade STT Chief | RAMSEY.PAUL.JAMES.JR Redacted PII | 20101008 |
| b. INTERMEDIATE RATER | | | | | | |
| c. SENIOR RATER | ATCHER, DAVID A. | Redacted PII | COL | Senior STT Chief | ATCHER.DAVID.ANDREW Redacted PII | 20101008 |

SENIOR RATER'S ORGANIZATION: HQs, TF 1-41FA KACAT, JSS SALAAM, APO AE 09348

BRANCH: LG | SENIOR RATER TELEPHONE NUMBER: SVOIP 241-4323 | E-MAIL ADDRESS: david.atcher@us.army.mil

d. This is a referred report, do you wish to make comments? [ ] Yes [ ] No

e. SIGNATURE OF RATED OFFICER: DANIELS.DERRICK.TORAJNO Redacted PII | DATE: 20101010

## PART III - DUTY DESCRIPTION

a. PRINCIPAL DUTY TITLE: Support Stability Transition Team Deputy Chief | b. POSITION AOC/BR: 19A

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES. REFER TO PART IVa, DA FORM 67-9-1.

Deputy Team Chief for an Iraqi Security Forces Stability and Transition Team attached to an Advisory and Assistance Brigade forward deployed in the United States Forces-Iraq, United States Division Center operational environment. Advises the Iraqi Federal Police Brigade primary staff in matters of operations, training and logistics, and assisting the Iraqi Brigade in achieving strategic, operational, and tactical goals by serving as the primary interface with the maneuver support command in order to synchronize bi-lateral operation efforts. Responsible for integration of Iraqi military operations and US Forces enablers. Additional responsibilities in the areas of logistical and administrative planning and training.

## PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

CHARACTER Disposition of the leader: combination of values, attributes, and skills affecting leader actions

a. ARMY VALUES (Comments mandatory for all "NO" entries. Use PART Vb.)

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | X | | 5. RESPECT: Promotes dignity, consideration, fairness, & EO | X | |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | X | | 6. SELFLESS-SERVICE: Places Army priorities before self | X | |
| 3. COURAGE: Manifests physical and moral bravery | X | | 7. DUTY: Fulfills professional, legal, and moral obligations | X | |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | | | | X | |

b. LEADER ATTRIBUTES / SKILLS / ACTIONS: First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb. Comments are mandatory in Part Vb for all "No" entries.

b.1. ATTRIBUTES (Select 1) Fundamental qualities and characteristics

| | | |
|---|---|---|
| [ ] 1. MENTAL — YES — Possesses desire, will, initiative, and discipline | [X] 2. PHYSICAL — YES — Maintains appropriate level of physical fitness and military bearing | [ ] 3. EMOTIONAL — YES — Displays self-control; calm under pressure |

b.2. SKILLS (Competence) (Select 2) Skill development is part of self-development; prerequisite to action

| | | |
|---|---|---|
| [ ] 1. CONCEPTUAL — YES — Demonstrates sound judgment, critical/creative thinking, moral reasoning | [ ] 2. INTERPERSONAL — YES — Shows skill with people: coaching, teaching, counseling, motivating and empowering | [X] 3. TECHNICAL — YES — Possesses the necessary expertise to accomplish all tasks and functions |
| [X] 4. TACTICAL — YES — Demonstrates proficiency in required professional knowledge, judgment, and warfighting | | |

b.3. ACTIONS (LEADERSHIP) (Select 3) Major activities leaders perform: influencing, operating, and improving

| | | | |
|---|---|---|---|
| INFLUENCING — Method of reaching goals while operating / improving | [ ] 1. COMMUNICATING — YES — Displays good oral, written, and listening skills for individuals / groups | [X] 2. DECISION-MAKING — YES — Employs sound judgment, logical reasoning and uses resources wisely | [ ] 3. MOTIVATING — YES — Inspires, motivates, and guides others toward mission accomplishment |
| OPERATING — Short-term mission accomplishment | [ ] 4. PLANNING — YES — Develops detailed, executable plans that are feasible, acceptable, and suitable | [X] 5. EXECUTING — YES — Shows tactical proficiency, meets mission standards, and takes care of people/resources | [ ] 6. ASSESSING — YES — Uses after-action and evaluation tools to facilitate consistent improvement |
| IMPROVING — Long-term improvement in the Army its people and organizations | [ ] 7. DEVELOPING — YES — Invests adequate time and effort to develop individual subordinates as leaders | [ ] 8. BUILDING — YES — Spends time and resources improving teams, groups and units; fosters ethical climate | [X] 9. LEARNING — YES — Seeks self-improvement and organizational growth; envisioning, adapting and leading change |

c. APFT: PASS | DATE: 20100409 | HEIGHT: 69 | WEIGHT: 196 | YES

d. OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF CPTs, LTs, CW2s, AND WO1s. WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED? YES | NO | NA

NAME DANIELS, DERRICK T. SSN Redacted PII PERIOD COVERED 20091001 - 20100930

PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

[X] OUTSTANDING PERFORMANCE, MUST PROMOTE [ ] SATISFACTORY PERFORMANCE, PROMOTE [ ] UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE [ ] OTHER (Explain)

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART IVa, b, AND PART Vb, DA FORM 67-8-1.

Captain Derrick Daniels' performance is in the top quarter of all combat Arms Officers that I have observed within the last 21 years. His duties included a variety of complex and challenging tasks as the Brigade Stability-Transition Team (STT) Operations Officer and Executive Officer, all of which he accomplished to the highest standard. As the Operations Officer, CPT Daniels spent countless hours building rapport with the Federal Police Brigade's Operations officers, watch Officers and the Operations staff of the three subordinate battalions. He was constantly engaged across the brigade building partnerships and mentoring Iraqi staff officers. His efforts were key to the success of his partnered unit's increase in combat effectiveness as they provided a safer, more secure environment for the citizens of their operational area. While assigned to the Karkh Area Command STT, CPT Daniels coached and mentored the Iraqi Corps level Commanders's Strike Team, increasing that unit's capacity to engage time sensitive targets throughout western Baghdad, providing the Iraqi Commander a trained, combat-ready force ready to deploy on very short notice. In short, CPT Daniels is a multi-faceted, broadly experienced, hard working, success driven Officer. Promote immediately to Major; he is already performing field grade quality work.

c. COMMENT ON POTENTIAL FOR PROMOTION

Promote immediately. CPT Daniels' performance is indicative of his ability to perform at higher levels.

d. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

CPT Daniels has exhibited an affinity as a trainer and coach.

Would serve Army best in: MFE / 19

PART VI - INTERMEDIATE RATER

PART VII - SENIOR RATER

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

[X] BEST QUALIFIED [ ] FULLY QUALIFIED [ ] DO NOT PROMOTE [ ] OTHER

I currently senior rate 1 officer(s) in this grade. A completed DA Form 67-8-1 was received with this report and considered in my evaluation and review [X] YES [ ] NO

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)

HQDA COMPARISON OF THE SENIOR RATER'S PROFILE AND BOX CHECK AT THE TIME THIS REPORT PROCESSED

NO BOX CHECK

RO: CPT DANIELS DERRICK T Redacted PII

SR: COL ATCHER DAVID A Redacted PII

DATE: 2010 10 12

TOTAL RATINGS:

RATINGS THIS OFFICER:

c. COMMENT ON PERFORMANCE/POTENTIAL

Promote to Major now. CPT Derrick Daniels is in the top ten percent of all company grade officers I have served with over the past 27 years. He functioned at the senior Major level with professional maturity far beyond his peers. I relied on his sound judgment and team building skills to navigate through the complex relationships required of advisors at a senior Iraqi Army staff. Derrick always demonstrated the insight, integrity, vision, moral courage, and selflessness we look for in our leaders. Calm and deliberate under duress, he was the go to guy when the Karkh Area Command's Strike Team needed training or assistance. CPT Daniels is among the best we have and has shown an outstanding adaptability through his work with his Iraqi counterparts. He has a brilliant future with unlimited potential. Continue to give tough jobs and keep him near Soldiers; they need his leadership.

d. LIST THREE FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE

Battalion S3; Battalion XO; Brigade S3

Would serve Army best in: MFE / 19

DA FORM 67-8, MAR 2006 Page 2 of 2 APD PE v6.50ES

AFZP- VB-C
SUBJECT: Notification of Board of Inquiry

ACKNOWLEDGMENT OF RECEIPT

I have received the notification to appear at the Board of Inquiry hearing specified on the preceding page, and have been advised on my right to properly qualified and certified counsel. I further acknowledge that if I require any witnesses to testify at this hearing, I will notify in writing of the names and contact information of each witness.

DERRICK T. DANIELS
CPT, US Army
Respondent

DATE: 16 MAR 2012

AFKA-DVE-GA
SUBJECT: Rebuttal for elimination

4. While my actions are my responsibility, please consider the circumstances under which I was operating at the time:

a. I was the only commander in my Brigade that took a tank company to combat only to give up command of that company within three months in order take command of a headquarters company three times the size in a completely different operational environment during the surge (Enclosure 13).

b. I was under constant duress as the tank company commander not knowing our area of operation until after boots on the ground in Kuwait. Understanding my area of operation was extremely important to me, especially being attached to an infantry battalion. We were half the size of an Infantry company. Firepower, speed, audacity and the elements of surprise are our tenants. My company trained on HMMWVs, giving us dual abilities, however, not having a clue about the terrain, enemy and civilian capacity made mission planning virtually impossible. I was under constant pressure, I felt like I was in a helpless situation and Soldiers were going to die needlessly. I had to constantly think outside the box and make a lot of assumptions in order to fill in the information gaps.

c. I was part of the last legacy combat brigade. The majority of our training was conducted with my organic tank battalion until two months prior to deployment. We had to establish new relationships and learn different techniques, tactics and procedures under the Infantry battalion. Company cross attachments should have taken place several months before deployment.

d. In Kuwait, we discovered we were going to be attached to another brigade headquarters. We now had new expectations and a late start on learning the external environment. This was very oppressive in developing battlefield visualization.

e. Policing up dead bodies during the height of the sectarian violence became part of our daily battle rhythm. My Soldiers were completely unprepared, but we adapted to the new challenge. On several occasions, my patrol would fish the decaying, mutilated bodies from the canals and ditches so family members could identify their loved ones. Eighty percent of our training focused on kinetic operations. I didn't have a problem killing combatants, but it was the sheer disregard for and brutality on human life that really affected me.

f. Operation Lion's Gate: This was a complete failure in respects to south Baghdad. If the concept was effective, then there wouldn't be any need for the surge. The intent of this operation was the hold phase of the clear, hold, then builds strategy. This defensive strategy used Texas barriers as blocking positions in order to keep the "insurgents" from entering the city through uncontrolled access. My area of operation was comprised majority Sunni in southern rural Baghdad. The barriers would channel people through checkpoints in which they were searched by the Iraqi Police. My tactical problem was the IPs, mostly Shi'a, were suspected of carrying out a lot of the sectarian violence and extortion at these very checkpoints. In addition, the locals expressed they just wanted to farm their fields and escort their children to some of the very few schools in the area. These barriers would force them to travel additional miles plus they were frighten. I talked to my operations officer about this on several occasions. "Derrick, this is a

high visibility mission. If we continue to have violators, then paint instructions in Arabic on the barriers. Give them fair warning, then if you must, use escalation of force." "Sir, Are you serious? You want us to shoot these people?" I was caught off guard and extremely perplexed. What would be the engagement criteria? What demographic of people, military age males? You want me to develop this at the company level? I talked to these people on several occasions. I had dinner and hot tea with the local officials regularly and couldn't fathom my next KLE. "Hey, I know you are challenged with getting to the markets, work in your fields and take your children to school. We are going to still help you, but let your people know if any of my Soldiers catch anyone slipping past or removing the barriers, we will shoot them." I didn't know what to do; I didn't know what to tell them. Unlike my higher headquarters, I experienced firsthand the brutality of intimidation. So how are we any different? Leaders' echelons above were far from reality. I constantly thought about the men we found with their hands bound and heads with bullet holes. How their mothers, while crying, would beat and scratch themselves violently out of frustration. Sometimes we found their bodies piled like corkwood near intersections just several feet away from police checkpoints. That helpless feeling continued to nag at me. But there were the second and third order effects I worried about and had to consider. Are we going to lose the neutral populace in harboring Sunni insurgents? Are we going to experience an increase of IEDs? How is this going to impact my main mission of protecting the Baghdad International Airport (BIAP)? The perception was we ultimately support the Shi'a people and want them to control the city and eventually the government. I felt isolated…on an island. I was the buffer and no one else had to deal with this matter. I had made up my mind I would give up the guidon if need be, but I was also conflicted about the lasting impression on my Soldiers. After very little debate with my First Sergeant, I decided not to give the order. I did not want to put my Soldiers in such a grey situation. But I was constantly afraid of higher command using AEROSTAT reporting my AO being infiltrated through the blocking positions. This was CCIR for the Division. It burdened me that I could possibly get relieved over something I just didn't believe in or couldn't control and I felt useless about not providing any logical explanation that the people could understand.

g. It was very exhausting supporting the "Put an Iraqi Face on Everything" concept. We worked endlessly with our counterparts we hardly knew and trust. It was demoralizing, at times, giving them credit for things they didn't earn. We understood the strategic requirements, but it was hard supporting things far removed from the truth. I was on a combat patrol in southern Baghdad once when a sniper shot my Platoon Leader. The calculated location from the attack was a Shi'a Mosque. My battalion headquarters wanted to make this an opportunity for a good Iraqi news campaign. The tactical sacrifice for this strategic intent resulted in a four-hour wait in requesting and receiving host nation support to clear the Mosque. Once the Iraqi Police arrived, it took them less than five minutes to clear the building; obviously the sniper that shot my Lieutenant was gone.

h. My combat patrol was attacked with small arms in southern Bagdad, DEC 2007.

i. In my second command, I had constant leadership challenges and clashes with the battalion staff. I suffered on several occasions with certain officers tasking my support platoon without my knowledge. They fail to understand my insight and didn't trust my leadership style. I felt

marginalized at times about my knowledge and expertise. Someone was even making racial statements about my battalion commander and me in the porta-johns. In our culture we learn that the boss is the man. It's up to us to adapt to his leadership style. After all, the Army placed him in that position for a reason. So African American Officers learn our leadership style from past commanders just like everyone else. It's no different for us; we don't wake up one day and say I am going to try something different. But ironically, we are deemed arrogant, loud, unreasonable, and can't make decisions under pressure. But this is the norm right? Something African American officers just need to accept. It is reality, just get over it. These were the things I kept telling myself constantly. This was still extremely belittling, causing me to feel guilty for doing what I knew was right. Regardless, they were putting my men lives in jeopardy by not allowing them time to conduct mission planning and rehearsals. Everyone wanted the glory but I was the one responsible.

j. My combat patrol was attacked with an IED in Western Ramadi, JAN 2008.

k. My logistical support mission in Ramadi. Major end items of my theater property were under Iraqi control. After a much heartfelt concern to my battalion commander, I was ordered to do this. Sustainment of all Iraqi outposts was my main effort. But as a company commander, I am also responsible for serviceability and accountability of all equipment. I was constantly frustrated during my inventories and inspections. How can I hold an Iraqi police official accountable when they are not in the Army? How much of this dilemma is visible above the battalion level? This was another leadership challenge for me trying to sustain a strategic problem. The Iraqis are culturally deficient in understanding logistical sustainment and a frail government simply couldn't support it. The Iraqi Police used my M113s as entry control point vehicles at various outposts. My Mortars were constantly dispatched every time a generator and/or a M113 became inoperable, most times due to lack of maintenance. We often found the Iraqis had urinated and defecated in the engine compartment, access panels and floor boards only because they didn't want to exit the vehicles. My mechanics had to crawl through this in triple digit heat. I was furious. But the station commanders didn't care. They felt like we were their servants. The generators running the Iraqi Police stations were not in US nor Iraqi inventories. Retrieving parts was almost impossible and contract generator mechanics couldn't go outside the wire. So we were on a constant mission of "quick fixes". We also maintained a high and needless up-tempo due to fuel being sold on the black market. After a careful mission analysis, we determined we can sustain Iraqi military operations with two fuel runs a week. Within 48 hours of refueling operations however, we would receive requests for fuel drops. This fuel consumption was virtually impossible. Even with a steady state of continued operations; the rate of consumption should have never been black in that period of time. As the Iraqi Police expanded their area of operations south, so did my logistical support requirement. I suffered from many sleepless nights. Corruption was the indirect driving factor for several of my operations.

l. An Iraqi Police outpost was attacked with a VBIED while I was checking troops in Western Ramadi, JULY 2008.

m. I lost three Soldiers, SGT Aultz, SGT Gist and SSG Ruoff. I spoke at memorials and talked to the families personally. They asked questions about information I couldn't give them pending complete investigations. I remember the pain in their voices, the anguish as my mind reverted back to our mission readiness. One young Soldier, CPL Rooney, is a double amputee below the knees. CPL Rooney was a great kid. He was a 19D problem child the First Sergeant put under his wing by making him his driver. After proper rehabilitation, he was placed in the Mortars and became a section leader. His patrol was attacked with an IED just several feet away of an Iraqi checkpoint. The policemen were all sleeping inside during the attack. CPL Rooney was back from R&R less than a week and was a newlywed. I was emotionally drained at this point of the deployment. I became almost hollow and felt like a failure. We pushed so hard to establishing the perception the Iraqi Police were ready to take the helm. We bought into it, but now my Soldier's life is altered forever because of this.

n. I was under a FLIPL investigation for two months after my command for organic property I signed for in Iraq. During my second command, I traveled to three locations in order to inventory all my equipment. Some property was still in the rear, Soldiers were on R&R and I didn't have the company XO or supply sergeant for assistance. I worked countless hours inventorying and re-inventorying equipment to the best of my knowledge, even having the rear detachment commander scurry through connexs at home station looking for property. If items were found, I would have him photo the item with a current "Stars and Strips" as proof of inventory. Despite my best efforts, I never achieved one hundred percent accountability. This gnawed at my soul through the duration of the deployment. I was under investigation for over $8,000 of lost property.

o. Our deployment didn't stop the BRAC movement. Within weeks after returning to Germany from our fifteen-month deployment, were informed that our brigade was responsible for moving personnel and equipment to Grafenwoehr, Germany before the new training cycle.

5. I was finally diagnosed recently with chronic PTSD (Enclosure 9). Over the course of the past three years, the Army has made an assertive effort in diagnosing and understanding PTSD. There are several documented cases with Soldiers affected by this mental disease indulging in high risk behavior including excessive alcohol consumption, drug use and extra-marital affairs. It's also higher among minority Soldiers. After my command, I was distant, uncaring and violent due to inadequacy, self-pity, unworthiness and hopelessness. (Enclosure 5) I found it hard trusting anyone from my command experiences. I felt unappreciated for the countless hours studying the external and internal environment, filling the gaps due to the unconventional situation we were in. We were successful, but it came at a personal high cost. It was my duty to appear strong for my Soldiers in every situation despite how I was feeling internally. As I absorbed myself more into my problems, I drank to further my numbness and engaged in an extra marital affair in order to develop trust and establish adequacy. I desired someone who I thought could really appreciate me by admiring who I was and what I had done. In a blink of an eye, I was in a new job with new requirements. No one cared about my deployment. I was required to perform at a high standard in another capacity. My wife was tired of me being deployed, especially for fifteen months. She felt like I should just forget everything and it was my time to support her goals and dreams.

6. I have never experienced feelings like this before. I could exercise battle drills in my sleep but this was new. In my mind, mental health was for weaker lesser-prepared Soldiers who couldn't handle pressure. That thought process was already established as part of the command climate during my second command. My new First Sergeant didn't hold any punches ridiculing Soldiers for seeing a health specialist. They were openly called weak and cowards. Unfortunately, I bought into it myself, one of the biggest mistakes in my command. But I knew I was wrong for the outbursts at home and the secret affair, so I reluctantly sought help. I sought this help well before all the allegations took place (Enclosure 5), unfortunately things got a lot worse before they got better. I felt embarrassed going into the clinic and I had a hard time opening up due to trust. Being on Fort Sill in the Combined Arms Division, I was the only post combat arms maneuver commander on post. Fort Sill's Behavioral Health clinic was new and developing. Fort Sill doesn't have any maneuver divisions, thus, it was not established at that time to help masses of units from redeployment. I often pretended things were ok when they were not (Enclosure 7). My feeling of hopeless came full circle after knowledge of the false statement by Ms. Brown. In my mind, that was the ultimate betrayal, so I attempted suicide.

7. During my stay at Red River Mental Institute, Wichita Falls, Texas, I realized the only person responsible for getting myself better was me. It wasn't my leadership, my wife nor friends. No such magic pill existed at the mental hospital to make me whole again. One officer was successful in taking his life there a week before I arrived. I saw the hurt and feelings of hopelessness on fellow Soldiers and made a determination at that time I was going to be a success story. There was no formal manual on getting myself mentally fit and most post deployment session groups didn't have many officers, so I developed my own action plan:

a. I successfully completed the Fort Sill ASAP program in order to control my alcohol consumption. I openly told my story to other Soldiers about my ordeal. They could see I openly cared for the men I took into combat. They witnessed I share some of the same anguish and frustration as an officer. They now knew they were not alone. I feel proud knowing I still contributed to helping fellow Soldiers in dire situation even after command.

b. I acquired a second job at Community Assess in Lawton, OK (Enclosure 4), providing in home health care to the physically and mentally challenged. This allowed me to feel wanted in other ways besides irresponsible relationships and kept me from frequenting bars on the weekend.

c. I continued individual, as well as group, mental health sessions until I was capable to volunteer and complete a third tour, following the example of COL Charles Young. COL Young rode his horse from Wilberforce Ohio to Washington D.C. in order to prove he was physically fit for duties in Africa. I was extremely successful during my third tour in Iraq. The level of stress was not nearly as demanding as before, but the training challenges were still there. Under my new capacity, I was able to focus my efforts in training our counterparts. I used my pass experiences as a springboard in solidifying stronger bonds. I told the stories of my Soldiers sacrifices to younger Iraqi officials, those not yet molded by corruption. It formulated a new since of purpose and hope for their country (Enclosure 15). But most importantly, I am happy again. I stop allowing others to framework and marginalize who I am. As a company

commander, I arguably accomplished the most, if not more, than any other company commander during the height of the surge. And based on my past two deployments, I have touched countless lives.

8. Every commander that deploys into the theater of operations has different responsibilities according to the external environment. Commanders in a counter insurgency fight have unique new responsibilities, often times with vague mission requirements, far different than the METL tasks in a traditional force-on-force conflict. At times the pressure for success is overwhelming, especially with un-measureable, unclear goal pathways. Not only were both of my commands tough and extremely challenging, my individual plight in transitioning from one command to the next often times felt insurmountable.

9. I have never place blame on anyone but myself, but an interview with a civilian overcome with emotion and utilizing false information is about to destroy my seventeen-year career. I am a firm believer in making the best out of a bad situation. I refuse to allow this to solely dictate my future in the Army. I accept the GOMOR. It's a forcing function that drives me to do a self-evaluation and improve myself physically, mentally and spiritually. I know me and my self-worth. I accepted responsibility, took authority and gained knowledge on how to make my personal and professional life as a Soldier better. This daunting process is just another example of who I am and what I am capable of. I have always analyzed the situation and took charge to maximize the outcome. This situation is no different and should be evident through the character letters provided by some very extraordinary officers. These gentlemen know me as commander and a transition team member before and after my transgressions. The battalion executive officer of 2-7 Infantry is a very capable amputee who I recently had the pleasure of deploying with. I am sure he went through a rehabilitation process in order to show he was physically fit to continue his career progression. Despite my scars not being as visible, I am and continually be allowed the same opportunity.

10. I was in the process of collecting new evidence for the DA Stability Evaluation Board when I acknowledged receipt of the memorandum for elimination. But I know I serve the best Army in the world and still believe in the Army's system. I am confident this command now understands I am physically, mentally and most of all morally competent in continuing my service to my country on active duty.

11. I further request the new evidence and the letters of recommendations be forwarded to the President of the DA Stability Evaluation Board to have the GOMOR rewritten to reflect adequate information and placed in my restrictive file. If found adequate, I further request the DASEB direct a promotion board re-evaluation of my promotable status for the FY 2008 Major's board.

DERRICK T. DANIELS
CPT, AR
S-3 CHOPS, 188TH IN BDE

15 Encls
1. Statement by Ms Brown
2. Statement by Mrs. W. Daniels

AFKA-DVE-GA
SUBJECT: Rebuttal for elimination

3. Statement by Mr and Mrs. Daniels
4. Community Access Letter
5. Initial Medical Visit 18 Aug 2008
6. Medical Visit 12 Sept 2008
7. Medical Visit 21 Nov 2008
8. Medical Visit 24 Nov2008
9. Medical Evaluation 2 June 2011
10. Memo of Support BG Burton
11. Memo of Support COL Atcher
12. Memo of Support COL Williams
13. Memo of Support COL Johnson
14. Memo of Support LTC Klemens
15. Last OER

**Enclosure** 1

STATEMENT FOR CPT DANIELS GENERAL OFFICER LETTER OF REPRIMAND JANUARY 2009

To whom it may concern .

I was never impregnated by CPT Daniels. First he said he met someone else. To get him back I said I was pregnant. He then told me he didn't have another woman, he felt guilty about being with me. The second time we broke off the relationship, he said he wanted to work things out with his wife and he would support me with the pregnancy.

After he confessed to his wife about our relationship, she called me. I told her CPT Daniels has had several affairs on her and has a woman pregnant named Tenisha (one of my friend's name) in Lawton as well as me. I told her these things to damage their relationship. CPT Daniels asked me to tell his wife the truth, but I told him I would only do it if we could keep our relationship going. When he refused to come back to me, I went to his commander to get him in trouble. I wrote in a statement that I was pregnant with twins and he had several affairs throughout his marriage. I also used the Tenisha story to reinforce this. I also added that Tenisha was married to a soldier who was deployed. All of these things are untrue.

After the second breakup, CPT Daniels only contacted me to ask about the pregnancy. I told him if he couldn't be with me, he couldn't have anything to do with the process. When it came close to the due date, I told him I had a miscarriage. I never produced any documentation to prove the pregnancy, doctor appointments or medical records to CPT Daniels.

Tara Brown

Tara Brown
Redacted PII

signed before me notary public on April 4th 2011

TONI RAE WARD
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 8-28-2014

**Enclosure 2**

31 May 2011

To whom it may concern:

I am writing this letter on behalf of my husband, CPT Derrick T. Daniels. There has been an ongoing investigation since the year 2009 because of a confrontation between him and me due to an affair he entered with a young lady by the name of Tara Brown. Five to six months prior to learning about this affair, Derrick had just come from an 18 month tour in Iraq (which was actually his second time serving in Iraq) where he served as his company's commander. Not long after that tour I began to notice changes in him. He seemed to be very short tempered much like someone who is bipolar, one minute he was calm, soft spoken and the next very hostile and raising his voice. I also notice that he was paranoid of his surroundings and also drank heavily, from about 5 a.m. throughout the rest of the day. As I questioned Derrick about his behavior he would say that I wouldn't and couldn't understand and that it was hard for him to explain his actions. However, he did admit to needing help. As time went by (few months from leaving Iraq) his behavior worsened. Through 9 yrs of marriage(at that time), Derrick had been highly responsible when drinking alcohol (never drinking too much or calling me to pick him up if he had consumed too much) and it was a lesson that I witnessed him give to his soldiers. I was confused of his actions after he had drank too much, drove himself home and had a huge outburst (breaking things such as house furniture). He had another outburst much like this one; it was then that I knew he needed serious help. The next morning after the second outburst I accompanied my husband to a mental health center on post (Ft. Sill, OK) as he enrolled to receive help for his drinking and fit of rages. As he attended AA classes, he would complain that he felt uncomfortable because other soldiers (none who were his peers) were a distraction because they were young and not taking the class seriously. I could see that he was suffering and badly wanted to get help, however he seems to be embarrassed, of first having to admit he was having issues and needed help, then second seeking help with those he was supposed to be leaders to (privates).

During conversations Derrick expressed that the help he was receiving wasn't adequate enough for him and he didn't know what to do about it. I recall him saying things like "in the military you are just a number,"nobody truly cares, they do just enough in the allotted time then on to the next one." As a wife my heart hurt for him because I could see that nothing was truly working for him. It seemed that the more questions I asked to be of some help to him wasn't working; he began to pull away from me and some of his closest friends. I believe this is when he went outside of our marriage and turned to Tara Brown.

What I want to say in general is that Derrick and I both understand that his actions were wrong, however, I don't believe that he received the proper treatment that he needed to cope with the trauma he experienced while in Iraq. Immediately after Derrick came from Iraq the first time he

went through reintegration and the families were invited to attend. One segment of the reintegration was a counseling session. Soldiers were put in sections according to their rank, single or marital status in order to receive proper coping skills in an adequate amount of time. After coming from Iraq a second time the reintegration was not set up this way and I remember specifically Derrick being upset about it because he was looking forward to the counseling session. My point is, there came a time during this ordeal (after the affair) that my husband tried to commit suicide in which he was institutionalized in a psychiatric hospital as a result. I think if he had received the proper treatment early on all of these negative events could have been avoided. While we were together I witnessed him be an awesome man, soldier and leader. He volunteered to go back to Iraq a third time to prove to be the soldier that you trained him to be. I hope that through his work you can see that he deserves a chance to finish out his career in an organization that he so dearly love, the US Army.

Sincerely,

Wendy Daniels

SWORN TO ME, SHANNON DICK, BY WENDY L. DANIELS ON THIS 31ST DAY OF MAY, 2011.

Shannon Dick

COMMISSION # 08005970
EXPIRES: JUNE 10, 2012

SHANNON DICK
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES JUNE 10, 2012
COMMISSION # 08005970

**Enclosure** 3

30 June 2011

Redacted PII

To Whom it may concern:

We are the parents of Derrick Daniels and these are some of the observations noticed about Derrick after his last two tours in Iraq:

We are not sure about the years, we believe from 2003-2004 and from 2007-2008. He seemed jumpy and moving all the time. He was very, very easy to get upset. He would sit and just stare as there were problems he couldn't cope with. He was very depressed at one time he expressed to us his life was over and he didn't want to live.

He developed a drinking problem trying to solve his problems. We believe his drinking problem is better. We believe all his problems can be solved if he continues to get the right medical attention.

Sincerely,

Lauriene Daniels — Arthur Daniels

My commission expires March 10, 2015

FROM COMMUNITY ACCESS LAWTON (FRI)JUN 24 2011 11:34/ST. 11:34/No. 7520415730 P 2

Enclosure 4

Community Access Inc.
Accessing the community through specialized services.

June 24, 2011

To Whom It May Concern:

Mr. Derrick Daniels was employed with Community Access, Inc. from July 9, 2009 until September 28, 2009.

If you need additional information, please let me know.

Sincerely,

Deborah Whitehead

Deborah Whitehead
Bookkeeper

P.O. Box 154 • Lawton, OK 73502 • T: (580) 353-2045 • F: (580) 353-6470

000902